IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS, <br><br> 453 New Jersey Avenue, S.E. <br> Washington, D.C. 20003 <br><br> Plaintiff, <br><br> v. <br><br> PAUL DAVID GAUBATZ; CHRIS GAUBATZ, a.k.a. "David Marshall"; and JOHN AND JANE DOE NOS. 1-10, <br><br> Defendants. | Civil Action No. _____ <br><br> Judge: _____ <br><br> Date: _____ <br><br> **JURY DEMAND** |

## COMPLAINT AND JURY DEMAND

COMES NOW, the Plaintiff, the Council on American-Islamic Relations ("CAIR"), who herein and hereby complains against Defendants Paul David Gaubatz, Chris Gaubatz, and John and Jane Does 1-10 (collectively referred to hereafter as "Defendants") as follows:

### INTRODUCTION

1. In this action, Plaintiff, the Council on American-Islamic Relations, seeks redress for the theft of its personal property by Defendants and their surreptitious recording of meetings and conversations during the course of an internship with CAIR acquired by Defendant Chris Gaubatz under false pretenses.

2. Defendants conceived and implemented a deliberate and concerted scheme by which Defendant Chris Gaubatz obtained an internship with CAIR under an assumed name, David Marshall, and based upon false representations and material omissions about his background, interests, and intentions.

3. Having obtained access to CAIR's facilities and documents through misrepresentation and deceit, Defendant Chris Gaubatz proceeded to remove more than 12,000 of CAIR's internal documents and to make video and audio recordings of meetings and conversations involving CAIR's officials and employees all without any consent or authorization and in violation of his contractual, fiduciary, and other legal obligations to CAIR.

4. Defendant Chris Gaubatz delivered these documents and recordings to Defendant Paul David Gaubatz, also without CAIR's consent or authorization and in violation of his contractual, fiduciary, and other legal obligations to CAIR.

5. Defendants have disclosed and caused to be published many of the documents and recordings, including documents labeled proprietary and documents containing the personal information of CAIR's employees and donors, and have generally used the surreptitiously obtained documents and recordings to cast CAIR in a negative, inaccurate light.

6. Defendants' actions have vitiated CAIR's reasonable expectation in the confidentiality of its internal documents, resulted in the public disclosure of the personal information of CAIR's employees and donors, caused injury to CAIR, and caused CAIR and its officials and employees to suffer unwarranted harassment up to and including threats of violence.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Count Five asserted herein arises under the laws of the United States, specifically the Electronic Communications Privacy Act, 18 U.S.C. § 2701, *et seq.* This Court has supplemental jurisdiction over all other claims set forth in this Complaint pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims arising under the Electronic Communications Privacy Act that they form part of the same case or controversy.

8. In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different States and the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the District of Columbia.

10. This Court has personal jurisdiction over each of Defendants pursuant to D.C. Code § 13-423(a) because, *inter alia*, Plaintiff's claim for relief arises from Defendants' transaction of business in the District of Columbia and by their causing of tortious injury in the District of Columbia by an act or omission in the District.

## PARTIES

11. Plaintiff, the Council on American-Islamic Relations (hereinafter referred to as "CAIR") is a national Muslim advocacy group incorporated as a non-profit 501(c)(3) corporation incorporated in the District of Columbia with its headquarters located at 453 New Jersey Avenue, S.E., Washington, D.C., 20003. CAIR's stated mission is to enhance understanding of Islam, encourage dialogue, protect civil liberties, empower American Muslims, and build coalitions that promote justice and mutual understanding.

12. Upon information and belief, Defendant Paul David Gaubatz is a citizen and resident of the Commonwealth of Virginia and the father of Defendant Chris Gaubatz.

13. Upon information and belief, Defendant Chris Gaubatz, also known as David Marshall, is a citizen and resident of the Commonwealth of Virginia and the son of Defendant Paul David Gaubatz.

14. Upon information and belief, Defendants John and Jane Doe 1-10 are individuals whose identities are not presently known to CAIR who participated in, aided and abetted, or benefited from the unlawful activities detailed herein.

## FACTS

15. Defendants agreed and planned to gain access to CAIR's facilities and internal documents by having Defendant Chris Gaubatz seek an internship under an assumed, fictitious identity and then to access, copy, and/or remove documents from CAIR's offices and to make surreptitious recordings of meetings and conversations.

16. In or about April 2008 and in accordance with Defendants' agreed-upon scheme, Defendant Chris Gaubatz sought and obtained an internship with CAIR's Maryland-Virginia chapter office, located in Herndon, Virginia.

17. In or about June 2008 and after it was announced that CAIR's Maryland-Virginia chapter office would be closing, Defendant Chris Gaubatz sought an internship with CAIR's national office located in Washington, D.C.

18. In the course of seeking a position with CAIR, Defendant Chris Gaubatz made multiple representations to CAIR and its agents and employees, including but not limited to the following:

    a. That his name was David Marshall;

    b. That he was a student at Ferrum College;

    c. That his father was in the construction business and/or that his family had a construction business;

    d. That he was an adherent to the Muslim religious faith; and

    e. That he desired to work with and on behalf of CAIR as an intern.

19. All of the foregoing statements and/or representations by Defendant Chris Gaubatz were false.

20. Defendant Chris Gaubatz made these and other statements and/or representations with knowledge that they were false.

21. Defendant Chris Gaubatz made these and other false statements and/or representations with the intention and for the purpose of securing an internship with CAIR and thereby gain access to its facilities, the opportunity to inspect and remove documents therefrom, and the opportunity to make recordings of meetings and conversations.

22. At no point did Defendant Chris Gaubatz disclose to CAIR or any of its agents or employees that it was his design and intention to access, obtain, or remove documents from CAIR's facilities, to record meetings or conversations, or to otherwise gain information to be used in a manner adverse to CAIR.

23. Upon being hired to work in CAIR's national office in Washington, D.C., Defendant Chris Gaubatz, purporting to be David Marshall, signed a Confidentiality and Non-Disclosure Agreement in the form attached hereto as Exhibit A.

24. Pursuant to the Confidentiality and Non-Disclosure Agreement, Defendant Chris Gaubatz agreed, *inter alia*,

    a. "[T]hat I shall not at any time after the termination of my internship with CAIR, use for myself or others, or disclose or divulge to others … any trade secrets, confidential information, or any other proprietary data of CAIR in violation of this agreement ….";

    b. "[T]o take and protect the secrecy of, and to avoid disclosure or use of, [CAIR's] 'Confidential Information' in order to prevent it from falling into public

domain or into the possession of persons not bound to maintain the confidentiality of the Confidential Information.";

    c.    "[T]o return any originals or copies of confidential and proprietary information obtained during the course of internship, whether tangible or intangible, to CAIR immediately upon termination regardless of whether said termination is involuntary or not."; and

    d.    "[T]o not distribute this information in any medium (i.e., faxes, voicemail, electronic mail systems, or computer systems)."

25. Defendant Chris Gaubatz worked as an intern for CAIR until August 2008 and returned to perform additional work over Labor Day weekend in 2008.

26. Unbeknownst to CAIR, Defendant Chris Gaubatz was in fact working as the "chief field investigator" for Defendant Paul David Gaubatz.

27. Defendant Chris Gaubatz's mission and intention was not to work on behalf of CAIR or in furtherance of its interests, but instead to collect and misappropriate information about CAIR, its officers and employees, and its activities to later be disclosed publicly and used to cast CAIR in a negative light.

28. During the course of his internship with CAIR, Defendant Chris Gaubatz routinely accessed, inspected, and reviewed documents that he was not authorized to access, review, or inspect.

29. Defendant Chris Gaubatz physically removed in excess of 12,000 internal, sensitive CAIR documents from CAIR's premises that he was not authorized to so remove.

30. Defendant Chris Gaubatz delivered the documents that he removed from CAIR's premises into the custody of Defendant Paul David Gaubatz.

31. Defendant Chris Gaubatz accessed emails, computer-generated spreadsheets, and other electronic documents which he was not authorized to access and delivered printouts or copies of those documents to Defendant Paul David Gaubatz.

32. In addition, Defendant Chris Gaubatz made surreptitious audio and video recordings of meetings of and conversations with CAIR officials and employees, which he also delivered to Defendant Paul David Gaubatz.

33. On or around October 15, 2009, the book *Muslim Mafia: Inside the Secret Underworld That's Conspiring to Islamize America* by Defendant Paul David Gaubatz and Paul Sperry was released.

34. In that book, the person who presented himself to CAIR as "David Marshall" is identified as Defendant Chris Gaubatz.

35. The book describes the internship of "David Marshall" as "a six-month counterintelligence operation" (p. vi) during which he "routinely load[ed] the trunk of his car with boxes of sensitive documents and deliver[ed] them into the custody of investigative project leader P. David Gaubatz who in turn stockpiled them at his office in Richmond, Virginia" (p. 4).

36. The book references, cites, characterizes, and/or quotes from numerous of the documents obtained in this manner, including confidential internal memoranda, proprietary minutes of board meetings, budget reports, real estate records, strategy papers, agendas, long-term goals, employee evaluations, emails, wire transfers and other bank statements, proposals, handwritten notes, letters, brochures, spreadsheets, and visitors logs along with other sensitive documents. In an appendix, the book reproduces in whole or in part at least 19 of the stolen documents.

37. Many of the documents, by the authors' own acknowledgement, are expressly marked for confidential treatment with such designations as "Company Proprietary" and "Not for Distribution—For Board Members Only."

38. The book specifically cites, quotes, characterizes, and/or references numerous emails by, to, and between CAIR officials and employees as well as electronic or computer-generated documents, including the "digital rolodex" of Corey P. Saylor, CAIR's Legislative Director.

39. The book also specifically cites, quotes, characterizes, and/or references emails and memorandum between CAIR officials or employees and attorneys who are or have been retained by CAIR.

40. In addition, Defendant Paul David Gaubatz maintains an internet blog, which can be found at http://dgaubatz.blogspot.com.

41. On his blog, Defendant Paul David Gaubatz has posted documents stolen from CAIR by Defendant Chris Gaubatz and video and audio recordings made surreptitiously by Defendant Chris Gaubatz during his CAIR internship.

42. Included among Defendant Paul David Gaubatz's blog postings are a post from October 20, 2009 disclosing the names, addresses, telephone numbers, and email addresses of former CAIR employees and a post from October 26, 2009 disclosing the names, addresses, telephone numbers, and email addresses of persons who have made donations to CAIR.

43. CAIR never authorized Defendant Chris Gaubatz, a.k.a. "David Marshall," to access, copy, keep, take home, or otherwise remove from CAIR's premises or computer systems any CAIR documents.

44. CAIR never authorized Defendant Chris Gaubatz, a.k.a. "David Marshall," to transfer or deliver to any third party any of CAIR's documents.

45. CAIR never authorized Defendant Chris Gaubatz, a.k.a. "David Marshall," to access any of its password-protected email or computer systems.

46. Defendant Chris Gaubatz did not have the authorization or consent of CAIR or any of its officials or employees to record any meetings, conversations, or other events.

47. CAIR never authorized Defendant Chris Gaubatz, a.k.a. "David Marshall," to disclose or publish any documents, recordings, or other information he obtained or made during his internship at CAIR.

48. Defendants' actions were accompanied by fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard for CAIR's rights, or other circumstances tending to aggravate the injuries to CAIR.

## COUNT ONE – CONVERSION

49. All of the foregoing allegations are hereby incorporated into this paragraph as if fully set forth herein.

50. Defendants combined and conspired to unlawfully exercise ownership, dominion, or control over the property of CAIR by removing numerous documents from its premises without CAIR's authorization or consent.

51. Defendants' exercise of ownership, dominion, or control over CAIR's property was in denial or repudiation of CAIR's own rights thereto.

## COUNT TWO – BREACH OF FIDUCIARY DUTY

52. All of the foregoing allegations are hereby incorporated into this paragraph as if fully set forth herein.

53. As an employee of CAIR, Defendant Chris Gaubatz owed fiduciary duties to CAIR, including the duty of confidentiality and the duty of loyalty.

54. Defendant Chris Gaubatz breached his fiduciary duties to CAIR by, *inter alia*:

   a. inspecting and/or accessing documents and information which he was not authorized to inspect and/or access;

   b. accessing CAIR's email and/or computer systems without or in excess of any authorization by CAIR;

   c. removing documents or copies of documents from CAIR's premises without its consent or authorization;

   d. surreptitiously recording meetings of and conversations with CAIR officials and employees without consent or authorization;

   e. delivering said documents and said recordings to a third party without CAIR's consent or authorization;

   f. publishing said documents and said recordings in print and on the Internet; and

   g. using said documents and said recordings in a manner and for purposes adverse to CAIR.

55. Defendant Paul David Gaubatz induced Defendant Chris Gaubatz to breach his fiduciary duties to CAIR.

56. Defendant Paul David Gaubatz conspired with Defendant Chris Gaubatz to breach his fiduciary duties to CAIR.

57. Defendant Paul David Gaubatz aided and abetted Defendant Chris Gaubatz in breaching his fiduciary duties to CAIR.

58. CAIR has suffered and continues to suffer injury as a result of Defendant Chris Gaubatz's breach of his fiduciary duties.

### COUNT THREE – BREACH OF CONTRACT

59. All of the foregoing allegations are hereby incorporated into this paragraph as if fully set forth herein.

60. In or around June 2008, Defendant Chris Gaubatz entered into a Confidentiality and Non-Disclosure Agreement with CAIR, the form of which is attached hereto as Exhibit A.

61. Pursuant to the Confidentiality and Non-Disclosure Agreement, Defendant Chris Gaubatz agreed, *inter alia*:

   a. "[T]hat I shall not at any time after the termination of my internship with CAIR, use for myself or others, or disclose or divulge to others … any trade secrets, confidential information, or any other proprietary data of CAIR in violation of this agreement ….";

   b. "[T]o take and protect the secrecy of, and to avoid disclosure or use of, [CAIR's] 'Confidential Information' in order to prevent it from falling into public domain or into the possession of persons not bound to maintain the confidentiality of the Confidential Information.";

   c. "[T]o return any originals or copies of confidential and proprietary information obtained during the course of internship, whether tangible or intangible, to CAIR immediately upon termination regardless of whether said termination is involuntary or not."; and

   d. "[T]o not distribute this information in any medium (i.e., faxes, voicemail, electronic mail systems, or computer systems)."

62. Defendant Chris Gaubatz breached the obligations imposed by the Confidentiality and Non-Disclosure Agreement by, *inter alia*:

   a. removing documents or copies of documents from CAIR's premises without its consent or authorization;

   b. surreptitiously recording meetings of and conversations with CAIR officials and employees without consent or authorization;

   c. delivering said documents and said recordings to a third party without CAIR's consent or authorization;

   d. publishing said documents and said recordings in print and on the Internet; and

   e. using said documents and said recordings in a manner and for purposes adverse to CAIR.

63. Defendant Paul David Gaubatz induced Defendant Chris Gaubatz to breach his contractual obligations to CAIR.

64. Defendant Paul David Gaubatz conspired with Defendant Chris Gaubatz to breach his contractual obligations to CAIR.

65. Defendant Paul David Gaubatz aided and abetted Defendant Chris Gaubatz in breaching his contractual obligations to CAIR.

66. CAIR has suffered and continues to suffer injury as a result of Defendant Chris Gaubatz's breach of his contractual obligations to CAIR.

## COUNT FOUR – TRESPASS

67. All of the foregoing allegations are hereby incorporated into this paragraph as if fully set forth herein.

68. Defendants combined and conspired to intentionally intrude upon CAIR's property.

69. Defendant Chris Gaubatz only gained access to CAIR's property through the use of pretense, subterfuge, misrepresentation, and/or concealment

70. Defendants' intrusion invaded and disrupted CAIR's possession and control over its property.

71. CAIR has suffered and continues to suffer injury as a result of Defendants' intrusion.

## COUNT FIVE – ELECTRONIC COMMUNICATIONS PRIVACY ACT

72. All of the foregoing allegations are hereby incorporated into this paragraph as if fully set forth herein.

73. On information and belief, Defendant Chris Gaubatz knowingly and intentionally accessed CAIR's computers or computer systems without authorization and/or knowingly or intentionally exceeded any authorization he did have to access CAIR's computers or computer systems.

74. Defendant Chris Gaubatz thereby obtained access to wire or electronic communications while they were in electronic storage in CAIR's computers or computer systems.

75. On information and belief, Defendant Paul David Gaubatz conspired with Defendant Chris Gaubatz to do so.

76. On information and belief, Defendant Paul David Gaubatz aided and abetted Defendant Chris Gaubatz in doing so.

77. CAIR was aggrieved and continues to be aggrieved by Defendants' actions, which were in violation of 18 U.S.C. § 2701(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby requests that this Court:

1. Proceed to a trial of this matter before a jury;

2. Enter judgment in favor of Plaintiff and against Defendants on each of the causes of action asserted herein;

3. Enjoin Defendants and their agents and associates from posting, publishing, disclosing, or in any way using any documents, recordings, or other information obtained from CAIR, either directly or indirectly;

4. Order Defendants and their agents and associates to return any documents, recordings, or other information obtained from CAIR, either directly or indirectly;

5. Award Plaintiff compensatory damages in an amount to be determined at trial;

6. For each violation of 18 U.S.C. § 2701, award Plaintiff damages reflecting the actual damages suffered by Plaintiff and any profits made by Defendants as a result of each such violation or statutory damages in the amount of $1,000, whichever is greater;

7. Award Plaintiff attorney's fees pursuant to 18 U.S.C. § 2707(c) and/or the terms of the Confidentiality and Non-Disclosure Agreement;

8. Award Plaintiff punitive damages in an amount to be determined at trial;

9. Award Plaintiff interest on any damages awarded;

10. Order each of Defendants to pay Plaintiff's costs associated with this action; and

11. Award such additional relief as the Court may determine to be just and proper.

Respectfully Submitted,

Dated: October 29, 2009

Daniel Marino (DC Bar No. 416711)
Tillman Finley (DC Bar No. 477737)

LUQUE GERAGOS MARINO LLP
910 17th Street N.W., Suite 800
Washington, D.C. 20006
Tel: 202.223.8888

*Attorneys for Plaintiff Council on American-Islamic Relations*

## JURY DEMAND

Plaintiff the Council on American-Islamic Relations hereby demands a trial by jury on all issues so triable.

Daniel Marino
*Counsel for Plaintiff Council on American-Islamic Relations*

15

# EXHIBIT A



Council on American-Islamic Relations
453 New Jersey Ave S.E.
Washington, D.C. 20003
Tel: 202 488 8787   Fax: 202 488 0833
E-mail: info@cair.com   URL: www.cair.com

## Confidentiality and Non-Disclosure Agreement

This agreement dated this _____ day of _____, 2008, by and between the Council on American-Islamic Relations ("CAIR"), a not-for-profit corporation existing under the laws of the District of Columbia with its principal place of business at 453 New Jersey Ave. SE, Washington, DC 20003 and_____ (Intern/Employee/Contractor).

FOR GOOD CONSIDERATION, and in consideration of being a CAIR intern, the undersigned individual hereby agrees and acknowledges:

### Purpose
That during the course of my internship or employment with CAIR, there may be disclosed to me certain trade secrets; said trade secrets consisting of the following technical and business information, but not necessarily limited to: methods, processes, formulae, compositions, systems, techniques, inventions, machines, computer programs, research projects, customer lists, pricing data, sources of supply, financial and marketing data, merchandising systems or plans, any and all intellectual property including copyrights, trademarks, trade names, service marks, patents, marketing manuals containing propriety information as well as other business or technical information proprietary to CAIR ("documents").

### Definitions
"*Confidential Information*" shall be deemed to mean any information, including, but not limited to: presentation and training manuals, and that which relates to legal research, products software source code, object code, services, development, processes, purchasing, accounting, flow charts, marketing, merchandising, and/or any customer information, other valuable business information or business practices of CAIR which is disclosed by CAIR or on its behalf, before or after the date hereof to the intern, either directly or indirectly, in writing, orally, or by visual inspection. "*Confidential Information*" shall specifically include materials and information regardless of whether it is in human or machine readable form. Notwithstanding the foregoing, information, technical data and knowledge which is generally known to the public or intern by means other than resulting from said party's breach under this Agreement or which is or was otherwise available to, know or developed by the intern, shall not be deemed confidential information to the parties to this Agreement.

### Non-Disclosure of "Confidential Information"
I agree that I shall not at any time after the termination of my internship with CAIR, use for myself or others, or disclose or divulge to others including future interns or employees any trade secrets, confidential information, or any other proprietary data of CAIR in violation of this agreement including, but not limited to: directly or indirectly inducing any CAIR customers or clients to patronize any competing professional, canvassing, soliciting or accepting any business relationship from any customers or clients of CAIR, directly or indirectly requesting or advising any customers or clients of CAIR to withdraw, curtail, and/or cancel such customer's or client's association with CAIR, or to directly or indirectly disclose to any other person, firm or corporation the names or addresses of any of any customers or clients of CAIR. The intern

further agrees to take and protect the secrecy of, and to avoid disclosure or use of, the "Confidential Information" in order to prevent it from falling into public domain or into the possession of persons not bound to maintain the confidentiality of the Confidential Information.

Intern agrees to return any originals or copies of confidential and proprietary information obtained during the course of internship, whether tangible or intangible, to CAIR immediately upon termination regardless of whether said termination is involuntary or not.

Intern agrees to not distribute this information in any medium (i.e., faxes, voicemail, electronic mail systems, or computer systems).

**General Provisions**
   a. This Agreement shall be governed by and construed in accordance with the laws of the District of Columbia as if the Agreement were made in the District of Columbia for performance entirely within the District of Columbia.
   b. Should litigation arise concerning this Agreement, the prevailing party shall be entitled to its attorney's fees and court costs in addition to any other relief which may be awarded.
   c. In the event that any provisions or any portion thereof, of this Agreement is, determined by competent judicial, legislative, or administrative authority to be prohibited by law, then such provisions or parts thereof shall be ineffective only to the extent of such prohibition, without invalidating the remaining provisions of this Agreement.
   d. The confidentially obligations of the parties shall continue for **five (5) years** from the date of disclosure, or upon the release of the information from binder of secrecy, whichever is soonest.
   e. This Agreement contains the full and complete understanding of the parties with respect to the subject matter hereof, and supersedes all prior representations and understandings, whether oral or written.

IN WITNESS WHEREOF, the parties hereto, through their duty authorized officers, have executed this Agreement as of the day and year set forth above.

CAIR                                              Intern


_____                           _____
      By (Signature)                                    By (Signature)


_____                           _____
      Name and Title                                    Name and Title