# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS,

      Plaintiff,

v.

PAUL DAVID GAUBATZ, *et al.*,

      Defendants.

Civil Action No. 09-2030 (CKK)

## MEMORANDUM OPINION
(November 3, 2009)

This matter comes before the Court on motion by Plaintiff, the Council on American-Islamic Relations (hereinafter, "CAIR" or the "organization"), for a temporary restraining order. CAIR filed the above-captioned civil action on October 29, 2009, accompanied by the now-pending [2] Motion for a Temporary Restraining Order and a Preliminary Injunction. CAIR names as Defendants Paul David Gaubatz, Chris Gaubatz, a.k.a. "David Marshall," and John and Jane Doe Nos. 1-20. As set forth in Plaintiff's Complaint, CAIR alleges that Defendants conceived and implemented a deliberate and concerted scheme to place Defendant Chris Gaubatz in an internship with CAIR under an assumed name and based upon other false representations and material omissions. CAIR further alleges that, as a consequence of these false representations and material omissions, Defendant Chris Gaubatz obtained access to CAIR's facilities and documents and proceeded to remove more than 12,000 of CAIR's internal documents and to make video and audio recordings of private meetings and conversations involving CAIR's officials and employees without consent or authorization and in violation of

his contractual, fiduciary, and other legal obligations to CAIR.  According to CAIR, Defendants

have since disclosed and caused to be published many of these documents and records, including

proprietary and privileged documents as well as documents containing the personal information

of CAIR's employees and donors.

On November 2, 2009, the Court held an on-the-record hearing to address CAIR's request

for a temporary restraining order.  Based upon the on-the-record discussion at that hearing, which

is fully incorporated herein, as well as CAIR's [2] Motion for a Temporary Restraining Order

and a Preliminary Injunction and supporting papers, the relevant case law and the record of this

case as a whole, the Court shall GRANT-IN-PART and DENY-IN-PART CAIR's request for a

temporary restraining order as set forth in its [2] Motion for a Temporary Restraining Order and a

Preliminary Injunction, for the reasons set forth below.

# I.  BACKGROUND

*A.     Factual Background*

As set forth in the Complaint, CAIR is a self-described national Muslim advocacy group

incorporated in the District of Columbia (hereinafter "D.C." or the "District") as a non-profit

501(c)(3) corporation.  Complaint, Docket No. [1], ¶ 11.  CAIR asserts that, upon information

and belief, Defendant Paul David Gaubatz is the father of Defendant Chris Gaubatz, also known

as David Marshall, and that both named Defendants are citizens and residents of the

Commonwealth of Virginia.[1]  *Id.* ¶¶ 12-13.  CAIR filed suit against Defendants, alleging that

Defendants conceived and implemented a deliberate and concerted scheme to place Defendant

---

[1] CAIR also names as Defendants John and Jane Doe 1-10, individuals whose identities are not presently known to CAIR but who CAIR asserts participated in, aided and abetted, or benefitted from the unlawful activities described herein.  Compl. ¶ 14.

Chris Gaubatz in an internship with CAIR under an assumed name and based upon other false

representations and material omissions in order to obtain access, copy and/or remove documents

from CAIR's offices and to make surreptitious recordings of meetings and conversations. *Id.* ¶¶

2-5, 15.

According to CAIR, beginning in or around April 2008 and continuing through August

2008, Defendant Chris Gaubatz worked as an intern at CAIR (working first at CAIR's Maryland-

Virginia chapter office in Herndon, VA, before moving in June 2008 to CAIR's national office

located in D.C., where he worked through August 2008). *Id.* ¶¶ 16-17; *see also* Pl.'s Mem. in

Support of Pl.'s Mot. for TRO/PI, Ex. 1 (Declaration of Raabia Wazir (herinafter "Wazir

Decl.")), ¶¶ 3-4;  Pl.'s Mem. in Support of Pl.'s Mot. for TRO/PI, Ex. 2 (Declaration of Nadhira

Al-Khalili (herinafter "Al-Khalili Decl.")), ¶¶ 2-4.  Defendant Gaubatz also returned briefly to

perform additional work over the 2008 Labor Day holiday weekend.  Wazir Decl. ¶ 12.

CAIR asserts that Defendant Chris Gaubatz obtained this internship using an assumed

name ("David Marshall") and based upon other various false representations and material

omissions.  Compl. ¶ 18; Wazir Decl. ¶¶ 3, 5; Al-Khalili ¶¶ 2-3.  CAIR alleges that he did so

with the express purpose of spying on CAIR and other Muslim organizations.  Compl. ¶ 21;

Wazir Decl. ¶ 6; Al-Khalili ¶¶ 6-8.  According to sworn declarations submitted by CAIR, had

Defendant Chris Gaubatz informed the organization that his name was Chris Gaubatz (not David

Marshall) and that he intended to work for CAIR only as a means of accessing, copying, and/or

removing CAIR documents and to record meetings and conversations with and among CAIR

officials and employees, CAIR would not have hired him or allowed him access to its properties.

Wazir Decl. ¶ 7; Al-Khalili Decl. ¶ 5.

As set forth in the sworn declaration submitted by Ms. Rabbia Wazir, then-Internship Coordinator for CAIR's Washington, D.C. office, Defendant Chris Gaubatz (a.k.a., David Marshall) was required to sign a Confidentiality and Non-Disclosure Agreement (hereinafter, "Agreement") upon being hired in June 2008 as an intern at the Washington, D.C. national office.  Wazir Decl. ¶¶ 8-11.  Ms. Wazir states that the Defendant signed the Agreement and returned it to her, and that she placed the signed Agreement in an intern file for "David Marshall."  *See id.* ¶ 10.  CAIR indicates that it has been unable to locate the intern file for "David Marshall," which was stored in an unlocked file cabinet in Ms. Wazir's office, despite its efforts to do so.  *See* Al-Khalili Decl. ¶ 23.  As there is no evidence now before the Court to contradict or otherwise refute Ms. Wazir's sworn declaration, there is no reason at this time to discredit Ms. Wazir's testimony.  Accordingly, based on the record presently before it, the Court finds that CAIR has submitted sufficient evidence indicating that Defendant Chris Gaubatz signed the Agreement, a sample of which is attached as Exhibit A to Ms. Wazir's Declaration.

In signing the Agreement, an intern such as Defendant Chris Gaubatz agrees, in relevant part, that he or she:

> shall not at any time after the termination of my internship with CAIR, use for myself or others, or disclose or divulge to others . . . any trade secrets, confidential information, or any other proprietary data of CAIR . . ., including, but no limited to: . . . directly or indirectly disclose to any other person, firm or corporation the names or addresses of any [*sic*] customers or clients of CAIR.  The intern further agrees to take and protect the secrecy of, and to avoid disclosure or use of, the "Confidential Information"[2] in order to prevent it from falling into [the] public domain or into the

---

[2] The Agreement defines "Confidential Information" as "any information, including, but not limited to:  presentation and training manuals, and that which relates to legal research, products software source code, object code, services, development, processes, purchasing, accounting, flow charts, marketing, merchandising, and/or any customer information, other valuable business information or business practices of CAIR which is disclosed by CAIR or on

possession of persons not bound to maintain the confidentiality of the Confidential Information.

Intern agrees to return any originals or copies of confidential and proprietary information obtained during the course of internship, whether tangible or intangible, to CAIR immediately upon termination regardless of whether said termination is involuntary or not.

Intern agrees not to distribute this information in any medium (i.e., faxes, voicemail, electronic mail systems, or computer systems).

*Id.*

CAIR has also provided evidence that Defendant Chris Gaubatz access to CAIR's internal documents and computer systems was limited. As set forth in both Ms. Wazir and Ms. Al-Khalili's sworn declarations provided in support of the organization's motion, CAIR did not authorize Defendant Chris Gaubatz or any other CAIR interns to: (a) access, copy , keep, take home or otherwise remove from CAIR's premises or computer systems any of CAIR's documents; (b) access any of CAIR's password-protected email or computer systems; or (c) record any meetings, conversations or other events. Wazir Decl. ¶ 14-16; Al-Khalili Decl. ¶¶ 17-22. Although Defendant Chris Gaubatz was given limited access to CAIR's computers and computer systems, such access was limited and authorized the interns to use the computer systems only to access the Internet and to save documents to the desktop space. Al-Khalili Decl. ¶ 19. In addition, although Defendant Chris Gaubatz and other interns were given access to

its behalf, before or after the date hereof to the intern, either directly or indirectly, in writing, orally, or by visual inspection." The Agreement further continues that "'Confidential Information' shall specifically include materials and information regardless of whether it is in human or machine readable form. Notwithstanding the foregoing, information, technical data and knowledge which is generally known to the public or intern by means other than resulting from said party's breach under this Agreement or which is or was otherwise available to, know or developed by the intern, shall not be deemed confidential information to the parties to this Agreement."

certain CAIR documents in order to assist the organization's effort to shred and dispose of the material, such access was similarly limited for the sole purpose of shredding the documents in accordance with CAIR's instructions; neither Defendant Chris Gaubatz nor the other interns assisting with disposal of the material were authorized to make any other use of the documents. Wazir Decl. ¶¶ 13-16. Again, as there is no evidence now before the Court to contradict or otherwise refute these sworn statements, there is no reason at this time to discredit CAIR's evidence that Defendant Chris Gaubatz was not authorized to access, copy , keep, take home or otherwise remove the materials discussed above.

CAIR asserts that Defendant Chris Gaubatz nonetheless: (1) removed more than 12,000 internal, sensitive documents — including documents marked for confidential treatment with such designations as "Company Proprietary" and "Not for Distribution-For Board Members Only" as well as attorney-client privileged documents  — without CAIR's consent or authorization and delivered those documents to Defendant Paul David Gaubatz; (2) accessed emails, computer-generated spreadsheets, and other electronic documents, which he was not authorized to access, and delivered printouts and copies of those documents to Defendant Paul David Gaubatz; and (3) made surreptitious video and audio recordings of meetings and conversations involving CAIR's officials and employees without consent or authorization, which he also delivered to Defendant Paul David Gaubatz. Compl. ¶¶ 29-32. CAIR further alleges that Defendants subsequently disclosed and caused to be published many of these documents and records, both in a book published by Defendant Paul David Gaubatz, which is entitled *Muslim Mafia: Inside the Secret Underworld That's Conspiring to Islamize America* and was released on or around October 15, 2009 (hereinafter "*Muslim Mafia*"), and on Defendant Paul David

Gaubatz's internet blog, located at http://dgaubatz.blogspot.com.  Compl. ¶¶ 33-42; *see also* Al-Khalili Decl. ¶¶ 9, 11-12.  For example, CAIR asserts that Defendant Paul David Gaubatz's blog includes postings on October 20, 2009, disclosing names, addresses, telephone numbers and email addresses of former CAIR employees, and on October 26, 2009, disclosing names, addresses, telephone number and email addresses of persons who have made donations to CAIR. *Id.* ¶¶ 16-17.

CAIR further provides evidence that Defendant Paul David Gaubatz has admitted in his book, *Muslim Mafia*, that: "David Marshall" is, in fact, Defendant Chris Gaubatz's "*nom de guerre*;" Defendant Chris Gaubatz acted as the "chief field investigator" for Defendant Paul David Gaubatz; the internship by Defendant Chris Gaubatz was intended as a "counterintelligence operation;" and during the course of his internship with CAIR, Defendant Chris Gaubatz "routinely load[ed] the trunk of his car with boxes of sensitive documents and deliver[ed] them into the custody of investigative project P. David Gaubatz who in turn stockpiled them at his office in Richmond, Virginia."  Al-Khalili Decl. ¶¶ 6-8.

Since the release of Defendant Paul David Gaubatz's book, CAIR represents that it and its employees have received various threats, including a threatening fax sent to CAIR's national office in Washington DC on October 15, 2009 and addressed to CAIR's communications director, which CAIR reported to the Federal Bureau of Investigation, and a threatening voicemail message left on October 19, 2009 for CAIR's legal counsel.  Al-Khalili Decl. ¶¶ 25-26.

B.    *Procedural Background*

CAIR filed the above-captioned civil action on October 29, 2009.  As set forth in its

Complaint, CAIR asserts five legal causes of action against Defendants: (1) Conversion; (2) Breach of Fiduciary Duty; (3) Breach of Contract; (4) Trespass; and (5) Violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2701(a). *See generally* Compl. Along with filing its Complaint in this matter, CAIR filed the now-pending Motion for a Temporary Restraining Order and a Preliminary Injunction. CAIR seeks entry of a temporary restraining order that: (1) enjoins Defendants from making any use, disclosure or publication of any (a) documents (including emails and other electronic documents) or copies thereof obtained from any office or facility of CAIR or (b) recording (whether audio or video) of meetings of or conversations involving CAIR officials or employees, or copies thereof; (2) requires Defendants to promptly remove such documents and/or recordings from any blog or other Internet site under their control; and (3) requires Defendants to promptly return such documents and recordings to CAIR. *See* Pl.'s Mem. in Support of Pl.'s Mot. for TRO/PI at 1.

Given the emergency nature of CAIR's motion, the Court issued an [4] Order on October 29, 2009, scheduling a hearing for Monday, November 2, 2009, to consider CAIR's request for a temporary restraining order, and directing Defendants to appear at that time in order to respond to CAIR's allegations. *See* 10/29/09 Order, Docket No. [4]. The Court further advised Defendants that if they failed to appear in person at the time and place designated herein, the Court may treat CAIR's motion for a temporary restraining order as conceded. *See id.*

Despite repeated efforts by both this Court and CAIR to contact Defendants prior to the hearing in order to provide timely notice of the instant suit and motion for temporary restraining order, neither Defendants nor anyone else on Defendants' behalf contacted the Court or attended the November 2, 2009 hearing. As previously noted in the Court's October 29, 2009 Order,

Chambers had attempted to contact both Defendant Paul David Gaubatz and Defendant Chris

Gaubatz, a.k.a. "David Marshall, by telephone at the numbers provided by Plaintiff in its LCvR

65.1 Certification, but was unable to reach either Defendant in person.  A voicemail message was

left for Defendant Chris Gaubatz advising him of the November 2, 2009 hearing and directing

him to contact Chambers; however, no attempt to contact Chambers was made.  As the voicemail

messaging box for Defendant Paul David Gaubatz was full, Chambers was unable to leave a

similar message for him.  *See* 10/29/09 Order.  The Court also sent a copy of its October 29,

2009 Order via overnight FedEx to Defendants at the residential address provided by Plaintiff.

In addition, as orally represented to the Court at the time the Complaint was filed and as

repeated in CAIR's LCvR 65. 1 Certification filed with its motion, counsel for the organization

made multiple efforts to contact Defendants by telephone and email and also provided courtesy

copies of the Complaint as well as CAIR's Motion for a Temporary Restraining Order and a

Preliminary Injunction and supporting memorandum and papers to Defendants via email in

advance of that hearing.  CAIR subsequently advised the Court at the November 2, 2009 Hearing

that it had also retained a service processor to attempt to effect service of the Complaint and

Motion for a Temporary Restraining Order and a Preliminary Injunction on Defendants, but had

not, as of the date of the Hearing, been successful in perfecting service.

Notwithstanding the above-described efforts to contact Defendants in advance of the

November 2, 2009 Hearing — which were described orally in detail during the Court's on-the-

record discussion at that Hearing — Defendants did not contact the Court regarding CAIR's

motion nor did they attend the Hearing or otherwise confirm notice of the lawsuit.  Accordingly,

despite the existence of circumstantial evidence suggesting that Defendants were aware of these

proceedings in advance of the Hearing,[3] the Court proceeded in an abundance of caution to consider CAIR's motion at the Hearing as one seeking an *ex parte* temporary restraining order without notice to the opposing party.

At the conclusion of the November 2, 2009 Hearing, the Court indicated that it was inclined to grant CAIR's request for a temporary restraining order — albeit in a much more limited form than requested by CAIR — but indicated that counsel for CAIR was required to first "certif[y] in writing any efforts made to give notice and the reasons why [notice] should not be required," pursuant to Federal Rule of Civil Procedure 65(b)(1)(B), before the Court would issue any final order.  In addition, the Court raised a number of issues and concerns at the November 2, 2009 Hearing and requested counsel for CAIR to provide the Court with further clarification as soon as practicable.  The next day, November 3, 2009, CAIR filed its supplemental notice, as directed by the Court, as well as two additional supplemental declarations that sought to address the Court's concerns raised at the Hearing.  *See* Pl.'s Not. of Filing of Supp. LCvR 65.1 Certification and Additional Declarations, Docket No. [8].

As set forth therein, counsel for CAIR explains in detail his repeated efforts to contact Defendants and to provide them with actual notice of this lawsuit and CAIR's motion.  *See id.*, Ex. 1 (Supp. LCvR 65.1 Certification).  CAIR further explains that, on 12:31 P.M. on November

---

[3] News reports posted on various Internet sites as well as certain statements published on Defendant Paul David Gaubatz's own blog indicate that, at a minium, Defendant Paul David Gaubatz was aware of the pending suit prior to the November 2, 2009 Hearing.  These sites also suggest that Defendant Paul David Gaubatz was responding to emails directed to his email account, which appears to be the same email account used by CAIR in providing Defendants with courtesy copies of the Complaint and Motion for a Temporary Restraining Order and a Preliminary Injunction.  *See, e.g.,* Pl.'s Not. of Filing of Supp. LCvR 65.1 Certification and Additional Declarations, Docket No. [8], Ex. 1 (Supp. LCvR 65.1 Certification), ¶¶ 6-7.

3, 2009, as counsel was preparing the Supplemental LCvR 65.1 Certification, he was contacted by Mr. Dan Horowitz, an attorney who advised that he was representing both Defendants Paul David Gaubatz and Chris Gaubatz. *Id.* ¶ 9. Mr. Horowitz further advised counsel for CAIR that he had access to and had located pleadings for this case and that he, as counsel for Defendants, had actual notice of CAIR's Motion for a Temporary Restraining Order and a Preliminary Injunction. *See id.* Although counsel for CAIR advised Mr. Horowitz that the Court had stated at the November 2, 2009 Hearing that it was inclined to grant the temporary restraining order in part and Mr. Horowitz indicated that Defendants intended to oppose the request, the Court notes that — as of the issuance of this Memorandum Opinion and accompanying Order — neither Defendants nor counsel for Defendants had yet made any efforts to contact the Court or to file a notice of appearance on behalf of Defendants. Accordingly, given the emergency nature of CAIR's request for a temporary restraining order, the Court shall proceed to consider CAIR's motion on the record now before it.

## II. LEGAL STANDARDS

The standard for obtaining injunctive relief through either a temporary restraining order or a preliminary injunction is well established. A moving party must show: (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *Hall v. Daschle*, 599 F. Supp. 2d 1, 6 n. 2 (D.D.C. 2009) ( "[t]he same standard applies to both temporary restraining orders and to preliminary injunctions"). In applying this four-factored standard, district courts may employ a

sliding scale as to which a particularly strong showing in one area can compensate for weakness in another. *Id.* (quoting *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)).

As discussed above, circumstantial evidence suggests that Defendants had actual notice of CAIR's request for a temporary restraining order prior to the November 2, 2009 Hearing. Moreover, counsel for CAIR have now certified that Defendants have notice, through counsel, of the pending motion for a temporary restraining order. Nonetheless, as it is not clear if Defendants had definitive notice of the motion in advance of the November 2, 2009 Hearing and as neither Defendants nor their counsel have made any effort to contact the Court with respect to CAIR's motion, the Court shall — in an abundance of caution — proceed to evaluate CAIR's request under Federal Rule of Civil Procedure 65(b), which addresses the issuance of temporary restraining orders made without notice to the adverse party. Specifically, Rule 65(b) provides, in relevant part, as follows:

> (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
>> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>>
>> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.
>
> (2) Contents; Expiration. Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry--not to exceed 10 days--that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension.

Fed. R. Civ. P. 65(b)(1)-(2).

As the Supreme Court has noted, Rule 65(b)'s stringent restrictions "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974). For that reason, *ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Id.* at 439. *Ex parte* temporary restraining orders may therefore be appropriate, where, as here, the plaintiff has shown that notice prior to issuance of the order was impossible because the defendant could not be located in a timely manner. *See First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) ("The normal circumstance for which the district court would be justified in proceeding *ex parte* is where notice to the adverse party is impossible, as in the cases where the adverse party is unknown or is unable to be found."); *see also Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984) ("*Ex parte* temporary restraining orders are most familiar to courts where notice to the adversary party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.").

### III. DISCUSSION

*A.     The Merits of CAIR's Motion for an Ex Parte Temporary Restraining Order*

1.     <u>Irreparable Harm</u>

In the instant case, the Court concludes, based on the evidence presented by CAIR — the only evidence now before the Court — that the organization will likely suffer irreparable injury by further disclosure of its proprietary, confidential and privileged information absent issuance of

a temporary restraining order in this case before actual notice to Defendants may be confirmed and they appear before the Court in person to be heard in opposition to this motion.  As discussed above, the record now before the Court supports a finding that Defendants have unlawfully obtained access to, and have already caused repeated public disclosure of, material containing CAIR's proprietary, confidential and privileged information.  Although Defendants have not yet appeared before the Court in person, CAIR has provided sworn declarations detailing apparent admissions made by Defendant Paul David Gaubatz in his book, *Muslim Mafia*, in which he admits that his son, Defendant Chris Gaubatz, obtained an internship with CAIR under the "*nom de guerre*" of "David Marshall," and "routinely load[ed] the trunk of his car with boxes of sensitive [CAIR] documents and deliver[ed] them into the custody of investigative project P. David Gaubatz who in turn stockpiled them at his office in Richmond, Virginia."  Al-Khalili Decl. ¶¶ 6-8.

CAIR has further provided evidence that Defendants have caused such material to be used and publicly disclosed.  For example, CAIR has provided sworn declarations showing that Defendant Paul David Gaubatz has publicly disclosed on his blog the names, addresses, telephone numbers and email addresses of former CAIR employees and donors.  Al-Khalili Decl. *Id.* ¶¶ 16-17.  Accordingly, on this record, the Court concludes that, in order to preserve the status quo and to prevent  irreparable injury until Defendants may be heard in opposition, it is necessary to enjoin Defendants from further using, disclosing, or publishing any of CAIR's internal documents obtained by Defendant Chris Gaubatz from CAIR's facilities and any audio and/or video recordings taken of meetings and conversations with CAIR officials and employees.  CAIR asserts in this lawsuit that such material contains proprietary, privileged and confidential

-14-

information.  If such material is further used and/or continues to be disclosed before the Court

has an opportunity to hear Defendants and to determine the merits of CAIR's claim, the very

rights CAIR seeks to protect will have been destroyed.  *Cf. In re Sealed Case 98-3077*, 151 F.3d

1059, 1065 (D.C. Cir. 1998) ("In this respect, petitioner is asserting something akin to a privilege

insofar as 'once [the] putatively protected material is disclosed, the very right sought to be

protected has been destroyed.'") (quoting *In re Ford Motor Co.*, 110 F.3d 954, 963 (3rd Cir.

1997)).  *See also Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 77 (D.D.C. 2001)

(finding that plaintiff would be irreparably harmed absent temporary restraining order enjoining

defendants from using its proprietary information); *Nat'l Elevator Cab & Door Corp. v. H&B,

Inc.*, 282 Fed. Appx. 885, 887 (2d Cir. 2008) (finding that plaintiff "would suffer irreparable

harm if [defendant] was not enjoined from confidential information belonging to [defendant]").

The Court shall therefore GRANT CAIR's request for a temporary restraining order enjoining

Defendants from making any use, disclosure or publication of any (a) document (including

emails and other electronic documents) or copy thereof obtained by Defendant Chris Gaubatz

from CAIR's offices or facilities, or (b) recording (or copy thereof), whether audio or video, of

meetings or of conversations involving CAIR officials or employees.

Of particular concern are materials that contain attorney-client privileged information,

proprietary donor information, and confidential employee personal information.  First, with

respect to privileged information, as the D.C. Circuit has held, "the general injury caused by the

breach of the attorney-client privilege and the harm resulting from the disclosure of privileged

documents to an adverse party is clear enough."  *United States v. Phillip Morris, Inc.*, 314 F.3d

612, 622 (D.C. Cir. 2003).  Second, with respect to the personal information of CAIR's

employees and donors, the Court agrees with CAIR that "public disclosure of the confidential, personal information of employees of, and contributors to, the organization negatively impacts the organization's ability to attract employees and contributors as these individuals are less willing to participate if there is a risk that their private information will be publicly disclosed." Al-Khalili Decl. ¶ 28.  Disclosure of a non-profit corporation's confidential donor list, like disclosure of a for-profit corporation's customer list, "might well lead to a loss of trust and goodwill" if donors "begin to feel that their personal information is not safe with plaintiff." *Morgan Stanley*, 150 F. Supp. 2d at 77.  CAIR's employees have also reported a "dramatic increase in the number of [threatening] communications since the release of Mr. Gaubatz's book, *Muslim Mafia*."  Al-Khalili Decl. ¶¶ 24-26.  Given CAIR's particularized showing that use and disclosure of these materials is of heightened concern, the Court shall also require Defendants to return any materials obtained from CAIR by Defendant Chris Gaubatz that contain attorney-client privileged information, proprietary donor information, and confidential employee personal information.

Finally, with respect to the above-mentioned employee and donor lists, CAIR has presented evidence (both at the November 2, 2009 Hearing and in its moving papers) that such lists were posted on Defendant Paul David Gaubatz's blog on October 20, 2009 and on October 26, 2009, respectively.  Al-Khalili Decl. ¶¶ 16-17.  In light of CAIR's showing, discussed above, that continued public disclosure of this information is likely to result in irreparable injury — and, more particularly, in threats to CAIR's employees — the Court shall also require Defendants to remove the above-mentioned postings from Defendant Paul David Gaubatz's blog.  In addition, to the extent that Defendants have caused to be posted any documents containing privileged

attorney-client communications (on either Defendant Paul David Gaubatz's blog, or any other Internet site under Defendants' control), the Court shall require Defendants to remove any such privileged postings as well.  Although CAIR has more generally requested an order requiring Defendants to remove any documents and/or recordings from any blog or other Internet site under Defendants' control, CAIR specifically identified only the above-two postings at the Hearing and the Court's temporary restraining order shall therefore require removal only of these these specific postings as well as any privileged material that may also have been posted online.[4]

### 2.    Likelihood of Success on the Merits

As discussed above, CAIR sets forth five causes of action in its Complaint.  On the record now before it, the Court concludes that CAIR has a substantial likelihood of success with respect to its claim for conversion and, absent evidence to the contrary from Defendants, its breach of contract claim as well.  The Court need not reach the likelihood of CAIR's success as to its remaining claims, given that its claims for breach of fiduciary duty, trespass, and violations of the Electronic Communications Privacy Act are simply different legal theories for seeking monetary

---

[4] The Court notes that CAIR, in its [8] Notice of Filing of Supplemental LCvR 65.1 Certification and Additional Declarations, indicates that "Defendant Paul David Gaubatz has publicly disclosed a number of documents on his website and caused additional documents to be disclosed on at least one other website" and that "[s]uch disclosures are not limited to the donor list and list of former employees which were previously identified specifically and discussed in detail at the hearing on November 2."  *See id.* at 2.  Although Ms. Nadhira F. Al-Khalili provides a further description of these documents in her supplemental declaration, *see id.*, Ex. 3 (Decl. of Nadhira F. Al-Khalili), ¶ 10, it is not immediately apparent to the Court whether such documents contain privileged attorney-client information or other information that would warrant an order requiring their immediate removal.  Accordingly, the Court declines, at this time, to extent its order to include specific documents not identified at the November 2, 2009 hearing. The Court notes, however, that to the extent any of the specific documents identified by Ms. Al-Khalili contain privileged attorney-client communications, the Court has already provided above that such material must be removed from the Internet.

and injunctive relief regarding the same material.  Accordingly, as set forth below, the Court

finds that the organization's likelihood of success as to its conversion and breach of contract

claim further favors granting a limited temporary restraining order at this time.

Turning first to CAIR's claim of conversion, in the District of Columbia, "[c]onversion

has generally been defined as any unlawful exercise of ownership, dominion or control over the

personal property of another in denial or repudiation of his rights thereto." *Chase Manhattan*

*Bank v. Burden*, 489 A.2d 494, 495 (D.C. 1985).  In this case, CAIR has alleged that Defendant

Chris Gaubatz removed approximately 12,000 documents from the organization's premises and

delivered them to Defendant Paul David Gaubatz without authorization or authority.  Compl. ¶¶

49-51.  As discussed above, it appears that there is no dispute that such documents were removed

from CAIR by Defendant Chris Gaubatz.  *See* Al-Khalili Decl. ¶¶ 6-8 (describing admissions in

*Muslim Mafia* that Defendant Chris Gaubatz "routinely load[ed] the trunk of his car with boxes

of sensitive documents and deliver[ed] them into the custody of investigative project P. David

Gaubatz who in turn stockpiled them at his office in Richmond, Virginia").  In addition, CAIR

has submitted sworn declarations averring that Chris Gaubatz was authorized to access the

documents only for the purposes of shredding them in accordance with CAIR instructions and

was not authorized to copy, keep, take home, or otherwise remove from CAIR's premises any of

the documents or to transfer or deliver such documents to any third party.  *See* Wazir Decl. ¶¶ 13-

16; *see also* Al-Khalili Decl. ¶ 17.  Accordingly, on the record now before it, the Court finds that

CAIR has demonstrated a substantial likelihood of success with respect to its conversion claim.

Second, CAIR alleges that Defendant Chris Gaubatz breached the obligations imposed

by the Confidentiality and Non-Disclosure Agreement.  In light of the evidence now before the

-18-

Court, it appears that CAIR is also likely to succeed on this claim.  CAIR has submitted sworn

declarations averring that Defendant Chris Gaubatz signed a Confidentiality and Non-Disclosure

Agreement, in which he agreed in relevant part: (a) not to "use for myself or others, or disclose or

divulge to others . . . any trade secrets, confidential information, or any other proprietary data of

CAIR . . ., including, but no limited to: . . . directly or indirectly disclos[ing] to any other person,

firm or corporation the names or addresses of any customers or clients of CAIR; (b) "to take and

protect the secrecy of, and to avoid disclosure or use of, the 'Confidential Information' in order

to prevent it from falling into [the] public domain or into the possession of persons not bound to

maintain the confidentiality of the Confidential Information;" and (c) "not to distribute this

information in any medium (i.e., faxes, voicemail, electronic mail systems, or computer

systems)."  Wazir Decl. ¶¶ 8-11 & Ex. A to Wazir Decl. (Agreement).  As set forth above, CAIR

has presented evidence that supports finding at this time and on the evidence now in the record

that Defendant Chris Gaubatz removed documents from CAIR and provided the documents to

Defendant Paul David Gaubatz in violation of the Agreement.  *See, e.g.,* Al-Khalili Decl. ¶ 8

(quoting passage from *Muslim Mafia* asserting that Defendant Chris Gaubatz "routinely load[ed]

the trunk of his car with boxes of sensitive documents and deliver[ed] them into the custody of

investigative leader P. David Gaubatz who in turn stockpiled them at his office in Richmond,

Virginia.").  Accordingly, on the record presently before it, the Court finds that CAIR has at this

time demonstrated a substantial likelihood of success with respect to its breach of contract claim

as well.  This factor therefore further weighs in favor of issuing a temporary restraining order in

this case.

3.      Balance of the Equities

Finally, the Court finds that issuance of a temporary restraining order to preserve the

status quo and to prevent irreparable harm to CAIR would not substantially injure Defendants

and would further the public interest.  On the record now before the Court, it does not appear that

Defendants would be substantially injured by a limited temporary restraining order precluding

them from further using or disclosing information obtained from CAIR for a defined ten-day

period of time.  This is particularly so where, as here, the evidence in the record indicates that

Defendant Chris Gaubatz signed a Confidentiality and Non-Disclosure Agreement specifically

agreeing not to use or disclose such information and to return any such information upon

termination; the temporary restraining order is therefore limited only to enjoining conduct already

agreed to by Defendant.  *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Wertz*, 298 F. Supp.

2d 27, 34 (D.D.C. 2002) ("[T]he Court does not believe that a temporary restraining order

preventing the [] defendants . . . from engaging in conduct that they specifically agreed to avoid

when they signed their employment agreements does not cause substantial injury to them."); *see*

*also Nat'l Elevator Cab & Door Corp.*, 282 Fed. Appx. at 887 (finding that plaintiff "would

suffer irreparable harm if [defendant] was not enjoined from confidential information belonging

to [defendant] - to which [defendant] gained access only by signing the Agreement").

In addition, the Court finds that issuance of a temporary restraining order — to the extent

that it would protect CAIR's privileged attorney-client, proprietary, and confidential material —

would further the public interest.  As the D.C. Circuit has observed, "the attorney-client privilege

is an 'institutionally significant status or relationship' with deep roots in our nation's adversary

system."  *Phillip Morris*, 314 F.3d at 622 (quoting *In re Ford Motor Co.*, 110 F.3d 954, 960 (3rd

Cir. 1997)).  "As such, the privilege advances 'broader public interests in the observance of law

and administration of justice.'"  *Id.* at 622 (quoting *Upjohn Co. v. United States*, 449 U.S. 383,

389 (1981)).  The Court concludes that preventing further disclosure "to allow [CAIR] to defend

its claim of privilege will serve these same public interests."  *Id.*  The public interest also

counsels in favor of enforcing the parties' Confidentiality and Non-Disclosure Agreement and

precluding use of alleged proprietary information pending a determination on the merits.  *See*

*Suntrust Inv. Servs., Inc. v. Cleary*, Civ. Act. No. 09-1066, 2009 WL 1651541 (D.D.C. June 12,

2009); *see also Merrill Lynch*, 298 F. Supp. 2d at 34 ("[T]he Court believes the public interest is

served by protecting confidential business information and trade secrets, and enforcing valid

contractual provisions, to which parties have voluntarily entered.").  Accordingly, the Court finds

that, on the record now before it, the balance of the equities further favors issuance of a limited

temporary restraining order in this case.

      The Court shall therefore GRANT-IN-PART and DENY-IN-PART CAIR's request for a

temporary restraining order, as set forth in its [2] Motion for a Temporary Restraining Order and

a Preliminary Injunction.

      Specifically, the Court shall GRANT the organization's request for a temporary

restraining order that:

> (1) enjoins Defendants Paul David Gaubatz and Chris Gaubatz, along with any of
> their agents, employees or associates, from making any use, disclosure or publication
> of any (a) document (including emails and other electronic documents) or copy
> thereof obtained by Defendant Chris Gaubatz from CAIR's offices or facilities, or (b)
> recording (or copy thereof), whether audio or video, of meetings or of conversations
> involving CAIR officials or employees;
>
> (2) requires Defendants Paul David Gaubatz and Chris Gaubatz, along with any of
> their agents, employees or associates, to promptly remove from Defendant Paul
> David Gaubatz's blog, which is located at http:///dgaubatz.blogspot.com, copies of

CAIR's employee and donor lists (with personal contact information) that were posted on October 20, 2009 and on October 26, 2009, respectively;

(3) requires Defendants Paul David Gaubatz and Chris Gaubatz, along with any of their agents, employees or associates, to promptly remove from Defendant Paul David Gaubatz's blog, which is located at http://dgaubatz.blogspot.com, or any other Internet site under Defendants' control, any of the following material that contains or otherwise reflects privileged attorney-client communications: (a) document (including emails and other electronic documents) or copy thereof obtained by Defendant Chris Gaubatz from CAIR's offices or facilities, or (b) recording (or copy thereof), whether audio or video, of meetings or of conversations reflecting privileged attorney-client communications involving CAIR officials or employees;

(4) requires Defendants Paul David Gaubatz and Chris Gaubatz, along with any of their agents, employees or associates, to promptly return to counsel for CAIR any documents (including emails and other electronic documents) or recordings (whether audio or video), or copies thereof, that were obtained by Defendant Chris Gaubatz from CAIR's offices or facilities and that contain or otherwise reflect privileged attorney-client communications; and

(5) requires Defendants Paul David Gaubatz and Chris Gaubatz, along with any of their agents, employees or associates, to promptly return to counsel for CAIR any copies of CAIR's donor and employee lists that were obtained or by Defendant Chris Gaubatz from CAIR's offices or facilities.

Except as set forth above, CAIR's request for a temporary restraining order effective until November 18, 2009, is otherwise DENIED.  The temporary restraining order shall remain in effect until and including **November 18, 2009** (i.e., ten days, excluding weekends and Veterans' Day, as calculated in compliance with Federal Rule of Civil Procedure 6), unless within such time, either party moves for an exception of such time for good cause shown or Defendants consent to a longer extension.[5]

_____

[5] The Court notes that CAIR, in its [8] Notice of Filing of Supplemental LCvR 65.1 Certification and Additional Declarations, submits that good cause exists at this time to extend the temporary restraining order for a period of 20 days. *Id.* at 2.  The Court declines to consider this request at this time as it is premature.  If CAIR continues to believe a further extension of the temporary restraining order is warranted, counsel must file a motion for an extension as may be appropriate.

B.      Security

Pursuant to Federal Rule of Civil Procedure 65(c), "[t]he court may issue . . . a temporary

restraining order only if the movant gives security in an amount that the court considers proper to

pay the costs and damages sustained by any party found to have been wrongfully enjoined or

restrained."  The Rule has been read "to vest broad discretion in the district court to determine

the appropriate amount of an injunction bond." *DSE, Inc. v. US*, 169 F.3d 21, 33 (D.C. Cir.

1999); *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n,* 636 F.2d 755, 759 (D.C. Cir. 1980)

(discussing the widely recognized discretion that a district court granting temporary injunctive

relief has with respect to the security requirement of Rule 65(c)).  Upon consideration of the

record as a whole, the Court, in its discretion, concludes that no security is necessary in this case.

As discussed above, it does not appear that Defendants would be substantially injured by

issuance of a limited temporary restraining order precluding them from further using or

disclosing information obtained from CAIR.  Accordingly, the Court concludes that payment of a

security by CAIR is unnecessary at this time.

C.      Further Proceedings

As indicated at the November 2, 2009 Hearing, CAIR shall supplement its [2] Motion for

a Temporary Restraining Order and a Preliminary Injunction on or before **November 4, 2009**, to

address a number of issues raised by the Court at that time.  In addition, as explained above,

CAIR has not yet been able to perfect service on Defendants.  The Court notes that, once service

of the Complaint and the Motion for a Preliminary Injunction (as may be supplemented) is made,

Defendants must file their opposition to CAIR's motion within **five** days of receipt of service,

pursuant to Local Civil Rule 65.1(c).  Accordingly, CAIR is required to file proof of service with

-23-

the Court as soon as possible after service is made so that the Court is aware of service and able

to order an appropriate briefing schedule for addressing the organization's motion.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT-IN-PART and DENY-IN-PART

CAIR's request for a temporary restraining order, as set forth in its [2] Motion for a Temporary

Restraining Order and a Preliminary Injunction.  Specifically, the Court shall issue a temporary

restraining order that:

> (1) enjoins Defendants Paul David Gaubatz and Chris Gaubatz, along with any of their agents, employees or associates, from making any use, disclosure or publication of any (a) document (including emails and other electronic documents) or copy thereof obtained by Defendant Chris Gaubatz from CAIR's offices or facilities, or (b) recording (or copy thereof), whether audio or video, of meetings or of conversations involving CAIR officials or employees;

> (2) requires Defendants Paul David Gaubatz and Chris Gaubatz, along with any of their agents, employees or associates, to promptly remove from Defendant Paul David Gaubatz's blog, which is located at http:///dgaubatz.blogspot.com, copies of CAIR's employee and donor lists (with personal contact information) that were posted on October 20, 2009 and on October 26, 2009, respectively;

> (3) requires Defendants Paul David Gaubatz and Chris Gaubatz, along with any of their agents, employees or associates, to promptly remove from Defendant Paul David Gaubatz's blog, which is located at http:///dgaubatz.blogspot.com, or any other Internet site under Defendants' control, any of the following material that contains or otherwise reflects privileged attorney-client communications: (a) document (including emails and other electronic documents) or copy thereof obtained by Defendant Chris Gaubatz from CAIR's offices or facilities, or (b) recording (or copy thereof), whether audio or video, of meetings or of conversations reflecting privileged attorney-client communications involving CAIR officials or employees;

> (4) requires Defendants Paul David Gaubatz and Chris Gaubatz, along with any of their agents, employees or associates, to promptly return to counsel for CAIR any documents (including emails and other electronic documents) or recordings (whether audio or video), or copies thereof, that were obtained by Defendant Chris Gaubatz from CAIR's offices or facilities and that contain or otherwise reflect privileged attorney-client communications; and

-24-

(5) requires Defendants Paul David Gaubatz and Chris Gaubatz, along with any of their agents, employees or associates, to promptly return to counsel for CAIR any copies of CAIR's donor and employee lists that were obtained or by Defendant Chris Gaubatz from CAIR's offices or facilities.

Except as set forth above, CAIR's request for a temporary restraining order is otherwise DENIED. The temporary restraining order shall remain in effect until and including **November 18, 2009** (i.e., ten days, excluding weekends and Veterans' Day, as calculated in compliance with Federal Rule of Civil Procedure 6), unless within such time, either party moves for an exception of such time for good cause shown or Defendants consent to a longer extension.

In addition, CAIR shall, on or before **November 4, 2009**, file a renewed Motion for a Preliminary Injunction that supplements its previous motion and specifically addresses a number of issues raised by the Court on-the-record at the hearing. CAIR shall also file proof of service with the Court as soon as practicable once service of the Complaint and the Motion for a Preliminary Injunction (as may be supplemented) is made. At that time, the Court shall set a schedule for briefing CAIR's Motion for a Preliminary Injunction and for further proceeding with this matter, as may be appropriate.

Finally, as no counsel have yet entered an appearance on Defendants behalf, the Court shall direct Clerk of the Court to send a copy of this Order and accompanying Memorandum Opinion to Defendants: (1) by email at davegaubatz@gmail.com; and (2) by overnight delivery to 13296 Hull Street, #150, Midlothian, VA 23112. An appropriate Order accompanies this Memorandum Opinion.

Date:   November 3, 2009

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

-25-