**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 09-2030 (CKK) |
| v. | ) ) | Judge Colleen Kollar-Kotelly |
| PAUL DAVID GAUBATZ; CHRIS GAUBATZ, a.k.a. "David Marshall"; and JOHN AND JANE DOE NOS. 1-10, | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S RENEWAL OF MOTION FOR PRELIMINARY INJUNCTION AND
SUPPLEMENTAL MEMORANDUM IN SUPPORT THEREOF**

In light of the Court's November 3, 2009 Order (Doc. 9), Plaintiff, the Council on American-Islamic Relations (CAIR), renews its motion for a preliminary injunction (Doc. 2) and requests that the Court schedule a hearing on that motion as soon as is reasonably practicable now that service of process has been effected upon Defendants. CAIR hereby reasserts and incorporates by reference herein the arguments, points, and authorities set forth in its previously-submitted Memorandum in Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction. (Doc. 2-2.) CAIR also relies upon the previously-submitted October 27, 2009 and November 2, 2009 declarations of Raabia Wazir (Docs. 7-2 & 8-3) and the October 29, 2009 and November 2, 2009 declarations of Nadhira Al-Khalili (Docs. 7-3 & 8-4). Additionally, CAIR submits the following supplemental memorandum in further support of its request for a preliminary injunction.

**ARGUMENT**

**A.      The Irreparable Harm to CAIR Is Not Limited to Those Documents or Recordings Which May Reflect Privileged, Proprietary, or Confidential Information**

The Court granted CAIR's request for a temporary restraining order prohibiting Defendants from making any further use or disclosure of any documents or recordings obtained from CAIR or of CAIR meetings or conversations, but limited those portions of its Order requiring Defendants to remove such materials from the Internet and return them to CAIR to documents or recordings subject to the attorney-client privilege and the list of former CAIR employees posted on the Internet by Defendant Paul David Gaubatz on October 20, 2009, and the list of CAIR contributors posted on October 26, 2009.  This, of course, does not cover all of the documents and recordings surreptitiously obtained by Defendants.

As the Court noted at the November 2 hearing, the various documents and recordings at issue can generally be grouped into at least four categories based upon their general nature:  (1) materials subject to the attorney-client privilege and/or work product doctrine; (2) proprietary materials; (3) confidential materials (as the term "confidential" may be defined either in the Confidentiality and Non-Disclosure Agreement or the case law); and (4) other internal or otherwise non-public CAIR documents or recordings reflecting internal or otherwise non-public CAIR affairs.[1]  CAIR seeks the prompt return of *all* such documents or recordings and their removal from the Internet.  The irreparable harm suffered by CAIR is not confined (or even necessarily ranked in order of severity) by these four categories of materials.

---

[1] There could be a fifth category, namely documents or copies of documents taken from CAIR that were already public and publicly available such as newspapers, magazines, or copies of final press releases issued by CAIR.  It is possible that such documents were included among the old files and boxes given to Defendant Chris Gaubatz and other interns to shred.  (*See* 11/2/09 Al-Khalili Decl. ¶ 5.)  To the extent Defendants did take from CAIR documents or copies of documents that were already public and publicly available, CAIR acknowledges that the resulting harm would only be nominal.  However, such is not the nature of any of the documents that Defendants have used or disclosed in the book *Muslim Mafia* or on the Internet to date.

**1.      Attorney-Client Privilege and Work Product Materials**

To date, CAIR has identified at least four specific documents cited or disclosed by Defendants which may be protected by the attorney-client privilege or work product doctrine. Specifically, the book cites:  (1) a January 3, 2007 "interoffice email" from Arasalan Iftikhar, an attorney and CAIR's former Legal Director, to CAIR officials (pp. 52, 369); (2) an August 7, 2006 memorandum regarding a potential lawsuit authored by Omar T. Mohammedi, an attorney in New York and sent to CAIR officials (pp. 68, 372); and (3) an April 20, 2007 email from a CAIR official to Arasalan Iftikhar, an attorney and CAIR's former Legal Director regarding an ongoing litigation matter (pp. 224, 395).  (10/29/09 Al-Khalili Decl. ¶ 12.)  In addition, on October 29, 2009, Defendant Paul David Gaubatz posted a link on his blog to a December 5, 2006 email from Arsalan Iftikhar, an attorney and CAIR's former Legal Director, to CAIR officials including a copy of a letter to counsel for US Airways regarding an ongoing legal dispute and notes of a conference call of CAIR officials regarding the case.  (11/2/09 Al-Khalili Decl. ¶ 10(h)(i).)

These are four potentially privileged documents CAIR has been able to identify based solely on the citations or descriptions of the documents in Mr. Gaubatz's book and on his blog, but CAIR is concerned that Defendants may have other such documents and that other documents that have already been cited or described may, upon closer examination, prove to be privileged.  In its November 3, 2009 temporary restraining order, the Court required Defendants to promptly return documents or recordings "that contain or otherwise reflect privileged attorney-client communications."  (Doc. 9 ¶ 4.)  In the preliminary injunction, CAIR requests that *all* documents and recordings be returned so that the determination of whether a document is privileged or work product is not made solely by Defendants.  CAIR naturally has a broader base

of knowledge regarding the individuals associated with the documents and its own history than

Defendants.  CAIR, therefore, is in a better position to identify that which might be privileged.

Further, Defendants' interests and motivations are, quite obviously, not aligned with CAIR.  A

preliminary injunction requiring Defendants to return all of the documents and recordings would

permit CAIR the opportunity to examine the documents taken and evaluate for itself which

documents are privileged or protected work product.  Leaving this determination to Defendants

cannot insure that all potentially privileged documents will be identified and returned and risks

further injury to CAIR's rights.

### 2.    Proprietary Materials

CAIR has already identified the proprietary nature of the list of CAIR donors disclosed

on Defendant Paul David Gaubatz's website on October 26, 2009.  The Court agreed that this

information was proprietary and accordingly ordered the removal of the October 26, 2009 post

and the return of that document along with any other materials containing "proprietary donor

information."  (Doc. 10 at 16.)  Any preliminary injunction should similarly require the removal

and return of any materials containing donor information.  CAIR notes that additional donor and

membership information is included in documents reproduced in the book, *Muslim Mafia*,

including Figures 7, 8, and 9.  (*See also* 11/2/09 Al-Khalili Decl., Exh. A at 386 (citing "Map of

CAIR's 'Members/Donors by State").)

Donor information, however, is not the only proprietary information Defendants have

stolen or disclosed.  In addition, Defendant Paul David Gaubatz has caused to be posted on the

Internet one page of a document dated January 13 or 14, 2007 marked, at the bottom of the page,

as "Company Proprietary" and "Council on American-Islamic Relations 2007-2008 Strategic

Plan."  (11/2/09 Al-Khalili Decl. ¶ 10(h)(ix).)  This document also appears to be reproduced as

Figure 1 in the book, *Muslim Mafia*.  Though not expressly marked proprietary (at least in the descriptions or excerpts disclosed by Defendant Paul David Gaubatz), there are a number of similar internal strategy documents or operations reports which Defendants have obtained and posted or used.  (11/2/09 Al-Khalili Decl. ¶ 10(f), (h)(ii), (h)(v), & (i); *see also id.*, Exh. A at 367 (citing "CAIR Fund Raising Plan 2006").)  CAIR's internal reports, assessments, and strategy documents are proprietary in nature or, at a minimum, confidential.  Just as with its donor list, the public disclosure of CAIR's internal, deliberative documents produces an injury that is difficult to repair or remedy once the disclosure has been made and is not readily reducible to monetary damages.  Accordingly, Defendants should be required to remove from the Internet and return all proprietary documents, whether they relate to donor information or other proprietary matters such as strategy, plans, proposals, or other internal deliberations.

### 3.      "Confidential" Materials

In its November 2 Opinion and Order, the Court recognized as confidential the personal information of CAIR's employees and ordered the removal and return of the document listing former employee information posted by Defendant Paul David Gaubatz on his blog on October 20, 2009, and the return of any materials containing "confidential employee personal information."  In addition to employee personal information, there are a number of other documents obtained, used, and disclosed by Defendants which CAIR has considered and, in some cases, affirmatively labeled "confidential."  Specifically, such documents include notes of staff or board meetings, outlines or agendas for staff or board meetings, internal reports, and drafts of letters, statements, or press releases.  Many of these types of documents are included among those Defendant Paul David Gaubatz has caused to be posted on the Internet.  (*See* 11/2/09 Al-Khalili Decl. ¶¶ 10(b), (f), (h)(ii), (h)(v), (h)(vi) (affirmatively marked

"**CONFIDENTIAL**"), (h)(x), & (i).)  In addition, a number of internal financial documents are cited in the book, *Muslim Mafia*, including ledgers, fundraising plans, and details of investments.  (*See, e.g.*, 11/2/09 Al-Kahlili Decl., Exh. A at 363 (citing "CAIR ledger"), 367 (citing "CAIR Fund Raising Plan 2006"), & 387 (referencing appendix reproducing "CAIR listing of its investment properties")).)  Whether under the Confidentiality and Non-Disclosure Agreement or common law relating to employees' implied duty of confidentiality and non-disclosure, the public disclosure of this sort of sensitive, internal information violates Defendant Chris Gaubatz's obligations to CAIR and the continued use and/or presence of that information in the public domain only further vitiates CAIR's confidentiality rights.

### 4.      Internal or Otherwise Non-Public Materials

Defendants also appear to have taken from CAIR's internal files a number of documents which, though not privileged or proprietary, were nonetheless non-public documents.  For example, Defendants have posted on the Internet and referenced and/or reproduced in the book, *Muslim Mafia*, numerous letters and emails from CAIR or CAIR officials to third parties (and vice versa).  (*See, e.g.*, 11/2/09 Al-Khalili Decl. ¶¶ 10(a), (c), (e), (h)(iii), (h)(v), (h)(vii), and (h)(viii).)  A number of additional such documents are cited in the Notes section of the book. (*See id.* ¶ 8 & Exh. A.)  While not rising to the level of proprietary, CAIR had a reasonable expectation that its private correspondence with third parties would remain just that—private. (*See id.* ¶ 6.)  No company would authorize or expect its employees to publicly disclose its third party correspondence.  The injury to relations with third parties (including donors) from such general public disclosures would be difficult to measure or compensate with monetary damages, thus the harm is largely irreparable.

**B.      There Is a Substantial Likelihood that CAIR Will Prevail on Each of Its Claims**

In its Order granting CAIR's motion for a temporary restraining order, the Court found it

necessary to only determine that CAIR has a substantial likelihood of success on the merits on its

claims for conversion and breach of contract and found it unnecessary to reach that issue as to

CAIR's remaining claims for breach of fiduciary duty, trespass, and violations of the Electronic

Communications Privacy Act.  (Doc. 10 at 17-18.)  While the Court is correct that it need not

determine that CAIR has a substantial likelihood of success on the merits of ***all*** its claims, CAIR

nonetheless takes this opportunity to respond to questions that the Court posed at the November

2, 2009 hearing on CAIR's request for a temporary restraining order specifically relating to the

breach of fiduciary duty and trespass claims.

**1.      Breach of Fiduciary Duty**

Though the Confidentiality and Non-Disclosure Agreement signed by Defendant Chris

Gaubatz constitutes a clear and express contractual prohibition of the conduct in which he

engaged during his internship with CAIR, his theft and deceit would have amounted to a breach

of fiduciary duty even if no agreement had ever been entered into.  *Fiber Optics Tech., Inc. v.*

*Mowry*, 2003 WL 21772020, at *4 (Conn. Super. Ct. July 15, 2003) ("Even without a contractual

obligation, 'the very relationship [between employer and employee] implies that the principal

has reposed sonic trust or confidence in the agent and that the  agent or employee is obligated to

exercise the utmost good faith, loyalty and honesty toward his principal or employer ….'")

(quoting *Town & Country House & Homes Serv. v. Evans*, 189 A.2d 390 (Conn. 1963)); *BIEC*

*Int'l, Inc. v. Global Steel Servs., Ltd.*, 791 F. Supp. 489, 548 (E.D. Pa. 1992) ("Under

Pennsylvania law, the duty of an employee not to disclose the secrets of his employer may arise

either from an express contract, or may be implied from the confidential relationship existing

between the employer and employee.").  At the November 2 hearing, the Court inquired whether there was any case law specifically recognizing that unpaid interns are subject to the same fiduciary duties of confidentiality and loyalty as are paid employees.  CAIR is not presently aware of any District of Columbia case law addressing this particular point one way or the other, but courts in other jurisdictions have recognized that individuals holding unpaid or volunteer positions are subject to the same fiduciary obligations as individuals holding permanent positions.  *See In re Neuschwander*, 747 P.2d 104, 106 (Kan. 1987) ("The fact that its directors and officers served as volunteers without compensation does not reduce the fiduciary duty owed to the corporation."); *Prairie West Condo. Assoc., Inc. v. Wiseman et. al.*, 2009 WL 743322, at *3-4 (Kan. Ct. App. 2009) (affirming that volunteer members of condominium association owed a fiduciary duty to unit owners but that claim was barred by statute of limitations).

In any event, it cannot be disputed that, by seeking and accepting an internship, Chris Gaubatz became an agent of CAIR.  "Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency." Restatement (Second) Agency § 387.  Significantly, "[a] gratuitous agent is subject to the th[is] rule … as fully as is an agent who is paid for his services."  *Id.* cmt. c; *see also* 3 Am. Jur. 2d Agency § 205 (2009) ("The agent or employee is bound to exercise the utmost good faith, loyalty, and honesty toward the principal or employer, regardless of whether the agency is one coupled with an interest, or the compensation given the agent is small or nominal, or that it is a gratuitous agency."); 3 Am. Jur. 2d Agency § 208 (2009) ("A gratuitous agent, insofar as exercising good faith is concerned, is held to the same obligation as any other agent.").

Moreover, the District of Columbia does not ascribe to a narrow or stagnant understanding of a fiduciary, instead it has "deliberately left the definition of 'fiduciary

8

relationship' flexible so that the relationship may change to fit new circumstances in which a special relationship of trust may properly be implied." *High v. McLean Fin. Corp.*, 659 F. Supp. 1561, 1568 (D.D.C. 1987) (applying District of Columbia law).  Recognizing the broad scope of such relationships, the district court, applying District of Columbia law, in *Church of Scientology Int'l v. Eli Lilly and Co.* quoted the Southern District of New York:

> Broadly stated a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another.  It is said that the relationship exists in all cases in which influence has been acquired and betrayed.  The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another....

848 F. Supp. 1018, 1028 (D.D.C. 1994) (quoting *Schmidt v. Bishop*, 779 F. Supp. 321, 325 (S.D.N.Y. 1991)).  CAIR entrusted Chris Gaubatz with access to CAIR's facilities and confidential information, including attorney-client privileged documents.  Irrespective of his status as an intern or the fact that he was not paid a salary, the facts surrounding Defendant Chris Gaubatz's employment at CAIR make clear that CAIR placed trust in and relied upon him.

CAIR has a made a thorough search of the case law and found no authority suggesting that a position of employment's status as either temporary or unpaid somehow frees the person holding that position from any fiduciary obligations to the employer.  Accordingly, Chris Gaubatz's status as an unpaid intern did not alter the nature or extent of his obligations of honesty, good faith, and loyalty.  If the law were to countenance otherwise, every employer who opened its doors to temporary interns, externs, clerks, or volunteers would be giving up any expectation as to the security and confidentiality of its internal affairs and compromising its proprietary information.

### 2.    Trespass

The Court also inquired as to whether there were any additional District of Columbia

cases considering claims of trespass based upon facts similar to those in this case.  CAIR

previously cited one District of Columbia criminal case, *United States v. Kearney*, 498 F.2d 61

(D.C. Cir. 1974), holding that a trespass occurred where consent to enter private property was

obtained by the use of pretense, subterfuge, misrepresentation, or concealment.  *Id.* at 66

(holding consent to entry obtained by defendants' misrepresentation of identity and intentions

was "not with the will of the occupants").  CAIR also cited the Restatement (Second) of Torts §

892B(2) and a New York case, *Shiffman v. Empire Blue Cross & Blue Shield*, 681 N.Y.S.2d 511

(App. Div. 1998), which hold that consent to enter a premises obtained through a defendant's

misrepresentation will be ineffective and cannot serve as a defense to a claim of trespass.  *See

also Med. Lab. Mgmt. v. Am. Broad. Cos., Inc.*, 30 F. Supp. 2d 1182, 1203 (D. Ariz. 1998) ("If

the person consenting to the conduct of another is induced to consent by … the other's

misrepresentation, the consent is not effective for the unexpected invasion or harm."), *aff'd*, 306

F.3d 806 (9th Cir. 2002).  The *Kearney* case, however, appears to be the only District of

Columbia case addressing a situation of alleged trespass by gaining access under false pretenses.

Some courts in other jurisdictions have suggested that the fact that consent to enter was

gained by misrepresentation will not alone render that consent void *ab initio* and convert the

defendant's presence into a trespass, *see Desnick v. Am. Broad. Cos.*, 44 F.3d 1345, 1351-52 (7th

Cir. 1995) (Illinois law), but even those courts have recognized that "[t]he consent to enter is

canceled out … 'if a wrongful act is done in excess of and in abuse of authorized entry."  *Food

Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 517 (4th Cir. 1999) (North Carolina and

South Carolina law); *see also Desnick*, 44 F.3d at 1353 (noting specifically that defendants were

not sent in to plaintiff's property to commit a tort or some other injurious act).  Observing that

trespass is intended to protect the "peaceable enjoyment of property," those courts have

concluded that "consent to enter is vitiated by a wrongful act that exceeds and abuses the privilege of entry." *Food Lion*, 194 F.3d at 517.

If presented with the issue, the courts of the District of Columbia would likely follow the Restatement view that "[i]f the person consenting to the conduct of another … is induced [to consent] by the other's misrepresentation, the consent is not effective for the unexpected invasion or harm." Restatement (Second) of Torts § 892B(2) (1965); *see Dine v. Western Exterminating Co.*, 1988 WL 25511, at *11 n.14 (D.D.C. Mar. 9, 1988) (specifically announcing court's intention to follow Restatement (Second) of Torts § 892B in instructing jury as to principle that consent is vitiated by a substantial mistake of fact).  However, even if the District of Columbia were to reject the Restatement view on this point, Defendant Chris Gaubatz would still have committed a trespass here as, once he gained access to the property by misrepresentation, he proceeded to engage in a series of wrongful acts that exceeded and abused his privilege of entry (*i.e.*, stealing documents, breaching contractual and fiduciary duties, and accessing and taking possession of information and materials in an unauthorized manner).

## CONCLUSION

For the reasons stated above and in CAIR's previous submissions, CAIR requests that the Court enter a preliminary injunction against Defendants Paul David Gaubatz and Chris Gaubatz in the form proposed.  Specifically, CAIR requests that:

1.      Defendants Paul David Gaubatz and Chris Gaubatz, along with any and all of their agents, employees, or associates, be enjoined from making any use, disclosure, or publication of any document (including emails and other electronic documents) or copy thereof obtained from any office or facility of CAIR;

2.      Defendants Paul David Gaubatz and Chris Gaubatz, along with any and all of

their agents, employees, or associates, be enjoined from making any use, disclosure, or publication of any recording (or copy thereof), whether audio or video, of meetings of or conversations involving CAIR officials or employees;

3.      Defendants Paul David Gaubatz and Chris Gaubatz, along with any and all of their agents, employees, or associates, be ordered to promptly remove from any blog or other Internet site under their control any use, disclosure, or publication of (a) any document (including emails and other electronic documents) or copy thereof obtained from any office or facility of CAIR, or (b) any recording (or copy thereof), whether audio or video, of meetings of or conversations involving CAIR officials or employees; and

4.      Defendants Paul David Gaubatz and Chris Gaubatz, along with any and all of their agents, employees, or associates, be ordered to promptly return to the below-identified counsel for CAIR any and all documents (including emails and other electronic documents), along with any all copies made thereof, obtained from any office or facility of CAIR and any recording (along with any and all copies made thereof), whether audio or video, of meetings of or conversations involving CAIR officials or employees.

Respectfully submitted,

Dated:  November 4, 2009

/s/Daniel Marino
Daniel Marino (DC Bar No. 416711)
Tillman Finley (DC Bar No. 477737)

LUQUE GERAGOS MARINO LLP
910 17th Street N.W., Suite 800
Washington, D.C. 20006
Tel:  202.223.8888

*Attorneys for Plaintiff Council on American-Islamic Relations*