1

DANIEL A. HOROWITZ
Appearing Pro Hac Vice
P.O. Box 1547
Lafayette, California 94549
(925) 283-1863

2

3

4

MARTIN GARBUS
Appearing Pro Hac Vice
Eaton & Van Winkle
3 Park Avenue
New York, New York

5

6

7

BERNARD S. GRIMM
COZEN O'CONNOR
1627 I Street NW
Suite 1100
Washington, DC 20006

8

9

10

Attorneys for Defendants

11

12

*UNITED STATES DISTRICT COURT*

13

*DISTRICT OF COLUMBIA*

14

15

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS,                                          Case No. 09-cv-02030-CKK

16

17

     Plaintiff,

18

vs.

19

PAUL DAVID GAUBATZ, CHRIS
GAUBATZ et al.,

20

21

     Defendants.

_____/

22

23

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS UNDER**

24

**FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

25

26

27

**09-cv-02030-CKK
MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS UNDER
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

28

1
2
3
4
5

# TABLE OF CONTENTS

**Statement of Facts**                                                    1

    1. CAIR-Virginia is Not a Party                   1

    2. CAIR as a Corporation Does Not Exist           2

    3. The Documents In Question Had Been Sent to Be Shredded   5

        A. The Pleading Does not Disclose that the Documents   5
        Removed Had Been Sent to Be Shredded

        B. The Documents at Issue Were In Fact Sent for Shredding   5

    4. The Complaint Targets First Amendment Protected
    Publication Damages                              7

    5. Common Law Damages Are Not Pled               10

**Memorandum of Points and Authorities**                                 11

**Motion to Dismiss Standard**                                           11

**The First Amendment Bars this Lawsuit**                                11

    1. The Lawsuit Implicates the First Amendment    11

    2. New York Times v. Sullivan Governs the Issue of   13
    Publication Damages

    3. Emotional Upset Caused by Publication is Not Actionable   15

**First Claim For Relief - Conversion**                                  17

    1. Taking Files Meant for Shredding Is Not Conversion   17

    2. Publication Damages Cannot Be Claimed in a    18
    Claim for Conversion

    3. Copying Digital Files is Not Conversion        19

**Claim for Relief 2 & 3 Breach of Fiduciary Duty / Breach of Contract**   20

27
28

1. Plaintiff's Exhibit A Is Not A Contract Between Two Parties        20

2. There Was No Consideration for the Confidentiality Agreement       21

3. CAIR Has Not Pled Facts Establishing a Fiduciary Relationship      21

4. There are No Damages Other than Publication Damages                21

**Fourth Claim for Relief - Trespass**                                22

1. Plaintiff has Not Plead that the Premises were Private             22

2. There are No Damages - Nothing Was Harmed                          22

**Fifth Claim for Relief - ECPA**                                     22

**Rule 17 - CAIR is Not a Real Party in Interest**                    24

**CAIR Lacks Article III and Prudential Standing**                    27

1. A Non-Entity Can Suffer No Harm                                    27

2a. No Damages                                                        28

2b.  The Amount in Controversy is Less than $ 75,000
so There is No Diversity Jurisdiction                                 30

3. There is No Federal Question                                       30

**The Matter is Moot**                                                30

**Conclusion and Request for Evidentiary Hearing**                    32

Request for Evidentiary Hearing                                       33

1

2

# TABLE OF CASES

3

4

## UNITED STATES SUPREME COURT

5

Allen v. Wright (1984) 468 U.S. 737                                      29

6

Ashcroft v. Iqbal (2009) 129 S. Ct. 1937                                 30

7

Bell Atl. Corp. v. Twombly (2007) 127 S. Ct. 1955            12, 18, 20, 30

8

Bose Corp. V. Consumers Union of the United States (1984)
466 U.S. 485                                                             15

9

Carden v. Arkoma Associates (1990) 494 U.S. 185                       2, 34

10

Elk Grove Unified School District v. Newdow (2004)
542 U.S. 1                                                           14, 29

11

FW/PBS Inc. v. City of Dallas 493 U.S. 215                               29

12

Grupo Dataflux v. Atlas Global Group LP (2004) 541 U.S. 567              34

13

Grupo Dataflux v. Atlas Global Group LP (2004) 541 U.S. 567               2

14

* Hustler v. Falwell (1988) 485 U.S. 46                                  16

15

International Society for Krishna Consciousness v.
Walter Lee (1992) 505 U.S. 672                                           33

16

Lujan v. Defenders of Wildlife (1992) 504 U.S. 555                       28

17

Masson v. New Yorker Magazine, Inc. 501 U.S. 496                         17

18

* Milkovich v. Lorain Journal Co (1990) 497 U.S. 1                   14, 15

19

* New York Times Co. v. Sullivan (1964) 376 U.S. 254             12, 13, 17

20

* New York Times Co. v. United States (1971) 403 U.S. 713               33

21

Neitzke v. Williams (1989) 490 U.S. 319                                  11

22

Philadelphia Newspapers, Inc. v. Hepps (1986) 475 U.S. 767               17

23

St. Paul Mercury Indemnity v. Red Cab Co. (1938) 303 U.S. 283            30

24

United States v. Hays (1995) 515 U.S. 737                                29

25

Vermont Agency of Natural Resources v. United States

26

27

28

ex. Rel. Stevens (2000) 529 U.S. 765                                           28

Warth v. Seldin (1975) 422 U.S. 490                                            30

**D.C. CIRCUIT**

\* Committee in Solidarity with People of El Salvador v. Sessions
929 F.2d 742, 744 (D.C. Cir. 1991)                                            31, 32

Holy Land Found. for Relief & Dev. v. Ashcroft
333 F.3d 156 (2003)                                                           14

Murray v. Lichtman ( 339 F.2d 749  (1964)                                     22

\* Pearson v. Dodd 410 F.2d 701 (1969)                                        18, 19, 20

Spann v. Colonial Village Inc. 899 F2d 24 (1990)                             27, 29

**1st CIRCUIT**

Blumofe v. Pharmatrak, Inc. (In re Pharmatrak, Inc. Privacy Litig.
329 F.3d 9 (2003)                                                             24

**3rd CIRCUIT**

(Fraser v. Nationwide Mut. Ins. Co. 352 F.3d 107 (2003)                      24

**5th CIRCUIT**

Thomas v. Humfield (1990) 916 F2d 1032                                       26

**7th CIRCUIT**

Brown & Williamson Tobacco Corp. v. Jacobson
713 F.2d 262 (1983)                                                          15

Rosenblum v. Travelbyus.com Ltd.  299 F3d 657 (2002)                        7

**8th CIRCUIT**

Briehl v. General Motors 172 F3d 623 (1999)                                  11

Faibisch v. Univ. Of Minnesota 304 F3d 797 (2002)                            1

**9th CIRCUIT**

Theofel v. Farey-Jones, 359 F3d 1066 (2004)                                 23, 24

Konop v. Hawaiian Airlines, Inc. 302 F.3d 868 (2002)                    24

**11th CIRCUIT**

United States v. Steiger, 318 F.3d 1039 (2003)                         24

**F. Supp. D.C.**

\* Bourbeau v. Jonathan Woodner Co., 549 F. Supp. 2d 78 (D.D.C. 2008)   5, 26, 28

Lans. Gateway 2000, Inc., 84 F. Supp. 2d 112 (D.D.C. 1999)             34

Furash & Co., Inc. v. McClave, 130 F. Supp. 2d 48 (D.D.C. 2001)        21

**F. Supp Other**

Feist v. Consolidators Freightway 100 F. Supp. 2d 273 (E.D. Pa. 1999)  24 .

Morgan v. Celender, 780 F. Supp. 307 (W.D. Pa. 1992)                   16

Vianix Delaware LLC v. Nuance Communs., Inc., 2009 U.S. Dist. LEXIS 40992
(D. Del. May 12, 2009)                                                 34

Weatherford v. United States 957 F. Supp. 830 (M.D. La. 1997)          8

**DISTRICT OF COLUMBIA**

Bullard v. Curry-Cloonan, 367 A.2d 127 (D.C. 1976)                     21

Chase Manhattan Bank v. Burden, 489 A.2d 494 (D.C. 1985)               18

Flocco v. State Farm Mutual Auto Ins. Co., 752 A.2d 147 (D.C. 2000)    18

Jack Baker, Inc. v. Office Space Development Corp.
664 A.2d 1236 (D.C. 1995)                                              21

Watergate South, Inc. v. Duty, 464 A.2d 141 (1983)                    26

# STATEMENT OF FACTS

**CAIR** refers to the plaintiff in this case "Council on American Islamic-Relations" allegedly a 501(c)(3) corporation. (Complaint Par. 11)

**CAIR-Virginia** refers to the entity described as "CAIR's Maryland-Virginia chapter office, located in Herndon, Virginia." (Complaint Par. 16 & 17)

**CAIR-AN** refers to the "Council on American-Islamic Relations Action Network, Inc.

**CAIR-Foundation** refers to "CAIR-Foundation, Inc."

## 1. CAIR-Virginia is Not a Party

Federal Rule of Civil Procedure § 17(a)(1) requires that an "action ... be prosecuted in the name of the real party in interest."   CAIR-Virginia was a corporation registered in the State of Virginia as "Council on American-Islamic Relations - Maryland, Inc.".  It was incorporated in Virginia on July 11, 2007 and voluntarily dissolved on June 16, 2008 (Declaration of Daniel Horowitz, Exhibit  1[1])   The complaint at paragraphs 16 & 17 alleges that Chris Gaubatz worked for this entity from April 2008 - June 2008.

The complaint seems to merge the  Virginia Corporation as an entity with plaintiff CAIR describing the entity as "CAIR's Maryland-Virginia chapter office..." (Complaint par. 16 & 17)

Paragraph 8 asserts diversity jurisdiction.   CAIR (as shown below) is not a corporation despite its claims to be one.  It seems to be claiming that the Virginia group is under its supervision or control (or was when it was viable).   It seems that "CAIR" is more of a concept than a single specific entity.    If so, it may be viewed by the Court as an unincorporated association.  If so, having a member in Virginia would defeat diversity.   The court can make an independent determination of this fact and if it finds that CAIR is not a corporation (See Below)

---

[1]Defendant relies on Fed. Rule of Evid. 201 and *Faibisch v. Univ. Of Minnesota* 304 F3d 797, 802-3 (8th Cir. 2002) to offer public records not reasonably in dispute without converting a Rule 12(b)(6) motion into a motion for summary judgment.

but instead an amalgamation of various "CAIR related" groups, there may be no diversity as

unincorporated associations are treated as citizens of *each* state of which its members are

citizens. (*Carden v. Arkoma Associates* (1990) 494 U.S. 185, 195; *Grupo Dataflux v. Atlas*

*Global Group LP* (2004) 541 U.S. 567, 569)

**2. CAIR as a Corporation Does Not Exist**

CAIR was a corporation.  It no longer is a corporation but it still functions as if it is.

CAIR's Articles of Incorporation were filed on September 14, 1994 (Declaration of Daniel

Horowitz Exhibit  2).  As shown on Declaration of Daniel Horowitz,  Exhibit 3, as of January 31,

2008 (prior to any of the matters in this lawsuit), CAIR no longer appeared as a corporation in

the records of the District of Columbia. CAIR's corporate ID number was 942995 but on a

search done January 31, 2008, that number was registered to CAIR-AN following a name change

from CAIR to CAIR-AN (Declaration of Daniel Horowitz,  Exhibit  4)  While this may be "just a

name change", CAIR as shown on Exhibit A to the complaint is not CAIR-AN and CAIR is not

CAIR-Virginia.  CAIR still functions as if it is a viable entity and as set forth herein, even

functions in court(s) as if it is an independent, viable entity.

 The Declaration of Daniel Horowitz,  Exhibit  5 shows that as of January 31, 2008, "Council on

American Islamic Relations" was available as a corporate name.   The name was available on

December 17, 2009.  (Declaration of Daniel Horowitz,  Exhibit  6)

The technical reason for the change was that on June 11, 2007, the Board of Directors of

CAIR voted to change the name to CAIR-AN.  This was filed with the District of Columbia on

June 15, 2007. (Declaration of Daniel Horowitz,  Exhibit  7 & 8)

Just two weeks before the vote to make that change, on May 29, 2007,  the United States

government filed its list of "List of Unindicted Co-conspirators and/or Joint Venturers" in

criminal case, United States v. Holy Land Foundation, CR NO. 3:04-CR-240-G, United States

District Court, Northern District of Texas.   That case had far reaching allegations that contended

1  that the defendants were part of a fund raising arm of Hamas which itself was part of the Muslim

2  Brotherhood.

3  　　　　In that filing, "Council on American-Islamic Relations" was listed in category III,

4  "individuals/entities who are and/or were members of the US Muslim Brotherhood's Palestine

5  Committee and/or its organizations", number 11.  (Declaration of Daniel Horowitz,  Exhibit  9)

6  　　　　Despite this name change on June 15, 2007, CAIR has continued to function as if it were

7  a legal entity.  Declaration of Daniel Horowitz,  Exhibit  10 is a declaration filed in the United

8  States District Court, Northern District of California by Parvez Ahmad, Chairman of the Board

9  of the "Council on American Islamic Relations". This is the same person who signed the Board

10  of Directors Resolution (Declaration of Daniel Horowitz,  Exhibit  7) that changed CAIR's

11  name. The Parvez declaration was filed almost six months *after* the name change on January 30,

12  2008.  Despite this, Parvez Ahmad identifies himself as "Chairman of the Board of the Council

13  of American-Islamic Relations".

14  　　　　Nadhira Al-Khalili filed a declaration in the present case in support of CAIR's request for

15  a TRO.  In that declaration he identifies himself as "Legal Counsel to the Council on American-

16  Islamic Relations (CAIR) since December 2007."  (Dec. Par. 1, Doc. 7-2) At the time Al-Khalili

17  became counsel for the organization, CAIR had not existed for almost 5-6 months.  Despite this

18  made the same erroneous statement on January 15, 2009 in the Northern District of California

19  identifying himself as "...National Legal Counsel for the Council on American-Islamic Relations

20  ("CAIR").  (Declaration of Daniel Horowitz,  Exhibit  11)   This use of CAIR as a separate entity

21  was filed almost a year and a half after CAIR changed its name to CAIR-AN.

22  　　　　As the rest of the declaration shows, the use of CAIR vs. CAIR-AN is not just a

23  convenient shortening of the name.    As shown on PACER, CAIR's own attorneys in that case

24  appeared separately for CAIR and for CAIR-AN.  (Declaration of Daniel Horowitz,  Exhibit  12)

25

26  　　　　Declaration of Daniel Horowitz,  Exhibit  13 is a stipulation between the parties in that

27  **09-cv-02030-CKK**
   **MEMORANDUM IN SUPPORT OF MOTION**
28  **TO DISMISS UNDER**
   **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**　　　3

case which recites that counsel appears for "the CAIR entity which is referred to as the Council on American Islamic Relations, Inc. Incorporated in Washington D.C. and commonly referred to as CAIR-National.

In the present case, only CAIR is mentioned and it is self-described as a viable corporation. CAIR-AN is not mentioned. The confusion runs deeper. On February 5, 2008, as shown by Declaration of Daniel Horowitz, Exhibit 14, CAIR's website (www.CAIR.com) was registered to "Council on American-Islamic Relations CAIR" in Santa Clara, California.

On December 14, 2009 the same website was registered to "CAIR Foundation, Inc.". (Declaration of Daniel Horowitz, Exhibit 15) As shown on Declaration of Daniel Horowitz, Exhibit 16, this corporation was founded on February 15, 2005.

The actual entity that is involved in the present lawsuit is simply unclear. It appears that CAIR is the moniker used by the group of people in the District of Columbia who seem to have some sort of control over some or all of the "CAIR based" organizations that exist.

These issues of confusion were raised in the lawsuit in the Northern District and counsel for all of the CAIR entities signed an answer on behalf of the California CAIR entity where he stated that "'Council on American-Islamic Relations, Inc.' is the legal name of CAIR-National." (Declaration of Daniel Horowitz, Exhibit 17, par. 15, p. 4) This document was filed January 30, 2008, more than six months after CAIR had changed its name to CAIR-AN.

The present action was filed under the name "Council on American-Islamic Relations" and paragraph 11 alleges that:

> Plaintiff, the Council on American-Islamic Relations (hereinafter referred to as "CAIR") is a national Muslim advocacy group incorporated as a non-profit 501(c)(3) corporation incorporated in the District of Columbia with its headquarters located at 453 New Jersey Avenue, S.E., Washington, D.C., 20003

This is simply inaccurate.

Besides the declaration of Al-Khalili making that same inaccurate representation, Raabia Wazir, the internship coordinator of CAIR stated in her declaration in support of the TRO that "...I was employed by the national office of the Council on American-Islamic Relations (CAIR) ..." (Dec., Par. 2, Doc. 8-3)

Federal Rule of Civil Procedure 17(b) states that capacity to sue is determined, "for a corporation, by the law under which it was organized". CAIR is organized under the laws of the District of Columbia. "Under D.C. Code §§ 29-301.85 and 29-301.86, when a nonprofit corporation's articles of incorporation are revoked for failure to comply with certain reporting rules, then all powers conferred on it are inoperative and it must cease all business activities (because it is deemed to be dissolved), except for those activities necessary for winding up its affairs." (*Bourbeau v. Jonathan Woodner Co.*, 549 F. Supp. 2d 78, 84 (D.D.C. 2008))

### 3. The Documents In Question Had Been Sent to Be Shredded

#### A. The Pleading Does not Disclose that the Documents Removed Had Been Sent to Be Shredded

The pleading does not make it clear that the documents allegedly taken from CAIR were consigned to the shredder.

Plaintiff cites Paragraph 35 relies upon the book, the "Muslim Mafia" to allege the taking of documents.

35 . The book describes the internship of "David Marshall" as "a six-month counterintelligence operation" (p. vi) during which he "routinely load[ ed] the trunk of his car with boxes of sensitive documents and del iver[ ed] them into the custody of investigative project leader P. David Gaubatz who in turn stockpiled them at his office in Richmond, Virginia" (p. 4).

#### B. The Documents at Issue Were In Fact Sent for Shredding

From the broader context of the TRO filings, this Court seems to have reached the conclusion urged herein, that the documents were intended for the shredder.  In support of the TRO, CAIR submitted declarations that establish the fact that the documents were bound for shredding.

Chris Gaubatz "routinely load[ed] the trunk of his car with boxes of sensitive documents and deliver[ed] them into the custody of investigative project P. David Gaubatz who in turn stockpiled them at his office in Richmond, Virginia"). In addition, CAIR has submitted sworn declarations averring that Chris Gaubatz was authorized to access the documents only for the purposes of shredding them in accordance with CAIR instructions and was not authorized to copy, keep, take home, or otherwise remove from CAIR's premises any of the documents or to transfer or deliver such documents to any third party. See Wazir Decl. PP 13-16;

1

see also Al-Khalili Decl. P 17

2

(*Council on American-Islamic Rels. v. Gaubatz*, 2009 U.S. Dist. LEXIS 102371

3

(D.D.C. Nov. 3, 2009))

4

Nadhira F. Al-Khalili's declaration in support of the TRO in this case states that "CAIR

5

gave interns access to these files and records solely for the purpose of shredding them in

6

accordance with our instructions." (Dec. Of Nadhira F. Al-Khalili Par. 16)

7

CAIR counsel have filed documents in the case at bar that establish this point.  In

8

"Plaintiff's Notice of Filing of Supplemental LcVR 65.1 Certification and Additional

9

Declarations" (Filed 11/3/2009), CAIR's attorney states that "...Chris Gaubatz signed the non-

10

disclosure agreement in early-or mid-June 2008 and prior to the events whereby Chris Gaubatz

11

was given various documents **to shred** in accordance with instructions and which he then

12

removed from CAIR's premises." (LcVR 65.1, p. 1-2, emphasis added)

13

The Declaration of Raabia Wazir filed as part of Document 8-3 in this litigation, states

14

that while working in the D.C. office of CAIR, "...CAIR's office manager, Jumana Kamal, had

15

interns shred documents that had been designated for disposal".  (Dec. Of Raabia Wazir, p. 2, par.

16

6)

17

The Declaration of Nadhira F. Al-Khalili further states "...CAIR had on hand a number of

18

old files and documents.  It was determined that old files and documents should be shredded and

19

disposed of ..." (Dec. Of Nadhira F. Al-Khalili, p. 1, par. 4)

20

Unlike the complaint that quotes the book the "Muslim Mafia" out of context, attorney Al-

21

Khalili states that "In the book, *Muslim Mafia*, Paul David Gaubatz states that Chris Gaubatz

22

a.k.a. "David Marshall", removed from CAIR's offices many boxes of documents **from among**

23

**materials he had been tasked with shredding** ..." (Dec. Of Nadhira F. Al-Khalili, p. 1, par. 2,

24

emphasis added)

25

When the full page (p. 4 of the "Muslim Mafia) is read with Paragraph 35 it is clear that

26

27

28

1  only documents headed for the shredder were taken[2].

2      "**THE SHREDDER**

3          He could hardly believe his luck when on day the office manager asked

4  interns to destroy whole boxes of documents in the basement with the commercial

5  shredder.  Other interns groaned, as it was a mundane task, and few elected to do
   it.  That left Marshall virtually alone in the basement if he stepped up.

6          "Nobody wanted to shred - it was boring, you know, nobody liked to do it -

7  so I was, like, 'Ahh, I'll do it,'" Marshall says.  "And I would sometimes spend
   hours going through boxes and putting together one box that was good stuff, and

8  shredding the rest.  And then at the end of the day I would just walk down there [to

9  the basement], pick the good box up, and walk out of the building with it."

10         Before long, he was routinely loading the trunk of his car with boxes of

11 sensitive documents and delivering them into the custody of investigative project

12 leader P. David Gaubatz who in turn stockpiled them at his offices in Richmond,
   Virginia."

13 (Muslim Mafia, p. 4, Declaration of Daniel Horowitz,  Exhibit  18)

14     To the extent that the document contradicts the pleading, the document should control.

15 (*Weatherford v. United States* 957 F. Supp. 830, 832 (M.D. La. 1997).  This is particular true

16 since the declarations submitted by CAIR also contradict the complaint on this point.

17

18 **4. The Complaint Targets First Amendment Protected Publication Damages**

19     This motion alleges that the complaint impermissibly pleads around the First Amendment

20 and claims publication damages under the false aegis of common counts.  A review of the

21 damages of CAIR establishes that all pled damages are publication damages.  The damage

22 allegations are essentially as follows.

23     On or about October 15, 2008 the book the "Muslim Mafia" was published.  (Complaint,

24 _____

25     [2]Under Fed. Rule of Civ. Proc. 10(c) documents referred to in pleadings may be relied
   upon in a Rule 12(b)(6) motion without converting it to a Motion for Summary Judgment. See

26 also *Rosenblum v. Travelbyus.com Ltd.*  299 F3d 657, 661-2 (7th Cir. 2002)

27 **09-cv-02030-CKK**
   **MEMORANDUM IN SUPPORT OF MOTION**
   **TO DISMISS UNDER**
28 **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**         7

Par. 33) According to the complaint, the "book references, cites, characterizes, and/or quotes from numerous of the documents obtained in this manner, including confidential internal memoranda, ... along with other sensitive documents. In an appendix, the book reproduces in whole or in part at least 19 of the stolen documents. (Complaint, par. 36)

The complaint is vague as to specific damages of any type.  It  attempts to factually describe damages in paragraphs 5 & 6.  These paragraphs are clearly damages related to protected First Amendment conduct (publication).

5. Defendants have disclosed and caused to be published many of the documents and recordings, including documents labeled proprietary and documents containing the personal information of CAIR's employees and donors, and have generally used the surreptitiously obtained documents and recordings **to cast CAIR in a negative, inaccurate light.**

6. Defendants' actions have vitiated CAIR's reasonable expectation in the confidentiality of its internal documents, **resulted in the public disclosure** of the personal information of CAIR's employees and donors, caused injury to CAIR, and caused CAIR and its officials and employees to suffer unwarranted harassment up to and including threats of violence[3].

Paragraphs 38 & 39 allege that the book "also specifically cites, quotes, characterizes" various documents and electronic data taken from plaintiff.  Paragraphs 40-43 describe the publishing of information  on the internet.  Paragraph 27 contains "negative light" (but not false light) allegations but interestingly, CAIR does not dispute the truth of the allegations.

27. Defendant Chris Gaubatz's mission and intention was not to work on behalf of CAIR or in furtherance of its interests, but instead to collect and misappropriate

---

[3]If this is true, this is a highly unfortunate, unacceptable and arguably illegal act(s). However, this is a conclusory paragraph and given the massive negative press already existing regarding CAIR, claims by CAIR that these attacks were caused by defendant's publications should not be given credence without some factual support.

1
2
information about CAIR, its officers and employees, and its activities to later be disclosed publicly and used to cast CAIR in a negative light[4].

3
4
5
The prayer of the lawsuit seeks both monetary damages it seeks to bar defendants and their agents from "disclosing, or in any way using any documents, recordings, or other information obtained from CAIR, either directly or indirectly..." (Complaint, Prayer, Item 3)

6
7
8
The other documents filed in this case further establish that the complaint intends to focus on publication damages.  The Al-Khalili declaration focuses on publication damages and does not mention any other damage.

9
10
11
12
"In the Notes to the book, *Muslim Mafia*, Paul David Gaubatz makes numerous citations to what appear to be CAIR internal documents.  Attached Exhibit A is a photocopy of the note section of the book.  I have made a star or asterisk mark next to those documents which appear to be CAIR internal documents." (Dec. Of Nadhira F. Al-Khalili, p. 2, par. 8)

13
14
15
"David Gaubatz has already posted or linked a number of CAIR documents on his internet blog ..." (Dec. Of Nadhira F. Al-Khalili, p. 2, par. 9)

16
17
18
19
Paragraph 10 of the Dec. Of Nadhira F. Al-Khalili, details dates of postings of 19 specific documents which were published.  Paragraph 11 states that "Mr. Gaubatz posted descriptions or characterization of conversations that he claims his son, Chris Gaubatz recorded ..." Dec. Of Nadhira F. Al-Khalili, p. 4, par. 11)[5]

20
21
As the remainder of that paragraph makes clear, the damages that Khalili is attempting to describe are publication damages.

22
23
"It is difficult to assessing a specific dollar value to the negative impact on CAIR

24
[4]Not a "false light" just a "negative light".

25
26
[5]So CAIR seems to be seeking damages for relating what was said on the theory that once a conversation was recorded its content cannot be summarized !?

27
28

of the **public disclosure** of its internal documents, meetings ..." (Par. 28, emphasis added)  The Declaration of Nadhira F. Al-Khalili (self identified as "legal counsel" for CAIR) indicates that "[i]t us difficult to assign a specific dollar value to the negative impact on CAIR". (Dec. Par. 28)

 "The public disclosure of any such recordings –whether in full, in part or by paraphrasing– would harm CAIR's expectation and understanding that its internal meetings and internal conversations would not be revealed.  Public disclosure is harmful to CAIR because it has a chilling effect on CAIR's ability to discuss privately and candidly issue and matters affecting CAIR and its constituencies." (Dec. Of Nadhira F. Al-Khalili, p.5, par. 13)

"To the extent those conversations and meetings are publically disclosed ... it would be difficult if not impossible to assign a specific dollar or economic value to the negative impact on CAIR." (Dec. Of Nadhira F. Al-Khalili, p. 5, par. 14)

**5. Common Law Damages Are Not Pled**

Other than publication damages, CAIR pleads only the vaguest of damages.   Conclusory allegations without facts are not sufficient to state a claim for damages. (Briehl v. General Motors 172 F3d 623, 627-8 (8th Cir. 1999) Other than publication damages there are only the vaguest claims of harm.

A. The First Claim for Relief alleges that " Defendants' exercise of ownership, dominion, or control over CAIR's property was in denial or repudiation of CAIR's own rights thereto." (Complaint Par. 51)

B. The Second Claim for Relief for "Breach of Fiduciary Duty" alleges that "CAIR has suffered and continues to suffer injury ..." (Complaint Par. 58)

1    C. The Third Claim for Relief for "Breach of Contract" alleges that "CAIR has suffered

2    and continues to suffer injury..." (Complaint Par. 66)

3

4    D. The Fourth Claim for Relief for "Trespass" has the same formulaic recitation for

5    damages (Complaint, Par. 71)

6

7    E. The Fifth Claim for Relief asserts that CAIR "was aggrieved and continues to be

8    aggrieved" (Complaint Par. 77).

9

10                    **MEMORANDUM OF POINTS & AUTHORITIES**

11

12    **MOTION TO DISMISS STANDARD**

13         Rule 12(b)(6) permits the Court to terminate lawsuits that are fatally flawed in their legal

14    premises and thus to spare the litigants the burdens of unnecessary pretrial and trial activity.

15    Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). Granting judgment on a motion to dismiss for

16    failure to state a claim under Fed. R. Civ. P. 12(b)(6) is thus warranted where, as here, the

17    plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell*

18    *Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

19

20                   **THE FIRST AMENDMENT BARS THIS LAWSUIT**

21

22    **1. The Lawsuit Implicates the First Amendment**

23         Plaintiffs allege that CAIR is a group designed to "... dialogue, protect civil liberties,

24    empower American Muslims, and build coalitions that promote justice and mutual understanding"

25    (Complaint, par. 11) Defendants describe CAIR as "a full-service terror support group" (Muslim

26    Mafia p. 50, Declaration of Daniel Horowitz,  Exhibit  18).   There is a forum for this debate and

27    **09-cv-02030-CKK**
      **MEMORANDUM IN SUPPORT OF MOTION**
      **TO DISMISS UNDER**
28    **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**          11

1   it is the public arena, not the courtroom.

2        CAIR's lawsuit tries to bring the debate into the courtroom by confusing its version of

3   how the material was obtained with a claim for damages due to the effects of publication.  This is

4   an impermissible end run around First Amendment protections and it ignores the basic holding of

5   *New York Times Co. v. Sullivan*, 376 U.S. 254 (U.S. 1964).  *New York Times* held that it was

6   improper to use state causes of action[6], allege publication damages and bypass the First

7   Amendment protections.

8        Ironically, in case filed in the Northern District of California, *Savage v. Council on*

9   *American Islamic Relations, Inc*. et al., counsel for CAIR decried this same tactic alleging that

10  "fair use" protected CAIR's right to use six minutes of a radio talk show and post it on CAIR's

11  website to illustrate a point.

12       At page 22 of CAIR's Memorandum of Points and Authorities in Support of its Motion for

13  Judgement on the Pleadings, counsel for CAIR wrote:

14       **Constitutional protections "are not peculiar to [defamation] actions but apply**
         **to all claims whose gravamen is the alleged injurious falsehood of a**

15       **statement**." Blatty v. New York Times Co., 42 Cal.3d 1033, 1042-43 (Cal. 1986)

16       (recognizing that if the constitutional limitations protecting free speech were not

17       broadly applied to different causes of action, litigants would plead claims other

18       than defamation to avoid the First Amendment restrictions, thereby "frustrat[ing]
         the[] underlying purpose" of the constitutional protections); **see also Films of**

19       **Distinction. Inc. v. Allegro Film Productions, Inc., 12 F. Supp. 2d 1068, 1082**

20       **(C.D. Cal. 1998) (dismissing causes of action that, like the defamation claim,**

21       **targeted defendant's free speech rights, and court wanted to avoid "'creative**
         **pleading' from 'rendering nugatory the First Amendment limitations placed**

22       **on litigation against speech'"**) (quoting Blatty, 42 Ca1.3d at 1045). **For more**

23       **than four decades, the Supreme Court has recognized that First Amendment**

24       **protection does not depend on the labels given to causes of action. New York**

25  _____

26

27  **09-cv-02030-CKK**
    **MEMORANDUM IN SUPPORT OF MOTION**
    **TO DISMISS UNDER**
28  **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**          12

**Times Co. v. Sullivan, 376 U.S. 254, 269 (1964); see also Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485 (1984) (treating the fact that the case before it was one of product disparagement rather than defamation as immaterial and discussing the importance of "independent judicial review").** In Hustler v. Falwell, 485 U.S. 46, 50, 54-57 (1988), the Court held that the First Amendment barred not only the Reverend Jerry Falwell's defamation claim arising from a satirical feature in Hustler magazine that depicted Falwell as engaged in an incestuous relationship, but also his intentional infliction of emotional distress claim arising from the same publication. (Emphasis added)   (See Declaration of Daniel Horowitz)

## 2. New York Times v. Sullivan Governs the Issue of Publication Damages

In *New York Times Co. v. Sullivan*, 376 U.S. 254 (U.S. 1964).  In *Sullivan*, the United States Supreme Court held that the First Amendment required the plaintiff to establish falsity (376 U.S. at pp. 279-280 even though state law did not require him to do so ( id. at p. 262)     CAIR has obvious tactical reasons for avoiding a defamation lawsuit.  The "Muslim Mafia" has 577 footnotes with extensive documentary support.  The Declaration of Nadhira F. Al-Khalili submitted in support of the TRO request contains as an attachment those 577 footnotes and defendant asks this Court to take judicial notice of that attachment as well as the declaration itself.

It would seem difficult if not impossible for CAIR to carry the burden of proving "actual malice".   CAIR would also open the door to arguments that it the public relations arm of Hamas. Such a defense would include an assertion that CAIR cannot recover for any damages beause "'there is no constitutional right to facilitate terrorism." Holy Land, 219 F. Supp. 2d at 81 [(quoting Humanitarian Law Project v. Reno, 205 F.3d 1130, 1133 (9th Cir. 2000)). (*Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164-165 (D.C. Cir. 2003))

To avoid these difficult issues, CAIR has framed the pleadings as if it were seeking common law damages.  It can plead common law torts but it cannot then plead publication damages, but it has.  This Court need not accept CAIR's captions of their claims but instead can

1  and should review the complaint and the "whole record" to determine whether or not the claim

2  seeks to implicate the exercise of First Amendment rights and punish publication.

3       The court can consider the absence of any factual claims of damage recoverable under the

4  common law claims.[7]

5       In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, (U.S. 1990) the Supreme Court held that

6  "in cases raising First Amendment issues . . . an appellate court has an obligation to 'make an

7  independent examination of the whole record' in order to make sure that 'the judgment does not

8  constitute a forbidden intrusion on the field of free expression." (*Id* at 17)

9       In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16-17 (U.S. 1990) the Supreme Court

10  addressed the issue of state torts being used to circumvent the full protection of the First

11  Amendment.

> **We have also recognized constitutional limits on the type of speech which may
> be the subject of state defamation actions.** In Greenbelt Cooperative Publishing
> Assn., Inc. v. Bresler, 398 U.S. 6, 26 L. Ed. 2d 6, 90 S. Ct. 1537 (1970), a real
> estate developer had engaged in negotiations with a local city council for a zoning
> variance on certain of his land, while simultaneously negotiating with the city on
> other land the city wished to purchase from him. A local newspaper published
> certain articles stating that some people had characterized the developer's
> negotiating position as "blackmail," and the developer sued for libel. **Rejecting a
> contention that liability could be premised on the notion that the word
> "blackmail" implied the developer had committed the actual crime of
> blackmail, we held that "the imposition of liability on such a basis was
> constitutionally impermissible -- that as a matter of constitutional law, the
> word 'blackmail' in these circumstances was not slander when spoken, and
> not libel when reported in the Greenbelt News Review.**" Id., at 13.
> (*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16-17 (U.S. 1990), emphasis added)

The Supreme Court cited *Bose Corp. V. Consumers Union of the United States* (1984) 466

---

[7] Claim for Relief Number 5 is completely incorrectly applied in this case and will be
addressed separately.

**09-cv-02030-CKK**
**MEMORANDUM IN SUPPORT OF MOTION**
**TO DISMISS UNDER**
**FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**         14

U.S. 485, 499[8] saying  that "[I] the present case the only harm even vaguely alleged is harm from the protected act of publication[9].   See also *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 274 (7th Cir. 1983) (rejecting claim of interference with business relations based upon same facts in libel claim which would be "end run" around "rules on defamation".    The facts in the case at bar are the same.  Without publication CAIR didn't even know that anything unusual had taken place.

**3. Emotional Upset Caused by Publication is Not Actionable**

The fact that "CAIR" is upset or that members *may* have been threatened does not weaken the First Amendment protections.  Obviously, any thinking person would be alarmed and even outraged if it were true that threats arose in response to the book the "Muslim Mafia".  But the book itself does not directly or indirectly seek this.  There are no claims that the Muslim Mafia sought to generate physical harm, only that it cast CAIR in a "negative light". (Comp. Par. 27)

In *Hustler v. Falwell*, 485 U.S. 46, 50, 54-57 (1988), the Court held that the First Amendment barred Reverend Jerry Falwell's defamation claim arising from a satirical feature in Hustler magazine that graphically portrayed Rev. Falwell engaging in an incestuous relationship. The Hustler article was intended to be offensive, provocative and in extraordinary bad taste.

The "Muslim Mafia" is a serious book with a very serious thesis.  The website may have been more provocative but both the book and website are squarely within the American tradition of political debate.

The Hustler decision did not limit its holding to defamation damages, it also barred Rev. Falwell's intentional infliction of emotional distress claim arising from the same publication. While Hustler was a satirical piece having apparently limited social importance, the same cannot

---

[8]And *Bose* quoted New York Times, 376 U.S. at 284-286.

[9]Obviously falsity combined with actual malice can vitiate the protection but there are no allegations of actual malice and plaintiff does not believe that the causes of action as pled, can reasonably be construed as alleging a Claim for Relief for defamation.

be said of the "Muslim Mafia".  If the book is accurate in its contentions, it is a matter of great public significance that a well known self proclaimed civil rights group is in fact cynically using that facade as a cover for illegal conduct including (ironically), infiltrating political operatives as interns in the U.S. Congress.   Even if the privacy of third parties has been compromised (and Rule 17 does not permit CAIR to raise the damages of third parties), such loss of privacy is not actionable.

> We also hold that the publication of these matters, on which plaintiffs rely to
> support the tort of invasion of privacy is constitutionally protected by the First
> Amendment and the holding of The Florida Star v. B.J.B., 491 U.S. 524, 105 L.
> Ed. 2d 443, 109 S. Ct. 2603 (1988). A damage award, based on state law, for
> publication of these matters of legitimate public concern would be an
> impermissible burden under the First Amendment and defendants are entitled to
> judgment as a matter of law.
> (*Morgan v. Celender*, 780 F. Supp. 307, 310 (W.D. Pa. 1992))

Assuming for argument that CAIR has been sadly misunderstood by defendants; they would certainly have a grievance but they have no remedy.  Even if the motives of defendants were evil rather than patriotic, their speech is protected.  See, e.g., *Collin v. Smith*, 578 F.2d 1197, (7th Cir.), cert. denied, 439 U.S. 916 (1978), where the court acknowledged that the views expressed by the Nazis marching in Skokie were "repugnant to the core values held generally by residents of this country" and that "many people would find their demonstration extremely mentally and emotionally disturbing." 578 F.2d at 1200. In Collin, the court noted that speech that "even stirs to anger" is "among the 'high purposes' of the First Amendment." Id. at 1206.

Attorney Martin Garbus in his book "Tough Talk" (Random House, 1998) described his representation of the Skokie group this way.

> A First Amendment attorney makes few enemies in liberal or intellectual circles
> when he defense a victim of government censorship ... There are , however, other,
> subtler forms of censorship that often draw support from these very groups.
> Speech that offends a person or a particular group has fallen under increased

scrutiny in recent years and has become perhaps the most endangered species of free expression.  The popular adage that freedom of speech obliges us to defend even those whose ideas are most repugnant to us is a sentiment more easily proclaimed than followed.

(Tough Talk, p. 105)

It is for this reason that we must ignore CAIR's self description as a civil rights group, just as we must ignore defendant's description of CAIR as a terror group in sheep's clothing.  It is also why the potency of the attacks in the book (or website) is irrelevant to the First Amendment issues at hand.

Disguising publication damages as common law damages, CAIR seeks to avoid the long line of First Amendment protections and take the debate out of the First Amendment arena.  As set forth above, it cannot do so.   The full range of First Amendment protections apply, e.g. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775-778, 89 L. Ed. 2d 783, 106 S. Ct. 1558 (1986) (a libel plaintiff must bear the burden of proving that speech is false); *Masson v. New Yorker Magazine, Inc*., 501 U.S. 496, 510, 115 L. Ed. 2d 447, 111 S. Ct. 2419 (1991) (actual malice must be proved by clear and convincing evidence); *New York Times v. Sullivan*  376 U.S. 254, 280 (U.S. 1964) barring recovery absent a showing of "actual malice".

If CAIR thought the publications were untruthful they could have specified was not true and sued for defamation.  As lack of malice and truth are defenses, defendant's respectfully submit that CAIR will never, under any circumstance allow that issue to be presented in a court of law.

## FIRST CLAIM FOR RELIEF - CONVERSION

### 1. Taking Files Meant for Shredding Is Not Conversion

In the District of Columbia, "[c]onversion has generally been defined as any unlawful

09-cv-02030-CKK
MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS UNDER
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)                    17

1  exercise of ownership, dominion or control over the personal property of another in denial or

2  repudiation of his rights thereto." *Chase Manhattan Bank v. Burden*, 489 A.2d 494, 495 (D.C.

3  1985); see also: *Flocco v. State Farm Mutual Auto Ins. Co.*, 752 A.2d 147, 158 (D.C. 2000)

4      The complaint has broad averments of theft and other conclusory allegations but no facts

5  to support the deprivation of any ownership rights.  This does not meet the standard of pleading

6  "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

7  127 S. Ct. 1955, 1974 (2007).   The paragraph that implies a theft of property that CAIR may

8  have intended to retain is paragraph 35.   However, as shown by the inclusion of the entire page

9  and the TRO declarations, the documents were "old files and documents should be shredded and

10  disposed of ..." (Dec. Of Nadhira F. Al-Khalili, p. 1, par. 4)  This is a repudiation of the element

11  of conversion that requires more than a taking.  The taking must be "in denial or repudiation of

12  his rights thereto."  *Chase Manhattan Bank v. Burden*, 489 A.2d 494, 495)

13      In *Pearson v. Dodd* 410 F.2d 701 (D.C. Cir. 1969) the court found that conversion under

14  D.C. law required interference with the right to possess.  *Pearson v. Dodd* is instructive because

15  in that case the plaintiff attempted to extract publication damages via a conversion theory.

16      In *Pearson*, investigative journalists Drew Pearson and Jack Anderson published articles

17  indicating that Senator Dodd was corrupt.  Among the sources of information relied upon by the

18  journalists were the Senator's own files.  The senator's employees had copied files without his

19  permission.  The columnists knew that the documents had been removed and copied without

20  authorization.  Senator Dodd sued, alleging common law torts including conversion.  He obtained

21  summary judgment on conversion at the trial court level but the appellate court reversed, holding

22  that the original documents never left the senator's office, so the senator was never completely

23  deprived of his property.   For purposes of the case at bar, this holding establishes that absent an

24  actual deprivation of property and damages flowing from that, publication damages cannot

25  constitute conversion.    The court in *Pearson* held that this was not conversion because "[w]here

26  the intermeddling falls short of the complete or very substantial deprivation of possessory rights

27

28

09-cv-02030-CKK
**MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS UNDER
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**          18

1  in the property, the tort committed is not conversion ...". (*Id* at 706)

2  **2. Publication Damages Cannot Be Claimed in a Claim for Conversion**

3      The *Pearson* case is important not just for establishing the elements of D.C. conversion

4  but because it so strongly bars the mixing of publication damages with state torts.

5      The court in *Pearson* strongly warned against any analysis that blurred the source of

6  documents with their use.)

7      **[I]n analyzing a claimed breach of privacy, injuries from intrusion and
       injuries from publication should be kept clearly separate**. Where there is

8      intrusion, the intruder should generally be liable whatever the content of what he

9      learns. An eavesdropper to the marital bedroom may hear marital intimacies, or he

10     may hear statements of fact or opinion of legitimate interest to the public; for

11     purposes of liability that should make no difference. On the other hand, where the

       claim is that private information concerning plaintiff has been published**, the**

12     **question of whether that information is genuinely private or is of public**

13     **interest should not turn on the manner in which it has been obtained.**

14     (*Pearson v. Dodd*, 410 F.2d 701, 705 (D.C. Cir. 1969), emphasis added)

15     As the Court in *Pearson* made clear, the measure of damages for trespass and conversion

16 can relate only to value of the property taken and not to publication damages[10].

17     The measure of damages in trespass is not the whole value of the property

18     interfered with, but rather the actual diminution in its value caused by the

19     interference.  More important for this case, a judgment for conversion can be

20     obtained with only nominal damages, whereas liability for trespass to chattels

21     exists only on a showing of actual damage to the property interfered with.

22

23  ―――――――――――

24      [10]The Court in *Pearson* rejected a narrow set of exceptions where the intangible content
    had a separate value stating that "none of it amounts to literary property, to scientific invention,

25  or to secret plans formulated by appellee for the conduct of commerce. Nor does it appear to be
    information held in any way for sale by appellee, analogous to the fresh news copy produced by

26  a wire service." *Pearson v. Dodd*, 410 F.2d 701, 708 (D.C. Cir. 1969)

27  **09-cv-02030-CKK**
    **MEMORANDUM IN SUPPORT OF MOTION**
    **TO DISMISS UNDER**
28  **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**        19

1   (*Pearson v. Dodd*, 410 F.2d 701, 707 (D.C. Cir. 1969))

2   **3. Copying Digital Files is Not Conversion**

3   Besides the documents headed for the shredder, CAIR's complaint vague speaks about the

4   "theft" of a "digital rolodex" and lists of donors.  Paragraph 31 alleges that Chris Gaubatz

5   accessed, "emails, computer-generated spreadsheets, and other electronic documents which he

6   was not authorized to access and delivered printouts or copies of those documents to Defendant

7   Paul David Gaubatz."   This accessing is not a deprivation and under any of the definitions of

8   conversion and when compared to *Pearson v. Dodd*, it is clear that conversion did not take place.

9   . As *Pearson v. Dodd* makes clear, copying is not conversion.

10   It is clear that on the agreed facts appellants committed no conversion of the
11   physical documents taken from appellee's files. Those documents were removed
12   from the files at night, photocopied, and returned to the files undamaged before
      office operations resumed in the morning. Insofar as the documents' value to
13   appellee resided in their usefulness as records of the business of his office,
14   appellee was clearly not substantially deprived of his use of them.
     (*Pearson* at 707)
15

16   Writing in *Bell v. Rotwein*, 535 F. Supp. 2d 137 (D.D.C. 2008) Judge Huvelle applied

17   *Pearson* rejecting a claim for conversion when the claimant had retained a copy of the purloined

18   document.  Judge Huvelle wrote that the claimant had no claim for conversion because by

19   retaining a copy he had "not [been] deprived of the beneficial use of the information." Furash &

20   Co., Inc. v. McClave, 130 F. Supp. 2d 48, 58 (D.D.C. 2001) (citing Pearson v. Dodd, 133 U.S.

21   App. D.C. 279, 410 F.2d 701, 706 (D.C. Cir. 1969)).

22   CAIR's complaint focuses on the use of the information, not CAIR's deprivation of the

23   shredder destined documents or any electronic materials.  There is no conversion as a matter of

24   law and CAIR's own pleadings (and the TRO declarations) establish that there is no possible

25   amendment which can cure this.

26   <h1 style="text-align:center">CLAIMS FOR RELIEF 2 & 3</h1>

27   **09-cv-02030-CKK**
     **MEMORANDUM IN SUPPORT OF MOTION**
     **TO DISMISS UNDER**
28   **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**          20

1

(**Breach of Fiduciary Duty/ Breach of Contract**)

2

3   **1. Plaintiff's Exhibit A Is Not A Contract Between Two Parties**

4          The Breach of Fiduciary Duty and Breach of Contract claims for relief turn on the alleged

5   signing of the confidentiality document. (Plaintiff's Exhibit A).  Even if signed, this document

6   would have been signed between a non-existent corporate entity and Chris Gaubatz.   There need

7   to be two parties to a contract.

8   **2. There Was No Consideration for the Confidentiality Agreement**

9          If we assume that CAIR was a valid entity of some type, there is no consideration for the

10  contract.   It is axiomatic that contracts require consideration (*Bullard v. Curry-Cloonan*, 367

11  A.2d 127 (D.C. 1976)) and there is no pleading of consideration by CAIR to Chris Gaubatz.

12  CAIR as the party asserting the existence of the contract has the burden of proof on that issue and

13  therefore the burden of pleading at least a single fact showing consideration. *Jack Baker, Inc. v.*

14  *Office Space Development Corp.*, 664 A.2d 1236, 1238 (D.C. 1995)]   Providing the job itself

15  can't be the consideration because the pleading alleges that defendant worked for CAIR for

16  months before signing the document and past conduct cannot be consideration for a later contract.

17   See*: Murray v. Lichtman,* 339 F.2d 749, 751-752, 119 U.S. App. D.C. 250 (1964); D.C. Std. Civ.

18  Jury Instr. No 11-6.   Since CAIR has chosen to make CAIR-Virginia and CAIR, a single entity,

19  they cannot now separate them and claim that employment at CAIR was a new job with new

20  consideration(s).

21  **3. CAIR Has Not Pled Facts Establishing a Fiduciary Relationship**

22          This failure to define a contract causes a failure to state a claim for breach of fiduciary

23  duty.  To state such a claim, plaintiff must allege facts sufficient to establish the following: (1)

24  defendant owed plaintiff a fiduciary duty; (2) defendant breached that duty; and (3) to the extent

25  plaintiff seeks compensatory damages – the breach proximately caused an injury." *Paul v.*

26  *Judicial Watch, Inc*., 543 F. Supp. 2d 1, 5-6 (D.D.C. 2008).

27

It is not enough to say that Chris Gaubatz was an intern.   Plaintiff must set forth specific facts which trigger that relationship.  *Diamond Phoenix Corp. v. Small*, No. 05-79, 2005 WL 1530264, at *6 (D. Me. June 28, 2005).   A failed contract is not such a document.

**4. There are No Damages Other than Publication Damages**

The 2nd and 3rd claims for relief ultimately focus not on harms due to any breach of duty but the harm of publication.   Paragraph 54 of the complaint lists the ways that CAIR alleges the duty was breached and this includes "publishing said documents and said recordings in print and on the Internet." (Complaint, Par. 54.f)

In terms of more specific harms caused by the alleged breach, CAIR can only state that it "...suffered and continues to suffer injury as a result of Defendant Chris Gaubatz' breach of his fiduciary duties." (Complaint, Par. 58)

These are basic failings to state a common law Claim for Relief.

# FOURTH CLAIM FOR RELIEF - TRESPASS

**1. Plaintiff has Not Plead that the Premises were Private**

Plaintiff has not even pled that the premises were private or not open to the public.   There cannot be trespass to a place open to the public without fee.

**2. There are No Damages - Nothing Was Harmed**

Plaintiff has not pled damages at all.   What property was harmed?   In case of actual injury to realty resulting from trespass the measure of damages is the difference between the value of the realty before the injury and its value after the injury. (*Decker v. Dreisen-Freedman, Inc.*, 144 A.2d 108, 110 (Mun. Ct. App. D.C. 1958))

These are basic failings to state a common law Claim for Relief.

# FIFTH CLAIM FOR RELIEF (ECPA)

ECPA does not apply to office computers at CAIR.  The ECPA applies to transfer facilities that forward data to an end user.  This would apply to large servers tied to ISP's or other data carriers.  It does not apply to home or business computers.

Therefore, this claim must be rejected in its entirety without leave to amend.  It is wholly inapplicable to CAIR.   The Act does not protect home or office computers, "the Act protects users whose electronic communications  are in electronic storage with an ISP or other electronic communications facility. *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072-1073 (9th Cir. Cal. 2004)

18 U.S.C. 2701(a)(1) limits its application to "a facility *through which* an electronic communication service is provided".  CAIR's offices are not a communications facility.  The act also refers to items in "electronic storage" but this is not an end user's computer.

CAIR alleges that emails were accessed by defendant but the e-mail messages and data stored on the hard drive do not constitute "electronic storage" within the meaning of the Stored Communications Act. The Act defines "electronic storage" as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic  communication service for purposes of backup protection of such communication." 18 U.S.C. 2510(17).

Subsection (A) applies only to messages in "temporary, intermediate storage," courts have construed subsection (A) as applying to e-mail messages stored on an ISP's server pending delivery to the recipient, but not e-mail messages remaining on an ISP's server after delivery. See *Theofel*, 359 F.3d at 1075.

The Eleventh Circuit has taken the same position.

The SCA, however, does not appear to apply to the source's hacking into Steiger's computer to download images and identifying information stored on his hard-drive because there is no evidence to suggest that Steiger's computer maintained any "electronic communication service" as defined in 18 U.S.C. § 2510(15).
(*United States v. Steiger*, 318 F.3d 1039 (11th Cir. Ala. 2003))

The same is true of the requirement that the electronic communication must be "in transit" and not stored on an end user's computer.

> We therefore hold that for a website such as Konop's to be "intercepted" in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage.  This conclusion is consistent with the ordinary meaning of "intercept," which is "to stop, seize, or interrupt in progress or course before arrival." Webster's Ninth New Collegiate Dictionary 630 (1985).
> (*Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 878 (9th Cir. Cal. 2002))

and

> The ECPA prohibits only "interceptions" of electronic communications. "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Id. § 2510(4).
> (*Blumofe v. Pharmatrak, Inc. (In re Pharmatrak, Inc. Privacy Litig.)*, 329 F.3d 9, 21 (1st Cir. Mass. 2003))

and

> In addition, "[e]very circuit court to have considered the matter has held that an "intercept" under the ECPA must occur contemporaneously with transmission. See United States v. Steiger, 318 F.3d 1039, 1048-49 (11th Cir. 2003); Konop v. Hawaiian Airlines, Inc., 302 F.3d 868 (9th Cir. 2002); Steve Jackson Games, Inc. v. U.S. Secret Serv., 36 F.3d 457 (5th Cir. 1994); see also Wesley College v. Pitts, 974 F. Supp. 375 (D. Del. 1997), summarily aff'd, 172 F.3d 861 (3d Cir. 1998)."
> (*Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. Pa. 2003))


This Claim for Relief is one of the two basis' for federal jurisdiction. If the Court finds that this claim should be dismissed it should find a lack of diversity for several reasons.

1. Once First Amendment protections are applied, damages cannot possiblly reach $ 75,000.

2. CAIR is an unincorporated association with members in Virginia so there is no diversity.

These matters are substantive first and then divest the court of jurisdiction.  Therefore it is

1  proper to rule that there is a failure to state a claim under Fed. Rule Civ. Proc. 12(b)(6) and then

2  dismiss all pendent claims (if any survive) for lack of Article III standing.

3  ## RULE 17 CAIR IS NOT A REAL PARTY IN INTEREST

4  Fed. Rule of Civil Procedure 17(a) requires that an "action must be prosecuted in the name

5  of the real party in interest."  Rule 17(a)(3) states that there cannot be a dismissal unless and until

6  "a reasonable time has been allowed for the real party in interest to ratify, join or be substituted

7  into the action."  But amendment is not a simple matter in the present instance.  The court need

8  not allow an amendment if the mistake in name is no honest and understandable but part of a

9  pattern of self serving deceptions. (*Feist v. Consolidators Freightway* 100 F. Supp. 2d 273, 275-6

10  E.D. Pa. 1999)

11  "Council on American-Islamic Relations, Inc." which does not exist cannot gain the

12  capacity to sue by retroactively conduct.  (*Paradise Creations Inc. V. UV Sales Inc.* (Fed. Cir.

13  2003) 315 F3d 1304, 1308.  Substituting CAIR-AC or CAIR-Foundation does nothing to change

14  the fact that a non-existent entity is acting as if it has a lawful existence.  Adding a different

15  plaintiff merely adds yet another mystery name to the CAIR soup.  It does not cure the initial

16  defect which is that CAIR has been functioning as if it were an entity when it is not.

17  If a dismissal is granted on this basis and CAIR seeks to amend to name another corporate

18  entity, an evidentiary hearing should be held to determine whether this substitution is in good

19  faith and with substantial basis in fact. (*Thomas v. Humfield* (5th Cir. 1990) 916 F2d 1032, 1034)

20  The public record cited in the Statement of Facts, shows that CAIR is a many faced entity

21  consisting of people and groups with a common interest.  It supervises many corporations but it is

22  not a corporation itself.

23  A voluntary unincorporated association may be nothing more than individuals

24  joining together based merely on common purpose or interest. See Hecht v.
    Malley, 265 U.S. 144, 157, 68 L. Ed. 949, 44 S. Ct. 462 (1924). Thus, it is a

25  maxim of the common law that, in the absence of statutory authority, **such an**

26  **association has no legal existence independent of those members who**

27
28

1

2

**comprise the organization.** Venus Lodge No. 62 v. Acme Benevolent Ass'n, 231

3

N.C. 522, 526, 58 S.E.2d 109, 112 (1950); Annot., 15 A.L.R. 2d 1451 (1951).

Such being the case, the association at common law cannot, in its own name, (1)

4

enter into contracts, Lamm v. Stoen, 226 Iowa 622, 626, 284 N.W. 465, 467

5

(1939); (2) take, hold, or transfer property, Arnold v. Methodist Episcopal Church

6

South, 281 Ala. 297, 300, 202 So.2d 83, 84-85 (1967); North Little Rock Hunting

Club v. Toon, 259 Ark. 784, 793, 536 S.W.2d 709, 713-14 (1976); Libby v. Perry,

7

311 A.2d 527, 531-32 (Me. 1973); Johnson v. South Blue Hill Cemetery Ass'n,

8

221 A.2d 280, 284 (Me. 1966); In re Estate of Anderson, 571 P.2d 880, 882 (Okla.

App. 1977); or (3) sue or be sued, United Mine Workers v. Coronado Coal Co.,

9

259 U.S.  344, 385, 66 L. Ed. 975, 42 S. Ct. 570 (1922)...

10

(*Rock Creek Gardens Tenants Asso. v. Ferguson*, 404 A.2d 972, 973 (D.C. 1979)

Emphasis added)

11

12

CAIR as a non-corporation cannot maintain a lawsuit as a corporation because under D.C.

13

law, no corporation "without a certificate of authority shall be permitted to maintain any action,

14

suit, or proceeding in any court of the District until such corporation shall have obtained a

certificate of authority. D.C. Code Ann. § 29-583(a) (1981)."  (*Watergate South, Inc. v. Duty*, 464

15

A.2d 141 (D.C. 1983))

16

Since capacity to sue is determined by local law, CAIR cannot simply use a successor

17

corporation to fix the problem.  D.C. law prohibits successors in interest from raising the

18

complaints of an unincorporated CAIR.

19

First, while the DCHRA's definition of "person[s]" who can sue includes

20

"unincorporated organization[s]," it does not include successors-in-interest of

21

unincorporated organizations. D.C. Code § 2-1401.02(21). Second, and more

22

fundamentally, ERC stands before this Court in its incorporated form and seeks

relief as such. **It therefore must establish standing based on injuries suffered**

23

**while it was a duly licensed corporation**. **To hold otherwise would be to**

24

**eviscerate the provisions of the District of Columbia Code that prescribe**

25

**consequences for the failure to follow the statutory filing and reporting**

**requirements for corporations**. Because ERC cannot establish standing

26

27

28

retroactively as a corporation with respect to claims based on events and injuries that occurred during the revocation period, the Court will grant Woodner's motion to dismiss with respect to all of ERC's claims based on events and injuries that occurred prior to April 25, 2005.

(*Bourbeau v. Jonathan Woodner Co.*, 549 F. Supp. 2d 78, 86 (D.D.C. 2008), emphasis added)

If CAIR does not exist, it cannot sue as a corporation for injuries.

District of Columbia law makes clear that while Plaintiff's charter was revoked it ceased to exist except for the limited purpose of winding up its affairs. While in that state, Plaintiff could not suffer the injury it claims in this case, the diversion of its resources from its central mission, because it was not authorized to pursue that mission. . . . **Plaintiff [therefore] may not recover for any injuries suffered during this period**. Equal Rights Center v. E & G Property Svcs., Inc., Civil Action No. 05-2761, Order at 2 (D.C. Sup. Ct. Oct. 31, 2006) (Fisher, J.) (citing D.C. Code ? 29-301.86(c) and (d)). See also Equal Rights Center v. Horning Bros., Civil Action No. 05-7191, Order at 1-2 (D.C. Sup. Ct. Dec. 21, 2005) (Weisberg, J.); Equal Rights Center v. Phifer Realty Inc., Civil Action No. 05-7190, Order at 1-2 (D.C. Sup. Ct. Dec. 21, 2005) (Weisberg, J.).

(*Bourbeau v. Jonathan Woodner Co.*, 549 F. Supp. 2d 78, 85 (D.D.C. 2008), emphasis added.)

# CAIR LACKS ARTICLE III
# and PRUDENTIAL STANDING

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" (*Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555, 560)   To establish Article III standing, CAIR must show an "injury in fact" that is concrete and not conjectural. (*Lujan v. Defenders of Wildlife* at 559-60)   With defendants provide all the items set forth in the Preliminary Injunction and with the First Amendment barring any claimed damages, there is simply nothing of significance left to adjudicate.   CAIR's claim to damages for First Amendment protected activity does not give CAIR standing to sue because protected conduct unrelated to

1  compensable injuries in fact will not confer Article III standing.  (*Vermont Agency of Natural*

2  *Resources v. United States ex. Rel. Stevens* (2000) 529 U.S. 765, 772).

3  **1. A Non-Entity Can Suffer No Harm**

4       For this reason there is no standing under the law of the District of Columbia and no

5  Article III standing in this U.S. District Court.

> 6  Standing under the DCHRA is co-extensive with Article III standing. See
>
> 7  Molovinsky v. Fair Employment Council of Greater Washington, Inc., 683 A.2d
>
> 8  142, 146 (D.C. 1996). Article III standing requires plaintiffs to show, at an
>
> "irreducible constitutional minimum": (1) that they have suffered an injury in fact;
>
> 9  (2) that the injury is fairly traceable to the defendant's conduct; and (3) that a
>
> 10  favorable decision on the merits likely will redress the injury. See Friends of the
>
> Earth v. Laidlaw, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)
>
> 11  (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119
>
> 12  L. Ed. 2d 351 (1992)); Gettman v. DEA, 351 U.S. App. D.C. 344, 290 F.3d 430,
>
> 13  433 (D.C. Cir. 2002). The alleged injury must be concrete and particularized and
>
> actual or imminent, not conjectural, hypothetical or speculative. See Friends of the
>
> 14  Earth v. Laidlaw, 528 U.S. at 180-81; Lujan v. Defenders of Wildlife, 504 U.S. at
>
> 15  560-61.
>
> 16  (*Bourbeau v. Jonathan Woodner Co.*, 549 F. Supp. 2d 78, 85 (D.D.C. 2008))

17       CAIR cannot recover because a claim must be to plaintiff's own legal rights and interests,

18  rather than the rights of others. (See *Elk Grove Unified School District v. Newdow* (2004) 542

19  U.S. 1, 14)

20

21  **2a. No Damages**

22

23       For standing to exist the claimed injury must be "distinct and palpable," not "abstract,"

24  "conjectural," or "hypothetical." *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 82 L. Ed. 2d

25  556 (1984) (internal quotation marks omitted).

26       CAIR has not pled any facts to establish even a possibility of damages for any Claim For

27  **09-cv-02030-CKK**
**MEMORANDUM IN SUPPORT OF MOTION**
**TO DISMISS UNDER**
28  **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**         28

1   Relief.  CAIR's claims for attorney's fees are not the type of damages that confer standing as an

2   "interest in attorney's fees is ... insufficient to create an Article III case or controversy where none

3   exists on the merits of the underlying claim." (*Spann v. Colonial Village Inc*. (DC Cir. 1990) 899

4   F2d 24, 27)   CAIR claims that there are continuing damages but fails to mention what these are.

5   CAIR   cannot assert Article III standing that depends on the occurrence of "contingent future

6   events that may not occur as anticipated or may not occur at all." (*Texas v. United States* (1998)

7   523 U.S. 296, 300 dealing with the ripeness doctrine but the standard is presumably the same.)

8         The burden of proof is on the party who seeks the exercise of jurisdiction in his or her

9   favor.  The plaintiff must "clearly ... allege facts demonstrating that he is a proper party to invoke

10  judicial resolution of the dispute." (*United States v. Hays* (1995) 515 U.S. 737, 743) FRCP 8(a)

11  requires a short statement showing an entitlement to relief but it must contain particularized

12  allegations of fact to support the standing to sue and the standing "must affirmatively appear in

13  the record." (*FW/PBS Inc. v. City of Dallas* 493 U.S. 215, 231) No such statement appears in the

14  pleading.  No damages have been pled whatsoever and the only vague factual allegations all

15  related to First Amendment protected activity.

16        The focus on publication by CAIR and in stopping publication of the book and of the

17  website (Prayer, item 3) emphasizes the lack of other damages.  Since publication damages

18  cannot be redressed through common law torts, plaintiff has failed to show "a causal connection

19  between the injury and the conduct complained of, and that it is likely that the injury will be

20  redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.

21  Ct. 2130, 119 L. Ed. 2d 351 (1992).  *Settles v. United States Parole Comm'n*, 429 F.3d 1098,

22  1101-1102 (D.C. Cir. 2005)  Standing requires that the injury be "fairly traceable" to the alleged

23  actions of the defendant); see *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955,

24  167 L. Ed. 2d 929 (2007) (from a pleading perspective, "[f]actual allegations must be enough to

25  raise a right to relief above the speculative level"); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50,

26  173 L. Ed. 2d 868 (2009))

27

28

**09-cv-02030-CKK**
**MEMORANDUM IN SUPPORT OF MOTION**
**TO DISMISS UNDER**
**FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**          29

1   Given the important First Amendment issues and the seeming impossibility of

2   presenting a plausible claim for actual damages, plaintiff asks that the Court deny any request for

3   leave to amend as to damage pleading.   If leave to amend is granted, defendant asks that the

4   Court order an evidentiary hearing to test the validity of such claims as it does not appear that

5   absent First Amendment protected claims, CAIR can assert any common law damages from

6   having files looked at or material destined for the trash, preserved.  (See *Warth v. Seldin* (1975)

7   422 U.S. 490 holding that "it is within the trial court's power to allow or to require the plaintiff to

8   supply, by amendment to the complaint or by affidavits, further particularized allegations of fact

9   deemed supportive of plaintiff's standing." *Warth v. Seldin*, 422 U.S. 490, 501-502 (U.S. 1975)

10

11   **2b.  The Amount in Controversy is Less than $ 75,000 so There is No Diversity Jurisdiction**

12   The amount in controversy is determined from the allegations or prayer of the complaint.

13   (*St. Paul Mercury Indemnity v. Red Cab Co.* (1938) 303 U.S. 283, 289.  If this Court rules that the

14   pled damages are primarily or exclusively protected publication damages and if this court

15   dismisses the Fifth Claim for Relief there are simply no damages pled and no damages can be

16   plausibly pled consistent with the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S.

17   544 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, (2009).

18   **3. There is No Federal Question**

19   The Fifth Claim For Relief does not relate to the computers at CAIR.  If the Court

20   dismisses this Claim For Relief, there is no federal question.

21

22   **THE MATTER IS MOOT**

23   By stipulation, CAIR has received the items set forth in the Preliminary Injunction.  There

24   are no longer any issues with respect to loss of documents or damage to documents.  The First

25   Amendment protects publication and no defamation claims have been made.  This means that

26   the case is moot.  This was the holding under the facts in *Committee in Solidarity with People of*

27

1   *El Salvador v. Sessions*, 929 F.2d 742, 744 (D.C. Cir. 1991).   The facts are so similar to the case

2   at bar that the finding of mootness should be applied equally the case at bar.

3      In *Committee in Solidarity*, a lawsuit was filed by the Committee in Solidarity with the

4   People of El Salvador (CISPES) against the FBI   An informant, had alleged that CISPES was

5   involved in terrorist activities.  Despite a two year FBI investigation, no evidence of terrorist

6   activities was uncovered.  The FBI closed its inquiry and concluded that the informant was

7   unreliable.  FBI Director, William Sessions in testimony before congressional committees, stated

8   that the investigation should never have been initiated.   Director Sessions notified the committees

9   that several agents had been disciplined and that internal procedures had been revised to insure

10   that such errors would not recur.

11      Similar to the allegations by CAIR, CISPES, alleged that the FBI conducted the

12   investigation for the purpose of deterring plaintiffs from exercising their First Amendment right

13   to protest the government's policy in Central America, that the investigation had this effect, that

14   CISPES's membership declined during the investigation, and that plaintiffs were suffering

15   irreparable harm as a result of the FBI's possession of information about them and its

16   dissemination of such information to others.

17      CISPES sought a declaratory judgment and a "mandatory injunction"  requiring the FBI

18   to collect all FBI files and any "other federal agency files" relating to the CISPES investigation

19   and to deposit these files in the National Archives "upon terms and conditions to be determined

20   by the Court."

21      The District Court denied CISPES motion for a preliminary injunction (705 F. Supp. 25

22   (D.D.C. 1989)) and the defendants filed a motion to dismiss the case for lack of subject matter

23   jurisdiction, Fed. R. Civ. P. 12(b)(1).  While the motion was pending, the FBI entered into a

24   written agreement with the National Archives transferring all of its CISPES files, including those

25   held by its field offices and those resulting from "spin-off" investigations, to the Archives.

26      The district court took note of the agreement and dismissed the complaint on the grounds

27

28

1  that the case was moot and that plaintiffs lacked standing. 738 F. Supp. 544, 547-48 (D.D.C.

2  1990).

3      The Preliminary Injunction in this case was entered by stipulation.  Plaintiff now has the

4  documents it complains of.  All common law issues are resolved (even those that were not pled).

5  As the court noted *Committee in Solidarity with People of El Salvador v. Sessions*, 929 F.2d 742,

6  (D.C. Cir. 1991), "[c]urrent or future harm serves to keep the controversy alive. If the possibility

7  of continuing injury disappears while the lawsuit is pending, the complaint ordinarily should be

8  dismissed as moot." (*Id* at 744)   The only continuing injury are the publication damages

9  including CAIR's request to prevent the continued publication of the book or the publication of

10 any of the information obtained. (Prayer, item 3).

11     CAIR the movant must prove either "that the harm has occurred in the past and is likely to

12 occur again" or that the harm is "certain to occur in the near future." Id. "Injunctions . . . will not

13 issue to prevent injuries neither extant nor presently threatened, but only merely "feared.""'

14 Comm. in Solidarity With People of El Sal. (CISPES) v. Sessions, 929 F.2d 742, 745-46, 289

15 U.S. App. D.C. 149 (D.C. Cir. 1991) (alteration in original) (citation omitted). *(Beattie v.*

16 *Barnhart*, 2009 U.S. Dist. LEXIS 96889 (D.D.C. Oct. 20, 2009))

17     There is simply no case or controversy and the entire matter should be dismissed with

18 prejudice.

19

20              **CONCLUSION & REQUEST FOR EVIDENTIARY HEARING**

21     CAIR is not a valid entity and even if it were, the exposure of its inner workings is part of

22 the price it pays for being a controversial group in a hotly contested arena.  If the press or

23 publishers had to prove the purity of their sources before publishing we would never hear about

24 the various romances of Tiger Woods (which might be a relief) but we also never have heard of

25 the Pentagon Papers.   In *New York Times Co. v. United States*, 403 U.S. 713, 29 L. Ed. 2d 822,

26 91 S. Ct. 2140 (1971) (per curiam), the Court upheld the right of the press to the Pentagon Papers

27

28

as they related to matters of great public concern.  Publication was allowed even though the documents were stolen.

 As Justice Kennedy said, concurring in *International Society for Krishna Consciousness v. Walter Lee* (1992) 505 U.S. 672:

> The First Amendment is often inconvenient. But that is beside the point.
> Inconvenience does not absolve the government of its obligation to tolerate speech.

Whether the defendants are misguided and unfair in their criticisms or modern day Paul Revere's may some day be decided.  But not in the courtroom.  The case should be dismissed on the above stated grounds, without leave to amend.


**Request for Evidentiary Hearing**

If plaintiff attempts to amend to change its name to Council on American Islamic-Relations Action Network or other functioning entity (e.g. CAIR-Foundation) defendants seek an evidentiary hearing (or showing by declaration) to establish whether there is a genuine corporate entity that is "CAIR" or whether "CAIR" is a moniker used to represent the activities of a ruling group that overseas (in some way) the operations of other CAIR related groups.

If CAIR is an unincorporated mother ship that oversees the dozens of CAIR "pod groups", this affects the diversity issue as the presence of any association member in Virginia (e.g. CAIR-Virginia) would defeat diversity. (*Carden v. Arkoma Associates* (1990) 494 U.S. 185, 195; *Grupo Dataflux v. Atlas Global Group LP* (2004) 541 U.S. 567, 569)

In addition, in claiming damages, the incapacity of a non-existent corporation to contract or sue may be dispositive on all state and federal claims for relief.   The issue may be more than nominal, it may be genuinely jurisdictional.  If so, as the Judge John Garrett Penn noted in *Gateway 2000, Inc.*, 84 F. Supp. 2d 112, 115 (D.D.C. 1999), a plaintiff cannot amend to add a new plaintiff to cure a jurisdiction problem.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Court adopts the rule that a "plaintiff may not amend the complaint to substitute a new plaintiff in order to cure a lack of jurisdiction, because a plaintiff may not create jurisdiction by amendment when none exists." Moore's at P 15.14[3]. Courts construing § 1653 have held that while that statute provides a method for curing defective allegations of jurisdiction, "it is not to be used to create jurisdiction retroactively where it did not exist." Aetna Casualty & Surety Co. v. Hillman, 796 F.2d 770, 775 (5th Cir. 1986).

(*Lans. Gateway 2000, Inc.*, 84 F. Supp. 2d 112, 115 (D.D.C. 1999))

See also: *Vianix Delaware LLC v. Nuance Communs., Inc*., 2009 U.S. Dist. LEXIS 40992 (D. Del. May 12, 2009)

For the above reasons and because any documents/things produced in response to the TRO/Preliminary Injunction should be produced only to a real and responsible entity, these matters are of significance.

Dated: December 17, 2009

_____//s//_____
Daniel Horowitz
Attorney for Defendants

**09-cv-02030-CKK**
**MEMORANDUM IN SUPPORT OF MOTION**
**TO DISMISS UNDER**
**FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**          34