DANIEL A. HOROWITZ California State Bar No. 92400
Appearing Pro Hac Vice
Attorneys at Law
P.O. Box 1547
Lafayette, California 94549

MARTIN GARBUS
Appearing Pro Hac Vice
Eaton & Van Winkle
3 Park Avenue
New York, New York

BERNARD S. GRIMM
COZEN O'CONNOR
1627 I Street NW
Suite 1100
Washington, DC 20006

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS,                                    Case No. 09-cv-02030-CKK

       Plaintiff,

vs.

PAUL DAVID GAUBATZ, CHRIS
GAUBATZ et al.,

       Defendants.
_____/

### DEFENDANT'S REPLY BRIEF ON MOTION TO DISMISS
### (Fed. Rule Civ. Proc. 12(b)(6))

# TABLE OF CONTENTS

CAIR PLEADS ONLY PUBLICATION DAMAGES                                         1

   A. CAIR's count by count damage claims are Either Conclusory or
They Claim Publication Damages                                               1

    1. Damages that are Purely Conclusory                                1

    2. CAIR's First Amendment Protected Allegations                      2

       A. *Bartnicki v. Vopper* Holds That Publishers Have
First Amendment Protections Even if CAIR's
Allegations of Wrongful Conduct in Obtaining
the Information Are Accepted (For Purposes of this Motion)                    3

       B. CAIR Admits It's Inability to Plead *Cohen*
Type Damages                                                                 4

CAIR SHOULD NOT BE GIVEN LEAVE TO AMEND                                       5

   A. To Allow the Lawsuit to Proceed Would Chill Speech                    5

THE LAWSUIT IS MOOT                                                           6

THERE IS NO TRESPASS AS A MATTER OF LAW                                       6

CAIR HAS NOT STATED A CONVERSION CLAIM                                        8

CAIR HAS NOT STATED A BREACH OF CONTRACT CLAIM                                10

CAIR HAS NOT STATED A CLAIM FOR BREACH
OF FIDUCIARY DUTY                                                             11

CAIR SHOULD NOT BE ALLOWED TO AMEND
TO NAME CAIR-AN                                                               13

   A. CAIR Has the Burden of Proving an Honest or Understandable Mistake   13

   B. CAIR'S Name Shifting Has Tactical Value to CAIR                       15

   C. The Value of Name Shifting is Not a Recent Invention
for Purposes of this Litigation                                              16

THE ELECTRONIC COMMUNICATIONS PRIVACY ACT
DOES NOT APPLY                                                                            18

   A. Bartnicki v. Vopper Addresses this Issue and Bars a Suit
   Under the Act from Seeking First Amendment Protected Damages (for publication)    18

   B. CAIR's Novel Interpretation of the Act (if adopted) Would Violate
   the Commerce Clause                                                              19

   C. CAIR's Interpretation Renders the Statute Unconstitutionally Vague             21

      I. Theoful v. Farey-Jones                                               21

      ii. CAIR's District Court Citations                                     22

      iii. U.S. v. Steiger Held that Hacking a Local Computer
      Did Not Invoke the Act                                                  24


CONCLUSION                                                                               24

# TABLE OF AUTHORITIES

## UNITED STATES SUPREME COURT

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)                                   2,6,9

Bartnicki v. Vopper, 532 U.S. 514 (2001)                                    3,18,23

Citizens United v. FEC, 2010 U.S. LEXIS 766 (U.S. Jan. 21, 2010)            5

Crowell v. Benson, 285 U.S. 22 (1932)                                       21

FEC v. Wis. Right to Life, Inc., 551 U.S. 449 (2007)                        5,6

Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241 (1964)          19

Maryland v. Wirtz, 392 U.S. 183 (1968)                                      20

NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1 (1937)                     20

Perez v. United States, 402 U.S. 146 (1971)                                 20

Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622 (1994)                3

U.S. v. Darby, 312 U.S. 100 (1941)                                          19

U.S. v Lopez, 115 S. Ct. 1624 (1995)                                        19,20

U.S. v. Rumely, 345 U.S. 41 (1953)                                          21

Wickard v. Filburn, 317 U.S. 111 (1942)                                     20

## D.C. COURT OF APPEALS

Committee in Solidarity with People of El Salvador v. Sessions,

929 F.2d 742 (D.C. Cir. 1991)                                               6

Pearson v. Dodd, 410 F.2d 701 (D.C. Cir. 1969)                              9

United States v. Kearney, 498 F.2d 61 (D.C. Cir. 1974)                      7

## DISTRICT COURT D.C.

Church of Scientology Int'l v. Eli Lilly & Co., 848 F. Supp. 1018 (D.D.C. 1994)   12

Lans v. Gateway 2000, Inc., 84 F. Supp. 2d 112 (D.D.C. 1999)   14,15

NOW v. Operation Rescue, 816 F. Supp. 729 (D.D.C. 1993)   7

Palmer v. Homecomings Fin., LLC, 2010 U.S. Dist. LEXIS 812
(D.D.C. Jan. 6, 2010)   1, 16

Steele v. Isikoff, 130 F. Supp. 2d 23 (D.D.C. 2000)   1,3,4,5,12

## SECOND CIRCUIT COURT OF APPEALS

Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,

106 F.3d 11, 20 (2d Cir. N.Y. 1997)

## FOURTH CIRCUIT COURT OF APPEALS

Intown Properties Management, Inc. v. Wheaton Van Lines, Inc.,

271 F.3d 164 (4th Cir. 2001)   13

## FIFTH CIRCUIT COURT OF APPEALS

Dorsey v. Portfolio Equities 540 F3d 333 (5th Cir. 2008)   11

## NINTH CIRCUIT COURT OF APPEALS

Branch v. Tunnell 14 F3d 449 (9th Cir. 1994)   17

Hal Roach Studios Inc. v. Richard Feiner & Co. Inc. 896 F2d 1542 (9th Cir. 1990) 11

Theofel v. Farey-Jones, 359 F.3d 1066 (9th Cir. 2004)   21,22

United States v. CMA, Inc., 890 F.2d 1070 (9th Cir. 1989)   14

## ELEVENTH CIRCUIT COURT OF APPEALS

Bryant v. Avado Brands Inc. 187 F3d 1271 (11th Cir. 1999)   17

United States v. Steiger, 318 F.3d 1039 (11th Cir. Ala. 2003)                24


# OTHER FEDERAL


Automated Info. Processing, Inc. v. Genesys Solutions Group, Inc.,
164 F.R.D. 1  (D.C.N.Y. 1995)                                                14

Bohach v. City of Reno 932 F. Supp. 1232 (D. Nevada 1996)                    23

Cardinal Health v. Adams 582 F. Supp 2d 967 (M.D. Tenn. 2008)                23

Ideal Aerosmith, Inc. v. Acutronic United States, Inc., 2007 U.S. Dist.
LEXIS 91644 (W.D. Pa. Dec. 13)                                               22,23

Schmidt v. Bishop, 779 F. Supp. 321 (S.D.N.Y. 1991)                          13

Sherman & Co. v. Salton Maxim Housewares Inc., 94 F. Supp. 2d 817
(E.D. 2006)                                                                  23


# DISTRICT OF COLUMBIA (State)


Bond v. United States, D.C.App., 233 A.2d 506 (1967)                         7

Chase Manhattan Bank v. Burden, 489 A.2d 494                                 8

Reed v. United States, 239 A.2d 156 (D.C. 1968)                             9

# I.

# CAIR PLEADS ONLY PUBLICATION DAMAGES

CAIR pleads damages in a vague and conclusory manner.  The court should completely disregard CAIR's claims when no facts are pled. *(Palmer v. Homecomings Fin., LLC*, 2010 U.S. Dist. LEXIS 812, 3-4 (D.D.C. Jan. 6, 2010) See also *Steele v. Isikoff*, 130 F. Supp. 2d 23, 27 (D.D.C. 2000) (Kollar-Kotelly, J.), finding that the court need not accept "legal conclusions cast in the form of factual allegations." (Citations Omitted) (Steele 130 F. Supp. 2d at 27) CAIR's individual counts provide only vague conclusions of damages and the reason for this is that, at best, CAIR has pled only publication damages.

**A. CAIR's count by count damage claims are Either Conclusory or They Claim Publication Damages**

**1. Damages that are Purely Conclusory**

**Count One**

51. Defendants' exercise of ownership, dominion, or control over CAIR's property was in denial or repudiation of CAIR's own rights thereto.

**Count Two**

58. CAIR has suffered and continues to suffer injury as a result of Defendant Chris Gaubatz's breach of his fiduciary duties.

**Count Three**

66. CAIR has suffered and continues to suffer injury as a result of Defendant Chris Gaubatz's breach of his contractual obligations to CAIR.

**Count Four**

7l. CAIR has suffered and continues to suffer injury as a result of Defendants'

intrusion.

**Count Five**

77. CAIR was aggrieved and continues to be aggrieved.

There are no "[f]actual allegations ... to raise a right to relief above the speculative level."
*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) and within the pleading of each count, CAIR does not even make the attempt.

**2. CAIR's First Amendment Protected Allegations**

Paragraph 5 of the complaint alleges that the defendants "generally used the surreptitiously obtained documents and recordings to cast CAIR in a negative, inaccurate light." Paragraph 27, like paragraph 5 alleges that defendants acted in "cast CAIR in a negative light". Paragraph 6  claims harm by "public disclosure" of "information".

Paragraph 33 alleges that "[o]n or around October 15, 2009, the book Muslim Mafia: Inside the Secret Underworld that 's Conspiring to Islamize America by Defendant Paul David Gaubatz and Paul Sperry was released."

Paragraph 36:  "The book references, cites, characterizes, and/or quotes from numerous of the documents ..."

Paragraph 38: "The book specifically cites, quotes, characterizes, and/or references..."

Paragraph 39:  "The book also specifically cites, quotes, characterizes, and/or references..."

Paragraph 40: "In addition, Defendant Paul David Gaubatz maintains an internet blog ..."

Paragraph 41: "On his blog, Defendant Paul David Gaubatz has posted ..."

Paragraph 42: Included among Defendant Paul David Gaubatz' blog postings are ..."

This Court should reject CAIR's self chosen captions for each count and find that each count of the complaint states a First Amendment protected claim. As stated in *Steele* "the First Amendment requires claimants to meet the constitutional defamation requirements in order to obtain reputational damages, regardless of the claim under which such damages are sought. (Steele 130 F. Supp. 2d at 28, emphasis added)

### A. *Bartnicki v. Vopper* Holds That Publishers Have First Amendment Protections Even if CAIR's Allegations of Wrongful Conduct in Obtaining the Information Are Accepted (For Purposes of this Motion)

In *Bartnicki v. Vopper*, 532 U.S. 514 (2001) the Supreme Court excluded liability for the publication of a taped conversation of a labor official talking to other union members about a teachers' strike.  The parties stipulated that the taped conversation had been illegally obtained by an intercept in violation of Electronic Communications Privacy Act, but the Court held the radio station that played the tape was not liable.  The Court balanced the desire to remove any incentive for illegally taping and the need to protect those who were in fact, illegally taped, against the First Amendment.   While this case was directed to the publisher not the parties that obtained the recordings, it is has direct application to the present case as CAIR's complaint focuses on publication when it states its injuries and the cause in fact of the injuries.

In *Bartnicki,* Justice Stevens, cited *Turner Broadcasting System, Inc. v. FCC,* 512 U.S. 622, 642, 129 L. Ed. 2d 497, 114 S. Ct. 2445 (1994).  for the point that even though the statute was content neutral, facial neutrality was not sufficient to allow the application of the statute in all circumstances.  532 U.S. 514, 526 (U.S. 2001)   The Court noted that "what gave rise to statutory liability ... was the information communicated on the tapes" so that what was being punished was

not the conduct of obtaining the tapes but "speech dependent on the nature of the contents." (432 U.S. at 527)   Similarly, *Steele* noted that "even though the Hustler plaintiff pled intentional infliction of emotional distress and not defamation, the Court determined that the First Amendment requires claimants to meet the constitutional defamation requirements in order to obtain reputational damages, regardless of the claim under which such damages are sought. (*Steele* 130 F. Supp. 2d at 28) For this reason, CAIR's use of the Electronic Communications Privacy Act just like its use of the common law torts, are an end run around the First Amendment when CAIR can state no damages permitted under *Cohen* and clearly (and repeatedly) states publication damages.

### B. CAIR Admits An  Inability to Plead *Cohen* Type Damages

CAIR as much as admits that it has no *Cohen* type damages[1].  CAIR's excuse for this is that "[t]o the extent Defendants complain that the Complaint does not set out all of CAIR's damages exhaustively and in detail, such would have been impossible at the time the Complaint was filed...".   This impossibility is "because CAIR could only infer what precisely it was that Defendants had stolen." (Response p. 10)

What CAIR ignores is that almost three months have passed since CAIR obtained its TRO

---

[1]Viewed in tandem, Hustler and Cohen divide claims against the news media by categorizing the damages sought. If a party seeks damages for harm to reputation or state of mind, the suit can only proceed if that party meets the constitutional requirements of a defamation claim. If a party seeks damages for non-reputational harms, which include lost jobs and diminished employment prospects, then the First Amendment does not bar suit as long as the claims are brought under generally applicable laws.  (*Steele* 130 F. Supp 2d at 28)

and obtained the documents and still it cannot properly allege any damages[2].   CAIR seeks leave to continue the suit in the hope that some future event will reveal the missing damages.

Despite claiming that they don't know what is in the documents obtained by defendants, CAIR obviously does know and they even reference the contents in fn. 5 saying that a fair portion of the documents consisted primarily of old newspaper articles, magazines, and restaurant delivery menus.

# II.

# CAIR SHOULD NOT BE GIVEN LEAVE TO AMEND

CAIR invokes *Steele* to argue that even without damages the lawsuit should continue. Steele fundamentally differs from CAIR. In *Steele* the plaintiff had pled damages and the Court felt that dismissing the action on "First Amendment grounds would be inappropriate because the character of Steele's  damages is not definite at this early stage." (Steele 130 F. Supp. 2d at 28)

CAIR's has unambiguously pled publication damages.  There is nothing to clarify. Unlike the defendant in *Steele*, CAIR hopes to stumble on damages that will not be First Amendment protected.  Unlike the plaintiff in *Steele*, CAIR has made no effort to plead *Cohen* permitted damages.  CAIR has also made no attempt to amend its complaint to add damages and CAIR's Response has not even hinted that it can ever plead damages.

**To Allow the Lawsuit to Proceed Would Chill Speech**

CAIR is asking the Court to allow it to pursue a lawsuit in the U.S. District Court, without

---

[2]Under Rule 15(a)(1)(B) of the Rules of Federal Civil Procedure, CAIR could have amended as of right to properly allege damages.  It has elected not to.

establishing jurisdiction.  Forcing defendants to litigate while CAIR searches for jurisdiction is

not sanctioned by any case and it allows a plaintiff that has not been harmed under the *Cohen*

standard to use the punishment of continued litigation against an adversary.

The Supreme Court in *Citizens United v. FEC*, 2010 U.S. LEXIS 766 (Jan. 21, 2010)

balanced the chilling effect of litigation with First Amendment rights finding that First

Amendment standards, must give the benefit of any doubt to protecting rather than stifling

speech.(citations)  (Id 29-30); *FEC v. Wis. Right to Life, Inc*., 551 U.S. 449, 457 (2007) ("the First

Amendment requires us to err on the side of protecting political speech...")

In *In re Intelligroup Secs. Litig*., 468 F. Supp. 2d 670, 705 (D.N.J. 2006) Judge Garrett

Brown dismissed a complaint when he found that "... plaintiffs' Complaint presents nothing but a

"fishing expedition" driven by Plaintiffs' hope to eventually discover a causal relationship

Plaintiffs need to support their claim. However, Plaintiffs' bare aspirations cannot meet even the

lenient pleading requirements of Rule 8."  Under *Ashcroft v. Iqbal* 129 S. Ct. 1937 (2009), given

the complaint's failings, dismissal is not merely prudent; it is required.

Defendant respectfully submits that this Court should rule in accordingly.

# III.

# THE LAWSUIT IS MOOT

*Committee in Solidarity with People of El Salvador*  applies now, more than ever since

Dan Marino, counsel to CAIR, has abandoned any objections to the F.B.I. subpoena for CAIR's

documents. (Exhibit A) This concession, combined with the TRO document turnover, renders the

case entirely moot (if it ever had any viability at all).   If the possibility of continuing injury

disappears while the lawsuit is pending, the complaint ordinarily should be dismissed as moot.

929 F.2d 742 at 744 [I]t is not enough that a dispute was very much alive when suit was filed.

Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990);

accord *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 461-462 (U.S. 2007).

# IV.

# THERE IS NO TRESPASS AS A MATTER OF LAW

CAIR does not dispute that Chris Gaubatz was admitted to the CAIR premise.  He

fulfilled his job duties and was never asked to leave.  Trespass requires presence <u>against the will</u>

of the lawful occupant. (D.C. Code 22-3302(b)) See also:   *Bond v. United States*, D.C.App., 233

A.2d 506, 514 (1967) ("[T]o be against the will of the lawful occupant the entry must be against

the expressed will, that is, after warning to keep off.") ; *NOW v. Operation Rescue*, 816 F. Supp.

729, 735 (D.D.C. 1993) finding that defendants violated District of Columbia trespass law, which

states: Any person who, without lawful authority, shall enter, or attempt to enter, any public or

private dwelling . . . against the will of the lawful occupant or of the person lawfully in charge

thereof . . . shall be guilty of a misdemeanor.  In the District of Columbia there is simply no

trespass by false pretenses.

CAIR attempts seeks to carve an exception to this rule by citing *United States v. Kearney*,

498 F.2d 61, 66 (D.C. Cir. 1974). But *Kearney* is a burglary case, not a trespass case.  The court

in *Kearney* held that a burglary can be committed by entering "an occupied dwelling with intent

to commit a crime therein.  The court notes that such offense can be committed without a

violation of the unlawful entry statute. (498 F.2d at 65)

Trespass is traditionally a general intent crime and burglary is traditionally a specific intent crime.  CAIR's argument confuses the two. People enter locations many times with permission.   If the entry is not in derogation of the property interests of the owner there is no offense.  The private thoughts upon entry do not alter elements of the tort/criminal offense.

*Dresnick, M.D. v. American Broadcasting Companies* 444 F.3d 1345, 1351 (7th Cir. 1995) cited numerous examples of consent obtained under false pretenses not constituting trespass; *Food Lion v. Capital Cities* 194 F.3d 505, (4th Cir. 1999) cited *Dresnick* and rejected a claim that resume falsification can justify a finding of trespass.   As the court discussed in *Dresnick* many of us would be guilty of trespass if our secret intentions were revealed when we made permitted entries.  Everyone who attended an open house out of curiosity rather than a genuine intent to purchase a home, might be guilty.   One of America's national hobbies is to go to car dealerships and pretend to be interested in purchasing a car that the person cannot possibly justify buying[3]. The above examples show the quagmire that would be created if the age old rules governing trespass are tampered with.  The courts have recognized this and that is why CAIR cannot find a case to support is position and can only cite a burglary case where specific intent is required as the mental state for the crime.

# V.

# CAIR HAS NOT STATED A CONVERSION CLAIM

To constitute conversion a taking must be in denial or repudiation of his rights thereto.

---

[3]If this were a crime, this author would have been arrested many times by Aston Martin dealers.

*Chase Manhattan Bank v. Burden*, 489 A.2d 494, 495.  CAIR appears to concede that documents headed for the shredder cannot be converted. To save its claim, CAIR argues paragraphs 28, 29 and 50 allege that other (non-shredder) documents were taken.

But paragraph 28 does not speak of taking any documents, it just claims that Chris Gaubatz "accessed, inspected, and reviewed documents".  This is not a taking. Paragraph 29 alleges that Chris Gaubatz "removed in excess of 12,000 internal, sensitive CAIR documents". However, there is no assertion that the taking was in denial or repudiation of any rights of CAIR to continue to possess the documents.  At worst, Chris Gaubatz failed to follow orders but CAIR can cite no case that says that losing the choice of how documents are destroyed constitutes conversion.

In context it is also clear that paragraphs 28 & 29 refer only to the shredder documents. There is no other context.  The complaint refers to the documents obtained only by referring to the book.  The portion of the book cited (both in the complaint and for full context the greater portion in defendant's moving papers), refer only to shredder documents.  If CAIR urges a broader reading it should have pled this, with facts, in its complaint.

A complaint may state broad conclusions but "[f]acts need to be pled and they need to state something of substance, not merely speculation. (See e.g. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50) CAIR has no good faith basis to plead any additional facts and that is why it has not done so.

Conversion is a crime against possession and CAIR cannot in good faith plead that they were deprived of possession of any document.  Their own Response asserts that they don't even know what was taken.  (Which is a paradox as CAIR has received the documents and denigrates

the value of the documents in fn. 5)

      To constitute larceny there must be a taking of a thing, against the will or without the

consent of the owner. It is a trespass against possession, and not against ownership or title.  *Reed*

*v. United States*, 239 A.2d 156, 158 (D.C. 1968) Since CAIR abandoned the documents there is

no violation of a right to possession.  While the ability to choose how to dispose of a document

might be incidental to a right of ownership or title, a violation of such right is not conversion.

      Similarly, CAIR's claim that obtaining digital files can be conversion is likewise

incorrect.  It is not conversion as it does not deprive the other party of use of its property. This is

exactly what happened in *Pearson v. Dodd*, 410 F.2d 701 (D.C. Cir. 1969) where items were

copied but ultimately returned to the Senator's office.  Having possession of a copy of an item is

not conversion if the item still resides with the owner.

# VI.

# CAIR HAS NOT STATED A BREACH OF CONTRACT CLAIM

      CAIR claims it had a contract with Chris Gaubatz and it appears that this contract is

Exhibit A to the complaint.  The pleading is ambiguous on this point.  The pleading is ambiguous

as it fails to state whether CAIR was contracting for CAIR, CAIR-AN (as they would wish to

amend), CAIR as a national group supervising other CAIR groups, CAIR in Washington and/or

CAIR in Virginia.

      This is no small ambiguity.  In its complaint, CAIR seeks to have things both ways.  CAIR

wants diversity so it can merge the Virginia group with the Washington group.  Otherwise, there

would no diversity as CAIR Virginia and defendants are Virginia based.  Diversity is critical as

Count Five the alleged violation of the Electronic Communications Privacy Act does not apply to the facts of this case. Without diversity all that remains are four common law counts, inadequately pled and lacking damages. This is simply no federal jurisdiction.

In its Response, CAIR takes a new tack and wants to argue that CAIR Virginia is a separate corporation so that the hiring of Chris Gaubatz at CAIR in D.C. is a separate contract allowing for new and separate consideration from the Virginia hiring.

Ultimately a reading of Exhibit A to the complaint shows that under any theory relating to which party or parties contracted with defendant, there was no breach of a contract. If a contract were formed, CAIR has not stated its contents (unless Exhibit A is the contract). CAIR has not pointed to a single provision of any contract, oral or written, that was breached.

Exhibit A appears to be a barely modified confidentiality agreement for a software company. The classes of information covered by the agreement are information that relates to legal research, Products software source code, object code, services, development, processes, purchasing, accounting, flow charts, marketing, merchandising, and/or any customer information, other valuable business information or business practices. (Exhibit A to complaint under Definitions)

This is why CAIR has not pled any specific breach of that document. Instead the complaint relies upon vague allegations and accusations, thus avoiding the elements of a contractual claim. If the non-existent CAIR can somehow contract on behalf of some defined group, the inability to plead a breach except in broad conclusory terms is fatal to the count. This court can compare Exhibit A to the few facts alleged in the complaint and decide that no breach has been pled. (See *Hal Roach Studios Inc. V. Richard Feiner & Co. Inc.* 896 F2d 1542, 1555 (9th

Cir. 1990) holding that exhibits attached to a complaint under FRCP 10(c) may be considered as part of the pleading for purposes of a Rule 12(b)(6) motion to dismiss); See also, *Dorsey v. Portfolio Equities* 540 F3d 333, 338 (5th Cir. 2008).

# VII.

# CAIR HAS NOT STATED A CLAIM FOR BREACH

# OF FIDUCIARY DUTY

This count has the same defects as the contract count and more.  Like the breach of contract count, it is unclear whether the alleged fiduciary duty arises from Exhibit A, from the employment relation or both.

Fn. 5 to CAIR's Response states that "a fair portion of the supposedly damning stockpile of documents stolen by Defendants and on which those claims are supposedly based consist of old newspaper articles, magazines, and restaurant delivery menus."   Breach of Fiduciary Duty supposes a position of special trust.  Giving an intern old news clippings and restaurant menus to throw out is not a special trust.

Judge Cardozo wrote in *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928) that a fiduciary is someone held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is the standard of behavior.

Intern type duties just fall far short of this standard.

CAIR cites *Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018, 1028 (D.D.C. 1994) to argue that the employment relationship implies a fiduciary duty, but CAIR misreads that case.   But as this Court noted in Steele:

... the Scientology court observed, 'the existence of a fiduciary relationship would

depend on whether the parties, through the past history of the relationship and their

conduct, had extended the relationship beyond the limits of the contractual

obligations.' Church of Scientology Int'l, 848 F. Supp. at 1028.

(*Steele* 130 F. Supp. 2d at 36)

CAIR also fails to quote the statement from that case finding that a fiduciary relation

exists when one party is under a duty to act for or give advice for the benefit of another upon

matters within the scope of the relation. (848 F. Supp. at 1028 citing Restatement (Second) Torts

§ 874, comment a.)

CAIR also offers no authority that a volunteer intern has any relationship to a traditional

fiduciary.  While there is little specific case law on this point either way,  the cases that do

address aspects of this point consistently favor the defense.   The courts seem to presume that a

volunteer is not generally a fiduciary.  See *In re Boston & Maine Corp*., 62 B.R. 708, 711 (D.

Mass. 1986) distinguishing between fiduciaries and volunteers in determining compensation for

services rendered in a bankruptcy proceeding; *In re New York, N. H. & H. R. Co.*, 421 F. Supp.

249, 258 (D. Conn. 1976) distinguishing between bankruptcy fiduciaries and volunteers.

Cases establishing a duty speak in terms of influence that has been acquired and betrayed.

See e.g. *Schmidt v. Bishop*, 779 F. Supp. 321, 325 (S.D.N.Y. 1991)   The court in *Schmidt* spoke

of relationships that were not fiduciary relationships.   These included a boxer and promoter,

author and publisher, property owners and title insurance companies.  Certainly in each of those

cases there is more at stake between the parties than between an intern and his employer.   CAIR

does not assert that it entrusted Chris Gaubatz with secrets.  They claim that he stole items that

were not entrusted to him.  His actual sphere of influence is not detailed in the complaint at all

(except for his shredding responsibilities).  There is simply nothing in CAIR's pleading that even

attempts to qualify the relationship as special.

# VIII.

# CAIR SHOULD NOT BE ALLOWED TO AMEND

# TO NAME CAIR-AN

### A. CAIR Has the Burden of Proving an Honest or Understandable Mistake

CAIR is not entitled as a matter of right to amend under Rule 17(a).  The ability to amend

requires a showing that CAIR made an honest or understandable mistake. See, e.g. *Intown*

*Properties Management, Inc. v. Wheaton Van Lines, Inc*., 271 F.3d 164, 169 (4th Cir. 2001)

(applying Rule 17(a)'s amendment provision only when the mistake is understandable); *United*

*States v. CMA, Inc.*, 890 F.2d 1070, 1074 (9th Cir. 1989) (Rule 17(a) does not apply to a situation

where a party with no cause of action files a lawsuit to circumvent the statute of limitations

period); *Automated Info. Processing, Inc. v. Genesys Solutions Group, Inc*., 164 F.R.D. 1, 3

(D.C.N.Y. 1995) (Leave to amend should not be given to substitute a newly formed corporation

as plaintiff after it was discovered that corporation that originally brought action had been

dissolved)      Rule 17(a) does not allow a party to deliberately mislead the court and opposing

counsel and then claim no harm, no foul and amend as they see fit.  (*Advanced Magnetics, Inc. v.*

*Bayfront Partners, Inc*., 106 F.3d 11, 20 (2d Cir. N.Y. 1997))

The Advisory Committee notes to Rule 17 (1966) show that the right to amend is not

intended to apply to bad faith situations but only to prevent forfeiture for a good faith mistake.

Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed--in both maritime and nonmaritime cases.  (Fed Rules Civ Proc R 17, Advisory Committee Notes, 1966)

In 1999, in *Lans v. Gateway 2000, Inc*., 84 F. Supp. 2d 112 (D.D.C. 1999) (Judge John Garrett Penn) dismissed a complaint without leave to refile.

> "It is evident that Rule 17(a) should not be applied blindly to permit substitution of the real party in interest in every case. … Plaintiff must first establish that when he brought [the] action in his own name, he did so as the result of an honest and understandable mistake." Feist v. Consolidated Freightways Corp., 100 F. Supp. 2d 273, 1999 U.S. Dist. LEXIS 3751, *6,7, 1999 WL 178360, *2 (E.D. Pa. 1999). The Court adopts this  honest and understandable mistake test for evaluating Lans's Rule 17(a) motion.
>
> (*Lans v. Gateway 2000, Inc*., 84 F. Supp. 2d 112, 120 (D.D.C. 1999), emphasis added)

## B. CAIR'S Name Shifting Has Tactical Value to CAIR

The present lawsuit shows how CAIR's name shifting adds confusion.  CAIR has alleged some aspect of ownership or control over CAIR-Virginia.   Paragraph 16 has  CAIR taking ownership of the Virginia group:

> In or about April 2008 and in accordance with Defendants' agreed-upon scheme, Defendant Chris Gaubatz sought and obtained an internship with CAIR's Maryland-Virginia chapter office, located in Herndon, Virginia.
>
> (Complaint, par. 16)

A reasonable person reading the above would conclude that the Virginia CAIR is a chapter of plaintiff.  Plaintiff asserts diversity and pleads that defendants reside in Virginia.  If Virginia is a corporation separate from plaintiff, there is no diversity.   CAIR's claim that the name issue is just a misnomer completely avoids the use of the global  CAIR to avoid a lack of diversity.

The document previously submitted, Exhibit 7 is the notice sent to the Washington D.C., Department of Consumer and Regulatory Affairs which announced the name change of CAIR to CAIR-AN. It is dated June 11, 2007 and signed by  Parvez Ahmed, President.

Exhibit 11 is a Declaration of Dr. Parvez Ahmed... in the case of Savage v. Council on American-Islamic Relations, Inc..   The very first paragraph of this declaration states (in part) I am the Chairman of the Board for the Council on American-Islamic Relations, Inc. in Washington, D.C.   This declaration was signed just six months after the name change, on January 30, 2008.  Exhibit 11 is a declaration from Ms. Al-Khalili in that same action where she declares herself National Legal Counsel for the Council on American-Islamic Relations (CAIR) which is a nonprofit ....  San Francisco attorney Thomas Burke appeared in that same action on behalf of CAIR, CAIR-AN and CAIR of Santa Clara Inc. and as Exhibit 13 shows, he entered into a stipulation which posited the existence of separate entities, CAIR and CAIR-AN.

In paragraph 9 of its answer CAIR California denies that CAR-National is incorporated in Washington, D.C. under the name Council on American-Islamic Relations Action Network.  This answer was written by San Francisco attorney Thomas Burke who also submitted the declarations of Parvez Ahmed and attorney Al-Khalili.   This is not a simple misnomer.  CAIR is playing, if not a shell game,  a smoke and mirrors game.  CAIR has not even attempted to explain any of the

above even thoughand that in itself is a concession that CAIR is doing this deliberately and tactically.

> Where a party addresses some but not all arguments raised in a motion to dismiss, courts in this district treat such arguments as conceded.
>
> (*Palmer v. GMAC Commer. Mortg*., 628 F. Supp. 2d 186, 193 (D.D.C. 2009))

**C. The Value of Name Shifting is Not a Recent Invention for Purposes of this Litigation**

Rather than respond to the allegations CAIR has chosen to pejoratively quote *A.H. Fischer*, stating that [a] suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice .... (Response p. 4) By implying that the allegations of name changing and wasteful, CAIR adds nothing to the discussion of a serious issue. The name shifting portion of the motion is not as CAIR claims a case of counsel [s]eeking to construct a mountain out of a molehill. (Response p. 5)

This name issue is a serious one and it is not a recent, tactical invention. At page 41 of the Muslim Mafia, the authors discuss a man named, Ghassan Elashi, describing him as a founding director of CAIR's Texas chapter. It details his terror related conviction in 2004. The book specifically notes that CAIR has also tried to distance itself from Elashi by arguing that he did not work out of its national headquarters. (P. 41) It even quotes a CAIR press release as stating that 'The fact that Elashi was once associated with one of our more than thirty regional chapters has no legal significance.' (Exhibit B)[4]

In addition, one of the footnotes to the Muslim Mafia details a complex series of financial

---

[4]Defendant in a Rule 12(b)(6) motion may attach some or all of documents quoted in a part in a complaint. See *Branch v. Tunnell* 14 F3d 449, 454 (9th Cir. 1994); *Bryant v. Avado Brands Inc.* 187 F3d 1271, 1281 fn. 16 (11th Cir. 1999)

relationships between the various CAIR groups.

> "CAIR-MD [Maryland] does not receive any financial assistance from CAIR-National," former CAIR-MD Executive Director Seyed Rizwan Mowlana wrote in a 2003 proposal to the National Conference for Community and Justice for a $100,000 grant to help fight "severe discriminatory backlash" against the local Muslim community. Also, in soliciting Muslim members for donations, Mowlana claimed:  "CAIR-MD does not receive funds from CAIR-National, which means your donations keep us alive." Yet that same year, Mowlana confirmed in a letter faxed to then-CAR National Operations Director Khalid Iqbal terms of an agreement struck between headquarters and the chapter for revenue-sharing. In the letter, dated Nov. 10, 2003, Mowlana wrote that "ALL funds raised by CAIR-National [at Maryland mosques], including monthly pledges, will be split 60/40 (60 percent for CAIR-Maryland and 40% for CAIR-National)." ((Fn. 26 to Chapter 9,  Exhibit C)

CAIR has not stated any facts that put it within the saving provisions of Rule 17(a).  Its focus on attacking the defense for raising the issue is not a substitute for proof of a good faith or honest mistake.  Leave to amend under Rule 17(a) should be denied.

## IX

# THE ELECTRONIC COMMUNICATIONS PRIVACY ACT

# DOES NOT APPLY

### A. Bartnicki v. Vopper Addresses this Issue and Bars a Suit Under the Act from

**Seeking First Amendment Protected Damages (for publication)**

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) (discussed, infra) held that the First Amendment

bars suit under the Electronic Communications Privacy Act for the publication of illegally

intercepted communications.

In their concurring opinion, Justices Breyer and O'Connor pointed out that the protections

apply because the issue in *Bartnicki* was a matter of important public interest.

The allegations in the Muslim Mafia are matters of great public interest.  Either a venerable

civil rights organization is being wrongly branded as an Hamas front or alternatively, Bill O'Reilly

and numerous government organizations have been deceived by wolves in sheep's clothing who

speak in public about justice but actively promote violent Jihad.  Either way, the issues are of great

importance.  Clearly, if the book was the inside story of why Jay Leno decided to bump Conan

O'Brien, Justices Breyer and O'Connor might have urged a different result.  But whatever CAIR's

view of the validity of the evidence in the "Muslim Mafia", there can be no serious dispute that the

subject matter of the book is an area of great significance.

**B. CAIR's Novel Interpretation of the Act (if adopted) Would Violate the Commerce**

**Clause**

No case holds what CAIR wishes it held, that the Act covers e-mails stored on an end

user's computer.  Without saying that it is an expansion of existing case law, CAIR seeks to

reinterpret the Act to have it apply to delivered mail.  CAIR's view would give federal jurisdiction

to the state tort or state crime of theft of a delivered item.  If this view were adopted, there could be

federal jurisdiction over the theft of delivered mail, theft of delivered newspapers or theft of any

object that once was in interstate commerce, even perhaps, a banana.

In *U.S. v Lopez*, 115 S. Ct. 1624, 1629, (1995) the United States Supreme Court outlined the three general categories of activity that Congress may regulate under its commerce power. Congress may regulate the use of the channels of interstate commerce. *United States v. Darby*, 312 U.S. 100, 114, (1941); *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 256, (1964). Protecting e-mails on CAIR's office computer has little or nothing to do with protecting the channels of interstate commerce.  However, the mainstream interpretation of the Electronic Communications Privacy Act would limit its application to ISP's and servers which are used for the transit of e-mails.

Second, Congress may regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even where the threat comes only from intrastate activities. See, e.g., *Shreveport Rate Cases*, 234 U.S. 342, 34 S. Ct. 833, 58 L. Ed. 1341 (1914).

Once again, CAIR's office computer is not an instrumentality of interstate commerce either locally or interstate.  And once again, an ISP or transporting server would meet those definitions.

Finally, Congress is vested with the authority to regulate those activities having a substantial relation to interstate commerce. *NLRB v. Jones & Laughlin Steel Corp*., 301 U.S. 1, 57 S. Ct. 615, 81 L. Ed. 893 (1937) (holding that the congressional authority to protect interstate commerce is not limited to transactions … deemed to be an essential part of a flow of interstate or foreign commerce … . That power is plenary and may be exerted to protect interstate commerce no matter what the source of the dangers which threaten it. 57 S. Ct. at 624). Put another way, Congress is vested with the authority to regulate "those activities that substantially affect interstate commerce." *Lopez*, 115 S. Ct. at 1630, citing *Maryland v. Wirtz*, 392 U.S. 183, 196, n.27, 88 S. Ct. 2017, 2024, n.27, 20 L. Ed. 2d 1020 (1968)

Nothing about an e-mail sitting on CAIR's computer impacts interstate commerce.  A received e-mail is no different than a car, a banana or any other thing that came via interstate commerce and then resides with an end user.  While Congress has limited powers to regulate local activities there must be a nexus between the local conduct an economic class of activities that have a substantial effect on interstate commerce. See, *Perez v. United States*, 402 U.S. 146, 154 (U.S. 1971); *Wickard v. Filburn*, 317 U.S. 111, 128-129, 87 L. Ed. 122, 63 S. Ct. 82 (1942).  To be subject to Congressional action the local activity must exert "a substantial economic effect on interstate commerce." (*Wickard* at 125)  An e-mail that sits on an end user's computer is not involved in economic activity and like the guns in United States v. Lopez, 514 U.S. 549 (U.S. 1995, the e-mail's past connection to interstate activity is irrelevant once it is received and there is no predictable impact on future commercial activity.  While the Gun Free Zones Act in Lopez may have been a close case given the enormous destructive impact of firearms, despite the saying the "pen is mightier than the sword", there is no interstate commerce effect when someone copies another person's e-mail.

### C. CAIR's Interpretation Renders the Statute Unconstitutionally Vague

The statute as interpreted by all of the published cases avoids constitutional problems by applying it only to ISP type facilities whose primary purpose is to convey this electronic data. This is the interpretation this Court should adopt as it avoids constitutional infirmities. *(Crowell v. Benson*, 285 U.S. 22, 62, *United States v. Rumely*, 345 U.S. 41, 45) To apply the Act to state torts on home or office computers is a twisting of the language that requires reliance upon convoluted arguments and Black's law dictionary to define key terms.

### D. All Cases Interpreting the Act Limit it To ISP's or Similar Transport Facilities

CAIR's cites § 2701(a) as applying to a "facility through which an electronic communication service is provided."  All cases interpret this as an ISP or similar facility and not an end user's computer.

CAIR cites Black's Law Dictionary to define the word "facility" in a very generic fashion. CAIR then applies that generic term to an office computer. There is no authority for this analysis and it runs counter to all the cases cited by defendant and by CAIR.

### i. Theoful v. Farey-Jones

CAIR cites and misinterprets a series of cases, arguing that they support CAIR's new position when in fact they undermine it.  *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004) held that "the Act protects users whose electronic communications  are in electronic storage with an ISP or other electronic communications facility." (Id at 1072-1073)   *Theofel* clearly defines an electronic storage facility as an "ISP" and not a home or office computer.

CAIR misunderstands *Theoful* claiming that the case "specifically holds that an e-mail message that remains on a server after delivery falls within the second prong of the statutory definition of "electronic storage." Id. at 1075 (CAIR Response, p. 22)

*Theoful* discusses this issue but not in the context of an e-mail residing on an office or personal computer.  The issue in *Theoful* was whether an e-mail that had been received by an end user but which also stayed on the ISP server, was still subject to the Act.

In the Order amending the original opinion in *Theoful*, the court discusses this in detail, outlining the arguments on this point and concluding that [b]ecause plaintiff's e-mail messages were in electronic storage regardless of whether they had been previously delivered, the district

court's decision cannot be affirmed on this alternative ground. *(Theofel v. Farey-Jones*, 359 F.3d 1066, 1071 (9th Cir. Cal. 2004))

### ii. CAIR's District Court Citations

CAIR cites several District Court decisions in support of its arguments but when read, they do not support CAIR's arguments.  CAIR cites without much discussion*, Ideal Aerosmith, Inc. v. Acutronic United States, Inc.,* 2007 U.S. Dist. LEXIS 91644, 10-12 (W.D. Pa. Dec. 13, 2007) for the proposition that a communications service provided by employers to employees somehow qualifies the employer under the act.

However, after reviewing a set of facts far different from the case at bar, the court found that [t]he drive or server on which an e-mail is received does not constitute a device for purposes of the Wiretap Act. See Crowley, 166 F. Supp.2d at 1269. (*Ideal Aerosmith, Inc. v. Acutronic United States, Inc.*, 2007 U.S. Dist. LEXIS 91644, 12 (W.D. Pa. Dec. 13, 2007) This is exactly the opposite of what CAIR urges and CAIR's citation of this case does not help its cause.

 CAIR cites in a cursory fashion, *Cardinal Health v. Adams* 582 F. Supp 2d 967 (M.D. Tenn. 2008) for the proposition that logging onto another's e-mail account without permission and reviewing the material is a violation of the Electronic Communications Privacy Act. (Response p. 22) Again, when actually read, this case helps defendant.

In *Cardinal Health* the defendant was not employed by the company whose e-mails were accessed.  Chris Gaubatz was employed by CAIR so the factual differences in the cases are significant.  In addition, the court in Cardinal Health presumed that the e-mails were removed from an electronic communication service.  There was no discussion as to whether this was true under the facts.  This takes the CAIR case far from Cardinal Health.  CAIR's complaint never claims that

CAIR is an ISP or an electronic communication service.  CAIR merely claims that the materials

were in electronic storage in CAIR's computers or computer systems. (Complaint, par. 74)

     *Cardinal Health* states that SCA punishes the act of accessing a 'facility through which an

electronic communication service is provided...'. (*Cardinal Health* at 976) Again, CAIR has not

pled that they provide such a service.  They have only complained of improper access to their

computers and under Aerosmith, [t]he drive or server on which an e-mail is received does not

constitute a device for purposes of the Wiretap Act.

     Therefore *Cardinal Health* does nothing for CAIR but one portion is quite important in

terms of damages.  Consistent with *Bartnicki, Cardinal Health* cites *Sherman & Co. v. Salton*

*Maxim Housewares Inc*., 94 F. Supp. 2d 817, 820 for the point that § 2701(a) does not prohibit the

disclosure or use of information gained without authorization but only the bare act of access.

     CAIR cites, *Bohach v. City of Reno* 932 F. Supp. 1232 (D. Nevada 1996) but reading that

case one finds that it would completely bar CAIR from asserting a claim under the Act.  The court

found that [b]ecause the City [of Reno] is the provider of the 'service', neither it nor its employees

can be liable under § 2701.   *Bloomington-Normal Seating Company v. Albritton* 2009 U.S. Dist.

Lexis 40302 (N.D. Ill. 2009) cited by CAIR starts its discussion of 18 U.S.C. § 2701 et seq by

noting that [t]he SCA is violated when a person ... intentionally accesses ... a facility through

which an electronic communication service is provided.  It uses the definition of Electronic

Storage from § 2510(15) which defines storage as any temporary, intermediate storage of wire or

electronic communication incidental to the electronic transmission thereof.   This again under

takes CAIR's office computers out of the picture.

### iii. U.S. v. Steiger Held that Hacking a Local Computer Did Not Invoke the Act

CAIR ignores *United States v. Steiger*, 318 F.3d 1039 (11th Cir. Ala. 2003).  In Steiger the court held that  hacking into a computer to download images and identifying information stored on the hard-drive did not violate the act because there was no evidence to suggest that the computer maintained any electronic communication service as defined in 18 U.S.C. § 2510(15).  In *Steiger* a citizen hacked a computer of a child molester to find his pornography and turn that over to the police.  In the case at bar, defendant is alleged to have hacked into CAIR's computer to find materials that defendants contend revealed illegal conduct by CAIR.

The parallels between the citizen accessing a computer to expose a child molester in Steiger and a citizen (allegedly) accessing a computer to expose CAIR are as close as one could hope to get.  There is simply no basis for CAIR's allegations in Count 5.  The count should be dismissed without leave to amend.

## CONCLUSION

The First Amendment is implicated in every count. CAIR excuse for no damages is a claim that its lack of possession of the documents prevents it from detailing damages.  This excuse is also an admission that they had no damages in the past.  Now that they have the documents and have released them to the F.B.I., we know that CAIR has still not pled damages.  CAIR started this case with a sound and fury but now CAIR claims that the documents consist in large part, of restaurant menus and old news articles.

The lawsuit has no chance of producing damages but it is damaging simply as it chills the First Amendment rights of defendants.  It should be dismissed without leave to amend.

 Dated: January 28, 2010                    _____

                                                                        Daniel Horowitz