**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **COUNCIL ON AMERICAN-ISLAMIC RELATIONS ACTION NETWORK, INC.**, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>**PAUL DAVID GAUBATZ**, *et al.*,<br><br>    *Defendants*. |

Civil Action No. 09-02030 (CKK)

**MEMORANDUM OPINION**
(June 24, 2011)

Plaintiffs Council on American-Islamic Relations Action Network, Inc. ("CAIR-AN") and CAIR-Foundation, Inc. ("CAIR-F") bring this action against two sets of defendants: Paul David Gaubatz and Chris Gaubatz (the "Gaubatz Defendants"); and the Center for Security Policy, Inc. ("CSP") and three of its employees, Christine Brim, Adam Savit, and Sarah Pavlis (collectively with CSP, the "CSP Defendants"). Plaintiffs allege that Defendants conceived and carried out a scheme to place Chris Gaubatz in an internship with CAIR-AN under an assumed identity, which allowed him to remove and copy thousands of Plaintiffs' internal documents and to record private conversations involving Plaintiffs' employees without consent or authorization. Plaintiffs contend that Defendants thereafter publicly disclosed and published the contents of those documents and recordings. In this action, Plaintiffs seek relief under Titles I and II of the Electronic Communications Privacy Act of 1986 (the "ECPA"), 18 U.S.C. §§ 2510-2712, and the common law of the District of Columbia.[1]

---

[1] All the parties that have appeared in this action to date agree that District of Columbia law applies to Plaintiffs' common law claims.

There are three motions pending before the Court and addressed in this memorandum

opinion: the Gaubatz Defendants' [34] Motion to Dismiss Under Rule 12(b)(6) of the Federal

Rules of Civil Procedure ("Motion to Dismiss"); Plaintiffs' [43] Motion to Amend Complaint

("First Motion to Amend"); and Plaintiffs' [48] Motion for Leave to File Second Amended

Complaint ("Second Motion to Amend").   Upon consideration of the submissions by Plaintiffs

and the Gaubatz Defendants, the relevant authorities, and the record as a whole, the Court shall

grant in part and deny in part the Gaubatz Defendants' Motion to Dismiss and grant Plaintiffs'

First Motion to Amend and Second Motion to Amend.

## I.   BACKGROUND

### A.      *Factual Background*

CAIR-AN is a self-described national Muslim advocacy group with a mission that

includes enhancing the understanding of Islam and promoting a positive image of Muslims in the

United States.   Second Am. Compl. ("2d Am. Compl."), ECF No. [48-4], ¶ 10.[2]   CAIR-F is an

organization supporting CAIR-AN and its mission.   *Id.* ¶ 11.   Both CAIR-AN and CAIR-F are

non-profit corporations incorporated in the District of Columbia.   *Id.* ¶¶ 10-11.   They share

physical office space in the District of Columbia that is generally closed to the public and

accessible to third parties only upon invitation.   *Id.* ¶¶ 10-11, 27.

Chris Gaubatz is Paul David Gaubatz's son.   2d Am. Compl. ¶¶ 12-13.   CSP is a non-

profit corporation incorporated and located in the District of Columbia.   *Id.* ¶ 14.   Christine Brim,

---

[2]  This factual background is derived from the well-pleaded factual allegations in the
Second Amended Complaint, which becomes the operative iteration of the Complaint by virtue
of the Court's decision today.   *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling
on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations
contained in the complaint.").

Adam Savit, and Sarah Pavlis are all employed by CSP.  *Id.* ¶¶ 15-17.

Sometime prior to April 2008, Defendants conceived a plan to infiltrate Plaintiffs' offices with the aim of obtaining Plaintiffs' internal documents and recording conversations involving Plaintiffs' employees.  2d Am. Compl. ¶ 19.  According to their plan, Chris Gaubatz would attempt to secure an internship with CAIR-AN under an assumed identity and deliver any materials that he was able to obtain from Plaintiffs' offices to Paul David Gaubatz and the CSP Defendants for further dissemination.  *Id.*  In furtherance of this plan, the Gaubatz Defendants entered into two written agreements with CSP to provide CSP with materials.  *Id.* ¶ 35.

Consistent with the agreed-upon plan, Chris Gaubatz sought and obtained an internship with the office for CAIR-AN Maryland/Virginia in April 2008.  2d Am. Compl. ¶ 20.  However, in June 2008, after it was announced that the office for CAIR-AN Maryland/Virginia would be closing, Chris Gaubatz sought an internship at CAIR-AN's headquarters in the District of Columbia.  *Id.* ¶¶ 10, 21.

Chris Gaubatz obtained his internship with CAIR-AN under false pretenses.  During the application process, he made false statements and omitted important facts about his background, interests, and intentions.  2d Am. Compl. ¶¶ 22-23.  Among other things, he used an assumed name and represented that he was a student at a liberal arts college, that his father was in the construction business, and that he was a practicing Muslim.  *Id.* ¶ 22.  When Chris Gaubatz made these representations, he knew them to be false, and he made them in order to induce Plaintiffs to repose trust and confidence in him so that he might obtain an internship with CAIR-AN.  *Id.* ¶¶ 23-25.  He succeeded and was hired as an intern.  *Id.* ¶ 29.

As a condition of and in consideration for his internship, Chris Gaubatz signed a

confidentiality and non-disclosure agreement (the "Confidentiality Agreement").  2d Am. Compl.

¶¶ 29, 102.  The other party to the agreement is identified as the "Council on American-Islamic

Relations."  *Id.* Ex. A (Confidentiality Agreement) at 1.  The agreement provides:

### Non-Disclosure of "Confidential Information"

> I agree that I shall not at any time after the termination of my
> internship with CAIR, use for myself or others, or disclose or divulge
> to others . . . any trade secrets, confidential information, or any other
> proprietary data of CAIR in violation of this agreement . . . .  The
> intern further agrees to take and protect the secrecy of, and to avoid
> disclosure or use of, the "Confidential Information" in order to
> prevent it from falling into public domain or into the possession of
> persons not bound to maintain the confidentiality of Confidential
> Information.

*Id.* Ex. A (Confidentiality Agreement) at 1-2.  Paul David Gaubatz and the CSP Defendants were

aware of the Confidentiality Agreement because Chris Gaubatz told them that he had signed the

agreement.  *Id.* ¶ 31.

Chris Gaubatz worked as an intern for CAIR-AN until August 2008, though he returned

to perform additional work over a weekend in September 2008.  2d Am. Compl. ¶ 32.  During

the course of his internship, he sought to collect information about Plaintiffs and their employees

with the intention of publicly disclosing that information for profit and in order to cast Plaintiffs

in a negative light.  *Id.* ¶ 36.  To that end, he physically removed more than 12,000 of Plaintiffs'

internal documents without authorization and delivered those documents to Paul David Gaubatz.

*Id.* ¶¶ 37-38.  Electronic documents, including e-mails and computer-generated spreadsheets,

were obtained by accessing Plaintiffs' computers and computer systems with user-names and

passwords that were not assigned to him.  *Id.* ¶¶ 40-41.

Chris Gaubatz also used a concealed electronic device to make audio and video

recordings of conversations involving Plaintiffs' employees without authorization and consent. 2d Am. Compl. ¶ 42.  He was able to compile over fifty computer discs containing recordings of Plaintiffs' employees.  *Id.* ¶ 44.  The Gaubatz Defendants delivered the recordings to CSP and Christine Brim who, with the assistance of the other CSP Defendants, organized and edited the recordings.  *Id.* ¶¶ 45-46.

Defendants publicly disclosed the documents and recordings that they obtained from Plaintiffs.  The CSP Defendants provided a compilation of recordings to the third-party publisher of WND Books and a website identified as WorldNet Daily, http://www.wnd.com (last visited June 17, 2011).  2d Am. Compl. ¶ 47.  Meanwhile, Paul David Gaubatz posted documents and recordings on his blog, David Gaubatz, http://dgaubatz.blogspot.com (last visited June 17, 2011). 2d Am. Compl. ¶¶ 56-57.  In addition, Paul David Gaubatz and a co-author wrote a book about Chris Gaubatz's internship with CAIR-AN.  *Id.* ¶ 48; *see also* P. David Gaubatz & Paul Sperry, *Muslim Mafia: Inside the Secret World That's Conspiring to Islamize America* (1st ed., WND Books 2009) ("*Muslim Mafia*").  In *Muslim Mafia*, the authors characterize Chris Gaubatz's internship as a "six-month counterintelligence operation," admitting that Chris Gaubatz "routinely load[ed] the trunk of his car with boxes of sensitive documents and deliver[ed] them into the custody of investigative project leader P. David Gaubatz."  2d Am. Compl. ¶ 50.  The book references and quotes from materials obtained from Plaintiffs' offices, including internal memoranda, minutes of board meetings, budget reports, real estate records, bank statements, strategy papers, employee evaluations, and e-mails.  *Id.* ¶ 51.

### B.      Procedural Background

The original Complaint was filed on October 29, 2009.  *See* Compl., ECF No. [1].  The

Complaint was filed in the name of the "Council on American-Islamic Relations," which for

reasons that will soon become clear the Court will refer to as CAIR-AN.  *See infra* Part III.A.

The Complaint named as defendants the Gaubatz Defendants and ten John and Jane Does whose

identities were then unknown but who were alleged to have participated in and benefitted from

the activities alleged in the Complaint.  2d Am. Compl. ¶¶ 12-14.  The original Complaint

asserted a single claim under Title II of the ECPA and common law claims for conversion,

breach of fiduciary duty, breach of contract, and trespass.  *Id.* ¶¶ 49-77.

Contemporaneous with the filing of the Complaint, CAIR-AN moved for a temporary

restraining order and a preliminary injunction.  *See* Mem. in Supp. of Pl.'s Mot. for a TRO &

Prelim. Inj., ECF No. [2-1].  On November 2, 2009, after repeated efforts to contact the Gaubatz

Defendants proved fruitless, the Court held an *ex parte* hearing to address CAIR-AN's request

for a temporary restraining order.  *See* Min. Entry (Nov. 2, 2009).  On November 3, 2009, the

Court granted in part and denied in part CAIR-AN's motion for a temporary restraining order,

temporarily prohibiting the Gaubatz Defendants from making certain uses of materials obtained

from Plaintiffs' offices and requiring the return of such materials to CAIR-AN's counsel.  *See*

*Council on American-Islamic Relations v. Gaubatz*, 667 F. Supp. 2d 67 (D.D.C. 2009).

On November 19, 2009, CAIR-AN and the Gaubatz Defendants jointly moved for a

consent order granting CAIR-AN's motion for a preliminary injunction.  *See* Joint Mot. to Enter

Consent Order Granting Prelim. Inj., ECF No. [19].  That same day, the Court entered the

proposed consent order.  *See* Consent Order Granting Prelim. Inj., ECF No. [22].  Pursuant to

that order, the Gaubatz Defendants are (a) enjoined from making any use, disclosure, or

publication of any document obtained from any office or facility of CAIR-AN, any recording of

meetings of or conversations involving CAIR-AN's officials or employees, and any copies of

such documents or recordings, (b) required to remove from any website or blog under their

control any such documents or recordings, and (c) required to return any such documents or

recordings, including any copies, to CAIR-AN's counsel. *See id.* ¶¶ 1-4. Subsequently, the

Court clarified that its order permits the Gaubatz Defendants' counsel, but not the Gaubatz

Defendants themselves, to retain copies of the documents at issue for indexing purposes. *See*

Order (Dec. 10, 2009), ECF No. [30], at 2. Absent further action from the Court, the preliminary

injunction will remain in effect throughout this action. *See* Consent Order Granting Prelim. Inj.,

ECF No. [22], ¶ 5.

Following resolution of CAIR-AN's motion for a preliminary injunction, the Court

granted CAIR-AN leave to depose CSP based on CAIR-AN's representations that CSP was

believed to be in possession of materials obtained from Plaintiffs' offices. *See* Order (Dec. 10,

2009), ECF No. [30], at 4. CAIR-AN subsequently deposed Christine Brim as CSP's designated

agent under Rule 30(b)(6) of the Federal Rules of Civil Procedure. *See* Tr. of Dep. of Christine

Brim, ECF No. [48-3]. To date, no other discovery has been authorized by the Court.

On December 20, 2009, the Gaubatz Defendants filed their [34] Motion to Dismiss. On

March 1, 2010, after the Gaubatz Defendants' Motion to Dismiss was fully briefed, Plaintiffs

filed their [43] First Motion to Amend. On April 12, 2011, after Plaintiffs' First Motion to

Amend was fully briefed, Plaintiffs filed their [48] Second Motion to Amend. All three motions

were fully briefed as of May 23, 2011 and remain pending. Because the three motions raise a

number of overlapping issues, they are addressed together in this memorandum opinion. While

the Court's decision is based on the record as a whole, its consideration of these three motions

has focused on the following documents, listed in chronological order of their filing:

- **The Gaubatz Defendants' Motion to Dismiss:** Defs.' Mem. in Supp of Mot. to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) ("Defs.' MTD Mem."), ECF No. [34-1]; Pls.' Resp. in Opp'n to Mot. to Dismiss ("Pls.' MTD Opp'n"), ECF No. [37]; Defs.' Reply Br. on Mot. to Dismiss ("Defs.' MTD Reply."), ECF No. [39].

- **Plaintiffs' First Motion to Amend:** Pls.' Mem. of P. & A. in Supp. of Pls.' Mot. to Amend Compl. ("Pls.' $MTA_1$ Mem."), ECF No. [43-1]; Defs.' Opp'n to Mot. to File Am. Compl. ("Defs.' $MTA_1$ Opp'n"), ECF No. [44]; Pls.' Reply Mem. in Supp. of Pls.' Mot. to Amend Compl. ("Pls.' $MTA_1$ Reply"), ECF No. [45].

- **Plaintiffs' Second Motion to Amend:** Pls.' Mem. in Supp. of Mot. for Leave to File Second Am. Compl. ("Pls.' $MTA_2$ Mem."), ECF No. [48-2]; Defs.' Opp'n to Pls.' Mot. to File a Second Am. Compl. ("Defs.' $MTA_2$ Opp'n"), ECF No. [62]; Pls.' Reply to Opp'n to Mot. for Leave to File a Second Am. Compl., ECF No. [64].

Recently, this action has focused on proceedings concerning Paul David Gaubatz's

compliance with the preliminary injunction ordered by this Court. For the time being, those

proceedings are being conducted under seal. *See* Sealed Order to Show Cause (Apr. 18, 2011),

ECF No. [49]; Sealed Order (Apr. 28, 2011), ECF No. [57]; Sealed Order (May 3, 2011), ECF

No. [59]; Sealed Order (June 2, 2011), ECF No. [68]. The proceedings remain ongoing.

## II.  LEGAL STANDARDS

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. (8)(a), "in

order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it

rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355

U.S. 41, 47 (1957)). Rule 12(b)(6) provides a vehicle for parties to challenge the sufficiency of a

complaint on the ground that it "fail[s] to state a claim upon which relief can be granted." Fed.

R. Civ. P. 12(b)(6).  When presented with a motion to dismiss for failure to state a claim, the

district court must accept as true the well-pleaded factual allegations contained in the complaint.

*Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), *cert. denied*, __ U.S. __,

130 S. Ct. 2064 (2010).  Although "detailed factual allegations" are not necessary to withstand a

Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff

must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a

cause of action." *Twombly*, 550 U.S. at 555.  "Nor does a complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct.

1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557).  Rather, a complaint must contain

sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on

its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  The plaintiff must provide more than just

"a sheer possibility that a defendant has acted unlawfully." *Id.* at 1950.  When a complaint's

well-pleaded facts do not enable a court, "draw[ing] on its judicial experience and common

sense," "to infer more than the mere possibility of misconduct," the complaint has not shown that

the pleader is entitled to relief. *Id.*

Under the Federal Rules of Civil Procedure, a party may amend its pleadings once as a

matter of course within a prescribed time period.  *See* Fed. R. Civ. P. 15(a)(1).  Where, as here, a

party seeks to amend its pleadings outside that time period, it may do so only with the opposing

party's written consent or the district court's leave.  *See* Fed. R. Civ. P. 15(a)(2).  The decision

whether to grant leave to amend a complaint is entrusted to the sound discretion of the district

court, but leave "should be freely given unless there is a good reason, such as futility, to the

contrary." *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996), *cert.*

*denied*, 520 U.S. 1197 (1997).  As the Supreme Court has observed:

> If the underlying facts or circumstances relied upon by a plaintiff may
> be a proper subject of relief, he ought to be afforded an opportunity
> to test his claim on the merits.  In the absence of any apparent or
> declared reason—such as undue delay, bad faith or dilatory motive on
> the part of the movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the opposing
> party by virtue of allowance of the amendment, futility of
> amendment, etc.—the leave sought should, as the rules require, be
> "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  "[A] district court has discretion to deny a motion to

amend on grounds of futility where the proposed pleading would not survive a motion to

dismiss." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004),

*cert. denied*, 545 U.S. 1104 (2005).   Review for futility is practically "identical to review of a

Rule 12(b)(6) dismissal based on the allegations in the amended complaint." *In re Interbank*

*Funding Corp. Secs. Litig.*, 629 F.3d 213, 215-16 (D.C. Cir. 2010) (quotation marks omitted).

Because leave to amend should be liberally granted, the party opposing amendment bears the

burden of coming forward with a colorable basis for denying leave to amend. *Abdullah v.*

*Washington*, 530 F. Supp. 2d 112, 115 (D.D.C. 2008).

### III. DISCUSSION

#### A.    *Plaintiffs' First Motion to Amend*

Plaintiffs' First Motion to Amend is limited in scope.  Plaintiffs request leave to amend

the Complaint to (a) clarify that references to the "Council on American-Islamic Relations" in the

Complaint are to CAIR-AN, (b) add CAIR-F as a second plaintiff, (c) include a claim for unjust

enrichment, and (d) introduce a handful of supplemental factual allegations in support of claims already asserted. *See* Comparison of Compl. and Proposed First Am. Compl., ECF No. [50]. Because leave to amend is to be "freely given," and because the grounds stated for the Gaubatz Defendants' opposition are insufficient to warrant denying the relief sought, the Court shall grant Plaintiffs' First Motion to Amend.

### 1.    Scope

Because granting leave to amend is especially favored where the proposed changes do not radically reshape the action, *see Smith v. Cafe Asia*, 598 F. Supp. 2d 45, 58 (D.D.C. 2009), the Court will begin by addressing each of the four proposed changes and how they relate to this case. As shown below, the scope of Plaintiffs' First Motion to Amend is limited.

First, Plaintiffs propose to make a technical correction to clarify that references to the "Council on American-Islamic Relations" in the caption and body of the original Complaint are intended to refer to CAIR-AN, or the Council on American-Islamic Relations Action Network, Inc. Despite the seemingly trivial nature of the proposed change, the Gaubatz Defendants spill a fair amount of ink arguing against it. *See* Defs.' MTD Mem. at 2-5, 25-26; Defs.' MTA$_1$ Opp'n at 12-15. Their argument is difficult to follow, mostly because it seems to shift from one moment to the next, but its basic structure is this: (i) this action was brought in the name of the "Council on American-Islamic Relations"; (ii) the "Council on American-Islamic Relations" does not exist; (iii) something that does not exist cannot be a "real party in interest"; (iv) therefore, this action is not brought in the name of the real party in interest.

The argument is a strange one because the Gaubatz Defendants concede that the "Council on American-Islamic Relations" changed its name to CAIR-AN in June 2007 and they introduce

documentary evidence showing as much.  *See* Defs.' MTD Mem. at 2; Decl. of Daniel Horowitz,

ECF No. [34-2], Ex. 7 (Articles of Amendment) & Ex. 8 (Certificate of Amendment).  Entirely

consistent with this showing, Plaintiffs maintain that the references to the "Council on American-

Islamic Relations" in the original Complaint were the product of a simple mistake.  *See* Pls.'

MTA$_1$ Mem. at 3-4; Pls.' MTA$_1$ Reply at 6-7.  They submit a sworn declaration by their counsel,

who explains that at the time the original Complaint was prepared, counsel was "unaware that the

organization had changed its formal legal name to 'Council on American-Islamic Relations

Action Network, Inc.' in 2007."  Decl. of Tillman Finley, ECF No. [45-1], ¶¶ 2-4.  The Court

accepts that "[t]his mistake was made unknowingly and unintentionally and was not intended to

confuse or mislead Defendants, the Court, or anyone else."  *Id.* ¶ 6.  Given this state of affairs,

the Court sees no good reason to deny Plaintiffs leave to clarify that references to the "Council on

American-Islamic Relations" are intended to be references to CAIR-AN.[3]

---

[3]  While the parties disagree as to the appropriate procedural lens for approaching the
issue, their disagreement is of no moment.  Consistent with their view that the proposed
amendment would effect nothing more than a technical correction to the Complaint, Plaintiffs
claim that they need only comply with Rule 15.  *See* Fed. R. Civ. P. 15(a).  The Gaubatz
Defendants construe the proposed amendment as akin to substituting in the real party in interest
and therefore argue that Plaintiffs must meet the requirements of Rule 17.  *See* Fed. R. Civ. P.
17(a).  Yet another alternative may be Rule 21, which authorizes a district court to add or drop a
party on motion or on its own.  *See* Fed. R. Civ. P. 21.  While the Court agrees with Plaintiffs
that Rule 15 is the closest fit, granting Plaintiffs leave would be appropriate under all three Rules.
*See Willoughby*, 100 F.3d at 1003 ("[L]eave to amend [under Rule 15] should be freely given
unless there is a good reason . . . to the contrary."); *Lans v. Gateway 2000, Inc.*, 84 F. Supp. 2d
112, 120 (D.D.C. 1999) ("[I]t is appropriate to liberally grant leave to substitute a real party in
interest when there has been an honest mistake in choosing the nominal plaintiff."), *aff'd*, 252
F.3d 1320 (Fed. Cir. 2001); *Wiggins v. District Cablevision, Inc.*, 853 F. Supp. 484, 499 n.29
(D.D.C. 1994) ("[I]t is well established that after a responsive pleading has been served, the
standards for adding parties are the same whether the motion is made under Rule 15 or Rule
21.") (quotation marks omitted).

Second, Plaintiffs seek leave to add CAIR-F as a second plaintiff.  Rule 21 allows a district court to add a party "at any time" and "on just terms."  Fed. R. Civ. P. 21.  Rule 20, in turn, defines the contours of permissive joinder, providing that parties may be joined as plaintiffs when (i) their claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and (ii) "any question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P. 20.  When asked to decide whether permissive joinder is appropriate, the district court should be guided by the underlying aims of joinder, which include promoting judicial economy, expediting the resolution of disputes, and eliminating unnecessary litigation. *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002).  Because the general preference is "toward entertaining the broadest possible scope of action [that is] consistent with fairness to the parties," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966), the joinder of plaintiffs is ordinarily allowed at the election of the plaintiffs so long as both prongs of the test under Rule 20 are met, *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010). Attempts to join a party who satisfies the test for permissive joinder should generally not be denied in the absence of undue prejudice, expense, or delay.  *Chavez v. Illinois State Police*, 251 F.3d 612, 632 (7th Cir. 2001).

Applying these principles to this case is an easy matter.  CAIR-AN and CAIR-F share physical office space in the District of Columbia, and it is at those offices that the events underlying this action were alleged to have transpired.  *See* 2d Am. Compl. ¶¶ 10-11.  Although Chris Gaubatz's internship is alleged to have formally been with CAIR-AN, both CAIR-AN and CAIR-F claim an interest in the documents and materials allegedly taken from their shared office space and employees of both organizations are alleged to have been the subjects of surreptitious

recordings made by Chris Gaubatz.  *See id.* ¶¶ 29, 38, 40, 42.  Unsurprisingly, CAIR-AN and

CAIR-F intend to pursue virtually identical legal claims in connection with these alleged events.

*See id.* ¶¶ 69-131.  Without a doubt, their claims arise out of the same series of transactions or

occurrences and, as evidenced by the pages that follow, common questions of law and fact will

arise in this action.

Third, Plaintiffs seek to add a claim for unjust enrichment based on the same set of facts

underlying their other claims.  The Gaubatz Defendants do not specifically respond to this aspect

of Plaintiffs' First Motion to Amend.  While they do offer a broader argument that granting leave

to amend would be futile because the First Amendment bars Plaintiffs' claims or protects their

conduct, *see* Defs.' MTA$_1$ Opp'n at 2-8, an argument which presumably encompasses Plaintiffs'

unjust enrichment claim, the Court rejects that argument.  *See infra* Part III.C.1.  Meanwhile,

because Plaintiffs' unjust enrichment claim does "no more than state an alternative theory of

recovery," *Foman*, 371 U.S. at 182, granting leave to amend to add this claim is appropriate.

Fourth, Plaintiffs seek to add a handful of allegations to the Complaint that are designed

to flesh out the factual basis for the claims they have already asserted.  For the most part, these

facts pertain to the nature of the documents and materials at issue in this action, the non-public

nature of Plaintiffs' offices, the basis for Chris Gaubatz's alleged fiduciary duties, and the

injuries allegedly flowing from the Gaubatz Defendants' conduct.  *See* Comparison of Compl.

and Proposed First Am. Compl., ECF No. [50].  Responding to these proposed changes, the

Gaubatz Defendants claim that "the new complaint is the old complaint" and suffers from the

same defects as the original Complaint.  *See* Defs.' MTA$_1$ Opp'n at 2-8.  Consistent with this

view, the Gaubatz Defendants have taken the position that their legal arguments apply equally to

the original Complaint and the proposed First Amended Complaint.  *See id.*; Joint Status Report, ECF No. [52], at 9.  While the Court is inclined to agree that the addition of these factual allegations is not likely to change the outcome of the legal issues presented, this certainly does not provide a basis for denying leave to amend.  Plaintiffs' factual allegations merely fine-tune the basis for the relief Plaintiffs seek in this action.  Factual allegations of this kind, which clarify but do not reshape the action, are rarely a bad thing.

## 2.    **Futility**

The crux of the Gaubatz Defendants' opposition to Plaintiffs' First Motion to Amend is the contention that the proposed amendments fail to improve upon the original Complaint.  *See* Defs.' MTA$_1$ Opp'n at 2.  Arguing that "the new complaint is the old complaint," the Gaubatz Defendants rehash and incorporate the arguments raised in their Motion to Dismiss.  *See id.* at 2-8.  The implication is that granting leave to amend would be futile (though the Gaubatz Defendants never actually use that word outside of stating the standard of review).  The argument divides into three sub-parts.

First, the Gaubatz Defendants argue that leave to amend should be denied because the First Amendment either protects their conduct or precludes Plaintiffs from securing any relief. *See* Defs.' MTA$_1$ Opp'n at 2-8, 10-12.  The Court addresses this argument below in resolving the Gaubatz Defendants' Motion to Dismiss, in which the argument was first raised.  *See infra* Part III.C.1.  For present purposes, suffice it to say that the Court rejects the argument, and as a result it cannot constitute grounds for denying Plaintiffs leave to amend.

Second, the Gaubatz Defendants argue that leave to amend should be denied because this action became moot when the materials at issue were returned to Plaintiffs following the entry of

the Court's preliminary injunction order.  *See* Defs.' MTA₁ Opp'n at 8-9.  This argument rests on a number of faulty premises.  Most importantly, the argument presupposes that this Court would separately conclude both that Plaintiffs have failed to state a claim for relief under the ECPA and that their common law claims are all barred by the First Amendment.  Because the Court reaches the contrary conclusion on both accounts, *see infra* Parts III.B.2, III.C.1, and III.C.2, the Gaubatz Defendants' mootness argument is misplaced.  As the succeeding pages make clear, there remains a live case or controversy for this Court to decide.

Third, the Gaubatz Defendants argue that granting Plaintiffs leave to clarify that CAIR-AN is the entity referenced in the original Complaint "may affect diversity."  Defs.' MTA₁ Opp'n at 12.  This argument similarly presupposes that the Court would conclude that Plaintiffs have failed to state a claim for relief under the ECPA, which serves as the basis for the Court's federal question jurisdiction, and that Plaintiffs would be unable to invoke the Court's diversity jurisdiction because there is an absence of complete diversity between the parties.  However, the Court concludes that Plaintiffs' ECPA claims survive the Gaubatz Defendants' Motion to Dismiss.  *See infra* Parts III.B.2 and III.C.2.  As a result, this Court has original jurisdiction over Plaintiffs' claims under the ECPA and supplemental jurisdiction over Plaintiffs' claims under District of Columbia law because they form part of the same case and controversy.  *See* 28 U.S.C. §§ 1331, 1367.  Because this Court's jurisdiction does not rest on the diversity of citizenship between the parties, the Gaubatz Defendants' argument is reduced to a *non sequitor*.

### 3.   Undue Prejudice or Bad Faith

Leave to amend may be denied for a good reason, such as undue prejudice or bad faith.  *See Willoughby*, 100 F.3d at 1003.  The Court can glean two basic claims of prejudice or bad

16

faith from the Gaubatz Defendants' disjointed opposition.

First, the Gaubatz Defendants point to the length of this litigation as a basis for denying Plaintiffs leave to amend.  Plaintiffs filed their First Motion to Amend on March 10, 2010, at which point this action had been pending for a shade over four months.  True, the Gaubatz Defendants' Motion to Dismiss had been fully briefed when Plaintiffs' First Motion to Amend was filed, but the Court had yet to issue a final ruling on that motion and discovery pertaining to the merits had not begun.  In fact, because this action has been delayed by several proceedings collateral to the merits, discovery is still yet to begin in earnest.  Under these circumstances, Plaintiffs sought leave to amend in a sufficiently timely manner.

More to the point, the length of a litigation cannot on its own justify denying leave to amend; any delay must be accompanied by a showing of bad faith or prejudice.  *See Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1084 (D.C. Cir. 1998).  While the Gaubatz Defendants paint Plaintiffs' First Motion to Amend as a "dilatory tactic" and complain that responding will require them to expend additional "time and expense," Defs.' MTA$_1$ Opp'n at 1-2, these contentions are either entirely conclusory or relate to the ordinary costs and inconveniences incidental to defending against any lawsuit.  They fall short of the "good reason" required to deny leave to amend.  *Willoughby*, 100 F.3d at 1003.

Second, the Gaubatz Defendants contend that the mere pendency of this action will have a "chilling effect" on the exercise of their First Amendment rights.  *See* Defs.' MTA$_1$ Opp'n at 11-12.  The argument, which the Gaubatz Defendants support only with citations to the most basic principles of First Amendment jurisprudence, again assumes that the First Amendment either protects their conduct or precludes Plaintiffs from securing any relief in this action.  As set

forth elsewhere, the Court finds this assumption to be misplaced.  *See infra* Part III.C.1.  Viewed

from a slightly different perspective, the alleged "prejudice" that the Gaubatz Defendants identify

has nothing to do with the effect of any proposed amendment, but is attributable to the action

itself.  The argument begs the question at the heart of this litigation—namely, whether Plaintiffs

can prevail on the merits of their claims—and that question cannot be answered at this stage of

the proceedings.  Because the Court concludes that the Gaubatz Defendants' Motion to Dismiss

must be denied in large part, *see infra* Part III.C, the parties will need to conduct discovery, and

this action will remain pending, regardless of whether Plaintiffs' First Motion to Amend is

granted.

     The limited scope of Plaintiffs' First Motion to Amend supports the conclusion that

granting Plaintiffs leave to amend will not cause the Gaubatz Defendants any undue prejudice.

Plaintiffs' proposed changes for the most part effect technical corrections and fine-tune the legal

and factual basis for the relief they seek in this action.  If anything, these amendments should

benefit the Gaubatz Defendants by providing them with greater notice of what Plaintiffs' claims

are and the grounds upon which they rest.

     The only meaningful expansion of this action that would flow from granting Plaintiffs'

First Motion to Amend pertains to CAIR-F, but the Gaubatz Defendants offer no good reason for

denying CAIR-F leave to join this action.  Their opposition is silent on the matter, either

conflating CAIR-AN and CAIR-F or mentioning CAIR-F only in passing in the context of their

misplaced argument that there is an absence of complete diversity between the parties.  *See*

Defs.' MTA$_1$ Opp'n at 4-8, 12-14.  But allowing CAIR-F to participate in this action in lieu of

requiring it to bring a separate action will benefit the Gaubatz Defendants by minimizing the

possibility of inconsistent decisions and sparing them the vexation and expense of redundant litigation.

In the end, the Gaubatz Defendants have failed to point to any undue prejudice that would result from granting Plaintiffs leave to amend. Indeed, their claims of prejudice ring particularly hollow given that they argue that "the new complaint is the old complaint" and maintain that the legal arguments raised in their Motion to Dismiss apply equally to the First Amended Complaint. *See* Defs.' MTA$_1$ Opp'n at 2-8; Joint Status Report, ECF No. [52], at 9. In other words, the Gaubatz Defendants concede that Plaintiffs' proposed amendments do not catch them by surprise or radically reshape this action, let alone deprive them of an opportunity to mount a fair defense. *See City of Moundridge v. Exxon Mobil Corp.*, 250 F.R.D. 1, 6 (D.D.C. 2008) ("Undue prejudice is not mere harm to the non-movant but a denial of the opportunity to present facts or evidence which would have been offered had the amendment been timely.") (quotation marks and notations omitted). More broadly, the Gaubatz Defendants have failed to discharge their burden of coming forward with a colorable basis for denying leave to amend. *See Abdullah*, 530 F. Supp. 2d at 115. Therefore, the Court will grant Plaintiffs' First Motion to Amend.

## B.     *Plaintiffs' Second Motion to Amend*

In their Second Motion to Amend, Plaintiffs request leave to amend the Complaint to (a) add the CSP Defendants as defendants, (b) add a claim under Title I of the ECPA and its counterpart under District of Columbia law, and (c) add a claim for tortious interference with contract. *See* Comparison of Compl. and Proposed Second Am. Compl., ECF No. [51]. Because leave to amend is to be "freely given," and because the grounds stated for the Gaubatz Defendants' opposition are insufficient to warrant denying the relief sought, the Court shall grant

19

Plaintiffs' Second Motion to Amend.

      **1.**      <u>**Scope**</u>

     The Court begins by addressing the three proposed changes and how they relate to this case.  The bottom line is that, while Plaintiffs' Second Motion to Amend is more expansive than their First Motion to Amend, the proposed changes still would not radically reshape this action.

     First, Plaintiffs propose to add the CSP Defendants as defendants in this action.  The original Complaint named as defendants ten John and Jane Does whose identities were then unknown but who were alleged to have participated in and benefitted from the Gaubatz Defendants' alleged misconduct.  *See* Compl. ¶¶ 12-14.  Following resolution of CAIR-AN's motion for a preliminary injunction, the Court granted CAIR-AN leave to depose CSP based on CAIR-AN's representation that CSP was believed to be in possession of materials obtained from Plaintiffs' offices, and therefore might be one of the defendants whose identities were unknown.  *See* Order (Dec. 10, 2009), ECF No. [30], at 4.  On July 12, 2010, CAIR-AN deposed Christine Brim as CSP's designated agent under Rule 30(b)(6) of the Federal Rules of Civil Procedure.  *See* Tr. of Dep. of Christine Brim, ECF No. [48-3].  Based in part on CSP's testimony during that deposition, Plaintiffs now seek to add the CSP Defendants as defendants in this action.  *See* Pl.'s MTA$_2$ Mem. at 2.[4]

     Rule 21 allows a district court to add a party "at any time" and "on just terms."  Fed. R. Civ. P. 21.  Rule 20, in turn, defines the contours of permissive joinder, providing that parties may be joined as defendants in a single action if (i) "any right to relief is asserted against them

---

     [4]  Because the document is not paginated, the Court will refer to the page numbers generated by the Court's CM/ECF System.

jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (ii) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  In this case, the CSP Defendants are alleged to be participants in the same scheme to infiltrate Plaintiffs' offices with the aim of obtaining Plaintiffs' internal documents and recording conversations involving Plaintiffs' employees and, like the Gaubatz Defendants, the CSP Defendants are alleged to have publicly disclosed and published materials obtained from Plaintiffs' offices.  *See* 2d Am. Compl. ¶¶ 2-5, 47.  Moreover, Plaintiffs intend to assert the same set of legal claims against both sets of defendants.  *See id.* ¶¶ 69-131.  In sum, Plaintiffs claim that the CSP Defendants are liable on essentially the same legal theories and the same set of facts.  As a result, granting Plaintiffs leave to name the CSP Defendants as defendants in this action will promote judicial economy, expedite the resolution of Plaintiffs' claims, and eliminate unnecessary litigation.  In short, it aligns with the general preference "toward entertaining the broadest possible scope of action [that is] consistent with fairness to the parties."  *United Mine Workers of Am.*, 383 U.S. at 724.

Second, Plaintiffs propose to add a claim under Title I of the ECPA, commonly referred to as to the Wiretap Act, 18 U.S.C. §§ 2510-2522, and its counterpart under District of Columbia law, D.C. Code §§ 23-541-23-556.  The claim is based on allegations that Chris Gaubatz, with the assistance of Paul David Gaubatz and the CSP Defendants, used a concealed electronic device to make unauthorized recordings of conversations involving Plaintiffs' employees and that Defendants later used and disclosed the contents of those conversations.  *See* 2d Am. Compl. ¶¶ 70-78.  These same factual allegations were raised in the original Complaint, but Plaintiffs at that time only asserted common law claims in connection with those allegations.  *See* Compl. ¶¶

21

3, 32.  In other words, Plaintiffs now seek leave to "state an alternative theory of recovery."

*Foman*, 371 U.S. at 182.  Under these circumstances, granting leave to amend is appropriate.

Third, Plaintiffs propose to add a common law claim for tortious interference with

contract.[5]  The claim is based on allegations that Paul David Gaubatz and the CSP Defendants

interfered with Plaintiffs' contractual relationship with Chris Gaubatz by inducing and assisting

Chris Gaubatz in breaching the Confidentiality Agreement by physically removing materials

from Plaintiffs' offices and making surreptitious recordings of Plaintiffs' employees.  *See* 2d Am.

Compl. ¶¶ 111-116.  In other words, the claim is based on essentially the same nucleus of facts

supporting Plaintiffs' other claims.  While adding the claim to this action will likely require the

parties to conduct discovery as to Paul David Gaubatz and the CSP Defendants' awareness of

Chris Gaubatz's alleged contractual relationship with Plaintiffs, that is a minor matter.  The

addition of the claim to this case will not radically expand the scope of the litigation.  Under

these circumstances, granting leave to amend is appropriate.

### 2.   Futility

The Gaubatz Defendants' opposition to Plaintiffs' Second Motion to Amend is brief,

consisting of less than two pages.  Once again, the crux of their opposition is that the proposed

amendments fail to improve upon the original Complaint, arguing that the "[t]he law is as clear

now as it was . . . when [their] motion to dismiss was filed."  *See* Defs.' $MTA_2$ Opp'n at 2.  The

Court addresses the Gaubatz Defendants' Motion to Dismiss below.  *See infra* Part III.C.  For

present purposes, suffice it to say that the Court will deny the Gaubatz Defendants' Motion to

Dismiss in almost its entirety.  The only component of the Motion to Dismiss that will be granted

---

[5]  Neither party addresses this claim in briefing Plaintiffs' Second Motion to Amend.

has no bearing upon the proposed changes relevant to Plaintiffs' Second Motion to Amend.  As a result, the Gaubatz Defendants' arguments for dismissal do not constitute grounds for denying Plaintiffs leave to amend.

The Gaubatz Defendants also suggest that Plaintiffs' proposed claim under Title I of the ECPA, commonly referred to as to the Wiretap Act, 18 U.S.C. §§ 2510-2522, and its counterpart under District of Columbia law, D.C. Code §§ 23-541-23-556, would not survive a motion to dismiss.  *See* Defs.' MTA$_2$ Opp'n at 2.  Among other things, these statutes make it a criminal offense for any person to intentionally (a) intercept or attempt to intercept wire, oral, or electronic communications or (b) procure any other person to intercept or attempt to intercept wire, oral, or electronic communications.  *See* 18 U.S.C. § 2511(1); D.C. Code § 23-542(a).  Both statutes create a private right of action for any person whose communications have been unlawfully intercepted, used, or disclosed.  *See* 18 U.S.C. § 2520; D.C. Code § 23-554.  In this case, Plaintiffs claim that Defendants violated the Wiretap Act and its District of Columbia analog when Chris Gaubatz, with the assistance of Paul David Gaubatz and the CSP Defendants, used a concealed electronic device to make unauthorized recordings of conversations involving Plaintiffs' employees and when Defendants later used and disclosed the contents of those conversations.  *See* 2d Am. Compl. ¶¶ 70-78

The Gaubatz Defendants argue, in a single sentence without citation to any legal authority, that this claim would not survive a motion to dismiss because the ECPA[6] "applies only

---

[6]  The Gaubatz Defendants do not even mention the District of Columbia's analog to the Wiretap Act in their opposition.  While the Wiretap Act and its counterpart under District of Columbia law have been described as "virtually identical," *Napper v. United States*, __ A.3d __, 2011 WL 2226858, at *6 (D.C. June 9, 2011), there are textual differences between the two.  While those differences may or may not turn out to be important in this case, they are not

to servers and not to computers at an end user's location."  Defs.' MTA$_2$ Opp'n at 2.  In making

this argument, the Gaubatz Defendants clearly confuse Plaintiffs' claim under the Wiretap Act

(Count One of the Second Amended Complaint) with Plaintiffs' claim under the Stored

Communications Act (the "SCA"), 18 U.S.C. §§ 2701-2712 (Count Two of the Second Amended

Complaint).  Both statutes fall under the umbrella of the ECPA (the Wiretap Act is Title I of the

ECPA and the SCA is Title II), but they are not concerned with the same conduct.  Stated briefly,

the Wiretap Act is concerned with the contemporaneous interception of communications and the

SCA is concerned with the unauthorized accessing of stored communications.  *See* 18 U.S.C. §§

2511, 2701.  Consistent with this distinction, Plaintiffs' Wiretap Act claim turns on the allegation

that Chris Gaubatz unlawfully recorded live conversations, while Plaintiffs' SCA claim turns on

the allegation that Chris Gaubatz unlawfully obtained documents from Plaintiffs' computer

systems.  *See* 2d Am. Compl. ¶¶ 70-85.  The Gaubatz Defendants' argument that the ECPA

"applies only to servers," Defs.' MTA$_2$ Opp'n at 2, may have some relevance to Plaintiffs' SCA

claim, *see infra* Part III.C.2, but it has no bearing on the viability of Plaintiffs' Wiretap Act

claim.  Therefore, the Gaubatz Defendants have failed to show that amendment would be futile.

### 3.      Undue Prejudice or Bad Faith

The Gaubatz Defendants have also failed to show that Plaintiffs' Second Motion to

Amend is made in bad faith or that granting leave to amend would cause them any undue

prejudice.  The Gaubatz Defendants' cursory opposition does not use the word "prejudice," but it

includes this paragraph:

Leave to amend should be denied.  The new complaint's statutory

material to this motion.

> cause of action and the new insufficient legal theory could have been
> filed nearly two years ago as part of the original complaint.   The
> third-party deposition was taken many months ago.

Defs.' MTA$_2$ Opp'n at 2.  To the extent the Gaubatz Defendants intend to suggest that the timing

of Plaintiffs' Second Motion to Amend alone justifies denying leave to amend, they are mistaken.

Delay alone cannot serve as grounds for denying leave to amend; any delay must be accompanied

by a showing of bad faith or prejudice.  *See Caribbean Broad. Sys., Ltd.*, 148 F.3d at 1084.  Here,

the Gaubatz Defendants have failed to allege, let alone establish, any bad faith or prejudice.

In any event, while Plaintiffs could have acted sooner, Plaintiffs moved to amend in a

sufficiently prompt manner.  Plaintiffs filed their Second Motion to Amend on April 12, 2011, at

which point the Court had yet to issue a final ruling on the Gaubatz Defendants' Motion to

Dismiss and discovery pertaining to the merits of this action had not begun.  To date, merits-

based discovery still has not begun.

In the end, the Gaubatz Defendants have failed to discharge their burden of coming

forward with a colorable basis for denying leave to amend.  *See Abdullah*, 530 F. Supp. 2d at

115.  For the reasons set forth above, the Court concludes that granting leave to amend is

appropriate in this case.  However, in order to facilitate the prompt resolution of this litigation,

the Court shall require Plaintiffs to effect service of the Summons and the Second Amended

Complaint upon the CSP Defendants, and to file proof of service with the Court, on or before

July 25, 2011.  *See* Fed. R. Civ. P. 21 (providing that a district court may impose "just terms" on

the addition of any party).  If Plaintiffs fail to effect service of process by the designated date, the

Court will dismiss this action without prejudice against the CSP Defendants.  No extensions will

be granted absent compelling circumstances.

### C.      The Gaubatz Defendants' Motion to Dismiss

The Gaubatz Defendants' Motion to Dismiss predates Plaintiffs' requests for leave to amend the Complaint.  Nonetheless, the Gaubatz Defendants have consistently maintained that their legal arguments apply with equal force to Plaintiffs' Second Amended Complaint.  *See* Defs.' MTA$_2$ Opp'n at 2; Joint Status Report, ECF No. [52], at 9.  In fact, when the Gaubatz Defendants were directed to show cause why their Motion to Dismiss should not be denied without prejudice with leave to re-file after tailoring their arguments to speak to the allegations and claims raised in Plaintiffs' amended pleadings, the Gaubatz Defendants elected to rest on their arguments as previously articulated.  *See* Min. Order (Apr. 13, 2011); Joint Status Report, ECF No. [52], at 9.  Therefore, in addressing the Gaubatz Defendants' arguments for dismissal, the Court will reference the allegations and claims in the Second Amended Complaint which, by virtue of the Court's decision above, is now the operative version of the Complaint.  For the reasons set forth below, the Court will grant in part and deny in part the Gaubatz Defendants' Motion to Dismiss.

### 1.      The Gaubatz Defendants' First Amendment Defense

The First Amendment embodies our national commitment to the free exchange of ideas, but its protections are not boundless.  *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002).  The heart of the Gaubatz Defendants' defense to this action is their contention that the First Amendment either protects their conduct or bars Plaintiffs from obtaining any relief.  *See* Defs.' MTD Mem. at 11-17; Defs.' MTD Reply at 1-5; Defs.' MTA$_1$ Opp'n at 2-8; Defs.' MTA$_2$ Opp'n at 2-3.  It is not always easy to reconcile the freedoms afforded by the First Amendment with the protections afforded to individuals by various statutes and the common law, but this

much is clear: the protections afforded by the First Amendment, far reaching as they may be, do not place the unlawful acquisition of information beyond the reach of judicial review.  Because that is precisely what is at issue in this action, the First Amendment does not require dismissal of Plaintiffs' claims against the Gaubatz Defendants at this time.

The Gaubatz Defendants rely on the principle that if a publisher lawfully obtains truthful information about a matter of public significance, then the government may not punish the publication of that information in the absence of a governmental interest of the highest order.[7] *Smith v. Daily Mail Publ'g*, 443 U.S. 97, 103 (1979).  That principle is both well-established and uncontroversial.  However, it only applies where the publisher has "lawfully acquired" the information.  *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991).  In this case, Plaintiffs allege that the Gaubatz Defendants acquired the materials at issue in violation of Chris Gaubatz's contractual, fiduciary, and other legal obligations to Plaintiffs.  In fact, crediting the factual allegations in the Second Amended Complaint, the Gaubatz Defendants' conduct was potentially criminal.[8]  *See supra* Part III.B.2; *infra* Part III.C.2.  If Plaintiffs' allegations are to believed (and

---

[7]  For purposes of this motion, Plaintiffs do not dispute that the Gaubatz Defendants are within the class of publishers entitled to invoke this principle or that their speech touched upon a matter of public significance.  The Court therefore has no occasion to address either issue.

[8]  Because the Gaubatz Defendants' conduct was potentially criminal, there is no need to define the precise contours of the concept of "unlawful acquisition" at this time, though several courts have intimated that conduct considerably short of a criminal offense will suffice.  *See, e.g.*, *Cohen*, 501 U.S. at 671; *Boehner v. McDermott*, 484 F.3d 573, 579 (D.C. Cir.) (*en banc*), *cert. denied*, 552 U.S. 1072 (2007); *Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 127-28 (1st Cir. 2000); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 521-24 (4th Cir. 1999); *Spear Pharm., Inc. v. William Blair & Co., LLC*, 610 F. Supp. 2d 278, 288 (D. Del. 2009).  Similarly, because Plaintiffs allege that both of the Gaubatz Defendants were actively involved in unlawfully acquiring Plaintiffs' materials, the Court need not address where the line should be drawn between unlawful acquisition and the passive acceptance of stolen materials.  *See Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 193 (5th Cir. 2000), *cert. denied*, 532 U.S. 1051 (2001).

at this stage they must be), the Gaubatz Defendants did not gather information from Plaintiffs' offices lawfully.

It is for this reason that the Gaubatz Defendants' reliance upon the Supreme Court's decision in *Bartnicki v. Vopper*, 532 U.S. 514 (2001), is misplaced. That case involved the "novel and narrow" question of what degree of protection the First Amendment provides to speech that discloses the contents of an illegally intercepted communication where the defendants "played no part in the illegal interception" and their "access to the information . . . was obtained lawfully." *Id.* at 518, 525. Answering that narrow question, the *Bartnicki* Court merely held that "a stranger's illegal conduct" does not preclude a First Amendment defense. *Id.* at 535. The Court assumed, without deciding, that the government's interest in protecting private communications would justify prohibiting the interceptor's own use of those communications, noting that "[t]he normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it." *Id.* at 529. *Bartnicki* only preserves a First Amendment defense for the "law-abiding possessor of information" and "does not apply to punishing parties for obtaining the relevant information unlawfully." *Id.* at 529, 532 n.19. Because Plaintiffs' allegations take the Gaubatz Defendants outside the category of the "law-abiding possessor of information," *Bartnicki* is no shield.

However, that is not to say that the First Amendment is irrelevant to this case. It may, for example, turn out that Plaintiffs will be unable to establish that some or all of the defendants in this action participated in the unlawful acquisition of information. But there is another First Amendment doctrine more relevant to the present motion—namely, the principle that the special protections that the First Amendment affords defendants charged with defamation may also

28

extend to other kinds of legal claims where the plaintiff seeks damages for reputational or emotional harm allegedly flowing from the publication of protected speech. *See Snyder v. Phelps*, __ U.S. __, 131 S. Ct. 1207, 1215 (2011); *Barr v. Clinton*, 370 F.3d 1196, 1203 (D.C. Cir. 2004). In those situations, regardless of how a claim is labeled, a plaintiff will often be required to satisfy the more onerous showing required to recover what are referred to loosely as "publication damages." *See Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988). Otherwise, plaintiffs would be free to recast claims for defamation in another form and thereby "chok[e] off the 'breathing space' necessary to safeguard 'the freedoms protected by the First Amendment.'" *Barr*, 370 F.3d at 1203 (quoting *Hustler*, 485 U.S. at 56).

In their Motion to Dismiss, the Gaubatz Defendants argue that Plaintiffs are attempting to make an "impermissible end run" around the First Amendment by asserting what are effectively defamation claims seeking publication damages in the guise of various statutory and common law claims. But in response, Plaintiffs have expressly disclaimed damages for reputational or emotional harm, *see* Pls.' MTD Opp'n at 8, and the Court will hold them to that representation. While that should be the end of the matter, the Gaubatz Defendants nevertheless complain that Plaintiffs "plead[] damages in a vague and conclusory manner," faulting Plaintiffs for failing to come forward with specific factual allegations showing that they suffered damages that are not for reputational or emotional harm. *See* Defs.' MTD Reply at 1. However, Plaintiffs are not required to plead with particularity damages that would typically be expected to flow from their claims. *See* Fed. R. Civ. P. 8(a)(3), 9(g); *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002). Following discovery, Plaintiffs ultimately may or may not be able to prove that they suffered damages that are not for reputational or emotional harm, such as actual pecuniary

29

damages.  *See Snyder v. Phelps*, 580 F.3d 206, 218 n.11 (3d Cir. 2009) (noting that the First

Amendment "is inapplicable . . . when the plaintiff seeks damages for actual pecuniary loss, as

opposed to injury to reputation or state of mind."), *aff'd*, __ U.S. __, 131 S. Ct. 1207 (2011).  But

at this early stage, "the character of [Plaintiffs'] damage is not definite," making dismissal on

First Amendment grounds inappropriate.  *Steele v. Isikoff*, 130 F. Supp. 2d 23, 29 (D.D.C. 2000).

For the foregoing reasons, the Court will deny the Gaubatz Defendants' Motion to

Dismiss insofar as it seeks dismissal of Plaintiffs' claims based upon the protections afforded by

the First Amendment.

### 2.     Plaintiffs' Stored Communications Act Claim (Count Two of the Second Amended Complaint)

Congress enacted Title II of the ECPA, or the SCA, 18 U.S.C. §§ 2701-2712, with the

aim of addressing what it perceived as the "growing problem" of unauthorized persons

deliberately gaining access to wire or electronic communications not intended to be available to

the public.  S. Rep. No. 99-541, at 35 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3589.  To

that end, Congress criminalized the act of obtaining wire or electronic communications by

accessing without authorization a facility through which an electronic communication service is

provided.  Section 2701(a) of Title 18 of the United States Code provides:

> [W]hoever—
>
> (1)     intentionally accesses without authorization a facility through which an electronic communication service is provided; or
>
> (2)     intentionally exceeds an authorization to access that facility;
>
> and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2701(a).  By its terms, criminal liability under Section 2701(a) arises where a person (i) "intentionally accesses" (ii) "a facility through which an electronic communication service is provided" (iii) "without authorization" or by "exeed[ing] an authorization" given and (iv) thereby "obtains . . . a wire or electronic communication" (v) while that wire or electronic communication is in "electronic storage."  *Id.*  Congress created a private cause of action for "any . . . person aggrieved" by an intentional violation of Section 2701(a).  *Id.* § 2707(a).

Plaintiffs claim that Defendants violated Section 2701(a) when Chris Gaubatz[9] obtained e-mails, computer-generated spreadsheets, and other electronic documents electronically stored on their computers and computer servers, networks, and systems with user-names and passwords that were not assigned to him.  *See* 2d Am. Compl. ¶¶ 3, 37, 40-41, 60, 62, 80-85.  The Gaubatz Defendants' arguments as to why this claim should be dismissed are disjointed and poorly articulated.  What is clear is that, at least for purposes of this motion, the Gaubatz Defendants do not contest that Chris Gaubatz intentionally accessed Plaintiffs' computers, that he did so without proper authorization, that he thereby succeeded in obtaining access to electronic communications, and that Plaintiffs would have standing to sue as aggrieved persons.  The Gaubatz Defendants instead limit their motion to four arguments.  First, they argue that Section 2701(a) does not apply because Chris Gaubatz did not access "a facility through which an electronic communication service is provided."  Second, they argue that Section 2701(a) does not apply because the documents at issue were not in "electronic storage" at the time that they were

---

[9] Of the various defendants, only Chris Gaubatz is alleged to have directly accessed Plaintiffs' computer systems; Paul David Gaubatz and the CSP Defendants are sued under a theory that they conspired with or aided and abetted Chris Gaubatz in committing these acts.  *See* 2d Am. Compl. ¶¶ 82-83.  Neither Plaintiffs nor the Gaubatz Defendants have addressed whether such a theory of liability is available under the SCA.

obtained.  Third, they argue that Section 2701(a) does not apply because the documents at issue

were not "in transit" at the time that they were obtained.  Finally, they argue that the application

of Section 2701(a) to the facts of this case would render the statute constitutionally infirm.

While the Gaubatz Defendants' arguments may or may not bear fruit upon further development

of the factual record, they do not warrant dismissal at this early stage.  The Court addresses each

argument in turn.

### i.      "A Facility Through Which an Electronic Communication Service is Provided"

For liability to arise under Section 2701(a), a defendant must access "a facility through

which an electronic communication service is provided."  18 U.S.C. § 2701(a).  Citing to this

language, the Gaubatz Defendants contend that the SCA "applies to transfer facilities that

forward data to an end user," such as "large servers tied to [internet service providers] or other

data carriers," and does not extend its protections to "home or office computers."  Defs.' MTD

Mem. at 23.  In short, the Gaubatz Defendants argue that the SCA does not apply here because

Plaintiffs' offices and office computers "are not a communications facility."  *Id.*  While the

argument is not entirely without merit, it ultimately must fail because it rests upon a

misapprehension as to the relevant inquiry and the factual allegations relied upon by Plaintiffs in

support of their claim.

Given the complexity of the SCA, the slippage in the Gaubatz Defendants' formulation of

the relevant inquiry is problematic.  So at the outset, it is important to define that inquiry.  Under

Section 2701(a), the question is not whether CAIR's offices are a communications facility, but

whether Chris Gaubatz accessed a "facility through which an electronic communication service is

provided."  18 U.S.C. § 2701(a).  The reach of this language turns on the construction of two

terms—"facility" and "electronic communication service."

Congress defined only the second of these terms. An "electronic communication service" is "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. §§ 2510(15), 2711(1). Examples include telephone companies and e-mail service providers, *see* S. Rep. No. 99-541, at 14 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3568; H. Rep. No. 99-647, at 37 (1986), but the term is not so narrowly confined. The language chosen by Congress captures any service that stands as a "conduit" for the transmission of wire or electronic communications from one user to another. *Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 902 (9th Cir. 2008), *cert. denied in relevant part*, __ U.S. __, 130 S. Ct. 1011 (2009). To the extent the Gaubatz Defendants intend to suggest that liability may arise under Section 2701(a) only where the electronic communication service is provided by a third-party, such as a commercial internet service provider, they are mistaken. Congress drafted Section 2701(a) broadly, and "providing an electronic communication service to the public" is not part of the statutory inquiry. *Devine v. Kapasi*, 729 F. Supp. 2d 1024, 1027 (N.D. Ill. 2010) (emphasis omitted). Consistent with this reading, several courts have concluded that an employer may provide an "electronic communication service" to its own employees. *See, e.g.*, *Shefts v. Petrakis*, 758 F. Supp. 2d 620, 635 (C.D. Ill. 2010); *Bloomington-Normal Seating Co., Inc. v. Albritton*, 2009 WL 1329123, at *4 (C.D. Ill. May 13, 2009); *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 WL 4394447, at *6 (E.D. Pa. Dec. 13, 2007); *Bohach v. City of Reno*, 932 F. Supp. 1232, 1236 (D. Nev. 1996).

Meanwhile, the term "facility" is not expressly defined in the SCA, but the legislative history and the term's usage elsewhere reveals that Congress intended the term to include the

physical equipment used to facilitate electronic communications.  The legislative history

indicates that Congress understood that an "electronic communication service" could be provided

through the same facilities that are used for an "electronic communication system," *see* S. Rep.

No. 99-541, at 14 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3568, which is defined as "any

wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of

wire or electronic communications, and any computer facilities or related electronic equipment

for the electronic storage of such communications," 18 U.S.C. § 2510(14).  This reading also

flows from the common definition of the term "facility" as "the physical means or equipment

required for doing something."  Oxford English Dictionary Online,

http://www.oed.com/viewdictionaryentry/Entry/67465 (last visited June 20, 2011).  In this

context, the "something" that a facility must do is to serve as the physical means or equipment

"through which an electronic communication service is provided."  18 U.S.C. § 2701(a).

        While that much is clear, the interaction between the terms "facility" and "electronic

communication service" will not always present an easy question.  When the definitions of each

term are incorporated into the operative statutory language, Section 2701(a) requires a defendant

to access the physical means or equipment "through which" a "service which provides to users

thereof the ability to send or receive wire or electronic communications" is "provided."  18

U.S.C. §§ 2701(a), 2510(15), 2711(1).  This formulation is admittedly a little unwieldy.  What

does it mean in the real world?  On the one hand, the statute clearly is triggered when a defendant

directly or indirectly accesses the physical server-side computer dedicated to running an e-mail

client by, for instance, downloading e-mails from the server.  On the other hand, the statute

clearly is not triggered when a defendant merely accesses a physical client-side computer and

limits his access to documents stored on the computer's local hard drive or other physical media. *See United States v. Steiger*, 318 F.3d 1039, 1049 (11th Cir. 2003) (concluding that Section 2701(a) does not apply to the act of hacking into a personal computer to download information stored on the hard drive), *cert. denied*, 538 U.S. 1051 (2003).

Mapping the world between these two poles may prove difficult, but the Court need not undertake that endeavor in this case (or at least at this early stage) because the Gaubatz Defendants are operating under the erroneous assumption that Plaintiffs' SCA claim is confined to the allegation that Chris Gaubatz accessed Plaintiffs' office computers and limited his access to documents stored on the computers' local hard drives.  *See* Defs.' MTD Mem. at 23-25; Defs.' MTD Reply at 19-25.  Quite the contrary, Plaintiffs repeatedly allege that Chris Gaubatz accessed their "computer servers, networks, or systems" (which the Court will simply refer to collectively as "computer servers").[10]  2d Am. Compl. ¶¶ 3, 40, 80-81.  Plaintiffs contend that they use these computer servers to provide an "electronic communication service" to their employees.  *See* Pls.' MTD Opp'n at 21-22.  While the Gaubatz Defendants are correct that liability under Section 2701(a) would not arise if any unauthorized activity was limited to Plaintiffs' office computers, liability may arise if discovery reveals that Chris Gaubatz accessed Plaintiffs' computer servers and that those servers were the physical means "through which" a "service which provides to users thereof the ability to send or receive wire or electronic communications" was "provided."

---

[10]  Strictly speaking, Plaintiffs allege that Chris Gaubatz accessed their "*computers* or computer servers, networks or systems." 2d Am. Compl. ¶¶ 3, 40, 80-81 (emphasis added).  The term "computer" is expansive.  It could encompass a server hosting an electronic communication service, but it could also refer to a purely local office computer, one without any network access whatsoever.  Because its usage in the Second Amended Complaint is open to interpretation, the Court will avoid the term here.

28 U.S.C. §§ 2701(a), 2510(15), 2711(1).

The Gaubatz Defendants' argument may or may not turn out to have merit upon further development of the factual record.  Resolving that issue will require the parties to conduct discovery as to which of Plaintiffs' systems, if any, were accessed by Chris Gaubatz and whether those systems were used to provide an electronic communication service.  At this time and at this stage of the proceedings, it is simply "premature and speculative" to interrogate further into the nature of Plaintiffs' systems.  *Becker v. Toca*, 2008 WL 4443050, at *4 (E.D. La. Sept. 26, 2008).  Where, as here, a plaintiff alleges that it provides an electronic communication service through its own systems and that the defendant intentionally and without authorization obtained stored communications by accessing those systems, the plaintiff states a claim under Section 2701(a).  *Expert Janitorial, LLC v. Williams*, 2010 WL 908740, at *5 (E.D. Tenn. Mar. 12, 2010).

Before proceeding to the Gaubatz Defendants' second argument, the Court pauses to note that there is a red herring to be avoided in this case.  True, Chris Gaubatz is alleged to have accessed Plaintiffs' local office computers, but that is largely beside the point (at least with respect to Plaintiffs' SCA claim).  The point is that he is alleged to have used those local office computers to access Plaintiffs' computer servers and it is those servers that must be shown to have provided an electronic communication service to Plaintiffs' employees.  Section 2701(a) is agnostic on the question of how a defendant goes about "access[ing] . . . a facility through which an electronic communication service is provided."  18 U.S.C. § 2701(a).  The result would be the same regardless of whether Chris Gaubatz accessed Plaintiffs' computer servers by sitting down at one of Plaintiffs' local office computers, by hacking in remotely through a personal computer at home, or by somehow plugging in directly to the server itself.

36

### ii.   "Electronic Storage"

Section 2701(a) requires that an electronic communication be in "electronic storage" at the time that it is improperly obtained.  18 U.S.C. § 2701(a).  The term "electronic storage" is elsewhere defined to include:

- "[A]ny temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof"; and

- "[A]ny storage of [a wire or electronic] communication by an electronic communication service for purposes of backup protection of such communication."

18 U.S.C. §§ 2510(17), 2711(1).  Courts have struggled to define the reach of this language. Generally speaking, the controversy centers on a recurring fact pattern—namely, when the intended recipient of an electronic communication has downloaded the communication from the computer server hosting the electronic communication service.  *See generally* James G. Carr & Patricia L. Bellia, The Law of Electronic Surveillance § 8:35 (West 2011 ed.).  The majority of courts that have addressed the issue have determined that "prior access is irrelevant to whether the messages at issue were in electronic storage," concluding that electronic communications that are stored on a server hosting an electronic communication service after they have been delivered to an end-user remain in "electronic storage" provided they are retained for purposes of backup protection.  *Theofel v. Farey-Jones*, 359 F.3d 1066, 1077 (9th Cir.), *cert. denied*, 543 U.S. 813 (2004); *see also Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 555 (S.D.N.Y. 2008).

The Gaubatz Defendants argue that the electronic documents at issue in this case were not in "electronic storage" because they were stored on the hard drives of Plaintiffs' local office computers at the time they were obtained.  *See* Defs.' MTD Mem. at 23-24.  The argument rests,

in part, on a correct statement of the law.  It is entirely non-controversial that "e-mail messages downloaded and stored on, and subsequently accessed solely from, a user's personal computer do[] not fall within the SCA's definition of electronic storage." *Thompson v. Ross*, 2010 WL 3896533, at *5 (W.D. Pa. Sept. 30, 2010); *accord Bailey v. Bailey*, 2008 WL 324156, at *6 (E.D. Mich. Feb. 6, 2008).  This is because (assuming the computer is not used to provide an electronic communication service) such communications are neither stored on a temporary basis "incident to [their] electronic transmission" nor stored "by an electronic communication service for purposes of backup protection of such communication."  18 U.S.C. §§ 2510(17), 2711(1).

Nonetheless, the Gaubatz Defendants' argument goes nowhere because it once again turns upon a misapprehension as to the factual allegations relied upon by Plaintiffs in support of their SCA claim.  Plaintiffs have never limited themselves to alleging that Chris Gaubatz directly accessed electronic documents stored exclusively on the hard drives and other physical media of their local office computers.  Rather, Plaintiffs allege that Chris Gaubatz improperly obtained access to electronic communications while they were in electronic storage in the computer servers used by Plaintiffs to provide an electronic communication service to their employees.  2d Am. Compl. ¶¶ 80-81; *see also* Pls.' MTD Mem. at 21-22.  If those allegations are proven true, liability may arise under Section 2701(a).

Once again, the Gaubatz Defendants' argument may or may not turn out to have merit upon further development of the factual record.  But resolving that issue will require the parties to conduct discovery as to which documents, if any, were accessed by Chris Gaubatz and how those documents were stored and for what purposes.  At this early stage, Plaintiffs have put forward sufficient factual allegations to state a plausible claim for relief.  *See In re Intuit Privacy*

*Litig.*, 138 F. Supp. 2d 1272, 1277 (C.D. Cal. 2001) (concluding that allegations that the defendant accessed data placed in electronic storage in plaintiffs' computers satisfied the liberal pleading requirements of Fed. R. Civ. P. 8(a)(2)).

### iii.      "In Transit"

The Gaubatz Defendants also argue that Section 2701(a) does not apply in this case because the documents at issue were not "in transit" at the time they were accessed.  *See* Defs.' MTD Mem. at 24.  However, the "in transit" requirement pertains only to claims arising under Title I of the ECPA, commonly referred to as to the Wiretap Act, 18 U.S.C. §§ 2510-2522, which addresses the improper "interception" of wire, oral, and electronic communications.  The SCA, meanwhile, is concerned with stored communications, and a plaintiff invoking its protections need not establish that the documents accessed were "in transit" at the time they were accessed.

### iv.      The Gaubatz Defendants' Constitutional Arguments

The Gaubatz Defendants contend that the SCA would be constitutionally infirm if applied to this case.  *See* Defs.' MTD Reply at 19-21.  Specifically, they argue that applying Section 2701(a) here would extend the statute to situations beyond the power of Congress to regulate under its Commerce Clause power and would render the statute unconstitutionally vague.  *See id.* For several reasons, these arguments do not warrant dismissal of Plaintiffs' SCA claim at this time.  First, the Gaubatz Defendants raised these arguments for the first time in reply, depriving Plaintiffs of an opportunity to render a meaningful response.  *See Baloch v. Norton*, 517 F. Supp. 2d 345, 348 (D.D.C. 2007) ("If the movant raises arguments for the first time in his reply to the non-movant's opposition, the court [may] either ignore those arguments . . . or provide the non-movant an opportunity to respond."), *aff'd*, 550 F.3d 1191 (D.C. Cir. 2008).  While the Gaubatz

Defendants purport to frame their constitutional arguments as a response to Plaintiffs' "interpretation" of the statute, the interpretation referred to is the same one attributed to Plaintiffs by the Gaubatz Defendants in their opening memorandum, meaning that there was no reason why the Gaubatz Defendants could not have raised the argument at the outset.  Second, even if the Court were to consider the Gaubatz Defendants' constitutional arguments, they turn upon a misapprehension as to the factual allegations relied upon by Plaintiffs in support of their SCA claim.  In particular, the Gaubatz Defendants erroneously assume that Plaintiffs seek to hold Defendants liable on the allegation that Chris Gaubatz accessed documents stored exclusively on the hard drives and local media of Plaintiffs' local office computers.  Third, and most importantly, resolving the Gaubatz Defendants' constitutional arguments at this early stage would be premature.  The doctrine of constitutional avoidance counsels that federal courts should refrain from deciding abstract and hypothetical constitutional questions and formulating rules of constitutional law without reference to the particular facts to which they are to be applied. *Clinton v. Jones*, 520 U.S. 681, 690 n.11 (1997).  Before the Court can opine on the merits of the Gaubatz Defendants' constitutional arguments, the parties must conduct discovery as to what documents, if any, may have been accessed by Chris Gaubatz and how those documents were stored by Plaintiffs at the time they were obtained, on what systems, and for what purposes.  If, for instance, it turns out that Chris Gaubatz did not access a communication "transmitted in whole or in part by a . . . system that affects interstate or foreign commerce," 18 U.S.C. §§ 2510(12), 2711(1), the Gaubatz Defendants' constitutional arguments may have some merit.  But at this stage of the proceedings, it is too early to say.

　　For the reasons set forth above, the Court shall deny the Gaubatz Defendants' Motion to

Dismiss insofar as it seeks dismissal of Plaintiffs' SCA claim.

### 3.  Plaintiffs' Conversion Claim (Count Three in the Second Amended Complaint

Under District of Columbia law, conversion is defined as the (i) "unlawful exercise" (ii) "of ownership, dominion or control" (iii) "over the personal property of another" (iv) "in denial or repudiation" of that person's rights.  *Shea v. Fridley*, 123 A.2d 358, 361 (D.C. 1956).  In this case, Plaintiffs claim that Defendants unlawfully converted (a) physical documents and (b) electronic documents, including e-mails and computer-generated spreadsheets.  *See* 2d Am. Compl. ¶¶ 38, 40-41, 87.  In their Motion to Dismiss, the Gaubatz Defendants contend that Plaintiffs have failed to state a plausible claim of conversion as to both categories of documents. *See* Defs.' MTD  Mem. at 17-18, 20.

### i.  Physical Documents

The Gaubatz Defendants first argue that Plaintiffs' conversion claim must fail insofar as it seeks recovery for the Defendants' alleged taking of physical documents because all the documents were slated to be shredded.  *See* Defs.' MTD Mem. at 17-18; Defs.' MTD Reply at 8-9.  From this factual premise, the Gaubatz Defendants argue that Plaintiffs have failed to allege that Defendants deprived them of a cognizable property right.  *See* Defs.' MTD Mem at 17-18; Defs.' MTD Reply at 8-9.

The Court cannot accept the factual premise to the argument.  Plaintiffs have alleged that Chris Gaubatz removed thousands of documents from Plaintiffs' offices.  *See* 2d Am. Compl. ¶¶ 3, 38.  Plaintiffs do not allege that any of these documents were slated to be shredded.  Without converting the Gaubatz Defendants' Motion to Dismiss to a motion for summary judgment, the scope of the Court's review is limited to the allegations in the pleadings.  *See* Fed. R. Civ. P.

41

12(d).  Because the proffered argument requires the premature consideration of materials outside the pleadings, it fails at the outset.

However, even accepting the factual premise, the argument rests on a misapprehension as to the scope of an owner's property rights under District of Columbia law.  One of the many sticks in the owner's bundle of property rights is the right to destroy the property, *Almeida v. Holder*, 588 F.3d 778, 788 (2d Cir. 2009), and Plaintiffs' allegations that Defendants physically removed thousands of Plaintiffs' documents are sufficient to state a claim that Defendants deprived Plaintiffs of their "right of destruction," for lack of a better description.  This right assumes a heightened importance where, as here, the property in question is alleged to include confidential, proprietary, and privileged materials.  *See* 2d Am. Compl. ¶¶ 5, 51-52, 89.  In this case, even assuming that some sub-set of the thousands of documents allegedly removed from Plaintiffs' offices were slated to be shredded, Plaintiffs would not necessarily be precluded from recovering for conversion as to those documents.  Therefore, the Court shall deny the Gaubatz Defendants' Motion to Dismiss insofar as it seeks dismissal of Plaintiffs' claim that Defendants converted Plaintiffs' physical documents.

### ii.    Electronic Documents

The Gaubatz Defendants next argue that Plaintiffs' conversion claim must fail insofar as it pertains to the "copying of digital files" because the mere copying of electronic data does not constitute conversion.  *See* Defs.' MTD Mem. at 20.  So far as the Court can tell, the argument divides into two sub-parts.  First, the Gaubatz Defendants argue that electronic data does not qualify as the sort of "personal property" protected by the tort of conversion.  *See id.*  Second, the Gaubatz Defendants argue that Plaintiffs' factual allegations do not indicate that Defendants

exercised "ownership, dominion, or control" over Plaintiffs' electronic data.  *See id.*

Whether the District of Columbia courts would accept the first argument is not clear. While other courts have concluded that the law of conversion in other jurisdictions may protect electronic data or information, *see, e.g.*, *Kremen v. Cohen*, 337 F.3d 1024, 1034 (9th Cir. 2003) (applying California law); *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 292 (N.Y. 2007) (applying New York law), it remains an open question whether District of Columbia law would protect intangible property of this kind, *see Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir 2004) (observing that the District of Columbia courts have provided limited guidance on the protections to be afforded to intangible property); *Equity Grp., Ltd. v. PaineWebber Inc.*, 48 F.3d 1285, 1286 (D.C. Cir. 1995) (*per curiam*) (same).  Meanwhile, Maryland, to which the District of Columbia courts often look for guidance in the absence of other precedent, *see Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166, 1171 (D.C. Cir. 2003), does not extend the tort of conversion to cover intangible property rights beyond those that "are merged or incorporated into a transferable document," *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 965 (Md. 1999).  Plaintiffs' conversion claim would be on shaky ground (to the extent it relates to electronic data) if the District of Columbia courts were to adopt a similar approach.

But the Court need not decide this question because Plaintiffs have otherwise failed to state a plausible claim for the conversion of electronic data.  To recover for conversion under District of Columbia law, the plaintiff must show that the defendant exercised "ownership, dominion or control" over the plaintiff's property.  *Shea*, 123 A.2d at 361.  This requires the defendant to do something that "seriously interferes" with the plaintiff's right to control the property in question.  *Blanken v. Harris, Upham & Co., Inc.*, 359 A.2d 281, 283 (D.C. 1976).

43

While there may be other avenues for redress when the interference is less serious, suing for conversion is not among them. *Pearson v. Dodd*, 410 F.2d 701, 707 (D.C. Cir.), *cert. denied*, 395 U.S. 947 (1969).

In this case, Plaintiffs' Second Amended Complaint is devoid of factual allegations indicating that Defendants exercised the requisite ownership, dominion, or control over Plaintiffs' electronic data. Whereas Plaintiffs allege that their physical files were removed from their offices, there is no comparable, non-conclusory allegation pertaining to Plaintiffs' electronic data.[11] At best, Plaintiffs have alleged that Defendants accessed and copied electronic data (technically, Plaintiffs imply that Defendants copied electronic data, but the implication is clear enough). *See* 2d Am. Compl. ¶¶ 40-41. However, a plaintiff fails to state a claim for conversion where the defendant is only alleged to have made copies of documents while the plaintiff retains the originals because the mere copying of documents does not seriously interfere with the plaintiff's right of control. *See Furash & Co., Inc. v. McClave*, 130 F. Supp. 2d 48, 58 (D.D.C. 2001) (citing *Pearson*, 410 F.2d at 706); *accord FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 303-04 (7th Cir. 1990) (applying California law); *Internet Archive v. Shell*, 505 F. Supp. 2d 755, 763 (D. Colo. 2007) (applying Colorado law). The exercise of ownership, dominion, or control is an essential element of a claim for conversion under District of Columbia law, and because the Second Amended Complaint is devoid of any allegation that Defendants deleted, corrupted, or otherwise interfered with Plaintiffs' control over their electronic data, Plaintiffs have failed to state a claim that is plausible on its face. Therefore, the Court shall grant

---

[11] Plaintiffs' allegation that Defendants "exercise[d] . . . ownership, dominion, or control over [their] property," 2d Am. Compl. ¶ 88, is the sort of "formulaic recitation" of an element of a cause of action that should be disregarded on a motion to dismiss, *Twombly*, 550 U.S. at 555.

the Gaubatz Defendants' Motion to Dismiss insofar as it seeks dismissal of Plaintiffs' claim that

Defendants converted Plaintiffs' electronic data.

### 4.    Plaintiffs' Breach of Fiduciary Duty Claim (Count Four of the Second Amended Complaint)

Under District of Columbia law, a plaintiff asserting a claim for breach of fiduciary duty

must allege that (i) the defendant had a fiduciary duty to the plaintiff, (ii) the defendant breached

that duty, and (iii) the breach was the proximate cause of an injury.  *See Paul v. Judicial Watch,*

*Inc.*, 543 F. Supp. 2d 1, 5 (D.D.C. 2008).  In their Motion to Dismiss, the Gaubatz Defendants

focus on the first of these elements, arguing that Plaintiffs have failed to come forward with

factual allegations that would suggest that there existed a fiduciary relationship between Chris

Gaubatz and Plaintiffs.  *See* Defs.' MTD Mem. at 21-22; Defs.' MTD Reply Mem. at 12-13.  The

Gaubatz Defendants contend that there was no contractual relationship between the parties and

that "[i]t is not enough to say that Chris Gaubatz was an intern."  Defs.' MTD Mem. at 22.

However, even assuming that no contractual relationship existed between Chris Gaubatz and

Plaintiffs, *but see infra* Part III.C.5, Plaintiffs have come forward with sufficient factual

allegations to survive a motion to dismiss.

Significantly, the District of Columbia courts have deliberately left the definition of a

"fiduciary relationship" open-ended, allowing the concept to fit a wide array of factual

circumstances.  *High v. McLean Fin. Corp.*, 659 F. Supp. 1561, 1568 (D.D.C. 1987); *see also*

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 218

(S.D.N.Y. 2002) ("[T]he exact limits of what constitutes a fiduciary relationship are impossible

of statement.") (quotation marks omitted).  Deciding whether a fiduciary relationship exists in a

particular case requires "a searching inquiry into the nature of the relationship, the promises

made, the type of services or advice given and the legitimate expectations of the parties."
*Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C. Cir. 1996) (quotation marks omitted). Because
the inquiry is fact-intensive, it is often inappropriate to decide whether a fiduciary relationship
existed even in the context of a motion for summary judgment. *Id.* Consistent with this
observation, courts have observed that a claim for breach of fiduciary duty is generally not
amenable to dismissal for failure to state a claim when the claimed ground for dismissal is the
absence of a fiduciary relationship. *See Abercrombie v. Andrew College*, 438 F. Supp. 2d 243,
274 (S.D.N.Y. 2006); *Thompson, Cobb, Bazilio & Assocs., P.C. v. Grant Thornton LLP*, 2002
WL 458997, at *6 (D.D.C. Mar. 25, 2002).

To the extent the Gaubatz Defendants intend to suggest that a fiduciary relationship can
never exist between an intern and the entity engaging the intern, the aforementioned authorities
foreclose such an expansive argument. Meanwhile, Plaintiffs allege that Chris Gaubatz secured
his internship only by making a number of affirmatively false statements and omitting material
information about his background, interests, and intentions with the specific intention of
inducing Plaintiffs to repose a measure of trust and confidence in him, and that as a result of the
trust and confidence reposed in him, Chris Gaubatz was afforded access to confidential,
proprietary, and privileged materials as well as non-public areas of Plaintiffs' offices. *See* 2d
Am. Compl. ¶¶ 2, 19-20, 22-23, 25-26, 33, 93. These allegations imply a relationship akin to one
between employer and employee, which under some circumstances may suffice to support a
claim for breach of fiduciary duty under District of Columbia law. *See Cahn v. Antioch Univ.*,
482 A.2d 120, 131-32 (D.C. 1984). In any event, they suffice to suggest that the relationship
between Chris Gaubatz and Plaintiffs extended beyond the normal bounds of a contractual

relationship to form a special relationship founded upon trust and confidence.  *See Paul*, 543 F.

Supp. 2d at 6.  Whether Plaintiffs will be able to show that the relationship was grounded in a

higher level of trust than is normally present between those involved in arm's-length business

transactions is a question that must be answered after discovery.  Plaintiffs have stated a

plausible claim for breach of fiduciary duty.  Therefore, the Court shall deny the Gaubatz

Defendants' Motion to Dismiss insofar as it seeks dismissal of Plaintiffs' claim for breach of

fiduciary duty.

> **5.     Plaintiffs' Claim for Breach of Contract (Count Five of the Second Amended Complaint)**

To state a claim for breach of contract under District of Columbia law, a plaintiff must

allege (i) a valid contract between the parties, (ii) an obligation or duty arising out of the contract,

(iii) a breach of that duty, and (iv) damages caused by that breach.  *Tsintolas Realty Co. v.

Mendez*, 984 A.2d 181, 187 (D.C. 2009).  In this case, Plaintiffs allege that Chris Gaubatz

breached the Confidentiality Agreement entered into between him and CAIR-AN and that the

other Defendants induced, aided and abetted, or conspired with Chris Gaubatz to breach the

agreement.  *See* 2d Am. Compl. ¶¶ 100-110.  In their Motion to Dismiss, the Gaubatz Defendants

argue that Plaintiffs have failed to state a valid claim for breach of contract for three reasons.

First, the Gaubatz Defendants argue that Plaintiffs have failed to show that there were two

parties to the agreement.  The argument is this: (i) the supposed contract identifies the "Council

on American Islamic Relations" as the relevant counter-party; (ii) the "Council on American

Islamic Relations" does not exist; (iii) therefore, there were not two parties to the contract.  *See*

Defs.' MTD Mem. at 21.  There are several problems with this argument.  Not least among them

is that the second prong of the argument requires consideration of materials outside the pleadings

and the scope of the Court's review at this time is limited to the allegations in the pleadings. *See* Fed. R. Civ. P. 12(d). At this time, all that really matters is that Plaintiffs have specifically alleged that CAIR-AN was a party to the Confidentiality Agreement. *See* 2d Am. Compl. ¶ 101. That claim is entirely plausible given that Chris Gaubatz's internship is alleged to have been with CAIR-AN.

True, the agreement that is attached to and incorporated into the Second Amended Complaint identifies the relevant counter-party as the "Council on American-Islamic Relations" and not CAIR-AN, or the Council on American-Islamic Relations Action Network, Inc. *See id.* Ex. A (Confidentiality Agreement) at 1. Assuming without deciding that the reference is ambiguous, Plaintiffs are nonetheless entitled to conduct discovery before being asked to prove the existence of an enforceable agreement between Chris Gaubatz and CAIR-AN. Depending on what evidence Plaintiffs are able to marshal, the Gaubatz Defendants' argument may or may not win out in a motion for summary judgment. *See Novecon Ltd. v. Bulgarian-American Enter. Fund*, 190 F.3d 556, 564 (D.C. Cir. 1999) ("The party asserting the existence of an enforceable contract bears the burden of proof on the issue of contract formation."), *cert. denied*, 529 U.S. 1037 (2000). For now, it suffices to say that the question is one of intent, and it is a question that is not amenable to resolution at this stage of the proceedings.

Second, the Gaubatz Defendants argue that Plaintiffs have failed to plead that the contract was supported by adequate consideration. *See* Defs.' MTD Mem. at 21. They contend that "[p]roviding the job itself can't be the consideration because the pleading alleges that defendant worked for CAIR for months before signing the document and past conduct cannot be consideration for a later contract." *Id.* Plaintiffs do not allege that Chris Gaubatz was working

for CAIR-AN for months before he signed the Confidentiality Agreement; they allege that he entered into the agreement in June 2008, the same month he is alleged to have secured his internship with CAIR-AN.  *See* 2d Am. Compl. ¶¶ 21, 101.  Even if this were not the case, the District of Columbia adheres to the majority position that continued employment may serve as consideration for a new agreement if the employment is at-will.  *See Kauffman v. Int'l Bhd. of Teamsters*, 950 A.2d 44, 48 (D.C. 2008).  Because there is no indication that Chris Gaubatz's relationship with CAIR-AN was anything other than at-will and terminable at the election of either party, the Gaubatz Defendants' argument must fail.

Third, the Gaubatz Defendants argue that, even if the parties entered into a valid agreement, Plaintiffs have failed to point to any contractual obligation that was breached by Chris Gaubatz's alleged misconduct.  *See* Defs.' MTD Reply at 11-12.  However, because this argument was raised for the first time in reply, depriving Plaintiffs of an opportunity to render a meaningful response, the Court declines to consider it on the merits.  *See Baloch*, 517 F. Supp. 2d at 348.  But even if the Court were inclined to reach the merits, the argument would fail.  The Gaubatz Defendants argue that "[if] a contract were formed, CAIR has not stated its contents" and "has not pointed to a single provision of any contract, oral or written, that was breached."  Defs.' MTD Reply at 11.  This is just wrong.  Not only have Plaintiffs attached the form of the alleged written agreement to their pleadings, but they have specifically identified which provisions of the Confidentiality Agreement Chris Gaubatz allegedly breached.  *See* 2d Am. Compl. ¶ 103 & Ex. A (Confidentiality Agreement).

Nonetheless, couched within this argument is the suggestion, never fully articulated, that the Confidentiality Agreement does not cover the materials alleged to be taken:

> [The Confidentiality Agreement] appears to be a barely modified confidentiality agreement for a software company.  The classes of information covered by the agreement are information that relates to legal research, Products software source code, object code, services, development, processes, purchasing, accounting, flow charts, marketing, merchandising, and/or any customer information, other valuable business information or business practices.

Defs.' MTD Reply at 11.  The Gaubatz Defendants are referring here to the agreement's definition of "confidential information":

> "Confidential Information" shall be deemed to mean any information, including, but not limited to: presentation and training manuals, and that which relates to legal research, products software source code, object code, services, development, processes, purchasing, accounting, flow charts, marketing, merchandising, and/or any customer information, other valuable business information or business of CAIR which is disclosed by CAIR or on its behalf, before or after the date hereof to the intern, either directly or indirectly, in writing or by visual inspection.

2d Am. Compl. Ex. A (Confidentiality Agreement) at 1.  Admittedly, the term is not defined with model clarity.  Most notably, despite the intervention of a colon and a non-exhaustive list of the types of information covered, it appears that the parties may have intended the last few clauses to modify "any information," meaning that the agreement would cover not "any information" whatsoever but rather "any information . . . which is disclosed by CAIR or on its behalf . . . to the intern."  But the Court need not address that precise question now.  It merely flags it as a question that may require the parties' attention in discovery.  For now, it is sufficient to note that the definition expressly includes "information that relates to legal research" and "valuable business information," and Plaintiffs have alleged that the materials taken by Chris Gaubatz included privileged communications and documents containing Plaintiffs' proprietary information.  *See* 2d Am. Compl. ¶¶ 5, 52, 65.  Those allegations are sufficient to state a

plausible claim that Chris Gaubatz breached the Confidentiality Agreement.

For the foregoing reasons, the Court shall deny the Gaubatz Defendants' Motion to Dismiss insofar as it seeks dismissal of Plaintiffs' breach of contract claim.

**6.      Plaintiffs' Trespass Claim (Count Seven in the Second Amended Complaint**

Under District of Columbia law, a trespass is (i) an unauthorized entry (ii) onto the plaintiff's property (iii) that interferes with the plaintiff's possessory interest. *Sarete, Inc. v. 1344 U. Street Ltd. P'ship*, 871 A.2d 480, 490 (D.C. 2005).  In this case, Plaintiffs' trespass claim divides into two branches.  First, Plaintiffs claim that Chris Gaubatz committed a trespass merely by entering their offices because he "only gained access to the property . . . through the use of pretense, subterfuge, misrepresentation, and/or concealment." 2d Am. Compl. ¶ 120.  Second, Plaintiffs claim that Chris Gaubatz committed a trespass by exceeding the consent he obtained from Plaintiffs by "stealing documents, accessing restricted areas and networks, and recording without permission conversations in Plaintiffs' offices." *Id.*  The Gaubatz Defendants present three reasons why they believe this claim should be dismissed.

First, the Gaubatz Defendants argue that Plaintiffs have failed to plead that "the premises were private and not open to the public." Defs.' MTD Mem. at 22.  Even assuming that a plaintiff must plead that the property at issue was not open to the public in order to state a claim for trespass (something this Court doubts), Plaintiffs do allege that their offices "are not generally open to the public and may be accessed by third parties only upon invitation or authorization" and that "[t]he public is not permitted access to the areas of the offices . . . where documents are stored or maintained or where [Plaintiffs'] computers and computer servers, networks, and systems are stored and maintained." 2d Am. compl. ¶¶ 27-28.  Given these express allegations,

the Gaubatz Defendants' first argument is without merit.

Second, the Gaubatz Defendants argue that Plaintiffs' trespass claim must fail because they have not alleged damages. *See* Defs.' MTD Mem. at 22. However, provided the damages are of the kind that would typically be expected to flow from a trespass, Plaintiffs are not required to plead their damages with particularity. *See* Fed. R. Civ. P. 8(a)(3), 9(g); *see also Pearson*, 410 F.2d at 707 ("The measure of damages in trespass is . . . the actual diminution of [] value caused by the [defendant's] interference."). Regardless, District of Columbia law allows a plaintiff to recover nominal damages for trespass. *Decker v. Dreisen-Freedman, Inc.*, 144 A.2d 108, 110 (D.C. 1958). Therefore, even assuming for the sake of argument that Plaintiffs could not recover actual damages, that still would not be fatal to their claim.

Third, the Gaubatz Defendants argue that Plaintiffs' trespass claim must fail because Chris Gaubatz was authorized to enter Plaintiffs' offices. *See* Defs.' MTD Reply at 7-8. While this argument was first raised in reply, the Court will address it because Plaintiffs arguably opened the door in their opposition. *See* Pls.' MTD Opp'n at 19. However, the argument is unavailing. As an initial matter, it has no bearing on the second branch of Plaintiffs' trespass claim—namely, the contention that Chris Gaubatz exceeded the consent that he obtained from Plaintiffs by doing things like accessing restricted areas and networks. As a general matter, "[a] condition or restricted consent to enter land creates a privilege to do so only in so far as the condition or restriction is complied with." Restatement (Second) of Torts § 168 (1965). Therefore, "on-site employees may exceed the scope of their invitation to access, and so not be 'rightfully' on, the employer's property . . . at a place or time forbidden by their employer." *ITT Indus., Inc. v. Nat'l Labor Relations Bd.*, 413 F.3d 64, 72 n.2 (D.C. Cir 2005).

As to the first branch of Plaintiffs' trespass claim—that is, the contention that Chris Gaubatz committed a trespass merely by entering Plaintiffs' offices because he obtained Plaintiffs' consent through subterfuge and fraud—the Gaubatz Defendants' consent argument is premature.  Consent "given upon fraudulent misrepresentations" will not always defeat a claim for trespass.  *Dine v. Western Exterminating Co.*, 1988 WL 25511, at *9 (D.D.C. Mar. 9, 1988). Consent may be ineffective if "induced . . . by a substantial mistake concerning the nature of the invasion of [the owner's] interests or the extent of the harm to be expected from it and the mistake is known to the other or is induced by the other's misrepresentation."  Restatement (Second) of Torts §§ 173, 892B(2) (1965); *see also Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1352 (7th Cir. 1995) (noting that it is no defense to trespass where "a competitor gain[s] entry to a business firm's premises posing as a customer but in fact hoping to steal the firm's trade secrets.").  Because this is precisely what Plaintiffs have alleged occurred here, whether the Gaubatz Defendants' argument will win out is a question that must await discovery.

For the foregoing reasons, the Court will deny the Gaubatz Defendants' motion to dismiss insofar as it seeks dismissal of Plaintiffs' trespass claim.  In summary, the Court will grant the motion insofar as it seeks dismissal of Plaintiffs' claim that Defendants converted Plaintiffs' electronic data and will deny the motion in all other respects.  The Gaubatz Defendants will be required to serve and file their Answer to the Second Amended Complaint on or before July 8, 2011.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall grant Plaintiffs' [43] First Motion to Amend and their [48] Second Motion to Amend, on the condition that Plaintiffs serve the Summons and the Second Amended Complaint upon each of the CSP Defendants on or before July 25, 2011.  The CSP Defendants will then have twenty-one days from the date of service to serve and file a responsive pleading.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i).  In addition, the Court shall grant in part and deny in part the Gaubatz Defendants' [34] Motion to Dismiss.  Specifically, the Court will grant the motion insofar as it seeks dismissal of Plaintiffs' claim that Defendants converted Plaintiffs' electronic data and will deny the motion in all other respects.  The Gaubatz Defendants will be required to serve and file their Answer to the Second Amended Complaint on or before July 8, 2011.  Finally, the Court will hold an Initial Scheduling Conference on August 17, 2011, at 9:00 a.m., in Courtroom 28A before Judge Colleen Kollar-Kotelly.  An appropriate order accompanies this memorandum opinion.


Date:   June 24, 2011


                                        _____/s/_____
                                        **COLLEEN KOLLAR-KOTELLY**
                                        United States District Judge