**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS ACTION NETWORK, INC., *et al.*,<br><br>        Plaintiffs,<br><br>    -v.-<br><br>PAUL DAVID GAUBATZ, *et al.*,<br><br>        Defendants. | CIVIL NO: 1:09-cv-02030-CKK-JMF<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS CERTAIN CLAIMS BY DEFENDANTS CENTER FOR SECURITY POLICY, CHRISTINE BRIM, ADAM SAVIT, & SARA PAVLIS & BRIEF IN SUPPORT**<br><br>**[Fed. R. Civ. P. 12(b)(6)]** |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at a date and time to be determined, before the Honorable Colleen Kollar-Kotelly, United States District Judge, Defendants Center for Security Policy, Christine Brim, Adam Savit, and Sara Pavlis (collectively referred to as "CSP Defendants") hereby will and do move the court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the federal and District of Columbia statutory claims against them because Plaintiffs' Second Amended Complaint fails to state a claim as a matter of law.

CSP Defendants' motion is based on the pleadings and papers of record and accompanying memorandum of points and authorities in support.

WHEREFORE, CSP Defendants hereby request that the court grant their motion and dismiss the statutory claims.

[Signature page follows.]

Respectfully submitted,

LAW OFFICES OF DAVID YERUSHALMI, P.C.

/s/ David Yerushalmi
David Yerushalmi, Esq. (DC Bar No. 978179)
1901 Pennsylvania Avenue NW, Suite 201
Washington, D.C. 20001
david.yerushalmi@verizon.net
Tel: (646) 262-0500; Fax: (801) 760-3901

THOMAS MORE LAW CENTER

/s/ Robert J. Muise
Robert J. Muise, Esq. (Mich. Bar No. P62849)
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, Michigan 48106
Tel (734) 827-2001 / Fax (734) 930-7160
rmuise@thomasmore.org

*Counsel for Defendants Center for Security Policy,*
*Christine Brim, Adam Savit, and Sara Pavlis*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS ACTION NETWORK, INC., *et al*., | |
| Plaintiffs, | |
| | CIVIL NO: 1:09-cv-02030-CKK-JMF |
| -v.- | |
| PAUL DAVID GAUBATZ, *et al*., | |
| Defendants. | |

**MEMORANDUM OF POINTS & AUTHORITIES**

**IN SUPPORT OF**

**MOTION TO DISMISS**

**COUNTS I & II**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

OVERVIEW OF ALLEGATIONS .........................................................................................1

STANDARD OF REVIEW ......................................................................................................3

LEGAL ARGUMENT ..............................................................................................................4

I.   Count One of the Complaint Fails to State a Cause of Action for
     Violation of the Federal Wiretap Act.............................................................................4

     A.   There is No Civil Right of Action for "Procuring" a Violation
          of the Federal Wiretap Act.....................................................................................5

     B.   The Federal Wiretap Act Does Not Provide for a Civil
          Right of Action for Secondary Liability .................................................................8

     C.   The Remaining Theory of Disclosure/Use Liability under § 2520
          Must Fail Because the Complaint Does Not Set Forth Facts to
          Establish Even a Claim for Primary Liability under the Federal
          Wiretap Act ............................................................................................................9

          1.   The Complaint Fails to Allege Facts that Would Allow
               the Court to Conclude that Plaintiffs' Employees,
               Whose Conversations Were Recorded, Had a Reasonable
               Expectation of Privacy.............................................................................10

          2.   The Complaint Fails to Allege Facts that the Recordings of Oral
               Conversations Were for the Purpose of Committing Any
               Criminal or Tortious Act...........................................................................14

          3.   The Complaint Fails to Allege Facts that Support the
               Claim that Chris Gaubatz Was Not a Party to the Recordings
               of Oral Conversations ..............................................................................20

II.  Count Two of the Complaint Fails to State a Cause of Action Against CSP Defendants
     for Violation of the SCA................................................................................................24

III. The D. C. Wiretap Act Claim Should Be Dismissed for the Same Reasons
     Dismissal Is Proper for the Federal Wiretap Act Claims...............................................24

CONCLUSION.........................................................................................................................28

CERTIFICATE OF SERVICE ..................................................................................................30

# TABLE OF AUTHORITIES

## CASES

*Andrews & Kurth L.L.P. v. Family Snacks, Inc.,*
   (*Matter of Pro-Snax Distribs., Inc.*),
157 F.3d 414 (5th Cir. 1998) ......................................................................7

*\*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) .............................................................................3

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................3

*BFP v. Resolution Trust Corp.,*
511 U.S. 531 (1994) ................................................................................7

*\*Boddie v. Am. Broad. Cos.,*
881 F.2d 267 (6th Cir. 1989) ........................................................... *passim*

*Brooks v. Am. Broad. Cos.,*
737 F.Supp. 431 (N.D. Ohio 1990) .........................................................21

*Caro v. Weintraub,*
618 F.3d 94 (2d Cir. 2010) ......................................................................16

*CNA Fin. Corp. v. Int'l Bhd. of Teamsters,*
515 F. Supp. 942 (N.D. Ill. 1981) ...........................................................19

*Connally v. Gen. Constr. Co.,*
269 U.S. 385 (1926) ................................................................................28

*Deteresa v. Am. Broad. Cos.,*
121 F.3d 460 (9th Cir. 1997) ...................................................................16

*\*Doe v. GTE Corp.,*
347 F.3d 655 (7th Cir. 2003) ................................................................7, 8

*Freeman v. DirectTV, Inc.,*
457 F.3d 1001 (9th Cir. Cal. 2006) .........................................................24

*\*Garback v. Lossing,*
No. 09-cv-12407, 2010 U.S. Dist. LEXIS 99059 (E.D. Mich. Sept. 20, 2010) .......................8, 24

*Hynes v. Mayor of Oradell,*
425 U.S. 610 (1976) ...........................................................................27, 28

*In re Toys R Us, Inc., Privacy Litig.,*
No. C 00-2746 MMC, 2001 U.S. Dist. LEXIS 16947 (N.D. Cal. Oct. 9, 2001) ...........................8

*Jones v. Global Info. Grp., Inc.,*
No. 3:06-00246-JDM, 2009 U.S. Dist. LEXIS 23887 (W.D. Ky. Mar. 25, 2009) .....................24

*Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.,*
870 A.2d 58 (D.C. 2005) ...............................................................................................................18

*Katz v. United States,*
389 U.S. 347 (1967) ................................................................................................................11, 25

*Kee v. City of Rowlett,*
247 F.3d 206 (5th Cir. 2001) .........................................................................................................12

*Kemp v. Block,*
607 F. Supp. 1262 (D. Nev. 1985) .................................................................................................11

*Kirch v Embarq Mgmt. Co.,*
No. 10-2047-JAR, 2011 U.S. Dist. LEXIS 92701 (D. Kan. Aug. 19, 2011) ...........................8, 24

*Kolender v. Lawson,*
461 U.S. 352 (1983) .......................................................................................................................28

*Med. Lab. Mgmt. Consultants v. Am. Broad. Co., Inc.,*
306 F.3d 806 (9th Cir 2002) ..........................................................................................................12

*Meredith v. Gavin,*
446 F.2d 794 (8th Cir. 1971) .........................................................................................................27

*Napper v. United States,*
22 A.3d 758 (D.C. 2011) ...........................................................................................................25, 26

*Oceanic Cablevision, Inc. v. M.D. Elecs.,*
771 F. Supp. 1019 (D. Neb. 1991) ...................................................................................................6

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,*
469 U.S. 189 (1985) .........................................................................................................................7

*Payne v. N.W. Corp.,*
911 F. Supp. 1299 (D. Mont. 1995) ...............................................................................................16

*Pearline Peart v. D.C. Hous. Auth.,*
972 A.2d 810 (D.C. 2009) ..............................................................................................................18

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000) ............................................................................5, 7, 8, 9

*Pitts Sales, Inc. v. King World Prods.*,
383 F. Supp. 2d 1354 (S.D. Fla. 2005) ...................................................................20, 22

Sanders v. Am. Broad. Cos.,
20 Cal. 4th 907 P.2d 67 (Cal. 1999) ............................................................................16

Siripongs v. Calderon,
35 F.3d 1308 (9th Cir. 1994) .......................................................................................12

Smith v. Wunker,
356 F. Supp. 44 (S.D. Ohio 1972) ...............................................................................21

Stone v. I.N.S.,
514 U.S. 386 (1995) .......................................................................................................6

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) .............................................................................. passim

United States v. Carroll,
337 F. Supp. 1260 (D.D.C. 1971) ...............................................................................12

United States v. Dunbar,
553 F.3d 48 (1st Cir. 2009) ..........................................................................................11

United States v. McIntyre,
582 F.2d 1221 (9th Cir. 1978) ......................................................................................11

United States v. Koyomejian,
970 F.2d 536 (9th Cir. Cal. 1992) ..................................................................................1

Walker v. Darby,
911 F.2d 1573 (11th Cir. 1990) ...................................................................................21

**STATUTES**

18 U.S.C. § 2510, *et seq.*........................................................................... *passim*

18 U.S.C. §§ 2701-2712 ........................................................................... *passim*

D.C. Code §§ 23-541, *et seq.* ................................................................... *passim*

**RULES**

Fed. R. Civ. P. 8 .............................................................................................3, 4

Fed. R. Civ. P. 12(b)(6) .....................................................................................1

**OTHER**

S. Rep. No. 541, 99th Cong., 2d Sess. 26-27, *reprinted in* 1986 U.S.C.C.A.N. 3555, 3580-81......6

# INTRODUCTION

CSP Defendants challenge the sufficiency of the first and second causes of action of the Second Amended Complaint ("Complaint") under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Specifically, CSP Defendants will demonstrate that Plaintiffs' legal conclusions and naked assertions of wrongdoing are insufficient as a matter of law to show that Plaintiffs are entitled to relief as against CSP Defendants individually or collectively for violations of Titles I and II of the Electronic Communications Privacy Act of 1986 ("ECPA") (18 U.S.C. §§ 2510-2712) or for violations of the District of Columbia's counterpart to Title I of the ECPA, D.C. Code §§ 23-541, *et seq.*

# OVERVIEW OF ALLEGATIONS

Count One of the Complaint alleges four distinct theories of violations of Title I of the ECPA ("Federal Wiretap Act") and the District of Columbia's analog statute (D.C. Code §§ 23-541, *et seq.*) ("D.C. Wiretap Act").  Only the latter three theories conceivably apply to CSP Defendants.[1]  The theories of liability are as follows:

(1) Plaintiffs allege that Defendant Chris Gaubatz violated provisions of the Federal and D.C. Wiretap Acts (respectively, 18 U.S.C. §§ 2511(1)(a) & (b)[2] and D.C. Code § 23-542(a)(1)) by using an audio-video[3] recorder concealed on his body to record conversations of Plaintiffs'

---

[1] While some allegations of the Complaint group together all CSP Defendants as a collective, certain allegations allege specific actions by only some of the CSP Defendants.  This distinction between CSP Defendants as a collective and as individuals is important relative to the allegation in paragraph 74 of the Complaint alleging a "procurement" violation of the Wiretap Act.  *See infra* "Legal Argument," § I.A.

[2] While the Complaint cites to 18 U.S.C. §§ 2511(A) & (B) and 2511(C) & (D) (Compl. at ¶¶ 70, 77), the proper statutory references should be to §§ 2511(1)(a) & (b) and 2511(1)(c) & (d), respectively.

[3] The video portions of the digital recordings are not properly at issue here since the statute only refers to the interception of oral communications.  *See generally* 18 U.S.C. § 2511(1); United States. *v. Koyomejian*, 970 F.2d 536, 538-39 (9th Cir. Cal. 1992) (holding that Title I of the

employees.  (Compl. at ¶ 70).  There are no allegations, expressed or implied, even suggesting that CSP Defendants collectively or individually engaged directly in an interception of an oral communication.

(2) Plaintiffs allege that Defendants Paul David Gaubatz, CSP, and Christine Brim "willfully procured Defendant Chris Gaubatz to intercept the oral communications of Plaintiffs' employees," presumably also in violation of 18 U.S.C. §§ 2511(1)(a) & (b) and D.C. Code § 23-542(a)(1).  (Compl. at ¶ 74).

(3) Plaintiffs allege that Defendant Paul David Gaubatz and CSP Defendants conspired with, and aided and abetted, Defendant Chris Gaubatz in the act of intercepting the oral communications.  (Compl. at ¶¶ 75-76).

(4) Finally, while Plaintiffs broadly allege in generic, formulaic language that all Defendants have disclosed and used the contents of the recordings in violation of 18 U.S.C § 2511(1)(c) and § 2511(1)(d) and D.C. Code §§ 23-542(a)(2) and (a)(3), (Compl. at ¶ 77), only one allegation sets out an actual act of disclosure or use by CSP Defendants—that is, providing a compilation of the recordings to Joseph Farah.[4]  (Compl. at ¶ 47).

Count Two of the Complaint alleges that Defendant Chris Gaubatz violated the Stored Communications Act ("SCA"), codified under Title II of the ECPA (18 U.S.C. §§ 2701-2712). Specifically, Plaintiffs allege that Chris Gaubatz knowingly obtained wire or electronic communications by accessing Plaintiffs' "computers or computer servers, networks, or systems"

---

ECPA is only concerned with "aural acquisition," not video); *see also* D.C. Code § 23-542(a)(1) (referring only to the interception of wire and oral communications).

[4] To the extent that the court also infers from the Complaint a claim of secondary liability (*i.e.*, conspiracy and aiding and abetting) against CSP Defendants for the "disclosure" and "use" by the Gaubatz Defendants, see note 7 *infra*.

without the requisite authority.[5]  (Compl. at ¶¶ 80-81).  The only allegation directed against CSP Defendants in this count is that they conspired with, and aided and abetted, Defendant Chris Gaubatz in violating the SCA.  (Compl. at ¶¶ 82-83).

## STANDARD OF REVIEW

When deciding this motion, the court's task is to "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief" as to each named defendant.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009).  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  And while the complaint need not contain "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 129 S. Ct. at 1949.  As explained by the Court in *Iqbal*, "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id*. (internal quotations, citations, and alterations omitted).

Indeed, in light of *Twombly* and *Iqbal*, it is now settled that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" (quoting *Twombly*, 550 U.S. at 570) (emphasis added).  A complaint is "plausible" on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting *Twombly*, 550 U.S. at 556).

---

[5] The court's prior ruling denying the Gaubatz Defendants' motion to dismiss makes clear that the intentional, unauthorized access of documents stored on a server or shared server drive triggers a violation of the SCA, but "access[ing] a physical client-side computer and limit[ing] access to documents stored on the computer's local hard drive or other physical media" does not implicate the SCA.  (Mem. Op. at 34-35) (Doc. No. 73).

Plausibility is not the same as probability, but rather "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. Factual allegations "merely consistent with" liability "stop[] short of the line between possibility and plausibility." *Id.* (quotation marks and citation omitted).

When reviewing this motion, the court is guided by several "working principles." *Iqbal*, 129 S. Ct. at 1949. First, the general rule that the court must accept as true all allegations in the complaint "is inapplicable to legal conclusions." *Id.* Thus, conclusory recitals of the elements of a claim, including legal conclusions couched as factual allegations, "do not suffice." *Id.* at 1949-50. Thus, "[Rule 8] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Plausibility is a context-specific inquiry, and the allegations in the complaint must "permit the court to infer *more* than the mere possibility of misconduct." *Id.* (emphasis added). Indeed, the pleader must "show" entitlement to relief. *Id.* (quoting Fed. R. Civ. P. 8(a)).

## LEGAL ARGUMENT

### I.     Count One of the Complaint Fails to State a Cause of Action for Violation of the Federal Wiretap Act.

As set out above, Count One of the Complaint alleges that CSP Defendants are liable under three distinct theories of liability pursuant to the Federal Wiretap Act. The first theory is that Defendants CSP and Brim violated the "procurement" provisions of 18 U.S.C. §§ 2511(1)(a) & (b).[6] The second theory for liability is that CSP Defendants conspired with, and aided and abetted, Defendant Chris Gaubatz in his act of intercepting oral communications—the

---

[6] It is important to once again note that CSP Defendants Savit and Pavlis are not alleged to have "procured" anything in violation of the Federal Wiretap Act and are thus not implicated in this aspect of Count One. *See supra* note 1.

interception being a primary violation of the Act.  The third theory is that CSP Defendants have used or disclosed the contents of the recordings by providing a compilation to a third-party, Farah.[7]  As set forth immediately below, the first two theories of "procurement" liability and secondary liability (*i.e.*, conspiracy and aiding and abetting) fail as a matter of law because the Federal Wiretap Act does not provide private civil recovery under either of these theories. Further, CSP Defendants cannot be liable for a "use" or "disclosure" violation, or in fact any other violation of the Act, because the Complaint fails to set forth sufficient facts to allege an interception of an "oral communication" (18 U.S.C. § 2510(2)), much less one not covered by the "one party consent" rule set forth at 18 U.S.C. § 2511(2)(d).

### A. There is No Civil Right of Action for "Procuring" a Violation of the Federal Wiretap Act.

Section 2520 of Title I of the ECPA provides the statutory basis for a private civil cause of action for a violation of the Federal Wiretap Act.  The guiding principles for federal courts determining the parameters and elements of a private statutory cause of action preclude extending the plain language of 18 U.S.C. § 2520 to a "procurement" violation.  Indeed, these principles were made explicit and applied to § 2520 by the Fifth Circuit in the only appellate decision to address this issue directly.  In *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158 (5th Cir. 2000), the court made clear that the plain meaning of the statutory language, especially as juxtaposed against the original language prior to its amendment by Congress, precludes a civil cause of action for a claim of "procurement":

---

[7] To the extent that the court also infers from the Complaint a claim of secondary liability (*i.e.*, conspiracy and aiding and abetting) against CSP Defendants for the "disclosure" and "use" by the Gaubatz Defendants, the relevant issue, as set forth *infra* in the Legal Argument, § I.B., is whether the Federal Wiretap Act includes a private civil cause of action for _any_ type of secondary liability.  As demonstrated therein, it does not.

Prior to its amendment in 1986, the provision authorizing civil damages stated, in pertinent part:

> Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, ***or procures any other person to intercept***, disclose, or use such communications, and (2) be entitled to recover from any such person [damages, attorney's fees, and costs].

18 U.S.C. § 2520 (1970) (emphasis added).

But, the "or procures any other person" language was deleted when the section was amended in 1986. *See Oceanic Cablevision, Inc. v. M.D. Elecs.*, 771 F. Supp. 1019, 1027 (D. Neb. 1991) ("section 103 of the Electronic Communications Privacy Act of 1986[] amended § 2520 by eliminating the 'or procures another person' language of the statute and incorporating violations involving the interception, disclosure, or intentional use of electronic communications" (citing S. Rep. No. 541, 99th Cong., 2d Sess. 26-27, *reprinted in* 1986 U.S.C.C.A.N. 3555, 3580-81)).

As amended, § 2520 provides, in pertinent part, that

> any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the ***person or entity which engaged in that violation*** such relief as may be appropriate.

18 U.S.C. § 2520(a) (Supp. 2000) (emphasis added).  Nevertheless, § 2511(1)(a) continues to proscribe procuring another to intercept covered communications.

In short, the class of persons who may bring a civil action for violation of the Act is the same in both the original and amended provisions: those with covered communications "intercepted, disclosed, or used" in violation of the Act.  But, those who may be held civilly liable are not the same.  The amended provision does not have the "procures any other person" language, extending civil liability to "the person or entity which engaged in that violation," 18 U.S.C. § 2520(a) (Supp. 2000) (emphasis added).  And, the referenced "violation" is "intercepted, disclosed, or intentionally used," there is no mention of "procures".

"When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397, 131 L. Ed. 2d 465, 115 S. Ct. 1537 (1995).  The [Plaintiffs] counter that the amendment did not take away an action for procurement, because the § 2520(a) class of potential defendants is broad enough to cover persons who violate the Federal Act by procuring another to intercept; and the legislative history of the amendment does not indicate any intent to eliminate a civil claim for procurement.

We disagree.  Section 2520(a)'s plain, unambiguous language authorizes a civil action by one whose covered "communication is intercepted, disclosed, or

– 6 –

intentionally used in violation of this chapter," from "the person or entity *__which engaged in that violation__*." 18 U.S.C. § 2520(a) (Supp. 2000) (emphasis added). "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 83 L. Ed. 2d 582, 105 S. Ct. 658 (1985). Restated, we must assume Congress meant what it said in the amendment. Accordingly, "that violation" refers only to illegal interception, disclosure, or use, and not to procuring interception by another.

This interpretation of § 2520(a) does not render superfluous the portion of § 2511(1)(a) prohibiting "procuring"; as noted, that proscription can be enforced through, *inter alia*, a criminal proceeding. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 128 L. Ed. 2d 556, 114 S. Ct. 1757 (1994) ("it is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another" (brackets, internal quotation marks, and citation omitted)).

Because the plain language of the statute is unambiguous, resort to legislative history for its interpretation is not necessary. *See Andrews & Kurth L.L.P. v. Family Snacks, Inc.* (*Matter of Pro-Snax Distribs., Inc.*), 157 F.3d 414, 425 (5th Cir. 1998). Moreover, even if the legislative history is silent regarding Congress' intent, in the 1986 amendment, to take away a civil action for procurement, that silence does not make the amended statute ambiguous. If Congress intended to retain the action, it failed to express that intent. *See id*. (where language in statute was deleted in amendment, absence of legislative history did not render statute ambiguous; even if Congress intended to leave language intact, such intent was not reflected in unambiguous, amended statute).

Obviously, if Congress did not intend to delete a civil procurement action, it can amend § 2520(a). But, it goes without saying that we cannot do so. The federal procurement claim was properly dismissed.

*Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168-69 (5th Cir. 2000) (emphasis added).

The forceful logic of the Fifth Circuit's opinion is further buttressed by the opinion of

Judge Easterbrook, who was writing for the court in *Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir.

2003). In *GTE Corp.*, the court confronted a claim of secondary liability in the context of a civil

action under the Federal Wiretap Act. In doing so, the court made clear that there was no

secondary liability (*i.e.*, "aiding and abetting") or, by implication, any *other implied right of

action* (*i.e.*, procurement) because Congress had acted quite expressly in identifying which

wrongdoers would be subject to a civil claim, including expressly delineating and limiting claims to interception, disclosure, or use.  Thus, the court concluded, "Although a statute's structure may show that secondary liability has been established implicitly, it is hard to read § 2511 in that way.  Subsection 2511(1)(c) creates liability for those who willfully disseminate the contents of unlawfully intercepted information.  A statute that is this precise about who, other than the primary interceptor, can be liable, should not be read to create a penumbra of additional but unspecified liability."  *GTE Corp.*, 347 F.3d at 659; *see also In re Toys R Us, Inc., Privacy Litig.*, No. C 00-2746 MMC, 2001 U.S. Dist. LEXIS 16947, 21-22 (N.D. Cal. Oct. 9, 2001) (citing to *Peavey*); *Kirch v. Embarq Mgmt. Co.*, No. 10-2047-JAR, 2011 U.S. Dist. LEXIS 92701, 21-23 (D. Kan. Aug. 19, 2011) (same).

Thus, to the extent that Count One of the Complaint seeks to impose liability for a "procurement" violation of the Federal Wiretap Act, this theory of liability must fail and that aspect of Count One must be dismissed as against CSP Defendants.

### B.     The Federal Wiretap Act Does Not Provide for a Civil Right of Action for Secondary Liability.

As noted above, the Seventh Circuit in *Doe v. GTE Corp.* explicitly rejected secondary liability claims under the civil remedy provision contained in § 2520.  *GTE Corp.*, 347 F.3d at 659; *see also Garback v. Lossing*, No. 09-cv-12407, 2010 U.S. Dist. LEXIS 99059, 15-16 (E.D. Mich. Sept. 20, 2010) (citing to Judge Easterbrook's discussion in *Doe v. GTE Corp.* to hold that there is no secondary liability under the Federal Wiretap Act's civil remedy provision).  And the Seventh Circuit's conclusion is consistent with the reasoning applied by the Fifth Circuit in *Peavy* regarding whether a plaintiff can advance a civil claim for procurement under the Act. *See*, *e.g.*, *In re Toys R Us, Inc., Privacy Litig.*, 2001 U.S. Dist. LEXIS 16947, 21-22 (N.D. Cal. Oct. 9, 2001) ("Plaintiffs contend that *Peavy* only addressed procurement, and did not address

whether a party may be held liable for aiding and abetting an entity that intercepts electronic communications.  As noted in *Peavy*, however, the Wiretap Act was amended in 1986 to narrow the class of persons who could be held civilly liable under § 2520(a).  The plain language of § 2520(a) now limits its applicability to those who 'intercept,' 'disclose' or 'use' the communications at issue.").

In sum, given the unanimity among the federal courts, all of which have ruled negatively on the claim of secondary liability under § 2520, this theory of liability must also fail and that aspect of Count One must be dismissed as against CSP Defendants.

**C.    The Remaining Theory of Disclosure/Use Liability under § 2520 Must Fail Because the Complaint Does Not Set Forth Facts to Establish Even a Claim for Primary Liability under the Federal Wiretap Act.**

The final and only legally available theory of liability relative to the CSP Defendants for violation of the Federal Wiretap Act is that they disclosed or used illegally intercepted oral communications.  The only actual allegation of use or disclosure of the recordings of Plaintiffs' employees' conversations is that CSP Defendants provided Farah with a compilation of the recordings.  (Compl. at ¶ 47).  However, the Complaint does not set forth facts even by inference that permit this court to conclude that a plausible claim exists for any primary violation of the Federal Wiretap Act by Defendant Chris Gaubatz, much less by CSP Defendants.  *Iqbal*, 129 S. Ct. at 1950 (explaining that plausibility is a context-specific inquiry, and the allegations in the complaint must "permit the court to infer *more* than the mere possibility of misconduct") (emphasis added).

In order for Plaintiffs to establish civil liability for disclosure (or use) of intercepted oral communications, they must set forth facts that show that the intercepted oral communications used or disclosed were intercepted in violation of the Federal Wiretap Act in the first instance.

18 U.S.C. §§ 2511(c)-(d).   _Not every surreptitious recording violates the Act_.   To begin, not

every oral conversation is an "oral communication" under the Act.   To qualify, the speaker must

have a justifiable (_i.e._, reasonable) expectation of privacy.   _See_ 18 U.S.C. § 2510(2).   Further,

even given the speaker's reasonable expectation of privacy, Congress contemplated that private

parties could legally record conversations surreptitiously.   Thus, Congress established a "one-

party consent" rule available for private parties not acting under color of law as follows:

> It shall **_not be unlawful_** under this chapter [18 USCS §§ 2510, _et seq._] for a
> person not acting under color of law to intercept a wire, oral, or electronic
> communication where such person is a party to the communication or where one
> of the parties to the communication has given prior consent to such interception
> unless such communication is intercepted for the purpose of committing any
> criminal or tortious act in violation of the Constitution or laws of the United
> States or of any State.

18 U.S.C. § 2511(2)(d) (emphasis added).

To avoid the "one-party consent" rule, the Complaint vaguely and artificially attempts to

plead around the statutory language by parroting the generic exception to the rule ("for the

purpose of committing any criminal or tortious act") and further by alleging that Chris Gaubatz

was not a "party" to all of the conversations.   (_See_ Compl. at ¶¶ 43, 72-73).   As set forth below,

these efforts fail both as a matter of law and because the specific factual allegations of the

Complaint contradict these efforts to plead rote and formulaic legal conclusions to get around the

"one-party consent" rule.   _Iqbal_, 129 S. Ct. at 1949 ("A pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action will not do.").   We

begin our analysis, however, with the statute's definition of an "oral communication."

**1.    The Complaint Fails to Allege Facts that Would Allow the Court to
Conclude that Plaintiffs' Employees, Whose Conversations Were
Recorded, Had a Reasonable Expectation of Privacy.**

Before getting to the issue of whether the recordings of the oral conversations in this case

fall within the "one-party consent" rule, Plaintiffs must plead (and ultimately prove) that Defendant Chris Gaubatz recorded statutorily defined "oral communications."   The statute specifically defines an "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, . . . ."  18 U.S.C. § 2510(2).  The courts have held that the test of a justifiable expectation that oral communications will not be intercepted requires allegations that the person subject to the interception had "(1) . . . a subjective expectation of privacy, and (2) whose expectation was objectively reasonable."  *United States v. McIntyre*, 582 F.2d 1221, 1223 (9th Cir. 1978); *see also United States v. Dunbar*, 553 F.3d 48, 57 (1st Cir. 2009) (holding that the test of expectation of privacy follows the Fourth Amendment analysis as set forth in *Katz v. United States*, 389 U.S. 347 (1967)).

Especially noteworthy in this regard is *Kemp v. Block*, 607 F. Supp. 1262 (D. Nev. 1985), a case in which one employee surreptitiously turned on a tape recorder to record an argument by two other employees at the workplace.  The court, in holding that there was no reasonable expectation of privacy and thus no "oral communication" as defined by § 2510, explained as follows:

> The essential elements of the offense are: (1) a willful interception of an oral communication by a device; (2) the communication must have been uttered by a person who exhibited an expectation that it would not be intercepted; and (3) the communication must have been uttered under circumstances that justified the expectation.  One of the tests used is to ascertain whether the defendant overheard the communication with the naked ear under uncontrived circumstances.  If the answer is affirmative, as here, there was no justifiable expectation of privacy.  The communication is protected only if the speaker had a subjective expectation of privacy that was objectively reasonable.  The legislative history of § 2510 notes that ***an expectation that an oral communication will not be intercepted is unwarranted where the speaker talks too loudly***.

*Kemp*, 607 F. Supp. at 1264-65 (citations omitted) (emphasis added).  Thus, in a reasonable

expectation analysis, context matters.  Even a subjective expectation of privacy is <u>not</u> reasonable when a conversation can be heard with the naked ear and recorded without enhancement or special placement of the recording device, *<u>as in this case</u>*.  *See United States v. Carroll*, 337 F. Supp. 1260, 1262-64 (D.D.C. 1971) (holding that recording from an adjacent room without an enhancement or special placement of the recording device provides no objectively reasonable expectation of privacy).  Additionally, for purposes of this analysis in light of the facts of this case, it is helpful to note whether the conversation took place in an open office, *see Siripongs v. Calderon*, 35 F.3d 1308, 1320 (9th Cir. 1994) (holding that a telephone conversation conducted in the middle of a police department was not protected), and whether it involved business or private matters, *see Med. Lab. Mgmt. Consultants v. Am. Broad. Co., Inc.*, 306 F.3d 806, 814 (9th Cir. 2002) (finding that plaintiff's discussion of business operations and corporate-related topics rather than personal and private affairs did not create a reasonable expectation of privacy in the contents of the conversation); *see generally Kee v. City of Rowlett*, 247 F.3d 206, 213-15 (5th Cir. 2001) (holding that factors to consider are: "(1) the volume of the communication or conversation; (2) the proximity or potential of other individuals to overhear the conversation; (3) the potential for communications to be reported; (4) the affirmative actions taken by the speakers to shield their privacy; (5) the need for technological enhancements to hear the communications; and (6) the place or location of the oral communications as it relates to the subjective expectations of the individuals who are communicating").

The Complaint in this action fails to set forth ***any*** facts that could lead the court to conclude that there was a subjective expectation of privacy, or, if there was such an expectation,

that it was objectively reasonable.[8]   Indeed, the facts that were alleged show that no such

reasonable expectation could have existed.   Specifically, the Complaint alleges that Defendant

Chris Gaubatz recorded the conversations ***with a recording device on his person***.   (Compl. at ¶

42).   This means that all of the conversations—whether Chris Gaubatz was an active conversant

in the conversation or just a passive listener—took place in clear earshot, akin to plain sight.

Further, there are no *facts* in the Complaint demonstrating that <u>any</u> recorded conversation

contained information that was confidential, privileged, or proprietary to Plaintiffs.[9]

Indeed, none of the specific circumstances related to any recorded conversation(s) nor the

content of such conversation(s) is set forth in the Complaint.   The Complaint fails to allege even

minimal facts which would provide the basis for a reasonable expectation of privacy.   This is a

critical omission that is fatal to the Federal Wire Tap claim, particularly in light of the *Twombly-*

*Iqbal* pleading requirements, *Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action will not do.   Nor does a

complaint suffice if it tenders naked assertions devoid of further factual enhancement."), and the

fact that Plaintiffs had possession of all of the recordings since the Gaubatz Defendants provided

---

[8] The single allegation about an expectation of privacy is devoid of any factual context and is merely a rote, formulaic claim to an expectation that Plaintiffs' conversations would not be subject to recording.   (Compl. at ¶ 63).   As noted, such allegations fail as a matter of law.   *Iqbal*, 129 S. Ct. at 1949.   But even more to the point is the fact that this singular allegation, even in its rote form, premises the "reasonable expectation" simply on the fact that Plaintiffs had not authorized the recordings.   But, if the test of "reasonable expectation" was simply whether the complainant had given prior approval, the test would amount to an expressed consent rule, thereby negating the plain language of the Act and Congress' intent to establish a "one-party consent" rule.

[9] It is important to note here that while the Complaint alleges some *facts* (*i.e.*, not simply conclusions) to show that some of the documents taken by Defendant Chris Gaubatz may have been proprietary, privileged, or confidential in nature (*see, e.g.*, Compl. at ¶ 52), nowhere does the Complaint allege *facts* showing that the content of <u>*any*</u> recorded conversation was similarly proprietary, privileged, or confidential.   Even the existence of the alleged confidentiality agreement does not, by its own terms, turn every conversation that takes place at Plaintiffs' offices into a confidential one.   (*See* Compl. at Ex. A) (Doc. 76-1).

them to Plaintiffs pursuant to this court's order of November 19, 2009.   (Minute Order) (requiring Gaubatz Defendants to provide Plaintiffs with all copies of recordings of intercepted conversations).  Moreover, Plaintiffs had possession of all recordings held by Defendant CSP for no less than nine months prior to filing their motion for leave to file the second amended complaint.  (*See* Pls.' Mem. in Supp. of Mot. to Amend Compl. at 2-3 & Ex. A) (Doc. No. 48-2) (hereinafter "Pls.' Mem.").   Thus, with regard to the recordings and whether the circumstances give rise to the requisite reasonable expectation of privacy, Plaintiffs had no less than nine months prior to seeking leave of the court to amend and file the Complaint to watch and listen to the audio-video tapes.  In fact, Plaintiffs' memorandum in support of their motion to amend represented to the court that Plaintiffs had in fact reviewed all of the recordings produced by the Gaubatz Defendants and by Defendant CSP in preparation for amending the Complaint.  (Pls.' Mem. at 2-3).  These audio-video tapes provide a unique vantage for purposes of alleging the requisite minimum facts to show the necessary reasonable expectation of privacy in the conversations in light of the circumstances, context, and content of the recordings.   Plaintiffs have provided none.  This does not satisfy the basic statutory requirements of § 2510, nor does it provide the factual basis to meet the minimum pleading requirements of Rule 8 as set forth in *Twombly* and *Iqbal*.

> **2.     The Complaint Fails to Allege Facts that Recordings of Oral Conversations Were for the Purpose of Committing Any Criminal or Tortious Act.**

The Complaint engages in a futile effort to plead around the "one-party consent" rule by alleging that the interceptions were for the purpose of committing criminal or tortious acts.

Specifically, at paragraph 43 of the Complaint we find the only such allegation of substance:[10]

> Defendant Chris Gaubatz conducted these recordings for the purpose of committing criminal and/or tortious acts, including eavesdropping upon the private discourses of others without the permission of all persons engaged in the discourse; secretly acquiring and exploiting Plaintiffs' internal, proprietary, privileged, and confidential information; breaching his fiduciary duties to Plaintiffs; unjustly enriching himself and the other Defendants; committing trespass; intruding upon Plaintiffs' [sic]; publicly embarrassing Plaintiffs; and using the recordings to harm Plaintiffs.

These allegations of criminal or tortious purposes, however, fail to satisfy the exception to the "one-party consent" rule for two independent reasons.  First, the plain language of the exception to the rule requires that the interception be "***for the purpose of*** committing any criminal or tortious act."  As discussed below, this means at a minimum that the crime or tortious conduct must ***follow*** in time and in purpose the act of recording and ***be separate and distinct from*** the recording itself.  Second, the allegations are vague and contradict the specific allegations actually pled in the Complaint.

We begin this analysis with the legal standard imposed by the statute itself.  The exception to the "one-party consent" rule requires that the interception itself be "for the purpose of committing any criminal or tortious act."  At best, the Complaint alleges that the various wrongful behaviors of Defendant Chris Gaubatz, such as trespass and breach of fiduciary duty, ***were for the purpose of obtaining the recorded communications***.  But that is not what the statute requires and in fact reverses the language and meaning of the statute.  This point has been laid bare by the Ninth Circuit:

> While plaintiffs have claimed that ABC's story was factually incorrect and unfair,

---

[10] The only other allegation relating to the "for purpose of" exception to the "one-party consent" rule is at paragraph 73, but this allegation is devoid of any factual context and is merely the rote, formulaic claim that the recordings were conducted "for the purpose of committing criminal or tortious acts in violation of the Constitution and laws of the United States and the District of Columbia."  Consequently, this allegation fails as a matter of law. *Iqbal*, 129 S. Ct. at 1949.

they have never claimed it was not newsworthy.  Nor do they argue that the tape was made for the purpose of committing some other subsequent crime or tort.  Rather, plaintiffs point to *Sanders* [*v. Am. Broad. Cos.*, 20 Cal. 4th 907, 978 P.2d 67 (Cal. 1999) (holding by California Supreme Court that the covert taping of office conversations by a television reporter could be actionable as an invasion of privacy)] and argue that the taping itself was tortious.  If an otherwise lawful taping violates section 2511 when committed for a prohibited purpose, argue plaintiffs, the section must also be violated when the taping itself is illegal or tortious.  This argument finds no support in the statute.  Under section 2511, "the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—***its intended use***—was criminal or tortious."  *Payne v. Northwest Corp.*, 911 F. Supp. 1299, 1304 (D. Mont. 1995), *aff'd in part and rev'd in part*, 113 F.3d 1079 (9th Cir. 1997).  *See also Deteresa v. American Broad. Cos.*, 121 F.3d 460, 467 n.4 (9th Cir. 1997) (emphasizing the distinction between a taping that is itself tortious or criminal, and one carried out for the purpose of committing some other crime or tort).  Where the taping is legal, but is done for the purpose of facilitating some further impropriety, such as blackmail, section 2511 applies.  ***Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere***.

*Sussman v. ABC*, 186 F.3d 1200, 1202-03 (9th Cir. 1999) (emphasis added); *see also Caro v. Weintraub*, 618 F.3d 94, 96 (2d Cir. 2010) ("hold[ing] that the exception to the one-party consent provision of 18 U.S.C. § 2511(2)(d) requires that a communication be intercepted for the purpose of a tortious or criminal act that is independent of the intentional act of recording").

As set forth above, the Complaint alleges the following as the "for the purpose of" criminal and tortious acts: (1) "eavesdropping upon the private discourses of others without the permission of all persons engaged in the discourse"; (2) "secretly acquiring and exploiting Plaintiffs' internal, proprietary, privileged, and confidential information"; (3) "breaching his fiduciary duties to Plaintiffs"; (4) "unjustly enriching himself and the other Defendants"; (5) "committing trespass"; (6) "intruding upon Plaintiffs' [sic]"; (7) "publicly embarrassing Plaintiffs"; and (8) "using the recordings to harm Plaintiffs."  None of these bare and conclusory allegations remotely satisfies the "for the purpose of" language of the statute as the following demonstrates:

(1) "[E]avesdropping" is simply alleging the act of taping and is not some future "further impropriety." *Sussman*, 186 F.3d at 1202.

(2) "[S]ecretly acquiring [*i.e.*, the act of taping] and exploiting Plaintiffs' internal, proprietary, privileged, and confidential information" is not supported by any of the allegations of the Complaint. Specifically, while the Complaint does allege facts to show that Defendant Chris Gaubatz took documents that might contain proprietary, privileged, and confidential information (*see, e.g.*, Compl. at ¶¶ 51-54), there are no factual allegations setting forth conversations, specifically or generally, that fit into these categories.[11]  This omission is telling given the fact that Plaintiffs have had the recordings and have reviewed them carefully when amending the Complaint for the second time to add CSP Defendants.  Notwithstanding this ample opportunity, there are no allegations, for example, that any defendant used any recording to blackmail Plaintiffs or to make use of any trade secret.  In sum, there are simply no facts to support this conclusion.

(3) "[B]reaching his fiduciary duties" is once again an allegation that the taping was coincidentally a breach of Defendant Chris Gaubatz's fiduciary duty.  Indeed, as the facts of the Complaint show, the "purpose" of the recordings was to disclose the information to the public. And the principle means of doing that, according to the Complaint, was through a website and the publication of book.  (*See, e.g.,* Compl. at ¶ 47) ("Defendants CSP, Brim, Savit, and Pavlis

---

[11] The only allegation that even approaches a description of the content of the conversations is at paragraph 42: "In addition, using an electronic device concealed on his person Defendant Chris Gaubatz made surreptitious audio and video recordings of meetings of and conversations involving officials and employees of CAIR and CAIR-Foundation pertaining to their affairs and activities."  However, this allegation is meaningless in the context of assessing the "for the purpose of" statutory requisite.  Were the "affairs and activities" of a business nature or personal?  Were they recorded for the purpose of blackmailing Plaintiffs or for stealing their trade secrets?  The Complaint does not even allow an inference that the conversations included content that was private, privileged, or confidential in any way that is meaningful for purposes of liability under the Federal Wiretap Act.

willfully disclosed to Joseph Farah of the website WorldNetDaily and WND Books a compilation of the recordings they received from Defendant Chris Gaubatz."). Consequently, as the Ninth Circuit held, "Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere." *Sussman*, 186 F.3d at 1203. Thus, while this court did find that the Complaint sufficiently alleged a plausible claim for a breach of a fiduciary duty (Mem. Op. at 45-47) (Doc. No. 73), the court was only addressing that specific, independent claim and not the Federal Wiretap Act claim.

In sum, pursuant to the plain language of the statute, the Complaint must allege some fact somewhere that establishes that the recorded conversations were themselves done "for the purpose of committing" a crime, such as blackmail, or some other tortious act, such as stealing a trade secret. In other words, it is not enough to have pled the plausible existence of a fiduciary duty and breach. There must be some facts demonstrating a "further impropriety" separate and distinct from the recording itself yet arising out of the recording (*i.e.*, the recording was "for the purpose of" the future crime or tort). *Sussman*, 186 F.3d at 1202. The Complaint fails to allege such facts.

(4) "[U]njustly enriching himself" is neither a crime nor a tort. It is merely an equitable theory of restitution or recovery when there is no binding contract (*i.e.*, a fictitious "quasi contract") to permit a court to grant equitable restitution. *See, e.g., Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 62-65 (D.C. 2005) (discussing unjust enrichment as a theory of restitution based on an equitable doctrine of quasi-contract); *Pearline Peart v. D.C. Hous. Auth.*, 972 A.2d 810, 813-18 (D.C. 2009) (same).[12]

---

[12] Even though not alleged in the Complaint, the same problem exists for a claim that Defendant Chris Gaubatz carried out the recording "for the purpose of" breaching the alleged confidentially agreement. Breach of contract is neither a crime nor a tort.

(5) "[C]ommitting trespass," assuming trespass occurred, was clearly not the "purpose of" the recordings but the other way around.

(6) While we are unclear what "intruding upon Plaintiffs' [sic]" refers to, at best it is some kind of claim to a right of privacy.  Again, even if this were a tort that Plaintiffs as corporations could legally muster, which it is not,[13] it would simply be a claim about the recording of conversations and not some future and distinct wrong.  *See Sussman,* 186 F.3d at 1203 ("Although ABC's taping may well have been a tortious invasion of privacy under state law, plaintiffs have produced no probative evidence that ABC had an illegal or tortious purpose when it made the tape.").

(7) "[P]ublicly embarrassing Plaintiffs" is neither a crime nor a tort.  Indeed, the earlier version of 18 U.S.C. 2511(d)(2) included a generic "injurious purpose" exception to the "one-party" consent rule, but this language was removed in 1986 "to eliminate an offended interviewee's 'right to bring a suit' where no tort or crime is committed."  *See generally Boddie v. Am. Broad. Cos.*, 881 F.2d 267, 269 (6th Cir. 1989) (explaining that the amendment, enacted prior to the appellate court's decision, eliminated the "injurious purpose" exception, but not retroactively; yet, also holding that "injurious purpose," while considered extant for purposes of the case, would not be applied because it was unconstitutionally vague).

(8) And finally, "using the recordings to harm Plaintiffs" fails for the same reasons that "public embarrassing Plaintiffs" fails.  (*See also* Mem. Op. at 29) ("Plaintiffs have expressly

---

[13] See *CNA Financial Corp. v. Int'l Bhd. of Teamsters,* 515 F. Supp. 942, 946-47 (N.D. Ill. 1981) (reviewing cases from courts in numerous jurisdictions and concluding that "[t]he right of privacy is a personal right designed to protect persons from unwanted disclosure of personal information.  It does not extend to protect corporations from disclosure of information . . . . Many courts that have considered the question have concluded that a corporation cannot maintain an action for invasion of the right to privacy and we believe this represents the better reasoned approach").

disclaimed damages for reputational . . . harm, . . . and the Court will hold them to that representation.") (Doc. No. 73).

Consequently, the naked assertions that Defendant Chris Gaubatz intercepted oral communications of Plaintiffs' employees "for the purpose of committing any crime or tortious act" fail to satisfy the plain language of the statute or the legal and factual requisites of the exception to the "one-party consent" rule.

### 3. The Complaint Fails to Allege Facts that Support the Claim that Chris Gaubatz Was Not a Party to the Recordings of Oral Conversations.

The Complaint explicitly alleges that Chris Gaubatz used an audio-video recorder concealed on his person to record Plaintiffs' employees' conversations. (Compl. at ¶ 42). In yet another attempt to plead around the one-party rule, the Complaint alleges that "[w]ith respect to some of the intercepted communications, Defendant Chris Gaubatz was not a party to the conversations or discussions intercepted." (Compl. at ¶ 72). But, if Chris Gaubatz was using an audio-video recorder placed on his body, as explicitly alleged in the Complaint, he would necessarily be physically present or at least within earshot of all conversations. Moreover, there is absolutely no allegation that Chris Gaubatz recorded a conversation at which he was not physically present. Given the fact that the audio-video recording device was on his person, it is simply not plausible that he was not present in any meaningful way. Indeed, in a lengthy and well-reasoned opinion, the court in *Pitts Sales, Inc. v. King World Prods.*, 383 F. Supp. 2d 1354 (S.D. Fla. 2005), held that as a matter of law this "presence" and use of a device located on one's person establishes the "party" requirement in the "one-party consent" rule. After examining various approaches to the analysis of what constitutes a "party," the court held as follows:

> The Court concludes that a "party to the communication" under §2511(2)(d) is defined as a party who is present when the oral communication is uttered and

need not directly participate in the conversation.  The Court notes that in contrast to *Walker* [*v. Darby*, 911 F.2d 1573 (11th Cir. 1990)], where defendants had placed an intercom near plaintiff's work station and left the area, leaving the machine behind to intercept the communications, Defendant Yule wore the hidden camera on his person.  Thus, the instant case does not present a situation where a communication was intercepted by an unseen auditor.  *See Smith v. Wunker*, 356 F. Supp. 44, 46 (S.D. Ohio 1972) (examining section 2511(2)(d) exception and noting that "the concern of Congress was with the interception of private conversations by an unseen auditor", *overruled on other grounds by Boddie v. ABC*, 731 F.2d 333 (6th Cir. 1984).  The fact that Yule wore the intercepting device on his person and that the communications intercepted had to occur relatively close to Yule to be picked up by his microphone persuades the Court into finding that Yule's presence alone rendered him a party to the communications.  Though the Court has been unable to locate a case discussing this precise issue, several related cases support this conclusion.

In *Sussman v. American Broadcasting Companies*, the Ninth Circuit had to apply the §2511(2)(d) exception and specifically determine whether the reporter who intercepted the communications had done so for the purpose of committing a criminal or tortious act.  186 F.3d 1200.  Even though the emphasis of the case was on a different provision of the one-party consent exception, not in dispute here, the Court determined that the reporter was "always a party to the conversations being taped" in a scenario where the journalist "used various surveillance devices to record the activities around her."  *Id.* at 1201-1202.  In the case, ABC hired an individual to pose as a psychic telephone advisor in order to gain access to the offices of the Psychic Marketing Network.  While working in these offices, the reporter, like here, recorded the activities around her, some of which were aired in a segment of news program Prime Time Live.  *Id.* at 1201.  This Court acknowledges that the opinion does not specify whether the journalist was present, though not speaking, but finds that such a scenario is implied.

The Court is also persuaded by the reasoning in *Brooks v. American Broadcasting Companies*, in which the Northern District of Ohio analyzed a scenario opposite the one present here: whether an interceptor could be a party to a communication in which the interceptee, or non-consenting party, did not meaningfully participate.  737 F.Supp. 431 (N.D. Ohio 1990).  In the case, the plaintiff had filed a claim under the wiretap statute for interception of an oral communication arising from a taped interview taken by a reporter.  Plaintiff argued that the one-party consent exception did not apply because the interview was essentially a one-sided conversation and the one party doing all of the talking, the interceptor, should not be able to take advantage of the exception.  *Id.* at 437.  The Court found no case law or legislative authority to support this novel argument, stating that a requirement of meaningful participation by the non-consenting party "would do more harm than good."  *Id.*  "Courts would be stalled trying to determine how much participation is necessary, and there would be serious vagueness problems with such a requirement."  *Id.*

– 21 –

The Court finds this reasoning applicable to the situation present here where the interceptor was not meaningfully participating in the communication. If Defendant Yule's presence is not enough to make him a party to the communication, the Court would be stalled trying to determine the extent of Yule's participation, whether Yule spoke at any point during the communication, whether any of the oral communications were directed at Yule, whether a speaker made eye contact with Yule so as to include him in the conversation, etc. For example, in one of the excerpts played during the oral arguments, Plaintiff acknowledged that during certain portions of the excerpt, which took place in a hotel conference room, Yule had participated in the communication while in other segments he had not. Yet, Plaintiff argued that the one-party consent exception should not apply to those portions of the excerpt in which Yule was not spoken to or did not speak, leaving it up to the Court to determine at which point in the conversation Yule ceased being a party and at which point he regained his status as a party to the communication. The Court finds that accepting Plaintiff's interpretation of the statute would create practical problems not envisioned by the statute.

Since Defendant Yule was always present when the communications were uttered and had the hidden camera on his person, the Court finds that he was a party to the communication under §2511(2)(d) and lawfully intercepted the communications at issue. Therefore, the Court enters summary judgment in favor of Defendants on Counts I for interception and Count II for use under 18 U.S.C. §2511.

*Pitts Sales, Inc. v. King World Prods.*, 383 F. Supp. 2d 1354, 1361-62 (S.D. Fla. 2005).

The logic and the holding of *Pitts Sales, Inc.* apply equally to the allegations presented by the Complaint in this matter. As such, Defendant Chris Gaubatz was as a matter of law at all times a "party" to the conversations precisely because the Complaint alleges that he recorded them with an audio-video recorder placed on his person. It is not relevant whether he actually spoke or was spoken to directly because he was clearly present and manifestly privy to all conversations precisely because they were spoken sufficiently audibly to have been heard by Chris Gaubatz and recorded. Plaintiffs' effort to plead around the "one-party consent" rule by simply reciting the legal conclusion that he was not a party to the conversations not only fails the *Twombly-Iqbal* requirement to do more than plead rote definitions or formulaic legal

conclusions, *Iqbal*, 129 S. Ct. at 1949, it contradicts the specific factual allegations in the Complaint and the reasonable and plausible inferences derived from the allegations.

In sum, the court should find that there can be no violation of the Federal Wiretap Act based upon the facts as alleged in the Complaint given the "one-party consent" rule and, consequently, Count One as it relates to the Federal Wiretap Act should be dismissed entirely.

To summarize, to the extent the court finds that there was no reasonable expectation of privacy by the conversant of the recordings alleged to have taken place, no defendant, particularly including CSP Defendants, can be liable for any Federal Wiretap Act violations insofar as there would have been no statutorily defined "oral communications." Moreover, to the extent the court accepts the analysis in *Pitt Sales, Inc., supra*, and insofar as the Complaint alleges that Defendant Chris Gaubatz used an audio-video recorder placed on his person, the "one-party consent" rule precludes as a matter of law any liability under the Federal Wiretap Act for any defendant, specifically including CSP Defendants. Finally, to the extent that there is any vestige of primary liability under the Federal Wiretap Act for Defendant Chris Gaubatz, the only liability exposure for CSP Defendants is for disclosing a compilation of recordings to Farah because there can be no "procurement" violation liability or secondary liability for conspiracy or aiding and abetting by CSP Defendants. Thus, in the unlikely event that Plaintiffs have made out a viable claim for primary liability under the Federal Wiretap Act for Defendant Chris Gaubatz, all claims of liability other than the single allegation of disclosure by CSP Defendants must be dismissed.[14] The alleged facts, however, compel this court to dismiss all Federal Wiretap Act

---

[14] While it is beyond the scope of this motion, it is conceivable that discovery will show that CSP Defendants were "law-abiding possessor[s] of information" and thus enjoy protection under the First Amendment for their use and disclosure of the recordings. *See Barnicki v. Vopper*, 532 U.S. 514 (2001); (Mem. Op. at 28) (rejecting the First Amendment defense of Gaubatz Defendants at the pleading stage, but noting that "[i]t may . . . turn out that Plaintiffs will be

claims in their entirety as a matter of law.

II.   **Count Two of the Complaint Fails to State a Cause of Action Against CSP Defendants for Violation of the SCA**

Although refined somewhat by this court's ruling denying the Gaubatz Defendants' motion to dismiss,[15] Count Two of the Complaint alleges that Defendant Chris Gaubatz violated the SCA by knowingly obtaining wire or electronic communications by accessing Plaintiffs' "computers or computer servers, networks, or systems" without the requisite authority.  (Compl. at ¶¶ 80-81).  The only allegations against CSP Defendants in Count Two are conspiracy and aiding and abetting.  As this court intimated in its prior ruling, (Mem. Op. at 31, n.9), and as held by every court that has dealt with this directly, there is no secondary liability available under the SCA.  *See, e.g., Freeman v. DirecTV, Inc.*, 457 F.3d 1001 (9th Cir. Cal. 2006) (negating any secondary liability under the SCA and providing extremely detailed analysis and lengthy treatment); *Garback v. Lossing*, 2010 U.S. Dist. LEXIS 99059, at n.6 (E.D. Mich. Sept. 20, 2010) (same); *Jones v. Global Info. Group, Inc.*, No. 3:06-00246-JDM, 2009 U.S. Dist. LEXIS 23887, at 6-9 (W.D. Ky. Mar. 25, 2009) (same); *Kirch v. Embarq Mgmt. Co.*, 2011 U.S. Dist. LEXIS 92701, at 21-23 (D. Kan. Aug. 19, 2011) (same).

Given the unanimity among the federal courts in holding that there is no secondary liability under the SCA, Count Two of the Complaint should be dismissed as against CSP Defendants.

III.   **The D.C. Wiretap Act Claim Should Be Dismissed for the Same Reasons Dismissal Is Proper for the Federal Wiretap Act Claims.**

The D.C. Wiretap Act claim set forth in Count One of the Complaint should be dismissed

---

unable to establish that some or all of the defendants in this action participated in the unlawful acquisition of information.").

[15] *See supra* note 5.

for the same reasons the Federal Wiretap Act claims are subject to dismissal.  Specifically, when Congress passed the D.C. Wiretap Act, it used the same language as in the original Federal Wiretap Act.  *Napper v. United States*, 22 A.3d 758 (D.C. 2011) ("Because the District of Columbia wiretapping statute is 'virtually identical' to the federal wiretapping statute, which was intended to codify the Fourth Amendment test established by the Supreme Court in *Katz*, the same analysis is required to determine whether an act of electronic surveillance runs afoul of it.").  Thus, the analysis of the viability of the claims under the two statutory regimes is the same for all practical purposes.  The two differences between the federal and D.C. statutes relevant to this case (*i.e.*, the D.C. Wiretap Act retains a civil remedy for a "procurement" violation and the D.C. Wiretap Act includes "injurious harm" language in the context of the "for the purpose of" exception to the "one-party consent" rule) are as a practical matter of no import, as discussed further below.  Thus, the claims under the D.C. Wiretap Act should be dismissed.

As noted above, the D.C. Wiretap Act retains the "procurement" violation language in its civil remedy provision that was amended out of the Federal Wiretap Act.  D.C. Code § 23-554(a)(1).  Thus, while there remains a "procurement" violation civil remedy, this is true if and only if there is a proper plaintiff "whose wire or oral communication is intercepted, disclosed, or used in violation of this subchapter."  D.C. Code § 23-554(a).  Consequently, a party may only claim a "procurement" violation who has first suffered the primary violation of "interception." *See id*.

For Plaintiffs to make out a civil claim for a "procurement" violation, they must first allege a primary illegal "interception" violation.  But to make out a case for an illegal "interception" violation, Plaintiffs must first establish, as was the case in the Federal Wiretap Act, that Plaintiffs' employees had a reasonable expectation of privacy in their recorded

conversations.  D.C. Code § 23-541(2) (providing that "the term 'oral communication' means any oral communication uttered by a person exhibiting an expectation that the communication is not subject to interception under circumstances justifying the expectation," which is identical to the language in the Federal Wiretap Act); *see also Napper*, 22 A.3d at 758.

In addition, Plaintiffs must establish either that Defendant Chris Gaubatz was not a party to the recorded conversations or that—even though he was a party to them—he recorded the conversations "for the purpose of" committing some future crime or tortious conduct.  D.C. Code § 23-542(b)(3).  Consequently, for purposes of this case, the analysis of the "one-party consent" rule is exactly the same as the analysis required of the Federal Wiretap Act except for the fact that the D.C. Wiretap Act retains the Federal Wiretap's older, pre-1986 language that there is an exception to the rule when the illegal interception is done "for the purpose of committing any other injurious act."  *Id*.

This retention of the older "injurious act" language, however, does not in fact change the scope of the "for the purpose of committing any criminal or tortious act" exception as now exists under the Federal Wiretap Act because, as set forth in *Boddie v. Am. Broad. Cos.*, 881 F.2d 267 (6th Cir. Ohio 1989), this language is unconstitutionally vague.  Specifically, in *Boddie*, the Sixth Circuit confronted a case that began under the original "injurious act" language of the Federal Wiretap Act but was on appeal (for the second time) after the 1986 amendment removed that language.  Plaintiff asked the court to apply the "injurious act" exception to the "one-party consent" rule, and defendants argued that the amendment eliminating the "injurious act" exception should be applied retroactively.

In a well-reasoned opinion, the court first concluded that Congress clearly intended to remove this broad exception to the "one-party consent" rule; however, the court would not apply

this change in "substantive rights and liabilities" retroactively without a clear showing that Congress intended such retroactivity. *Boddie,* 881 F.2d at 270. Nonetheless, the court ultimately refused to apply the "injurious purpose" language because it was unconstitutionally vague. Thus, the court held:

> We conclude that section 2511(2)(d) cannot meet th[e void-for-vagueness] test. The statute's amorphous "injurious purpose" standard fails to define precisely what interceptions are actionable. The meaning of the term "injurious" is far from self-evident; it is not defined by the statute; and it is not an established legal term of art. Nor can the provision be saved by a sensible narrowing construction. The logical narrowing construction of "injurious" purpose is "criminal" or "unlawful" purpose, but these alternatives are foreclosed by the statute. Under the pre-1986 section 2511, "injurious" is obviously different from and broader than "tortious" or "criminal," since the statute premised liability on either a "criminal or tortious" purpose or an "injurious" purpose.

> Beyond the fact that it is not a tortious or criminal purpose, it is difficult—if not impossible—to determine what Congress intended by an "injurious" purpose. The legislative history of Title III is of little help, because section 2511(2)(d) was added to the act by a hastily drafted floor amendment. The legislative history of the 1986 amendment does not attempt to define the phrase "purpose of committing any . . . injurious act." Instead, it concedes that the phrase is "overly broad and vague." S. Rep. No. 541, *supra,* at 17. As the Eighth Circuit has observed:
>> There was little if any discussion in Congress on the meaning of the term "injurious act" within the framework of . . . the prohibition against nonconsensual wiretaps or recordings by a participant in the conversation.
>> * * *
>> A perfectly legitimate act may often be injurious. A judgment at law can be injurious to the losing party. . . . The term is extremely vague and broad and certainly Congress could not have intended to use the term in its literal context.
> *Meredith v. Gavin*, 446 F.2d 794, 798-99 (8th Cir. 1971).

> The ordinance struck down by the Supreme Court's opinion in *Hynes* [*v. Mayor of Oradell*, 425 U.S. 610 (1976)] provides an apt comparison. *Hynes* invalidated a municipal canvassing ordinance which required advance notice be given to the police by "any person desiring to canvass, solicit or call from house to house. . . . for a recognized charitable cause . . . or . . . political campaign or cause . . . in writing, for identification only." 425 U.S. at 611. Noting that "laws dealing with speech" are subject to stringent vagueness standards, the Court concluded that the ordinance could not pass constitutional muster. *Id*. at 620. The ordinance was faulted for failing to define "recognized" charitable causes. Recognized by

– 27 –

whom, the Court asked: the City, the IRS, the person enforcing the ordinance? Further, while "campaign" has a commonly accepted meaning, the Court found the term "political cause" too vague to give proper notice to potential canvassers. Finally, the Court found that the ordinance failed to clarify what information canvassers were required to present to the police for "identification purposes." *See also Kolender* [*v. Lawson*, 461 U.S. 352] at 358 (law requiring "creditable and reliable" identification impermissibly vague in light of "the 'potential for arbitrarily suppressing First Amendment liberties'").

As in *Hynes*, the law at issue here "deal[s] with speech." Both section 2511(2)(d) and the canvassing ordinance address speech-related "conduct," not "pure speech." Like the canvassing ordinance, the pre-1986 section 2511(2)(d) failed to give potential speakers adequate notice of its scope. Journalists could only guess as to what was actionable. For example, is intending to broadcast an interview in spite of knowledge that the interviewee will be mortified an "injurious" purpose? What if the broadcaster knows the interviewee will be embarrassed but the motive in broadcasting is to expose corruption? We can only conclude that persons "of common intelligence must necessarily guess at [the] meaning" of the term "injurious" as it is used in section 2511(2)(d). 425 U.S. at 620 (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 70 L. Ed. 322, 46 S. Ct. 126 (1926). Accordingly, we affirm the District Court's dismissal of plaintiff's claim under section 2511(2)(d).

*Boddie*, 881 F.2d at 271-72.

Thus, for the reasons set forth in *Boddie*, CSP Defendants ask this court to hold the "injurious harm" language in D.C. Code § 23-542(b)(3) unconstitutionally vague and not apply it in this case. Consequently, the D.C. Wiretap Act claims in Count One should be dismissed for the same reasons articulated for the dismissal of the Federal Wiretap Act.

## CONCLUSION

For the foregoing reasons, CSP Defendants respectfully request that this court dismiss Counts I and II of the Complaint with prejudice on the grounds as set forth above.

[Signature page follows.]

Respectfully submitted,

LAW OFFICES OF DAVID YERUSHALMI, P.C.

/s/ David Yerushalmi
David Yerushalmi, Esq. (DC Bar No. 978179)
1901 Pennsylvania Avenue NW, Suite 201
Washington, D.C. 20001
david.yerushalmi@verizon.net
Tel: (646) 262-0500; Fax: (801) 760-3901

THOMAS MORE LAW CENTER

/s/ Robert J. Muise
Robert J. Muise, Esq. (Mich. Bar No. P62849)
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, Michigan 48106
Tel (734) 827-2001 / Fax (734) 930-7160
rmuise@thomasmore.org

*Counsel for Defendants Center for Security Policy,
Christine Brim, Adam Savit, and Sara Pavlis*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2011, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically: none.

LAW OFFICES OF DAVID YERUSHALMI, P.C.

/s/ David Yerushalmi
David Yerushalmi, Esq.