**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS ACTION NETWORK, INC., *et al.*, | ) ) ) | Civil Action No. 09-cv-2030 (CKK-JMF) |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Colleen Kollar-Kotelly |
| PAUL DAVID GAUBATZ, *et al.*, | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**

**MOTION TO DISMISS COUNTS I & II**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. IV

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND AND ALLEGATIONS .................................................... 1

LEGAL STANDARD ........................................................................................... 2

ARGUMENT ..................................................................................................... 3

I. Count I adequately pleads claims against the CSP Defendants under Title I of the ECPA. ............................................................................................................. 3

  A. CSP Defendants may face civil liability under the ECPA for procuring Chris Gaubatz to intercept oral communications. .................................................. 4

    1. Title I of the ECPA provides a private cause of action for procuring another to intercept oral communications. .................................................................. 5
      a. The text of the ECPA clearly includes a private right of action against those who procure others to intercept oral communications. .......................... 5
      b. This Court should adopt the reasoning in Lonegan v. Hasty and find a private right of action against those charged with procurement violations. ...................... 7

    2. CSP Defendants are liable for directing their agent Chris Gaubatz to intercept the oral communications. ...................................................................... 10

  B. Plaintiffs have pled plausible claims against all Defendants based on forbidden interceptions of oral communications. ........................................................ 12

    1. Gaubatz's surreptitious recordings were of oral communications....................... 12

    2. The one-party consent rule does not bar Plaintiff's claims based on any of the recorded oral communications...................................................................... 15
      a. Plaintiff has adequately pled facts from which it can be concluded that Defendant Chris Gaubatz was not a party to many of the recorded conversations. ................................................................................................. 16
      b. Plaintiff has adequately pled facts from which it can be concluded that Defendant Chris Gaubatz recorded oral communications for the purpose of committing tortious acts...................................................................... 17

II. Count II adequately pleads a claim under the SCA against all Defendants and against Defendant CSP in particular. ........................................................................... 19

III. Plaintiffs' D.C. Wiretap Act claims have been pled adequately and should not be dismissed....................................................................................................................... 21

CONCLUSION................................................................................................................. 22

## TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ............................................................ 3

*Boddie v. Am. Broad. Cos.*, 881 F.2d 267 (6th Cir. 1989) ................................... 22

*Butera & Andrews v. IBM Corp.*, No. 1:06-CV-647, 2006 U.S. Dist. LEXIS 75318
   (D.D.C. Oct. 18, 2006) ..................................................................................... 21

*Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967 (M.D. Tenn. 2008) ............... 21

*Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010) ................................................. 16

*Convit v. Wilson*, 980 A.2d 1104 (D.C. 2009) .................................................. 10

*District of Columbia v. Coron*, 515 A.2d 435 (D.C. 1986) ............................... 10

*Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2007) ............................................. 10

*Erickson v. Pardus*, 551 U.S. 89 (2007) ............................................................ 3

*Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996) ..................................... 18

*Freeman v. DirecTV, Inc.*, 457 F.3d 1001 (9th Cir. 2006) ................................. 20

*Jackson v. Loews Wash. Cinemas, Inc.*, 944 A.2d 1088 (D.C. 2008) ................ 11

*Jones v. Horne*, 634 F.3d 588 (D.C. Cir. 2011) ................................................. 3

*Kee v. City of Rowlett*, 247 F.3d 206 (5th Cir. 2001) ................................... 13, 14

*Lonegan v. Hasty*, 436 F. Supp. 2d 419 (E.D.N.Y. 2006) ................................ 7, 9

*Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308 (D.C. 2008) ................... 19

*Napper v. United States*, 22 A.3d 758 (D.C. 2011) .......................................... 22

*Noel v. Hall*, 568 F.3d 743 (9th Cir. 2009) ...................................................... 10

*O'Connor v. Ortega*, 480 U.S. 709 (1987) ........................................................ 14

*Peavy v. WFAA-TV, Inc.*, 221 F.3d 158 (5th Cir. 2000) ................................... 7, 8

*Phillips v. Fulwood*, 616 F.3d 577 (D.C. Cir. 2010)............................................................. 3

*Pitts Sales, Inc. v. King World Prods.*, 383 F. Supp. 2d 1354 (S.D. Fla. 2005) ............... 16

*Tapley v. Collins*, 211 F.3d 1210 (11th Cir. 2000) ...................................................... 7, 9, 10

*United States v. Larios*, 593 F.3d 82 (1st Cir. 2010) ......................................................... 13

*United States v. Smith*, 978 F.2d 171 (5th Cir. 1992) ......................................................... 14

*Walker v. Darby*, 911 F.2d 1573 (11th Cir. 1990)............................................................. 13

**STATUTES**

18 U.S.C. § 2510, *et seq.*.............................................................................................. *passim*

18 U.S.C. § 2700, *et seq.*...................................................................................................... 20

D.C. Code § 23-541, *et seq.* ............................................................................................... 21

**OTHER AUTHORITIES**

S. Rep. No. 95-797 (1986), as reprinted in 1986 U.S.C.C.A.N. 3555 ............................... 9

**INTRODUCTION**

Plaintiffs The Council on American-Islamic Relations Action Network Inc. and CAIR-Foundation Inc. hereby oppose the Motion to Dismiss Counts I & II filed by Defendants Center for Security Policy, Christine Brim, Adam Savit, and Sara Pavlis. Defendants argue that Plaintiffs' allegations are insufficient as a mater of law to support relief under Titles I & II of the Electronic Communications Privacy Act and its D.C. counterpart. For the following reasons, the instant Motion must be denied in its entirety.

**FACTUAL BACKGROUND AND ALLEGATIONS**

Plaintiffs are bringing several statutory and common law claims against multiple Defendants: Chris Gaubatz, his father David Gaubatz, the Center for Security Policy (hereinafter "CSP"), Christine Brim, Adam Savit, and Sara Pavlis. The claims arise out of a plan among all of the defendants, executed in 2008-09, to steal confidential and sensitive business and proprietary documents from Plaintiffs and widely disseminate them. (Second Amd. Compl. ¶¶46-47.)  Defendant Chris Gaubatz, under an assumed name and identity, obtained an unpaid internship at Plaintiffs' main offices in the District of Columbia. (*Id.* ¶¶22-29.) Chris Gaubatz obtained this internship in accordance with an agreement between himself, David Gaubatz, and Defendant CSP to fraudulently obtain sensitive and confidential communications and information from Plaintiffs, distribute this information to Defendant CSP, after which CSP would disseminate this information publicly by publishing it in print and on the internet. (*Id.* ¶¶34-47.)

1

Pursuant to this scheme, Chris Gaubatz obtained unauthorized access to at least 12,000 pages of electronic and hard copy documents and recorded at least 51 audio and video discs of private conversations between employees of Plaintiffs. Gaubatz immediately gave material to CSP pursuant to their agreement. (*Id.* ¶¶ 38-44.) Defendants, over the course of the next several months, then distributed this information publicly in a book and on a weblog. (*Id.* ¶¶ 44-59.) Much of the information revealed was sensitive or confidential, and the revelations violated this confidentiality and reduced the value of this information. (*Id.* ¶¶ 50-53, 58, 65.) This included private information about donors and documents that were clearly labeled at confidential. (*Id.*)

Plaintiffs' first two sets of claims are for violations of the Electronic Communications Privacy Act (hereinafter "ECPA"), 18 U.S.C. §§ 2500, *et seq.*, and the corresponding District of Columbia Wiretap Act, D.C. Code § 23-541 *et seq.* Count I is based on Defendants' unlawful audio and video recording of oral conversations between Plaintiffs' employees, (Second Amd. Compl. ¶¶69-78), and Count II is based on Defendants' unauthorized access to Plaintiffs' stored emails, (*id.* ¶¶79-85). This Court has already denied an earlier motion to dismiss filed by Defendants Chris and David Gaubatz (hereinafter "Gaubatz Defendants"). The instant Motion was filed by the remaining defendants (hereinafter "CSP Defendants") and seeks dismissal of Counts I and II against them.

## LEGAL STANDARD

The instant Motion requests dismissal of counts I and II of the Second Amended Complaint against CSP Defendants for failure to state a claim pursuant to Federal Rule of

Civil Procedure 12(b)(6). "To survive a motion to dismiss, the pleadings must suggest a plausible scenario that shows that the pleader is entitled to relief." *Jones v. Horne*, 634 F.3d 588, 595 (D.C. Cir. 2011) (internal quotations omitted). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). "[T]he court must 'accept as true all of the factual allegations contained in the complaint.'" *Phillips v. Fulwood*, 616 F.3d 577, 581 (D.C. Cir. 2010) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must only "contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (internal quotation marks omitted). While "naked assertions" without factual development are insufficient, "detailed factual allegations" are not required. *Id.* (internal quotations omitted). The Court is not to make factual assessments; "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. Although the plausibility pleading standard requires something more than sheer possibility for relief, the standard is "not akin to a probability requirement." *Id.* at 1949.

## ARGUMENT

## I. Count I adequately pleads claims against the CSP Defendants under Title I of the ECPA.

Title I of the ECPA, 18 U.S.C. § 2510 *et seq.*, provides penalties for any person or entity that "intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication. . . ." *Id.* § 2511(1)(b). CSP Defendants argue that Count I does not include any cognizable claims against them under ECPA Title I. They offer several arguments, including that civil liability may not be sought from those who "procure" others to wiretap, that Defendant Chris Gaubatz did not "intercept" many of Plaintiffs' oral communications because he was a party to them, and that Defendant Gaubatz did not record any conversation in order to commit a tort. However, Defendants' arguments include mischaracterizations of the ECPA and the relevant case law, and Defendants also fail to note that Plaintiffs have stated a plausible theory of liability against Defendant CSP based on Chris Gaubatz's status as CSP's agent.  For these reasons, Defendants' motion must be denied.

A. CSP Defendants may face civil liability under the ECPA for procuring Chris Gaubatz to intercept oral communications.

CSP Defendants argue for dismissal of Title I ECPA claims to the extent they are based on those Defendants' "procurement" of Chris Gaubatz to unlawfully intercept oral communications. In making this argument, Defendants inaccurately read the law as failing to provide a civil right of action for procurement violations. In particular, Defendants grossly misconstrue and exaggerate the significance of a 1986 statutory amendment to the section providing Title I's civil right of action. Defendants also fail to recognize that under principles of principal-agent liability, Plaintiff has successfully

4

stated a plausible claim that Defendant CSP directly intercepted oral communications through its agent Chris Gaubatz.

### 1. Title I of the ECPA provides a private cause of action for procuring another to intercept oral communications.

Title I of the ECPA provides penalties for any person or entity that "intentionally intercepts, endeavors to intercept, or *procures* any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a) (emphasis added).[1] The statute also provides a civil cause of action:  "[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity. . . which engaged in that violation such relief as may be appropriate." *Id.* § 2520(a). CSP Defendants argue wrongly that this language omits a private right of action against parties who procure others to intercept oral communications.

### a. The text of the ECPA clearly includes a private right of action against those who procure others to intercept oral communications.

The text of 18 U.S.C. § 2520(a) clearly shows that Plaintiffs possess a private right of action against those who have procured others to intercept their oral

---

[1] Also, the statute punishes any entity that "intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when. . . such person acts in the District of Columbia." *Id.* § 2511(1)(b)(5).

In addition, the statute punishes any entity that "intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." *Id.* § 2511(1)(e). Defendants' arguments as to a case of action for a procurement violation do not apply to the extent Plaintiffs are bringing claims pursuant to this section for wrongful disclosure.

communications. Specifically, any person aggrieved under the ECPA may pursue a private action against *any* violator of the statute, including one who procures another to intercept oral communications:  "[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used *in violation of this chapter* may in a civil action recover from the person or entity. . . which engaged *in that violation* such relief as may be appropriate." *Id.* (emphasis added).

The text of § 2520(a) is broken into two clauses. The first clause explains who has standing to bring a civil suit under the chapter: "[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover. . . ." *Id.* The list "intercepted, disclosed, or intentionally used" describes the word "communication." The word "procure" does not fit naturally in this list because it cannot modify the word "communication"; the statute does not refer to procurement of *communications* but to procurement of *persons*. *Id.* § 2511(1)(a).

The second clause of § 2520(a) explains who may be sued in a private action. The clause is broad, allowing suit against "the person or entity. . . which engaged in that violation. . . ." *Id.* § 2520(a). The phrase "that violation" refers to the "communication [that] is intercepted, disclosed, or intentionally used in violation of this chapter" language in the first clause. This is a reference to any communications that were obtained through *any* violation of the chapter; as explained above, the omission of the word "procurement" from the first clause does not exclude procurement-based violations from the reach of this section, because "procures" may not modify the word "communication."

6

Thus, the most natural reading of § 2520(a) is that a private right of action exists against those who engage in procurement violations.  As summarized by one court,

> [T]he class of persons whose communications are intercepted in violation of the Wiretap Act includes those persons whose communications are intercepted by someone who was procured to do so by a third party. In such case, *both* the person who actually intercepted the communications and the person who procured the interception have violated the Act, and the victim is authorized to sue *any* person or entity who engaged in that violation.

*Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427-28 (E.D.N.Y. 2006) (emphasis added).

### b. This Court should adopt the reasoning in *Lonegan v. Hasty* and find a private right of action against those charged with procurement violations.

Defendants rely heavily on the Fifth Circuit decision in *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158 (5th Cir. 2000) to argue that no private right of action exists for procurement violations. We respectfully submit that *Peavy*, so ably block-quoted by CSP Defendants, does not control this case. Defendants' statement that the federal courts unanimously agree with *Peavy* on this issue, (Defs.' Memo. 9), is flatly incorrect. *See Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427-28 (E.D.N.Y. 2006) (criticizing at length and declining to follow *Peavy*); *see also Tapley v. Collins*, 211 F.3d 1210, 1213 (11th Cir. 2000) (stating that one who procures may be subject to civil liability).

*Peavy*, and Defendants' analysis, misconstrues the significance of a 1986 statutory amendment to 18 U.S.C. § 2520(a). Defendants and the *Peavy* court argue that elimination of language reading "or procures any other person to intercept" from the original § 2520(a) resulted in an elimination of a private right of action for procurement violations. A comparison of the pre- and post-amendment statute shows that this is an

inaccurately simplistic interpretation of the amendment and of the current text of §

2520(a). Before the amendment, the statute read:

> Any person whose wire or oral communication is intercepted, disclosed, or
> used in violation of this chapter shall (1) have a civil cause of action
> *against any person who intercepts, discloses, or uses, or procures any*
> *other person to intercept, disclose, or use such communications*, and (2)
> be entitled to recover from any such person [damages, attorney's fees, and
> costs].

*Peavy*, 221 F.3d at 168 (quoting 18 U.S.C. § 2520 (1970)) (emphasis added).

After the amendment, the provision reads:

> any person whose wire, oral, or electronic communication is intercepted,
> disclosed, or intentionally used in violation of this chapter may in a civil
> action recover *from the person or entity, other than the United States,*
> *which engaged in that violation* such relief as may be appropriate.

18 U.S.C. § 2520 (2011) (emphasis added).

The first clauses of the provision both before and after the amendment are nearly

identical and both explain who has standing to bring suit.  The second clauses of both the

pre- and post-amendment section (italicized above) describe who may be sued. The

former statute lists specifically the persons against whom the cause of action is available

– those who intercept, disclose, use, or procure. The post-amendment version of the

statute explains that there is a civil cause of action but removes all of this redundant

language; besides deleting the word "procures," the amendment also omitted the

language "intercepts, discloses, or uses." The amendment thus served to streamline the

text to explain that the cause of action is provided simply for *any* violation under the

chapter.

Based on this reasoning, the Eastern District of New York has criticized *Peavy* and found that 18 U.S.C. § 2520 provides a private right of action for procurement violations. *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427-28 (E.D.N.Y. 2006). The *Lonegan* Court relied on both the plain text of the statute and its legislative history. The Court explained that "the more natural reading of the amended statute shows no intent on the part of Congress to eliminate the private right of action for procurement violations." *Id.* at 428.  The class of persons whose oral communications were intercepted and thus may sue under the statute "includes those persons whose communications are intercepted by someone who was procured to do so by a third party." *Id.*  In these procurement cases, the procurer has violated the ECPA, and thus the victim is authorized to sue them.  *Id.*

In addition, the *Lonegan* court explained that a review of the legislative history confirms that the amendment in the language of § 2520 was not intended to eliminate a right of action for procurement violations, but to simplify the redundant statutory language.  "Congress intended to streamline the language of the provision by using the blanket phrase 'person or entity which engaged in that violation' rather than delineating each kind of violation separately-- but that it did not, in so doing, intend to eliminate procurement violations from civil liability." *Id.* at 428 (citing S. Rep. No. 95-797, at 26-27 (1986), as reprinted in 1986 U.S.C.C.A.N. 3555, 3580-81).

In further contrast with CSP Defendants' and the *Peavy* court's approach, the Eleventh and Ninth Circuits have presupposed that post-amendment 18 U.S.C. § 2520 allows civil damages for procurement violations. In *Tapley v. Collins*, 211 F.3d 1210 (11th Cir. 2000), the Eleventh Circuit said that the Act "provides that a person who intentionally intercepts, endeavors to intercept, or procures any other person to intercept

9

or endeavor to intercept, any wire, oral, or electronic communication is subject to criminal sanctions and civil liability." *Id.* at 1213 (internal quotations omitted). And in *Noel v. Hall*, 568 F.3d 743, 748-49 (9th Cir. 2009) a plaintiff could not collect damages from defendant, who procured someone else to wiretap; however, this was not because of the procurement, but because the incident did not qualify as a "wiretap."[2]

> *2. CSP Defendants are liable for directing their agent Chris Gaubatz to intercept the oral communications.*

In the alternative, if the Court does not agree that the ECPA provides for civil liability for procurement violations, Plaintiffs may pursue an action against Defendant CSP for directly intercepting oral communications. The Second Amended Complaint contains factual allegations that lead to the plausible inference that CSP directed its agent Defendant Chris Gaubatz to surreptitiously record confidential conversations.

Under vicarious liability doctrine, a principal is liable for the actions of its agent. *Convit v. Wilson*, 980 A.2d 1104, 1114 (D.C. 2009). "The doctrine of respondeat superior permits an employer to be held liable for the acts of his employees committed within the scope of their employment." *District of Columbia v. Coron*, 515 A.2d 435, 437 (D.C. 1986). "Whatever is done by the employee in virtue of his employment and in furtherance of its ends is deemed by the law to be an act done within the scope of his employment." *Id.* (internal quotations omitted).  Two requirements must be met to establish a principal-agent relationship. First, there must be some kind of consent to

---

[2] Finally, Defendants' reliance on *Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2007), is simply puzzling. It is true that *Doe v. GTE Corp.* says that "[a] statute that is this precise about who, other than the primary interceptor, can be liable, should not be read to create a penumbra of additional but unspecified liability" with respect to 18 U.S.C. § 2511.  *Doe v. GTE Corp.*, 347 F.3d at 659.  Plaintiffs do not dispute this general principle of statutory interpretation; however, as explained above, § 2511 does provide specifically for liability of those who procure others to intercept communications with electronic means. 18 U.S.C. § 2511(1)(a).

establish the relationship. Second, there has to be evidence that the agent's activities are subject to the principal's control. *Jackson v. Loews Wash. Cinemas, Inc.*, 944 A.2d 1088, 1097 (D.C. 2008).

The facts pled in the Second Amended Complaint establish a plausible ECPA claim against Defendant CSP under the theory that it employed Defendant Chris Gaubatz as its agent and directed him to intercept oral communications. Several facts support a finding that CSP and Chris Gaubatz consented to a principal-agent relationship, including Gaubatz's delivery of stolen documents to CSP pursuant to a prior agreement, (Second Amd. Compl. ¶4), Gaubatz and CSP being party to an agreement for Gaubatz to pursue an internship with Plaintiffs under an assumed identity and steal confidential documents and record oral conversations, (*id.* ¶19), and Chris Gaubatz and CSP being party to at least two written agreements for Gaubatz to give CSP documents stolen from Plaintiffs, (*id.* ¶35). These facts also support a plausible inference that Gaubatz's activities were subject to CSP's control; such an inference is also supported by Gaubatz informing CSP of the confidentiality agreement he signed with Plaintiffs, (*id.* ¶31), and Gaubatz and his father giving documents and at least 51 discs of recordings of oral communications to CSP, (*id.* ¶44). Thus, the pleadings support a plausible principal-agent relationship between CSP and Chris Gaubatz.  *See Jackson*, 944 A.2d at 1097.

Because Plaintiffs have pled a principal-agent relationship, CSP may be liable for any actions they directed Chris Gaubatz to undertake. Because the very purpose of their relationship was for Chris Gaubatz to intercept Plaintiffs' oral communications, CSP may be directly liable for interception of oral communications under the ECPA. In short, there is an ECPA cause of action for interception against Defendant CSP.

11

B. Plaintiffs have pled plausible claims against all Defendants based on forbidden interceptions of oral communications.

The ECPA provides liability against any entity that "intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication. . . ." *Id.* § 2511(1)(b). CSP Defendants argue that there is no liability against any of the defendants based on interception of oral communications. Specifically, Defendants argue that there was no reasonable expectation of privacy in the recorded conversation, that Chris Gaubatz was party to all of the conversations and thus any recording was permissible, and that the conversations were not recorded in order to commit a tortious act. All three of these arguments are based on factual assumptions that cannot be made at this stage of the litigation and thus must fail.

*1. Gaubatz's surreptitious recordings were of oral communications.*

Defendants' arguments that the interceptions here were not of oral communications are misplaced. Under the statute, "'oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation. . . ." 18 U.S.C. § 2510(2). Courts have held that this corresponds to the Fourth Amendment "reasonable expectation of privacy" test; thus the court must find that (i) plaintiffs had a subjective expectation that no one was intercepting their conversations and (ii) this expectation is one society considers reasonable. *United States v. Larios*, 593 F.3d 82, 92

12

(1st Cir. 2010). However, "courts distinguish between an expectation of privacy and the expectation of noninterception." *Walker v. Darby*, 911 F.2d 1573, 1579 (11th Cir. 1990). The subject's expectation did not have to be of not being overheard, but an "expectation that his oral communications were not subject to interception." *Id.* at 1577-79.

Whether an individual has a subjective expectation of privacy that society considers reasonable is a highly fact and context-specific inquiry. Some factors in ascertaining whether there was a subjective expectation of privacy include "(1) the volume of the communication or conversation; (2) the proximity or potential of other individuals to overhear the conversation; (3) the potential for communications to be reported; (4) the affirmative actions taken by the speakers to shield their privacy; (5) the need for technological enhancements to hear the communications; and (6) the place or location of  the oral communications as it relates to the subjective expectations of the individuals who are communicating." *Kee v. City of Rowlett*, 247 F.3d 206, 213-15 (5th Cir. 2001).

Plaintiff has pled facts that plausibly demonstrate this subjective expectation of privacy. Gaubatz recorded "conversations involving officials and employees of CAIR and CAIR-Foundation pertaining to their affairs and activities," (Second Amd. Compl. ¶42), and it can be plausibly concluded that such conversations about their affairs were private.  And a subjective expectation that conversations between Plaintiff's officials and employees were private is further evidenced by the detailed and lengthy confidentiality and non-disclosure agreement Plaintiffs asked Chris Gaubatz to sign.  (Second Amd. Compl. ¶30.) At this stage of the litigation, Plaintiffs are not required to present further "detailed factual allegations." *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Thus

conclusions as a matter of law cannot be drawn on such fact-specific factors as the volume and proximity of the recorded conversations, actions taken by speakers to protect their privacy, need for technological enhancements, and location of the conversations. *See Kee*, 247 F.3d at 213-15. This is especially true here where Plaintiffs have no information about the sensitivity of Plaintiff's recording device.  It is plausible that the device was more sensitive than the human ear; just because the device was worn on Chris Gaubatz's person does not mean the device was only able to pick up conversations in earshot, as assumed by Defendants. (Defs.' Memo. 13.)  It is also plausible, in light of the sheer volume of conversations recorded by Gaubatz (51 discs), that much of what he recorded was merely picked up when he temporarily passed by others; the speakers may have still enjoyed a subjective expectation of privacy in the conversations while unpaid interns like Gaubatz passed by in the hallway. *See Kee*, 247 F.3d at 213-15 (factors (2) and (6), which relate to potential of others to hear conversation and location of conversation relative to subjective expectation of communicators).

Further, it cannot be said at this stage of the litigation that Plaintiffs have failed to state any facts plausibly supporting a "reasonable" expectation of privacy; reasonableness is a highly fact-specific inquiry. *United States v. Smith*, 978 F.2d 171, 180 (5th Cir. 1992). Whether there is a reasonable expectation of privacy is a "case-by-case" inquiry, especially in the context of the workplace.  *O'Connor v. Ortega*, 480 U.S. 709, 718 (1987).  Because the reasonableness inquiry is so fact-intensive, the Court should decline to decide this issue as a matter of law.

Finally, it bears emphasizing that Defendants' arguments as to why there was no reasonable expectation of privacy here are nonsensical because they render the "one-

party consent rule" meaningless.  Defendants assume that Chris Gaubatz was in very close proximity to every conversation he recorded and thus there was no reasonable expectation of privacy.  (Defs.' Memo. 13.)  However, Chris Gaubatz's presence for a recorded conversation cannot preclude the possibility that the conversants enjoyed a reasonable expectation of privacy; this would render meaningless the "one-party consent rule," an exception under which a person is allowed to record conversations if they are party to them. 18 U.S.C. § 2511(2)(d).  In short, in order to give meaning to the one-party consent rule, there must be situations in which the persons whose conversation is recorded enjoy a reasonable expectation of privacy from being recorded despite the presence of an outside party to the conversation.  Thus even if Chris Gaubatz were close to every conversation he recorded, this does not negate any reasonable expectation of privacy held by the speakers.

> *2. The one-party consent rule does not bar Plaintiff's claims based on any of the recorded oral communications.*

Defendants' arguments that the interceptions at issue in this case are not actionable because they fall under the "one-party consent rule" must also fail. Under the statute, "[i]t shall not be unlawful. . . for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication . . . unless such communication is intercepted for the purpose of committing any criminal or tortious act. . . ." 18 U.S.C. § 2511(2)(d). Plaintiffs have adequately pled that (a) Chris Gaubatz was not party to many of the conversations he

15

recorded and (b) the recordings were all made in order to commit tortious acts, and therefore the ECPA claims cannot be dismissed pursuant to the one-party consent rule.

### a. Plaintiff has adequately pled facts from which it can be concluded that Defendant Chris Gaubatz was not a party to many of the recorded conversations.

Defendants assume that because Gaubatz recorded these conversations with a device on his person that he was a party to all of these conversations. Plaintiff has pled that Gaubatz was not a party to all of these conversation. (Second Amd. Compl. ¶72.) Just because Defendant's recording device was on his person does not mean he was even in the same room as those participating in the conversation; for instance, he may have been concealing himself outside of the door, concealing himself inside the room, or temporarily passing by. And as noted above, the strength of Gaubatz's recording device and to ability to magnify audio inputs is as yet unknown.

Defendants' argument consists largely of two pages of language borrowed verbatim from *Pitts Sales, Inc. v. King World Prods.*, 383 F. Supp. 2d 1354 (S.D. Fla. 2005). In *Pitt Sales*, the court explained that an on-person recording device that required a person to stand very close to the persons having the conversation meant that the recorder was party to the conversations and the "one-party consent rule" barred Plaintiff's claims. *Pitt Sales* is not the applicable law. Other courts have utilized a broader and more commonsense approach to what constitutes being a "party" to a conversation. For instance, "a party to the conversation is one who *takes part in* the conversation." *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010) (emphasis added).

16

Even if *Pitt Sales* were applicable, that decision was based on evidence of the strength of the recording device strapped to the defendant in that case. *Pitt Sales*, 383 F. Supp. 2d at1360("[T]he communications intercepted had to occur relatively close to Yule to be picked up by his microphone.") Here, at this early stage of the litigation, it cannot be ascertained whether Chris Gaubatz's recording device was so weak that it required him to stand very close to those conversing and essentially be party to those conversations. Plaintiffs were not required to plead the precise strength of the recording device as "detailed factual allegations" are unnecessary. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  The factual allegations in the Second Amended Complaint plausibly give rise to the inference that Chris Gaubatz was not a party to many of these conversations, (*see* Second Amd. Compl. ¶72), including that he eavesdropped on private conversations without permission, (*id.* ¶43), and that he had no authorization to record any meetings, (*id.* ¶63). In short, taking the factual allegations in the Second Amended Complaint as true, Plaintiffs have pled that Gaubatz was not party to the conversations he recorded.

### b. Plaintiff has adequately pled facts from which it can be concluded that Defendant Chris Gaubatz recorded oral communications for the purpose of committing tortious acts.

Even if Defendant Chris Gaubatz was a party to any of the oral communications he recorded, ECPA liability is available because the recordings were made in order for Gaubatz to breach his fiduciary duties and for CSP Defendants to tortiously interfere with Gaubatz's confidentiality agreement with Plaintiffs. If a defendant intercepted oral

communications for the purpose of committing any criminal or tortious acts, it is irrelevant whether they were a party to the communications that were recorded. 18 U.S.C. § 2511(2)(d). Plaintiff has pled that all of the communications in this case that were intercepted in this case were for the purpose of committing tortious acts, and therefore no part of Plaintiff's Federal Wiretap Act claims should be dismissed.

In particular, Defendants' arguments concerning breach of fiduciary duties miss the mark. (Defs.' Memo 17-18.) Defendants argue that while this Court found that Plaintiff has stated a claim for breach of fiduciary duties, because that claim is not distinct from the recording, Gaubatz did not make any recordings for the purpose of committing tortious acts.  However, Defendants overlook the fact that Gaubatz's dissemination of information about CAIR's business affairs through a book, blog, and website was itself a breach of his fiduciary duties.  (*See* Second Amd. Compl. ¶¶47-59.) As this Court acknowledged in its June 24, 2011 Memorandum Opinion, "[d]uring the course of his internship, [Chris Gaubatz] sought to collect information about Plaintiffs and their employees with the intention of publicly disclosing that information for profit and in order to case Plaintiffs in a negative light." (Mem. Op., June 24, 2011, at 4.) This Court has also explained that deciding the existence of a fiduciary relationship requires "a searching inquiry into the nature of the relationship, the promises made, the type of services or advice given and the legitimate expectations of the parties." *Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C. Cir. 1996) (cited in Mem. Op. at 45-46). As such, this Court has already decided that Plaintiff has adequately pled that Chris Gaubatz owed some fiduciary duty to Defendants based upon a "higher level of trust than is normally present." (Mem. Op. 47.) Plaintiff has also adequately pled that this encompassed a duty

18

not to publicly disclose or disseminate confidential business or proprietary information learned behind closed doors. (Second Amd. Compl. ¶30, 33, 64.)

In addition, Plaintiffs have brought a claim against CSP Defendants for tortious interference with contract. "To prevail on a claim of tortious interference with contract, a plaintiff must establish: (1) the existence of a contract, (2) defendant's knowledge of the contract, (3) defendant's intentional procurement of the contract's breach, and (4) damages resulting from the breach." *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 325 (D.C. 2008) (internal quotations omitted). Plaintiffs have adequately pled that the recordings were made for the purpose of CSP Defendants tortiously interfering with Chris Gaubatz's nondisclosure agreement by inducing him to disclose the recordings. Gaubatz and Plaintiffs had a contract under which it was forbidden to reveal confidential and proprietary information, (Second Amd. Compl. ¶30), Gaubatz told CSP Defendants about this contract, (*id.* ¶31), CSP induced Gaubatz Defendants to hand them 51 audio recordings, some containing confidential information, (*id.* ¶¶44, 66), and as a result Plaintiffs suffered losses in the value of their proprietary information, (*id.* ¶65).

In short, Plaintiffs have pled that the recordings were made for the further purpose of wrongfully disclosing sensitive conversations. Because Plaintiffs have pled that Chris Gaubatz recorded oral communications for the purpose of breaching his fiduciary duties and CSP tortiously interfering with the nondisclosure agreement, the "one-party consent rule" does not bar any of Plaintiffs' claims.

## II. Count II adequately pleads a claim under the SCA against all Defendants and against Defendant CSP in particular.

Defendants also argue that Count II of Plaintiffs' Second Amended Complaint, for violations of 18 U.S.C. § 2700, *et seq.*, commonly referred to as the "Stored Communications Act" (hereinafter "SCA"), must be dismissed against CSP Defendants because the statute does not provide for "secondary liability." The SCA provides for liability against anyone who "intentionally accesses without authorization a facility through which an electronic communication service is provided" or "intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a). A person aggrieved under this section may bring a civil action against those who engaged in the violation against them with a "knowing or intentional state of mind." *Id.* 18 U.S.C. § 2707(a).

Defendants have cited to authority in other circuits holding that the SCA does not provide liability for those who aid and abet or conspire to steal stored electronic communications. *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004-05 (9th Cir. 2006). However, the case law drawn on by Defendants is not on point here. In *Freeman*, the Ninth Circuit declined to find secondary liability based on 18 U.S.C. § 2702, a section that specifically governs the behavior of electronic service providers. *Id.* That Court based its decision largely on the fact that "[s]ection 2702 by contrast identifies a particular group--electronic service providers--and then specifies the limited circumstance that, as a result of § 2707, will subject that particular group to liability." *Id.* at 1009. In contrast, the theory of liability in this case is based on § 2701(a), a section that provides liability against *anyone* who obtains unauthorized access to electronic storage. The narrow rationale of *Freeman* is thus inapplicable here.

In addition, Plaintiffs have adequately pled a claim against Defendant CSP for primary liability under the SCA: the factual allegations in Plaintiffs' pleadings give rise to the plausible inference that CSP obtained Plaintiffs' stored electronic communications through its agent Chris Gaubatz. A party may be liable under the SCA if it directs its agent to undertake unauthorized access to stored emails. *See Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967, 978 (M.D. Tenn. 2008). *See also Butera & Andrews v. IBM Corp.*, No. 1:06-CV-647, 2006 U.S. Dist. LEXIS 75318, at *22-24 (D.D.C. Oct. 18, 2006) (corporate defendant may be liable for SCA violations where it "knew and approved of" its agent's unauthorized access to plaintiff's computer storage). As explained in Section I.A.2 *supra*, the Second Amended Complaint pleads that Gaubatz and CSP had an agreement under which Gaubatz would infiltrate and steal documents and emails and record conversations from Plaintiffs in order to turn them over to CSP, and thus Plaintiffs have pled the existence of an agency relationship between these two defendants. The scope of this relationship included gaining unauthorized access to Plaintiffs' emails, and thus CSP is directly liable for this access to stored emails. Because the facts in the Second Amended Complaint plausibly establish that SCA directed its agent Chris Gaubatz to steal Plaintiffs' stored emails, Plaintiffs have stated a plausible SCA claim against Defendant CSP.

**III. Plaintiffs' D.C. Wiretap Act claims have been pled adequately and should not be dismissed.**

Defendants' arguments for dismissal of the D.C. Wiretap Act claims, *see* D.C. Code § 23-541, *et seq.*, are all arguments that were made for dismissal of the federal

statutory claims; this is based on the close similarities between the federal and D.C. statutes. *Napper v. United States*, 22 A.3d 758, 767 (D.C. 2011). Specifically, Defendants argue that Plaintiffs had no reasonable expectation of privacy in their private discussions, that Defendant Chris Gaubatz was a party to the communications that were recorded, and that the conversations were not recorded for any tortious purpose. (Def.'s Mot. 25-26.) For the reasons discussed in Section I *supra*, these arguments must be denied.

One way in which the D.C. and federal statutes differ is that the D.C. statute includes a broader exception to the "one-party consent rule." In addition to interceptions made for the purpose of committing criminal and tortious acts, the D.C. law also provides for liability when the interception was made for the purpose "of committing any other injurious act." D.C. Code § 23-542(b)(3).  CSP Defendants extensively cite *Boddie v. Am. Broad. Cos.*, 881 F.2d 267 (6th Cir. 1989) for the proposition that this exception is unconstitutionally overbroad. But because Plaintiffs have pled that the recordings were made for the purpose of committing the tortious acts of breach of fiduciary duty and tortious interference with contract, *see* Section I.B.2.b *supra*, deciding the constitutionality of the injurious act exception is unnecessary.

## CONCLUSION

For the foregoing reasons, CSP Defendants' Motion to Dismiss must be denied in its entirety.

Respectfully Submitted,

/s/ Nadhira Al-Khalili
Nadhira Al-Khalili (Bar No. 997827)
Council on American-Islamic
Relations
453 New Jersey Avenue, S.E.
Washington, DC  20003
(202) 646-6034 (Phone)
nalkhalili@cair.com
*Counsel for Plaintiffs*

Date: October 11, 2011

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of October 2011, true and correct

copies of the foregoing were served via ECF upon all counsel of record.

/s/   Nadhira Al-Khalili
Nadhira Al-Khalili, Esq.