**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS ACTION NETWORK, INC., *et al*., <br><br> Plaintiffs, <br><br> -v.- <br><br> PAUL DAVID GAUBATZ, *et al*., <br><br> Defendants. | CIVIL NO: 1:09-cv-02030-CKK-JMF |

**REPLY BRIEF**

**MEMORANDUM OF POINTS & AUTHORITIES**

**IN SUPPORT OF**

**MOTION TO DISMISS**

**COUNTS I & II**

I.   **Introduction.**

Plaintiffs begin their opposition to CSP Defendants' motion to dismiss by way of a suspect legal argument that mischaracterizes both the substance and precedential value of *obiter dicta* in cases they assert challenge the only extant federal rulings on "procurement" civil liability under Title I ("the Federal Wiretap Act") and secondary liability under the Stored Communications Act ("SCA") codified under Title II of the Electronic Communications Privacy Act of 1986 ("ECPA") (18 U.S.C. §§ 2510-2712). Apparently recognizing the inherent weakness of their "legal" arguments, Plaintiffs fashion an entirely new theory of liability—*respondeat superior*—by attempting to rewrite the Second Amended Complaint with a whole new mosaic of unsupported factual allegations, which lack even a remote basis in reasonable inferences drawn from the facts as actually alleged. For the reasons set forth in the motion to dismiss and as reinforced herein, the court should grant the motion and dismiss with prejudice Counts I and II against all CSP Defendants.

II.   **There Is No Civil Liability either for "Procurement" or for Conspiracy or Aiding & Abetting under Title I of the ECPA.**

Plaintiffs argue that this court should ignore the plain language of the civil liability provision of the Federal Wiretap Act and the prevailing case law to rewrite and to re-amend by judicial fiat the federal law to provide a private right of action for a "procurement" violation. (Pls.' Mem. at 3-10). To make this argument, Plaintiffs must distort the plain language of the amended statute and argue that it includes civil liability for procurement, when in fact it does not. As the Fifth Circuit made clear in *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158 (5th Cir. 2000), the plain language of the amended statute excludes procurement liability, and this was the result of specific Congressional action. Plaintiffs attempt to debase *Peavy*'s lengthy and well-reasoned opinion ***and holding*** by making an impossible argument about a "natural reading" of the statute,

and by further arguing that the verb "to procure" was deleted from the statute because it somehow does not fit Plaintiffs' understanding of the implied intent of Congress.[1] (Pls.' Mem. at 6).

In their beleaguered effort to undermine both the sound reasoning of the Fifth Circuit's *Peavy* holding and its precedential value, Plaintiffs also choose to ignore decisions in district courts from the Third, Fourth, Ninth, and Tenth Circuits, all of which cite to *Peavy* authoritatively for the proposition that the post-amendment civil liability provision of Title I (18 U.S.C. § 2520) no longer provides for procurement civil liability. *See Christie v. Borough of Folcroft*, No. 04-5944, 2005 U.S. Dist. LEXIS 21569 (E.D. Pa. Sept. 27, 2005); *Buckingham v. Gailor*, No. CCB-00-1658, 2001 U.S. Dist. LEXIS 24779 at *21-*22 (D. Md. Mar. 27, 2001); *In re Toys R Us, Inc., Privacy Litig.*, No. M-00-1381, 2001 U.S. Dist. LEXIS 16947 at *20-*22 (N.D. Cal. Oct. 9, 2001); *Kirch v. Embarq Mgmt. Co.*, No. 10-2047, 2011 U.S. Dist. LEXIS 92701 (D. Kan. Aug. 19, 2011). Indeed, in *Buckingham*, the court pointed out that the Fourth Circuit had allowed procurement civil liability under the pre-amendment statute but that this was no longer the rule post-amendment and cited to *Peavy* authoritatively. *Buckingham,* 2001 U.S. Dist. LEXIS 24779 at *21-*22.

Plaintiffs then attempt, rather imprudently, to rely on *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427-28 (E.D.N.Y. 2006), *Tapley v. Collins*, 211 F.3d 1210, 1213 (11th Cir. 2000), and *Noel v. Hall*, 568 F.3d 743, 748-49 (9th Cir. 2009), to buttress their position. While there is no question the *Lonegan* court did not agree with the view of the Fifth Circuit or of the other district

---

[1] Indeed, there is nothing that would have prevented Congress from including in its litany of civil violators any person who "procured" a communication in violation of the Act. Indeed, Congress expressly chose not to do so. Plaintiffs' claim that "[t]he word 'procure' does not fit naturally in this list [of potential violators] because it cannot modify the word 'communication'" is simply and grammatically incorrect (*see* Pls.' Mem. at 6), and it provides no basis for a court to imply a cause of action that Congress expressly excluded.

courts which have dealt with this issue in the Third, Fourth, Ninth, and Tenth Circuits, the *Lonegan* court's view of procurement liability was *dicta* because it ultimately held that the plaintiffs' complaint alleged a *direct* wiretap violation, and it was on this expressed basis that the court upheld the Title I claim.[2]  *Lonegan*, 436 F. Supp. 2d at 428 ("But even if Congress did eliminate the private right of action against those who procure the interception of protected communications, plaintiffs' Wiretap Act claims cannot be dismissed.  As an alternative to their procurement theory of liability, plaintiffs assert that Hasty intercepted their communications directly. Therefore, even if the procurement theory fails, the direct interception theory is sufficient to support the claims.").

Yet more attenuated and suspect is Plaintiffs' reliance on *Tapley*.  The *Tapley* court did not confront a claim for procurement liability.  It dealt with qualified immunity for government officials and only mentioned the word "procures" because it was quoting from the statute.  The reference to procurement in *Tapley* does not even rise to the level of *dicta*; it is merely a passing reference to the overall scope of the statute.  *Tapley*, 211 F.3d at 1213.  Plaintiffs' citation to *Tapley* is badly misplaced, at best.

Plaintiffs' citation to *Noel* is similarly misplaced.  In *Noel*, the Ninth Circuit rejected a claim of procurement liability because it held there was no illegal interception of an oral communication in the first instance (*i.e.*, simply asking someone to replay a recorded conversation is not an interception).  *Noel*, 568 F.3d at 748-49.  That is, the court did <u>not</u> address the procurement question because it did <u>not</u> have to for its decision.  The court in *Noel* was exercising precisely the judicial restraint required of an appellate court by ruling on the first issue before it dispositively (*i.e.*, there was no interception) and thus not opining on what necessarily

---

[2] The tenuous nature of the court's *dicta* in *Lonegan* is further highlighted by its own qualifying language, which began as follows: "To me, . . . ."  *Lonegan*, 436 F. Supp. 2d at 428.

became a moot issue (*i.e.*, procurement). Plaintiffs' use of this holding as supportive of procurement liability is once again misplaced and an overt overreaching.[3]

Apparently recognizing their tenuous grasp at the thinnest of judicial straws, none of which have relevance or precedential value, to overcome the logic and holding in *Peavy* (or, for that matter, the district court decisions from the Third, Fourth, Ninth, and Tenth Circuits, all of which have accepted *Peavy*'s holding as authoritative), Plaintiffs take an entirely new tact—they attempt to rewrite the Second Amended Complaint and to do so in a way that not only doesn't flow inferentially from the allegations, but actually contradicts the now twice amended allegations. Thus, Plaintiffs *now* ask this court to conclude that CSP Defendants are liable under the Federal Wiretap Act <u>not</u> for procurement, nor even conspiracy or aiding and abetting, but as masters of CSP Defendants' newly anointed servant, Defendant Chris Gaubatz, under a theory of *respondeat superior*. (Pls.' Mem. at 10-11).

---

[3] It is worth noting, if only by footnote, two comments by Plaintiffs in their opposition that in one instance literally misrepresents what CSP Defendants have stated in their motion, and in another, mischaracterizes it. In the former instance, Plaintiffs write, "Defendants' statement that the federal courts unanimously agree with *Peavy* on this issue, (Defs.' Memo. 9), is flatly incorrect." (Pls.' Mem. at 7). Contrary to Plaintiffs' assertion, at page 9 of the motion to dismiss, CSP Defendants are making the point that all courts that have addressed *secondary liability*—not procurement liability—have held unanimously that there is no private right of action for *secondary liability* (*i.e.*, conspiracy or aiding and abetting). (In fact, as discussed in the text below, Plaintiffs do not contest this point and effectively concede that CSP Defendants cannot be liable for conspiracy or aiding and abetting under Title I.) But, even had CSP Defendants been referring to procurement liability at page 9 of their motion, the statement would still have been correct precisely because all of the courts that have actually *ruled* on the question of procurement liability "have **ruled** negatively on the claim." The *Lonegan* court expressly did not base its ruling on its *dicta*, and the *Tapley* and *Noel* cases are neither rulings nor even *dicta* on this point.

  The second instance of mischaracterization appears at footnote 2 of Plaintiffs' opposition. (Pls.' Mem. at 10, n.2). There, Plaintiffs feign puzzlement at the motion's citation to Judge Easterbrook's opinion in *Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003). Yet, the motion was clear that it was the logic of the Seventh Circuit's opinion, and, indeed, its citation to *Peavy* that made it quite relevant to the analysis. There was no suggestion that it was cited as simply dispositive of the issue. Indeed, *Peavy* carries that burden quite well. (CSP Defs.' Mot. at 7-8).

But before addressing these freshly discovered *ad hoc* facts and newly minted legal theory, it is important to note two concessions by Plaintiffs. First, Plaintiffs make absolutely no attempt to counter CSP Defendants' points and authorities on the lack of secondary liability for conspiracy or aiding and abetting under the Federal Wiretap Act. (CSP Defs.' Mot., § I.B. at 8-9). Given the unanimous case law cited in the motion holding that Title I does not include a civil cause of action for secondary liability, this retreat was tactically prudent. Thus, given the case law and Plaintiffs' failure to even address these arguments, this court should dismiss any claim of secondary liability under Title I. *See Perry v. Snowbarger*, 590 F. Supp. 2d 90, 94 (D.D.C. 2008) (Kollar-Kotelly, J.) ("In addition, Plaintiff failed to respond to this argument in his Opposition, and in this district, when 'a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded.'").

Second, and similarly, Plaintiffs chose not to respond to CSP Defendants' argument that Plaintiffs failed to allege any facts giving rise to direct liability for "disclosure" or "use" of illegally obtained intercepts under the Federal Wiretap Act <u>*except for the single allegation that CSP Defendants provided a compilation of the audio-video tapes to a third-party, Joseph Farah*</u>, and that any claim against CSP Defendants for secondary liability arising out of the Gaubatz Defendants' use and disclosure of these audio-video tapes is precluded insofar as secondary liability is generally foreclosed. (CSP Defs.' Mot. at pt. (4) at 2, n.4 at 5, n.7). Thus, the *only* remotely possible extant claim of direct liability, if there is in fact any liability for CSP Defendants under Title I, is for the *single* allegation in the Second Amended Complaint that CSP Defendants provided Farah with a compilation of the tapes at issue. (Compl. at ¶ 47). However, as addressed more fully in the motion and directly below in Section III, that claim fails as well.

We turn now to Plaintiffs' newly crafted claim of *respondeat superior*. We first address this claim as a legal proposition and then as a factual matter. Recognizing that CSP Defendants cannot be liable for Defendant Chris Gaubatz's alleged violations of the Federal Wiretap Act via procurement liability or secondary liability (*i.e.*, conspiracy or aiding and abetting), Plaintiffs desperately seek to rewrite the facts of the Second Amended Complaint in ways that literally contradict the explicit allegations in order to invoke a new legal theory that would render CSP Defendants vicariously liable for Defendant Chris Gaubatz's alleged violations of the Federal Wiretap Act.

Plaintiffs begin their argument with the legal proposition that "[u]nder vicarious liability doctrine, a principal is liable for the actions of its agent." (Pls.' Mem. at 10). As the cases cited by Plaintiffs for this proposition make clear, this relationship is more than one between two contracting parties. Indeed, the critical element is that the principal must **direct and control the actions of the agent** (sometimes referred to as the master-servant relationship and almost always applied in the employer-employee arena). In the District of Columbia, vicarious liability is almost exclusively found in the quintessential relationship of direction and control—employer-employee context—as illustrated by the cases cited by Plaintiffs. *Convit v. Wilson*, 980 A.2d 1104, 1114 (D.C. 2009) (employer-employee); *District of Columbia v. Coron*, 515 A.2d 435, 437 (D.C. 1986) (same); *Jackson v. Loews Wash. Cinemas, Inc.*, 944 A.2d 1088, 1097 (D.C. 2008) (same). And, by way of explication, the Restatement makes clear that the ubiquitous independent contractor might be an agent of the contracting-principal, but that won't lead to vicarious liability for the acts of the independent contractor, even if conducted in furtherance of the contract, because the independent contractor is not subject to direction and control. Rest. 2d of Agency § 2, comment (a) ("The great mass of persons who act for others but who are not an

integral part of the business establishment and who are used as the need arises—the factor, the broker, the non-resident selling agent, the lawyer—all of such persons who are not under the immediate eye of the head of the business and who normally operate independent enterprises, obviously do not fall within the group of business intimates.").

Thus, it is incumbent on Plaintiffs to point to some factual allegation giving rise to a master-servant/employer-employee relationship where the principal controls and directs the agent. Without allegations of direction and control, or at least a reasonable inference of such, the newly concocted claim of a master-servant relationship giving rise to vicarious liability is hardly plausible. If every contractual relationship could be magically converted by mere assertion in a plaintiff's opposition brief to the intimacy required between employer and employee where direction and control are the essence and *sine qua non* of the relationship, the distinction between an independent contractor and a servant-agent would be lost at the pleadings stage and mere "possibility" would be merged into the "plausible," surrendering any effect or usefulness and effect of *Twombly-Iqbal*.[4]  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), on the important distinction between merely "possible" and "plausible").

This leads the analysis of Plaintiffs' newest theory of vicarious liability to the following two-stage query: are there any factual allegations giving rise to a master-servant/employer-

---

[4] As the Court noted in *Twombly*, stating a claim under the restraint of trade provision of the Sherman Act requires a complaint with enough factual matter, taken as true, to suggest that an *agreement* was made. *Twombly,* 550 U.S. at 556. An allegation of parallel business conduct and a bald assertion of conspiracy are not sufficient to state a claim under this provision of the Act. *Id*. The Court observed that parallel business conduct, without more, does not suggest a conspiracy, and a conclusory allegation of agreement at some unidentified point in time does not supply facts adequate to show illegality. *Id*. at 556-57. Similarly here, the mere assertion of the existence of a contract or an agreement, without more, does not supply facts adequate to show the master-servant relationship required to properly allege liability under a *respondeat superior* theory.

employee relationship as opposed to merely a contractual relationship? And, if not, are there reasonable inferences of the requisite direction and control flowing from the extant allegations? The answer to the former query—whether there are any factual allegations giving rise to an employer-employee relationship—is answered rather easily. No. Indeed, Plaintiffs' listing of factual allegations that they believe permit such a claim manifestly lacks any assertion of employer-employee relationship or any form of direction or control. Rather, Plaintiffs seek to have the court read inference upon inference upon inference. In the Plaintiffs' own words:

> The facts pled in the Second Amended Complaint establish a plausible ECPA claim against Defendant CSP under the theory that it employed Defendant Chris Gaubatz as its agent and directed him to intercept oral communications. Several facts support a finding that CSP and Chris Gaubatz consented to a principal-agent relationship, including Gaubatz's delivery of stolen documents to CSP pursuant to a prior agreement, (Second Amd. Compl. ¶4), Gaubatz and CSP being party to an agreement for Gaubatz to pursue an internship with Plaintiffs under an assumed identity and steal confidential documents and record oral conversations, (*id.* ¶19), and Chris Gaubatz and CSP being party to at least two written agreements for Gaubatz to give CSP documents stolen from Plaintiffs, (*id.* ¶35). These facts also support a plausible inference that Gaubatz's activities were subject to CSP's control; such an inference is also supported by Gaubatz informing CSP of the confidentiality agreement he signed with Plaintiffs, (*id.* ¶31), and Gaubatz and his father giving documents and at least 51 discs of recordings of oral communications to CSP, (*id.* ¶44). Thus, the pleadings support a plausible principal-agent relationship between CSP and Chris Gaubatz.

(Pls.' Mem. at 11). Not only are there no facts of the requisite direction or control, none of the allegations in ¶¶ 4, 19, 31, 35, or 44 go beyond a mere contractual or conspiratorial agreement between and among CSP Defendants as one co-equal party, Defendant Dave Gaubatz as a second co-equal party, and Defendant Chris Gaubatz as a third co-equal party. According to these allegations, the parties agreed to have Defendant Chris Gaubatz work as an intern and engage in certain illicit behaviors. Notably and quite expressly, the language in each of these allegations is of an agreement among and between equal conspirators. In other words, for the court to conclude that CSP Defendants were Defendant Chris Gaubatz's master, the court would

– 8 –

have to begin the inferential chain by inferring (1) that the contract was not a standard independent contractor contract for services, but something more. The problem with this inference is that it is simply not reasonable in that nothing even remotely suggests anything but a contract for services. Next, the court would have to infer from this "something more" that (2) the contract specifically created a hierarchical relationship that made Defendant Chris Gaubatz an employee working under one of the other parties' direction and control. This second-level inference is less reasonable than the first in that the Second Amended Complaint is about a conspiracy, not an employment agreement. In fact, Plaintiffs called it a conspiracy at ¶ 44 ("In accordance with and ***in furtherance of Defendants' conspiracy***, Defendants Chris Gaubatz and Paul David Gaubatz delivered documents and at least 51 discs containing recordings, or copies thereof, to Defendants CSP and Brim at CSP's offices in the District of Columbia.") (emphasis added). The fact that Plaintiffs expressly alleged a conspiracy flatly contradicts an employer-employee relationship by virtue of the intracorporate conspiracy doctrine. *See, e.g., Tabb v. District of Columbia*, 477 F. Supp. 2d 185, 190 (D.D.C. 2007) (holding that the intracorporate conspiracy doctrine "states that a corporation cannot conspire with its employees, and its employees, when acting within the scope of their employment, cannot conspire among themselves").[5] And, finally, Plaintiffs expect the court to infer from the first two inferential steps yet another: (3) that it was CSP Defendants who controlled Defendant Chris Gaubatz's conduct, not Defendant Dave Gaubatz.

While anything is "possible," the fact that the Second Amended Complaint expressly

---

[5] It is one thing to allege alternate theories of liability based upon consistent factual allegations in a complaint; it is quite another to ask the court to ***infer facts that directly contradict the facts as alleged.*** This, CSP Defendants suggest, is the quintessential unreasonable inference. *See, e.g., Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 218 (D.C. Cir. 1999) (holding that alleging alternative legal theories on the same and consistent facts is permitted).

alleges a conspiracy of equal tortfeasors, the inferential leaps required to conclude that CSP Defendants were the masters of Defendant Chris Gaubatz, contradicting the factual allegations of a conspiracy among equals, is precisely that which *Twombly-Iqbal* intended to foreclose by requiring "plausibility." As such, CSP Defendants respectfully ask the court to reject this novel and contradictory theory that co-conspirators are magically converted to masters and servants by virtue of the conspiratorial agreement.

One final point regarding the weakness of this vicarious liability theory is necessary. The fact that Plaintiffs concocted this theory out of whole cloth and on-the-fly is evidenced by the fact that Plaintiffs apply the theory to <u>all</u> CSP Defendants—equally. Yet, it is patently absurd to claim that the employees of Defendant CSP (*i.e.*, Defendants Brim, Savit, and Pavlis) somehow became co-employers of Defendant Gaubatz based upon the allegations before this court.

The result of the foregoing analysis examining "procurement" liability, secondary liability, and vicarious liability is that Plaintiffs have simply failed to carry their burden of alleging any valid claim for a violation of the Federal Wiretap Act except for the remote possibility of a direct liability disclosure violation arising from the *single* allegation of disclosure of illegal intercepts to a third-party, Joseph Farah. And, as such, CSP Defendants ask the court to dismiss with prejudice all claims of liability under the Federal Wiretap Act pursuant to the theories of procurement liability and secondary liability and further ask this court to deny Plaintiffs' attempt to redraft the Second Amended Complaint to include vicarious liability utilizing the doctrine of *respondeat superior*—a theory directly at odds with a conspiracy complaint.

We now turn to the only remaining possible claim of direct liability—the disclosure of the compilation of audio-video tapes to Farah.

### III. There Is No Direct Liability for "Use" or "Disclosure" to a Third-Party because Plaintiffs Have Failed to Allege the Requisite Elements of any Violation of Title I.

Plaintiffs begin their defense of a primary violation of Title I of the Federal Wiretap Act by arguing that the recordings of oral conversations amounted to prohibited "oral communications" as defined by 18 U.S.C. § 2510(2). (*See* Pls.' Mem. at 11-17). To get there, Plaintiffs must ask this court to infer, once again, that allegations that say nothing of the content of the conversations, or even of their context beyond the fact that they were conducted at Plaintiffs' offices and recorded by a device on Defendant Chris Gaubatz's person, are sufficient to permit the court to conclude that the interlocutors had a reasonable expectation of privacy. But Plaintiffs can point to no allegations beyond the one alleging that the conversations were "pertaining to [the interlocutors'] affairs and activities." (Pls.' Mem. at 13) (quoting Compl. at ¶ 42). This allegation says nothing about whether these "affairs and activities" were private or confidential. Indeed, Plaintiffs' reference to the alleged confidentiality agreement does not advance their argument because, as argued in the motion, nowhere does the Second Amended Complaint remotely allege that the taped conversations were related to any of the confidentiality agreement's protected information. This, again as noted in the motion, stands in stark contrast to explicit allegations that Defendant Chris Gaubatz took *documents* specifically marked confidential or of a confidential nature. (CSP Defs.' Mot. at 12-13, n. 9).

Finally, although Plaintiffs attempt to punt this ball down the discovery road by claiming any analysis of the reasonable expectation of privacy of the interlocutors requires a fact intensive inquiry (facts which do not exist in the Complaint, by the way) (Pls.' Mem. at 13), Plaintiffs fail to confront the brute facts that they have been in possession of all of the recordings, have listened and watched the audio-tapes, and have had access to their own employees for more than nine months before filing the Second Amended Complaint. Indeed, Plaintiffs control the fact

reservoir and most assuredly could have and should have alleged *some* content or context about those oral conversations that would suggest a reasonable expectation of privacy, if one existed. The fact that Plaintiffs are now relying on unreasonably fact-deprived inferences should, under *Iqbal-Twombly*, preclude this leap of faith. To the extent that Plaintiffs have failed to satisfy the primary predicate for a Federal Wiretap Act violation—an intercept of an "oral communication"—CSP Defendants respectfully ask this court to dismiss Count I of the Second Amended Complaint in its entirety.

Even assuming Plaintiffs survive the first level analysis of a "reasonable expectation of privacy," Plaintiffs must still find a way around the congressionally mandated one-party consent rule. (*See* CSP Defs.' Mot. § I.C.2.-3. at 14-24). In their opposition, Plaintiffs first attempt to argue that *Pitts Sales, Inc. v. King World Prods.*, 383 F. Supp. 2d 1354, 1361-62 (S.D. Fla. 2005), which confronted identical facts to those alleged in the Second Amended Complaint (*i.e.*, that a defendant who recorded conversations while present is in fact a party to the conversations for purposes of the one-party consent rule) doesn't apply because the court in *Pitts* concluded that the defendant was close enough to the conversation to be a "party." (Pls.' Mem. at 16). But, in *Pitts*, the court concluded that the defendant was close enough to be a party to the conversation <u>because he wore the device "on his person,</u>" precisely as in this case. *Id*. at 1361.

Moreover, as noted above, Plaintiffs have had the audio-*video* recordings for more than nine months before filing the Second Amended Complaint. The video along with the audio provides a unique opportunity to determine the strength of the recording device and Defendant Chris Gaubatz's proximity to the conversations recorded. The fact that Plaintiffs have failed to allege even a *single* instance of a remote or distant recording is fatal to their plea for inferences that belie the explicit factual allegations of a recorder placed "on his person."

Finally, Plaintiffs inappropriately cite to *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010), for the proposition that "a party to the conversation is one who *takes part in* the conversation." (Pls.' Mem. at 16). This is misleading in the extreme. In *Caro*, the court confronted an argument by the plaintiff that even though the defendant participated in the conversations, he was not actually invited to do so and the one-party consent rule only applied if the defendant was invited to be a participant. In response to this argument, the court concluded that the defendant satisfied the "party" condition because he participated, thus negating an "invitation" requirement. Thus, the court's ruling hardly limited the "party" condition to actual participants; rather, the court held only that a participant was most certainly a party whether invited or not.

Quite simply, Plaintiffs have utterly failed to provide any basis to reject the analysis and holding of *Pitts* or to counter their own allegations in the Second Amended Complaint or the commonsense understanding that if the audio-video tapes had evidenced some remote or secret recording, Plaintiffs had nine months to make that case by alleging *facts* to support it. They have not. Thus, the one-party consent rule applies and precludes any liability under the Federal Wiretap Act.

Finally, Plaintiffs attempt to work their way out of the one-party consent rule by asking this court to infer that Defendant Chris Gaubatz recorded the conversation "for the purpose of committing any criminal or tortious act." (Pls.' Mem. at 17-19). Plaintiffs now only rely on two "tortious" acts to satisfy this exception to the one-party rule: breach of fiduciary duty and tortious interference with contract. To begin, both of these allegations are predicated on the underlying unsupported factual assumption that the recorded oral communications contained confidential or proprietary information protected by either a fiduciary duty or the alleged

confidentiality agreement. Yet, as noted above and in the underlying motion (CSP Defs.' Mot. pt. (3) at 17-18), nowhere in the Second Amended Complaint do Plaintiffs allege even remotely that the oral conversations recorded were proprietary or confidential, the subject of a specific fiduciary duty, or covered by the alleged confidentiality agreement. Without those *minimal* factual allegations, Plaintiffs' "for the purpose of" claims fall flat and with no effect because the subsequent disclosure of the oral communications could not have violated a non-relevant fiduciary duty or confidentiality agreement. Moreover, the latter argument—that Defendant Chris Gaubatz recorded the conversations "for the purpose of" CSP Defendants' tortious interference with the alleged confidentiality agreement—is simply a *non sequitur*. How does a person record a conversation "for the purpose of" a third-party's (*i.e.*, CSP Defendants') interference with **his own** contractual relations? The answer: he can't; it's a legal impossibility. In fact, even assuming Defendant Chris Gaubatz's disclosure of the oral recordings violated the confidential agreement, the "interference," to the extent one took place, occurred coincident to, and as a result of, the recordings. That does not satisfy the "for the purpose of" requirement as explained in *Sussman v. ABC*, 186 F.3d 1200, 1202-03 (9th Cir. 1999). (*See also* CSP Defs.' Mot. at 15-16).

For all the reasons set forth above, Plaintiffs have failed to establish a direct liability violation of the Federal Wiretap Act for the disclosure of the compilation of audio-video tapes to Farah and given Plaintiffs' failure to establish either "procurement" liability, secondary liability, or vicarious liability for any conduct by CSP Defendants, this court should dismiss the Count I claims of violations of the Federal Wiretap Act in their entirety and with prejudice.

**IV.   There Is No Liability for the D.C. Wiretap Act.**

Plaintiffs' argument for liability under the D.C. Wiretap Act explicitly relies on the

arguments they posit for direct liability under the Federal Wiretap Act. (*See* Pls.' Mem. at 21-22). For the same reasons the allegations of Title I violations fail, the remaining allegations of Count I of the Second Amended Complaint for violations of the D.C. Wiretap Act must fail.

We note here that to the extent a claim under the D.C. Wiretap Act survives, any reliance on the "for the purpose of committing any other injurious act" language of D.C. Code § 23-542(b)(3) must fail because, as argued in the motion, this provision is unconstitutionally vague (CSP Defs.' Mot. at 26-28) and Plaintiffs do not oppose this aspect of the motion. Indeed, Plaintiffs expressly avoid addressing the constitutionality of this provision and rely exclusively on the arguments presented under the Federal Wiretap Act. (Pls.' Mem. at 22). As such, this issue is conceded and the court should dismiss all of Count I of the Second Amended Complaint. *Perry*, 590 F. Supp. 2d at 94 (stating that when a plaintiff fails to address an argument made in a motion to dismiss, the court may treat that argument as conceded).

**V.     There is No Liability for any Violation of the SCA.**

Plaintiffs oppose dismissal of Count II of the Second Amended Complaint, which alleges violations of the SCA. Plaintiffs' opposition rests on a rather confused effort to argue for secondary liability in the face of unanimous holdings by federal courts precluding secondary liability and vicarious liability based upon a principal-agency relationship akin to the argument Plaintiffs made for Count I. There is little reason to rehash the arguments on vicarious liability here because Plaintiffs have wholly failed to allege a principle-agency relationship with direction and control giving rise to any kind of *respondeat superior* liability under the SCA for the same reasons they failed under Count I. The allegations of the Second Amended Complaint allege nothing more than a contract and conspiracy, and no factual allegation or reasonable inference remotely supports a claim for principal-agency vicarious liability.

Plaintiffs' effort to distinguish *Freeman v. DirecTV, Inc.*, 457 F.3d 1001 (9th Cir. Cal. 2006) (negating any secondary liability under the SCA and providing extremely detailed analysis and lengthy treatment), is only generously described as confused.  Plaintiffs attempt to argue that the entire discussion of the court's holding, which dealt with the lack of secondary liability under 18 U.S.C. § 2707, the civil liability provision of the SCA, was somehow unique to the underlying violation of § 2702.  Plaintiffs next argue that since this case alleges an underlying violation of § 2701(a), the two cases are distinguishable.  This is sophomoric.  The entire thrust of the *Freeman* court's ruling is that § 2702 does not include any provision for a conspiracy or aiding and abetting violation.  The civil liability provision only authorizes civil recovery for the underlying violation, and the courts are not in the business of reading-in an implied cause of action Congress did not legislate.  That logic applies in spades to §2701(a), which prohibits only intentional acts of the primary actor, not co-conspirators or aiders and abettors.

Moreover, Plaintiffs have ignored the decisions in *Garback v. Lossing*, No. 09-cv-12407, 2010 U.S. Dist. LEXIS 99059, at *19, n.6 (E.D. Mich. Sept. 20, 2010) (finding no secondary liability under §2701 and citing *Freeman* for support); and *Jones v. Global Info. Group, Inc.*, No. 3:06-00246, 2009 U.S. Dist. LEXIS 23887, at *6-*9 (W.D. Ky. Mar. 25, 2009) (finding no secondary liability under § 2701).

In sum, there is no credible argument that secondary liability exists under the SCA or that Plaintiffs have alleged vicarious liability under a principal-agency relationship theory.  For these reasons, Plaintiffs respectfully ask the court to dismiss Count II of the Second Amended Complaint with prejudice.

V.   **Conclusion.**

For all the reasons set forth above and in the underlying motion, CSP Defendants ask the

court to dismiss Counts I and II of the Second Amended Complaint against all CSP Defendants with prejudice.

        Respectfully submitted,

        LAW OFFICES OF DAVID YERUSHALMI, P.C.

        /s/ David Yerushalmi
        David Yerushalmi, Esq. (DC Bar No. 978179)
        1901 Pennsylvania Avenue NW, Suite 201
        Washington, D.C. 20001
        david.yerushalmi@verizon.net
        Tel: (646) 262-0500; Fax: (801) 760-3901

        THOMAS MORE LAW CENTER

        /s/ Robert J. Muise
        Robert J. Muise, Esq. (Mich. Bar No. P62849)
        24 Frank Lloyd Wright Drive
        P.O. Box 393
        Ann Arbor, Michigan 48106
        Tel (734) 827-2001 / Fax (734) 930-7160
        rmuise@thomasmore.org

        *Counsel for Defendants Center for Security Policy,*
        *Christine Brim, Adam Savit, and Sara Pavlis*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2011, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically: none.

                                                LAW OFFICES OF DAVID YERUSHALMI, P.C.

                                                <u>/s/ David Yerushalmi</u>
                                                David Yerushalmi, Esq.