**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COUNCIL ON AMERICAN-ISLAMIC | ) | |
| RELATIONS ACTION NETWORK, INC., | ) | |
| et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 09-cv-2030 (CKK-JMF) |
| v. | ) | |
| | ) | |
| PAUL DAVID GAUBATZ, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF CAIR FOUNDATION'S STATEMENT OF
UNDISPUTED MATERIAL FACTS**

Plaintiff CAIR Foundation ("CAIR"), by and through undersigned counsel, hereby move

for summary judgment as to its breach of fiduciary duty claim and Federal and D.C. Wiretap

claim.  CAIR seeks summary judgment not against all Defendants but against Defendants Chris

Gaubatz ("Chris"), David Gaubatz ("David"), Christine Brim, David Yerushalmi, Center for

Security Policy ("CSP"), and the Society of Americans for National Existence ("SANE").  In

support of this motion, Plaintiff hereby submits the following Statement of Undisputed Material

Facts.

Respectfully submitted,

    /s/  Nadhira Al-Khalili
Nadhira Al-Khalili (Bar No. 997827)
Council on American-Islamic Relations
453 New Jersey Avenue, S.E.
Washington, D.C. 20003
(202) 646-6034 (Phone)
(202) 488-3305 (Fax)
nalkhalili@cair.com

**LIST OF EXHIBITS**

**Name of Exhibit**

Exhibit 1: All videos taken by Chris Gaubatz during his CAIR internship in 2008.

Exhibit 2: Brim Deposition Transcript (January 15, 2013).

Exhibit 3: Chris Gaubatz Deposition Transcript (January 10, 2013)

Exhibit 4: Center for Security Policy Transcript (January 17, 2013)

Exhibit 5: Dave Gaubatz Deposition Transcript (January 14, 2013)

Exhibit 6: DonVito Deposition Transcript (January 7, 2013)

Exhibit 7: Gaffney Deposition Transcript (December 26, 2012)

Exhibit 8: SANE Deposition Transcript (January 18, 2013)

Exhibit 9: Yerushalmi Deposition Transcript (January 17, 2013).

Exhibit 10: Yaser Tabbara email (July 7, 2008)

Exhibit 11: Nadhira Al-Khalili email (August 19, 2008)

Exhibit 12: Raabia Wazir email (July 2008)

Exhibit 13: Yaser Tabbara email (July 7, 2008)

Exhibit 14: Intern email (July 8, 2008)

Exhibit 15: Saeed Mahyoub email

Exhibit 16: Raabia Wazir email (June 25, 2008)

Exhibit 17: Muslim Mafia, by Dave Gaubatz and Paul Sperry

Exhibit 18: Raabia Wazir email (June 26, 2008)

Exhibit 19: CAIR and Foreign Agents Registration Act

Exhibit 20: Gaubatz and CSP Agreement (September 2008)

Exhibit 21: Brim email (April 23, 2008)

Exhibit 22: Brim email

Exhibit 23: Brim email (June 19, 2008)

Exhibit24: Brim email

Exhibit 25: Dave Gaubatz email (April 4, 2009)

Exhibit 26: SANE and Publius Agreement (March 2008)

Exhibit 27: Manifold and CSP Agreement

Exhibit 28: SANE and Gaubatz Agreement (March 2008)

Exhibit 29: SANE and Publius Grant (March 2008)

Exhibit 30: Brim email (June 17, 2008)

Exhibit 31: CSP Agreement Draft

Exhibit 32: WorldNetDaily email

Exhibit 33: Sperry and Gaffney email

Exhibit 34: Brim and Sperry email

Exhibit 35: Dave Gaubatz Blog (November 29, 2008)

Exhibit 36: Dave Gaubatz Blog (November 30, 2008)

Exhibit 37: Transcript of Chris Gaubatz Phone Call

Exhibit 38: Transcript of selected Chris Gaubatz video

Exhibit 39: Raabia Wazir Affidavit

Exhibit 40: Jumana email (August 5, 2008)

Exhibit 41: ISWM email (September 3, 2008)

Exhibit 42: ISWM, Asma Gheyoub and Chris Gaubatz emails (September 3, 2008)

Exhibit 43: Asma Gheyoub email (August 6, 2008)

Exhibit 44: Corey Saylor Affidavit

Exhibit 45: Chris Gaubatz Interrogatory Ans.

Exhibit 46: Dave Gaubatz Interrogatory Ans.

Exhibit 47: Gadeir Abbas Affidavit

## STATEMENT OF MATERIAL FACTS

### About the Parties

1. Defendant David Yerushalmi is General Counsel for Defendant Center of Security Policy (CSP). Ex. 9, David Yerushalmi Dep. 21:18-21 (January 17, 2013); Ex. 7, Frank Gaffney Dep. 281:20-21 (December 26, 2012).

2. Paul David (Dave) Gaubatz is an individual who was approached by Christine Brim and David Yerushalmi with a proposal to hire individuals to obtain audio and video recordings from the Council on American-Islamic Relations (CAIR). Ex. 5, Paul David Gaubatz Dep. 76:12-15 (January 14, 2013). Dave Gaubatz is the father of Chris Allen Gaubatz. Ex. 3, Chris Gaubatz Dep. 26:8 (January 10, 2013).

3. Christine Brim is currently the chief operating officer of CSP. Ex. 2, Christine Brim Dep. 9:11-13. Christine Brim was Senior Vice President for CSP during the time of Chris Gaubatz's internship with the Council on American-Islamic Relations (CAIR). *Id.* 10:3-8.

4. Frank Gaffney is the founder, President, and CEO of CSP.  Ex. 7, Gaffney Dep. 14:21-24 & 15:12-14.  Gaffney is responsible to his Board of Directors for the program and management of CSP. *Id.* at 15:3-5.

5. Gaffney sometimes raises funds for CSP by speaking about the Council on American-Islamic Relations (CAIR).  *Id.* at 19:3-18 & 103:16-24.

6. CSP has a particular interest in CAIR because they believe it is a Muslim Brotherhood front group.  Ex. 9, Yerushalmi Dep. 177:20-25. CSP believes that CAIR is part of a larger movement to wage "civilization jihad" in America. *Id.* at 181:1-9.

7. CSP often focuses its efforts on CAIR because it regards CAIR as an organization that is "hostile to American security interests." Ex. 7, Gaffney Dep. 90:5-8.

8.  CSP has had specific projects related to CAIR, including a project called "The CAIR Observatory," and a report on CAIR and the Foreign Agents Registration Act by CSP staff Christina Brim and Adam Savit. *Id.* 246:15-17; 247:20-23; 249:3-8. Its book, "Shariah: The Threat to America" also discusses CAIR. *Id.* 104:8-17.

9.  At a broader level, CSP engages in educational activities and briefings on what it believes CAIR is and what it thinks CAIR does. *Id.* at 298:16-20.

10. The Society of Americans for National Existence (SANE) is a nonprofit organization founded by Defendant David Yerushalmi and his wife.  Ex. 8, Society of Americans for National Existence Dep. 11:1–6, 11:20–23 (hereinafter "SANE Dep.").

11. Yerushalmi was also the President of SANE during 2008.  *Id.* at 23:20–22.

12. SANE also contracted with Defendant Paul David Gaubatz in July 2007 for a project known as "Mapping Shari'a."  Ex. 8, SANE Dep. 25:13–17.

13. Pursuant to this project, Gaubatz was to research mosques throughout the US.  *Id.* at 25:21–26:3, 28:11–29:1.

**Organizing the CAIR Film Project and Contractual Relationships**

14. Frank Gaffney approached SANE about a documentary about Islamism in America.  Ex. 8, SANE Dep. 72:13-73:16; Ex. 4, Yesurshalmi Dep. 32:14-24 (January 17, 2013) (hereinafter "CSP Dep.").

15. CSP wanted to produce a documentary that would in part portray to the public its beliefs about CAIR and the Muslim Brotherhood in America. CSP Dep. 32:14-24.

16. CSP ventured to create a film proposal, which was part of its effort to make a documentary that was in part about CAIR. Ex. 7, Gaffney Dep. 107:12-16.

17. CSP referred to this documentary project as the CAIR Film Project. *Id.* at 106:12-165
    (The CAIR Film Project "was an effort to make a film about the Council on American-
    Islamic Relations."); Ex. 4, CSP Dep. 32:14-24

18. As part of the Film Proposal, CSP hoped to gather video footage from inside of CAIR's
    office. Ex. 7, Gaffney Dep. at 109:15-25.

19. CSP contracted with a production company called Manifold Productions in order to
    create an entity called Publius Productions that would research, develop, produce, and
    distribute a documentary about CAIR. Ex. 27, CAIR Project (December 21, 2007) (on
    file with CSP Production, 923-29) (hereinafter "Agreement between Manifold
    Productions and CSP").  *See also* Ex. 20, Grant Agreement between Center for Security
    Policy and Paul David Gaubatz (September 14, 2008) (on file with CSP Production 169-
    177) (hereinafter "CSP and Gaubatz Agreement"); Ex. 26, Grant Agreement between
    Publius Publications, LLC and the Society of Americans for National Security, Inc. 3-11
    (hereinafter "Publius and SANE Agreement"); Ex. 28, Agreement between Paul David
    Gaubatz and the Society of Americans for National Existence, Inc. 1-11 (hereinafter
    "Gaubatz and SANE Agreement (September 3, 2004)"); Ex. 30, Email from David
    Yerushalmi, Society of Americans for National Existence, to Christine Brim, Center for
    Security Policy (June 17, 2008) (on file with CSP Production, 985); Ex. 30, Email from
    Christine Brim, Senior Vice President for Policy and Program Management, Center for
    Security Policy, to Frank Gaffney, Center for Security Policy, David Yerushalmi, and
    Paul David Gaubatz (April 20, 2008) (on file with CSP Production, 987);  Ex. 7, Gaffney
    Dep. 108:6-9.

20. In March 2008, Publius Productions entered a grant agreement with Defendant SANE for SANE to provide a team of "researchers" to covertly enter CAIR and create audio-video recordings for a documentary.  Ex. 9, Yerushalmi Dep. 43:5-44:1; Ex. 26, Publius and SANE Agreement.

21. The film proposal that Publius presented to SANE involved, in part, the Council on American-Islamic Relations. Ex. 8, SANE Dep. 48:3-49:4.

22. Frank Gaffney of CSP was aware of the agreement between Publius and SANE.  Ex. 9, Yerushalmi Dep. 52:21–53:6.

23. In March 2008, SANE also entered into an agreement with Defendant Paul David Gaubatz.  Ex. 29, Gaubatz and SANE Agreement (September 3, 2004).

24.  Prior to these agreements, David Yerushalmi recommended Dave Gaubatz to Frank Gaffney as someone who may be able to obtain video for the CAIR film project. Ex. 7, Gaffney Dep. 113:17-21, 116:13-23.

25. Prior to CSP contracting with David Gaubatz, Gaffney and Gaubatz discussed Gaubatz's ability to obtain B-Roll from inside CAIR offices. *Id.* at 110:15-21.  Gaffney and Gaubatz also discussed Gaubatz hiring individuals who would volunteer to work as interns in CAIR offices and obtain film for the project. *Id.* at 117:6-9.

26.  Pursuant to these discussions, CSP paid David Gaubatz to obtain video from inside CAIR offices. *Id*. at 164:18-22.

27. David Yerushalmi and Christine Brim facilitated David Gaubatz putting "together a team to conduct video and audio recording inside CAIR national." Ex. 5, Paul David Gaubatz Dep. 79:18-21 (January 14, 2013).

28. David Yerushalmi and Christine Brim defined the scope of Paul David Gaubatz's responsibilities on the CAIR film project. And Yerushalmi and Brim, on behalf of CSP, were enlisting Gaubatz's services to hire an individual to obtain recordings from CAIR National's office. *Id.* at 72:17-73:15, 77:24-78:3, 79:18-21.

29. Publius productions hired Paul DonVito, a TV producer, to research and work on a documentary.

30. Paul DonVito's research and planning for the documentary anticipated the use of covert video taken from inside CAIR offices obtained through undercover filming that would serve as "B-Roll" for the documentary. Ex. 6, DonVito Dep. 42:1-48:25 (January 7, 2013).

31. At the end of his employment with Publius, DonVito sent all of his research to Christine Brim. *Id.* at 63:5-10.

32. CSP wanted to acquire camera equipment "clandestinely held by an individual" that could "potentially be part of the film." *Id.* at 38:25-39:7.

33. Publius Productions purchased camera gear for the CAIR film proposal that would be used for "undercover filming." *Id.* at 38:6-24.

34. Prior to Chris Gaubatz starting his internship at CAIR, CSP and Paul Donvito provided assistance to David Gaubatz to acquire a button camera. *Id.* at 83:19-23, 163:23-164:5 ("We wanted a small camera which… would be difficult to detect.").

35. DonVito trained Chris Gaubatz to use the video camera, and Chris Gaubatz then trained the other persons who worked with him to obtain footage from CAIR's office. Ex. 6, DonVito Dep. 40:9-11; Ex. 5, Paul David Gaubatz Dep. 118:1-8.

36. Chris Gaubatz was to wear "clandestine camera gear" during his CAIR internship in order to record things that would not have otherwise been revealed "openly." Ex. 6, DonVito Dep. 43:15-44:10.

37. CSP believed that CAIR would not approve or enable them to openly obtain B-Roll for their film project if they knew of its intentions with the proposal. Ex. 7, Gaffney Dep. 119:2-9. "…the tiny button-cam he'd concealed in his shirt to spy on them popped off." Ex. 17, P. David Gaubatz & Paul Sperry, <u>Muslim Mafia</u> 2 (WND Books) (2009).

38. CSP understood that Chris Gaubatz was to wear an inconspicuous audio/video recorder as part of his conduct while interning with CAIR. Ex. 4, CSP Dep. 39:5-12

39. CSP knew that David Gaubatz would direct his researchers to use a recording device during their internships at the CAIR offices in Virginia and Washington, D.C. *Id.* at 11:13-17.

40. CSP understood it was paying Paul David Gaubatz to identify, train, and supervise interns, and to instruct them on how to covertly obtain audio/video recordings from inside CAIR. *Id.* at 58:14-59:8, 63:14-65:7.

41. CSP paid SANE a total of $103,865 in 2008 with the expectation that the money would go from SANE to Dave Gaubatz as compensation for his work obtaining audio/video recordings from CAIR's office. Ex. 4, CSP Dep. 68:7-17.

42. David understood that CSP was paying him to obtain audio/video recordings inside CAIR's office. Ex. 24, Email from Dave Gaubatz to Christine Brim, Chris Gaubatz and Frank Gaffney (Aprul 4, 2009) (on file with CSP Production 695); Ex. 25, Letter from Dave Gaubatz to Christine Brim (April 4, 2009) (on file with CSP Production 696-99).

43. Pursuant to its agreement with David, CSP expected delivery of the recordings his
researchers obtained from CAIR's office. *Id.* at 63:3-10.

44. All recordings made by Chris Gaubatz at CAIR's office that were delivered to CSP were
done so pursuant to David Gaubatz's agreements with CSP and Publius. Ex. 4, CSP Dep.
48:4-7.

45. David Yerushalmi advised David Gaubatz that Chris Gaubatz could use a false name to
obtain an internship at CAIR's office. Ex. 9, Yerushalmi Dep. 68:21-70:24.

46. David Yerushalmi spoke to David Gaubatz and Christine Brim about the legality of
David Gaubatz's researchers making covert audio video recordings. *Id.* at 75:20-78:24.

47. Yerushalmi also told Dave Gaubatz that the secret recordings taken inside CAIR's office
would be legal. Ex. 5, Paul David Gaubatz Dep. 99:11-20.

48. David Yerushalmi knew that Chris Gaubatz would be wearing an inconspicuous device to
make audio video recordings at CAIR. Ex. 9, Yerushalmi Dep. 158:8-161:11; Ex. 8,
SANE Dep. 67:11-68:2; Ex. 3, Chris Gaubatz Dep. 35:4-37:2.

49. Christine Brim knew that Dave Gaubatz's researchers were going to make video
recordings at CAIR National. Ex. 2, Brim Dep. 89:8-11.

50. After the initial stages of the CAIR Film Project, Christine Brim became CSP's liaison
with Gaubatz and Manifold productions. Ex. 7, Gaffney Dep. at 169:17-24.

51. Pursuant to his agreement with CSP, David Gaubatz hired four researchers: Charity Zhe,
Stephanie Creswell, Daniel Ryder, and Chris Gaubatz ("researchers"). Ex. 5, Paul David
Gaubatz Dep. 100:15-19.

52. David Gaubatz notified CSP of his intent to hire these researchers. *Id.* at 101:8-13.

53. David Gaubatz trained his researchers to appear Muslim when they were not. *Id.* at
264:6-19, 264:25-265:3; Ex. 3, Chris Gaubatz Dep. 203:14-204:7.

54. Prior to his internship, Chris Gaubatz underwent a "conversion" to Islam at Dar Al-Hijra
mosque in Virginia to appear Muslim. Ex. 5, Paul David Gaubatz Dep. 251:8-18. Ex. 17,
P. David Gaubatz & Paul Sperry, Muslim Mafia 1-2 (WND Books) (2009). "He's also
pretended to be a new convert to Islam.."

55. David Gaubatz instructed Chris Gaubatz to wear a beard and identify himself as Muslim
while volunteering at CAIR National so he could "fit in." Ex. 5, Paul David Gaubatz
Dep. 250:15-251:3; Ex, 17. P. David Gaubatz & Paul Sperry, Muslim Mafia 2 (WND
Books) (2009). "He had done the necessary prep work to appear Shariah-observant and as
orthodox as possible."

56. David Gaubatz paid Chris Gaubatz to infiltrate and film while interning at CAIR's office.
Paul David Gaubatz Dep. 62:21-24, 63:1-4, 108:8-11.

57. Paul David Gaubatz directed Charety Zhe and Stephanie Creswell to obtain covert audio-
video recordings at CAIR. *Id.* at 263:7-12.

58. David Gaubatz instructed Zhe and Creswell to wear hijabs and cover their hair. *Id.* at
264:6-19, 264:25-265:3.

## APPLYING TO BECOME A CAIR INTERN

59. Chris Gaubatz applied for an internship with CAIR by providing CAIR with a copy of a
resume containing false information. Ex. 3, Chris Gaubatz Dep. 25:5-20 (January 10,
2013); Ex. 11, Email from Chris Gaubatz to Nadhira Al-Khalili, Legal Counsel, Council
on American Islamic Relations (June 3, 2008) (on file with Chris Gaubatz Production,
171-75).

60. When seeking an internship at CAIR National, Chris Gaubatz identified himself as David Marshall. Ex. 3, Chris Gaubatz Dep. 23:23-24:6. Ex. 1, June 16, 2008 at 00:03:58-00:04:20. (Chris announcing himself, "This is David Marshall. I'm here to volunteer.")

61. David Marhsall was not Chris Gaubatz's real name. Ex. 3, Chris Gaubatz Dep. 23:23-24:6; Ex. 5, Paul David Gaubatz Dep. 247:13-18, 248:8-12, 256:24-25.

62. Chris Gaubatz presented himself as a Muslim when he sought the internship with CAIR. Ex. 3, Chris Gaubatz Dep. 202:20-25.

63. He did not see himself as a Muslim, and he presented himself as Muslim pursuant to his father's instructions. *Id.* at 203:4-17.

64. Chris Gaubatz pretended to convert to Islam and memorized Arabic phrases in order to perform Islamic prayers in front of CAIR staff and falsely convince them that he was Muslim. Ex. 5, Paul David Gaubatz Dep. 250:15-251:18, 254:12-15.

65. Chris Gaubatz did not indicate to any staff member of CAIR that he was being paid by his father, David Gaubatz, to intern at CAIR's office. Ex. 3, Chris Gaubatz Dep. 235:8-20.

66. Chirs Gaubatz did not indicate to any staff member of CAIR that he was wearing a button camera and recording video and audio during his internship. *Id.* at 234:9-15.

67. CAIR would not have given Chris Gaubatz the CAIR internship if Chris Gaubatz had indicated that he intended on recording what happened in the office and selling it. Ex. 44, Saylor Aff. ¶ 1-2.

68. CAIR would not have given Chris Gaubatz an internship if he had indicated that David Gaubatz was paying him to do so. Ex. 39, Wazir Aff. ¶ 2; Ex. 44, Saylor Aff. ¶ 1-2.

**Chris Gaubatz's Internship at CAIR National**

69. Chris Gaubatz accepted an internship offer from CAIR to work at its National office. Ex. 39, Wazir Aff. ¶ 3; Ex. 37, Transcript of Recorded Telephone Conversation of Chris Gaubatz 7:1-10.

70. Raabia Wazir introduced Chris Gaubatz to the internship program with a confidentiality agreement and a description of the internship program and his tasks. Ex. 38, Transcript of Gaubatz Recordings 69:6-75:15. Ex. 1, June 16, 2008 at 00:09:10-00:15:46.

71. CSP knew that Chris Gaubatz's duties at CAIR were "no different from any other intern," Ex. 4, CSP Dep. 39:10-23, and that Chris Gaubatz was instructed to, and did, follow instructions from staff while he was a CAIR intern. *Id.* 39:14-18, 41:2-5. "The specific purposes of the Internship were twofold: (1) Chris was to perform any tasks asked of him by CAIR during the Internship fully and in exemplary fashion…" Ex. 46, Defendant Paul David Gaubatz's Ans. to interrogatory, 5; Ex.45, Defendant Chris Gaubatz's Ans. to interrogatory, 5.

72. Chris Gaubatz was given access to confidential, proprietary, and trade secret information about CAIR by CAIR employees as part of his internship. *See* Ex. 1, June 16 pt 2 00:22:50-00:23:30 (recording an internal CAIR discussion on strategy for a CAIR event), July 9, 2008 at 1:27:30-1:29:40 (recording CAIR employee instructing him on the creation of internal document for CAIR's constituency, revealing internal details about CAIR's outreach strategy), July 9, pt 2 at 01:37:06-01:46:48 (recording CAIR director sharing organizational strategy), August 14 at 02:21:47-02:23:00 (recording Director of Communications and Civil Rights Manager discussing facts related to cases in the Civil Rights Department).

73. CAIR employees gave Chris Gaubatz access to sensitive lists of mosque contacts. Ex. 10, Email from Yaser Tabbara, Director of Community Development, Council on American-Islamic Relations, to Chris Gaubatz (July 7, 2008) (on file with Chris Gaubatz document production 146-48). Ex. 37, Transcript of Recorded Telephone Conversation of Chris Gaubatz 2:9-21.

74. CAIR employees also gave Chris Gaubatz access to information about CAIR's legislative advocacy strategies, Ex. 1, June 24, 2008 at 02:13:05-02:19:10, and contracts with mosques. *Id.* July 3, 2008 at 00:24:00-00:25:00.

75. CAIR also shared with Gaubatz sensitive information about CAIR's personnel. Ex. 37, Transcript of Recorded Telephone Conversation of Chris Gaubatz 9:1-22.

76. CAIR employees also entrusted Chris Gaubatz with tasks that required him to present himself as a representative of CAIR like scheduling events for CAIR's Executive Director and facilitating a census of mosques around the country. Ex. 41, Email from the Islamic Society of Western Maryland to Chris Gaubatz (September 3, 2008) (on file with Chris Gaubatz Production 273-74). Ex. 14, Email from Chris Gaubatz, representing CAIR, to CAIR Volunteers (July 8, 2008) (on file with Chris Gaubatz Production 614-615); Email from Chris Gaubatz, representing CAIR to Administrator, Dar al-Noor (July 8, 2008) (on file with Chris Gaubatz Production 618); Collection of emails between Chris Gaubatz and Saeed Mahyoub (June 23, 2008) (on file with Chris Gaubatz Production 782-88). Ex. 1, August 4, 2008 at 00:58:00; Ex. 41, Email from the Islamic Society of Western Maryland to Chris Gaubatz (September 3, 2008) (on file with Chris Gaubatz Production 273-74); Ex. 43, Email from Chris Gaubatz to Asma Gheyoub (August 6, 2008) (on file with Chris Gaubatz Production 328-30); Ex. 42, Emails between the

Islamic Society of Western Maryland, Asma Gheyoub and Chris Gaubatz (September 3, 2008) (on file with Chris Gaubatz Production 339-40).

77. When working at his internship with CAIR, CAIR staff gave Chris Gaubatz assignments and instructions on how to perform his assignments. Ex. 3, Chris Gaubatz Dep. 205:16-210:18 (Chris Gaubatz followed instructions as an intern and what he was and was not allowed to take); *E.g.*, Ex. 1, August 13, 2008 at 1:03:33-1:05:00, Ex. 40, Email from Jumana Kamal to Chris Gaubatz (August 5, 2008) (on file with Chris Gaubatz Production 272); Ex. 12, Citizenship Delay Workshop Flyer (July 2, 2008) (on file with Chris Gaubatz Production 547); Ex. 12, Email from Chris Gaubatz to Raabia Wazir, Outreach Coordinator, Council on American-Islamic Relations (June 2, 2008) (on file with Chris Gaubatz Production 548); Ex. 18, Collection of emails between Chris Gaubatz and Raabia Wazir, Outreach Coordinator, Council on American Islamic Relations (June 26, 2008) (on file with Chris Gaubatz Production 869).

78. When working at his internship, Chris Gaubatz sought out instructions from CAIR staff. *E.g.* Ex. 1, July 7, 2008 at 4:10:10 (asking an employee to shred documents), Ex. 1, August 12, 2008 at 39:23 (asking for shredding, but then taking box and placing it in his car).

79. CSP understood that Chris Gaubatz was instructed to, and did, follow instructions given to him by CAIR staff while interning at the CAIR office in Washington, D.C. Ex. 4, CSP Dep. 39:14-18, 41:2-5.

**Audio/Video Recordings**

80. Chris Gaubatz took hundreds of hours of video during his internship. Ex. 37, Transcript of Recorded Telephone Conversation of Chris Gaubatz, 7:16-17; *See also,* Exhibit 1.

81. Chris Gaubatz used the button camera to record conversations at CAIR in which he was not participating. *E.g.*, Ex. 1, July 22, 2008 at 04:22:28-04:23:35 (recording another intern doing a client call, capturing info about client matters and their full name), August 7, 2008 at 1:21:40-01:22:05 (Defendant stands near speaker, who is a Capitol Hill staffer, and records a discussion on CAIR's policy and strategy as it relates to establishing coalitions), June 16 pt 2 at 00:23:00-00:23:30 (recording two CAIR staffers discuss political action breakfast), July 9, 2008 Pt 2 at 02:16:38-02:18:15 (recording a conversation between another intern and his supervisor in which he was not participating).

82. Chris Gaubatz did not tell anyone at CAIR that he was using a button camera or that he was recording his internship. Ex. 3, Chris Gaubatz Dep. 234:9-15.

83. Chris Gaubatz understood that CAIR would not allow him to use of a button camera if Chris Gaubatz had indicated this. Ex. 3, Chris Gaubatz Dep. 232:7-15.

84. Chris Gaubatz put CAIR's documents in front of his button camera to record the document's contents. *See* Ex. 1, June 16 Pt 2 at 1:38:00, 1:41:23, 145:32.

85. Chris Gaubatz was making the clandestine recordings during his CAIR internship pursuant to Dave Gaubatz's instructions and payment to do so. Ex. 3, Chris Gaubatz Dep. 152:14-17, 235: 14-20. ("I was directed by my father, Dave Gaubatz, to wear the inconspicuous camera.")

**Dissemination of the Recordings**

86. Chris Gaubatz disseminated the covert recordings he made at CAIR's offices to David Gaubatz. Ex. 37, Transcript of Recorded Telephone Conversation of Chris Gaubatz 23:3-22.

87. Chris Gaubatz and Paul David Gaubatz disseminated the recordings he made at CAIR's office to Defendants CSP and Christine Brim. Ex. 2, Brim Dep. 95:10-15, 96:1-6, 129:16-19, 131:20-22, 213:4-11; Ex. 3, Chris Gaubatz Dep. 90:4; Ex. 21, Email from Christine Brim, Center for Security Policy to Paul David Gaubatz (April 23, 2008) (on file with CSP Production 191, 198, 290); Ex. 5, David Gaubatz Dep. 125:6-8.

88. Defendant CSP paid Defendant Paul David Gaubatz to give them covert audio/video recordings taken at CAIR. Ex. 9, Yerushalmi Dep. 58:14-59:13, 63:3-10; Ex. 7, Gaffney Dep. 164:18-22, 109:15-25, 110:15-21. Ex. 5, Paul David Gaubatz Dep. 74:7-9, 76:2-4; Ex. 24, Email from Paul David Gaubatz to Christine Brim and Frank Gaffney, Center for Security Policy (on file with CSP Production 695).

89. Chris Gaubatz and Paul David Gaubatz disseminated email summaries of Chris Gaubatz's activities as a CAIR intern to Christine Brim pursuant to the CAIR film project. Ex. 2, Brim Dep. 142:12-15, 143:2-14.

90. Christine Brim disseminated a compilation of covert video Chris Gaubatz took at CAIR to third party Joseph Farah. *Id.* at 216:9-12. *See also* Ex. 32, Email from Christine Brim, Center for Security Policy to Joseph Farah, Editor and Chief Executive Officer, WorldNetDaily (October 13, 2009) (on file with CSP Production 992-98).

91. CSP and third party World Net Daily created a draft agreement for CSP to give WND video covertly recorded at CAIR.  Ex. 31, Draft Agreement between WorldNetDaily and Center for Security Policy.

92. In February 2009, Chris Gaubatz began working for CSP to work on the CAIR documentary project.  Ex. 20, Service Statement A between Paul David Gaubatz and Center for Security Policy (February 24, 2009); Ex. 2, Brim Dep. 207:24-208:1. Chris

Gaubatz's work included reviewing and editing covert audio-video recordings he took at CAIR. *Id.* at 213:4-11. It paid him 5,000 for this work. Ex. 4, CSP Dep. 55:18-21.

**Organizing the CAIR Film Project and Contractual Relationships**

93. Frank Gaffney approached SANE about a documentary about Islamism in America. Ex. 8, SANE Dep. 72:13-73:16; Ex. 4, CSP Dep. 32:14-24.

94. The film proposal that Publius presented to SANE involved, in part, the Council on American-Islamic Relations. Ex. 8, SANE Dep. 48:3-49:4.

95. The CAIR Film Project entailed interviews with experts on CAIR to attempt to link CAIR to the Muslim Brotherhood. Ex. 7, Gaffney Dep. 109: 2-8. CSP wanted the film about CAIR to be high quality with a "maximum educational impact." *Id.* at 175:19-22.

96. Frank Gaffney of CSP was aware of the agreement between Publius and SANE. Ex. 9, Yerushalmi Dep. 52:21–53:6.

97. David Yerushalmi and Christine Brim defined the scope of Paul David Gaubatz's responsibilities on the CAIR film project. And Yerushalmi and Brim, on behalf of CSP, were enlisting Gaubatz's services to hire an individual to obtain recordings from CAIR National's office. Ex. 5, Paul David Gaubatz Dep. 72:17-73:15, 77:24-78:3, 79:18-21.

98. Prior to contracting, Gaffney and Gaubatz discussed Gaubatz's ability to obtain B-Roll from inside CAIR offices. Ex. 7, Gaffney Dep. 110:15-21. Gaffney and Gaubatz also discussed Gaubatz hiring individuals who would volunteer to work as interns in CAIR offices and obtain film for the Project. Ex. 7, Gaffney Dep. 117:6-9. Pursuant to these discussions, CSP paid David Gaubatz to obtain B-Roll video from inside CAIR offices. *Id.* at 164:18-22.

99. Chris Gaubatz was to wear "clandestine camera gear" during his CAIR internship in order to record things that would not have otherwise been revealed "openly."  Ex. 6, DonVito Dep. 43:15-44:10.

100. David Yerushalmi advised David Gaubatz on infiltrating CAIR, including by telling him that Chris Gaubatz could use a false name. Ex. 9, Yerushalmi Dep. 68:21-70:24. Yerushalmi told Dave Gaubatz that the secret recordings would be legal. Ex. 5, Paul David Gaubatz Dep. 99:11-20.

101. David Yerushalmi spoke to David Gaubatz and Christine Brim about the legality of "researchers" making covert audio video recordings. Ex. 9, Yerushalmi Dep. 75:20-78:24.

102. David Yerushalmi knew that Chris Gaubatz would be wearing an inconspicuous device to make audio video recordings at CAIR.  *Id.* at 158:8-161:11.

103. Christine Brim knew that Dave Gaubatz's researchers were going to make video recordings at CAIR National. Ex. 2, Brim Dep. 89:8-11.

104. After the initial stages of the CAIR Film Project, Christine Brim became CSP's liaison with Gaubatz and Manifold productions. Ex. 7, Gaffney Dep. at 169:17-24.

**Chris Gaubatz's Internship at CAIR National**

105. Chris Gaubatz record CAIR discussions about sensitive and confidential matters with the button camera.  *E.g.*, June 16 pt 2 at 23:00 (recording an internal CAIR discussion on strategy for a CAIR event), July 9, 2008 at 01:26:30 (recording CAIR employee instructing Chris Gaubatz on the creation of internal document for CAIR's constituency, revealing internal details about CAIR's outreach strategy); July 9, pt 2 at 01:37:06 (recording CAIR Director sharing organizational strategy); August 14 at 02:21:47

(recording Director of Communications and Civil Rights Manager discussing facts related to cases in the Civil Rights Department).

106. CSP paid to ensure that Chris Gaubatz would record conversations at CAIR with the button camera. Ex. 24, Email from Dave Gaubatz to Christine Brim, Chris Gaubatz and Frank Gaffney (April 4, 2009) (on file with CSP Production 695); Ex. 25, Letter from Dave Gaubatz to Christine Brim (April 4, 2009) (on file with CSP Production 696-99).

107. David Yerushalmi knew that Chris Gaubatz was making covert recordings while interning at CAIR. Ex. 8, SANE Dep. 67:11-68:2; Ex. 3, Chris Gaubatz Dep. 35:4-37:2.

108. CSP knew that Chris Gaubatz's duties at CAIR were "no different from any other intern," Ex. 4, CSP Dep. 39:10-23, and that Chris Gaubatz was instructed to, and did, follow instructions from staff while he was a CAIR intern. *Id.* at 39:14-18, 41:2-5.

109. David Gaubatz paid Chris Gaubatz $200/day to infiltrate and film CAIR's national headquarters and take documents from CAIR. Ex. 5, Paul David Gaubatz Dep. 62:21-24, 63:1-4, 108:8-11.

**Document theft and Dissemination of Recordings and Document**

110. CSP paid Manifold Productions $22,500 to take control of Publius. CSP Dep. at 55:9-56:6. Publius was dissolved. Ex. 27, Agreement between Manifold Productions, Inc. and Center for Security Policy, December 17, 2007. CSP essentially took over Publius and eliminated it. Ex. 4, CSP Dep. 52:18-53:4.

111. CSP understood that the recordings it received from Chris Gaubatz were pursuant to agreements Publius had with Paul David Gaubatz and agreements CSP had with Paul David Gaubatz. Ex. 4, CSP Dep. 48:4-7.

112. SANE eventually received $30,750 from Publius. Ex. 8, SANE Dep. 42:1–43:7.

113. Publius / CSP were paying for the infiltration. Publius or CSP would deposit funds into SANE's bank account that SANE then paid to Dave Gaubatz. *Id.* at 39:12-18.

114. CSP paid SANE a total of $103,865 in 2008 with the expectation that the money would go from SANE to Dave Gaubatz as compensation for his work on the CAIR film project. Ex. 4, CSP Dep. 68:7-17.

Respectfully submitted,

_____/s/   Nadhira Al-Khalili_____

Nadhira Al-Khalili (Bar No. 997827)
Council on American-Islamic Relations
453 New Jersey Avenue, S.E.
Washington, D.C. 20003
(202) 646-6034 (Phone)
(202) 488-3305 (Fax)
nalkhalili@cair.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 20th day of May 2013, true and correct copies of the

foregoing were served via ECF upon all counsel of record.

    /s/  Nadhira Al-Khalili
Nadhira Al-Khalili (Bar No. 997827)
Council on American-Islamic Relations
453 New Jersey Avenue, S.E.
Washington, D.C. 20003
(202) 646-6034 (Phone)
(202) 488-3305 (Fax)
nalkhalili@cair.com
