**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS ACTION NETWORK, INC., *et al*.,

        Plaintiffs,

   -v.-

DAVE GAUBATZ, *et al*.,

        Defendants.

CIVIL NO: 1:09-cv-02030-CKK-JMF

**REPLY MEMORANDUM OF POINTS & AUTHORITIES**

**IN SUPPORT OF**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

PREFACE ....................................................................................................................1

LEGAL ARGUMENT ...............................................................................................2

I.   The Law of the Case and the Undisputed Factual Record Demonstrate that Defendants Are Not Liable Under Count Two of the Third Amended Complaint..................................................2

   A.   All Defendants.................................................................................................2

   B.   The Secondary Defendants..............................................................................5

II.  The Law of the Case and the Undisputed Factual Record Demonstrate that Defendants Are Not Liable Under Count One of the Third Amended Complaint or for Breach of Fiduciary Duty ......................................................................................................................6

   A.   All Defendants.................................................................................................8

   B.   The Secondary Defendants............................................................................15

      1.   Sarah Pavlis and Adam Savit ...................................................................16

      2.   David Yerushalmi ....................................................................................16

      3.   Christine Brim ..........................................................................................18

      4.   SANE .......................................................................................................18

      5.   CSP ...........................................................................................................18

III. Plaintiffs Have Produced No Evidence of a Misappropriated Trade Secret.............................20

IV.  Plaintiffs Have Failed to Produce Any Competent Evidence of Damages................................22

FACTUAL APPENDIX...........................................................................................23

CONCLUSION ........................................................................................................25

CERTIFICATE OF SERVICE.................................................................................28

# TABLE OF AUTHORITIES

## CASES

*Akers v. Liberty Mut. Group*,
744 F. Supp. 2d 92 (D.D.C. 2010) ............................................................................. 12

*\*Amtrak v. Veolia Transp. Servs.*,
791 F. Supp. 2d 33 (D.D.C. 2011) ............................................................................. 10

*AT&T Commc'ns of Cal., Inc. v. Pac. Bell*,
Nos. 99-15668 & 99-15736, 2000 U.S. App. LEXIS 23215 (9th Cir. Sept. 8, 2000) .................. 11

*\*Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*,
793 F. Supp. 2d 311 (D.D.C. 2011) ...........................................................2, 3, 13-14

*\*Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*,
891 F. Supp. 2d 13 (D.D.C. 2012) .............................................................6, 17-19

*McCann v. Iroquois Mem. Hosp.*,
622 F.3d 745 (7th Cir. 2010) ................................................................................... 15

*Meeker v. Stuart*,
188 F. Supp. 272 (D.D.C. 1960) ............................................................................. 22

*Peavy v. Dall. Indep. Sch. Dist.*,
57 F. Supp. 2d 382 (D. Tex. 1999) ........................................................................... 15

*Sloan v. Urban Title Servs., Inc.*,
652 F. Supp. 2d 51 (D.D.C. 2009) ........................................................................... 14

*Thompson v. Dulaney*,
970 F.2d 744 (10th Cir. 1992) ................................................................................. 15

*Trs. of the Univ. of D.C. v. Vossoughi*,
963 A.2d 1162 (D.C. 2009) ................................................................................22-23

*Wexler v. Greenberg*,
399 Pa. 569 (Pa. 1960) ........................................................................................... 11

## STATUTES

18 U.S.C. § 2510, *et seq.* ......................................................................................6-18

18 U.S.C. § 2511(1)(a)-(d) ................................................................................3-5, 22, 24

18 USCS § 2511(2)(d) ........................................................................................................... 7-9

18 U.S.C. §§ 2701-12 ........................................................................................................... 2-5

D.C. Code §§ 23-541, *et seq.* ........................................................................................... 6-19

D.C. Code § 23-542(a)(1)-(2) ................................................................................................. 8

D.C. Code § 23-542(b)(3) ...................................................................................................... 9

D.C. 36-401, *et seq.* ............................................................................................................. 19

D.C. Code § 36-401(4)(A) ............................................................................................... 19-20

D.C. Code § 36-401(2) .......................................................................................................... 21

D.C. Code § 36-401(2)(b)(ii) ................................................................................................ 21

**RULES**

Fed. R. Civ. P. 11(b) ............................................................................................................. 24

Fed. R. Civ. P. 56(c)(2) ......................................................................................................... 12

# PREFACE

The Court now has before it the entire record the parties[1] assert make up the undisputed and

disputed portions of the factual record.[2]  And, as is sometimes the case, the parties do not often

agree on which facts belong in which rubric—undisputed facts supporting summary judgment for

one side or the other and disputed facts precluding summary judgment.  Given the careful analysis

of the factual record presented by Defendants in both their motion for summary judgment and in

their opposition to Plaintiff CAIR-F's motion for partial summary judgment, it is not likely to be

productive to re-analyze here in this reply brief Plaintiffs' separate rendering of the facts in its

opposition to Defendants' motion.

Rather, Defendants will attempt to address the key legal issues raised by Plaintiffs'

opposition and to place those issues in the context of very specific facts that are not anywhere in

dispute.  That is, this reply brief will attempt to place the legal arguments and the raw undisputed

facts relevant to those legal issues side-by-side unadorned by any adversarial characterization of

those facts attributable to either side.  While this effort at a neutral presentation might appear to be

beyond the ken of an adversary in a hotly contested lawsuit such as this one, Defendants are aided

by the fact that they need not over argue, nor argue over, the facts to demonstrate the bases for

summary judgment.  That effort follows, and we note here that we will address first the most

---

[1] This reply brief shall refer to the parties by the same nomenclature as Defendants' motion: Plaintiffs Council on American-Islamic Relations Action Network, Inc. and CAIR-Foundation Inc. as "CAIR-AN" and "CAIR-F," respectively; Defendants Chris Gaubatz ("Chris") and Paul David Gaubatz ("Dave Gaubatz") as the "Gaubatz Defendants," collectively; Defendants Center for Security Policy ("CSP"), Christine Brim, Adam Savit, and Sarah Pavlis as the "CSP Defendants," collectively; and the CSP Defendants, the Society of Americans for National Existence ("SANE"), and David Yerushalmi as the "Secondary Defendants," collectively.

[2] These facts are set forth in Defendants' statement of facts in support of Defendants' motion for summary judgment. (Doc. No. 154) ("Defs.' MSJ Facts"); Plaintiffs' statement of facts in opposition to Defendants' motion for summary judgment (Doc. No. 164-1) ("Pls.' Opp'n Facts"); Plaintiff CAIR-Fs' statement of facts in support of its motion for partial summary judgment (Doc. No. 156) ("Pl.'s MSJ Facts"); and Defendants' statement of facts in opposition to Plaintiff CAIR-F's motion for partial summary judgment (Doc. No.163-1) ("Defs.' Opp'n Facts").

obvious and facile aspects of Defendants' motion (Count Two—SCA ) and move on to Plaintiffs'

ultimate argument relating to the existence of a fiduciary duty and its breach (Count Four), which

also underscores Plaintiffs' claims of violations of the Federal and D.C. Wiretap Acts (Count One).

Following this, we treat Plaintiffs' claims for misappropriation of trade secrets (Count Ten) and

then the remaining common law counts.  At the end of this reply brief, in a segregated appendix

section, we treat Plaintiffs' factual characterizations and references that have not been specifically

addressed elsewhere at both an evidentiary and substantive level.

## LEGAL ARGUMENT

I.   **The Law of the Case and the Undisputed Factual Record Demonstrate that Defendants Are Not Liable Under Count Two of the Third Amended Complaint.**

   A.   **All Defendants.**

Count Two of the Third Amended Complaint ("TAC") alleges violations of the Stored

Communications Act ("SCA") (codified under Title II of the ECPA [18 U.S.C. §§ 2701-12])

predicated upon an allegation that Chris removed documents from Plaintiffs' shared computer drive

and email server.[3]  The parties do not dispute that Chris has testified unequivocally in his written

answers to interrogatories and in his deposition testimony that he never copied or removed

documents from an email server or shared drive.  In Defendants' motion addressing Count Two, it

sets out the factual and legal predicate for summary judgment clearly:

> Chris swears under oath that he never removed documents from Plaintiffs' shared
> drive or email server.  The evidence establishes that interns had authority and access

---

[3] While the allegations of the TAC themselves allege that the wrongful acts under Count Two include removing documents from "computers or computer servers, networks, or systems" (TAC at ¶¶ 90-91), the Court's earlier ruling in response to the Gaubatz Defendants' motion to dismiss makes clear that the SCA does not apply to hard drives from desk top computers or laptops. *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 35 (D.D.C. 2011) ("*CAIR I*") (stating that "the statute clearly is not triggered when a defendant merely accesses a physical client-side computer and limits his access to documents stored on the computer's local hard drive or other physical media").  Rather, liability under the SCA is only implicated if documents were taken from an email server or shared drive or similar facility for electronic communications service. *Id.*

to the shared drives and email servers and could save those documents themselves on the desk-top hard drives or even print them out and leave them on the tables available to all interns.  Indeed, the desk-top hard drives were available to all the interns.  ([Defs.' MSJ] Facts at ¶¶ 154, 156-59).

Plaintiffs' entire factual case that Chris violated the SCA is a "belief" that he must have done so.  But this belief is belied by the factual record, and a belief cannot give rise to a claim that Chris violated a criminal statute.  Indeed, we are well beyond the allegation stage of this litigation; Plaintiffs must now come forward with *evidence* to support their claims.  Here, Plaintiffs have provided no evidence that any of the documents they claim to have come from some computer came from a shared drive or email server.  Nor have Plaintiffs retained a forensic IT expert to assess their computer system to make that determination.  ([Defs.' MSJ] Facts at ¶¶ 156-59).  Without some actual evidence that Chris did what he swears he did not do, Plaintiffs have not even raised a colorable claim that any of the documents Chris removed from Plaintiffs' Offices were copied by Chris from a shared drive or email server.  *See CAIR I*, at 335 (stating that "the statute clearly is not triggered when a defendant merely accesses a physical client-side computer and limits his access to documents stored on the computer's local hard drive or other physical media").

(Defs.' MSJ Memo. [Doc. No. 154-64] at 34).  Plaintiffs' opposition demonstrates their failure to

counter this undisputed testimony with anything but naked assertions:

Defendant's argument for summary judgment on the SCA counts misses two key points: 1) that interns like Chris Gaubatz only had limited authority to access the certain areas of the shared drive, and 2) that Chris Gaubatz exceeded his authorization to access the shared drive by removing and disseminating from it electronic documents to third parties.

In Chris Gaubatz's own words, he was given access to shared drive folders only for his department, the Outreach Department. (Ex. 48, Chris Gaubatz Dep. 185:3 – 187:4 (discussing his access to Community Outreach shared drive). Chris Gaubatz also gave electronic access to third parties of documents ***that appear to be*** from the shared drive but not from the community outreach portion. (*Id*. 187:21-192:4.)  Chris Gaubatz ***also stored documents on the shared drive in his email*** with ***no apparent*** internship-related reason for doing so. (Ex. 51, Emails from davidmarshall1215@gmail.com to davidmarshall1215@yahoo.com, Contact Lists, (July 8, 2008) (on file in Chris Gabuatz [sic] document production as Bates Nos. 625-627)).

(Pls.' Opp'n Memo. at 32) (emphasis added).  Defendants do not dispute that Chris had access to a

part of the shared drive for outreach interns (*i.e.*, Plaintiffs' first "key point").  What the facts do not

evidence in any way is the naked claim that Chris "exceeded his authorization to access the shared

drive by removing and disseminating from it electronic documents to third parties."  (*i.e.,* the

second "key point").  As was the case throughout discovery, Plaintiffs proffer no actual evidence to

counter Chris' testimony that he did not remove documents from an email server or shared drive as

opposed to a hard drive on a desktop computer or documents that had been printed out in hard copy

by someone else.  (Defs.' Facts at ¶¶ 154-57).  Specifically, Plaintiffs offer neither expert testimony

nor fact witness testimony that the documents had been removed from a shared drive or email

server.  All we have are Plaintiffs' parenthetical characterizations about what they "believe" to be

the source for the documents provided without any authentication or foundation together with the

unsworn assertion that the documents "appear to be from the shared drive but not from the

community outreach portion" or the unsworn naked assertion that documents were "stored

documents" from the shared drive attached to Chris's personal email but without any explanation

how Plaintiffs conclude this is so.  At best we have Plaintiffs' non-evidentiary assumption that this

was so.  (*See also* Pls.' Opp'n Facts at ¶¶ 158-59).

Put simply, Plaintiffs have presented no competent or admissible evidence that contradicts

Chris's unchallenged testimony that he never removed documents in violation of the SCA.  Further,

even beyond Count Two, Plaintiffs have not put forward any evidence that contradicts Chris's clear

written and oral testimony that his supervisor, Raabia Wazir, gave him expressed and implied

authority to remove documents, without limitation, which he found of interest for outreach or for his

own edification about CAIR National and Islam.  (Defs.' MSJ Facts at ¶¶ 156, 230-31).  Indeed,

Plaintiffs concede that neither Wazir nor anyone else at Plaintiffs' offices ever informed Chris that

the documents Plaintiffs made available to Chris were confidential or proprietary or even sensitive

in nature.  (Defs.' MSJ Facts at ¶¶ 84-107).  Plaintiffs also specifically testified that the one person

at Plaintiffs' offices that would have informed Chris about such matters was Wazir.  (Defs.' MSJ

Facts at ¶¶ 99-100).  In other words, Plaintiffs proffer no evidence whatsoever that anyone working

for or on behalf of either Plaintiff rescinded or limited the permission expressly granted by Wazir to

Chris authorizing him to remove documents for his own purposes (even assuming, *arguendo*, that the documents were on a shared drive).  Without some evidence to contradict Chris's testimony, Plaintiffs have not only failed to make out a case for a violation of the SCA, they have not even made out a case for an unauthorized taking of any document in the context of the conversion claim.

Finally, and just as telling, whether in the context of the SCA or when Plaintiffs argue for a breach of fiduciary duty, Plaintiffs merely point to raw documents or recordings without any evidentiary foundation that the information in the documents or on the recordings is proprietary to Plaintiffs.  Instead of citing to actual evidence, Plaintiffs are content to claim by way of self-serving parenthetical descriptions in their memoranda and statements of facts that these raw documents and recordings are proprietary to Plaintiffs and confidential.  But Plaintiffs make these non-evidentiary assertions in their motion papers without providing a single authenticating declaration or other evidentiary foundation to actually show that the information in the documents or included on the recordings even belongs to Plaintiffs much less contains non-public, confidential, or trade secret information.  (*See, e.g.*, Pls.' Opp'n Memo. at 14-15; Pls.' Opp'n Facts at ¶ 148 [citing to Pl.'s MSJ Facts at ¶¶ 80-85]; Pl.'s MSJ Facts at ¶¶ 72-75, 80-85).  The Court is left to assume that is the case. We will return to this point when we address Plaintiffs' claim that there is a factual dispute relating to Chris's breach of fiduciary duty.

For these reasons, Plaintiffs have failed to offer any facts to dispute Chris's testimony that he did not remove any documents from a shared drive or email server, and thus could not have violated the SCA.

### B.     The Secondary Defendants.

Even if we assume *arguendo* there is sufficient admissible factual evidence to preclude summary judgment on Chris's liability under the SCA, Plaintiffs have neither legal argument nor factual support to allege at this point an extant claim against any of the Secondary Defendants for a

violation of the SCA.  Beyond the fact that Plaintiffs do not address the Secondary Defendants in

their opposition to summary judgment for Count One, the Court has previously ruled that there is no

secondary liability for aiding and abetting, conspiracy, or inducement under the SCA.  *See Council*

*on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 26-27 (D.D.C.

2012) ("*CAIR II*").  (*See also* Defs.' MSJ Memo. at 5-6 [discussing extant Count Two allegations]).

Moreover, the Court has also ruled that Chris was not an agent of any of the CSP Defendants for

purposes of *respondeat superior* liability.  *CAIR II, at 27-29*.  Given the fact that SANE and

Yerushalmi had even less involvement than CSP in Chris's activities, whether by contractual privity

or merely "the ability to control" Chris as an "agent," a claim that any of the Secondary Defendants

have *respondeat superior* liability contradicts both the Court's prior rulings and the undisputed

facts.  (Defs.' MSJ Facts at ¶¶ 177-220).  But again, Plaintiffs do not even address such claims

relative to the Secondary Defendants under Count Two in their opposition and thus, at a minimum,

cannot defeat Defendants' motion for summary judgment as to these Defendants.

## II.     The Law of the Case and the Undisputed Factual Record Demonstrate that Defendants Are Not Liable Under Count One of the Third Amended Complaint or for Breach of Fiduciary Duty.

Some preliminary observations are in order here.  We note what is obvious: Plaintiffs

recognize that any claim for Count One liability for a violation of the Federal or D.C. Wiretap Act

will require a showing that the one-party consent rule does not apply because there is evidence that

the recordings were made "for the purpose of" Chris breaching some implied fiduciary duty of non-

disclosure.  (*See, e.g.*, Pls.' Opp'n Memo. at 12-19 [launching its legal argument with the breach of

fiduciary duty claims], 19-28 [moving on to argument about liability for Federal and D.C. Wiretap

Act violations based upon breach of fiduciary duty of non-disclosure]; *but see* Defs.' MSJ Memo. at

22-26 & Defs.' Opp'n Memo. at 12-23).  While Plaintiffs argue feebly that there is a factual dispute

whether Chris was a "party" to all of the recorded conversations (an argument predicated more on

Plaintiffs' erroneous legal argument about the definition of a "party to the communication" than any factual dispute, and one adequately addressed in both Defendants' motion and in their opposition to Plaintiff CAIR-F's motion), the thrust of Plaintiffs' argument that the one-party consent rule is inapplicable appears to be that the one-party consent rule does not apply if there is a reasonable expectation of privacy.  (Pls.' Opp'n Memo. at 22-23; *but see* Defs.' MSJ Memo. at 19, 30; Defs.' Opp'n Memo. at 32-35); 18 U.S.C. § 2511(2)(d) (providing for the one-party consent rule).

Truth be told, Defendants do not understand Plaintiffs' argument about how a reasonable expectation of privacy vitiates the one-party consent rule.  (Pls.' Opp'n Memo. at 22).  As discussed at some length in the CSP Defendants' motion to dismiss, the Federal and D.C. Wiretap acts <u>only</u> apply to "oral communications," which in turn <u>require</u> a reasonable expectation of privacy.  (CSP Defs.' Mot. to Dismiss [Doc. No. 97] at 9-14).  Consequently, this "reasonable expectation of privacy" only gets you past the first definitional level to know that the statutes are even implicated because an "oral communication" has been intercepted.  For example, while Chris appears on some recordings to be reading documents out loud to himself, this cannot implicate the statutes (*i.e.*, it is not an "oral communication") because he knows <u>he is recording himself</u> and thus has no expectation, reasonable or not, of privacy.  (*See, e.g.*, Pls.' Opp'n Memo at 8 [citing to Pl.'s MSJ Facts for "reading bank statements out loud"]; Pl.'s Opp'n Facts at ¶ 84 [same]).

For purposes of their motion for summary judgment, Defendants do not contest that the recordings of others at Plaintiffs' offices are "oral communications" under the Federal and D.C. Wiretap Acts.  Defendants have shown, however, that because there is no dispute that Chris was present and visible[4] to all those near him while he was recording with a device that was indisputably

---

[4] Plaintiffs seem to think Defendants have argued at some point that not only was Chris plainly visible and known by those he recorded in Plaintiffs' offices (Chris as the "interceptor" and consenting party), but also that the recording device was "visible" to Plaintiffs' staff. (Defs.' Opp'n Memo. at 23).  This is wrong.  None of the parties contests that the recording device was

of poor quality and worn on Chris's clothing, Chris was a party to the conversations as a matter of law, and his consent was all that was necessary to provide the legality of those recordings under the respective statutes.  (Defs.' MSJ Memo. at 30; Defs.' Opp'n Memo. at 32-35).

Once Defendants have established the applicability and effectuation of the one-party consent rule, Plaintiffs must proffer competent and admissible evidence that the one-party consent rule was annulled by the illicit purpose for the recordings.  But here, Plaintiffs merely glide past the facts with broad platitudes of law and conclusory assumptions about what the Defendants knew or did not know.  And because Plaintiffs' argument must be founded on some evidence of a specific fiduciary duty of non-disclosure, a breach of that duty, and knowledge by each Defendant, we turn to the evidence for this duty, its breach, and the requisite knowledge under the statute.

### A.      All Defendants.

Under the Federal and D.C. Wiretap Acts, whether we are addressing Chris's alleged liability for the actual interception and subsequent disclosure of the recordings to his father Dave Gaubatz, or Dave Gaubatz's subsequent disclosure to Defendants CSP and Brim, or even CSP's disclosure of a small edited subset of the recordings to World Net Daily ("WND"), there must be evidence that each specific Defendant engaged in the prohibited conduct knowingly.  *See* 18 U.S.C. §§ 2511(1)(a)-(d) & D.C. Code § 23-542(a)(1)-(2).  This is also true of a "procurement" violation under the D.C. Wiretap Act.  D.C. Code § 23-542(a)(1).  Under both statutory regimes, the allegedly liable party must know or have reason to know that the intercepted communications were obtained illegally.  In this case, that would require each specific Defendant to know or have reason to know that Chris intended to intercept the communications "***for the purpose of*** committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."

---

inconspicuous and unknown to those recorded other than Chris.  (*See, e.g*., Defs.' MSJ Memo. at 19; Defs.' MSJ Facts at ¶¶ 34, 57-62, 160-63).

18 USCS § 2511(2)(d) (emphasis added).[5]

For the evidence to reach this level of knowledge even for purposes of establishing a factual dispute to preclude summary judgment for Defendants, Plaintiffs must present some admissible and competent evidence in the record unique for each specific Defendant that there was knowledge of sufficient facts to know or have reason to know that Chris owed a fiduciary duty to one or the other Plaintiff, and that this fiduciary duty was specifically a duty not to disclose conversations at Plaintiffs' offices (as opposed to, for example, taking documents which was not the "purpose of" the recordings).[6]

Before we treat the evidence of such knowledge for each Defendant, it is important to note here that Plaintiffs do not claim anywhere that there was an expressed agreement that Chris would act as either a fiduciary or an agent.  Rather, Plaintiffs in effect argue that there was an incredibly broad and rigorous, yet wholly implied, fiduciary duty of non-disclosure based either on the fact that Chris received and accepted regular internship instructions from staff at Plaintiffs' offices or that Chris was an agent of Plaintiffs because they controlled him through these instructions.  (Pls.' Opp'n Memo. at 12-15).  At a purely legal level, Plaintiffs appear to be arguing that any internship that involves an intern taking instructions on specific mundane tasks (*i.e.*, virtually all internships), necessarily results in a trusting and controlling relationship such that the trust creates a fiduciary duty and the control creates an agency, which in turn implies a fiduciary duty.

_____

[5] While the D.C. Wiretap Act includes within the "for the purpose of" exception to the one-party rule any "injurious act" (D.C. Code § 23-542(b)(3)), in response to the CSP Defendants' argument in their motion to dismiss that this added provision was unconstitutionally vague, Plaintiffs expressly restricted their "for the purpose of" claims to the torts of interference with contract (*i.e.*, the Confidentiality Agreement) and breach of fiduciary duty.  (*See* CSP Defs.' Mot. to Dismiss [Doc. No. 97] at 26-28; Pls.' Opp'n to Mot. to Dismiss [Doc. No. 103] at 22).  Strangely, however, Plaintiffs seem to be arguing that the "injurious act" language is also found in the current Federal Wiretap Act.  (Pls.' Opp'n Memo. at 20).  This is just wrong.  18 U.S.C. § 2511(2)(d).
[6] There is no fact or even fact-based claim cited by Plaintiffs that Chris recorded conversations "for the purpose of" taking documents.  Rather, Plaintiffs' claim is, and, as a matter of logic must be, that Chris recorded conversations for the purpose of disclosing those recordings to others in breach of a duty of non-disclosure.  (*See, e.g.*, Pls.' Opp'n Memo. at 20-21).

As discussed at great length in Defendants' opposition to Plaintiff CAIR-F's motion, while these two high altitude legal platitudes about trust and control might be true under some factual settings, they are meaningless anywhere near the ground of our factual context. First, while Chris agreed to be an intern and to carry out his tasks as an intern, he never expressly assented to a fiduciary level duty of care, especially given that this was a volunteer summer internship that had none of the earmarks of a two-way employer-employee relationship. Second, even assuming some implied fiduciary duty existed based upon some implied assent, it would have been the duty to act for the principal's benefit in the specific matters of the agency. *Amtrak v. Veolia Transp. Servs.*, 791 F. Supp. 2d 33, 47-48 (D.D.C. 2011) (explaining that higher duties of loyalty beyond just fulfilling the "specific matters of the agency" belong to senior level employees, officers and directors). That is, even assuming an implied fiduciary duty existed based upon "trust" or the "control" of an agency relationship, this would have given rise only to a duty to fulfill the specific instructions requested. But as detailed in Defendants' opposition to CAIR-F's motion, Plaintiffs concede, and indeed argue, that Chris fulfilled each and every instruction provided to him. (Defs.' Opp'n Memo. at 17-18). Thus, Chris did not breach this duty, nor did he intend to.

Moreover, even assuming an implied duty to carry out the instructions as an intern, Plaintiffs know full well that there was never an expressed duty of non-disclosure. Indeed, no word uttered during any of the recorded conversations comes remotely close to describing the information exposed to Chris as confidential, subject to non-disclosure, proprietary, a trade secret, or even sensitive. Never was anything ever mentioned to Chris by any staff at Plaintiffs' offices about confidentiality, except the single reference by Wazir when she handed Chris, without any explanation, a document with which she was unfamiliar and about which she was unconcerned because it was like "clicking an iTunes agreement." (Defs.' MSJ Facts at ¶¶ 85-107; 140-53). And there is no dispute that Chris neither read nor signed the alleged confidentiality agreement. (Defs.'

MSJ Facts at ¶ 95).

So, Plaintiffs are left to explain how it is that a volunteer unpaid internship without any of the requisites of an employer-employee relationship, much less a senior-level employee relationship, impliedly assented to take upon himself the grave duty not to disclose the content of any of his conversations at Plaintiffs' offices. And, notwithstanding Plaintiffs' constant conclusory refrain that a vaguely implied fiduciary duty also included a very specific and onerous duty not to disclose the substance of Chris's conversations, the only evidence Plaintiffs reference for this claim that might give rise to this implied duty of non-disclosure are some select recorded conversations. (Pls.' Opp'n Memo at 14; *see also* Pls.' MSJ Facts at ¶¶ 72, 76). *See AT&T Commc'ns of Cal., Inc. v. Pac. Bell*, Nos. 99-15668 & 99-15736, 2000 U.S. App. LEXIS 23215, at *12-13 (9th Cir. Sept. 8, 2000) (holding no duty of confidentiality by employees in a trade secret context without some prior agreement or instruction about confidentiality and holding expressly that "[t]he proprietor of a trade secret may not unilaterally create a confidential relationship without the knowledge or consent of the party to whom he discloses the secret"); *Wexler v. Greenberg*, 399 Pa. 569, 576 (Pa. 1960) ("The principles outlining this area of the law are clear. A court of equity will protect an employer from the unlicensed disclosure or use of his trade secrets by an ex-employee provided the employee entered into an enforceable covenant so restricting his use or was bound to secrecy by virtue of a confidential relationship existing between the employer and employee.") (citations omitted).

But once again, the recordings themselves do not mention confidentiality or proprietorship. Rather, all Plaintiffs have done is to point to specific recordings without any evidentiary foundation to even suggest that the information on the recordings is proprietary to, or exclusively owned by, Plaintiffs, or that the information amounts to non-public information aggregated by Plaintiffs' own efforts. Instead of actual evidence, Plaintiffs claim by way of self-serving, unsworn parenthetical descriptions in their motion papers that the information contained in these recordings is proprietary

to Plaintiffs and confidential.  But Plaintiffs make these non-evidentiary assertions without providing a single authenticating declaration or other evidentiary foundation to actually show that the recorded information belongs exclusively to Plaintiffs much less that the recordings contain non-public, confidential, or trade secret information.  (*See, e.g.*, Pls.' Opp'n Memo. at 14-15; Pls.' Opp'n Facts at ¶ 148 [citing to Pl.'s MSJ Facts at ¶¶ 80-85]; Pl.'s MSJ Facts at ¶¶ 72-75, 80-85).

Rule 56, however, requires the factual record upon which a motion (or opposition) is predicated to be ***admissible*** evidence. Fed. R. Civ. P. 56(c)(2).  While it is true that the evidence need not necessarily be in admissible form at the summary judgment stage, the evidence must be such that it is apparent to the court that it can be converted into admissible form for purposes of a trial.  *Akers v. Liberty Mut. Group*, 744 F. Supp. 2d 92, 95-96 (D.D.C. 2010) ("At the summary judgment stage, supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

More particularly, unsworn and unauthenticated documents cannot be considered for summary judgment.  As this Court has ruled:

> "[U]nsworn, unauthenticated documents cannot be considered on a motion for summary judgment."  *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) (citing *Hal Roach Studios, Inc. v. Richard Feiner and Co.*, 896 F.2d 1542, 1550-51 (9th Cir. 1990); *Martz v. Union Labor Life Ins. Co*., 757 F.2d 135, 138 (7th Cir. 1985)); *see also Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000) (stating that "[d]ocuments supporting or opposing summary judgment must be properly authenticated" (citing Fed. R. Civ. P. 56(e)); *Stuart v. Gen. Motors Corp*., 217 F.3d 621, 636 (8th Cir. 2000) (stating that "[t]o be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of [Rule] 56(e)" and that "[d]ocuments which do not meet those requirements cannot be considered"); *Nnadili v. Chevron U.S.A., Inc.*, 435 F. Supp. 2d 93, 104-05 (D.D.C. 2006) (refusing to consider on summary judgment the "maps on which [the defendant] relies" because they were "presented without any affidavit explaining who prepared them, how they were prepared, and whether they [address the issue at stake]").

*Akers*, 744 F. Supp. 2d at 97.  Plaintiffs have provided no evidence that the discussions recorded at

Plaintiffs' offices were in fact anything more than vague references to mundane instructions for a volunteer intern or somewhat incoherent discussions about CAIR National's very public activities.

Finally, we come to the issue Defendants raised in their motion and have now discussed extensively in their opposition to Plaintiff CAIR-F's motion.  How could Chris have been in privity with either Plaintiff to assent to such a duty of non-disclosure expressly or impliedly?  Remarkably, Plaintiffs' opposition continues to argue that ***both*** Plaintiffs were owed a fiduciary duty, which they claim Chris breached.  (Pls.' Opp'n Memo. at 12 ["But the record shows that Chris Gaubatz owed a fiduciary duty to Plaintiffs . . ."])  Yet, according to Plaintiffs' testimony, CAIR-AN had no employees or interns for Chris to have communicated with or recorded to even form the predicate for Plaintiffs' alleged breach of fiduciary duty of non-disclosure.[7]  How then do Plaintiffs still assert Chris owed and breached a fiduciary duty to CAIR-AN?  And, according to both Chris and Raabia Wazir, the woman who Plaintiffs themselves claim hired Chris as an intern and who was responsible to instruct and supervise him, Chris was interning for CAIR National—the organization that was founded in 1994 and the only organization discussed at www.cair.org—not CAIR-F, which quite simply did not exist for Chris or Wazir.  (Defs.' Opp'n Facts at ¶¶ 156-57; *see generally* Defs.' Opp'n Memo. at 6-12).

Moreover, as the Court itself recognized, in Plaintiffs' TAC, which is identical in this regard to Plaintiffs' original Complaint and their First and Second Amended Complaints, Plaintiffs only allege that Chris was in privity with Plaintiff CAIR-AN.  (Defs.' Opp'n Facts at ¶¶ 129-33).  *CAIR*

---

[7] Plaintiffs attempt to find evidence that CAIR-AN actually exists as a valid corporation under the laws of the District of Columbia.  (*See* Defs.' MSJ Facts at ¶ 8).  For proof, Plaintiffs submit an unauthenticated "screen shot" of the District of Columbia's Department of Consumer and Regulatory Affairs ("DCRA") website, claiming this is a certificate of good standing for CAIR-AN. (Pls.' Opp'n Facts at ¶ 8; Decl. of Abbas at ¶ 20 filed in supp. of Pls.' Opp'n Facts [Doc. No. 164-3]).  Problematically for Plaintiffs, the unauthenticated document is not a "certificate" but an online informational form for an entity called Washington Trust Foundation, Inc.  So, unless CAIR-AN had another change of name at some point without informing the parties or the Court, or apparently without informing Plaintiffs' in-house lawyers, the document evidences nothing.

*I*, at 323 ("Chris Gaubatz's internship is alleged to have formally been with CAIR-AN"); *see Sloan v. Urban Title Servs., Inc.*, 652 F. Supp. 2d 51 (D.D.C. 2009) (Kollar-Kotelly, J.) ("Plaintiff cannot amend her complaint by merely taking discovery on a subject or by filing a motion for summary judgment; she must amend her complaint in accordance with Fed. R. Civ. P. 15(a).").  Further, what Plaintiffs do not seem to understand, even if a tortured reading of the TAC would allow vague references to the plural word "Plaintiffs" to trump expressed allegations that Chris's contractual and fiduciary relationship was with CAIR-AN and not CAIR-F, these vague and conclusory allegations referencing "Plaintiffs" would not survive Chris and Wazir's testimony that it was CAIR National and not CAIR-F for whom Wazir appointed and instructed Chris to intern.  (Defs.' Opp'n Facts at ¶¶ 129-33).  In other words, we are no longer at the pleadings stage; this is the evidentiary summary judgment stage, and there is <u>zero</u> evidence that Chris could have assented to an all-encompassing fiduciary duty of non-disclosure with an organization that <u>never</u> presented itself to Chris.

It is one thing to ask the Court to deny Defendants' summary judgment on the grounds that there was some implied fiduciary duty arising out of a mundane volunteer internship.  It is yet another thing to ask the Court to deny Defendants' motion on the grounds that this volunteer intern's vaguely implied duty somehow developed such *gravitas* that it in turn impliedly included a duty not to disclose what the evidence shows to be mundane conversations.  And it is quite another thing still to ask the Court to deny Defendants' motion on the basis of Plaintiffs' naked, non-evidentiary assertions that these mundane conversations were actually trade secrets—even though no one even hinted as such to Chris.  Yet finally, Plaintiffs ask the Court to take a leap of faith to deny Defendants' motion for summary judgment because although there is no evidence that Chris was in privity with either CAIR-AN or CAIR-F to engage such an imposing implied fiduciary duty of non-disclosure, Plaintiffs are convinced that all they need to do is assert that the pleadings might be understood to include both Plaintiffs for all matters and that this implicit reading of the pleadings

should suffice to overcome the actual evidence in the factual record: evidence that informs us that Chris was <u>never</u> in privity with either Plaintiff.  In sum, Plaintiffs' argument fails.

### B.        The Secondary Defendants.

Even if we buy into each and every one of Plaintiffs' non-evidentiary inferences and leaps of faith, Plaintiffs have not remotely established the knowledge required by the Federal and D.C. Wiretap Acts to deny the Secondary Defendants' motion for summary judgment.  There is nothing in the record to suggest that the Secondary Defendants had such actual or constructive knowledge. *McCann v. Iroquois Mem. Hosp*., 622 F.3d 745, 753 (7th Cir. 2010) ("To be liable under § 2511(1)(c) or § 2511(1)(d), a defendant must know or have reason to know sufficient facts concerning the circumstances of the interception such that the defendant could, with presumed knowledge of the law, determine that the interception was prohibited in light of the Wiretap Act.  ***It is not enough to know that the conversation was intercepted; the defendant must also be able to tell that none of the statutory exceptions apply***.") (citations, quotation marks and brackets omitted) (emphasis added); *Thompson v. Dulaney*, 970 F.2d 744, 749 (10th Cir. 1992) (stating that "a defendant must be shown to have been aware of the factual circumstances that would violate the statute"); *see also Peavy v. Dall. Indep. Sch. Dist*., 57 F. Supp. 2d 382, 387-89 (D. Tex. 1999) (holding that constructive knowledge must be based upon some fact that would allow a reasonable person to conclude that the tapes were illegally recorded).

Rather, Plaintiffs appear to be arguing that because the Secondary Defendants knew Chris was a volunteer intern who followed his instructions relating to the regular mundane tasks of an intern, they should have known that subsequently disclosing conversations never labeled confidential (or even appearing to be so) violated an implied duty of non-disclosure.  This, Plaintiffs claim, put the Secondary Defendants on notice that the recordings were "for the purpose of" a breach of fiduciary duty.  (Pls.' Opp'n Memo. at 24-27).  But all of this merely assumes facts

nowhere near the factual record.   At the aggregate level, Plaintiffs merely assume that the Secondary Defendants had constructive knowledge of an implied duty of non-disclosure, which in turn arises from an implied fiduciary duty, which in turn arises out of either an implied trust relationship or an implied agency relationship.   Even assuming *arguendo* the existence of such a Draconian duty of non-disclosure, Plaintiffs' failure to produce actual evidence of knowledge of this duty necessitates Plaintiffs' argument, thereby requiring the Court to buy into these multiple inferential steps, one added to another.   Beyond this aggregate level, however, Plaintiffs' claims of knowledge by the individual Secondary Defendants do not even approach a fact dispute to deny Defendants' request for summary judgment.

        1.     **Sarah Pavlis and Adam Savit.**   In their opposition, Plaintiffs do not even mention Defendants Pavlis and Savit, and the reason for this is straightforward: The factual record is clear that they were not involved in any aspect of the CAIR Documentary Film Project until long after all of the alleged illicit bad acts had occurred, and their involvement was entirely trivial and unrelated to any knowledge about how the recordings were obtained.   (Defs.' MSJ Facts at ¶¶ 205-12).   For whatever reason, Plaintiffs have refused to dismiss Pavlis and Savit following the close of discovery as requested by the CSP Defendants.

        2.     **David Yerushalmi.**   There are no allegations that Yerushalmi ever received or listened to any of the recordings during any period prior to the filing of this lawsuit.   There are no allegations that Yerushalmi had any connection whatsoever with the recordings except as an attorney providing legal advice on specific questions.   Thus, Yerushalmi could not possibly have violated the Federal or D.C. Wiretap Act prohibitions for interception, use, or disclosure.   Moreover, Yerushalmi was not in privity with Chris or Dave Gaubatz and had no right or opportunity to control either of them in the context of the CAIR Documentary Film Project.   At most, Yerushalmi provided legal advice to Dave Gaubatz (not Chris Gaubatz), which Dave Gaubatz

could and would choose to follow or not as he deemed best.  *See Fischer v. Estate of Flax*, 816 A.2d 1, 5 (D.C. 2003) ("[T]here can be no 'conspiracy' with a client if an attorney merely acts within the scope of his employment as an advisor to, or an advocate on behalf of, the client.  Similarly, absent evidence that the attorney knew of wrongful conduct by the client and rendered substantial assistance in committing it, he cannot be held to be an agent—an aider and abettor—of that conduct.")  Further, as we noted earlier, the Court has already concluded that there was no agency / *respondeat superior* liability attaching to CSP for the Gaubatz Defendants' conduct under Count Two, and the Court expressly adopted that holding for Count One as well.  *CAIR II*, at 25, n.4.  If that is true of Defendant CSP, it is true *a fortiori* with regard to Yerushalmi, who had no relationship with Chris Gaubatz and whose relationship with Dave Gaubatz was at even a greater distance than CSP's.  Further, there is no evidence that Yerushalmi "procured" Chris Gaubatz for CSP in violation of the D.C. Wiretap Act.  Rather, the evidence is that Yerushalmi simply recommended Dave Gaubatz to Frank Gaffney.  (Defs.' MSJ Facts at ¶¶ 195-204).  Gaffney in turn facilitated CSP's efforts to engage Dave Gaubatz to locate, employ, train, and supervise researchers to obtain B-roll at CAIR National's offices.  Finally, even if this conduct were to be construed as "procurement" under the D.C. statute, Yerushalmi could not have had the requisite knowledge to know that Chris was recording conversations "for the purpose of" some subsequent breach of an implied duty of non-disclosure and thereby nullifying the one-party consent rule.  The information Yerushalmi received from Dave Gaubatz was that Chris was acting legally and according to Yerushalmi's advice.  (Defs.' MSJ Facts at ¶ 138).  In short, while Yerushalmi knew Chris was using an inconspicuous camera to record conversations at Plaintiffs' offices, there is simply no evidence that he knew of, or had reason to know of, an implied duty of non-disclosure precluding Chris from disclosing the contents of his mundane communications involving his volunteer internship.

3.     **Christine Brim.**   Brim was only involved in the project after all of the agreements had been entered into and Chris had begun volunteering at the offices in Herndon, Virginia.   She played no role in "procurement" and acted solely as an administrative liaison for CSP.   She had no contractual privity with Chris Gaubatz, nor did she have the right to control any aspect of the performance of Chris's relationship with Dave Gaubatz.   Indeed, Brim was not in privity with Chris or Dave Gaubatz and, as an administrative liaison who simply received information and recordings from Dave Gaubatz and reported to her superiors, neither Brim's conduct nor her knowledge could possibly give rise to liability under the Federal and D.C. Wiretap Acts.  (Defs.' MSJ Facts at ¶¶ 177-94).

4.     **SANE.**   While SANE was in privity with Dave Gaubatz, it acted merely as a conduit to facilitate the *de facto* agreement between Dave Gaubatz and Publius Productions, LLC ("Publius"), and / or CSP until CSP contracted directly with Dave Gaubatz.   Indeed, after the signing of the Publius-SANE grant agreement, SANE's only role was to transfer the money it received from Publius-CSP under the contract to Dave Gaubatz.  (Defs.' MSJ Facts at ¶¶ 213-20). Relative to SANE, nowhere in Plaintiffs' opposition is there reference to more than a written contract and transfer of funds from Publius-CSP to Dave Gaubatz.  (*See generally* Pls.' Opp'n Facts).  Specifically, SANE never communicated with Chris Gaubatz and, other than the financial transfers to Dave Gaubatz, had no communications with Dave Gaubatz on the CAIR Documentary Film Project.  As such, SANE could not have had an agency / *respondeat superior* relationship with Chris Gaubatz anymore than Defendant CSP—and indeed the evidence is that SANE's connection to the participants was even more removed than CSP's.  *CAIR II*, at 25 n.4.  Moreover, SANE never came into possession of any of the recordings and thus could not be liable for interception, use, or disclosure under either the federal or D.C. statutes.

5.     **CSP.**   As noted, the Court has ruled that Defendant CSP had no agency /

*respondeat superior* liability for the actions of the Gaubatz Defendants under Count Two.  *CAIR II, at 27-29.*  The Court applied its rationale *mutatis mutandis* to Count One.  *CAIR II*, at 25, n.4.  And, notwithstanding Plaintiffs' strange argument in its opposition that CSP, Yerushalmi, and SANE are vicariously liable under the Federal and Wiretap Acts for "aiding and abetting," the Court has ruled that there is no vicarious liability under either statute.  *CAIR II*, at 24, 26; (*Cf.* Pls.' Opp'n Memo. at 30-31).

## C.      Aiding and Abetting Breach of Fiduciary Duty.

As a kind of corollary to the argument that the Secondary Defendants had the requisite knowledge to violate the Federal and D.C. Wiretap Acts, Plaintiffs' opposition also offers up an aiding and abetting breach of fiduciary duty argument.  (Pls.' Opp'n Memo. at 16-19).  Defendants will not repeat what has been argued extensively in their motion and in their opposition to Plaintiff CAIR-F's motion—that is, the District has rejected aiding and abetting as a civil cause of action.  (Defs.' MSJ Memo. at 28-29; Defs.' Opp'n Memo. at 24-26).  The point to be made here is that whether termed as aiding and abetting or as inducement, the latter of which the District has recognized, Plaintiffs must minimally provide some factual evidence that the Secondary Defendants actually knew of this alleged, all-encompassing implied duty of non-disclosure.  At best, the evidence suggests that the Secondary Defendants might have understood that Chris was under a duty to fulfill his duties as an intern because they knew he was an intern and that he followed instructions.  That is the entire sum and substance of the factual record supporting Plaintiffs' argument regarding the Secondary Defendants' knowledge and general awareness.  But jumping from knowledge of a generic internship to even a "general awareness" of an all-encompassing duty of non-disclosure is supported by neither logic nor the record.  (Defs.' Opp'n Memo. at 26-30).

Beyond the knowledge component of aiding and abetting and indeed beyond the *scienter* component of inducement, Plaintiffs fail to show some form of actual aid by each of the individual

(non-corporate) Secondary Defendants.  As set out carefully in Defendants' opposition to CAIR-F's motion, this is especially true of Pavlis and Savit, but also of Yerushalmi and Brim.  (Defs.' Opp'n Memo. at 30-32).

### III.    Plaintiffs Have Produced No Evidence of a Misappropriated Trade Secret.

As explained at some length in Defendants' motion, the D.C. Uniform Trade Secrets Act requires actual evidence of a trade secret.  D.C. Code § 36-401.  Defendants' motion focused on Plaintiffs' failure to produce any evidence that the alleged trade secrets "[d]erive[d] actual or potential independent economic value, from not being generally known to, and not being readily ascertainable by, proper means by another who can obtain economic value from its disclosure or use."  D.C. Code § 36-401(4)(A).  Thus, in their motion, Defendants argued that Plaintiffs must be able to point to some fact that evidences at least by reasonable inference that (1) the information taken by Chris had "independent economic value"; (2) that this "independent economic value" derived in the main from it being secret; and (3) that a party from whom the information was kept secret could actually "obtain economic value from its disclosure."  (Defs.' MSJ Memo. at 35-36). In this case, Plaintiffs have failed to establish any of these three elements.

Now that we have the benefit of Plaintiffs' opposition, this focus may be narrowed even further.  Quite simply, and as pointed out above, at a purely evidentiary level, Plaintiffs merely point to raw documents or recordings without any evidentiary foundation that the information in the documents or on the recordings is proprietary to Plaintiffs or that it was in fact kept secret.  Instead of actual evidence, Plaintiffs claim by way of self-serving parenthetical descriptions in their memoranda or statements of facts that these raw documents and recordings are proprietary to Plaintiffs, confidential, and trade secrets.  But Plaintiffs make these non-evidentiary statements without providing a single authenticating declaration or other foundational evidence to actually show that the information in the documents or included on the recordings even belongs to Plaintiffs

much less that the documents and recordings contain non-public, confidential, or trade secret information.  (*See, e.g.*, Pls.' Opp'n Memo. at 14-15; Pls.' Opp'n Facts at ¶ 148 [citing to Pl.'s MSJ Facts at ¶¶ 80-85]; Pl.'s MSJ Facts at ¶¶ 72-75, 80-85).

In other words, before we even get to the question whether some proprietary and confidential information has value as a statutorily defined trade secret—which, as argued in Defendants' motion, Plaintiffs have not shown—Plaintiffs must provide some competent and admissible evidence that the alleged trade secret was Plaintiffs' and that they kept it secret.  D.C. Code § 36-401(2)(b)(ii).  They have not done so.  Moreover, as to the Secondary Defendants, Plaintiffs must again show that these specific Defendants knew of the trade secrets, and that they knew Chris had a duty of non-disclosure.  D.C. Code § 36-401(2) (defining "misappropriation" with the requirement of actual or constructive knowledge of wrongdoing).  As noted above, this knowledge requirement is simply not in the record.  And more specifically, because the undisputed record evidences that the Secondary Defendants had no involvement in the removal of any documents from Plaintiffs' offices (*i.e.*, only the disclosure of recorded conversations), Plaintiffs must show that each of the individual Secondary Defendants had the requisite knowledge to know not only that Chris had a duty of non-disclosure, but that the vague and mundane recorded conversations were trade secrets.  (Defs.' MSJ Facts at ¶¶ 166-71 [removing documents not a part of CAIR Documentary Film Project]).  Yet, Pavlis, Yerushalmi, and SANE were not even aware of the content of the recordings.  Savit merely edited a clip of the recordings identified by Chris without knowing anything about the context of the recordings.  Brim, for her part, merely checked to be certain the digital files contained content, not what that content was.  As argued in Defendants' motion and above, Plaintiffs have not come forward with any evidence that could properly raise a factual dispute precluding summary judgment for Defendants on Count Ten.

**IV.    Plaintiffs Have Failed to Produce Any Competent Evidence of Damages.**

As explained above and in Defendants' motion for summary judgment, insofar as there is no evidence of a contract and there is no basis in law or in fact to assert an aiding and abetting claim against the Secondary Defendants, Plaintiffs' common law claims do not apply to the Secondary Defendants.

However, to the extent the common law counts somehow survive as against the Secondary Defendants, and to the extent they do apply to the Gaubatz Defendants, Plaintiffs' common law claims fail because Plaintiffs have simply not provided any actual evidence of damages.  And we note here that to the extent that Plaintiffs allege any damages arising from documents removed from Plaintiffs' offices, the undisputed evidence shows that the Secondary Defendants neither sought these documents nor encouraged in any way their removal.  (Defs.' MSJ Facts at ¶¶ 166-71).  In other words, to the extent that Plaintiffs' claims for damages are almost entirely related to some alleged value in the documents, those claims are not relevant to the Secondary Defendants.

Moreover, while Plaintiffs once again cite to legal platitudes, this time about flexibility in measuring damages, what Plaintiffs fail to understand is that there must be some actual fact in the record to at least suggest by inference that Plaintiffs have been definitively harmed.  *Meeker v. Stuart*, 188 F. Supp. 272 (D.D.C. 1960) ("It is a well established principle that while ***the fact of damages must be established definitely***, the amount need not be proven mathematically.") (emphasis added).  Plaintiffs point to no actual fact of damages other than their claim based on entirely uncorroborated assertions of harm—assertions neither anchored by expert opinion nor fact witness testimony actually providing some factual basis for Plaintiffs' claim of harm.

And beyond this essential failure to show some actual harm, Plaintiffs have provided no facts to be able to ask a jury to assess the value of the claimed harm.  Indeed, turning to the case law cited by Plaintiffs we find the following example:

> [P]ersonal property is not valueless because its value may be difficult to establish or proof of the exact amount of loss is unavailable.   An injured party will not be precluded from recovering damages because he cannot prove his exact damages so long ***as there is a reasonable basis for approximation***.   [Plaintiff-appellee] was not required to prove the value of his lost property with mathematical precision, but only with a ***fair degree of probability***, or what we have termed ***reasonable certainty***.   Thus, while an award of damages ***may not be based on speculation or guesswork***, it may be a just and reasonable estimate based on relevant data.   Probable and inferential considerations as well as direct and positive proof may provide the basis for an award.

*Trs. of the Univ. of D.C. v. Vossoughi*, 963 A.2d 1162 (D.C. 2009) (contesting the basis for plaintiff's ***expert testimony*** assessing the amount of damages) (quotation marks, citations, and footnotes omitted).

Plaintiffs, however, provide nothing more than rank speculation about the personnel resources required to create different rubrics of documents.  As Plaintiffs' Rule 30(b)(6) testimony demonstrated, this was not merely rank speculation; Plaintiffs could not even tell us how or why they speculated in the way they did.  (Defs.' MSJ Facts at ¶¶ 243-45).  The case law allowing for flexibility in assessing damages exists to be sure, but that well known case law still requires facts.  Courts do not allow juries to jump into the speculation game—juries must assess <u>actual evidence</u>.  This of course is why plaintiffs, as in *Vossoughi*, who do not have at hand the facts to assess the value of some definitive harm, will often call experts to testify based upon what they have observed in the factual record and compare that with the broader marketplace based upon the science of economics or some other business expertise.  Plaintiffs have provided neither expert testimony nor lay testimony to begin the assessment if there has been a harm in the first instance, and if so, how to measure that harm.[8]

## FACTUAL APPENDIX

Defendants take this opportunity to address certain of Plaintiffs' factual claims raised in its

---

[8] Plaintiffs return to their claim that the common law allows them to recover their legal fees and expenses for "retaking" the documents.  This is not the law in the District of Columbia.  (Defs.' MSJ Memo. at 37).

opposition and not already addressed by Defendants.  (*Cf.* Defs.' MSJ Facts or Defs.' Opp'n Facts).

- In an apparent effort to portray Yerushalmi as driven by some alleged opposition to, or dislike of, Islam or Muslims, Plaintiffs refer in their opposition to alleged "screen shots" from SANE's website and from the website of the Law Offices of David Yerushalmi, P.C., as evidence of this animus.  Plaintiffs also refer to blog postings at third-party websites.  (Pls.' Opp'n Memo. at 2-3).  Defendants object on the obvious grounds.  Plaintiffs provide neither authentication nor even a remote effort at foundation for these alleged "screen shot" documents and third-party blog postings.  This is especially egregious given the fact that these alleged "screen shots" are not even complete documents, and the blog postings are patently unauthenticated, unfounded hearsay to the extent they are offered for the truth of the matters asserted.

- Plaintiffs assert that Chris was provided with an internship manual in what appears to be an effort to show that the internship followed some set procedures that Chris "accepted."  (Pls.' Opp'n Memo. at 6).  In fact, neither Wazir nor anyone else presented Chris with an internship manual.  When Defendants sought production of any internship manuals, Plaintiffs produced nothing and explained that they had no such manuals.  (Defs.' MSJ Facts at ¶¶ 99-100).

- Plaintiffs' opposition cites to their Exhibit 37 for the proposition that Chris was aware of the confidentiality of the information in Plaintiffs' offices.  (Pls.' Opp'n Memo. at 15-16).  Once again, Plaintiffs provide no foundation for this assertion, and the only thing we know about Exhibit 37 is what we learned when Plaintiffs deposed Chris.  From Chris's testimony we learned that he was speaking to someone at WND, and during this conversation he mentions a "non-disclosure agreement" that might no longer apply based upon the discovery of evidence of crimes.  When Plaintiffs' counsel asked Chris what non-disclosure agreement he was referring to, he indicated the specific agreement between his father Dave Gaubatz and CSP.  (Chris Gaubatz Dep. at 84:2-86:10; 102:5-103:20 attached as Ex. 1 to Muise Decl. at Ex. A).  Indeed, the CSP-Dave Gaubatz grant

agreement, which includes confidentiality clauses, specifically provides a special segregated exception to confidentiality when Dave Gaubatz as "Grantee" believes he has uncovered criminal conduct.  (Ex. 28 to Muise Decl. at Ex. A to Defs.' MSJ Facts [Doc. No. 154-29] at Bates No. CSP000171).  The factual record is clear and undisputable: confidentiality is only actually spoken about and only becomes an issue not between Chris and Plaintiffs but between Dave Gaubatz and CSP when Dave Gaubatz informs CSP that he wishes to publish a book about Chris's internship and what Dave Gaubatz learned about CAIR National as a result.  (Defs.' MSJ Facts at ¶¶ 188-92).

• Defendants note that Plaintiff CAIR-F's reply brief [Doc. No. 165] includes a separate statement of facts [Doc. No. 165-1] not permitted under Local Civil Rule 7(h) and also makes an entirely new argument not raised in its motion and in fact abandoned previously—to wit, Chris's alleged trespass onto real property was the tortious conduct creating the "for the purpose of" exception to the one-party consent rule.  (*See* CSP Defs.' Reply in Supp. of Mot. to Dismiss [Doc. No. 108] at 13-14) (discussing Plaintiffs' reliance only on breach of fiduciary duty and interference with contract for the exception); *Baloch v. Norton*, 517 F.Supp.2d 345, 348 (D.D.C.2007) (noting it is improper to raise new arguments in a reply brief).  Aside from the impropriety of this new argument, Plaintiffs' logic is backwards.  While Defendants do not concede that Chris trespassed to interfere with a property interest of either Plaintiff (and Defendants have never conceded that point), the facts and logic dictate at best the inverse of Plaintiffs' new argument: obtaining the B-roll recordings was a purpose of Chris's entry into the offices, not the other way around.  This logical incongruity was discussed at great length in the CSP Defendants' motion to dismiss.  (CSP Defs.' Mot. to Dismiss [Doc. No. 97] at 14-20).

## CONCLUSION

For all of the foregoing reasons, and for the reasons set out in Defendants' motion for summary judgment, Defendants respectfully request the Court grant their motion on all counts.

Respectfully submitted,

/s/ David Yerushalmi
David Yerushalmi, Esq. (DC Bar No. 978179)
LAW OFFICES OF DAVID YERUSHALMI, P.C.
1901 Pennsylvania Avenue NW, Suite 201
Washington, D.C. 20001
david.yerushalmi@verizon.net
Tel: (646) 262-0500; Fax: (801) 760-3901
*Lead Counsel for Defendants Center for Security Policy,*
*Christine Brim, Adam Savit, Sara Pavlis, and SANE*

/s/ Robert J. Muise
Robert J. Muise, Esq. (D.C. Court Bar No. MI 0052)
AMERICAN FREEDOM LAW CENTER
P.O. Box 131098
Ann Arbor, Michigan 48113
Tel (734) 635-3756 / Fax (801) 760-3901
rmuise@americanfreedomlawcenter.org
*Co-Counsel for Defendants Center for Security Policy,*
*Christine Brim, Adam Savit, Sara Pavlis, SANE, and David*
*Yerushalmi*

/s/ J. Thomas Smith
J. Thomas Smith (admitted *pro hac vice*)
J. THOMAS SMITH ATTORNEY AT LAW
2020 Fieldstone Parkway, Suite 900-264
Franklin, TN 37069-4337
Tel: (615) 790-2150
 jthomsmith@gmail.com
*Co-Counsel for Defendants Center for Security Policy,*
*Christine Brim, Adam Savit, Sara Pavlis, and SANE*

/s/ Martin Garbus
Martin Garbus (admitted *pro hac vice*)
Eaton & Van Winkle LLP
3 Park Avenue, 16th Floor
New York, NY 10016
Tel: (212) 561- 3625
mgarbus@evw.com
*Co-Counsel for Gaubatz Defendants*

/s/ Dan Horowitz
Dan Horowitz (admitted *pro hac vice*)
Law Office of Daniel Horowitz
P.O. Box 1547
Lafayette, California 94549
Tel: (925) 283-1863
horowitz@whitecollar.us
*Co-Counsel for Gaubatz Defendants*

/s/ J. William Eshelman
J. William Eshelman  (D.C. Bar No. 141317)
1747 Pennsylvania Avenue NW, Suite 300
Washington, DC 20006
Tel: 202- 454-2830
WEshelman@butzeltp.com
*Co-Counsel for Gaubatz Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically: none.

LAW OFFICES OF DAVID YERUSHALMI, P.C.

/s/ David Yerushalmi
David Yerushalmi, Esq.

– 28 –