**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS ACTION NETWORK, INC., *et al.*,<br><br>    Plaintiffs<br><br>    v.<br><br>PAUL DAVID GAUBATZ, *et al.*,<br>    Defendants | Civil Action No. 09-2030 (CKK) |

**MEMORANDUM OPINION**
(March 6, 2015)

Plaintiffs Council on American-Islamic Relations Action Network, Inc. ("CAIR-AN") and CAIR-Foundation, Inc. ("CAIR-F") bring this action against Chris Gaubatz, his father Paul David Gaubatz ("David Gaubatz"), the Center for Security Policy, Inc. ("CSP"), and three of its employees, Christine Brim, Adam Savit, and Sarah Pavlis, the Society of Americans for National Existence ("SANE"), and David Yerushalmi. The Court refers to Chris Gaubatz and David Gaubatz by their first names to avoid confusion, and the Court refers to all defendants other than Chris and David as the "Secondary Defendants." In this action, Plaintiffs seek relief under the Federal Wiretap Act, 18 U.S.C. §§ 2510-2522; the District of Columbia Wiretap Act, D.C. Code §§ 23-541–23-556; and the Stored Communications Act, 18 U.S.C. §§ 2701-2712. Plaintiffs also seek relief pursuant to various common law and statutory provisions of District of Columbia law. In essence, Plaintiffs' claims all arise from a scheme in which Chris was placed in an internship with Plaintiffs under an assumed identity, enabling him to remove internal documents and to record private conversations of Plaintiffs' employees without consent or authorization.

On March 27, 2014, the Court granted in part and denied in part Defendants' [154] Motion for Summary Judgment. As relevant here, with respect to several state law claims— breach of fiduciary duty, trespass, conversion, fraud, unjust enrichment, and misappropriation of

trade secrets—the Court denied the motion for summary judgment without prejudice. The Court required Plaintiffs to file a notice setting out, for each of those remaining claims, the conduct underlying the claim, the injury proximately caused by this conduct, and the theory of damages associated with this injury. At that time, the Court also set out further requirements for this notice, noting that each plaintiff's injury, proximate cause, and compensable damages appeared to be threshold issues for most, if not all, of those claims. The Court stated that, following the filing of this notice, Defendants would be allowed to file a renewed motion as to these remaining state law claims. Plaintiffs filed their [176] Notice of Additional Briefing on Common Law and Statutory Claims, and Defendants' filed their [180] Renewed Motion for Summary Judgment, which is now before the Court. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court GRANTS IN PART and DENIES IN PART Defendants' [180] Renewed Motion for Summary Judgment. The Court GRANTS the motion with respect to the claims for conversion, breach of fiduciary duty, unjust enrichment, fraud, and misappropriation of trade secrets. With respect to the trespass claim, the Court DENIES the motion as to Chris Gaubatz and GRANTS the motion as to all other defendants.

## I. BACKGROUND

The Court set out the complex background of this case at length in previous opinions. Specifically, the Court set out the full factual and procedural background in the Court's March

---

[1] The Court's consideration has focused on the following documents:
- Third Amended Complaint, ECF No. 126 ("Third Am. Compl.");
- Pls.' Notice of Additional Briefing on Common Law and Statutory Claims, ECF No. 176 ("Pls.' Notice");
- Defs.' Renewed Motion for Summary Judgment, ECF No. 180 ("Defs.' Renewed Mot.");
- Pls.' Opposition to Defs.' Renewed Mot., ECF No. 183 ("Pls.' Opp'n"); and
- Defs.' Reply Brief in Supp. of Defs.' Renewed Mot., ECF No. 185 ("Defs.' Reply");

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

27, 2014, Memorandum Opinion resolving the parties' motions for summary judgment. *See Council on American-Islamic Relations Action Network v. Gaubatz* ("*CAIR IV*"), 31 F. Supp. 3d 237 (D.D.C. 2014). Because the renewed motion under consideration in this opinion relies on the same facts as *CAIR IV*, the Court does not recite the full background here. The Court assumes familiarity with the previous opinions in this case and provides the necessary background for the resolution of the individual arguments before the Court today in the discussion below.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id*. Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp*., 564 F.3d 462, 465-66 (D.C. Cir.

2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in its favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

## III. DISCUSSION

Defendants move for summary judgment as to six claims: Count 3, Conversion; Count 4, Breach of Fiduciary Duty; Count 7, Trespass; Count 8, Unjust Enrichment; Count 9, Fraud; and Count 10, Trade Secret Misappropriation. Defendants argue summary judgment is warranted on each of these counts with respect to Chris Gaubatz, David Gaubatz, and all of the Secondary Defendants. The Court addresses each claim in turn.

## A.  Count 3: Conversion

Plaintiffs claim that Defendants "combined and conspired" to convert documents belonging to CAIR-AN and CAIR-F. Third Am. Compl. ¶ 97. In their Notice, Plaintiffs' clarified that they are claiming that Chris is liable directly for conversion for removing documents from the premises of Plaintiffs' office. *See* Pls.' Notice at 27-28. They also clarified that they are claiming that the remaining defendants are liable for a conspiracy to convert documents and for aiding and abetting Chris in his conversion of the documents. *See id.* at 29-33. Defendants argue that summary judgment is warranted for all Defendants. The Court first discusses the conversion claim against Chris and then discusses the claims against David and the Secondary Defendants.

Pursuant to District of Columbia law, conversion is "an unlawful exercise of ownership, dominion, and control over the personalty of another in denial or repudiation of his right to such property." *Washington Gas Light Co. v. Pub. Serv. Comm'n of D.C.*, 61 A.3d 662, 675 (D.C. 2013) (quoting *Baltimore v. District of Columbia,* 10 A.3d 1141, 1155 (D.C. 2011)).

Defendants argue that CAIR-AN's claims against all defendants must fail because none of the documents belong to CAIR-AN (as opposed to CAIR-F). Plaintiffs do not respond to this argument in their Opposition, and the Court considers it conceded. Moreover, as Defendants point out, the Court previously determined that none of the documents in this litigation belonged to CAIR-AN, quoting Plaintiffs' 30(b)(6) witness to the effect that all documents in this litigation belonged to CAIR-F and not to CAIR-AN. *See CAIR IV,* 31 F. Supp. 3d at 271. In a footnote in Plaintiffs' Notice, Plaintiffs stated that, while the conversion claim pertains "mostly" to CAIR-F, a "small subset of 68 stolen documents" belong to CAIR-AN. *See* Pls.' Notice at 23 n.13. However, Plaintiffs cannot seek to revisit the Court's previous determination regarding the ownership of the documents through a footnote in their Notice. In addition, while Plaintiffs appear to be correct that the subset of documents identified pertain to CAIR-AN's ownership of

the building in which the office is located, there is nothing about the documents themselves that suggests that the documents themselves were the property of CAIR-AN—as opposed to the property of CAIR-F, like the rest of the documents. Plaintiffs have not provided any sworn statement stating that these documents were removed by Chris or that they belonged to CAIR-AN. Certainly, this is not enough to controvert the testimony of Plaintiffs' own 30(b)(6) witness that all of the documents at issue belonged to CAIR-F, not CAIR-AN. Accordingly, summary judgment against CAIR-AN on its conversion claim against all Defendants is warranted.[2]

Plaintiffs base their claim for conversion on their deprivation of the physical documents between the time Chris removed the documents and time they were returned through the proceedings in this action.[3] Defendants argue that Plaintiffs have not identified any loss or damage as a result of their deprivation of the documents. The Court agrees. "Conversion is a tort based on the theory that the defendant 'has in some way treated the goods as if they were his own, so that the plaintiff can properly ask the court to decree a forced sale of the property.'" *Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1064 (D.C. 2014) (quoting *Pearson v. Dodd,* 410 F.2d 701, 706 (D.C. Cir. 1969)). Because the documents were ultimately returned, Plaintiffs are not entitled to the full value of the documents; Plaintiffs are, at most, entitled to damages for the period during which they were deprived of the documents. *See* Restatement (Second) of Torts, § 922 ("The amount of damages for the conversion of a chattel is diminished by its

---

[2] The Court notes as well that, given the Court's conclusion that none of the conversion claims against any of the Defendants survive summary judgment, it is ultimately immaterial whether the documents belong to CAIR-F or to CAIR-AN.

[3] Defendants argue that the content of—and information contained in—the specific documents in question cannot, as a matter of law, be the proper subject of the conversion claim. The Court need not determine whether Defendants are correct, legally, because Plaintiffs respond that the content of the documents is irrelevant to the success of their conversion claim. *See* Pls.' Opp'n at 5 ("What the contents of the documents were, consequently, is not remotely dispositive in determining whether an action for conversion is appropriate … ").

recovery or acceptance by a person entitled to its possession."); *Welch v. Kosasky*, 509 N.E.2d 919, 921 (Mass. App. Ct. 1987) ("Where, as here, the rightful owner elects to receive back the converted goods, the rule of damages, as the defendant correctly observes, is still based on value at the time of the conversion, but the converter is (1) credited with the value of the returned goods at the time of their return, and (2) charged with damages for loss of use of the goods during the period of the detention."). However, Plaintiffs have not identified any actual loss or damage caused by the time that they were deprived of the documents.

Plaintiffs never claim that the documents were damaged or otherwise diminished in value as a result of the period of detention. Plaintiffs also never claim that they were deprived of access to information in the documents because of their removal, and indeed Plaintiffs claim that the content of the documents is immaterial.[4] *See supra* note 3. Instead, Plaintiffs claim that they were deprived of the value of the paper used for printing the documents originally—which was, in their estimation, $200. However, because Plaintiffs had already printed the documents, the removal of the documents did not cause any additional loss. That is, because Plaintiffs had already printed on the paper in question, they do not—and cannot—claim that they would have used that paper for other purposes during the time when the documents were removed from their possession.

Plaintiffs also point to their inability to destroy the documents, citing this Court's opinion in *Council on American-Islamic Relations Action Network v. Gaubatz* ("*CAIR II*"), 793 F. Supp. 2d 311 (D.D.C. 2011). However, the Court only decided, in resolving Defendants' Motion to Dismiss, that Plaintiffs would not necessarily be precluded from recovering for conversion of items slated for destruction—because the right to destroy an object was one of the

---

[4] In fact, a portion of the documents removed were slated for destruction.

many sticks in an owner's bundle of property rights. *See id.* at 339 (citing *Almeida v. Holder*, 588 F.3d 778, 788 (2d Cir. 2009)). That conclusion at the Motion to Dismiss stage does not foreclose the Court's conclusion in resolving a motion for summary judgment, after discovery, that Plaintiffs have not shown loss or damage as a result of their inability to destroy the documents during the ultimately finite period of deprivation.

Plaintiffs' suggestion that damages can be measured by the amount of time necessary to produce the documents misses the point. The problem here is not an inability of Plaintiffs to measure damages; it is Plaintiffs' inability to point to any loss or injury that, in actuality, resulted from their being deprived of the documents. Because Plaintiffs cannot point to any basis in the record to support the awarding of actual damages on the conversion claim, Plaintiffs' claim for punitive damages also fails. *See Feld v. Feld*, 783 F. Supp. 2d 76, 77 (D.D.C. 2011) (citing *Maxwell v. Gallagher*, 709 A.2d 100, 104-105 (D.C. 1998)).

Plaintiffs' arguments ultimately amount to a claim that the mere fact of deprivation of the documents entitles them to damages. But that is not the law. Because they have not claimed any actual loss or damage, let alone pointed to any facts in the record that would support such loss, Plaintiffs cannot sustain a claim for conversion. Accordingly, the Court grants summary judgment to all Defendants on the conversion claim.

## B.  Count 4: Breach of Fiduciary Duty

Plaintiffs acknowledge that the elements of a claim for a breach of fiduciary duty are (1) the existence of a fiduciary duty and (2) a violation of that duty that (3) proximately causes injury. *See* Pls.' Notice at 2 (citing *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 75 (D.D.C. 1998)). Plaintiffs' claim founders on the final element, specifically their inability to claim any loss or damage resulting from the purported breach. Plaintiffs seek only punitive

damages from each Defendant and do not seek actual or compensatory damages. As stated above, although a court need not award actual damages in order to award punitive damages, there must be a basis in the record for actual damages. *See Feld*, 783 F. Supp. 2d at 77 (citing *Maxwell*, 709 A.2d at 104-105). However, Plaintiffs have not identified any concrete basis for actual damages based on Chris's purported breach of fiduciary duty.

As a preliminary matter, in denying without prejudice Defendants' first motion for summary judgment as to the claims considered in this opinion, the Court specifically instructed Plaintiffs that they were to set out the injury caused with respect to each claim, as well as a theory of damages associated with the injury. *See* Order dated March 27, 2014, ECF No. 171. Because Plaintiffs describe no injury associated with their breach of fiduciary duty claim in their Notice, *see* Pls.' Notice at 2-7, the Court considers Plaintiffs to have waived any injury presented for the first time in Plaintiffs' Opposition to the Renewed Motion for Summary Judgment. However, in the interest of completeness, the Court considers the several injuries that Plaintiffs present in their Opposition to the Renewed Motion for Summary Judgment currently before the Court. The Court concludes that none are sufficient for the breach of fiduciary duty claim to survive summary judgment.

First, Plaintiffs argue that they were injured by the removal of documents from their premises with actual damages of "at least $200." Pls.' Opp'n at 11. For the reasons already stated above with respect to the conversion claim, the Court concludes that Plaintiffs have not claimed any cognizable injury as a result of the deprivation of those documents.

Second, Plaintiffs claim that the document removal and electronic recording of conversations diminished the economic value of their confidential and proprietary information. *See id.* This argument fails for several reasons. In support of this claim, Plaintiffs cite to several

paragraphs of the Third Amended Complaint. *See id.* However, at the summary judgment stage, Plaintiffs' arguments must be supported by specific citations to facts in the record rather than allegations in their pleadings. *See Brown v. Fogle*, 867 F. Supp. 2d 61, 63 (D.D.C. 2012) ("A party opposing summary judgment 'may not rest upon the mere allegations or denials of [the complaint]' but must instead present 'significant probative evidence tending to support the complaint' in order to move the case beyond summary judgment to trial.") (quoting *Liberty Lobby, Inc.*, 477 U.S. at 248-49). *See also* LCvR 7; Fed. R. Civ. P. 56(c). Plaintiffs' additional citation that reads simply "see *supra*" is similarly insufficient to identify facts on which they may rely at this litigation stage. Pls.' Opp'n at 11. Plaintiffs have not explained, let alone demonstrated based on evidence in the record, *how* the alleged breach of fiduciary duty, in fact, diminished the economic value of specific confidential and proprietary information. A conclusory statement that the economic value has been diminished is not enough to survive summary judgment.

Third, Plaintiffs claim that the most significant damage is to their reputation. *See* Pls.' Opp'n at 11. However, Plaintiffs previously specifically disclaimed damages based on harm to their reputation, as the Court noted in *CAIR IV*, and as a result, the Court explicitly barred Plaintiffs from relying on reputational harm going forward. *See CAIR IV*, 31 F. Supp. 3d at 275.

Finally, in a single sentence in the midst of Plaintiffs' discussion of the supposed injuries discussed here, Plaintiffs argue for the first time that Defendants unjustly profited from their scheme and that this is a sufficient basis for their breach of fiduciary duty claim. This is too little and too late. Plaintiffs did not raise this theory in their Notice, which the Court ordered to provide Plaintiffs an opportunity to present their remaining various state-law claims with the requisite specificity and clarity. Moreover, in their Opposition, Plaintiffs do not explain how

Defendants profited from their breach of fiduciary duty, nor do they cite to specific facts that would support such a claim. Lastly, insofar as Plaintiffs implicitly argue that they need not show injury because Plaintiffs unjustly benefited, Plaintiffs must show injury, here, because they are seeking damages. *See Hendry v. Pelland*, 73 F.3d 397, 401 (D.C. Cir. 1996) (under D.C. law, plaintiffs relieved of obligation to show injury only when seeking forfeiture of fees that fiduciary received in that role).[5]

Accordingly, because Plaintiffs have not shown, based on evidence in the record, that they have suffered an injury as a result of Defendants' alleged breach of fiduciary duty, the Court grants summary judgment to all Defendants with respect to the fiduciary duty claim. Therefore, the Court need not address Defendants' other arguments for summary judgment regarding this count.

## C. Count 7: Trespass

Plaintiffs argue that each defendant is liable for trespass—as a result of Chris's entry onto Plaintiffs' property and his actions there—and seek nominal and punitive damages.[6] *See* Pls.' Notice at 15. "The tort of trespass is defined as 'an unauthorized entry onto property that results in interference with the property owner's possessory interest therein.'" *Greenpeace, Inc.*, 97 A.3d at 1060 (citing *Sarete, Inc. v. 1344 U St. Ltd. P'ship*, 871 A.2d 480, 490 (D.C. 2005) (emphasis removed)). The Court notes that the damages problem that surfaces for Plaintiffs with respect to several of the other claims discussed in this Memorandum Opinion is not fatal to Plaintiffs' claim

---

[5] Unlike a more traditional claim for a breach of fiduciary duty, such as a claim by a client against a lawyer, it is undisputed that Chris received no fees from Plaintiffs in his alleged role as a fiduciary. He was an unpaid intern, so there are no fees that could be disgorged.

[6] Plaintiffs claim trespass on behalf of CAIR-AN, as the building owner, and CAIR-F, as the tenant that controlled the premises. Defendants do not argue that CAIR-AN and CAIR-F cannot each present a trespass claim based on their ownership and control, respectively, of the premises.

for trespass due to the nature of this tort. Under D.C. law, plaintiffs can recover nominal damages for a claim of trespass. *See Decker v. Dreisen–Freedman, Inc.,* 144 A.2d 108, 110 (D.C. 1958). Indeed, although the D.C. Court of Appeals has not yet decided whether punitive damages are available on a trespass claim without a showing of actual damages, the Court notes that another district judge in this district was persuaded by authority from other jurisdictions and from the Restatement (Second) of Torts that an award of nominal damages on a trespass claim could support an award of punitive damages. *See Feld*, 783 F. Supp. 2d at 78. The Court need not decide, now, whether punitive damages are applicable in these circumstances because the availability of nominal damages is enough to allow the trespass claim to survive summary judgment.

The Court first discusses the trespass claim with respect to Chris, the only defendant alleged to have committed a direct trespass, and then the Court discusses the liability of the other defendants.

### a. Trespass Liability of Chris Gaubatz

Plaintiffs' trespass claim has two branches: first, that Chris trespassed because he entered Plaintiffs' property based on misrepresentation and, second, that Chris trespassed because he exceeded the consent to enter Plaintiffs' property through the course of his actions while on the property. *See CAIR II*, 793 F. Supp. 2d at 344-45. Defendants argue in their Renewed Motion that neither of these branches of Plaintiffs' claim succeeds at the summary judgment stage. Defs.' Renewed Motion at 34. However, with respect to each branch, Defendants concede that if Count I or Count II survives summary judgment, the trespass claim will survive as well. *See id.* at 34. The Court previously denied Defendants' Motion for Summary Judgment as to CAIR-F's claims against Chris pursuant to Count I (Wiretap Acts) and Count II (Stored Communications Act) in

*CAIR IV, see* 31 F. Supp. at 276, and the Court, in a separate Order issued today, declines to reconsider that conclusion. Accordingly, because Count I and Count II survive summary judgment, the trespass claim against Chris survives summary judgment, as well.[7]

### b.  Trespass Liability of Other Defendants

Plaintiffs claim, in their Notice, that David conspired with his son, Chris, for Chris to trespass onto Plaintiffs' property and that David aided and abetted Chris in his trespass. Plaintiffs also claim that the other Secondary Defendants—CSP, Brim, Savit, Pavli, SANE, and Yerushalmi—were members of the conspiracy to have Chris trespass on Plaintiffs' property and aided and abetted Chris in his trespass. Defendants argue that Plaintiffs have conceded liability with respect to the Secondary Defendants by failing to respond to Defendants' arguments on this front in their Opposition. Indeed, Plaintiffs' only statement in their Opposition in reference to defendants other than Chris is "[t]hat each and every defendant is liable for trespass has also been amply demonstrated in the record … and there are material facts in dispute regarding his claim." Pls.' Opp'n at 19 (citing Pls.' Notice at 16-23). The Court agrees that this conclusory statement is far from what is required to oppose an argument presented in a Motion for Summary Judgment. However, the Court need not determine whether this statement is enough to avoid conceding liability regarding these defendants because, upon examining the portion of Plaintiffs' Notice to which they cite, the Court concludes that summary judgment is warranted with respect to all defendants other than Chris on the trespass claim.

---

[7] The Court will resolve any legal disputes about the precise contours of the trespass claim prior to trial, as necessary, in order to clarify the jury instructions to be given. The Court notes that, while neither the D.C. Court of Appeals nor the D.C. Circuit Court of Appeals has resolved the scope of activity that would vitiate consent to enter a property, authority from other jurisdictions confirms that liability for other tortious acts linked to an entry vitiates consent for that entry. *See J.H. Desnick v. Am. Broad. Cos.*, 44 F.3d 1345, 1353 (7th Cir. 1995) (outlining circumstances when consent obtained through misrepresentation bars trespass claim).

First, the Court can swiftly resolve Plaintiffs' theory of aiding and abetting liability. Because the D.C. Court of Appeals has not recognized a claim for aiding and abetting a tort, this claim fails. *See Flax v. Schertler*, 935 A.2d 1091, 1107 & n.15 (D.C. 2007).

Second, the Court turns to the civil conspiracy claim with respect to the various defendants. "[L]iability for civil conspiracy depends on performance of some underlying tortious act." *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 446 (D.C. 2013). Civil conspiracy "is a means for establishing vicarious liability for the underlying tort." *Id.* Civil conspiracy requires "(1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement pursuant to, and in furtherance of, the common scheme." *Id.* (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000)).

The Court first addresses the liability of David, concluding that he is not liable because Plaintiff has not pointed to evidence of an agreement between him and Chris with respect to the trespass. Once again, Plaintiffs primarily cite to allegations from the Third Amended Complaint. But, as stated above, allegations in a complaint unsupported by evidence cannot serve as the basis for opposing a motion for summary judgment. The only evidence in the record to which Plaintiffs refer is several agreements to which David is a party: an agreement between David and CSP, an agreement between David and Chris, and an agreement between David and SANE. *See* Pls.' Mot. for Summ. Judgment, ECF No. 156, Exs. 20, 28. In terms of the agreement between David and Chris—the only member of the alleged conspiracy alleged to have taken an unlawful overt act in furtherance of the conspiracy—the agreement does not reference anything remotely suggesting trespass on Plaintiffs' property and does not mention Chris interning or otherwise conducting research at CAIR. While the grant application attached to David's contract with CSP

explicitly discusses placing a volunteer with CAIR to "obtain first-hand intelligence," Chris was not a party to that agreement. Plaintiffs have identified no evidence that David entered into an agreement with Chris to trespass on Plaintiffs' property. Because Chris is the only defendant alleged to have taken an unlawful overt act towards trespassing on Plaintiffs' property, Plaintiffs cannot show that David was party to an agreement that satisfies each element of a civil conspiracy to trespass. Accordingly, Plaintiffs have failed to meet their burden at the summary judgment stage with respect to the trespass claim against David.

The Court's conclusion that the conspiracy claim against David fails effectively requires the conclusion that the conspiracy claims against the other defendants fail as well. Plaintiffs have identified no evidence that any other defendant entered into an agreement with Chris. Nor have Plaintiffs identified any defendant other than Chris that took an unlawful overt act in furtherance of the conspiracy to trespass. Therefore, Plaintiffs have not shown that CSP, SANE, or Yerushalmi were parties to an agreement that satisfied each element of civil conspiracy to trespass. With respect to the remaining Defendants—Brim, Savit, and Pavlis—Plaintiffs have identified no agreements whatsoever into which they entered. Because these Defendants never entered into such agreements, there can be no conspiracy claim against them based on Chris's alleged trespass onto Plaintiffs' property.  Insofar as Plaintiffs seek to rely on these three defendants' relationship with CSP to satisfy the elements of civil conspiracy, that claim fails because of the Court's conclusion that the conspiracy claim against CSP fails. Accordingly, the Court grants summary judgment for all defendants other than Chris on Plaintiffs' trespass claims.

**D.  Count 8: Unjust Enrichment**

"'Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention

of the benefit is unjust.'" *Bregman v. Perles*, 747 F.3d 873, 876 (D.C. Cir. 2014) (quoting *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C. 2008)). Plaintiff CAIR-F[8] pursues unjust enrichment claims against Chris, David, and the Secondary Defendants (CSP, Brim, Savit, Pavlis, SANE and Yerushalmi). Defendants argue that Plaintiffs' claims fail because Plaintiffs have not identified a benefit conferred that satisfies the requirements of this tort, because there is no benefit that Defendants can return to CAIR-F, and because the alleged agreement between Chris and CAIR-F forecloses an unjust enrichment claim. Because the Court agrees that none of the Defendants have received a benefit from CAIR-F that is subject to an unjust enrichment claim, as explained further below, the Court concludes that summary judgment is warranted for each defendant. The Court, therefore, need not address the impact of the alleged agreement between Chris and CAIR-F on the unjust enrichment claims.

### a.   Unjust Enrichment of Chris Gaubatz

Plaintiffs argue that Chris received a benefit from CAIR-F—his internship experience. Plaintiffs further argue that it was unjust when he retained this benefit because he obtained the internship through misrepresentation and because he entered into the internship for inappropriate purposes. Defendants argue that this is not the type of benefit that is subject to the tort of unjust enrichment. The Court agrees with Defendants.

"Unjust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another." *4934, Inc. v. D.C. Dep't of Employment Servs.*, 605 A.2d 50, 55 (D.C. 1992). Plaintiffs have not identified any authority or law suggesting that an intangible benefit, such as the experience of an internship, could be the type of benefit that gives rise to unjust enrichment.

---

[8] Plaintiffs have clarified that only CAIR-F pursues unjust enrichment claims against Defendants. *See* Pls.' Notice at 33 n.21.

Indeed, in the arena of personal services, "it has been variously stated that a duty to pay will not be recognized where it is clear that the benefit was conferred gratuitously or officiously, or that the question of payment was left to the unfettered discretion of the recipient." *Bloomgarden v. Coyer*, 479 F.2d 201, 211 (D.C. Cir. 1973). *See also Berry Law PLLC v. Kraft Foods Grp., Inc.*, No. 14-7001, — F.3d. — 2015 WL 394094, at *2 (D.C. Cir. Jan. 30, 2015) ("No compensation is due where the 'plaintiff did not contemplate a personal fee, or the defendant could not reasonably have supposed that he did.'") (quoting *Bloomgarden*, 479 F.2d at 212). This case presents a personal services claim as well, albeit with the parties in an unusual arrangement. Here, CAIR-F claims that it performed services for Chris—providing him an internship experience—and *it* is now claiming that justice requires that *it* ought to be paid as a result of Chris's indirect benefits from the internship experience. However, it is clear that Plaintiff CAIR-F did not "contemplate a personal fee" for this service. *Id.* at *2. Plaintiff never suggests that it contemplated charging *Chris* a fee for his internship. Nor could Chris have reasonably supposed that Plaintiff contemplated such a fee. *See id.* With respect to the personal services arrangement between CAIR-F and Chris, no party imagined that the relationship would involve anything other than the gratuitous provision of services by CAIR-F. Accordingly, CAIR-F cannot maintain an unjust enrichment claim against Chris.

### b.  Unjust Enrichment of Other Defendants

The unjust enrichment claims against the other defendants fail for a simple reason: Plaintiffs have not identified any benefit that CAIR-F has "conferred" on any defendant other than Chris. Plaintiffs have identified only benefits that Defendants have received from third parties or from other defendants in this action. For example, with respect to David, Plaintiffs argue that he has benefited by receiving more than $150,000 from CSP to carry out the

underlying scheme and that he has benefited monetarily as a result of documents and other

information illicitly obtained by Chris. *See* Pls.' Notice at 35. Similarly, Plaintiffs argue that each

defendant benefited as a result of the scheme but do not identify any benefit they received from

CAIR-F.[9] Although Plaintiffs argue that these benefits are linked to the benefits that Chris

received from CAIR-F—his internship—they have pointed to no authority demonstrating that

benefits received from third-parties can be the proper subject of an unjust enrichment claim. To

the contrary, an unjust enrichment claim requires a benefit conferred by Plaintiff. *See 4934, Inc.*,

605 A.2d at 56 ("Whether there has been unjust enrichment must be determined by the nature of

the dealings between the recipient of the benefit and the party seeking restitution"). Plaintiff

CAIR-F has neither had any "dealings" with any defendants other than Chris nor conferred any

benefits upon them. As a result, these defendants have not unjustly retained such a benefit.

Accordingly, there can be no claim for unjust enrichment.

### E.   Count 9: Fraud

Plaintiffs claim that each defendant is liable for fraud and seek punitive damages—and

only punitive damages—as relief. Pursuant to District of Columbia Law, fraud requires "'(1) a

false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4)

with the intent to deceive, and (5) action taken ... in reliance upon the representation, (6) which

consequently resulted in provable damages.' " *Wetzel v. Capital City Real Estate, LLC*, 73 A.3d

1000, 1002-03 (D.C. 2013) (*quoting Kumar v. District of Columbia Water & Sewer Auth.*, 25

A.3d 9, 15 (D.C. 2011)). Like Plaintiffs' breach of fiduciary duty claim, the fraud claim founders

---

[9] With respect to CSP, Plaintiffs argue that the scheme allowed it to produce publications that would benefit CSP monetarily. *See* Pls.' Notice at 36. Plaintiffs argue that Brim, Savit, and Pavlis benefited from the scheme as salaried employees of CSP. *See id.* Plaintiffs argue that SANE benefited monetarily because CSP gave SANE $100,000 to compensate David for his work on the scheme. *See id.* With respect to Yerushalmi, Plaintiffs argue that he benefited by becoming the "'go-to' lawyer for anti-Islam lawsuits.'" *Id.*

on the grounds that Plaintiffs have not pointed to a basis for damages in the record. In response

to Defendants' argument that Plaintiffs must show damages in order to proceed on their fraud

claim, Plaintiffs concede that there must be at least a basis in the record for actual damages, even

if nominal in amount. *See* Pls.' Opp'n at 15-16. Plaintiffs then argue that there is no difference

between presumed nominal damages and nominal actual damages and that either is sufficient as

a basis for punitive damages. *See id.* at 15 n.13. Plaintiffs are incorrect. In *Maxwell v. Gallagher*,

the D.C. Court of Appeals distinguished between a nominal amount awarded for actual but

unquantifiable damages—which *could* serve as a basis for punitive damages—and nominal

damages awarded because of the mere fact of liability without any showing of loss—which *could*

*not* serve as the basis for punitive damages. *See* 709 A.2d at 104. In other words, Plaintiffs must

show a basis in the record for actual damages—that is, some actual loss—resulting from the

alleged fraud.

Perhaps because Plaintiffs argue that they need not identify actual damages, their only

attempt to identify actual damages is in a brief footnote. *See* Pls.' Opp'n at 15 n.13. There they

do not identify any actual damages; they simply include the conclusory statement that they have

"presented ample evidence that they have suffered both nominal and actual damages" as a result

of the fraud claim. *Id.* This conclusory statement is insufficient to oppose Defendants' claim that

such damages do not exist. The inadequacy of Plaintiffs' citations to the record confirms this

conclusion. First, while Plaintiffs cite to the Third Amended Complaint, these citations are

immaterial because Plaintiffs must point to facts in the record and may not rely on allegations in

their complaint. *See Brown*, 867 F. Supp. 2d at 63; LCvR 7; Fed. R. Civ. P. 56(c). Second,

Plaintiffs' unadorned reference to 20 pages in their Notice, in addition to being fatally non-

specific, is unavailing because the 10 pages in the Notice pertaining to fraud only contain one

sentence discussing harm that Plaintiffs suffered. *See* Pls.' Notice at 2-13. In that sentence,

Plaintiffs claim that they "suffered reputational and other harm caused by defendants' acts." *Id.* at

11. As noted above, Plaintiffs previously disclaimed reputational harm and may not rely on it

here, *see CAIR IV*, 31 F. Supp. 3d at 275, and, regardless, Plaintiffs' reference to harm here is

again fatally non-specific. Finally, Plaintiffs point to 46 paragraphs from their statement of

material facts without linking that citation to any specific harm. *See* Pl. CAIR-F's Statement of

Undisputed Material Facts, ECF No. 156. Once again, this reference to two score paragraphs

without further explanation is far from sufficient. Merely, gesturing at the record is not the same

as identifying a basis for damages in the record; doing so does not satisfy the requirement that

Plaintiffs identify a basis in the record for actual damages in opposing Defendants' motion for

summary judgment. In any event, in an abundance of caution, the Court reviewed the 46

paragraphs on which Plaintiffs rely, and none even hint at harm suffered by Plaintiffs; they

merely describe the scheme in which Chris participated. In sum, Plaintiffs have not pointed to a

basis in the record for actual damages. Because they have not done so, their claim for punitive

damages fails, as does their fraud claim. Accordingly, the Court will grant summary judgment to

each defendant on Plaintiffs' fraud claim.

**F.  Count 10: Misappropriation of Trade Secrets**

Plaintiffs claim that each defendant is liable for the misappropriation of trade secrets

pursuant to the D.C. Uniform Trade Secrets Act, D.C. Code § 36–401, *et seq*. Defendants argue

primarily that Plaintiffs have not shown that any of the disclosed documents qualify as trade

secrets. "To establish a trade secret misappropriation claim, [Plaintiffs] must demonstrate (1) the

existence of a trade secret; and (2) acquisition of the trade secret by improper means, or improper

use or disclosure by one under a duty not to disclose." *DSMC, Inc. v. Convera Corp.,* 479

F. Supp. 2d 68, 77 (D.D.C. 2007) (citing D.C. Code § 36–401). "The 'threshold inquiry' in every trade secret case is 'whether or not there [is] a trade secret to be misappropriated.'" *Id.* (citation omitted). For information to constitute a trade secret under the D.C. Uniform Trade Secrets Act, "(1) the 'information must be secret'; (2) 'its value must derive from its secrecy'; and (3) its owner must use reasonable efforts to safeguard its secrecy." *Id.* at 78 (quoting *Catalyst & Chem. Servs., Inc. v. Global Ground Support*, 350 F. Supp. 2d 1, 7-8 (D.D.C. 2004), *aff'd* 173 F. App'x 825 (Fed. Cir. 2006). "Damages may include both the actual loss caused by the misappropriation and the unjust enrichment caused by the misappropriation that is not taken into account in computing actual loss." D.C. Code § 36-403. "Instead of damages measured by other methods, the damages caused by misappropriation may be measured by the imposition of liability for a reasonable royalty for the unauthorized disclosure or use of a trade secret by a misappropriator." *Id*. The Court first assesses whether Plaintiffs have pointed to any documents that satisfy the criteria for trade secrets. The Court then analyzes whether the alleged misappropriation of those documents caused either actual loss or unjust enrichment. The Court concludes that Plaintiffs have not shown that any documents that could be considered to contain trade secrets generated loss or unjust enrichment.

Notwithstanding Defendants' argument that none of the documents removed qualify as containing trade secrets, Plaintiffs do not point, in their Opposition, to any basis to conclude that the documents taken derived their economic value from their secrecy. *See* Pls.' Opp'n at 21-23. Plaintiffs state simply that, in their Notice, they identified evidence to support all of the elements of misappropriation. *See id.* at 23 (citing Pls.' Notice at 37-42). Once again, this general statement is insufficient to oppose Defendants' argument that Plaintiffs have not identified documents that qualify as trade secrets. But even upon reviewing the discussion in Plaintiffs'

Notice, the Court finds that Plaintiffs have not identified any qualifying documents whose disclosure has caused loss or damage, including unjust enrichment.[10]

In attempting to identify, in their Notice, materials that could be trade secrets, Plaintiffs identify various contact lists—including lists of Islamic schools, mosques, community leaders, activists, and donors—as information taken by Chris that was not publicly available. *See* Pls.' Notice at 38. However, with the exception of the donor list, Plaintiffs do not attempt to explain *how* the value of these compilations is derived from its secrecy—as is necessary to qualify as a trade secret. *See Convera*, 479 F. Supp. 2d at 78. With respect to donor lists, Plaintiffs analogize them to customer lists, which some courts have concluded can be trade secrets in certain circumstances. *See, e.g.*, *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1114 (10th Cir. 2009) ("A customer list can be a trade secret when it is the end result of a long process of culling the relevant information from lengthy and diverse sources, even if the original sources are publicly available."). The Court doubts that Plaintiffs have shown, as necessary, that the donor lists in this case qualify as trade secrets: Plaintiffs have not identified anything about the process of developing the lists or shown how their particular value derives from their secrecy. However, the Court need not resolve that question because Plaintiffs have not identified any cognizable harm to them or unjust enrichment of Defendants regarding these lists.

While Plaintiffs state that once the donor list was disclosed other parties could seek to raise funds from those donors, *see* Pls.' Notice at 39, Plaintiffs have not claimed that their fundraising abilities were, in fact, harmed by any such disclosure. Moreover, Plaintiffs previously disclaimed damages based on a loss of donations, as the Court noted in *CAIR IV*, and as a result, the Court explicitly barred Plaintiffs from relying on loss of donations as the basis for

---

[10] Given this conclusion, the Court need not determine whether Plaintiffs took reasonable measures to protect the information contained in the documents and the recordings.

their claims going forward. *See CAIR IV*, 31 F. Supp. 3d at 275. Nor have Plaintiffs identified in

any way that Defendants were unjustly enriched as a result of obtaining these donor lists. While

Plaintiffs refer to Defendants as "industry competitors"—as if this were a standard case of

industry espionage—this characterization is wholly inconsistent with the descriptions of the

relationship between the parties throughout the briefing. It is plainly unimaginable that

Defendants are trying to appropriate Plaintiffs' donors, as a company might try to appropriate the

customers of competitor, such that the appropriation would justify the imposition of a

"reasonable royalty" for the use of that information. D.C. Code § 36-403. In sum, Plaintiffs have

not identified any loss or unjust enrichment as a result of the disclosure of the donor lists—the

only identified documents that even plausibly satisfy the trade secrets criterion of deriving their

economic value from their secrecy.[11]

Plaintiffs also argue that the recordings that Chris made contain information with

economic value. *See* Pls.' Notice at 40. However, Plaintiffs' have not shown how these

recordings contain items whose economic value derives from their secrecy. Even if Defendants

were able to use the recordings to gain understanding of the functioning of CAIR-F, as Plaintiffs

claim, that is not enough to support a trade secret claim. As with the documents, Plaintiffs have

not shown how they have been harmed by the disclosure of specific information. Nor have they

shown how Plaintiffs have been unjustly enriched, such that the imposition of a "reasonable

royalty" would be justified.

In sum, Plaintiffs have not shown, based on evidence in the record, that the documents

taken and the recordings made contained trade secrets whose disclosure caused them loss or

---

[11] Nor have they identified any loss or unjust enrichment as a result of disclosure of other
documents whose value is not derived from their being secret.

damage or caused Defendants to be unjustly enriched. Accordingly, Plaintiffs' misappropriation of trade secrets claim fails. *See Convera Corp.,* 479 F. Supp. 2d at 77-78.

## IV. CONCLUSION

For the foregoing reasons, Defendants' [180] Renewed Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. The Court GRANTS the motion with respect to the claims for conversion, breach of fiduciary duty, unjust enrichment, fraud, and misappropriation of trade secrets. With respect to the trespass claim, the Court DENIES the motion as to Plaintiffs' claim again Chris Gaubatz and GRANTS the motion as to all other defendants. An appropriate Order accompanies this Memorandum Opinion.

Dated: March 6, 2015

                                          /s/

                                       COLLEEN KOLLAR-KOTELLY
                                       United States District Judge