UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS ACTION NETWORK, INC., *et al.*, <br><br> Plaintiffs <br><br> v. <br><br> PAUL DAVID GAUBATZ, *et al.*, <br> Defendants | Civil Action No. 09-2030 (CKK) |

**MEMORANDUM OPINION and ORDER**
(August 24, 2015)

On March 27, 2014, the Court granted in part and denied in part Defendants' [154] Motion for Summary Judgment. *See Council on American-Islamic Relations Action Network v. Gaubatz* ("*CAIR IV*"), 31 F. Supp. 3d 237 (D.D.C. 2014). On March 6, 2015, the Court denied Defendants' [175] Motion for Reconsideration with respect to *CAIR IV*. That same date, the Court denied-in-part and granted-in-part Defendants' [180] Renewed Motion for Summary Judgment. *See Council on American-Islamic Relations Action Network v. Gaubatz* ("*CAIR V*"), 2015 WL 1021280 (D.D.C. Mar. 6, 2015). The Court denied the motion as to the trespass claim against Chris Gaubatz, and granted the motion in all other respects. As relevant here, the Court granted summary judgment to Defendants on the breach of fiduciary duty claim because Plaintiffs had not identified any basis in the record for any loss or damage resulting from the purported breach of fiduciary duty. *See id.* at *5. Now before the Court is Defendants' second motion for reconsideration regarding certain decisions in *CAIR IV*. For the reasons stated below, the Court, in its discretion, finds once again that reconsideration of the Court's March 27, 2014, Memorandum Opinion and Order, is not warranted.[1] Defendants' [198] Motion for Reconsideration is DENIED.

"The Court has broad discretion to hear a motion for reconsideration brought under Rule 54(b)." *Flythe v. D.C.*, 4 F. Supp. 3d 216, 218 (D.D.C. 2014) (quoting *Isse v. Am. Univ.,* 544 F. Supp. 2d 25, 29 (D.D.C. 2008)). "[T]his jurisdiction has established that reconsideration is appropriate 'as justice requires.'" *Cobell v. Norton,* 355 F. Supp. 2d 531, 540 (D.D.C. 2005). In general, "a court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Stewart v. Panetta,* 826 F. Supp. 2d 176, 177 (D.D.C. 2011) (quoting *Zeigler v. Potter,* 555 F. Supp. 2d 126, 129 (D.D.C. 2008)).

---

[1] The Court presumes familiarity with its previous opinions in this case, which thoroughly review this case's factual and procedural background.

Defendants argue that there have been two intervening changes of law that warrant reconsideration. First, they argue that there was a change in the law in light of the Court's decision in *CAIR V* to grant summary judgment to Defendants on the breach of fiduciary duty claim because, they argue, certain Wiretap Act claims are dependent on liability for a breach of fiduciary duty. Second, they argue that the Supreme Court's decision in *Elonis v. United States*, 135 S. Ct. 2001 (2015), requires this Court to reconsider its decision that there was no knowledge requirement for use and disclosure liability and for procurement liability under the D.C. Wiretap Act. The Court disagrees and concludes that neither is an intervening change in law that warrants reconsideration of the Court's prior decisions.

**Summary Judgment on the Breach of Fiduciary Duty Claim**

On March 26, 2014, the Court denied summary judgment to Chris Gaubatz with respect to liability under the Federal and D.C. Wiretaps Acts with respect to recordings where Chris was a party to the recordings because the Court concluded that there was a genuine issue of material fact as to whether an exception to the one-party consent rule applied. As the Court stated, establishing an exception to the one-party consent rule requires showing "either (1) that the primary motivation, or (2) that a determinative factor in the actor's motivation in intercepting the conversation was to commit' a criminal or tortious act." *CAIR IV*, 31 F. Supp. 3d at 256-57. The Court concluded that there was a genuine issue of material fact as to "whether the breach of a fiduciary duty was the primary motivation for, or at least a determinative factor motivating Chris Gaubatz when he intercepted conversations at CAIR–F." *Id.* at 259. On March 6, 2015, the Court granted summary judgment to the Defendants with respect to Plaintiffs' breach of fiduciary duty claim. *See CAIR V*, 2015 WL 1021280, at *5. The Court concluded that Plaintiffs could not satisfy the third element of the fiduciary duty claim because they had not shown, based on the record, that they had suffered any injury as a result of the alleged breach of fiduciary duty. *See id.* The Court did not draw any conclusions about evidence as to the other two elements of a breach of fiduciary duty claim—the existence of a fiduciary duty and a breach of that duty. *See id.* Plaintiffs now argue that the Court's conclusion that Plaintiffs had not shown evidence of injury fatally undermines the Court's previous conclusion that there was a genuine issue of material fact as to "whether the breach of a fiduciary duty was the primary motivation for, or at least a determinative factor motivating Chris Gaubatz when he intercepted conversations at CAIR–F." *CAIR IV*, 31 F. Supp. 3d at 259. The Court disagrees.

Nowhere did the Court suggest that one-party consent exception required being able to actually prevail on a breach of a fiduciary duty claim. Nor did the Court suggest that the exception depended on being able to show actual injury as a result of the breach of fiduciary duty. In fact, the Court suggested the contrary. In *CAIR IV*, the Court noted that, "[i]f Chris Gaubatz understood himself to be bound by a fiduciary duty of non-disclosure, then it appears obvious that the breach of this fiduciary duty was the primary motivation,

2

or at least a motivating factor, in his interception of the communications at issue." *Id.* at 259; *see also id.* at 261 ("The question of whether Chris Gaubatz understood himself to be bound by and violating a duty of confidentiality and non-disclosure in recording conversations from Plaintiffs' offices is a factual dispute appropriately resolved by a jury. If he did, his interception of conversations at CAIR–F, even in cases where he was party to the conversation, would not be protected by the one-party consent rule."). These statements strongly suggest that Chris's understanding of his duties and his intentions in intercepting the communications are determinative in applying the exception, not whether any injury ultimately occurs.

    That understanding is just as sensible today as it was on March 26, 2014. Whether the tortious purpose exception to the one-party consent rule is applicable rightfully depends on the interceptor's intentions *ex ante*—not on whether, *ex post*, any injury actually occurred. Otherwise the applicability of the exception would turn on the happenstance of whether any injury occurred as a result of the putative breach of fiduciary duty. Accordingly, the Court's conclusion that Plaintiffs had not shown injury based on the record—and therefore granted summary judgment on the fiduciary duty claim—is immaterial to the viability of the tortious purpose exception to the one-party consent rule.[2]

    Plaintiffs also urge the Court to reconsider the denial of summary judgment with respect to use and disclosure liability of Defendants David Gaubatz, Christine Brim and CSP under the Federal Wiretap Act, specifically with respect to those recordings in which Chris's presence was apparent. However, the Court already effectively resolved this question in *CAIR IV*.[3] With respect to these Defendants, the Court concluded that there were genuine issues of material fact as to whether they "were on notice of facts suggesting that these conversations were not protected by the one-party consent rule." *Id.* at 262; *see id.* at 262-63. Nowhere did the Court suggest that the genuine issues were dependent on actual liability for breach of fiduciary duty or, specifically, dependent on demonstration of loss or damage as a result of a breach of fiduciary duty. Indeed, the

---

[2] Insofar as Plaintiffs suggest that there is no basis for the exception because there is no evidence in the record that Chris Gaubatz acted for the purpose of a breach of fiduciary duty, that claim is wholly unconnected to the supposed basis for this motion—the Court's 2015 grant of summary judgment on the breach of fiduciary duty claim. In any event, that claim by Plaintiffs is belied by the Court's previous statements. *See, e.g.*, *CAIR IV*, 31 F. Supp. 3d at 260 ("Indeed, there is some evidence in the record to suggest he did act with this purpose or at least that it was a determinative factor.").

[3] Because the Court concluded that use and disclosure liability and procurement liability under the D.C. Act do not require actual or presumed knowledge of an underlying violation, *see CAIR IV*, 31 F. Supp. 3d at 264, 266, and because the Court declines to reconsider that conclusion here, Plaintiffs' arguments regarding the impact of summary judgment on the breach fiduciary duty claim are simply inapplicable to those claims.

language of *CAIR IV* suggests the contrary. With respect to Brim (and by extension CSP), the Court reasoned, "[i]f Brim did take a more involved role in reviewing the content of these recordings, and observed that Chris Gaubatz (1) may not have been a party to all conversations intercepted, and (2) may have been bound by a duty of non-disclosure, she could have known or had reason to know, with presumed knowledge of the law, that these recordings were in violation of the Federal Wiretap Act." *Id.* at 263. This conclusion—like the Court's related conclusion with respect to David Gaubatz—is unaffected by Court's grant of summary judgment on the breach of fiduciary duty claim. In sum, whether or not there was actual liability for a breach of fiduciary duty, including, in particular, whether Plaintiffs had demonstrated any actual loss or damages, is immaterial to the conclusion that there is a genuine issue of material fact as to whether Defendants were on notice of facts that gave them presumed knowledge that Chris Gaubatz intercepted the communications for a tortious purpose.

**The Supreme Court's Decision in *Elonis v. United States***

Defendants rely on *Elonis* to challenge the Court's previous conclusions that neither use and disclosure liability nor procurement liability under the D.C. Wiretap Act requires a defendant to "know or have reason to know that the underlying interception was made in violation of the D.C. Wiretap Act." *CAIR IV*, 31 F. Supp. 3d at 266; *see id.* at 264-65. In *Elonis*, the Supreme Court examined a Federal criminal prohibition stating that "an individual who 'transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another' is guilty of a felony and faces up to five years' imprisonment." *Elonis v. United States*, 135 S. Ct. at 2008 (quoting 18 U.S.C. § 875(c)). While the statute did not specify a required mental state for criminal liability, the Supreme Court inferred a required mental state based on the principal that "[t]he fact that the statute does not specify any required mental state, however, does not mean that none exists." *Elonis*, 135 S. Ct. at 2009.

*Elonis* simply does not control these circumstances. In *Elonis*, the Supreme Court relied on longstanding principles guiding the interpretation of Federal criminal laws. *See id.* (citing *Morissette v. United States*, 342 U.S. 246, 250 (1952); *id.* at 2010 ("When interpreting *federal criminal statutes* that are silent on the required mental state, we read into the statute 'only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct.'") (citation and quotation marks omitted) (emphasis added). *Elonis* is not a constitutional ruling and does not govern this Court's interpretation of the District of Columbia Wiretap Act. Defendants state that there is no authority to suggest that civil liability and criminal liability could diverge under a statute where civil liability is linked to criminal liability—such as the Wiretap Act. However, they do not identify any authority to suggest that, just because *mens rea* ought to be inferred under a criminal liability provision, it must be inferred for civil liability as well. Ultimately, Defendants aim to leap from the Supreme Court's inference of a required mental state under an unrelated Federal criminal statute to an inference of a required mental state under the

4

civil liability provisions of the D.C. Wiretap Act. That is (at least) one bridge too far. The Court previously conducted a thorough statutory analysis of the provisions of the D.C. Wiretap Act in arriving at its conclusions regarding the elements of use and disclosure and of procurement liability. *Elonis* does not provide a basis to revisit those conclusions now.[4]

*   *   *

In sum, the Court concludes that neither the Court's previous decision granting summary judgment to Defendants with respect to the breach of fiduciary duty claim nor the Supreme Court's opinion in *Elonis* is an intervening change of law that warrants reconsideration regarding the Court's previous decisions. Nor have Defendants demonstrated any other basis that justifies reconsideration at this time. Accordingly, the Court DENIES Defendants' Motion for Reconsideration.

It if further **ORDERED** that the parties shall file a Joint Status Report by no later than **September 15, 2015**, informing the Court how they wish to proceed in this action. Once again, the Court is willing to refer this case to mediation, if the parties wish to pursue that option. Otherwise, the Court shall set a Pre-trial Conference in order to set a schedule for pre-trial activities.

**SO ORDERED.**

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[4] Insofar as Defendants suggest that the D.C. and Federal Wiretap Acts are interpreted similarly, that argument fails because the acts differ materially with respect to language suggesting the necessity of a particular state of mind. *See CAIR IV*, 31 F. Supp. 3d at 264, 265. The Court considered those differences explicitly in arriving at its conclusion regarding the proper interpretation of the D.C. Wiretap Act. Plaintiffs have provided no basis for reconsidering those conclusions now. Furthermore, insofar as Defendants argue that principles of statutory interpretation used by the D.C. Court of Appeals suggest that some state of mind must be inferred with respect to criminal liability under the D.C. Wiretap Act—and, therefore, to the civil liability provisions, as well, Plaintiffs suggest—Plaintiffs point to no intervening change of law or other any other basis that would warrant reconsideration of the Court's previous conclusions.