## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS ACTION NETWORK, INC., *et al.*,<br><br>          Plaintiffs<br><br>          v.<br><br>PAUL DAVID GAUBATZ, *et al.*,<br>          Defendants | Civil Action No. 09-2030 (CKK) |

## MEMORANDUM OPINION and ORDER
### (December 17, 2015)

More than two-and-a-half years after the close of discovery and after the filing and resolution of multiple dispositive motions in this case, Plaintiffs have filed a [220] Motion to Reopen Discovery for Limited Purpose of Disclosing an Expert Witness on the Economic Impact of Reputational Damages. It is too late in the game to reopen discovery as proposed by Plaintiffs, particularly because Plaintiffs have disclaimed reputational damages since January 15, 2010, and the Court stated consistently that it would hold Plaintiffs to their representations to that effect. Plaintiffs argue, in their reply, that the Court "precluded" Plaintiffs from proving reputational damages *only* with respect to the common law claims, but that they were not barred from proving reputational damages with respect to the statutory claims remaining in this case. Not only does the long history of this case belie Plaintiff's reading of the Court's previous actions—as described below—Plaintiffs miss the key point: *they* disclaimed reputational damages early on in these proceedings and consistently through the discovery period in this case, and the Court simply stated that it would hold them to their representations. Nor do Plaintiffs explain why it is appropriate, long after the close of discovery and the resolution of numerous dispositive motions, to reopen discovery now—when the Court and the parties are otherwise ready to move towards a trial on the claims that remain in this case. To the contrary, the Court concludes that reopening discovery now as Plaintiffs propose would prejudice Defendants in light of the late date of this request, the costs associated with reopening discovery, and given that discovery in this case was premised on Plaintiffs' explicit disclaimer of reputational damages without qualification. Accordingly, having considered Plaintiff's motion, Defendants' opposition, and Plaintiffs' reply, the Court concludes that Plaintiffs have not shown good cause to open reopen discovery now, and the Court **DENIES** Plaintiff's [220] Motion.

**Background**

To explain fully why Plaintiffs' motion is not justified, it is necessary to review several key filings and decisions over the course of the long history of this case. Doing so shows how Plaintiffs disclaimed reputational damages early and consistently and demonstrates how the current request to reopen discovery is untimely and prejudicial to Defendants.

First, in their [34] Motion to Dismiss, filed on December 20, 2009, the Gaubatz Defendants contended that the First Amendment either protects their conduct or bars Plaintiffs from obtaining any relief in this case. *Council on American–Islamic Relations Action Network, Inc. v. Gaubatz* ("*CAIR II*")*,* 793 F. Supp. 2d 311, 330 (D.D.C. 2011) (citations omitted). Specifically, in light of "the principle that the special protections that the First Amendment affords defendants charged with defamation may also extend to other kinds of legal claims where the plaintiff seeks damages for reputational or emotional harm allegedly flowing from the publication of protected speech," *id.* (citations omitted), the Gaubatz Defendants argued that Plaintiffs are attempting to make an "impermissible end run" around the First Amendment by asserting what are effectively defamation claims seeking publication damages in the guise of various statutory and common law claims, *id*. In response, Plaintiffs *expressly disclaimed damages* for reputational or emotional harm through their Opposition to the Motion to Dismiss. Pls.' Resp. in Opp'n to Mot. to Dismiss, ECF No. 37, dated January 15, 2010, at 8 ("Plaintiff Does Not Seek Damages for Injury to its Reputation or State of Mind"). Plaintiffs explained that they are not seeking reputation damages that would be subject to a libel standard:

> It is true that the law does not permit a plaintiff to recover defamation-type damages under non-reputational tort claims. But the "defamation-type damages" which the First Amendment precludes absent satisfaction of constitutional libel standards are claims for injury to reputation and state of mind resulting from publication. *See Hustler Magazine v. Falwell*, 485 U.S. 46 (1988). The Complaint does not seek either type of damages.

*Id.* Plaintiffs' disclaimer of reputation damages is applicable to *all* the claims in the complaint, both statutory and common law. In resolving the Gaubatz Defendants' Motion to Dismiss—on June 24, 2011—the Court noted that Defendants had explicitly disclaimed damages for reputational or emotional harm and stated that "the Court will hold them to that representation." *CAIR II*, 793 F. Supp. 2d at 332. Just as Plaintiffs' disclaimer was patently applicable to all claims in the Complaint, so too was the Court's assessment of that disclaimer, and the Court's statement that it would hold Plaintiffs "to that representation." *In other words, since January 2010, Plaintiffs have disclaimed*

*reputational damages with respect to all claims in this action, and the Court has recognized the binding effect of that disclaimer since at least June 2011.*

Next, through the Court's Scheduling and Procedures Order, issued on September 1, 2011, the Court ordered that proponent's expert disclosures were due on September 7, 2012, and opponent's expert disclosures were due on December 7, 2012. *The Court notes that the deadlines for expert disclosures were approximately three years before the filing of Plaintiff's request to reopen discovery for that purpose.* Discovery closed on January 18, 2013. The Court denied a motion to extend discovery filed on the last day of discovery for a limited purpose—a purpose wholly unrelated to the issue of expert disclosures now before the Court—and discovery was therefore closed as of January 18, 2013.[1] Plaintiffs never sought an extension of discovery with respect to expert witnesses until the pending motion was filed—more than 2.5 years after the close of discovery.

During discovery, Plaintiffs explicitly disclaimed damages for lost donor revenue and damages related to diminution in lobbying power. *See* Pl. CAIR's Supplemental Answers to CSP Defendants' First Set of Interrogatories Directed to Plaintiffs, ECF No. 154-17 (attached to Declaration of Robert J. Muise, Esq. (Exhibit A to Defs.' Motion for Summary Judgment), ECF No. 154)) ("Pls.' Supp. Answers"), ¶¶ 12-13. The full responses, which were dated May 10, 2012, are as follows:

> *12. Identify all donors to CAIR from 2005 to the present and the amount of the donation provided from each broken down by month and year. Indicate for each donation whether it was made to CAIR-AN or to CAIR-F.*
>
> Answer: Without waiving the previous objection, Plaintiffs are no longer seeking damages for lost donor revenue.
>
> *13. Identify all legislators and policymakers with whom you or any of your agents or employees had contact from 2005 to the present, including the name of the legislator or policymaker, the nature of each contact, which CAIR employee(s) or agent(s) made the contact, the medium of the contact (i.e., face-to-face, telephone, email, letter, etc.), the purpose of each contact, and the date of each contact. Indicate for each contact whether it was made by CAIR-AN or CAIR-F.*

---

[1] On the date discovery was set to close, Plaintiffs moved to extend the close of discovery for 30 days to permit the deposition of two non-party witnesses. *See* Pls.' Motion for Extension of Discovery Period, ECF No. 144. That motion was opposed, and the Court denied the motion shortly thereafter on the grounds that (1) the motion was untimely, (2) Plaintiffs had failed to show good cause for extending the discovery period, and (3) Plaintiffs had failed to comply with this Court's Scheduling and Procedures Order in that they had failed to explain how the requested extension would affect other deadlines set in this case, including the mediation scheduled for that time period. *See* Order, dated February 8, 2013, ECF No. 147.

> Answer: Without waiving the previous objection, Plaintiffs are no longer
> seeking damages related to the loss of contact with legislators and
> policymakers.

*Id.* Plaintiffs' disclaimers were categorical, not limited in any way to certain claims in this action. And Plaintiffs never sought to repudiate these categorical disclaimers during discovery or to further amend these responses.

Plaintiffs' Third Amended Complaint, which was filed during the discovery period,[2] further affirmed the disclaimers issued through Plaintiffs' discovery responses, stating explicitly that Plaintiffs did not seek damages pertaining to lost donations or diminished political contacts on any claims. *See* Third Am. Compl., ECF No. 126, ¶¶ 5, 7-9.[3] In addition, the Third Amended Complaint nowhere mentions damages for "reputation" standing alone. Indeed, in resolving Plaintiffs' motion for leave to file the Third Amended Complaint, the Court noted that "Plaintiffs propose to narrow the scope of their demand for damages to reflect that they no longer seek damages for lost donations or diminished

---

[2] Plaintiffs filed a motion to amend their complaint, with the proposed Third Amended Complaint attached, on March 9, 2012. The Court granted that motion in part and denied that motion in part on September 17, 2012; to the extent relevant to the discovery question before the Court today, the motion to amend was granted.

[3] The relevant provisions of the Prayer for Relief in the Third Amended Complaint provide as follows:

> 5. Award Plaintiffs compensatory damages in an amount to be determined at trial *but not including damages pertaining to lost donations or diminished political contacts*;
>
> * * *
>
> 7. For each violation of 18 U.S.C. § 2701 [the Stored Communications Act], award Plaintiffs damages reflecting the actual damages suffered *but not including damages pertaining to lost donations or diminished political contacts* by Plaintiffs and any profits made by Defendants as a result of each such violation or statutory damages in the amount of $1,000, whichever is greater;
>
> 8. For each violation of D.C. Code § 23-542 and 18 U.S.C. § 2511 [the Federal and D.C. Wiretap Acts], award Plaintiffs damages reflecting the sum of the actual damages suffered by Plaintiffs *but not including damages pertaining to lost donations or diminished political contacts* and the profits made by Defendants or, if higher, liquidated damages computed at the rate of $100 a day for each day of violation, or $1,000 for each violation of D.C. Code § 23-542 and $10,000 for each violation of 8 U.S.C. § 2511, whichever is greatest;
>
> 9. For each violation of D.C. Code § 36-403 [Misappropriation of Trade Secrets], award Plaintiffs damages reflecting the sum of the actual damages suffered by Plaintiffs *but not including damages pertaining to lost donations or diminished political contacts and the profits made by Defendants*.

Third Am. Compl. ¶¶ 5, 7-9 (emphasis added).

political contacts." Memorandum Opinion, ECF No. 125, at 28. The Court also noted that "the proposed amendment would only narrow the scope of Defendants' potential liability and further simplify this case." *Id.*

Furthermore, Defendants directly relied on these several disclaimers in their Motion for Summary Judgment. *See* Defs.' Mot. for Summ. J. and Stmt. of Undisp. Material Facts, ECF No. 154, ¶ 238 ("Plaintiffs have repudiated any reputational damages.") (citation omitted); *id.* ¶ 239 ("Plaintiffs have repudiated any damages from loss of donations or diminution in lobbying influence.") (citations omitted). Plaintiffs did not dispute the factual statements in Defendants' Statement of Undisputed Material Facts in opposing Defendants' motion for summary judgment. *See* Plaintiffs' Response to Defendants' Statements of Material Fact, ECF No. 164-1. Defendants relied on these factual statements to argue that Plaintiffs have no compensable or common law damages, but the underlying factual statements were in no way limited to those specific legal claims. *See* Mem. of Points & Auth. in Supp. of Defs.' Mot. for Summary Judgment, ECF No. 154-64, at 37-43. In responding to Defendants' argument regarding damages, Plaintiffs argued that they could prove damages on the common law claims, but they never referred to damages for reputational harm, loss of donations, or diminution in lobbying ability. *See* Pl.'s Mem. in Opp'n to Defs.' Mot. for Summary Judgment, ECF No. 164, at 35-41. *In sum, both parties' briefing regarding Defendants' Motion for Summary Judgment confirms that Plaintiffs had disclaimed reputational damages.*

Through an opinion issued on March 27, 2014, the Court resolved the summary judgment motions that had been filed, denying Plaintiff CAIR-Foundation's [156] Motion for Partial Summary Judgment and granting in part and denying in part Defendants' [154] Motion for Summary Judgment. *Council on American-Islamic Relations Action Network v. Gaubatz* ("*CAIR IV*"), 31 F. Supp. 3d 237, 243 (D.D.C. 2014). The Court fully resolved Defendants' motion with respect to Plaintiffs' Wiretap Act claims (Count I), Plaintiffs' Stored Communications Act claims (Count II), Plaintiffs' claims for breach of contract (Count V), and Plaintiffs' claims for tortious interference with contract (Count VI)—granting in part and denying in part the motion with respect to those claims.[4] *See CAIR IV*, 31 F. Supp. 3d at 276-77.

With respect to the six remaining claims—Breach of Fiduciary Duty, Trespass, Conversion, Fraud, Unjust Enrichment, and Misappropriation of Trade Secrets—the Court denied Defendants' motion without prejudice to allow the parties to submit additional briefing as to those claims. *Id.* at 277. With respect to those claims, Defendants had argued that there was no evidence that Plaintiffs were actually damaged by the actions by Defendants that underlie this case. The Court concluded that it could not,

---

[4] The exact disposition of those specific claims is complex not and material here. *See CAIR IV*, 31 F. Supp. 3d at 276-77.

definitively, at that time, resolve Defendants' motion for summary judgment with respect to these six claims. *Id.* at 275. Specifically, the Court found as follows:

> The Court finds that Plaintiffs have thus far been frustratingly unclear as to the injuries at issue for each of the claims. In addition, Plaintiffs have not specified which injury, if any, corresponds to which of the Plaintiffs, and have made little effort to explain the proximate cause linking the alleged tortious conduct to the injuries at issue. Instead, Plaintiffs speak in broad generalizations, asserting injuries and damages and proximate cause across multiple counts and multiple Plaintiffs. As a result, the Court has received only opaque and largely unhelpful briefing from both parties on the issues of injury, proximate cause, and damages. Plaintiffs are not specific as to these issues, making resolution of the threshold questions of injury and proximate cause next to impossible for the Court. For their part, Defendants appear to be guessing at what injuries and which damages theories Plaintiffs are asserting for each of these claims, which provides no further assistance to the Court.

*Id.* (citations omitted). The Court, therefore, denied Defendants' motion for summary judgment without prejudice with respect to these common law claims to allow the parties to provide the Court "with more focused and specific briefing." *Id.* Before allowing a renewed motion for summary judgment, the Court required Plaintiffs to file a Notice regarding their claims as follows:

> Plaintiffs shall file a notice with both the Court and Defendants that sets out in clear terms *with citations to the record,* for each of these remaining claims, the conduct underlying this claim, the injury proximately caused by this conduct, and the theory of damages associated with this injury. This briefing should specifically set out the conduct engaged in by *each Defendant*. This filing should also explain how this conduct proximately caused the injury claimed by Plaintiffs. Furthermore, in making this explanation, Plaintiffs should set out the injury to *each Plaintiff,* CAIR–AN and CAIR–F, that was proximately caused by the alleged conduct. Plaintiffs must also explain whether this injury is legally cognizable under each specific claim. **The Court notes that Plaintiffs have specifically disclaimed any damages based on harm to their reputation from Defendants' alleged actions, as well as damages based on a loss in donations as well as a diminution in their ability to lobby. Accordingly, Plaintiffs may not rely on these theories of injury to support their remaining claims.** To the extent Plaintiffs are premising their injury for a particular claim or Plaintiff on the alleged disclosure of confidential or proprietary information, they must explain specifically

> which documents they refer to, why these documents are confidential or
> proprietary, and how this disclosure harmed them. In explaining any harm
> from disclosure, Plaintiffs should address the fact that some or all of the
> documents were returned to Plaintiffs and not destroyed or lost and that
> some or all of the documents were designated by Plaintiffs to be destroyed
> as no longer having value to Plaintiffs. Finally, Plaintiffs should
> specifically describe which specific theory of damages of the many
> asserted by Plaintiffs is used to quantify the injury asserted for each
> specific claim, and explain why this theory quantifies the injury with "a
> fair degree of probability."

*Id.* at 275-76 (citations omitted; emphasis in italics in original; emphasis in bold added).
After this Notice was filed, Defendants would be permitted to re-file a motion for
summary judgment as to these claims. *Id.* at 276.

To reiterate, the Court "note[d] that Plaintiffs have specifically disclaimed any
damages based on harm to their reputation from Defendants' alleged actions, as well as
damages based on a loss in donations as well as a diminution in their ability to lobby." *Id.*
at 275. Therefore, the Court concluded that "Plaintiffs may not rely on these theories of
injury to support their remaining claims." *Id.* Plaintiffs now suggest that this statement by
the Court only limited Plaintiffs from relying on such damages with respect to the
*common law* claims. But the Court's statement is not limited in any such way. While the
Court's statement was in the context of a discussion of the common law claims, there is
nothing in the Court's statement that suggests that the disclaimer of such reputational
damages was limited to those specific claims. Indeed, the Court's statement that the
Plaintiffs have disclaimed reputational damages was based on *Plaintiffs'* previous
disclaimer of reputational damages in their Opposition to Defendants' Motion to Dismiss,
discussed above, and the Court's statement that Plaintiffs had disclaimed damages
pertaining to donations and lobbying was based on Plaintiffs' explicit disclaimers to that
effect in their discovery responses. *See id.* (citing [154] Defs.' Mot. for Summ. J and
Stmt. of Undisp. Material Facts, ¶¶ 238-240). None of those disclaimers by Plaintiffs had
been limited to damages for certain claims. In short, the Court simply recognized that
Plaintiffs had previously disclaimed such categories of damages and that Plaintiffs had,
until that point, never retreated from that disclaimer. The Court stated that it would hold
Plaintiffs to their word—and the Court will continue to do so today.

Plaintiffs subsequently filed their [176] Notice of Additional Briefing on Common
Law and Statutory Claims, as required by the Court. For the first time since Plaintiffs had
disclaimed harm based on reputation, Plaintiffs claimed damages to their reputation,
explaining that their fraud claim and their breach of fiduciary duty claim were both, in

part, based on reputational harm.[5] *See* Pls.' Notice at 5, 11. Beyond stating that Plaintiffs suffered "reputational and other harm," *id.*, Plaintiffs provided no details regarding the claimed harm. Nor did Plaintiffs address the fact that they had previously disclaimed reputational harm, as the Court explained and emphasized in the Memorandum Opinion that set out the parameters for the required Notice. In addition, Plaintiffs did not seek at that time—or at any time until October 14, 2015—to reopen discovery with respect to reputational harm.

After Defendants' [180] Renewed Motion for Summary Judgment was fully briefed, the Court granted Defendants' renewed motion for summary judgment with respect to the claims for conversion, breach of fiduciary duty, unjust enrichment, fraud, and misappropriation of trade secrets through a Memorandum Opinion issued on March 6, 2015.[6] *Council on American Islamic Relations Action Network, Inc. v. Gaubatz* ("*CAIR V*"), 82 F. Supp. 3d 344, 354, 361 (D.D.C. 2015) *reconsideration denied*, No. CV 09-2030 (CKK), 2015 WL 5011583 (D.D.C. Aug. 24, 2015). Insofar as Plaintiffs' claims were rooted in reputational harm, the Court's denial was based on Plaintiffs' previous disclaimer of such harm. *Id.* at 354, 359. Specifically, with respect to the breach of fiduciary duty claim, the Court noted that the Plaintiffs had previously specifically disclaimed damages based on harm to their reputation and, as a result, the Court had explicitly barred Plaintiffs from relying on reputational harm going forward. *Id.* at 354 (citing *CAIR IV*, 31 F. Supp. 3d at 275). Similarly, with respect to the fraud claim, the

---

[5] With respect to the Breach of Fiduciary Duty claim, Plaintiffs claimed as follows:

> Because defendants participated together in making an agreement to engage in their outrageous plan, because they actually engaged in continual unlawful acts of fraud, inter alia, *because plaintiffs suffered reputational and other harm proximately caused by defendants' acts*, and because defendants engaged in a series of overt acts over a substantial period of time pursuant to and in furtherance of their outrageous common scheme, they are liable as co-conspirators and as aiders and abettors for punitive damages.

Pls.' Notice at 5 (emphasis added and footnotes omitted). With respect to the Fraud claim, Plaintiffs claimed as follows:

> Because defendants collectively participated in an outrageous plan, titled "The CAIR Film Project," because they actually engaged in consistent and unlawful acts of fraud, *because plaintiffs suffered reputational and other harm proximately caused by defendants acts*, and because defendants engaged in a series of overt acts over a substantial period of time pursuant to and in furtherance of their outrageous common scheme, defendants are all liable as co-conspirators and as aiders and abettors for punitive damages.

*Id.* at 11 (emphasis added and footnotes omitted).

[6] For reasons not relevant here, the Court denied Defendants' renewed motion for summary judgment with respect to Plaintiffs' trespass claim against Chris Gaubatz and granted the motion with respect to the trespass claims against all other defendants. *CAIR V*, 82 F. Supp. 3d at 355-57.

Court once again concluded that Plaintiffs could not rely on reputational harm as they had previously disclaimed such harm. The Court also concluded that Plaintiffs' reference to harm in connection with the fraud claim was fatally non-specific. *Id.* at 359. Finally, the Court notes, that while *Defendants* filed a motion to reconsider that decision, *Plaintiffs* never did so and never submitted any filings—until the present motion—suggesting that the Court erred in concluding that Plaintiffs had disclaimed reputational harm as to all claims in this action.

**Discussion**

Plaintiffs have not shown good cause for reopening discovery now as would be necessary for this Court to modify its earlier Scheduling and Procedures Order setting discovery deadlines in this case. *See Hussain v. Nicholson*, 435 F.3d 359, 367 (D.C. Cir. 2006) (Rogers, J., concurring) ("Federal Rule of Civil Procedure 16(b) provides that a scheduling order 'shall not be modified except upon a showing of good cause ....' ").

As explained in detail above, beginning in January 2010, Plaintiffs disclaimed damages based on reputational harm, and beginning in March 2012, Plaintiffs explicitly disclaimed damages based on the loss of donor revenue and diminution in lobbying ability. Plaintiffs never deviated from this position throughout the entirety of the 16-month discovery period in this case or during the first round of summary judgment briefing in this case. Nor did Plaintiffs ever indicate that those disclaimers were somehow limited to certain claims, and, indeed, the disclaimers themselves explicitly indicate the contrary. In light of those representations, the Court has consistently reiterated that Plaintiffs have disclaimed reputation-related damages, the Court has stated that it would hold Plaintiffs to those representations, and the Court has relied on those representations in resolving the parties' dispositive motions. Only when the Court required Plaintiffs to indicate with specificity the damages with respect to six common law claims did Plaintiffs begin to suggest that there was, indeed, reputational harm—albeit providing no specificity as to the nature of such "reputational harm." And while the parties briefed and the Court resolved several dispositive motions, including two motions for reconsideration, Plaintiffs *never* sought to reopen discovery with regard to the disclosure of expert witnesses or otherwise as to reputational harm—until the pending motion was filed.

In other words, Plaintiffs only sought to reopen discovery in October 2015—long after discovery was closed, after the resolution of multiple dispositive motions, and when the Court was ready to proceed to move towards trial in this case. *See* Memorandum Order and Opinion, dated August 24, 2015, ECF No. 208, at 5 ("It i[s] further **ORDERED** that the parties shall file a Joint Status Report by no later than **September 15, 2015**, informing the Court how they wish to proceed in this action. Once again, the Court is willing to refer this case to mediation, if the parties wish to pursue that option.

Otherwise, the Court shall set a Pre-trial Conference in order to set a schedule for pre-trial activities."). Almost six years after Plaintiffs expressly disclaimed reputational damages, Plaintiffs may not now change their tune.[7] Not only is it far too late to do so, but it is clear that Defendants would be prejudiced by reopening discovery to allow for expert disclosures as this point.

While Plaintiffs' discovery motion purports to be limited to the identification of one or more expert witnesses, it is unclear what the factual predicate for any new experts would be—particularly because Plaintiffs had disclaimed such damages before and during the discovery period. Indeed, Defendants point out that, if Plaintiffs were allowed to disclose one or more experts at this time, they might seek to schedule additional depositions of Plaintiffs in order to discover the factual basis for the newly disclosed expert(s). Defendants may also seek to identify a counter-expert in response to any experts that Plaintiffs identify. All such experts would likely need time to prepare expert reports. Therefore, reopening discovery for these purposes would take significant time—when the Court is ready to begin preparations for trial. Opening discovery now would also be unfair to Defendants given that discovery in this case and numerous dispositive motions were premised on Plaintiffs' disclaimer of reputational damages.

Although a trial date has not yet been set in this case, the dispositive motions in this case are finally resolved, and it is now time to prepare for trial rather than time to reopen discovery, particularly when certain prior decisions of the Court were premised on the explicit disclaimer of reputational damages. Reopening discovery at this point, even for a limited purpose, would not serve the "just, speedy, and inexpensive" resolution of this matter. Fed. R. Civ. P. 1. Accordingly, for all of these reasons, and given the long history of this case recounted above, the Court finds that Plaintiffs have not shown good cause to reopen discovery, and Plaintiffs' motion is **DENIED**.

By separate Order, the Court will schedule a Status Hearing to discuss pretrial matters in this case.

**SO ORDERED.**

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[7] The Court notes that this request to reopen discovery comes as Plaintiffs retained new attorneys—once again—purportedly to take this case to trial. *See* Pl.'s Mot., ECF 220, at 3. While it is Plaintiffs' prerogative to switch jockeys mid-course, they may not rewind time and begin the race again. To do so would be neither fair nor efficient.