## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS ACTION NETWORK, INC., *et al*.,

          Plaintiffs,

    -v.-

PAUL DAVID GAUBATZ, *et al*.,

          Defendants.

CIVIL NO: 1:09-cv-02030-CKK-JMF

## JOINT PRETRIAL STATEMENT

Defendants Center for Security Policy, Christine Brim, Society of Americans for National Existence, and David Yerushalmi ("CSP Defendants") hereby submit the attached Joint Pretrial Statement **on behalf of all the parties** to this litigation as required by the Court's Order dated January 12, 2017 [Dkt. Entry 237]).

Also, pursuant to the Court's Order, the parties contemplate that Plaintiffs will file separately today their objections to various portions of the Joint Pretrial Statement prepared by the CSP Defendants and to various portions of the Joint Pretrial Statement prepared by the Gaubatz Defendants. Plaintiffs will also file separately today their responses to the separate Defendants' objections to those portions of the Joint Pretrial Statement prepared by Plaintiffs. Similarly, the Gaubatz Defendants will file separately their respective objections, responses, and replies, as will the CSP Defendants.

[Signature page follows.]

Respectfully submitted,

*/s/ David Yerushalmi*
David Yerushalmi, Esq. (DC Bar No. 978179)
LAW OFFICES OF DAVID YERUSHALMI, P.C.
1901 Pennsylvania Avenue NW, Suite 201
Washington, D.C. 20001
david.yerushalmi@verizon.net
Tel: (646) 262-0500; Fax: (801) 760-3901
*Lead Counsel for Defendants Center for Security Policy,*
*Christine Brim, Adam Savit, Sara Pavlis, and SANE*

*/s/ Robert J. Muise*
Robert J. Muise, Esq. (D.C. Court Bar No. MI 0052)
AMERICAN FREEDOM LAW CENTER
P.O. Box 131098
Ann Arbor, Michigan 48113
Tel (734) 635-3756 / Fax (801) 760-3901
rmuise@americanfreedomlawcenter.org
*Co-Counsel for Defendants Center for Security Policy,*
*Christine Brim, Adam Savit, Sara Pavlis, SANE, and David*
*Yerushalmi*

*/s/ J. Thomas Smith*
J. Thomas Smith (admitted *pro hac vice*)
J. THOMAS SMITH ATTORNEY AT LAW
2020 Fieldstone Parkway, Suite 900-264
Franklin, TN 37069-4337
Tel: (615) 790-2150
jthomsmith@gmail.com
*Co-Counsel for Defendants Center for Security Policy,*
*Christine Brim, Adam Savit, Sara Pavlis, and SANE*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically: none.


*/s/ David Yerushalmi*
David Yerushalmi, Esq.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS ACTION NETWORK, INC., *et al*.,<br>　　　　　　　Plaintiffs,<br><br>　　　-v.-<br><br>PAUL DAVID GAUBATZ, *et al*.,<br><br><br>　　　　　　　Defendants. | CIVIL NO: 1:09-cv-02030-CKK-JMF |

**JOINT PRETRIAL STATEMENT**

**Plaintiffs' & CSP Defendants' Proposed Statement of The Case**

　　　　Plaintiffs Council on American-Islamic Relations Action Network, Inc. ("CAIR-AN") and CAIR-Foundation, Inc. ("CAIR-F") bring this action against Defendants Paul David Gaubatz ("David Gaubatz"), and his son Chris Gaubatz, the Center for Security Policy ("CSP"), Christine Brim, David Yerushalmi, and the Society of Americans for National Existence ("SANE"). CAIR-F (collectively referred to as "CAIR") alleges that the Defendants violated the Federal and District of Columbia Wiretap Acts when Chris Gaubatz volunteered as an intern at CAIR-F and recorded his interactions at CAIR's D.C. offices with an inconspicuous video recording device as part of a documentary organized and sponsored by CSP to educate the public about the network of Muslim Brotherhood organizations operating in the United States. CAIR-F also alleges that Defendants violated the Stored Communications Act by taking documents from a CAIR-F network server without authorization. Finally, CAIR-F and CAIR-AN allege Chris Gaubatz trespassed by gaining entry into their offices under false pretenses. All Defendants deny that Chris Gaubatz trespassed

or that he unlawfully recorded oral communications at CAIR's offices or that he took any documents from CAIR-F's network server.

## Gaubatz Defendant's Proposed Statement of The Case

Plaintiffs Council on American-Islamic Relations Action Network, Inc. ("CAIR-AN") and CAIR-Foundation, Inc. ("CAIR-F") bring this action against Chris Gaubatz, his father Paul David Gaubatz ("David Gaubatz"), the Center for Security Policy, Inc. ("CSP"), its employee, Christine Brim, the Society of Americans for National Existence ("SANE"), and attorney David Yerushalmi. Plaintiffs allege violations of the Federal and District of Columbia Wiretap Acts, the Stored Communications Act, and Plaintiffs also allege common law trespass.

Plaintiff CAIR-AN is an advocacy group with a stated mission that includes enhancing the understanding of Islam and promoting a positive image of Muslims in the United States. Plaintiff CAIR-AN rents their Washington, D.C. office space from Plaintiff CAIR-F, an organization closely related to Plaintiff CAIR-AN.

Plaintiffs claim that there was a conspiracy by the defendants, to have Chris Gaubatz infiltrate the CAIR organizations under the guise of being a Muslim convert. Chris Gaubatz did in fact adopt the name David Marshall, did represent himself to be a convert and did obtain a position as an unpaid intern. During the time that he was a volunteer, Chris Gaubatz performed the normal duties assigned to him. During that time, he used a hidden camera to record video footage. He also obtained documents that were stored in paper form and documents that were stored electronically. These items were provided to Chris Gaubatz' father, David Gaubatz and later to some of the other defendants. Plaintiffs contend that these materials were private, protected and should not have been obtained by Chris Gaubatz nor shown to third parties such as the other defendants. There is no dispute that many of the documents were shown by Chris Gaubatz to the other defendants and that

a book titled "The Muslim Mafia" was published using some of the materials obtained from the CAIR defendants. Some of the materials were also provided to law enforcement and to members of Congress.

Defendants CSP, Christine Brim, SANE, Yerushalmi, David Gaubatz, and Chris Gaubatz, assert that they legitimately researched the CAIR defendants for the purpose of creating a fact based news documentary and that they never needed to, nor intended to, act in any manner that was unlawful. They contend that all of the material was gathered legally and that the contents of the book and the intended documentary, were of legitimate interest and concern to the public.

Defendants also assert that the CAIR defendants were engaged in unlawful and criminal conduct and that they had a legal obligation to preserve the paper and electronic documents as potential evidence. The basic rights and obligations under the statutes and common law that constitute plaintiff's theory of the case do not change if defendant's allegations against CAIR are true or untrue. However, the allegations may be relevant to your determination of certain legal issues in this case. Those issues include, assessing whether CAIR had a legitimate expectation of privacy in their premises when certain video recordings were made and whether or not a special duty of trust existed between Chris Gaubatz and plaintiff CAIR-AN. The allegations may also be relevant when you are asked to determine the motivation or state of mind of one or more of the defendants. The court will provide specific instruction on all legal matters at a later time.

## PLAINTIFFS' STATEMENT OF CLAIMS

**Breakdown of Claims**:

- **Defendant Chris Gaubatz**
    - Primary liability under the Federal and DC Wiretap Acts
    - Primary liability under the Stored Communications Act
    - Trespass (by CAIR-F and CAIR-AN)

- **Defendants David Gaubatz, CSP, and Brim**

  o Use and disclosure liability under the Federal and DC Wiretap Acts

  o  Procurement liability under the DC Wiretap Act

  o  *Respondeat superior* liability under the Federal and DC Wiretap Acts

  o  *Respondeat superior* liability under the Stored Communications Act

- **Defendant Yerushalmi**

  o  Procurement liability under the DC Wiretap Act

  o  *Respondeat superior* liability under the Federal and DC Wiretap Acts

  o  *Respondeat superior* liability under the Stored Communications Act

- **Defendant SANE**

  o Procurement liability under the DC Wiretap Act

## FEDERAL/DC WIRETAP ACT(S) – PRIMARY LIABILITY

### (Chris Gaubatz)

In order to prove a violation of either the Federal or the DC Wiretap Acts, Plaintiff must prove (1) Defendant intercepted a communication, (2) the intercepted communication was oral (or wire or electronic), and (3) Defendant acted intentionally. In this case, it is undisputed that Chris Gaubatz used an inconspicuous button camera to intercept the communications of individuals at CAIR offices. The interception was oral because they were all recorded in violation of the speakers' reasonable expectation of privacy.  *See e.g.*, DonVito Dep. at 44:3-10 (purpose of inconspicuous camera was to record things that that were revealed in the CAIR office that would not have been revealed openly)

This interception was intentional, even according to Defendants' version of the facts, whereby the purpose of the camera was to obtain B-roll footage for their CAIR Documentary Film Project. Accordingly, because Defendants have raised the defense of consent, it is their duty to prove that Gaubatz was a party to each and every oral communication that he secretly recorded. (*see e.g.*, Plaintiff's Ex. 1 to Response to MSJ at Aug. 7, 2008, 01:21:40-01:22:05, where Chris is standing behind someone talking on the phone while speaker has his back turned to Chris).

However, even if Defendants can prove that Chris Gaubatz was a party to every conversation he recorded, there is still liability if the jury finds that the interception was done for the purpose of committing any criminal, tortious, or any other injurious act. Thus, because the

conversations were intercepted for the purpose of disseminating them, Chris (pursuant to David's instructions which were a product of David's agreement with CSP) recorded the oral communications for the purpose of breaching his fiduciary duty of non-disclosure to CAIR.

## FEDERAL/DC WIRETAP ACT(S) – *RESPONDEAT SUPERIOR* LIABILITY

### (David Gaubatz, CSP, Christine Brim, Yerushalmi, SANE)

To prevail on its claim for *respondeat superior* liability under the Federal and D.C. Wiretap Acts, Plaintiffs must prove that the Defendants were acting as agents of Chris Gaubatz. Defendants concede that Chris Gaubatz was an agent of his father, Paul David Gaubatz. Thus, if Chris Gaubatz is primarily liable for violation(s) of the Federal and DC Wiretap Acts, the jury must also find Paul David Gaubatz liable through the theory of *respondeat superior*. The question remains, however, whether David Gaubatz can be classified as an agent of the other Defendants (thereby creating a sub-agent relationship). If Chris Gaubatz is primarily liable for violation(s) of the Federal and DC Wiretap Acts, and the jury finds that David Gaubatz was in fact an agent of any or all of the other Defendants, then the jury must also find those other Defendants liable for violation(s) of the Federal and DC Wiretaps Acts through the theory of *respondeat superior*.

In determining whether David Gaubatz could be considered an agent of the other Defendants, the jury must determine whether these Defendants each had the right to control and direct David Gaubatz in the performance of his work and the manner in which the work was to be done. Defendants claim that the contracts among CSP, SANE, and David Gaubatz expressly and substantively created independent contractor relationships between CSP and SANE, and SANE and David Gaubatz, respectively. Plaintiffs dispute this description of the relationship, pointing to statements by David Gaubatz in which he appears to state that CSP and Yerushalmi had the power to direct him on how to perform the tasks that would lead to the acquisition of audio and video recordings from Plaintiffs' offices. The factual basis for Plaintiffs' assertion that David Gaubatz was in fact the agent of the other Defendants is outlined below:

- **CSP's right to control and direct David Gaubatz:**

David Gaubatz stated that CSP has the power to direct him on how to perform the tasks that would lead to the acquisition of audio and video recordings from Plaintiffs' offices. *See* David Gaubatz Dep. at 77:24-78:3; 79:1-20 (describing CSP as having the authority typically associated with employers)

- **Yerushalmi's right to control and direct David Gaubatz:**

Although Yerushalmi disclaims any supervisory role over David Gaubatz, in his deposition, David Gaubatz repeatedly suggests that Yerushalmi had the power to direct his actions and functioned as his supervisor. *See* David Gaubatz Dep. at 72:13-14; 77:24-78:3.

- **Brim's right to control and direct David Gaubatz:**

Although Defendants describe only a limited role for Brim, they concede that she functioned as CSP's liaison to the Gaubatzes; given David Gaubatz's apparent statement that CSP had the power to control and direct his work, a reasonable jury could infer that David Gaubatz meant CSP, *through Brim*.

## FEDERAL WIRETAP ACT – USE & DISCLOSURE LIABILITY

## (David Gaubatz, CSP, Christine Brim)

In order to prevail on its claim of use and disclosure liability under the Federal Wiretap Act, Plaintiff must prove (1) Defendant(s) used or disclosed to another person the contents of a communication, (2) Defendant(s) knew or had reason to know that the contents of that communication had been obtained in violation of the law, and (3) Defendant acted intentionally.

The primary issue here is whether Defendants knew or had reason to know sufficient facts concerning the circumstances of Chris Gaubatz's interception of Plaintiff's communications such that they could determine that the interception was prohibited in light of the Wiretap Act and that none of the statutory exceptions – including the one-party consent rule – applied. In other words, to be liable, Defendants must have known that Gaubatz was recording Plaintiffs while either (1) not a party to the conversation and unseen by those being recorded, or (2) knew that Gaubatz understood himself to be bound by a fiduciary duty of non-disclosure, such that he operated with the tortious purpose of breaching this duty in making the recordings.

Thus, if Defendants reviewed the intercepted communication in which Chris Gaubatz's presence was not clearly apparent, then, with presumed knowledge of the law, the Defendants would have reason to know that the one-party consent rule did not apply. The facts supporting this claim are outlined below:

- **David Gaubatz:**

  o David Gaubatz had access to the recordings in which CAIR-F arguably disclosed confidential or proprietary information to Chris Gaubatz.
  o The videos reveal that Chris Gaubatz was presented with a confidentiality agreement that he was instructed to "read on his own time."
  o In a recorded conversation, Chris Gaubatz states that he shared a non-disclosure agreement. with his father (*See* P's Exhibit 37 Response to MSJ, 14:8-15) ("There was a non-disclosure agreement, something like that, but what we looked at and my dad had one of his people look at . . . ")

6

- **Christine Brim and CSP:**

  - There is no dispute that Christine Brim intentionally used or disclosed the contents of these intercepted communications and that she knew or had reason to know that the information came from an intercepted communication. The parties disagree only as to the third prong, i.e., whether Brim took a more involved role in reviewing the content of the recording, and observed that Chris Gaubatz (1) may not have been a party to all conversations intercepted, and (2) may have been bound by a duty of non-disclosure, she could have known or had reason to know, with presumed knowledge of the law, that these recordings were in violation of the Federal Wiretap Act. Moreover, since Brim is CSP's representative, liability would also be imputed onto CSP if Brim is liable.

## DC WIRETAP ACT – USE & DISCLOSURE LIABILITY

**(David Gaubatz, CSP, Christine Brim)**

In order to prevail on its claim of use and disclosure liability under the D.C. Wiretap Act, Plaintiffs must only prove that Defendants (1) acted "willfully" in disclosing or using the contents of an intercepted communication, and (2) know that the communication was intercepted. This is a different standard than applies under the Federal Wiretap Act, because the statute does not include the language "in violation of this subsection." Thus, the D.C. Wiretap Act does not require the party using or disclosing the communication know or have reason to know that the communication was obtained in violation of the statute. *See* discussion above regarding Defendants' liability for use and disclosure under the Federal Wiretap Act.

## DC WIRETAP ACT – PROCUREMENT LIABILITY

**(David Gaubatz, CSP, Christine Brim, Yerushalmi, SANE)**

Procurement liability is only available under the D.C. Wiretap Act (D.C. Code § 23-542(a)(1)). Under this section of the Act, Plaintiffs must show that Defendants "willfully" brought about, caused, or instigated Chris Gaubatz's interception of CAIR-F's communications, which were in violation of the DC Wiretap Act. Note, however, that there is no requirement that the procuring Defendant know or have reason to know that the underlying interception was made in violation of the D.C. Wiretap Act. The factual issues with respect to each defendant are outlined below:

- **David Gaubatz & CSP:**

  - There is no dispute that David Gaubatz and CSP actively brought about, caused, or instigated that recordings of Plaintiffs offices, but liability is predicated on the underlying interceptions by Chris Gaubatz being in violation of the DC Wiretap

Acts. Thus, David Gaubatz and CSP will be liable if Chris Gaubatz is found liable for primary liability under the D.C. Wiretap Act.

- **Yerushalmi, Brim, & SANE:**

  - The issue here resolves around whether these defendants "procured" the recordings and whether the underlying recordings violated the D.C. Wiretap Act. There is evidence that these defendants "procured" the recordings, including the fact that SANE, through Yerushalmi, recommended David Gaubatz to CSP for the purpose of making the recordings. Moreover, although Defendants argue that Yerushalmi had only a limited role in the planning of the CAIR Documentary Film Project, testimony from David Gaubatz indicates that Yerushalmi gave him the responsibility to hire researchers to obtain audio/video recordings from Plaintiffs' offices (D. Gaubatz Dep. 72:7-15). Further, although Defendants claim that Brim had no role in the formation of the project, stating that at the outset of the project, she was simply a contract employee who aided in the administration of certain CSP projects, David Gaubatz's deposition testimony indicates that she was involved in the CAIR Documentary Film Project from the outset, indicating that she, along with Yerushalmi, gave him the responsibility to hire researchers to obtain audio/video recordings from Plaintiff's offices. Finally, although Defendants claim that SAN had no knowledge that the project would require research to obtain B-roll from inside Plaintiffs' offices, there is a March 2008 agreement between Publius and SANE for SANE to provide a team of "researchers" to covertly enter CAIR and create the audio-video recordings for a documentary (Publius-SANE Agreement at 9; P's Ex. 20).

## STORED COMMUNICATIONS ACT – PRIMARY LIABILITY

**(Chris Gaubatz)**

In order to prove a violation of the Stored Communications Act, Plaintiff must prove that (1) without authorization, Defendant accessed a system through which electronic communication service is provided to others, *or* Defendant accessed a system through which electronic communication service is provided to others with authorization, but exceeded that authority in accessing the information in question, (2) Defendant obtained (or altered or prevented access to) a wire or electronic communication while it was in electronic storage in such system, and (3) Defendant acted knowingly or intentionally.

The issue in this case is whether Chris Gaubatz removed documents from the shared drive (as opposed to documents stored on office computers' local hard drives, in which case the SCA does not apply). Plaintiffs must prove that Chris Gaubatz used CAIR's local office computers to access CAIR's computer servers, which must be shown to have provided an electronic communication service to CAIR's employees. Defendants claim that Chris Gaubatz never removed documents from a shared drive or e-mail server. However, based on a review of the

documents Chris Gaubatz removed from Plaintiffs' office, some of those documents could only have come from shared folders on CAIR's network drive. *See, e.g.*, Saylor Dep. at 143:19-144:5.

## STORED COMMUNICATIONS ACT – *RESPONDEAT SUPERIOR* LIABILITY

### (David Gaubatz, CSP, Brim, Yerushalmi)

The same analysis which applies to the Federal/DC Wiretap Acts for purposes of *respondeat superior* liability applies to this claim. Thus, if Chris Gaubatz is found primarily liable for violation(s) of the Stored Communications Act, then the jury must also find that Paul David Gaubatz is liable. Moreover, if the jury finds that David Gaubatz acted as an agent of any or all of the other Defendants, then the jury must too find those other Defendants liable through a theory of *respondeat superior*.

## TRESPASS – D.C. COMMON LAW

### (Chris Gaubatz)

Under D.C. common law, a trespass is (1) an unauthorized entry (2) onto the plaintiff's property (3) that interferes with the plaintiff's possessory interest. Nominal damages are sufficient. Plaintiff have two theories of liability with respect to this claim: (1) Chris Gaubatz committed trespass by entering Plaintiffs' offices because he obtained Plaintiffs' consent through subterfuge and fraud, or (2) Chris Gaubatz exceeded the consent he obtained to enter the land by accessing restricted areas and networks ("A conditional or restricted consent to enter land creates a privilege to do so only in so far as the condition or restriction is complied."). As to the first theory of liability, consent "given upon fraudulent misrepresentation" will not always defeat a claim for trespass. Consent may be ineffective if "induced by a substantial mistake concerning the nature of the invasion of the owner's interest or the extent of the harm to be expected from it and the mistake is known to the other or is induced by the other's misrepresentation."

## CSP DEFENDANTS' STATEMENT OF DEFENSES

1. **Federal/D.C. Wiretap Acts – Primary Liability: Chris Gaubatz**

   a. There were no "oral communications" for purposes of either the Federal or D.C. Wiretap Acts because there was no "oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, . . . ." 18 U.S.C. § 2510(2); D.C. Code § 23-541(2).

   b. In many instances, there were no "communications" intercepted because the audio is inaudible and/or unintelligible.

[Plaintiffs object to the inclusion of this defense on the grounds that an oral "communication" is defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). As such, while the expectation of the person speaking is a consideration, the quality of the recording device and ultimate audibility of the recording is not.]

c.  Chris Gaubatz was a participant in all of the recordings, providing one-party consent.  18 U.S.C. § 2511(2)(d); D.C. Code § 23-542(b)(3).

d.  The one-party consent rule was not vitiated because Chris Gaubatz was not under a duty of non-disclosure and thus did not make the recordings for the purpose of committing a tortious act.

e.  The one-party consent rule was not vitiated because Chris Gaubatz did not breach any duty of non-disclosure (*i.e.*, none of the information disclosed in the recordings was subject to the alleged duty of non-disclosure).

[Plaintiffs object to the assertion that the content of each particular recording must be evaluated to determine whether Chris Gaubatz breached any fiduciary duty of non-disclosure.]

f.  The one-party consent rule was not vitiated because Chris Gaubatz had no understanding that he was under a duty of non-disclosure.

**2.  <u>Federal/D.C Wiretap Acts – *Respondeat superior* Liability</u>: David Gaubatz, CSP, Brim, Yerushalmi, and SANE**

a.  Chris Gaubatz was neither an agent nor independent contractor of any of the CSP Defendants (or of David Gaubatz) at any time relevant to the claims that Chris Gaubatz

recorded conversations at CAIR's offices in violation of the Federal and D.C. Wiretap Acts.

b.  David Gaubatz was an independent contractor of SANE and CSP at relevant times.

c.  At no time was David Gaubatz an agent of CSP, SANE, Brim, or Yerushalmi (collectively, "CSP Defendants").

d.  To the extent that the actions of Chris or David Gaubatz give rise to liability under the Federal or D.C. Wiretap Acts, their actions were in violation of their legal and contractual commitments to the CSP Defendants and entirely outside the scope of their contractual duties.

**3.  <u>Federal Wiretap Act – Use & Disclosure Liability</u>: David Gaubatz, CSP, and Brim**

a.  Neither David Gaubatz, CSP, nor Brim violated the use and disclosure prohibitions of the Federal Wiretap Act because there was no underlying Federal Wiretap Act violation by Chris Gaubatz.

b.  To the extent the jury finds that Chris Gaubatz violated the Federal Wiretap Act, neither David Gaubatz nor the CSP Defendants knew or had reason to know of any such violation.

c.  Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz recorded "oral communications."

d.  Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz was not a party to all of the recorded conversations.

e.  Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz was an agent of CAIR-F or that he had a duty of non-disclosure.

f.  Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz violated any duty of non-disclosure.

g.  Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz had an understanding, or that he should have had an understanding, that he owed CAIR-F a duty of non-disclosure.

**4.  D.C. Wiretap Act – Use & Disclosure Liability: David Gaubatz, CSP, and Brim**

a.  Neither David Gaubatz, CSP, nor Brim violated the use and disclosure prohibitions of the D.C. Wiretap Act because there was no underlying D.C. Wiretap Act violation by Chris Gaubatz.

b.  To the extent the jury finds that Chris Gaubatz violated the D.C. Wiretap Act, neither David Gaubatz nor the CSP Defendants knew or had reason to know of any such violation. (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]). [Plaintiffs object to the inclusion of this defense based on the Court's Opinion and Order.]

c.  Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz recorded "oral communications."  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]). [Plaintiffs object to the inclusion of this defense based on the Court's Opinion and Order.]

d.  Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz was not a party to all of the recorded conversations.  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion

for Reconsideration [Docs. 175-1 & 182]). [Plaintiffs object to the inclusion of this defense based on the Court's Opinion and Order.]

e.  Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz was an agent of CAIR-F or that he had a duty of non-disclosure.  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]). [Plaintiffs object to the inclusion of this defense based on the Court's Opinion and Order.]

f.  Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz violated any duty of non-disclosure.  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]). [Plaintiffs object to the inclusion of this defense based on the Court's Opinion and Order.]

g.  Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz had an understanding, or that he should have had an understanding, that he owed CAIR-F a duty of non-disclosure.  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]). [Plaintiffs object to the inclusion of this defense based on the Court's Opinion and Order.]

5. **D.C. Wiretap Act – Procurement Liability**: David Gaubatz, CSP, Brim, Yerushalmi, and SANE

a.  Neither David Gaubatz, CSP, Brim, nor Yerushalmi violated the procurement prohibition of the D.C. Wiretap Act because there was no underlying D.C. Wiretap Act violation by Chris Gaubatz.

b.  To the extent the jury finds that Chris Gaubatz violated the D.C. Wiretap Act, neither the acts of David Gaubatz nor the CSP Defendants procured any violation of the D.C. Wiretap Act.

c.  To the extent the jury finds that Chris Gaubatz violated the D.C. Wiretap Act, neither David Gaubatz nor the CSP Defendants willfully or intentionally procured any violation of the D.C. Wiretap Act.  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]). [Plaintiffs object to the inclusion of this defense based on the Court's Opinion and Order.]

d.  To the extent the jury finds that Chris Gaubatz violated the D.C. Wiretap Act, neither David Gaubatz nor the CSP Defendants knew or had reason to know of any such violation. (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]). [Plaintiffs object to the inclusion of this defense based on the Court's Opinion and Order.]

e.  Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz recorded "oral communications."  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure

14

violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]). [Plaintiffs object to the inclusion of this defense based on the Court's Opinion and Order.]

f.   Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz was not a party to all of the recorded conversations.  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]). [Plaintiffs object to the inclusion of this defense based on the Court's Opinion and Order.]

g.   Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz was an agent of CAIR-F or that he had a duty of non-disclosure.  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]). [Plaintiffs object to the inclusion of this defense based on the Court's Opinion and Order.]

h.   Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz violated any duty of non-disclosure.  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]). [Plaintiffs object to the inclusion of this defense based on the Court's Opinion and Order.]

i.   Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz had an understanding, or that he should have had an understanding, that he owed

CAIR-F a duty of non-disclosure. (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]). [Plaintiffs object to the inclusion of this defense based on the Court's Opinion and Order.]

6. **Stored Communications Act ("SCA") – Primary Liability: Chris Gaubatz**

   a. Chris Gaubatz never violated the SCA because he never (1) intentionally accessed (2) without authorization (3) a facility through which an electronic communication service is provided; or (4) intentionally exceeded an authorization to access that facility.

   b. Chris Gaubatz never obtained, altered, or prevented authorized access (1) to a wire or electronic communication (2) while it was in electronic storage in such system.

   c. Chris Gaubatz did not violate the SCA because there were no limits placed on access to the CAIR-F network server.

   d. Chris Gaubatz did not violate the SCA because the CAIR-F network server, if it was accessed, was accessed with the express or implied permission and/or consent of CAIR-F.

7. **Stored Communications Act – *Respondeat superior* Liability: David Gaubatz, CSP, Brim, and Yerushalmi**

   a. Chris Gaubatz was neither an agent nor independent contractor of any of the CSP Defendants at any time relevant to the claims that Chris Gaubatz obtained documents in violation of the SCA.

   b. David Gaubatz was an independent contractor of SANE and CSP at all relevant times.

   c. At no time was David Gaubatz an agent of CSP, SANE, Brim, or Yerushalmi.

d. To the extent that the actions of Chris or David Gaubatz give rise to liability under the SCA, their actions were in violation of their legal and contractual commitments to the CSP Defendants and entirely outside the scope of their contractual duties.

8. <u>**Trespass – D.C. Common Law**</u>: **Chris Gaubatz**

a. Chris Gaubatz is not liable for trespass because he had authority to enter into the CAIR premises.

b. Chris Gaubatz is not liable for trespass because he did not exceed his authority to enter into the CAIR premises.

c. Chris Gaubatz is not liable for trespass because he did not interfere with CAIR's possessory interest in the premises.

**GAUBATZ DEFENDANTS' STATEMENT OF DEFENSES**

1.    **Federal/D.C. Wiretap Acts – Primary Liability: Chris Gaubatz**

a. There were no "oral communications" for purposes of either the Federal or D.C. Wiretap Acts." 18 U.S.C. § 2510(2); D.C. Code § 23-541(2).

b. In many instances, there were no "communications" intercepted because the audio is inaudible and/or unintelligible.

c. Chris Gaubatz was a participant in all of the recordings, providing one-party consent. 18 U.S.C. § 2511(2)(d); D.C. Code § 23-542(b)(3).

d. Chris Gaubatz was not under a duty of non-disclosure and did not make the recordings for the purpose of committing a tortious act.

e. The one-party consent rule was not vitiated because Chris Gaubatz did not breach any duty of non-disclosure (for example., none of content in the recordings was subject to the alleged duty of non-disclosure).

f.    Chris Gaubatz had no understanding that he was under a duty of non-disclosure.

g.    There is no expectation of privacy in criminal conduct or for a criminal organization and its agents.

h.    Plaintiff has suffered no damages due to any alleged violation

i.    Plaintiff(s) has/have no standing.

   [Plaintiffs object to the inclusion of this defense as not an issue for the jury and one which has no bearing on Plaintiffs' statutory claims.]

j.    The reporting and preserving of evidence of criminal conduct is required by 18 U.S. Code § 4

**2.    Federal/D.C Wiretap Acts – *Respondeat superior* Liability: David Gaubatz, CSP, Brim, Yerushalmi, and SANE**

a.    Chris Gaubatz was neither an agent nor independent contractor of any of the CSP Defendants at any time relevant to the claims that Chris Gaubatz recorded conversations at CAIR's offices in violation of the Federal and D.C. Wiretap Acts.

b.    David Gaubatz was an independent contractor of SANE and CSP at relevant times.

c.    At no time was David Gaubatz an agent of CSP, SANE, Brim, or Yerushalmi (collectively, "CSP Defendants").

d.    There is no expectation of privacy in criminal conduct or for a criminal organization and its agents.

e.    Plaintiff has suffered no damages due to any alleged violation

f.    Plaintiff(s) has/have no standing.

g.    The reporting and preserving of evidence of criminal conduct is required by 18 U.S. Code § 4

**3.** **Federal Wiretap Act – Use & Disclosure Liability: David Gaubatz, CSP, and Brim**

a.  Neither David Gaubatz, CSP, nor Brim violated the use and disclosure prohibitions of the Federal Wiretap Act because there was no underlying Federal Wiretap Act violation by Chris Gaubatz.

**3.** **D.C. Wiretap Act – Use & Disclosure Liability: David Gaubatz, CSP, and Brim**

a.  Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz was not a party to all of the recorded conversations.  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]).

b.  Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz was an agent of CAIR-F or that he had a duty of non-disclosure.  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]).

c.  Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz violated any duty of non-disclosure.  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]).

d.  Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz had an understanding, or that he should have had an understanding, that he owed CAIR-F a duty of non-disclosure.  (Defendants preserve their objections to the Court's rulings on the

"knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]).

e.  There is no expectation of privacy in criminal conduct or for a criminal organization and its agents.

f.  Plaintiff has suffered no damages due to any alleged violation

g.  Plaintiff(s) has/have no standing.

h.  The reporting and preserving of evidence of criminal conduct is required by 18 U.S. Code § 4

## 4.    D.C. Wiretap Act – Procurement Liability: David Gaubatz, CSP, Brim, Yerushalmi, and SANE

a.  Neither David Gaubatz, CSP, Brim, nor Yerushalmi violated the procurement prohibition of the D.C. Wiretap Act because there was no underlying D.C. Wiretap Act violation by Chris Gaubatz.

b.  Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz recorded "oral communications."  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]).

c.  Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz was not a party to all of the recorded conversations.  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]).

d.   Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz was an agent of CAIR-F or that he had a duty of non-disclosure.  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]).

e.   Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz violated any duty of non-disclosure.  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]).

f.   Neither David Gaubatz nor the CSP Defendants knew or had reason to know that Chris Gaubatz had an understanding, or that he should have had an understanding, that he owed CAIR-F a duty of non-disclosure.  (Defendants preserve their objections to the Court's rulings on the "knowledge" element required for a procurement, use, or disclosure violation of the D.C. Wiretap Act as set forth in Defendants' first Motion for Reconsideration [Docs. 175-1 & 182]).

g.   There is no expectation of privacy in criminal conduct or for a criminal organization and its agents.

h.   Plaintiff has suffered no damages due to any alleged violation.

i.   Plaintiff(s) has/have no standing.

j.   The reporting and preserving of evidence of criminal conduct is required by 18 U.S. Code § 4.

5.      **Stored Communications Act ("SCA") – Primary Liability: Chris Gaubatz**

a.   Chris Gaubatz never violated the SCA because he never obtained documents from the CAIR-F network server.

b.   Chris Gaubatz never violated the SCA because he never Intentionally accessed the CAIR-F network server without authorization.

c.   Chris Gaubatz never violated the SCA because there were no limits placed on access to the CAIR-F network server.

d.   The CAIR-F network server, if was accessed, was accessed with the express or implied permission and/or consent of CAIR-F.

e.   The Stored Communications Act, however, does not prohibit (1) obtaining "opened" e-mails.

f.   There is no expectation of privacy in criminal conduct or for a criminal organization and its agents.

g.   Plaintiff has suffered no damages due to any alleged violation.

h.   Plaintiff(s) has/have no standing.

i.   The reporting and preserving of evidence of criminal conduct is required by 18 U.S. Code § 4.

6.      **Stored Communications Act –** *Respondeat superior* **Liability: David Gaubatz, CSP, Brim, and Yerushalmi**

a.   Chris Gaubatz was neither an agent nor independent contractor of any of the CSP Defendants at any time relevant to the claims that Chris Gaubatz obtained documents in violation of the SCA.

b.   David Gaubatz was an independent contractor of SANE and CSP at all relevant times.

22

c.  At no time was David Gaubatz an agent of CSP, SANE, Brim, or Yerushalmi.

d.  There is no expectation of privacy in criminal conduct or for a criminal organization and its agents.

e.  Plaintiff has suffered no damages due to any alleged violation.

f.  Plaintiff(s) has/have no standing.

g.  The reporting and preserving of evidence of criminal conduct is required by 18 U.S. Code § 4.

**7.    Trespass – D.C. Common Law: Chris Gaubatz**

a.  Chris Gaubatz is not liable for trespass because he had authority to enter into the CAIR premises.

b.  Chris Gaubatz is not liable for trespass because he did not exceed his authority to enter into the CAIR premises.

c.  Chris Gaubatz is not liable for trespass because he did not interfere with CAIR's possessory interest in the premises.

d.  Plaintiff(s) has/have no standing.

e.  The entry was permitted under the common law doctrine of public and private necessity. (Rest. Of Torts secs 196 & 197).

f.  The premise was not the exclusive domain of CAIR and hence was open to the public per the rules and regulations of the other tenants and by habit, custom and practice.

g.  There is no expectation of privacy in criminal conduct or for a criminal organization and its agents.

h.  Plaintiff has suffered no damages due to any alleged violation.

i.    The reporting and preserving of evidence of criminal conduct is required by  18 U.S. Code

§ 4.

## LIST OF WITNESSES

**Plaintiffs' Witnesses:**

**Chris Gaubatz:** This Defendant will testify regarding information related to the conspiracy between Defendants to steal documents and information from Plaintiffs. Specifically, he will testify that his father directed him to obtain an internship at CAIR in order to inconspicuously record CAIR members and employees and take documents belonging to CAIR to deliver to his father. He will testify that he used a false identity and false information on his resume in order to obtain the position at CAIR.

[CSP Defendants object to the reference to a "conspiracy" on the grounds that there are no allegations or record facts relating to a conspiracy.  *Note: Throughout this Joint Pretrial Statement, all CSP Defendants' objections are joined by the Gaubatz Defendants.]

**Paul David Gaubatz:** This Defendant will testify regarding information related to the conspiracy between Defendants to steal documents and information from Plaintiffs. He will testify that he directed his son to obtain the internship at CAIR, following the direction of Yerushalmi and CSP (presumably through Christine Brim). He will further testify regarding the documents he instructed his son to obtain and what he did with those documents. Finally, he will testify regarding the book he co-authored, entitled "Muslim Mafia" and the profits he earned from the sale of that book.

[CSP Defendants object to the reference to a "conspiracy" on the grounds that there are no allegations or record facts relating to a conspiracy.  CSP Defendants further object to any testimony regarding the book "Muslim Mafia" on the grounds that the record makes clear that Dave Gaubatz did not co-author the book or even read the book and further that he earned no profits from the book whatsoever.  There is no evidence in the record that contradicts these facts.  Consequently, depending upon the purpose of such testimony, CSP Defendants object to any testimony relating to the book as irrelevant, immaterial, lacks foundation, lacks authentication, and hearsay.]

**Christine Brim:** Christine Brim will testify regarding information related to the conspiracy between Defendants to steal documents and information from Plaintiffs, her position at CSP, her role in the CAIR Documentary Film Project, and the purpose of that project.

[CSP Defendants object to the reference to a "conspiracy" on the grounds that there are no allegations or record facts relating to a conspiracy.]

**Khalid Iqbal:** This witness will testify that the Defendant Chris Gaubatz approached him for an internship at a CAIR chapter, formerly located in Herndon, VA. The Defendant stated that he was a Muslim, that he supported CAIR's work and that he wanted to do an internship with CAIR.  The

24

Defendant also told this witness several other lies that led to his being offered an internship at CAIR-MD/VA and a subsequent recommendation to intern at CAIR-Foundation.

**Raabia Wazir:** This witness will testify that she worked with Defendant Chris Gaubatz and was his supervisor while he interned at Plaintiffs' offices. She gave him Plaintiffs' Confidentiality Agreement, and asked him to sign it and return it to her. This witness was also told various lies by Defendant about his background and motives in performing an internship, which increased her trust in him.

**Frank Gaffney**
Center for Security Policy, 1250 24th Street, NW Washington, DC 202-466-0515.

This witness will testify regarding the founding and purpose of CSP and about information related to Defendant CSP's involvement with the conspiracy to steal documents and information from Plaintiffs, especially as they relate to defendant CSP.

[CSP Defendants object to the reference to a "conspiracy" on the grounds that there are no allegations or record facts relating to a conspiracy.]

**Sarah Pavlis:** This witness will testify about information related to her involvement with the conspiracy to steal documents and information from Plaintiffs, especially the facts alleged that relate to defendant CSP.

[CSP Defendants object to the reference to a "conspiracy" on the grounds that there are no allegations or record facts relating to a conspiracy. CSP Defendants further object to this witness testifying on the grounds that the Court has already found that there is no evidence in the record of Ms. Pavlis's involvement in any matters relating to this lawsuit, which led the Court to dismiss Ms. Pavlis as a defendant.]

**David Yerushalmi**
1250 24th Street NW Washington, DC 202-466-051

This Defendant will testify regarding information related to his involvement with the conspiracy to steal documents and information from Plaintiffs, especially the facts alleged that relate to defendants CSP and SANE.

[CSP Defendants object to the reference to a "conspiracy" on the grounds that there are no allegations or record facts relating to a conspiracy.]

**Adam Savit:** This witness will testify about information related to the conspiracy between Defendants to steal documents and information from Plaintiffs.

[CSP Defendants object to the reference to a "conspiracy" on the grounds that there are no allegations or record facts relating to a conspiracy. CSP Defendants further object to this witness testifying on the grounds that the Court has already found that there is no evidence in the record

of Mr. Savit's involvement in any matters relating to this lawsuit, which led the Court to dismiss Mr. Savit as a defendant.]

**Corey P. Saylor:** This witness will testify as a representative of Plaintiff regarding, among other things, the nature of the documents taken from CAIR's local office.

[CSP Defendants object to this testimony on the following grounds: (1) "among other things" is vague and does not limit the testimony to that which CSP Defendants might object; and (2) "documents taken" is vague because if it relates to the alleged "conversion" documents, those allegations have been dismissed and if it only refers to the SCA allegations, it should so state.]

**Plaintiffs intend to call the following witnesses if the need arises:**

**Paul Sperry:** This witness will testify facts related to the receipt of material stolen from Plaintiffs and the writing and publishing of "Muslim Mafia".

[Except as to testimony relating to the content of the book, *Muslim Mafia*, CSP Defendants withdraw their general objection to Mr. Sperry's testimony, but preserve all specific objections raised earlier and those which might be raised at trial depending upon the content and/or scope of the testimony.]

**Paul DonVito**

4409 Greenwich Parkway, NW, Washington, DC 20007; Tele: 202-375-4662.

This witness will testify regarding his participation in the conspiracy facilitating the unlawful acquisition of audio and video recordings from Plaintiffs' offices.

[Except as to testimony relating to the content of the book, *Muslim Mafia*, CSP Defendants withdraw their general objection to Mr. Don Vito's testimony, but preserve all specific objections raised earlier and those which might be raised at trial depending upon the content and/or scope of the testimony.]

**Jumana Kamal:** This witness will testify that he worked with Defendant Chris Gaubatz during his internship and gave him instructions for work.

**Joseph Farah**
World Net Daily, P.O. Box 1627, Medford, OR 97501, 541-474-1776

This witness will testify about information related to Defendants conspiring to steal documents and information from Plaintiffs.  He will further testify regarding the publication of "Muslim Mafia."

[Except as to testimony referencing a "conspiracy" and the book Muslim Mafia, CSP Defendants withdraw their general objection to Mr. Farah's testimony, but preserve all objections raised earlier and those which might be raised at trial depending upon the content and/or scope of the testimony.]

**Nadhira Al-Khalili.** This witness may testify to information relating to the information stored in CAIR's shared drive, storage of data on the drive, and the means required to access that data via CAIR's network servers.

[Given Plaintiffs' response to CSP Defendants' objections to Al-Khalili's proffered testimony, CSP Defendants withdraw their objections and based upon the assumption that lay opinion testimony is not testimony about "matters within her personal knowledge. (Pls.' Resp. at 8). If Al-Khalili's testimony includes opinion testimony as discussed in CSP Defendants' objections, those objections remain.]

**David Zimmerman:** This witness may testify to information that shows David Gaubatz used and disclosed the information obtained from CAIR, and intentionally ignored the court's preliminary injunction in this case.

[CSP Defendants object to this testimony on the grounds that it is irrelevant and immaterial to the extant allegations.]

**Harold C. Weatherman III.** This witness may testify to information that shows David Gaubatz used and disclosed the information obtained from CAIR, and intentionally ignored the court's preliminary injunction in this case.

Plaintiffs reserve the right to call any Defendant as a witness or any witness listed by Defendants.

[CSP Defendants object to this testimony on the grounds that it is irrelevant and immaterial to the extant allegations.]

## CSP Defendants' Witnesses: Intend to Call

[Plaintiffs object to any of the CSP Defendants' proposed testimony below which intends to illicit allegations of criminal conduct and/or terrorism against Plaintiffs as irrelevant to any legitimate claim, defense, or issue in this case and highly prejudicial.]

- **Frank Gaffney:** As a non-party and as the president of CSP, the witness will testify about the Muslim Brotherhood/CAIR documentary: its genesis and its purposes.
  - **Contact/Address:** c/o David Yerushalmi, 1901 Pennsylvania Avenue NW, Suite 201, Washington, D.C. 20006.

[Plaintiffs object to the testimony of this witness pursuant to FRE 701 in that this witness is not qualified to offer opinion testimony and no expert witnesses have been designated in this case.]

- **David Yerushalmi:** As a defendant, the witness will testify about his own involvement in the Muslim Brotherhood/CAIR documentary, SANE's involvement and CSP's involvement, including documents setting forth the terms and parameters of that involvement. He will also testify about the legal analysis he conducted to set out the parameters for the logistics of the documentary and related matters. He will also provide

testimony about why CAIR was the focus of the documentary in the context of the motives and purposes of the documentary as a project of CSP.
- o **Contact/Address:** 1901 Pennsylvania Avenue NW, Suite 201, Washington, D.C. 20006.

[Plaintiffs object to the testimony of this witness pursuant to FRE 701 in that this witness is not qualified to offer opinion testimony and no expert witnesses have been designated in this case.]

- **Christine Brim:** As a defendant, the witness will testify about her role in the Muslim Brotherhood/CAIR documentary.
  - o **Contact/Address:** c/o David Yerushalmi, 1901 Pennsylvania Avenue NW, Suite 201, Washington, D.C. 20006.

- **David Gaubatz:** As a defendant, the witness will testify about his role in the Muslim Brotherhood/CAIR documentary.
  - o **Contact/Address:** c/o Daniel Horowitz, 3650 Mt Diablo Boulevard, Lafayette, California

- **Chris Gaubatz:** As a defendant, the witness will testify about his role in the Muslim Brotherhood/CAIR documentary.
  - o **Contact/Address:** c/o Daniel Horowitz, 3650 Mt Diablo Boulevard, Lafayette, California.

- **Raabia Wazir:** As a non-party and former employee of CAIR-F in charge of supervising interns, this witness will testify about CAIR-F's practices and procedures relating to the internship program, her interactions with Chris Gaubatz, and the lack of any agreement or policies relating to the treatment or handling of confidential or proprietary information.
  - o **Contact/Address:** Address unknown but Defendants assume contact will be through Plaintiffs' counsel.

- **Nadhira Al-Khalili:** As a non-party and former in-house legal counsel to CAIR-F, this witness will testify about CAIR-F's practices and procedures relating to the internship program, corporate formalities, her interactions with Chris Gaubatz, and the lack of any agreement or policies relating to the treatment or handling of confidential or proprietary information. This witness will also testify as to the facts surrounding the fraud committed by Morris Days and her involvement in the cover-up.
  - o **Contact/Address:** Address unknown but Defendants assume contact will be through Plaintiffs' counsel.

- **Nihad Awad Hammad:** As a non-party and founder of CAIR-AN and current Executive Director of CAIR-F, this witness will testify as to the nature of the CAIR organizations, CAIR-F's purposes and activities in context to describe the kinds of information and

documents that would be subject to a duty of non-disclosure, corporate practices, procedures, and formalities.
- o **Contact/Address:** Address unknown but Defendants assume contact will be through Plaintiffs' counsel.

- **Corey Saylor:** As a non-party and the National Legislative Director of CAIR-F, this witness will testify as to the nature of the CAIR organizations, CAIR-F's purposes and activities in context to describe the kinds of information and documents that would be subject to a duty of non-disclosure, corporate practices, procedures, and formalities.
  - o **Contact/Address:** Address unknown but Defendants assume contact will be through Plaintiffs' counsel.

**CSP Defendants' Witnesses: If the Need Arises**

[Plaintiffs object to the testimony of any of the below witnesses regarding, specifically, the alleged "Morris Days fraud" as irrelevant to any claim, defense, or issue in this case, and highly prejudicial.]

- **Iftikhar Saiyed:** As a non-party and victim in the Morris Days fraud, this witness will testify about the Morris Days fraud and the cover-up by CAIR.
  - o **Contact/Address:** c/o David Yerushalmi, 1901 Pennsylvania Avenue NW, Suite 201, Washington, D.C. 20006.

- **Aquilla A.D. Turner:** As a non-party and victim in the Morris Days fraud, this witness will testify about the Morris Days fraud and the cover-up by CAIR.
  - o **Contact/Address:** c/o David Yerushalmi, 1901 Pennsylvania Avenue NW, Suite 201, Washington, D.C. 20006.

- **Mohammed Barakatulla Abdusalaam:** As a non-party and victim in the Morris Days fraud, this witness will testify about the Morris Days fraud and the cover-up by CAIR.
  - o **Contact/Address:** c/o David Yerushalmi, 1901 Pennsylvania Avenue NW, Suite 201, Washington, D.C. 20006.

- **Bayenah Nur:** As a non-party and victim in the Morris Days fraud, this witness will testify about the Morris Days fraud and the cover-up by CAIR.
  - o **Contact/Address:** c/o David Yerushalmi, 1901 Pennsylvania Avenue NW, Suite 201, Washington, D.C. 20006.

- **Paul Sperry:** As a non-party, this witness will testify about conversations he had with David and Chris Gaubatz regarding the Muslim Brotherhood/CAIR documentary.
  - o **Contact/Address:** Address currently unknown.

**Gaubatz Defendant's Witnesses:**

**The Gaubatz Defendants reserve the right to call all named witnesses by the other parties even if they are later withdrawn by that party.**

[Plaintiffs object to the above blanket reservation of rights by the Gaubatz Defendants]

[Plaintiffs object to any and all of the Gaubatz Defendants' proposed testimony below which intends to (1) illicit allegations of criminal conduct and/or terrorism against Plaintiffs or (2) allegations of internal discrimination as irrelevant to any legitimate claim, defense, or issue in this case. Allegations of criminal conduct, alleged ties to terrorist organizations, internal discrimination, and the Muslim community in general are wholly and entirely irrelevant and are intended solely to prejudice the Plaintiffs. The testimony set forth below illuminates the Gaubatz Defendants' unjustified intent to turn this case into their own criminal prosecution of CAIR.]

**Raabia Wazir**

Ms. Wazir will testify about the high qualify work provided by Chris Gaubatz to "CAIR" during his internship.  She will confirm that the so-called confidentiality agreement in large part addressed issues that relate to a computer company and not to any matters pertaining to the employment of interns at CAIR.  She will confirm that CAIR provided no benefits, payments, no cost reimbursements to interns.  She will confirm that no orientation was ever provided instructing interns as to the scope of their duties and/or the limits of their duties or access to materials, computers or portions of the premise.

Ms. Wazir will testify that she was never informed of CAIR's ties to Hamas, the Muslim Brotherhood, the advocacy of violence or the funding of violent Jihadists or terror affiliated groups.  She will testify that she was raised in a family which supported genuine charitable work and which abhorred violence and that she would never knowingly work for a group that promoted hatred and violence, such as CAIR.

Ms. Wazir will confirm that she has no actual recollection of any confidentiality agreement being signed by Chris Gaubatz and that for most interns who worked at CAIR, she has no record of their signing such an agreement.  Ms. Wazir will testify that any concept that she had of

confidentiality extended only to lawful activities of CAIR and that she had no belief or understanding and conveyed no belief or understanding, that unlawful activities of CAIR or Hamas/Muslim Brotherhood activities of CAIR were covered under any such agreement.

Ms. Wazir will be asked to contrast her written declaration claiming that Chris Gaubatz DID sign a confidentiality agreement with her deposition testimony. She will be asked about the statements made to her regarding the declaration and the circumstances leading to her statements that she then disclaimed.

Ms. Wazir will testify that all decision making was done by Sunni Arab males or white males of the Sunni Muslim religion.

[Plaintiffs object to the foregoing proposed testimony to the extent that Defendants intend to elicit irrelevant and prejudicial testimony from this witness regarding CAIR's alleged ties to terrorism and of alleged internal discrimination at CAIR.]

**Tannaz Haddadi**

Ms. Haddadi is a former employee of CAIR who will testify that she was mistreated and discriminated against by senior CAIR employers because she was a Shiite rather than a Sunni Muslim. She will testify that she complained of this in writing to Nihad Ahmad but that he ignored her complaints. Ms. Haddadi will testify that when her Shia religious background was discovered, CAIR demoted her. She will further testify that CAIR had her update their internship application form to add a question identifying which sect of Islam a person adhered to.

Ms. Haddadi will testify that discrimination she experienced was imposed upon others who did not meet the religious test set by CAIR. Ms. Haddadi will testify that Sunni males were the primary decision makers at CAIR and that women and people of other religions received poor treatment.

[Plaintiffs object to the foregoing proposed testimony on the grounds that allegations of internal discrimination at CAIR are wholly irrelevant to any claim, defense, or other issue in this case.]

**Corina Chang**

Ms. Chang will testify that while she was an intern at CAIR, she was never instructed as to any limits on access to computers or rooms at the CAIR premise. She will testify that she did not sign a confidentiality agreement. Ms. Chang will testify that she believed that CAIR was a civil rights organization and for that reason she volunteered. Once Ms. Chang interned at CAIR, she learned that CAIR discriminated internally based upon religion.

[Plaintiffs object to the foregoing proposed testimony on the grounds that allegations of internal discrimination at CAIR are wholly irrelevant to any claim, defense, or other issue in this case.]

**Andrew C. McCarthy**

Mr. McCarthy will testify regarding CAIR's political activities to suppress speech and to oppose civil rights for Muslim women. He will trace in detail the attacks by CAIR against the creators of and the film, Honor Diaries, a film which detailed the physical and emotional abuse of women in certain Islamic societies. He will explain how the film was objective and targeted so that it challenged only violence against women and not the religion of Islam and how CAIR used lies, economic pressure and threats to prevent the film from being shown.

[Plaintiffs object to the foregoing newly-proposed testimony as irrelevant and an attempt to prejudice Plaintiffs by introducing the highly inflammatory and irrelevant "Honor Diaries" trailer, which serves as nothing more than an attack on Muslims and Islam in general. Plaintiffs

32

further object pursuant to FRE 701 in that this witness is not qualified to offer opinion testimony and no expert witnesses have been designated in this case.]

**Aldranon Anthorni English**

Mr. English is a Sheriff's deputy who was shot by H. Rap Brown.  He will describe the incident where he was shot and his partner was killed.  Mr. English will describe how he positively identified H. Rap Brown as the killer and how there were no racial or civil rights issues involved in the shooting.   He will state that H. Rap Brown, and his two victims, were African - American. He will describe the pain caused by the continued legal and personal attacks in the post conviction challenges to the conviction which are funded in part by CAIR.

[Plaintiffs object to the foregoing newly-proposed testimony as wholly irrelevant with no apparent purpose other than to conduce the issues and prejudice Plaintiffs.]

**Paul Sperry**

Mr. Sperry will explain how Ahmad Mohamed Ali, the Muslim World League's former secretary general, has served as president of the Saudi-based Islamic Development Bank for more than twenty years and has funded CAIR and sponsored illicit CAIR "for profit" ventures.  He will testify that the IDB a foreign entity, donated a quarter of a million dollars to help CAIR purchase land in Washington to build its headquarters. The grant was announced at the time by the Saudi embassy.

Mr. Sperry will testify that IDB has given over $ 250 million dollars to the families of terrorists to reward the families for the loss of their soldiers.   This same group that funded and continues to support CAIR has formed two intifada terror funds to funnel money to terror groups and their supports.

Mr. Sperry will explain how board meeting notes show that CAIR and IDB have engaged in discussions of for profit enterprises including the creation of a "building endowment," bringing in "multiple investors as co-owners" of CAIR's portfolio of properties.

Mr. Sperry will explain how CAIR has created outside entities to receive the funding and control the funds so that the for profit nature of CAIR, its large payments to its directors and its use of Saudi money without interest, can be hidden from public disclosure.

Mr. Sperry will explain the contents, sources of information and allegations in the book the Muslim Mafia and he will explain how the book was documented.

[Plaintiffs object to the foregoing testimony as irrelevant and highly prejudicial. Allegations by Defendants of criminal conduct and/or financial ties to terrorism have no bearing on any issue in this case.]

**Khalid Iqbal**

Will testify how CAIR, while allegedly being a nonprofit group, had a for profit legal service which promoted the services of a non-lawyer employee, Morris L. "Jamil" Days while representing to clients that the was a lawyer.   Mr. Iabal will testify that CAIR's board covered up the deception when exposed by paying defrauded families restitution payments but insisting that they also sign agreements releasing CAIR from legal liability.  Mr. Iqbal will testify that while his branch of CAIR was legally separate from any CAIR group in Washington D.C., lawyers from the D.C. group reviewed confidential client files without any permission from the clients.  He will testify that these files were then removed from his premise by Washington D.C. based CAIR lawyers and their staff, without any permission from the clients.   Mr. Iqbal will testify that this fraud was exposed in part by David Gaubatz and Chris Gaubatz as well as David Yerulshalmi and others.  He will describe how the CAIR branch in Virginia was closed in order to allow its records

to be transferred to the CAIR groups in Washington, D.C.. He will further testify that while legally his group was separate from any Washington D.C. based CAIR group, he and his group were in fact controlled by and directed by the D.C. based CAIR and its lawyers.

Mr. Iqbal will testify that he was paid by CAIR in D.C., and on September 7, 2004 he sent a memo to that group addressing his concerns regarding the management of staff and interns. He will testify that among the problems he identified were no clear directions in terms of work or performance. He will relate how files from the Virginia group were removed without consent of the clients and handed over to attorneys sent from Washington D.C. even though these attorneys were not in an attorney-client relationship with the clients.

[Plaintiffs object to any testimony regarding the alleged "Morris Days fraud" as irrelevant and prejudicial.]

**Parvez Ahmed**

Will testify as the former Chairman of the Council on American Islamic Relations (CAIR). Mr. Ahmed will verify the statements and submissions contained in the documents / exhibits from Michael Savage vs. Council on American – Islamic Relations Inc., Case No. CV07-06076 SI. Mr. Ahmed will testify regarding his resignation from CAIR and his express concerns regarding CAIR's "failure to be more proactive and positive in its promotion of Muslim civil rights" and its failure to include younger, "less religious Muslims and encourage regular turnover of leadership ranks to ensure an infusion of new ideas". He will describe the lack of input accepted from interns, young volunteers and employees and the entrenched group of older males who controlled CAIR and accepted little or no input from women, people of color and others who were not part of the Sunni/Arab elite.

Mr. Ahmed will testify regarding the founders, and directors of CAIR and their relationship to various Hamas, Muslim Brotherhood and other terror supporting groups. He will testify regarding the conflicts within the organization that this caused. He will testify regarding fund raising from overseas entities by CAIR directors. He will testify regarding the religious tests and conditions that affect promotion, work conditions and policy for CAIR.

Mr. Ahmed will testify regarding the cutoff in relations between the FBI and CAIR. Mr. Ahmed will address the conflicts within CAIR regarding secrecy, support for radicals and the treatment of young people, recruits, interns and staff who foster more mainstream and lawful ideals.

[Plaintiffs object to the foregoing proposed testimony to the extent that Defendants intend to elicit testimony from this witness regarding CAIR's alleged ties to terrorism and of alleged internal discrimination at CAIR.]

**Nihad Awad Hammad.**

Nihad Hammad will testify regarding his background working as the 1993 public-relations director of the Islamic Association for Palestine (IAP). He will describe the relationship of that group to Hamas. He will testify regarding his position as a contributing editor for the IAP publication, Muslim World Monitor.

Mr. Hammad will testify regarding  his tenure with IAP and his partipation in the founding of CAIR as an outgrowth of these openingly extremist groups. To establish the extremism of these groups and Mr. Hammad, he will testify regarding his consistent rejection of Israel's right to exist and will testify regarding the letter that he wrote which criticized the American Muslim magazine "The Message" for having used the word "Israel" in one of its articles.

Mr. Hammad will testify regarding his participation in 1993 at a secret three-day summit in Philadelphia along with a number of people whom the FBI believed were Hamas members or supporters. He will testify how that meeting of people self identified as members of Hamas, created a plan to form a civil rights organization which would mimic James Zogby's legitimate civil rights group and under this cloak of deception, promote the interests of Hamas, in America. He will testify how CAIR was then formed to carry out this mission and how he, Omar Ahmed and others, created the facade of a civil rights organization when in fact the purpose of the group was to promote Hamas in the Middle East and to undermine any peace efforts between Israel and Palestinians.

In great detail, he will testify regarding the 1994, meeting involving then-IAP president Omar Ahmad, Rafeeq Jaber and Hammad where they specifically discussed the means by which the IAP could forge this pretend civil rights group. He will describe how, as a result of that meeting, in June of 1994 these three IAP members, incorporated the Council on American Islamic Relations (CAIR)

Mr. Hammad will testify that he then became the group's executive director and that Hamas member Ahmad was chairman of the board.

Mr. Hammad will testify that he solicited his friend and colleague from the Bosnian Relief Committee, Ibrahim Hooper, to serve as CAIR's communications director.

Mr. Hammad will confirm that CAIR was started with the help of a $5000 donation from the Texas-based Holy Land Foundation for Relief and Development (HLF) a group that Mr. Hammad knew was affiliated with Hamas. He will testify regarding financial support obtained from Mr. Marzook and from Saudi Arabia. He will testify regarding real estate loans from overseas

banks that evaporated but which were never recorded as donations or funding. He will discuss the ties of CAIR to the Muslim Brotherhood and Hamas in detail.

He will testify regarding his numerous trips overseas to raise money and the failures of CAIR to report foreign contributions, foreign influences, foreign control of CAIR. He will testify regarding CAIR's name changes and failures to file tax returns.

Mr. Hammad will testify regarding the criminal convictions of the HLF and its participants, the co-conspirator actions of Mr. Hammad and CAIR in that criminal conduct and the sending of money by CAIR to foreign terror groups and terrorists.

Mr. Hammad will testify regarding CAIR's funding of the criminal defense of a man assassinated a Sheriff's Deputy and the relationship of this funding to CAIR's stated civil rights purpose.

Mr. Hammad will testify regarding the same materials as outlined in the testify of Parvez Ahmed including the lack of supervision, training, advancement, salary, benefits or meaningful participation by staff and/or interns.

Mr. Hammad will testify regarding the domination of CAIR at policy level, by people with Sunni Arab backgrounds or white males and the absence of any people of color or women at any policy making level. He will testify regarding CAIR's use of donated funds for non-civil rights advocacy including the quashing of advocates of women's rights. In particular, Mr. Hammad will testify to CAIR's long standing use of charitable funds to fight and oppose the Muslim civil rights work of  Hirsi Ali who is the founder and president of the AHA Foundation, a non-profit humanitarian organization to protect women and girls in the U.S. against political Islam and harmful tribal customs that violate U.S. law and international conventions. He will testify that he and CAIR have attacked the AHA Foundation as being racist despite the fact that it vigorously

campaigns against the denial of education for girls, female genital mutilation, forced marriage, honor violence and killings, and suppression of information about the crimes through the misuse and misinterpretation of rights to freedom of religion and free speech in the U.S. and the West.

Mr. Hammad will identify his voice on a video dated March 22, 1994 made at a symposium at Barry University in Florida, where Mr. Hammad admitted that:

> "I used to support the PLO, and I used to be the President of the General Union of Palestine Students which is part of the PLO here in the United States, but after I researched the situation inside Palestine and outside, I am in support of the Hamas movement more than the PLO."

Mr. Hammad will confirm that he stated in an interview that same year with newsman Mike Wallace, Awad was asked if he supported the "military undertakings of Hamas," to which he replied: "The United Nations Charter grants people who are under occupation [the right] to defend themselves against illegal occupation."

Mr. Hammad will testify regarding what he wrote in the Muslim World Monitor, that the 1994 trial which resulted in the conviction of four Islamic terrorists who had perpetrated the previous year's World Trade Center bombing was "a travesty of justice." Notwithstanding the confessions of the terrorists, Awad said: "There is ample evidence indicating that both the Mossad [Israel's intelligence agency] and the Egyptian Intelligence played a role in the explosion."

Mr. Hammad will relate how, when U.S. officials in 1995 arrested HLF founder Mousa Abu Marzook on an Israeli murder warrant, Mr. Hammad said the measure was "politically motivated … [and] orchestrated to serve as a wedge between America and Islamic countries."  Mr. Hammad will testify regarding funding of CAIR by Mr. Marzook and the relationship between Mr. Marzook and various of CAIR's officers and founders.

Mr. Hammad will testify regarding the legal work performed by Nadira Al-Khalili for CAIR in the District of Columbia prior to her being licensed and the payments made to her for that legal work.

Mr. Hammad will testify how, when the FBI in September 2001 raided the Texas-based computer export company Infocom for its suspected ties to Hamas, Awad called the action "an assault and an insult to Muslims in America" based entirely on "stereotypes."  Mr. Hammad will admit that the persons arrested were all convicted of terror related charges.   The personal relationship between those arrested, the CAIR branch in Texas, CAIR's founders will be described by Mr. Hammad.

In response to his claims to work with law enforcement and Congress to fight terror, Mr. Hammad will be asked and will admit that in September 2003, Awad and CAIR board chairman Omar Ahmad were invited to testify at hearings held by the Senate Judiciary Subcommittee on Terrorism, Technology, and Homeland Security; both men declined to testify.

Mr. Hammad will testify regarding CAIR's website, which following the 9/11 terror attacks, raised money to aid the victims of those attacks by raising money for Hamas based terror groups pretending to be charities.

Mr. Hammad will testify regarding the lack of controls, safeguard, rules, regulations or standards at CAIR headquarters.

[Plaintiffs object to the foregoing proposed testimony in its entirety. Defendants intend to elicit testimony from this witness regarding CAIR's alleged ties to terrorism and allegations of internal discrimination at CAIR which have no bearing on any legitimate claim, defense, or issue in this case.]

**Chris Gaubatz**

Chris Gaubatz will testify on all matters raised by CAIR in its various complaints. He will cover the matters set forth in his deposition.  He will describe the lack of rules, regulations or standards for access to computers, rooms, staff, supervisors or anyone else at the premise.  He will describe the absence of any unauthorized access to any computers and the clear knowledge of his presence at all times that video was recorded.  Chris Gaubatz will relate the criminal conduct that he discovered once he was at the CAIR premise and the requests CAIR that he interpreted as requests to commit criminal acts and to undermine the security of the United States of America. He will describe his efforts to work with law enforcement officials and other responsible individuals so that criminal conduct by CAIR not continue and so that evidence not be destroyed. He will describe how he discovered that CAIR in Virginia/Maryland had committed fraud and how he believed CAIR might be using him to destroy evidence of that fraud.  He will describe his motivations, beliefs and intentions in taking actions that CAIR now characterizes as planned and/or intentional and/or malicious and/or wrongful.  He will describe the lack of pay, lack of benefits, lack of training, lack of promotion, lack of communication, which consistent with the testimony of Parvez Ahmad and others, will demonstrate the trivial role that interns played at CAIR.

**David Gaubatz**

David Gaubatz will testify on all matters raised by CAIR in its various complaints. He will cover the matters set forth in his deposition.  He will describe his military experience and his cooperation with Muslim people on matters of national security. He will describe the pernicious effects of radicals on the safety and well being of the normal, law abiding Muslim community and his dedication to contributing to the safety of all Americans including Muslim Americans.

David Gaubatz will describe in detail the lack of any intent by anyone involved in the lawsuit, to violate the rights, privileges or immunities of any corporation, entity, individual. He will describe the legitimate purposes for the which the video materials were intended. He will confirm the statements and testimony of the other defendants.

[Plaintiffs object to the broad designation that Chris and David Gaubatz will cover "all matters raised by CAIR in its various complaints" and will "cover the matters set forth in his deposition" to the extent that this does not allow Plaintiffs to raise specific objections. Plaintiffs further object to the proposed testimony of David Gaubatz on grounds of relevance and FRE 701. This witness is not qualified to offer opinion testimony and no expert witnesses have been designated in this case. Spefically, Plaintiffs object to this witnesses' proposed testimony regarding his military experience and "the pernicious effects of radicals on the safety and well being of the normal, law abiding Muslim community."].

**Steven Emerson \***

Mr. Emerson will be a rebuttal witness to any claims by plaintiff or plaintiff's witnesses, that CAIR is a civil rights organization, that CAIR's purpose is in any manner related to the statements of purpose or charity purposes as stated in the IRS filings (e.g. 990 filings). He will rebut any contentions that CAIR/plaintiff's are a lawful organization that is not governed by, responsive to or a "front" for, Hamas and the Muslim Brotherhood. Mr. Emerson will rebut claims that CAIR's mission is ""to enhance understanding of Islam, encourage dialogue, protect civil liberties, empower American Muslims, and build coalitions that promote justice and mutual understanding." He will also provide testimony in support of the reasonableness of Chris Gaubatz' belief that the documents that he viewed and documents that he was asked by CAIR to destroy, were evidence

of criminal wrongdoing by CAIR and its officers. The substance and documentation for this testimony can be found at the following URL's.

http://www.investigativeproject.org/documents/misc/292.pdf

https://www.investigativeproject.org/documents/misc/109.pdf

https://www.investigativeproject.org/documents/misc/110.pdf

Mr. Emerson will further rebut claims if made by CAIR that they assist law enforcement, in particular the FBI (See: http://www.investigativeproject.org/985/fbi-cuts-off-cair-over-hamas-questions)  Mr. Emerson's testimony will also support any claims by plaintiff that Chris or David Gaubatz recently fabricated or invented defenses e.g. misprison of a felony or any mental state defenses by showing that the beliefs were both founded in the materials known to Chris and David Gaubatz and that their beliefs were objectively verifiable, and reasonable.

[Plaintiff specifically objects to any testimony by this witness as he was not listed until the day prior to the parties' exchange of objections and pursuant to FRE 701. This witness is not qualified to offer opinion testimony and no expert witnesses have been designated in this case.]

**Nadhira Bint Faisal Al-Khalili**

Will testify that despite only being admitted to the Washington D.C. bar in 2010, she regularly practiced law in Washington D.C. on behalf of CAIR.  Ms. Al-Khalili will testify how the CAIR chapter in Virginia/Maryland, committed fraud by allowing a non-lawyer to perform legal work under the pretense that he was an experienced civil rights lawyer.  When this was discovered CAIR and its attorneys, led a cover up of this conduct by paying off victims in exchange for their silence.    Ms. Al-Khalili will testify that she had no attorney-client relationship with the victims of this scheme and that CAIR had no legal right to provide fee based legal services. Despite this, she and other attorneys controlled by CAIR, seized the files which resided in Virginia

and removed them to Washington D.C..  Ms. Al-Khalili will testify that, CAIR–VA's day-to-day operations were supervised by Khalid Iqbal, the chapter's executive director and an employee of CAIR National. She will testify that Mr. Iqbal was the director of operations for CAIR National, which paid his salary, but served simultaneously as the executive director of the regional chapter at CAIR–VA.  She will testify that CAIR National paid Iqbal's salary.  Ms. Al-Khalili will be asked to explain and specify which person or persons authorized her to take client files from CAIR-MD and remove them to CAIR (plaintiffs).  She will be asked to admit that the two entities shared a name but had no corporate relationship and she will be asked to address the ethical rules for the District of Columbia governing her taking of the files and working on the cases without client permission.  This will be presented in the context of what defendants will portray as a cover up of criminal/civil violations with respect to the "Morris Days" fraud on innocent Muslim immigrants who sought (through CAIR-MD), legal assistance only to be handed to a man who pretended to be an attorney.  The sharing of profits between CAIR-MD and CAIR (plaintiffs) for this criminal enterprise will be addressed.

In greater detail, Ms. Al-Khalili will testify that CAIR in Washington D.C. had Days act on its behalf.  She will testify that information regarding all of the cases that Days worked on was entered into a central database, which was maintained by CAIR in Washington, D.C..  Ms. Al-Khalili will testify that Virginia and Washington D.C. law prohibits a non-lawyer and a non-lawyer controlled entity (CAIR) from controlling legal cases.  Ms. Al-Khalili will describe her role and the role of others in having CAIR in D.C. take possession of all of the client files that belonged to CAIR–VA after the chapter was dissolved, and had its own personnel go through and review the files.  She will testify that this took place in the District of Columbia and was done without the knowledge or consent of the clients.

Ms. Al-Khalili will testify as to the location of these files and records regarding Morris Days and the use of interns to commit this fraud and cover up this fraud.

Ms. Al-Khalili will testify that no rules, regulations or standards existed for the training of interns. She will testify that neither she, nor any officer at CAIR knew or understood the computer security settings, standard, protocols or levels of security for any of the computers, servers or electronic devices on premise. She will testify that she was excluded from any major policy meetings at CAIR and that she despite the absence of a D.C. law license, she provided legal advice to CAIR in D.C. prior to 2010. Ms. Al-Khalili will testify that all major policy decisions at CAIR were made by Sunni-Arab or white males of the Sunni religion. She will testify that CAIR practiced active discrimination against Shiite Muslims and that CAIR misrepresented its purpose as supporting Islam in a broader sense. She will be asked about the misappropriation of charitable funds for the criminal defense of the convicted killer of two police officers and the non-disclosure of this funding, to the public.

Ms. Al-Khalili will be asked about CAIR fund raising from leaders of foreign governments including Khaddafi's Libya using funds from donations to pay for expenses for these foreign fund raising efforts.

Ms. Al-Khalili will testify regarding the standards for destroying documents, the need to preserve documents for IRS and other regulatory reasons. She will testify regarding the destruction of documents relating to the Morris Days scandal. Ms. Al-Khalili will be asked about foreign donations to CAIR (plaintiffs), the failure to report these donations on tax returns and instead, the dissolving of CAIR groups receiving illegal donations only to have the corporations "reappear" under similar names but with the illegal conduct and federal law violations hidden by the failure to ever file tax returns and the dissolution of the shell corporations.

45

[Plaintiffs object to any testimony regarding the alleged "Morris Days fraud" as irrelevant and prejudicial.]

## <u>LIST OF EXHIBITS</u>

**Plaintiffs' Exhibits:**

**Exhibit 1: Videos taken by Chris Gaubatz during his internship in 2008** (as identified below)
   a. June 16, 2008 at 00:03:58-00:04:20 (security measures for entering premises)
   b. June 16, 2008 at 00:09:10-00:15:46 (presented with confidentiality agreement)
   c. June 16 pt. 2 00:22:50-00:23:30 (recording two CAIR staffers discuss political action breakfast)
   d. June 24, 2008 at 02:13:05-02:19:10 (information about CAIR's legislative advocacy strategies)
   e. July 9, 2008 at 1:27:30-1:29:40 (recording a CAIR employee instructing him on the creation of internal document for CAIR's constituency, revealing internal details about CAIR's outreach strategy)
   f. July 9, 2008 pt. 2 at 02:16:38-02:18:15 (recording a conversation between another intern and his supervisor in which he was not participating)
   g. July 22, 2008 at 04:22:28-04:23:35 (recording another intern doing a client call, capturing info about client matters and their full name)
   h. Aug. 7, 2008, 01:21:40-01:22:05 (records a discussion on CAIR's policy and strategy as it relates to establishing coalitions in which he was not participating)
   i. August 14 at 02:21:47-02:23:00 (recording Director of Communications and Civil Rights Manager discussing facts related to cases in the Civil Rights Department)
   j. August 31, 2008, at 3:09:00, 3:11:00

[CSP Defendants object to Plaintiffs' Exhibit 1 video clips a. through j. on the grounds that they lack foundation. Plaintiffs respond by asserting that Chris Gaubatz will lay the foundation. To the extent that Plaintiffs' position is that the video clips will only be used in such a way that the only foundation required for the use Plaintiffs intend for them is Chris Gaubatz's testimony, then CSP Defendants withdraw their objection.]

**Exhibit 2: All Contractual Agreements and Emailed Amendments to those Agreements** (regarding "CAIR Documentary Film Project") (as identified below)
   a. Manifold-CSP Agreement (Dec. 21, 2007)
   b. CSP-Gaubatz Grant Agreement (Sept. 15, 17 2008)
   c. CSP-Publius Settlement Agreement (July 23, 2009) (CSP000169-177)
   d. SANE-Publius Agreement (March 2008) (Ex. 26, 29 Pl.'s MSJ)
   e. SANE-Gaubatz Agreement (March 2008) (Ex. 28 Pl.'s MSJ)
   f. CSP Draft Agreement (Ex. 31 Pl.'s MSJ)
   g. Draft Agreement between Center for Security Policy and World Net Daily (October 2010) (CSP 000988-991)
   h. Brim Email to Gaffney, P. David Gaubatz, Michael Pack (April 20, 2008), Amendment to Exhibit A of Grant Agreement b/w Publius & SANE

    **i.**  Yerushalmi and Brim Email (June 17, 2008) (Amendment II to agreement between Publius & SANE) (Ex. 30 Pl.'s MSJ)

    **j.**  Brim Email to P. David Gaubatz (April 10, 2009) ("Recommended Agreement")

    **k.**  CSP Grant Application/Project (CSP000919-920)

[CSP Defendants object to items c., f., g., j., and k. on the following grounds: (1) foundation; (2) relevancy; and (3) materiality.]

**<u>Exhibit 3</u>: Stolen documents re Plaintiff's Properties (i.e., those documents subject to the court's injunction)** (possible summary of documents not yet created)

[CSP Defendants object to this exhibit on the grounds of relevancy and materiality and further object to a "possible summary" not yet created as vague, ambiguous, hearsay, and violative of best evidence rule.]

**<u>Exhibit 4</u>: Emails**

    **a.**  Yaser Tabbara to Chris Gaubatz (July 7, 2008), Chris Gaubatz to Paul Sperry (Feb. 12, 2009) (Ex. 10 Pl.'s MSJ)

    **b.**  Nadhira Al-Khalili and Chris Gaubatz (August 19, 2008) (David Marshall False Resume) (Ex. 11 Pl.'s MSJ)

    **c.**  Raabia Wazir (Masjid Census Training email with Questionnaire attached) (June 25, 2008) (Ex. 16 Pl.'s MSJ)

    **d.**  Raabia Wazir and Chris Gaubatz (tasks completed by David Marshall, including review of lists of Mosques) (June 26, 2008) (Ex. 18 Pl.'s MSJ)

    **e.**  Brim and P. David Gaubatz (April 23, 2008) (Ex. 21 Pl.'s MSJ)

    **f.**  Brim and P. David Gaubatz (May 1, 2008) (Ex. 22 Pl.'s MSJ)

    **g.**  Brim and P. David Gaubatz (June 19, 2008) (Ex. 23 Pl.'s MSJ)

    **h.**  P. David Gaubatz to Christine Brim, Chris Gaubatz, Frank Gaffney (April 4, 2009) (Ex. 24 Pl.'s MSJ)

    **i.**  P. David Gaubatz to Brim ("DG Counter Terrorism Publishing Letter") (April 4, 2009) (Ex. 25 Pl.'s MSJ) (Email and Letter from David Gaubatz to Christine Brim, Chris Gaubatz, and Frank Gaffney, Meeting documents video (April 4, 2009)

    **j.**  Email from Christine Brim to David Gaubatz, Chris Gaubatz, and Frank Gaffney, *Re draft letter to Frank Gaffney* (April 3, 2009) (Ex. 69 Pl.'s Opp. To Def.'s MSJ)

    **k.**  Chris Gaubatz to Shaun Siefert, Cc: Christine Brim ("SANE Transfer") (attached to end of Ex. 25 Pl.'s MSJ)

    **l.**  Emails from <u>davidmarshall1215@gmail.com</u> to davidmarshall1215@yahoo.com, *Contact Lists* (July 8, 2008) (Ex. 51 Pl.'s Opp. To Def.'s MSJ)

    **m.**  Email from Raabia Wazir to Chris Gaubatz and CAIR Volunteers (June 25, 2008) (Ex. 67 Pl.'s Opp. To Def.'s MSJ)

    **n.**  WorldNetDaily (Oct. 13-15, 2009) (Ex. 32 Pl.'s MSJ)

    **o.**  Sperry and Gaffney email (October 20, 2009) (Ex. 33 Pl.'s MSJ)

    **p.**  Brim and Sperry (March 18, 2010) (Ex. 34 Pl.'s MSJ)

    **q.**  Brim to Frank Gaffney, Yerushalmi, P.D. Gaubatz, and Michael Pack @ Manifold Productions (signed for Publius) (June 17, 2008) (attached to end of Exhibit 30)

    **r.**  Chris Gaubatz and Christine Brim (CSP000752-756, 765-766, 799-800, 816)

[CSP Defendants object to all items on the grounds of relevant, foundation, and authentication; More specifically, CSP Defendants object to items a. through d., l., m., n., and o. based upon lack of foundation and authentication; CSP Defendants further object to items n. and r. on relevance and materiality grounds. To the extent that Plaintiffs have previously identified witnesses to lay the proper foundation for the emails and to attest to their authenticity, CSP Defendants withdraw these specific objections.]

**Exhibit 5: Excerpts of Muslim Mafia** (see e.g., Ex. 65 Pl.'s Opp. To Def.'s MSJ)

[CSP Defendants object to this exhibit on the grounds that it is vague and listing of specific excerpts as "see e.g." and further object to any introduction of any parts of the book "Muslim Mafia" on the following grounds: (1) lacks authentication; (2) lacks relevancy and materiality; and (3) hearsay.

**IF NECESSARY:**

**Exhibit 4: Emails (Cont'd)**
   **s.** Raabia Wazir and Chris Gaubatz (July 2008) (Ex. 12 Pl.'s MSJ)
   **t.** Intern email (July 8, 2008) (Ex. 14 Pl.'s MSJ)
   **u.** Saeed Mahyoub and Chris Gaubatz (August 8) (Ex. 15 Pl.'s MSJ)
   **v.** Jumana email (August 5, 2008) (Ex. 40 Pl.'s MSJ)
   **w.** ISWM, Asma Gheyoub and Chris Gaubatz (Sept. 3, 2008) (Ex. 42 Pl.'s MSJ)
   **x.** Asma Gheyoub (August 6, 2008) ((Ex. 43 Pl.'s MSJ)

[CSP Defendants object to this testimony on the grounds that it is irrelevant and immaterial to the extant allegations.]

**Exhibit 6: Transcript(s)**
   **a.** Transcript of Chris Gaubatz Phone Call (especially regarding non-disclosure agreement, 14:8-5) (Ex. 37 Pl.'s MSJ)
   **b.** Transcript of selected Chris Gaubatz video (Ex. 38 Pl.'s MSJ)

[CSP Defendants object to Exhibit 6 on the grounds that it is not authenticated, lacks foundation, is not the best evidence, includes inaccurate transcriptions and editorial notes regarding audibility, and is inadmissible hearsay.]

**Exhibit 7: Other Documents**
   **a.** CAIR and Foreign Agents Registration Act (Ex. 19 Pl.'s MSJ)
   **b.** DCRA certificate of good standing (Ex. 64 Pl.'s Opp. To Def.'s MSJ)
   **c.** Center for Security Policy's FARA Report (CSP000001-65)

**Exhibit 8: Blog Posts and Other Online Media**
   **a.** Dave Gaubatz Blog (Nov. 29, 2008) (Ex. 35 Pl.'s MSJ)
   **b.** Dave Gaubatz Blog (Nov. 30, 2008) (Ex. 36 Pl.'s MSJ)
   **c.** Screenshot of SANE War Manifesto ("We are against Islam and all Muslim faithful") (Ex. 73 Pl.'s Opp. To Def.'s MSJ)

    **d.**   ADL   Report:   David   Yerushalmi,  *available  at*   <u>http://www.adl.org/civil-</u>
          <u>rights/discrimination/c/david-yerushalmi-a-driving.html</u> (Ex. 70 Pl.'s Opp. To Def.'s
          MSJ)
    **e.**   Screenshot of SPLC's Anti-Muslim Inner Circle (Ex. 71 Pl.'s Opp. To Def.'s MSJ)

[CSP Defendants object to items c. through e. on the grounds of authentication, foundation, relevancy, and materiality.]

Plaintiffs' list of exhibits assumes that Plaintiffs will not have to defend itself against claims of terrorism. Plaintiffs reserve the right to supplement and amend this list if this court determines that Plaintiffs must prove their legitimate status as a civil rights and advocacy group in order to prevail on their claims of trespass, DC and Federal Wiretap Act violations, and Stored Communications Act violations.

[CSP Defendants object to Plaintiffs' blanket reservation statement immediately above for the following reasons. First, CSP Defendants are not seeking to prove that Plaintiffs are terrorists or engaged in terrorism. CSP Defendants only offer testimony by Messrs. Gaffney and Yerushalmi to establish the reasons for attempting to make the Muslim Brotherhood-CAIR Documentary to evidence the state of mind, knowledge, and purposes of the CSP Defendants in undertaking the Muslim Brotherhood-CAIR Documentary. Further, the specific documentary evidence relating to that state of mind is to demonstrate that the reasons for the Muslim Brotherhood-CAIR Documentary were well-founded and based upon legal propositions and further that the CSP Defendants' state of mind were rationally based. The same is true as to Plaintiffs' status as a "legitimate" civil rights organization. CSP Defendants are not seeking to prove any fact about Plaintiffs but to establish the CSP Defendants' state of mind and the rational basis for that state of mind.]

## <u>CSP Defendants' Exhibits</u>: **To Be Used (Declarations and Deposition Transcripts: If the Need Arises\*)**

[\*Note 1: Plaintiffs and CSP Defendants have agreed that the written production documents, depositions, and declarations will only be used to refresh a witnesses' recollection or as impeachment, but not in lieu of live testimony (except that depositions might be used *de bene esse* for an unavailable witness with court approval and subject to all preserved objections).]

[\*Note 2: CSP Defendants have withdrawn their Evidentiary Proffer, previously attached to the working draft of the joint pretrial statement and have included herein below the detailed deposition transcript page and line designations as Plaintiffs have requested, notwithstanding Plaintiffs earlier agreement that all parties would provide a detailed evidentiary proffer.]

- The following exhibits were previously filed as part of Defs.' Statement of Fact in Supp. of

   Defs.' Mot. for Summ. J. ("Defs.' Facts")

o The following exhibits, which were filed as part of Exhibit A: Declaration of Robert J. Muise, Esq.

   ▪ Exhibit 1: Gaffney Deposition Transcript (December 26, 2012) / Subject to Defendants' Objections

   ▪ Exhibit 2: Awad Deposition Transcript (January 9, 2013)

   ▪ Exhibit 3: Saylor Deposition Transcript (January 8, 2013)

   ▪ Exhibit 4: CSP Deposition Transcript Vol. 1 (January 17, 2013) / Subject to Defendants' Objections

   ▪ Exhibit 5: CSP Deposition Transcript Vol. 2 (January 18, 2013) / Subject to Defendants' Objections

   ▪ Exhibit 6: Donvito Deposition Transcript (January 7, 2013) / Subject to Defendants' Objections

   ▪ Exhibit 7: Yerushalmi Deposition Transcript (January 17, 2013) / Subject to Defendants' Objections

   ▪ Exhibit 8: Dave Gaubatz Deposition Transcript (January 14, 2013) / Subject to Defendants' Objections

   ▪ Exhibit 9: SANE Deposition Transcript (January 18, 2013) / Subject to Defendants' Objections

   ▪ Exhibit 10: Chris Gaubatz Deposition Transcript (January 10, 2013) / Subject to Defendants' Objections

   ▪ Exhibit 11: Brim Deposition Transcript (January 15, 2013) / Subject to Defendants' Objections

   ▪ Exhibit 12: Al-Khalili Deposition Transcript (January 9, 2013)

- Exhibit 13: Wazir Deposition Transcript (January 3, 2013)

- Exhibit 14: Plaintiffs' Third Supplement to Initial Disclosures

- Exhibit 15: Plaintiffs' Answers to CSP Defendants' First Set of Interrogatories

- Exhibit 16: Plaintiffs' First Supplement to Answers to CSP Defendants' First Set of Interrogatories

- Exhibit 17: Plaintiffs' Second Supplement to Answers to CSP Defendants' First Set of Interrogatories

- Exhibit 18: Plaintiffs' Response to CSP Defendants' Second Request for Production

- Exhibit 20: Plaintiffs' Supplemental Response to CSP Defendants' Second Request for Production

- Exhibit 21: Plaintiffs' Third Supplement to Answers to CSP Defendants' First Set of Interrogatories

- Exhibit 22: October 24, 2012, email from Al-Khalili re: stipulations

[Plaintiffs object to this exhibit on grounds of relevance, hearsay, authenticity, and lack of foundation.]

- Exhibit 23: CSP-Manifold Productions, Inc. agreement

- Exhibit 24: Publius Productions, LLC-SANE contract

- Exhibit 25: SANE-Dave Gaubatz contract

- Exhibit 26: SANE-Dave Gaubatz Mapping Sharia project contract

[Plaintiffs object to this exhibit on grounds of relevance, hearsay, authenticity, and lack of foundation.]

- Exhibit 27: SANE-Dave Gaubatz Mapping Sharia project settlement agreement

[Plaintiffs object to this exhibit on grounds of relevance, hearsay, authenticity, and lack of foundation.]

- Exhibit 28: CSP-Dave Gaubatz contract

- Exhibit 29: CSP-Chris Gaubatz contract

- Exhibit 30: Chris Gaubatz's Answers to Plaintiffs' First Set of Interrogatories

- Exhibit 31: Dave Gaubatz's Answers to Plaintiffs First Set of Interrogatories

- Exhibit 33: Dave Gaubatz's Answers to Plaintiffs' Third Set of Interrogatories

- Exhibit 34: Confidentiality Agreements signed by CAIR-F interns

[Plaintiffs object to this exhibit on grounds of relevance, hearsay, authenticity, and lack of foundation.]

- Exhibit 35: Pls.' Certificate of Completion issued to Dave Marshall

[Plaintiffs object to this exhibit on grounds of relevance, hearsay, authenticity, and lack of foundation.]

- Exhibit 36: CSP Defendants' Answers to Plaintiffs' First Set of Interrogatories

- Exhibit 37: April 2, 2009, email from Dave Gaubatz to Brim

- Exhibit 38: April 3, 2009, email from Brim to Dave Gaubatz

- Exhibit 39: April 4, 2009 email and letter attachment from Dave Gaubatz to Brim

[Plaintiffs object to this exhibit on grounds of relevance, hearsay, authenticity, and lack of foundation.]

- Exhibit 40: CSP-Dave Gaubatz termination agreement

- Exhibit 41: Dave Gaubatz's Answers to Plaintiffs' Second Set of Interrogatories

- Exhibit 42: Chris Gaubatz's Answers to Plaintiffs' Second Set of Interrogatories

o   Exhibit B: Declaration of Frank J. Gaffney, Jr.

o   Exhibit C: Declaration of Christine Brim

o   Exhibit D: Declaration of Adam Savit

o   Exhibit E: Declaration of Sarah Pavlis

o   Exhibit F: Declaration of David Yerushalmi

▪   Exhibit 1: CAIR-AN corporation document filings

▪   Exhibit 2: CAIR-F corporation document filings

▪   Exhibit 3: CAIR-F IRS form 1023 tax filings for IRC § 501(c)(3) reinstatement

[Plaintiffs object to the foregoing corporate tax filings (1-3) on grounds of relevance, hearsay, lack of foundation, and unfair prejudice.]

▪   Exhibit 4: HLF Trial: List of co-conspirators

▪   Exhibit 5: HLF Trial: Government trial brief

▪   Exhibit 6: HLF Trial: Court's memorandum opinion order re: CAIR-AN's motion

▪   Exhibit 7: HLF Trial: Government brief opposing CAIR-AN's motion

▪   Exhibit 8: HLF Trial: Muslim Brotherhood planning memo re: Civilization Jihad

▪   Exhibit 9: HLF Trial: Government's Philadelphia Meeting Participant Chart

▪   Exhibit 10: HLF Trial: Trial Transcript (pt. 1) discussing evidence referenced in Exhibit 13

▪   Exhibit 11: HLF Trial: Trial Transcript (pt. 2) discussing evidence referenced in Exhibit 13

[Plaintiffs object to the foregoing "HLF Trial" (4-11) documents as wholly and entirely unrelated to this case and are highly inflammatory and prejudicial. Accordingly, Plaintiffs object on grounds of relevance, hearsay, lack of foundation, and unfair prejudice.]

▪ Exhibit 12: FBI letter to Senator Jon Kyl

[Plaintiffs object to this exhibit on grounds of relevance, hearsay, authenticity, and lack of foundation.]

▪ Exhibit 13: Department of Justice letter to Congresswoman Myrick

[Plaintiffs object to this exhibit on grounds of relevance, hearsay, authenticity, and lack of foundation.]

▪ Exhibit 14: Dave Gaubatz's military awards and citations

[Plaintiffs object to the introduction of Dave Gaubatz's military awards on citations on grounds of relevance, authenticity, lack of foundation, and prejudice].

o The following exhibits, which were filed as part of Exhibit A: Declaration of Robert J. Muise, Esq. in support of Defendants' Statement of Facts in Opposition to Plaintiffs' Motion for Summary Judgment.

▪ Exhibit 1: Dave Gaubatz Deposition Transcript (January 14, 2013) / Subject to Defendants' Objections

▪ Exhibit 2: SANE Deposition Transcript (January 18, 2013) / Subject to Defendants' Objections

▪ Exhibit 3: CSP Deposition Transcript Vol. 1 (January 17, 2013) / Subject to Defendants' Objections

▪ Exhibit 4: CSP Deposition Transcript Vol. 2 (January 18, 2013) / Subject to Defendants' Objections

- Exhibit 5: Al-Khalili Deposition Transcript (January 9, 2013)

- Exhibit 6: Wazir Deposition Transcript (January 3, 2013)

- Exhibit 7: CAIR-AN (Athman) Deposition Transcript (May 10, 2011)

- Exhibit 8: Donvito Deposition Transcript (January 7, 2013) / Subject to Defendants' Objections

- Exhibit 9: Plaintiffs' Second Supplemental Response to CSP Defendants' First Request for Production

- Exhibit 10: Plaintiffs Supplemental Production at Plaintiffs' Bates Nos. 3325-3508

- Exhibit 11: CAIR-F's April 17, 2012, Response to IRS

[Plaintiffs object to this exhibit on grounds of relevance, hearsay, authenticity, and lack of foundation.]

o Exhibit B: Declaration of David Yerushalmi filed in support of Defendants' Statement of Facts in Opposition to Plaintiffs' Motion for Summary Judgment.

o All audio-video clips contained on Exhibit 1 filed in support of Plaintiffs' motion for summary judgment and which include all the audio-video recordings made by Chris Gaubatz at Plaintiffs' offices and provided to Christine Brim.

## Gaubatz Defendants Exhibits:

[Plaintiffs object to each and every one of the Gaubatz Defendants' Exhibits on grounds of hearsay, relevance, authentication, and lack of foundation. Plaintiffs further object to each and every one of the Gaubatz Defendants' 66 exhibits on grounds of unfair prejudice. Specifically, Plaintiffs object to the introduction of any exhibit intended to tie CAIR, financially or otherwise, to Hamas, the Muslim Brotherhood, or any other terrorist group or organization. Defendants have not identified a single exhibit listed below which has some legitimate purpose, other than to support their allegations of Plaintiffs' criminal conduct or terrorist affiliations, or to prejudice Plaintiffs in some way unrelated to any legitimate defense Defendants may have. Plaintiffs take particular issue with Exhibit 41 ("Honor Diaries Trailer"), as set forth in their motion for relief.]

- Exhibit 1 Hamas Leaders in the 1990's, Gov. Exhibit 17 - U.S. v. HLF

- Exhibit 2 HLF Trial Unindicted CoConspirator List

- Exhibit 3 Judge Solis Order HLF Trial Doc 1356

- Exhibit 4 CAIR 990 2004

- Exhibit 5 Philadelphia Meeting Chart

- Exhibit 6 Philadelphia Meeting Transcript Portion "Samah"

- Exhibit 7 Check from HLF to CAIR 10 5 1994

- Exhibit 8 Declaration of Raabia Wazir

- Exhibit 9 IRS Packet documents re CAIR MD purpose and relation to CAIR DC

- Exhibit 10 6 22 06 Letter to IRS re CAIR MD gifts from CAIR DC

- Exhibit 11 CAIR 2005 990

- Exhibit 12 CAIR Website 9 17 2001

- Exhibit 13 CAIR website Nov 20 2001

- Exhibit 14 CAIR Website 12 4 2001

- Exhibit 15 CAIR Website 9 25 2001

- Exhibit 16 CAIR Website 9 24 2001

- Exhibit 17 CAIR donations on 9 11 2001

- Exhibit 18 HLF 990 1993 w Marzook listed

- Exhibit 19 HLF 990 1998 with Baker listed

- Exhibit 20 Summary of Marzook Phone calls

- Exhibit 21 Nihad Awad Deposition Boim Case

- Exhibit 22 Rafeeq Jaber - Vol 1 Dep Transcript Boim case

- Exhibit 23 Video March 22 1994 Barry University Nihad Awad

- Exhibit 24 HLF sends money to family of terrorist

- Exhibit 25 HLF Sends $ 5000 Start up money to CAIR 1994

- Exhibit 26 CAIR letter Demanding Robert Spencer be barred from Speaking

- Exhibit 27 Awad Testimony to Congress

- Exhibit 28 Letter thanking CAIR for Al-Amin Support

- Exhibit 29 CAIR Legal Defense of Terrorist

- Exhibit 30 El Mezain Deposition Boim case

- Exhibit 31 HLF Indictment

- Exhibit 32 Muslim Brotherhood Hamas Doc Naming CAIR

- Exhibit 33 CAIR AND Hamas group GLR

- Exhibit 34 Baker Deposition Boim Case

- Exhibit 35 Awad Press release Extolling Rev. King

- Exhibit 36 Saylor Supports Rasool Post Conviction

- Exhibit 37 Rasool Weiss sign in sheet

- Exhibit 38 Rasool Criminal Information

- Exhibit 39 Rasool Conviction

- Exhibit 40 Iqbal Memo to Board

- Exhibit 41 Honor Diaries Trailer

- Exhibit 42 CAIR Challenges Honorary Degree for Muslim Scholar with Whom they Disagree

- Exhibit 43 Review of FBI / CAIR Interactions by Inspector General of the United States

- Exhibit 44 FBI / CAIR Letter 2008

- Exhibit 45 DOJ to Senator Ky re CAIR

- Exhibit 46 Discrimination Complaint Against CAIR

- Exhibit 47 Don't talk to the FBI CAIR per IPT article

- Exhibit 48 CAIR Amicus

- Exhibit 49 Form a Neutral Organization 836

- Exhibit 50 Derailing Oslo 720

- Exhibit 51 Sister Samah 722

- Exhibit 52 Hamas Charter English & Arabic

- Exhibit 53 treasury-department-designaton-of-the- HLF

- Exhibit 54 treasury-department-designaton-of-global-relief

- Exhibit 55 Check for $ 5000

- Exhibit 56 2000 990 CAIR California Donates to HLF

- Exhibit 57 IRS Terror Organization List

- Exhibit 58 990 2000 CAIR California

- Exhibit 59 CAIR Banquet - Imam Siraj Wahaj Video

- Exhibit 60 Stipulation CAIR National Name & Status

- Exhibit 61 Amended Answer all plus par. 9

- Exhibit 62 Al-Khalili Bar Membership 2010

- Exhibit 63 Al-Khalili Declaration

- Exhibit 64 Rule of Professional Conduct 4.3

- Exhibit 65 Rules of Professional Conduct_ Rule 1

- Exhibit 66 DC Rule 49

## DESIGNATION OF DEPOSITIONS TO BE OFFERED INTO EVIDENCE*

[*Note: Plaintiffs and CSP Defendants have agreed that the written production documents, depositions, and declarations will only be used to refresh a witnesses' recollection or as

impeachment, but not in lieu of live testimony (except that depositions might be used *de bene esse* for an unavailable witness with court approval and subject to all preserved objections.]

**Deposition Testimony To Be Offered By Plaintiffs:**

Plaintiffs are unable to identify specific portions of the deposition transcripts without advance knowledge of the testimony of each of these witnesses. Plaintiffs only intend to use the deposition transcripts as indicated above.

Brim Deposition Transcript (January 15, 2013) 229:4-21

Chris Gaubatz Deposition Transcript (January 10, 2013)

Center for Security Policy Deposition Transcript (January 17, 2013)

Dave Gaubatz Deposition Transcript (January 14, 2013)

DonVito Deposition Transcript (January 7, 2013)

Gaffney Deposition Transcript (December 26, 2012)

SANE Deposition Transcript (January 18, 2013)

Yerushalmi Deposition Transcript (January 17, 2013).

Corey Saylor Deposition Transcript (January 8, 2013)

Nihad Awad Deposition Transcript

[CSP Defendants object to all of Plaintiffs' deposition designations insofar as they violate the Court's Order requiring page and line designations.]

**Deposition Testimony To Be Offered By CSP Defendants:**

**[The following exhibit references are taken from the exhibits to Ex. A to CSP Defs.' Facts in Supp. of MSJ.]**

Exhibit 1: Gaffney Deposition Transcript (December 26, 2012)

- 15:6-18:9
- 71:5-71:22
- 72:8-73:1
- 83:7-83:15
- 85:6-86:2
- 89:9-90:14
- 100:6-100:12

- 104:8-104:13
- 108:6-108:24
- 113:20-113:21
- 146:22-147:11
- 155:1-155:9
- 286:18-288:3
- 291:11-292:2
- 301:7-301:23

Exhibit 2: Awad Deposition Transcript (January 9, 2013)

- 42:9-42:25
- 49:3-72:3
- 74:3-74:9

Exhibit 3: Saylor Deposition Transcript (January 8, 2013)

- 40:9-40:24
- 41:21-42:2
- 44:13-45:9
- 49:16-49:22
- 50:24-51:18
- 56:19-59:25
- 87:20-88:15
- 90:3-92:15
- 101:21-102:12
- 104:1-117:4
- 117:8-119:5
- 124:4-124:25
- 126:10-126:23
- 142:1-153:15
- 153:18-208:22
- 246:3-255:15

Exhibit 4: CSP Deposition Transcript Vol. 1 (January 17, 2013)

- 11:13-11:17
- 12:1-12:24
- 15:17-16:4
- 22:5-25:19
- 27:2-27:6
- 27:10-28:2
- 29:15-30:9

- 30:11-31:20
- 32:10-34:3
- 34:17-35:11
- 35:13-36:25
- 38:9-39:12
- 41:6-42:21
- 49:15-50:13
- 52:6-53:5
- 61:14-65:7
- 69:18-72:11

Exhibit 5: CSP Deposition Transcript Vol. 2 (January 18, 2013)

- 98:13-98:20
- 127:17-130:8
- 138:23-139:12
- 175:10-178:11
- 178:13-188:7
- 192:11-193:7
- 194:6-195:8
- 195:21-197:5

Exhibit 6: Donvito Deposition Transcript (January 7, 2013)

- 17:5-17:19
- 22:3-23:25
- 26:11-26:20
- 29:22-30:6
- 36:21-37:22
- 46:7-47:25
- 78:3-79:24
- 128:20-130:1
- 165:19-166:16

Exhibit 7: Yerushalmi Deposition Transcript (January 17, 2013)

- 36:12-37:5
- 39:15-39:16
- 52:21-53:6
- 53:14-56:3
- 68:21-70:4
- 70:9-75:1
- 76:15-77:8

- 80:19-81:19
- 82:4-83:19
- 93:2-93:16
- 102:11-109:23
- 110:1-113:3
- 114:8-116:7
- 116:9-117:19
- 163:18-165:1

Exhibit 8: Dave Gaubatz Deposition Transcript (January 14, 2013)

- 16:2-16:21
- 17:1-17:10
- 17:18-18:24
- 21:3-21:6
- 22:13-22:18
- 23:6-23:24
- 63:7-64:1
- 72:1-72:6
- 78:18-79:20
- 80:2-80:6
- 82:18-82:22
- 84:10-84:21
- 84:23-85:13
- 94:7-94:11
- 97:16-97:20
- 98:10-99:1
- 100:2-101:22
- 102:10-103:3
- 104:8-104:20
- 107:6-108:25
- 122:7-124:10
- 132:13-134:11
- 135:5-135:11
- 140:6-141:20
- 150:17-154:1
- 162:8-167:8
- 170:22-173:3
- 181:6-181:12
- 183:8-184:8
- 186:16-187:2
- 187:25-188:3
- 189:10-189:16

- 190:21-192:15
- 192:21-195:25
- 196:10-196:18
- 198:8-198:22
- 198:24-200:10
- 203:5-203:16
- 205:12-205:19
- 212:6-217:6
- 247:13-248:19
- 249:6-250:12
- 262:17-262:22
- 269:13-270:7
- 270:14-274:5
- 274:8-276:10

Exhibit 9: SANE Deposition Transcript (January 18, 2013)

- 25:6-37:15
- 39:4-39:19
- 40:8-41:15
- 44:13-46:19
- 51:19-51:25
- 54:14-56:4
- 64:5-64:19
- 67:11-68:2
- 72:13-76:9
- 79:2-80:21

Exhibit 10: Chris Gaubatz Deposition Transcript (January 10, 2013)

- 21:14-22:5
- 22:17-22:21
- 24:4-24:6
- 25:18-25:20
- 27:10-28:20
- 64:12-65:10
- 111:14-112:8
- 112:21-112:25
- 195:10-195:24
- 244:3-245:19
- 246:2-256:3
- 264:9-268:8

Exhibit 11: Brim Deposition Transcript (January 15, 2013)

- 9:11-9:16
- 10:3-10:20
- 11:11-11:15
- 55:15-56:5
- 56:20-57:18
- 59:1-59:6
- 60:4-60:19
- 73:4-74:3
- 83:21-84:20
- 96:22-97:19
- 119:20-120:2
- 142:8-144:16
- 148:13-148:22
- 148:25-149:22
- 150:4-152:15
- 155:5-156:17
- 157:21-158:5
- 167:13-169:5
- 170:11-170:20
- 171:14-171:16
- 172:17-173:12
- 174:24-175:2
- 176:9-176:14
- 177:8-178:2
- 178:20-179:8
- 181:22-185:20
- 188:12-189:10
- 190:1-190:24
- 208:2-208:14
- 211:4-211:16
- 215:14-216:21

Exhibit 12: Al-Khalili Deposition Transcript (January 9, 2013)

- 8:12-35:24
- 38:4-55:18
- 73:22-74:4

Exhibit 13: Wazir Deposition Transcript (January 3, 2013)

- 20:23-21:3

- 25:7-28:8
- 29:15-31:25
- 38:2-45:16
- 49:18-50:15
- 57:11-57:23
- 78:3-78:14
- 80:3-82:8
- 86:9-86:22
- 101:15-102:11
- 103:1-104:16
- 105:12-108:21
- 114:17-114:22
- 116:18-117:9
- 125:18-125:24
- 127:7-129:6
- 131:6-131:17
- 190:4-190:19
- 191:12-198:10
- 203:21-204:4
- 238:1-238:17

**[The following exhibit references are taken from the exhibits filed with CSP Defs.' Opp'n to Pls.' MSJ.]**

Exhibit 1: Dave Gaubatz Deposition Transcript (January 14, 2013)

- 7:16-8:11
- 14:14-19:2
- 21:3-21:6
- 76:12-76:24
- 77:8-79:20
- 80:1-80:6
- 82:13-82:22
- 83:4-84:21
- 97:15-97:20
- 98:9-99:1
- 101:1-101:22
- 102:10-103:3
- 107:6-108:25
- 122:6-124:10
- 250:13-254:15
- 260:11-260:19
- 269:22-270:7
- 270:14-271:16

Exhibit 2: SANE Deposition Transcript (January 18, 2013)

- 8:11-9:16
- 45:3-46:19

Exhibit 3: CSP Deposition Transcript Vol. 1 (January 17, 2013)

- 32:9-34:2
- 46:20-47:14
- 57:3-57:22

Exhibit 4: CSP Deposition Transcript Vol. 2 (January 18, 2013)

- 94:12-95:4
- 98:12-98:20
- 103:12-106:20

Exhibit 5: Al-Khalili Deposition Transcript (January 9, 2013)

- 8:12-17:22

Exhibit 6: Wazir Deposition Transcript (January 3, 2013)

- 21:18-22:18
- 47:4-48:5
- 50:22-51:7
- 52:8-52:23

Exhibit 7: CAIR-AN (Athman) Deposition Transcript (May 10, 2011)

- 8:19-9:15

Exhibit 8: Donvito Deposition Transcript (January 7, 2013)

- 18:15-19:25
- 20:24-21:3
- 25:6-26:4
- 43:14-44:10
- 63:11-65:24

[The following exhibit references are taken from the exhibits filed with CSP Defs.' Reply in Supp. of MSJ.]

Exhibit 1 to Ex. A: Chris Gaubatz Deposition Transcript (January 10, 2013)

- 84:2-86:10
- 102:5-103:20

## DEPOSITION TESTIMONY TO BE OFFERED BY GAUBATZ DEFENDANTS:

**All those listed by plaintiff.**

**Plus**

Nadira Al-Khalili

Exhibit 21 Nihad Awad Deposition Boim Case

Exhibit 22 Rafeeq Jaber - Vol 1 Dep Transcript Boim case

Exhibit 30 El Mezain Deposition Boim case

[Plaintiffs object to the deposition testimony offered by the Gaubatz Defendants to the extent that they have not joined in the agreement of the Plaintiffs and CSP Defendants with regard to the limited use of depositions and to the extent that they have not designated line and page numbers if their intended use goes beyond that agreed to by the Plaintiffs and CSP Defendants.]

## <u>ITEMIZATION OF DAMAGES</u>

**Plaintiffs' Damages (to be updated by Plaintiffs)**

- **Profits made by Specified Defendants**

  - Wages earned by Chris Gaubatz via his father for surreptitiously recording at CAIR (Chris Gaubatz, actual amount TBD)

  - Wages earned by Chris Gaubatz via CSP for his 2 months working after leaving CAIR (Chris Gaubatz, actual amount TBD)

  - $103,865 paid to SANE by CSP in 2008 with the expectation that the money would go from SANE to David Gaubatz as compensation for his work obtaining audio/video recordings from inside Plaintiffs' office (Paul David Gaubatz)

67

- o Profits from sale of "Muslim Mafia" (Paul David Gaubatz, actual amount TBD)

- **Statutory Damages** (as set forth in the Stored Communications Act, Federal Wiretap Act, and DC Wiretap Act)

- **Nominal Damages** (trespass)

- **Attorney's Fees/Costs**

- **Punitive Damages**

[CSP Defendants object to Plaintiffs' itemization of damages insofar as it does not include the requisite Court-ordered information and attempt to create a caveat for future updating, precluding its usefulness for trial preparation or as a basis for CSP Defendants to set forth their objections.]

## STIPULATIONS OF FACT

- Chris Gaubatz used an inconspicuous button camera to record audio and video at CAIR's offices

## LIST OF PENDING MOTIONS

Motion(s) in limine T.B.D.

## PROPOSED AMENDMENTS TO PLEADINGS

Remove inapplicable claims, including count numbers 3, 4, 5, 6, 8, 9, and 10. (AGREED)

[CSP Defendants would argue that all allegations referring to "aiding and abetting," "conspiracy," preliminary or permanent injunction, and all facts relating uniquely to the dismissed common law counts should be eliminated as well.]

## ESTIMATE OF TRIAL TIME REQUIRED

Plaintiffs' estimate 10 trial days plus jury selection, instruction and deliberation. CSP Defendants estimate 60-90 days.

## PLAINTIFFS' AND CSP DEFENDANTS' PROPOSED JUROR QUESTIONNAIR AND

## *VOIR DIRE*

Plaintiffs and CSP Defendants have agreed to the below-listed set of jury instructions except where noted otherwise.

**Juror Questionnaire**

You have been summoned by this Court for jury selection. The case for which you have been summoned for jury selection is a civil case. As part of the jury selection process, each of you must complete this juror questionnaire. The questions on this form are asked to assist the Court and the attorneys in the jury selection process for this trial. This questionnaire is designed to obtain information about your background as it relates to your possible service as a fair and impartial juror in this case. Its use will avoid the necessity of asking each prospective juror every one of these questions in open Court, thereby substantially shortening the jury selection process. Unless the question states otherwise, the fact that a particular question is asked does not imply that the subject matter of the question is an issue in this case. As you read the questions, you are not to draw any inferences about the issues which must be decided in this case.

The questions are not meant to invade your privacy, but to help select a fair and impartial jury for this case. If there is any reason why you might not be able to give both sides a fair trial in this case, it is important to say so. Please answer each question as fully as you can. Your complete honesty is essential. Do not leave any questions blank. If a question does not apply to you in any way, write "NA" (for "not applicable"), rather than leaving the form blank. If you do not understand the question, please write that in the space for the answer. If you feel the answer is too personal, please say so in the space provided. You will have the opportunity to discuss your answer privately. If you do not understand a question, need more space for your response, or wish to make further comments about any question, please use the extra sheet attached to the back of the questionnaire. If you use the explanation sheets, please make sure to indicate which numbered question you are answering. **DO NOT WRITE ON THE BACK OF ANY PAGE.**

You are instructed not to discuss this case or questionnaire with anyone, including your family or fellow jurors. It is important that your answers be yours and yours alone.

Your answers are confidential. They will be reviewed only by the judge and the lawyers in this case (and their respective staffs and advisors, and the parties involved in this case) and will not be disclosed to any other party not directly related to this case. Following jury selection, the original questionnaire will be kept under seal and will be disclosed, if at all, with names and other identifying information removed. There may be some questions that touch on matters that you consider personal, private or otherwise sensitive. In order to select a fair and impartial jury, however, it is important that the Court and the lawyers have your complete and truthful answers to these kinds of questions. If there are certain questions you prefer not to answer in writing (even though the document remains confidential), please so indicate and the judge will discuss it with you in private at a later time.

Please print your name on the cover page, and upon completion, sign your name on the last page where indicated. If possible print your answers and use ink only. You are expected to sign your questionnaire, and your answers will be given the same effect as a statement given to the Court under oath.

The next phase of the jury selection process will begin on _____ at __:00 a.m., and will continue until completed. During this phase, you will likely be asked follow-up questions by the judge based on your responses to this questionnaire. You will have the opportunity to answer any of these questions in private.

The opening statements and presentation of the evidence in the trial will begin after the jury selection process is completed. The trial is expected to last _____ from the commencement of opening statements. This is just an estimate, and the time frame could change depending on the circumstances of the case.

Thank you for your time and cooperation.

1.   Name (print): _____

            (first)              (middle)              (last)

2.   Date of birth: _____

3.   Residence address: _____

4.   Years of residence:      In District: _____

                    In this county: _____


5.   Former residences (previous 7 years): _____

      _____

      _____


6.   Marital status (married, single, divorced, widow, or widower): _____

7.   Have you ever gone through a divorce or legal separation? If yes, please describe

      when this occurred and what you thought of the legal process you experienced: _____

      _____

8.  Do you have children?  If yes, please provide their respective age, gender, highest

    education level, employment, and marital status: _____

    _____

9.  Educational background: _____

10. Your current occupation and employer: _____

11. If you are not now employed, give your last occupation and employer: _____

    _____

12. Regarding your current or last employment if currently unemployed, please

    check all that apply (may be more than one):

    ___  ___  Part-time        ___  Self-employed
    ___  ___  Full-time        ___  Work at home
    ___  Other (please describe): _____

13. If not currently employed, please check all that apply (may be more than one):

    ___  ___  Homemaker        ___  Student
    ___  ___  Retired          ___  Disabled
    ___  Other (please describe): _____

14. If currently employed, please briefly describe what you do on the job on a typical

    work day, or, if currently unemployed, please briefly describe what you did on your

    previous job on a typical work day:

    _____

    _____

15. For the job you described above, do/did you have management or supervisory duties?

    _____.  If so, please describe those management or supervisory duties? _____

_____

_____

16.    For the job you described above, are you/were you supervised by others at your job?

_____. If so, please describe the nature of the supervision: _____

_____

17.    For any employment you have had, do/did you have authority to hire and fire

employees? _____.  If so, please describe those management or supervisory duties: ___

_____

_____

18.    For any employment you have had, do/did you have authority to hire and fire

employees? _____.  If so, please describe the authority you have or had have to fire

and fire employees:  _____

_____

19.    For any employment you have had, have you ever agreed with your employer not to

disclose any matter discussed at work? _____.  If so, please describe the

circumstances, terms, and/ or conditions of that agreement: _____

_____

20.    If you have or have had your own business, have you ever required your employees

not to disclose any matter discussed at work? _____.  If so, please describe the

circumstances, terms, and/or conditions of that agreement: _____

_____

21.    Other than in the employment context described above, have you ever signed an agreement agreeing not to disclose certain information? _____.  If so, please describe the circumstances, terms, and/or conditions of that agreement: _____

_____

[Plaintiffs object to Nos. 19-21 insofar as they are duplicative of each other and therefore unnecessary. Plaintiffs further object to the extent that the questions are intended to prime the jury for Defendants' ultimate argument that the contents of the particular recordings at issue were not subject to a duty of nondisclosure. Plaintiffs contests the validity of this defense.]

22.    Do you feel that a non-profit organization should not have the right to privacy or confidentiality like a private individual? _____

_____

[CSP Defendants object to No. 22 on the grounds that there is no "right to privacy" or even a "right to confidentiality" at issue in this litigation, that in fact "private individuals" have rights of privacy and confidentiality that organizations do not have, and that the instruction intends to signal a particular response to an issue that is disputed in this case and is improper.]

23.    Do you feel a non-profit organization cannot demand its interns keep its secrets if it does not pay them? _____

_____

[CSP Defendants object to No. 23 on the grounds that the instruction intends to signal a particular response to an issue that is disputed in this case and is improper.]

24.    How many of you in your jobs understand that you may not remove certain documents or files that belong to your employer even though you did not sign an acknowledgement of that policy? _____

_____

[CSP Defendants object to No. 24 on the grounds that the instruction intends to signal a

particular response to an issue that is disputed in this case and is improper.]

25.    Do any of you feel that in order for a non-profit organization to protect its papers and

other confidential information, it must obtain a signature from each person from

whom it requires adherence to that policy? _____

_____

[CSP Defendants object to No. 25 on the grounds that the instruction intends to signal a

particular response to an issue that is disputed in this case and is improper.]

26.    If you are employed, will you be paid by your employer during jury service? _____.

If yes, for how many days? _____

27.    If married or living with a life partner, please provide the name and occupation of

your husband, wife, or life partner: _____

28.    If you live with persons other than your spouse/life partner and/or

children/stepchildren, please explain their relationship to you (for example, roommate

or parent) and their occupation: _____

_____

29.    Have you served as a juror before? _____.  If yes, please describe the type of

case, civil or criminal, the basic issues involved, and the outcome: _____

_____

_____

30.    What were your general impressions of your service as a juror?  In other words, was it a good experience or something less than good? A rewarding experience or a waste of your time? _____

_____

31.    If you have previously served as a juror, do you think that your prior jury service would in any way affect your evaluation of this case and your ability to serve as a fair and impartial juror? _____

_____

32.    If you know, have any of your children, your parents, other family member, or friend, ever served as a juror before? _____.  If yes, please describe the type of case, civil or criminal, the basic issues involved, and the outcome: _____

_____

_____

33.    If you know, what were the general impressions of that person's service as a juror? In other words, was it a good experience or something less than good?  A rewarding experience or a waste of their time?

_____

34.    Do you have any medical issues, mental impairments or physical problems (for example, sight, hearing, or back) that may affect your ability to understand the evidence or would make it difficult for you to sit for long periods?  If yes, please describe:

_____

75

35.    Have you or any immediate member of your family been a party to any lawsuit? _____.  If so, when and in what court? _____

_____

36.    If you answered yes to the question above, please describe the type of case, civil or criminal, the basic issues involved, and the outcome:

_____

_____

37.    Have you or any immediate member of your family been a witness in any civil or criminal trial? _____.  If so, when and in what court? _____

_____

38.    If you answered yes to the question above, please describe the type of case, civil or criminal, the basic issues involved, and the outcome, if you know: _____

_____

39.    A plaintiff may be a person, corporation, or other entity who has initiated a lawsuit. Do you have a bias for or against a plaintiff simply because he, she, or it has brought a lawsuit? _____

40.    A defendant may be a person, corporation, or other entity who has been sued.  Do you have a bias for or against a defendant simply because he, she, or it has been sued? ___

_____

41.    If you or any immediate member of your family has ever testified as a witness in a case, would your previous testimony have any effect on your ability to serve as a fair and impartial juror? _____

76

42.     Have you formulated any opinions about civil cases seeking monetary compensation from any other experiences? _____

[CSP Defendants object to No. 42 on the grounds that it is vague and not helpful.]

43.     Have you or anyone close to you ever been the victim of a crime? _____. If so, was the crime reported to law enforcement or some other government authority? _____. If the crime was reported, was anyone ever caught or charged with the crime? _____. If someone was charged with the crime, what was the outcome of the criminal process, if you know? _____

_____

44.     Have you ever lived or travelled outside the United States? _____. If so, please list the places you lived at or travelled to, the inclusive dates, and the purpose(s) for each:

_____

_____

45.     What charitable, civic, social, union, professional, fraternal, political, recreational or religious organizations do you and/or your significant other volunteer for; belong to; participate in; donate money, time or services to; or hold offices in? _____

_____

46.     Have you during the past seven years ever donated money or your services/time to a non-profit organization that advocates for civil rights or civil liberties? _____. If so, please identify those non-profit organizations and what their focus or purpose is? ____

_____

47.    Has a claim for personal injuries ever been made against you or any member of your

family? _____. If so, please describe the claim and the circumstances as best you can

recall: _____

_____

48.    Have you or any member of your family ever made any claim for personal injuries?

_____. If so, please describe the claim and the circumstances as best you can recall:

_____

_____

49.    The two plaintiffs in this case are related entities called the Council on American-

Islamic Relations Action Network, Inc. and CAIR Foundation, Inc., which we will

refer to respectively as CAIR Network and CAIR Foundation, or collectively as

CAIR.  Have you ever heard of CAIR before this lawsuit? _____. If so, please

describe what you know of CAIR: _____

_____

50.    There are six separate defendants in this lawsuit.  Two of the defendants are Chris

Gaubatz and his father, Paul David Gaubatz.  We refer to Paul David Gaubatz as

Dave Gaubatz.  Have you ever heard of Chris or Dave Gaubatz before this lawsuit?

_____. If so, please describe what you know of Chris or Dave Gaubatz: _____

_____

51.    The remaining four defendants are the Center for Security Policy, otherwise referred

to as CSP, Christine Brim, David Yerushalmi, and the Society of Americans for

National Existence, otherwise known as SANE.  Have you ever heard of any of these

defendants?  If so, please describe what you know of any of these parties: _____

78

_____

52.    The following are potential witnesses in this case: [insert names of potential

witnesses].  Do you know, or have you heard of, any of the potential witnesses?

_____

53.    You heard the statement of the case read to you by the judge.  Do you have any

personal feelings or preferences, based on what you heard, that will impact your

ability to judge this case fairly? _____

54.    Do you understand that you do not have to believe that something is so just because a

witness says it is, especially if what the witness says does not seem to be correct

when viewed in light of your past experience and common sense? _____

55.    Do you own a smartphone? _____

56.    Do you use social media such as Facebook, Twitter, Instagram, LinkedIn, Snapchat,

Google+, Youtube, Vine, Reddit, Flickr, Pinterest, Swarm by Foursquare, Tumblr,

Yelp, Kik, Yik Yak? _____.  If so, please describe your use: _____

_____

57.    Do you follow the news regularly? _____.  If so, what kind of news interests you the

most? _____

_____

58.    How do you learn about the news of the day?  Please check all that apply (may be

more than one):

        _____    Television network news (*e.g.*, CBS News, ABC News)
        _____    Cable news (*e.g.*, CNN, MSNBC, Fox News)
        _____    Non-news television (*e.g.*, talk shows, comedy programs)
        _____    Newspapers

79

_____    Magazines

_____    Radio

_____    Facebook

_____    Twitter

_____    Youtube

_____    Other social media

_____    Internet blogs

_____    Discussions at work with fellow employees

_____    Discussions with friends and other acquaintances

_____    Other (please describe): _____

59.    Of all of the news sources you utilize above, which do you consider the most important to you (please include the specific programs or websites you consider the most important to you)? _____

_____

60.    Have you read in the newspapers, read on the internet, seen on television, or heard on the radio anything about this case, or do you have any knowledge of the facts or events of this case? _____

61.    Do you have any strong feelings based on what you know so far about this case that would prevent you from being able to listen to the evidence and deliver a verdict? ____

_____

62.    Do any of you have any religious, philosophical, or other belief that prevents you from sitting as a juror in this case and deciding liability and, if necessary, awarding damages? _____

_____

63.    Do you feel that you have some personal interest in the outcome of this case other than your participation as a potential juror? _____

_____

64.    In the eyes of the law, all parties, whether individuals or corporations, are to be

treated alike.  All parties are entitled to the same honest, fair, and impartial treatment.

If selected to serve as a juror in this case, would you accept and apply this principle of

law? _____

65.    The burden of proof in a civil case is preponderance of the evidence.  That means to

prevail the Plaintiff must introduce evidence to establish that its claims are more

likely correct than not.  In other words, before you find for a plaintiff, you must find

that the evidence establishes that it is more than 50% likely that a particular defendant

is liable.  Do you have any strong feelings about the level of proof necessary in a civil

case? _____

66.    Do any of you feel that the burden of proof should be higher or lower? _____

67.    If you find for the plaintiffs in this case, meaning that one or more of the defendants

are liable under one of the claims, you might be asked to determine whether the

defendants should be punished by paying punitive damages.  Is there any reason why

you would not be able to deliberate and make a decision on whether punitive damages

should be awarded? _____

_____

68.    Do you feel that you would have a difficult time deciding punitive damages without

some evidence of a financial loss suffered by the plaintiff? _____

_____

[CSP Defendants object to No. 68 on the grounds that it is premature and confusing at the voir

dire stage and is in reality a jury instruction signaling a positive response to punitive damages.

81

No. 67 addresses the question of awarding punitive damages sufficiently.  If No. 68 is proper, then every jury instruction should have a corresponding jury question, which is clearly not the case.]

69.    Have you ever been afraid of someone of another religion simply because of their beliefs? _____.  If so, please explain: _____

_____

[CSP Defendants object to No. 69 as improper on its face and signaling a protective posture of Plaintiffs' position that Defendants are bigots and targeted Plaintiffs because of a bigoted fear of Muslims.  The inquiry, if one is to be made, should ask the juror neutrally: Do you have any bias against any of the parties based upon the fact that they might be Muslim, Jewish, or Christian?]

70.    Have you been exposed to persons who exhibit, or who have exhibited racial, sexual, religious, and/or other ethnic prejudice? _____.  If so, please explain: _____

_____

[CSP Defendants object to No. 70 as improper on its face and signaling a protective posture of Plaintiffs' position that Defendants are bigots and targeted Plaintiffs because of a bigoted fear of Muslims.  The inquiry, if one is to be made, should ask the juror neutrally: Do you have any bias against any of the parties based upon the fact that they might be Muslim, Jewish, or Christian?]

71.    Some people feel that Muslim advocacy organizations should have the same rights as other legally recognized organizations in the U.S. Others feel that they should be closely watched and monitored. How do you feel about that? _____

_____

[CSP Defendants object to No. 71 as improper on its face and signaling a protective posture of Plaintiffs' position that Defendants are bigots and targeted Plaintiffs because of a bigoted fear of

Muslims. The inquiry, if one is to be made, should ask the juror neutrally: Do you have any bias against any of the parties based upon the fact that they might be Muslim, Jewish, or Christian?]

72.     Some people feel that Muslims should be allowed into the United States, like any other religious group. Others feel that we should limit Muslim immigrants and visitors from entering the United States. How do you feel? _____

_____

[CSP Defendants object to No. 72 as improper on its face and signaling a protective posture of Plaintiffs' position that Defendants are bigots and targeted Plaintiffs because of a bigoted fear of Muslims. The inquiry, if one is to be made, should ask the juror neutrally: Do you have any bias against any of the parties based upon the fact that they might be Muslim, Jewish, or Christian?]

73.     Some people feel Muslim organizations should be investigated or infiltrated to ensure their loyalty to the Unites States. How do you feel about that? _____

_____

[CSP Defendants object to No. 73 as improper on its face and signaling a protective posture of Plaintiffs' position that Defendants are bigots and targeted Plaintiffs because of a bigoted fear of Muslims. The inquiry, if one is to be made, should ask the juror neutrally: Do you have any bias against any of the parties based upon the fact that they might be Muslim, Jewish, or Christian?]

## **VOIR DIRE**

Plaintiffs and CSP Defendants request to ask follow-up questions of the prospective jurors to the questionnaire questions to clarify answers and to flush out any biases. Beyond the follow-up questioning, Plaintiffs and CSP Defendants would seek to ask the prospective jurors the following five questions:

1.    If you were my client, would you be completely comfortable having you as a juror on this case?  [If the answer is anything but an unequivocal yes, a follow-up series of questions to understand the answer:] Thank you for your candor.  Would you please tell us why you would be uncomfortable if you were my client?

2.    Can you think of anything in your own life that reminds you of this case?  What and how?

3.    Is there anything that you have seen or heard that would make it hard for you to guarantee that you would judge my client the same as the other side?

4.    Is there anything you would prefer to discuss in private that you think is relevant to your service as a juror in this case?

5.    Is there anything that we have overlooked that would reveal some difficulty you might have in deciding this case? If so, would that affect your ability to fairly decide this case? [Alternatively: Is there anything we haven't asked you that you think we should know before you serve as a juror in this case?]

## PROPOSED AND AGREED-UPON JURY INSTRUCTIONS BY ALL PARTIES

### Functions of the Court and the Jury

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. You should not be influenced by any person's race, color, religion, or national ancestry.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

*7th Circuit Pattern Jury Instructions 1.01*

## All Litigants Equal Before the Law

Some of the parties in this case are corporations. All parties are equal before the law. A corporation is entitled to the same fair consideration that you would give any individual person.

*7th Circuit Pattern Jury Instructions 1.03*

## Evidence

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations.

A stipulation is an agreement between both sides that certain facts are true.

I have taken judicial notice of certain facts. You must accept those facts as proved.

*7th Circuit Pattern Jury Instructions 1.04*

## Deposition Testimony

During the trial, certain testimony was present to you by the reading of a deposition/depositions/and video. You should give this testimony the same consideration you would give it had the witness[es] appeared and testified here in court.

*7th Circuit Pattern Jury Instructions 1.05*

## What is Not Evidence

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

*7th Circuit Pattern Jury Instructions 1.06*

## Note-Taking

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections and impressions of each juror about the testimony.

*7th Circuit Pattern Jury Instructions 1.07*

## Consideration of All Evidence Regardless of Who Produced It

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

*7th Circuit Pattern Jury Instructions 1.08*

## Limited Purpose of Evidence

You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose. You must consider this evidence only for the limited purpose for which it was admitted.

*7th Circuit Pattern Jury Instructions 1.09*

## Weighing the Evidence

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and concluded from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

*7th Circuit Pattern Jury Instructions 1.11*

## Definition of "Direct" and Circumstantial" Evidence

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who

claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

*7th Circuit Pattern Jury Instructions 1.12*

### Testimony of Witnesses (Deciding What to Believe)

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

- The ability and opportunity the witness had to see, hear, or know the things that the witness testified about;
- The witness's memory;
- Any interest, bias, or prejudice the witness may have;
- The witness's intelligence;
- The manner of the witness while testifying;
- And the reasonableness of the witness's testimony in light of all the evidence in the case.

*7th Circuit Pattern Jury Instructions 1.13*

### Number of Witnesses

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

*7th Circuit Pattern Jury Instructions 1.17*

### Absence of Evidence

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

87

*7ᵗʰ Circuit Pattern Jury Instructions 1.18*

## Burden of Proof

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find." Or "if you decide," that is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

*7ᵗʰ Circuit Pattern Jury Instructions 1.27*

## Selection of Presiding Juror; General Verdict

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court.

Form of verdict have been prepared for you.

[Form of verdict read.]

Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in, date, and sign the appropriate form.

*7ᵗʰ Circuit Pattern Jury Instructions 1.32*

## Communication with Court

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the marshal, who will give it to me. I will respond wither in writing or by having you return to the courtroom so that I can respond orally.

*7ᵗʰ Circuit Pattern Jury Instructions 1.33*

## Disagreement Among Jurors

The verdicts must represent the considered judgment of each juror. Your verdicts, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.

*7th Circuit Pattern Jury Instructions 1.34*

**CSP Defendants' Jury Instructions**

Plaintiffs are in agreement with CSP Defendants' Proposed Jury Instructions below except where noted otherwise.

I.      **Interception of Oral Communications: Federal and D.C. Wiretap Acts**
     A.    **The Statutes**
     B.    **Chris Gaubatz**
          1.    **First Element—Interception of Communication**
          2.    **Second Element—Oral Communication**
          3.    **Third Element—Intentional Conduct**
          4.    **Affirmative Defense—Consent**
               a.    **Affirmative Defense—Consent/Plaintiff's Burden**
               b.    **Affirmative Defense—Consent/Breach of Fiduciary Duty**
     C.    *Respondeat superior* **Liability: Dave Gaubatz**
     D.    *Respondeat superior* **Liability: CSP, Christine Brim, David Yerushalmi**
          1.    **Christine Brim**
          2.    **David Yerushalmi**
          3.    **CSP**
II.    **Use and Disclosure Liability: Federal and D.C. Wiretap Acts**
     A.    **Dave Gaubatz**
     B.    **Christine Brim and CSP**
III.   **Procurement Liability: D.C. Wiretap Act**
IV.   **Use of Transcripts**
V.    **Stored Communication Act**
     A.    **Chris Gaubatz**
     B.    *Respondeat superior* **Liability: Dave Gaubatz**
     C.    *Respondeat superior* **Liability: CSP, Christine Brim, David Yerushalmi**
          1.    **Christine Brim**
          2.    **David Yerushalmi**
          3.    **CSP**
VI.   **Trespass**
VII.  **Damages**
     A.    **General Instructions**
     B.    **Federal Wiretap Act**
          1.    **Compensatory Damages**
          2.    **Punitive Damages**
     C.    **D.C. Wiretap Act**
          1.    **Liquidated Damages**
          2.    **Punitive Damages for D.C. Wiretap Act**
     D.    **Stored Communications Act**

        **1.**     **No Actual Damages**

        **2.**     **Punitive Damages**

**E.**     **Trespass: Nominal Damages**

**I.**     **Interception of Oral Communications: Federal and D.C. Wiretap Acts**

     **A.**     **The Statutes**

Plaintiff CAIR-F claims in this count that certain defendants violated the federal law called the Federal Wiretap Act and a similar statute applicable here in the District of Columbia, the D.C. Wiretap Act. For purposes of Plaintiff CAIR-F's claims against Chris Gaubatz for the actual recording of communications, both statutes are essentially identical and I will address the relevant issues together.

Generally speaking, the plaintiff must first prove by a preponderance of the evidence that Chris Gaubatz unlawfully intercepted oral communications. Plaintiff CAIR-F also claims that Defendants Dave Gaubatz, CSP, and Christine Brim are also directly liable under this statute—I will address the elements of those claims separately.

As to Plaintiff CAIR-F's claim against Chris Gaubatz, the Federal Wiretap Act, section 2511(1)(a) of Title 18 of the United States Code, provides that it is unlawful for "any person [to] intentionally intercept . . . any wire, oral, or electronic communication. Section 2520(a) of the Act then provides in pertinent part that "any person whose wire, oral, or electronic communication is intercepted . . . in violation of [the Wiretap Act]" may sue for damages in federal court. As I noted earlier, the D.C. Wiretap Act is essentially the same in this regard as the Federal Wiretap Act and you may consider them the same. In other words, if you find Chris Gaubatz not liable under the Federal Wiretap Act, then you must find he is not liable under the D.C. Wiretap Act. Conversely, if you find that Chris Gaubatz is liable under the Federal Wiretap Act, you must find that he is liable under the D.C. Wiretap Act.

Sources: Instruction 92-1 Modern Federal Civil Jury Instruction (published by Matthew Bender) as modified to fit the facts of this case, and to incorporate the D.C. Wiretap Act elements, which in the "interception" count, mirror the Federal Wiretap Act.

     **B.**     **Chris Gaubatz**

Under the Federal and D.C. Wiretap Acts, Plaintiff CAIR-F has the burden of proving each of the following elements by a preponderance of the evidence:

First, that Chris Gaubatz intercepted a communication;

Second, that the intercepted communication was an oral communication, as I will explain that term to you; and

Third, that the defendant acted intentionally.

Sources: Instruction 92-2 Modern Federal Civil Jury Instruction (published by Matthew Bender), as modified to fit the facts of this case.

### 1.    First Element—Interception of Communication

The first element that Plaintiff CAIR-F must prove by a preponderance of the evidence is that Chris Gaubatz intercepted a communication.

To intercept a communication means to acquire access to the contents of that communication through the use of any electronic, mechanical, or other device.

Sources: Instruction 92-3 Modern Federal Civil Jury Instruction (published by Matthew Bender), as modified to fit the facts of this case.

### 2.    Second Element—Oral Communication

The second element that Plaintiff CAIR-F must prove by a preponderance of the evidence is that the intercepted communication was an "oral communication."

An "oral communication" means any communication uttered by a person who has an expectation that such communication is not subject to interception under circumstances justifying an expectation that the communication is private.

With respect to whether a person has a justifiable expectation of privacy, that expectation of privacy must be not only subjectively reasonable to the person whose communication was recorded, but also objectively reasonable given the circumstances. For example, if someone is carrying on a conversation in a loud voice to be heard by anyone in the near vicinity (including an adjacent room), even if the listener was not a party to the conversation, there would be no reasonable expectation of privacy even if the speaker had a subjective expectation of privacy. In other words, Plaintiff CAIR-F must prove by a preponderance of the evidence that any speaker being recorded had a subjective expectation of privacy and that that subjective expectation of privacy was objectively reasonable under all of the circumstances.

In determining whether the expectation of privacy was reasonable, you may also take into consideration whether the recording device enhances sounds or whether it is merely recording what everyone near the speaker is hearing.

Sources: Instruction 92-5 Modern Federal Civil Jury Instruction (published by Matthew Bender), as modified to fit the facts of this case and amended to incorporate the following:

> The statute specifically defines an "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, . . . ." 18 U.S.C. § 2510(2). The courts have held that the test of a justifiable expectation that oral communications will not be intercepted requires

allegations that the person subject to the interception had "(1) . . . a subjective expectation of privacy, and (2) whose expectation was objectively reasonable." *United States v. McIntyre*, 582 F.2d 1221, 1223 (9th Cir. 1978); *see also United States v. Dunbar*, 553 F.3d 48, 57 (1st Cir. 2009) (holding that the test of expectation of privacy follows the Fourth Amendment analysis as set forth in *Katz v. United States*, 389 U.S. 347 (1967)).

Especially noteworthy in this regard is *Kemp v. Block*, 607 F. Supp. 1262 (D. Nev. 1985), a case in which one employee surreptitiously turned on a tape recorder to record an argument by two other employees at the workplace. The court, in holding that there was no reasonable expectation of privacy and thus no "oral communication" as defined by § 2510, explained as follows:

> The essential elements of the offense are: (1) a willful interception of an oral communication by a device; (2) the communication must have been uttered by a person who exhibited an expectation that it would not be intercepted; and (3) the communication must have been uttered under circumstances that justified the expectation. One of the tests used is to ascertain whether the defendant overheard the communication with the naked ear under uncontrived circumstances. If the answer is affirmative, as here, there was no justifiable expectation of privacy. The communication is protected only if the speaker had a subjective expectation of privacy that was objectively reasonable. The legislative history of § 2510 notes that ***an expectation that an oral communication will not be intercepted is unwarranted where the speaker talks too loudly***.

*Kemp*, 607 F. Supp. at 1264-65 (citations omitted) (emphasis added). Thus, in a reasonable expectation analysis, context matters. Even a subjective expectation of privacy is <u>not</u> reasonable when a conversation can be heard with the naked ear and recorded without enhancement or special placement of the recording device, *as in this case*. *See United States v. Carroll*, 337 F. Supp. 1260, 1262-64 (D.D.C. 1971) (holding that recording from an adjacent room without an enhancement or special placement of the recording device provides no objectively reasonable expectation of privacy). Additionally, for purposes of this analysis in light of the facts of this case, it is helpful to note whether the conversation took place in an open office, *see Siripongs v. Calderon*, 35 F.3d 1308, 1320 (9th Cir. 1994) (holding that a telephone conversation conducted in the middle of a police department was not protected), and whether it involved business or private matters, *see Med. Lab. Mgmt. Consultants v. Am. Broad. Co., Inc.*, 306 F.3d 806, 814 (9th Cir. 2002) (finding that plaintiff's discussion of business operations and corporate-related topics rather than personal and private affairs did not create a reasonable expectation of privacy in the contents of the conversation); *see generally Kee v. City of Rowlett*, 247 F.3d 206,

213-15 (5th Cir. 2001) (holding that factors to consider are: "(1) the volume of the communication or conversation; (2) the proximity or potential of other individuals to overhear the conversation; (3) the potential for communications to be reported; (4) the affirmative actions taken by the speakers to shield their privacy; (5) the need for technological enhancements to hear the communications; and (6) the place or location of the oral communications as it relates to the subjective expectations of the individuals who are communicating").

### 3.    Third Element—Intentional Conduct

The third element that CAIR-F must prove by a preponderance of the evidence is that Chris Gaubatz acted intentionally.

To act intentionally means to act deliberately and purposefully. That is, you must find that Chris Gaubatz's acts were the product of his conscious objective to intercept the communication in question rather than the product of a mistake or accident.

Sources: Instruction 92-7 Modern Federal Civil Jury Instruction (published by Matthew Bender), as modified to fit the facts of this case.

### 4.    Affirmative Defense—Consent

Defendant Chris Gaubatz has offered evidence that his presence was apparent to those being recorded during all of the intercepted communications.

I instruct you that it is legal for a person to intercept a communication when such person is a party to the communication even if the other participants did not know that the person was recording the conversation. As long as Chris Gaubatz's presence was apparent to those being recorded at the time of the recordings, even if he was not actually participating verbally in the conversation, you must find that he is not liable for any violation of the federal Wiretap Act. This is known as the one-party consent rule, and it is a defense to any liability under the Act.

If, however, you find that Chris Gaubatz's presence was apparent during the recordings but that he was intercepting the communication for the purpose of committing any tortious act, then the one-party consent rule does not apply and he may still be liable. In this case, Plaintiff claims that Chris Gaubatz recorded the communications for the purpose of breaching a fiduciary duty owed to Plaintiff CAIR-F. A breach of fiduciary duty would be a tortious act. I will explain momentarily what a breach of fiduciary duty requires.

The burden is on the defendant, Chris Gaubatz, to prove by a preponderance of the evidence that he was a party to the conversation—that is, that his presence was apparent to those being recorded during the recordings. If you find that Chris Gaubatz was a party to the conversation, then the burden of proof is on Plaintiff CAIR-F to prove by a preponderance of the evidence that the purpose of the interception was to commit a tortious act.

Sources: Instruction 92-8 Modern Federal Civil Jury Instruction (published by Matthew Bender), as modified to fit the facts of this case and the Court's prior rulings. Specifically, the Court has held:

> Other courts to consider the scope of the one-party consent rule have concluded that "a person whose presence is apparent in the midst of a communication is considered a party, whether or not that person actually participates verbally in the communication." *United States v. Brown*, No. 10-100-BAJ-SCR, 2011 U.S. Dist. LEXIS 12932, 2011 WL 576901, at *3 (M.D. La. Feb. 9, 2011). *See also Grandbouche v. Adams*, 529 F.Supp. 545, 548 (D. Col. 1982) (noting lack of distinction between individual "speaking to a person" and "speaker who holds a conversation in the presence of a third party."); *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010) (finding "no support for the proposition that one must be invited to a conversation in order to be a party to it."). By contrast, courts have expressed concern where the intercepting individual was unseen to those being intercepted. *See Pitts Sales, Inc. v. King World Productions, Inc.*, 383 F.Supp.2d 1354, 1361 (S.D. Fla. 2005) ("the instant case does not present a situation where a communication was intercepted by an unseen auditor."); *Smith v. Wunker*, 356 F.Supp. 44, 46 (S.D. Ohio 1972) (noting, in discussion of section 2511(2)(d) exception, that "the concern of Congress was with the interception of private conversations by an unseen auditor"), overruled on other grounds, *Boddie v. American Broadcasting Companies, Inc.*, 731 F.2d 333 (6th Cir. 1984). Accordingly, in light of this precedent, while the interceptor need not actively participate in the conversation for the one-party consent rule to apply, at the very least, his or her presence must be apparent to those individuals whose conversation is being intercepted.

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 255 (D.D.C. 2014).

### a.    Affirmative Defense—Consent/Plaintiff's Burden

As I have instructed you, if you determine that Chris Gaubatz' presence was apparent during an intercepted oral communication, Plaintiff CAIR-F has the burden to prove by a preponderance of the evidence that Chris Gaubatz made the recordings of that oral communication for the purpose of breaching a fiduciary duty owed to CAIR-F. That means that you must also find, by a preponderance of the evidence, that Chris Gaubatz owed Plaintiff CAIR-F a fiduciary duty not to disclose the content of the recording at issue. You may not consider the act of recording itself to be the breach of fiduciary duty, only the subsequent disclosure of the recording, so long as the disclosure of that content breached the specific duty of non-disclosure of the contents of that particular communication. If you find that Plaintiff CAIR-F has not proved by a preponderance of the evidence that Chris Gaubatz owed Plaintiff CAIR-F a duty of non-disclosure of the content

of a specific recording, then you must find that Chris Gaubatz is not liable for violating the federal and D.C. Wiretap Acts for that specific recording.

If you find that Plaintiff CAIR-F has proved by a preponderance of the evidence that Chris Gaubatz owed Plaintiff CAIR-F a duty of non-disclosure as it relates to the content of the recording at issue, then you must still find that Chris Gaubatz is not liable for any violation of the federal Wiretap Act if you find that Chris Gaubatz had an overriding duty to disclose the recording. I will explain this shortly.

Sources: The Court held:

> Defendants also argue that no fiduciary duty can exist here between Chris Gaubatz and CAIR-F because Chris Gaubatz did not understand himself to be an intern for CAIR-F. Defs.' Opp'n at 6-12. Rather, Defendants state, Chris Gaubatz was unaware of the existence of any organization named CAIR-F and saw himself as interning for an organization (which apparently does not exist) named CAIR National. Accordingly, because Chris did not understand himself to be bound to CAIR-F, he could not be a fiduciary of this Plaintiff, either through a "trust" relationship or as CAIR-F's agent. While the Court notes that the distinctions between the various CAIR organizations, and Plaintiffs' carelessness in distinguishing between these organizations, are important for other facets of this case, *see infra* Section III.C, this is not one of those instances. The fact that Chris Gaubatz did not know the exact name of the organization he was interning for is not dispositive here. As discussed, *supra*, genuine issues of material fact exist as to whether, through their conduct during Chris Gaubatz's internship, the employees of CAIR-F and Chris Gaubatz formed a relationship that "was grounded in a higher level of trust than is normally present between those involved in arm's length business transactions." *CAIR II*, 793 F.Supp.2d at 342. *See also Church of Scientology*, 848 F.Supp. at 1028 ("The existence of a fiduciary relationship would depend on whether the parties, through the past history of the relationship and their conduct, had extended their relationship beyond the limits of the contractual obligations."). Similarly, an agency relationship can be formed through conduct, rather than through express assent to a specific principal. See Restatement (Third) of Agency § 1.03. ("A person manifests assent or intention through written or spoken words or other conduct.") (emphasis added).

Failing in these arguments, Defendants concede that generally speaking a "trust" relationship may create a fiduciary relationship and that "control" may create an agency relationship. Defs.' Opp'n at 13. However, they argue that the relationship here does not create the broad fiduciary duty of loyalty asserted by Plaintiffs. Defendants assert that, even if a fiduciary duty existed here, it would be limited to following the instructions of Plaintiffs' employees. However, Defendants contend

that this performance of tasks by Chris Gaubatz did not create a fiduciary duty of non-disclosure. Accordingly, the crucial issue here is whether Chris Gaubatz was instructed or implicitly understood that the conversations and tasks at CAIR were covered by a duty of confidentiality or non-disclosure.

This issue — the scope of any fiduciary duty — also relates to the question of whether the breach of a fiduciary duty was the primary motivation for, or at least a determinative factor motivating Chris Gaubatz when he intercepted conversations at CAIR-F, the second prong of the tortious conduct exception to the one-party consent rule. *See Dale*, 991 F.2d at 841. If Chris Gaubatz understood himself to be bound by a fiduciary duty of non-disclosure, then it appears obvious that the breach of this fiduciary duty was the primary motivation, or at least a motivating factor, in his interception of the communications at issue. No one disputes that Chris Gaubatz's purpose in making these recordings was to provide them to individuals outside of CAIR. Such a purpose would be inconsistent with, and a breach of, any duty of non-disclosure Chris Gaubatz understood himself to be bound by. Accordingly, it seems fair to say that if he understood himself to be bound by a fiduciary duty of non-disclosure, Chris Gaubatz intercepted CAIR-F's oral communications "for the purpose of committing" the tortious act of breaching this duty. Indeed, there is some evidence in the record to suggest he did act with this purpose or at least that it was a determinative factor.

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 259-60 (D.D.C. 2014)

### b.    Affirmative Defense—Consent/Breach of Fiduciary Duty

Plaintiff CAIR-F claims that Chris Gaubatz owed it a duty of non-disclosure as to the content of the recordings actually disclosed, that he intercepted the oral communication for the purpose of disclosing them, and as a result he cannot assert the affirmative defense of one-party consent. Chris Gaubatz denies he owed CAIR-F any such duty of non-disclosure and as a result, if you find that he was present during the recordings, this provides him with an affirmative defense to any liability under the Federal and D.C. Wiretap Acts.

Plaintiff CAIR-F claims that Chris Gaubatz owed it a duty of non-disclosure for two reasons. One, CAIR-F claims Chris Gaubatz was an agent of CAIR-F's and as an agent he had a duty of non-disclosure. Two, Chris Gaubatz had developed a special trust relationship that created a fiduciary duty between Chris Gaubatz and CAIR-F, and the fiduciary duty was breached by Chris Gaubatz's disclosure of the recordings. Chris Gaubatz denies he was an "agent" of CAIR-F or that he owed it a fiduciary duty.

In order for Plaintiff CAIR-F to prove that Chris Gaubatz breached a duty of non-disclosure as an agent of CAIR-F, CAIR-F must prove by a preponderance of evidence that (1) Chris served

as CAIR-F's agent and that the agency relationship included a duty of non-disclosure of the content of the communications actually disclosed. To prove an agency relationship existed between CAIR-F and Chris Gaubatz, Plaintiff CAIR-F must prove that CAIR-F exercised the kind of control over Chris Gaubatz's conduct that creates an agency or employment relationship versus an agreement to perform specific services. To determine is an agency relationship existed, you must examine, in part, the following factors, although no one factor is determinative: (1) CAIR-F's selection and engagement of Chris Gaubatz, (2) the payment of wages, (3) CAIR-F's power to discharge Chris Gaubatz, (4) CAIR-F's power to control Chris Gaubatz's conduct, (5) and whether the work or conduct at issue is part of the regular business of CAIR-F. Bear in mind that the power to control is the key element to an agency.

If you find that Chris Gaubatz was an agent of CAIR-F, you must then decide whether this agency relationship included a duty of non-disclosure that was breached here. This you must determine based upon the facts of the relationship and what CAIR-F and Chris Gaubatz both understood that relationship to require. In other words, Plaintiffs have the burden of proving by a preponderance of the evidence that the content of each recording was within this duty of non-disclosure and that Chris Gaubatz understood that to be the case. Thus, Plaintiffs have the burden of proving by a preponderance of the evidence that Chris Gaubatz was instructed or implicitly understood that the content of each recording was subject to a duty of non-disclosure.

Consequently, even if you find that Chris Gaubatz was an agent of CAIR-F, and that he owed CAIR-F a duty of non-disclosure, you must then determine whether the duty of non-disclosure related specifically to the contents of each specific recording. For example, you may find that some recordings discuss certain matters that might not be subject to a duty of non-disclosure, while other recordings did discuss matters subject to a duty of non-disclosure. You must make that determination for each of the recordings alleged to be a violation of the Federal and D.C. Wiretap Acts. And, you must also determine that Chris Gaubatz understood that the content of each recording was subject to this duty of non-disclosure.

In other words, if you find that Chris Gaubatz was an agent and if you find that he owed a duty of non-disclosure, you must determine which of those recordings violated the specific duty of non-disclosure to which Chris Gaubatz was aware.

As I noted earlier, Plaintiff CAIR-F also claims that Chris Gaubatz owed it a duty of non-disclosure because Chris Gaubatz owed a fiduciary duty of non-disclosure to CAIR-F. To find that Chris Gaubatz owed a fiduciary duty of non-disclosure, you must find that Plaintiff CAIR-F has proven by a preponderance of the evidence that Chris Gaubatz and CAIR-F agreed that he would take on a special role of trust and that that agreement included a duty not to disclose the content of the recordings at issue. To make this determination, as with the duty of non-disclosure of an agent, Plaintiff CAIR-F must prove by a preponderance of the evidence that CAIR-F instructed Chris about the confidential nature of the communications being recorded or that Chris understood from the nature of the relationship that the information he recorded was confidential.

97

And, in the case of agency, Plaintiff CAIR-F must prove by a preponderance of the evidence that the content of each of the recordings CAIR-F claims violated the Federal and D.C. Wiretap Acts was the kind of content CAIR-F and Chris Gaubatz agreed to be confidential and subject to non-disclosure.

Sources: The Court held:

> Here, CAIR-F argues that Chris Gaubatz acted with a tortious purpose in intercepting their employees' communications, rendering the one-party consent rule inapplicable. In order to prevail, CAIR-F must show "either (1) that the primary motivation, or (2) that a determinative factor in the actor's motivation in intercepting the conversation was to commit" a criminal or tortious act. *United States v. Dale*, 991 F.2d 819, 841, 301 U.S. App. D.C. 110 (D.C. Cir. 1993) (quoting *United States v. Vest*, 639 F.Supp. 899, 904 (D. Mass. 1986), aff'd, 813 F.2d 477 (1st Cir. 1987)). *See also Sussman v. American Broadcasting Companies, Inc.*, 186 F.3d 1200, 1202-03 (9th Cir. 1999) ("Under section 2511, the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception — its intended use — was criminal or tortious.") (internal citation omitted).
>
> CAIR-F primarily argues that Chris Gaubatz intercepted the communications of CAIR-F's employees for the purpose of committing a breach of fiduciary duty, a tortious act. Pls.' MSJ at 14-15. This contention raises two questions: (1) whether Chris Gaubatz had a fiduciary duty to Plaintiff CAIR-F, and (2) whether the breach of this fiduciary duty was either the primary motivation for, or at least a determinative factor motivating Chris Gaubatz when he intercepted conversations at CAIR-F.
>
> On the first question, the Court concludes that there is a genuine issue of material fact as to whether Chris Gaubatz understood himself as bound to a fiduciary duty of non-disclosure to Plaintiff CAIR-F. "[T]he District of Columbia courts have deliberately left the definition of a 'fiduciary relationship' open-ended, allowing the concept to fit a wide array of factual circumstances." *CAIR II*, 793 F.Supp.2d at 341 (citing *High v. McLean Fin. Corp.*, 659 F.Supp. 1561, 1568 (D.D.C. 1987)). *See also United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F.Supp.2d 198, 218 (S.D.N.Y. 2002) ("[T]he exact limits of what constitutes a fiduciary relationship are impossible of statement.") (quotation marks omitted). "Deciding whether a fiduciary relationship exists in a particular case requires 'a searching inquiry into the nature of the relationship, the promises made, the type of services or advice given and the legitimate expectations of the parties." *CAIR II*, 793 F.Supp.2d at 341 (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1211, 316 U.S. App. D.C. 152 (D.C. Cir. 1996)). Indeed, in its previous opinions, this Court

emphasized that "[b]ecause the inquiry is fact-intensive, it is often inappropriate to decide whether a fiduciary relationship existed even in the context of a motion for summary judgment." *Id.*

CAIR-F argues that Chris Gaubatz owed it a fiduciary duty primarily because he functioned in a position of trust, enjoying access to CAIR-F's confidential, proprietary, and secret information, such that his relationship with CAIR-F and its employees "was grounded in a higher level of trust than is normally present between those involved in arm's length business transactions." *Id.* at 342. "Broadly stated, a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. . . .The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another . . . ." *Church of Scientology Intern. v. Eli Lilly & Co.*, 848 F.Supp. 1018, 1028 (D.D.C. 1994) (quoting *Schmidt v. Bishop*, 779 F.Supp. 321, 325 (S.D.N.Y. 1991). . . .

Plaintiffs also argue that Chris owed CAIR-F a fiduciary duty as its agent. Pls.' Opp'n at 13. As other courts of this district have noted, "'[u]nless otherwise agreed, an agent' owes a fiduciary duty to his principal 'to act solely for the benefit of the principal in all matters concerned with his agency.'" *National R.R. Passenger Corp. v. Veolia Transp. Services, Inc.*, 791 F.Supp.2d 33, 46 (D.D.C. 2011) (quoting *Gross v. Akin, Gump, Strauss, Hauer & Feld, LLP*, 599 F.Supp.2d 23, 32 (D.D.C. 2009)). *See also* Restatement (Third) of Agency § 8.01 (2006). ("An agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship."). Whether an agency relationship existed between Plaintiffs and Chris Gaubatz is a fact-intensive inquiry that "depends, in part, on (1) the selection and engagement of the [employee], (2) the payment of wages, (3) [Plaintiffs'] power to discharge [the employee], (4) [Plaintiffs'] power to control the [employees'] conduct, (5) and whether the work [or conduct at issue] is part of the regular business of the employer." *National R.R. Passenger Corp.*, 791 F.Supp.2d at 46 (quoting *LeGrand v. Ins. Co. of N. Am.*, 241 A.2d 734, 735 (D.C. 1968)). "The District of Columbia Court of Appeals has noted that when 'the employer has the right to control or direct the servant,' then an agency relationship will generally be found." *Id.* (quoting *Judah v. Reiner*, 744 A.2d 1037, 1040 (D.C. 2000)). "However, it is not the 'actual exercise' of control or supervision that is determinative, but merely 'the right [of the employer] to control' an employee that 'is usually dispositive of whether there is an agency relationship.'" *Id.* . . .

Defendants also argue that no fiduciary duty can exist here between Chris Gaubatz and CAIR-F because Chris Gaubatz did not understand himself to be an intern for CAIR-F. Defs.' Opp'n at 6-12. Rather, Defendants state, Chris Gaubatz was unaware of the existence of any organization named CAIR-F and saw himself as

interning for an organization (which apparently does not exist) named CAIR National.  Accordingly, because Chris did not understand himself to be bound to CAIR-F, he could not be a fiduciary of this Plaintiff, either through a "trust" relationship or as CAIR-F's agent.  While the Court notes that the distinctions between the various CAIR organizations, and Plaintiffs' carelessness in distinguishing between these organizations, are important for other facets of this case, see infra Section III.C, this is not one of those instances.  The fact that Chris Gaubatz did not know the exact name of the organization he was interning for is not dispositive here. As discussed, *supra*, genuine issues of material fact exist as to whether, through their conduct during Chris Gaubatz's internship, the employees of CAIR-F and Chris Gaubatz formed a relationship that "was grounded in a higher level of trust than is normally present between those involved in arm's length business transactions."  *CAIR II*, 793 F.Supp.2d at 342.  *See also Church of Scientology*, 848 F.Supp. at 1028 ("The existence of a fiduciary relationship would depend on whether the parties, through the past history of the relationship and their conduct, had extended their relationship beyond the limits of the contractual obligations.").  Similarly, an agency relationship can be formed through conduct, rather than through express assent to a specific principal.  *See* Restatement (Third) of Agency § 1.03. ("A person manifests assent or intention through written or spoken words or other conduct.") (emphasis added).

Failing in these arguments, Defendants concede that generally speaking a "trust" relationship may create a fiduciary relationship and that "control" may create an agency relationship.  Defs.' Opp'n at 13.  However, they argue that the relationship here does not create the broad fiduciary duty of loyalty asserted by Plaintiffs. Defendants assert that, even if a fiduciary duty existed here, it would be limited to following the instructions of Plaintiffs' employees.  However, Defendants contend that this performance of tasks by Chris Gaubatz did not create a fiduciary duty of non-disclosure. Accordingly, the crucial issue here is whether Chris Gaubatz was instructed or implicitly understood that the conversations and tasks at CAIR were covered by a duty of confidentiality or non-disclosure.

This issue — the scope of any fiduciary duty — also relates to the question of whether the breach of a fiduciary duty was the primary motivation for, or at least a determinative factor motivating Chris Gaubatz when he intercepted conversations at CAIR-F, the second prong of the tortious conduct exception to the one-party consent rule.  *See Dale*, 991 F.2d at 841.  If Chris Gaubatz understood himself to be bound by a fiduciary duty of non-disclosure, then it appears obvious that the breach of this fiduciary duty was the primary motivation, or at least a motivating factor, in his interception of the communications at issue.  No one disputes that Chris Gaubatz's purpose in making these recordings was to provide them to

individuals outside of CAIR. Such a purpose would be inconsistent with, and a breach of, any duty of non-disclosure Chris Gaubatz understood himself to be bound by. Accordingly, it seems fair to say that if he understood himself to be bound by a fiduciary duty of non-disclosure, Chris Gaubatz intercepted CAIR-F's oral communications "for the purpose of committing" the tortious act of breaching this duty. Indeed, there is some evidence in the record to suggest he did act with this purpose or at least that it was a determinative factor.

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 256-60 (D.D.C. 2014)

## C.     *Respondeat superior* **Liability: Dave Gaubatz**

If you determine that Chris Gaubatz is liable for recording conversations in violation of the Federal and D.C. Wiretap Acts, you must next determine whether Defendant Dave Gaubatz is also liable. Specifically, Plaintiff CAIR-F claims that Chris Gaubatz acted as an agent for Dave Gaubatz when he made the recordings and as such Dave Gaubatz is also liable for the interception of the oral communications under the Federal and D.C. Wiretap Acts. This is called *respondeat superior* liability and applies between a principal and the principal's agent, such as between an employer and an employee. If, however, you find that Chris Gaubatz acted as an independent contractor, then Dave Gaubatz is not liable for Chris Gaubatz's conduct.

As I noted earlier, for Chris Gaubatz to be an agent of Dave Gaubatz, Plaintiff CAIR-F must prove by a preponderance of the evidence that Dave Gaubatz exercised the kind of control over Chris Gaubatz that is typically associated with an employer-employee relationship. If, however, you find that Chris Gaubatz was hired by Dave Gaubatz to act as an independent contractor, then you must find that Dave Gaubatz is not liable for the acts of Chris Gaubatz recording the conversations.

A person who hires an independent contractor generally is not responsible for the independent contractor's wrongful acts. In this case, Chris Gaubatz and Dave Gaubatz contend that Chris Gaubatz was an independent contractor of Dave Gaubatz, not an employee. You must decide whether Chris Gaubatz was an employee or an independent contractor.

For you to find that Chris Gaubatz was an independent contractor of Dave Gaubatz, you must find that Dave Gaubatz hired him to obtain recordings legally, but that Chris Gaubatz could use his own methods, and Dave Gaubatz did not retain control over the performance or of Chris Gaubatz's work.

If Dave Gaubatz not only hired Chris Gaubatz to do the work, but also had the right to control and direct the performance of the work and the manner in which the work was to be done, then Chris Gaubatz was an employee and not an independent contractor.

To prove an agency relationship between Chris Gaubatz and Dave Gaubatz as I noted earlier, Plaintiff CAIR-F must prove that Dave Gaubatz exercised the kind of control over Chris Gaubatz's conduct that creates an agency or employment relationship versus an agreement to perform specific services as an independent contractor. Specifically, you must examine, in part, the following factors, although no one factor is determinative: (1) Dave Gaubatz's selection and engagement of Chris Gaubatz, (2) the payment of wages, (3) Dave Gaubatz's power to discharge Chris Gaubatz, (4) Dave Gaubatz's power to control Chris Gaubatz's conduct, (5) and whether the work or conduct at issue is part of the regular business of Dave Gaubatz. Bear in mind that the power to control is the key element to an agency.

If you find that Chris Gaubatz violated the Federal and D.C. Wiretap Acts and the he was an independent contractor, then you may not find Dave Gaubatz liable for Chris Gaubatz's wrongful acts. Conversely, if you find that Chris Gaubatz violated the Federal and D.C. Wiretap Acts and that he was an employee of Dave Gaubatz and that Chris Gaubatz's violations arose out of that employment, then you must find Dave Gaubatz liable for Chris Gaubatz's wrongful acts.

Sources: 1-6 Civil Jury Instructions for DC § 6.06 (2016), as modified to fit the facts of this case.

### D.    *Respondeat superior* Liability: CSP, Christine Brim, David Yerushalmi

If you find that Chris Gaubatz is liable under the Federal and D.C. Wiretap Acts for recording certain conversations during his internship at CAIR-F, and if you determine that Chris Gaubatz was an agent of Dave Gaubatz for purposes of making those recordings (and not an independent contractor), you must then determine if Dave Gaubatz was in turn an agent of one or more of the following other defendants to obtain the recordings: CSP, Christine Brim, or David Yerushalmi. You must make this determination because Plaintiff CAIR-F claims that Chris Gaubatz was an agent of Dave Gaubatz and that Dave Gaubatz was a sub-agent of each of CSP, Christine Brim, and David Yerushalmi.

For each of CSP, Christine Brim, and David Yerushalmi, you must determine if each of them separately had an agency/employer relationship with Dave Gaubatz.

CSP, Christine Brim, and David Yerushalmi each claim that Dave Gaubatz was hired as an independent contractor of CSP and that Christine Brim merely acted as CSP's liaison or point-of-contact with Dave Gaubatz to obtain legal recordings for a documentary and that David Yerushalmi acted only as legal counsel to CSP and the participants.

### 1.    Christine Brim

If you find that Christine Brim did not hire Dave Gaubatz to work for her as her agent, and instead that she acted as CSP's liaison or point-of-contact with Dave Gaubatz, even if she exercised control over Dave Gaubatz as a supervisor for CSP, you must find that Dave Gaubatz was not Christine Brim's agent and that she is not liable for the actions of Dave Gaubatz or Chris Gaubatz.

Even if you find that Christine Brim hired Dave Gaubatz on behalf of CSP and controlled his work on behalf of CSP, you must find that Dave Gaubatz was not Christine Brim's agent and she is not liable for the actions of Dave Gaubatz or Chris Gaubatz.

### 2.    David Yerushalmi

Similarly, if you find that David Yerushalmi did not hire Dave Gaubatz to work for him as his agent and that David Yerushalmi instead acted in part as president of SANE and in part as attorney to CSP and the other participants in the documentary, you must find that Dave Gaubatz was not David Yerushalmi's agent and that David Yerushalmi is not liable for the actions of Dave Gaubatz or Chris Gaubatz.  Even if David Yerushalmi exercised control over Dave Gaubatz as CSP's attorney and on behalf of CSP, you must find that Dave Gaubatz was not David Yerushalmi's agent and that David Yerushalmi is not liable for the actions of Dave Gaubatz or Chris Gaubatz.

### 3.    CSP

Finally, if you find that CSP hired Dave Gaubatz as an independent contractor to obtain legal recordings for a documentary and not as an agent/employee, then you must find that CSP is not liable for the actions of Dave Gaubatz or Chris Gaubatz.

Sources: 1-6 Civil Jury Instructions for DC § 6.06 (2016) as modified to fit the facts of this case; Restatement (Third) of Agency, § 7.03, Comment d(1) ("A relationship of subagency does not result when an agent appoints a coagent. Coagents share a common principal, although they may occupy dominant and subordinate positions in an organizational hierarchy. *See* § 3.15, Comment b. An agent who has authority to hire a coagent is not subject to vicarious liability for the coagent's tortious conduct.").

## II.    Use and Disclosure Liability: Federal and D.C. Wiretap Acts

A party may be liable for using and disclosing intercepted communications that were intercepted in violation of the Federal and D.C. Wiretap Acts.  Plaintiff CAIR-F claims that Dave Gaubatz violated the Federal and D.C. Wiretap Acts when he used and disclosed the recordings for various purposes, including providing the recordings to CSP.  Plaintiff CAIR-F also claims that Christine Brim and CSP violated the Federal and D.C. Wiretap Acts when Christine Brim provided certain clips of the recordings on behalf of CSP to Joseph Farah of World Net Daily.  (Neither Joseph Farah nor World Net Daily is a party to this lawsuit.)  If Chris Gaubatz is not liable for the recordings under the Federal and D.C. Wiretap Acts, there can be no use or disclosure liability for any defendant.  If, however, you find Chris Gaubatz liable under the Federal and D.C. Wiretap Acts for recording specific conversations, then you must determine if there is any use and disclosure liability by either Dave Gaubatz or Christine Brim and CSP.

## A.    Dave Gaubatz

In order to find that Dave Gaubatz is liable for use or disclosure liability under the Federal and D.C. Wiretap Acts, you must find that at the time that he used or disclosed the recordings, that he knew (or had reason to know) that the conversations Chris Gaubatz recorded were recorded in violation of the Federal and D.C. Wiretap Acts. In other words, Plaintiff CAIR-F must prove by a preponderance of the evidence that Dave Gaubatz knew or had reason to know the following: (1) that Chris Gaubatz intentionally recorded the conversations of individuals, (2) that the individuals had a reasonable expectation that their conversations would not be recorded, (3) that Chris Gaubatz was an agent or fiduciary of Plaintiff CAIR-F if you find that Chris Gaubatz's presence was apparent to those being recorded at the time of the recordings, even if he was not actually participating verbally in the conversation, and (4) that Chris Gaubatz's agency or fiduciary duty included a specific duty not to disclose the conversations in the recordings provided to Dave Gaubatz. If Plaintiff CAIR-F has not proven by a preponderance of the evidence that Dave Gaubatz knew or had reason to know each of these elements, you must find that Dave Gaubatz is not liable for use and disclosure liability under the Federal and D.C. Wiretap Acts.

## B.    Christine Brim and CSP

Plaintiff CAIR-F claims that when Christine Brim provided Joseph Farah of World Net Daily with a clip of some of the recordings, this violated the disclosure prohibition of the Federal and D.C. Wiretap Acts.

To find that Christine Brim is liable for disclosure liability under the Federal and D.C. Wiretap Acts, you must find that Plaintiff CAIR-F has proven by a preponderance of the evidence that Christine Brim knew or had reason to know each of the following elements: (1) that Chris Gaubatz intentionally recorded the conversations of individuals, (2) that the individuals had a reasonable expectation that their conversations would not be recorded, (3) that Chris Gaubatz was an agent or fiduciary of Plaintiff CAIR-F if you find that Chris Gaubatz's presence was apparent to those being recorded at the time of the recordings, even if he was not actually participating verbally in the conversation, and (4) that Chris Gaubatz's agency or fiduciary duty included a specific duty not to disclose the conversations in the recordings provided to Dave Gaubatz and disclosed by Christine Brim to Joseph Farah. If Plaintiff CAIR-F has not proven by a preponderance of the evidence that Christine Brim knew or had reason to know each of these elements, you must find that Christine Brim is not liable for use and disclosure liability under the Federal and D.C. Wiretap Acts.

Because there is no dispute that Christine Brim was employed by CSP and acting on its behalf with regard to the documentary, CSP may only be liable for disclosing the recordings if Christine Brim is liable. In other words, if Christine Brim is not liable, CSP is not liable and if Christine Brim is liable, CSP is liable.

Sources: 18 U.S.C. § 2511(1)(c)-(d) and D.C. Code § 23-542(a)(2)-(3).

### III.    Procurement Liability: D.C. Wiretap Act

Plaintiff CAIR-F claims that Dave Gaubatz, CSP, Christine Brim, David Yerushalmi, and SANE are each separately liable for procuring the interception of the conversations recorded in violation of the D.C. Wiretap Act. There is no procurement liability under the Federal Wiretap Act.

For each of these defendants, Plaintiff CAIR-F must prove by a preponderance of the evidence that each, acting separately, engaged in conduct to actively bring about, cause, or instigate that Chris Gaubatz would record the conversations in violation of the D.C. Act. Obviously, if you find that Chris Gaubatz did not violate the D.C. Wiretap Act when he recorded the conversations, there is no procurement liability for any of these defendants.

To find procurement liability, you must find that Plaintiff CAIR-F has proven by a preponderance of the evidence (1) that each of these defendants, acting separately, engaged in specific conduct that brought about, caused, or instigated Chris Gaubatz's recordings in violation of the D.C. Wiretap Act and (2) that each of these defendants, acting separately, intended Chris Gaubatz to violate the D.C. Wiretap Act.

In order to find that any of these defendants intended Chris Gaubatz to violate the D.C. Wiretap Act, you must find that each of the defendants intended that Chris Gaubatz would intentionally record an oral communication—meaning that the defendants intended Chris Gaubatz to record oral communications in violation of the D.C. Wiretap Act.

Sources: D.C. Code § 23-554(a)(1).

### IV.    Use of Transcripts

Recordings of conversations identified by witnesses have been received in evidence. Transcripts of these recorded conversations are being furnished for your convenience and guidance as you listen to the tapes to clarify portions of the tape which are difficult to hear and to help you identify speakers. The recordings, however, are the evidence in the case; the transcripts are not. If you notice any difference between the transcripts and the recordings, you must rely only on the recordings and not the transcripts. In addition, if you cannot determine from the recording that particular words were spoken, you must disregard the transcripts as far as those words are concerned.

Sources: 1-II Criminal Jury Instructions for DC Instruction 2.310 (2016), which include the following:

Comment:

This instruction should be given only in a case where recordings are being played for the jury and transcripts are made available to the jurors to assist in their

understanding of the recordings. The instruction should be given before the recordings are played and repeated as part of the final instructions. *Springer v. U.S.*, 388 A.2d 846, 853–54 (D.C. 1978) (whenever transcripts are utilized in a trial, a judge should issue a cautionary instruction; the cautionary instruction should be repeated when the case is submitted to the jury; and the "transcripts should not be permitted in the jury deliberation room without the express consent of all parties concerned"), overruled on other grounds, *Sloan v. U.S.*, 527 A.2d 1277, 1286 (D.C. 1987).

This instruction should not be given where, by reason of stipulation or otherwise, the transcripts themselves are admitted into evidence. *See* Instruction 2.501.

It is sometimes the practice in cases involving large numbers of recorded conversations, such as cases involving wiretaps, that the trial judge will permit the government to assemble the transcripts into notebooks for the jury. In such cases, the trial judge should instruct the jury that they are only to refer to the particular transcript for the tape being played for them and that they should close the notebooks when a tape is not being played. The trial judge and the parties should be alert to signs that jurors might be reading transcripts when they have been instructed not to do so.

If there is a dispute about the accuracy of the transcript or if the parties wish, the court should make the transcript part of the record for appellate purposes.

Superior Court (D.C. Wiretap Act)

The Court of Appeals in *Springer*, exercising its supervisory powers, issued guidelines regarding the admissibility of tapes and transcripts and the need and timing for a cautionary instruction.

Where feasible, the parties should verify the accuracy of any transcript and the audibility of the tapes pretrial, and an appropriate stipulation on these points then should be entered in the record. Where the parties are unable to enter such a stipulation, the determination of audibility and accuracy rests with the trial court, and the court must make appropriate findings of fact. The court, preferably pretrial, and always out of the presence of the jury, should listen to the tapes for audibility and verify that the transcript is an accurate transcription of the tape. Only after the court has made such factual findings should it permit the jury to utilize the transcripts as an aid in listening to the tapes. The transcripts themselves are not the evidence—the tapes remain the evidence. To prevent undue reliance on the transcripts, the jurors should only be permitted to have possession of or to refer to the transcripts when the tapes are being played. Further, whenever the transcripts are utilized, the jury should be informed, by a cautionary instruction, that the transcripts are provided merely to facilitate their comprehension of the tapes on which they are to rely. This cautionary instruction should be repeated when the case is submitted to the jury. The transcripts should not be permitted in the jury

deliberation room without the express consent of all parties concerned. However, if during jury deliberation the court permits the jury to rehear tapes in open court, it may permit re-use of the appropriate transcript, with cautionary instruction.

Springer, 388 A.2d at 853–54 (footnotes omitted).

*See also German v. U.S.*, 525 A.2d 596, 610 (D.C. 1987) (authentication requirement satisfied by testimony that transcript represented a true and accurate copy of the original taped conversation); *Akins v. U.S.*, 679 A.2d 1017 (D.C. 1996) (finding that a partial transcript, where the term "unintelligible" had been inserted for portions disputed by the parties, did not prejudice the jury by directing attention to the more audible portions of the recording).

U.S. District Court (Federal Wiretap Act)

In *U.S. v. Holton*, 116 F.3d 1536, 1541 (D.C. Cir. 1997), the D.C. Circuit "agree[d] with the other circuits that have held it is within the district court's discretion to permit the jury to use transcripts during deliberations." For a transcript to be used in federal court, either (1) the parties must stipulate that it is accurate or (2) the judge must compare the proposed transcript to the tapes and certify its accuracy or (3) the judge should provide the jury with one transcript with the prosecution's interpretation and one transcript with the defendant's interpretation of the tape. *Id.* The Circuit further explained:

On many occasions a defendant may object to the accuracy of a transcript and argue that the underlying tape recording is too unintelligible to be effectively challenged. If there is a general objection to the accuracy of the transcript, but no alternative transcript is offered, then the judge may review the transcript against the tape and whatever other evidence is presented and certify the transcript's accuracy, but the jury must be informed that the transcript is only one party's version. If a party makes specific objections to the transcript, or offers an alternative transcript, then "the jury is entitled to consider the divergence in two transcripts of the same conversation, with the recording of it, as a problem of fact to be resolved in the traditional manner." The jury may be given one transcript containing both versions of the disputed portions or two separate transcripts. The parties should each be given an opportunity to put on evidence supporting the accuracy of its version or challenging the accuracy of the other side's version. … No matter which of these procedures is utilized, the jury should be instructed that the tape recording constitutes evidence of the recorded conversations and the transcript is an interpretation of the tape. The jury must be instructed that they should disregard anything in the transcript that they do not hear on the recording itself. Moreover, the court must ensure that the transcript is used only in conjunction with the tape recording.

*Id.* at 1542–43 (citing *U.S. v. Howard*, 80 F.3d 1194, 1199 (7th Cir. 1996)).

The Circuit further advised that "[a]lthough it makes little practical difference if a transcript is formally admitted into evidence, so long as its transmission to the jury is accompanied by appropriate instructions limiting its use to that of an aid, we believe that it is the better practice to require formal admission into evidence during the trial so that parties objecting to the transcript will be apprised of the possibility that the document could be given to the jury during deliberations and so that the judge will be sure to provide the jury with appropriate instructions as to its limited use on admission. Formal admission would reduce the risk of surprising counsel by a last minute decision to send the transcript into the jury room if the jury requests a replaying of the tapes." *Id.* at 1542. *See also U.S. v. Slade*, 627 F.2d 293, 299–303 (D.C. Cir. 1980) (jury's access to government prepared transcripts not error where transcripts were relatively accurate and court gave cautionary instruction similar to this instruction).

## V.    Stored Communications Act

The next claim before you is based on a federal law called the Stored Communications Act and alleges that Chris Gaubatz unlawfully accessed stored communications belonging to Plaintiff CAIR-F.  The statute, section 2701 of Title 18 of the United States Code, provides in pertinent part that a person may be liable for damages if he or she:

(1) Accesses without authorization a facility through which an electronic communication service is provided; or

(2) Exceeds an authorization to access that facility;

and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system.

Sources: Instruction 92-26 Modern Federal Civil Jury Instruction (published by Matthew Bender).

### A.    Chris Gaubatz

Under the Stored Communications Act, Plaintiff CAIR-F has the burden of proving each of the following elements by a preponderance of the evidence:

First, that without authorization, or by exceeding his authority, Chris Gaubatz accessed the physical server-side computer dedicated to running an e-mail client.  Put simply, Plaintiff CAIR-F must prove that Chris Gaubatz accessed Plaintiff CAIR-F's network system or email server that were used by CAIR-F employees and interns.

Second, that Chris Gaubatz obtained a wire or electronic communication while it was stored on the server.

Third, that Chris Gaubatz acted knowingly or intentionally.

What this means in context of this case is that Plaintiff CAIR-F must prove by a preponderance of the evidence that Chris Gaubatz knowingly accessed the CAIR-F network server and obtained emails or other documents while they were stored on the network server and that he did so either without authority or by exceeding his authority.

If, however, the evidence only establishes that Chris Gaubatz obtained emails and documents, with or without authority, from the hard drives of the desk top computers available to the interns, then you must find that Chris Gaubatz did not violate the Stored Communications Act.

Let me explain the difference. The evidence indicates that CAIR has desk top computers that store emails and documents locally on those computers (meaning on the memory hard drives located in those desk top computers). If Chris Gaubatz took emails or documents stored on those computers, with or without authority, there is no violation of the Stored Communication Act and you must find Chris Gaubatz not liable. If, however, Chris Gaubatz went online and accessed CAIR-F's network server, and he took emails or documents from the network server (not simply from the hard drive of the computer) without authority to do so, then he would be liable under the Stored Communications Act.

Sources: Instruction 92-27 Modern Federal Civil Jury Instruction (published by Matthew Bender), as modified to fit the facts of this case and the Court's ruling as follows:

> Plaintiffs bring Count Two of the Third Amended Complaint under the Stored Communications Act (Title II of the ECPA), 18 U.S.C. §§ 2701-2712. Specifically, Plaintiffs claim that Defendants violated 18 U.S.C. § 2701(a), which provides:
>
>> [W]hoever—
>>
>> (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or
>>
>> (2) intentionally exceeds an authorization to access that facility;
>>
>> and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.
>
> 18 U.S.C. § 2701(a). Congress created a civil cause of action for violations of Section 2701(a) (and other parts of the Stored Communications Act not at issue in this case) through 18 U.S.C. § 2707(a). That section provides:
>
>> [A]ny . . . person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the

109

person or entity . . . which engaged in that violation such relief as
may be appropriate.

*Id.* § 2707(a).  Plaintiffs allege that Defendants violated Section 2710(a) when Chris
Gaubatz "knowingly and intentionally accessed CAIR and CAIR-Foundation's
computer or computer servers, networks, or systems without authorization and/or
knowingly or intentionally exceeded any authorization he did have to access CAIR
and CAIR-Foundation's computers or computer servers, networks, or systems."
TAC ¶ 90.  Accordingly, they allege that Chris Gaubatz "obtained access to wire
or electronic communications while they were in electronic storage in CAIR and
CAIR-Foundation's computers or computer servers, networks, or systems."  *Id.* ¶
91.  Plaintiffs also allege that the remaining Defendants "conspired with" and
"aided and abetted" Chris Gaubatz in taking these actions.  *Id.* ¶¶ 92-93.

The Court has addressed Plaintiffs' claims under the Stored Communications Act
in its previous opinions in this case.  *See* CAIR II, 793 F.Supp.2d at 332-339; *CAIR
III*, 891 F.Supp.2d at 26-29.  For liability to arise under Section § 2710(a), a
defendant must access "a facility through which an electronic communication
service is provided."  18 U.S.C. § 2710(a).  Interpreting this term in *CAIR II*, this
Court noted that "the statute clearly is triggered when a defendant directly or
indirectly accesses the physical server-side computer dedicated to running an e-
mail client by, for instance, downloading e-mails from the server."  *CAIR I*I, 793
F.Supp.2d at 335.  By the same token, "the statute clearly is not triggered when a
defendant merely accesses a physical client-side computer and limits his access to
documents stored on the computer's local hard drive or other physical media."  *Id.*
Accordingly, the Court held that with respect to this case, "[w]hile . . . liability
under Section 2710(a) would not arise if any unauthorized activity was limited to
Plaintiffs' office computers, liability may arise if discovery reveals that Chris
Gaubatz accessed Plaintiffs' computer servers and that those servers were the
physical means 'through which' a 'service which provides to users thereof the
ability to send or receive wire or electronic communications' was 'provided.'"  *Id.*
at 335-36 (quoting 18 U.S.C. §§ 2701(a), 2510(15), 2711(1)).

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 270-71
(D.D.C. 2014).

## B.  *Respondeat superior* Liability: Dave Gaubatz

Plaintiff CAIR-F claims that Dave Gaubatz is liable under the Stored Communications Act
because Chris Gaubatz was acting as his agent.  While the analysis is similar to the one you will
undertake with regard to the Federal and D.C. Wiretap Acts discussed earlier, the difference is that
the agency in this count relates specifically to the claim that Chris Gaubatz obtained emails and
documents from the CAIR-F network server and does not relate to recording oral communications.
For example, you could find that Chris Gaubatz was Dave Gaubatz's agent for purposes of
recording conversations but not so for purposes of obtaining emails and documents from the

CAIR-F server.  Specifically, you must find that if the agency relationship existed, it related to the removal of emails and documents from CAIR-F's network server.

### C.  CSP, Christine Brim, and David Yerushalmi

Plaintiff CAIR-F claims that CSP, Christine Brim, and David Yerushalmi are liable for any liability of Chris Gaubatz under the Stored Communications Act because Chris Gaubatz was an agent of Dave Gaubatz and Dave Gaubatz was, in turn, an agent of each of CSP, Christine Brim, and David Yerushalmi.

For CSP, Christine Brim, and David Yerushalmi, you must determine if each of them separately had an agency/employer relationship with Dave Gaubatz.

CSP, Christine Brim, and David Yerushalmi each claim that while Dave Gaubatz was hired as an independent contractor of CSP—not an agent—for purposes of obtaining recordings for the CSP documentary, Dave Gaubatz was not retained to remove any documents from CAIR-F and as such was not acting on behalf of CSP (or on behalf of Christine Brim or David Yerushalmi) when Chris Gaubatz removed documents.

#### 1.  Christine Brim

If you find that Christine Brim did not hire Dave Gaubatz to work for her as her agent, and instead that she acted as CSP's liaison or point-of-contact with Dave Gaubatz, even if she exercised control over Dave Gaubatz as a supervisor for CSP, you must find that Dave Gaubatz was not Christine Brim's agent and that she is not liable for the actions of Dave Gaubatz or Chris Gaubatz.

Even if you find that Christine Brim hired Dave Gaubatz on behalf of CSP and controlled his work on behalf of CSP, you must find that Dave Gaubatz was not Christine Brim's agent and she is not liable for the actions of Dave Gaubatz or Chris Gaubatz.

Finally, even if you find that Christine Brim hired Dave Gaubatz as her agent for purposes of the documentary but not for purposes of obtaining documents from CAIR-F's server in violation of the Stored Communications Act, you must find that she is not liable under the Act.

#### 2.  David Yerushalmi

Similarly, if you find that David Yerushalmi did not hire Dave Gaubatz to work for him as his agent and that David Yerushalmi instead acted as attorney to CSP and the other participants in the documentary, you must find that Dave Gaubatz was not David Yerushalmi's agent and that David Yerushalmi is not liable for the actions of Dave Gaubatz or Chris Gaubatz.

Even if David Yerushalmi exercised control over Dave Gaubatz as CSP's attorney and on behalf of CSP, you must find that Dave Gaubatz was not David Yerushalmi's agent and that David Yerushalmi is not liable for the actions of Dave Gaubatz or Chris Gaubatz.

Finally, even if you find that David Yerushalmi hired Dave Gaubatz as his agent for purposes of the documentary but not for purposes of obtaining documents from CAIR-F's server in violation of the Stored Communications Act, you must find that he is not liable under the Act.

### 3.    CSP

If you find that CSP hired Dave Gaubatz as an independent contractor to obtain legal recordings for a documentary and not as an agent/employee, then you must find that CSP is not liable for the actions of Dave Gaubatz or Chris Gaubatz.

Even if you find that CSP hired Dave Gaubatz as its agent for purposes of the documentary but not for purposes of obtaining documents from CAIR-F's server in violation of the Stored Communications Act, you must find that it is not liable under the Act.

Sources: 1-6 Civil Jury Instructions for DC § 6.06 (2016), as amended to fit the facts of this case; Restatement (Third) of Agency, § 7.03, Comment d(1) ("A relationship of subagency does not result when an agent appoints a coagent. Coagents share a common principal, although they may occupy dominant and subordinate positions in an organizational hierarchy. *See* § 3.15, Comment b. An agent who has authority to hire a coagent is not subject to vicarious liability for the coagent's tortious conduct.").

## VI.    Trespass

[CSP Defendants adopt the jury instructions of the Gaubatz Defendants relating to Trespass, including the instructions as to trespass, consent, and consent obtained by misrepresentation, but not as to damages. CSP Defendants object to Plaintiffs insertion of their version of trespass liability below in the bracketed material insofar as it was added only after all briefing on objections to the jury instructions were completed and provided to Defendants only on Thursday, March 26, 2017, five days before the filing date of the Joint Pretrial Statement.]

[In light of the CSP Defendants' adoption of the Gaubatz Defendants' jury instruction relating to trespass, Plaintiff proposes the following alternate instruction:

Plaintiffs CAIR-F and CAIR-AN claim that Chris Gaubatz trespassed onto their property. Under D.C. common law, a trespass is an (1) unauthorized entry (2) onto the Plaintiffs' property (3) that interferes with the Plaintiffs' possessory interest.

Plaintiffs do not dispute that Chris Gaubatz was given consent to enter their property. However, even an authorized entry can be trespass if a wrongful act is done in excess of and in abuse of authorized entry.

Accordingly, if you find that Chris Gaubatz obtained consent by misrepresentation, or that Chris Gaubatz exceeded the scope of the consent given to him, you may find Chris Gaubatz liable for trespass. If, however, you find that Chris Gaubatz did not obtain consent by

misrepresentation and/or did not exceed the scope of the consent given to him, you may not find Chris Gaubatz liable for trespass.

In deciding whether Chris Gaubatz's entry was authorized, you may consider whether he falsified his resume, and whether by doing so, he gained access to areas of the Plaintiffs' office that were not open to the public and used a hidden camera to secretly record in that private sphere.

*(See, e.g., Food Lion v. Capital Cities/A.B.C.*, 194 F.3d 505 (4th Cir. 1999).)].

## VII.    Damages

### A.    General Instructions

When you hear the term damages or monetary damages in these instructions, that term refers to the sums of money for compensation as I will describe.

As I instruct you about damages or monetary damages, I do not mean to suggest that you should decide for or against any party on any issue.

Sources: 1-12 Civil Jury Instructions for DC § 12.01 (2016).

### B.    Federal Wiretap Act

#### 1.    Compensatory Damages

If you find that Plaintiff CAIR-F has proved that a specific defendant is liable for violating the Federal Wiretap Act, you may award damages against that specific defendant in an amount equal to the profits made by that specific defendant as a result of the Wiretap Act violation. Alternatively, if you find that a specific defendant is liable for violating the Federal Wiretap Act, you may, instead of awarding Plaintiff CAIR-F an amount equal to any profits earned, award CAIR-F $100 per each day the Federal Wiretap Act was violated, or $10,000, whichever is greater, imposed against that defendant.

Sources: Instruction 92-9 Modern Federal Civil Jury Instruction (published by Matthew Bender), modified to fit the facts of this case and to take into account that Plaintiffs have provided no evidence for an award of actual damages.  *See generally Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 82 F. Supp. 3d 344, 351-62 (D.D.C. 2015) (holding that Plaintiffs have made out no viable claim for actual damages); *Smoot v. United Transp. Union*, 246 F.3d 633, 642-47 (6th Cir. 2001) (holding $10,000 statutory damage award to be statutory maximum for multiple violations arising from same operative set of facts and occurring over up to 100 separate days).

### 2.    Punitive Damages

If you should find that one or more of the defendants is liable for a violation of the Wiretap Act, then you have discretion to award punitive damages against those defendants you determine are liable in addition to compensatory damages.

You may award punitive damages only if Plaintiff CAIR-F proves by a preponderance of the evidence that the specific defendant's conduct was wanton, reckless, or malicious.  An act is wanton or reckless if it is done in such a manner and under such circumstances as to reflect utter disregard for the potential consequences of the act on the safety or rights of others.  An act is malicious if it is wrongful and done intentionally without just cause or excuse and as a result of ill will or evil motive.

The awarding of punitive damages is within your discretion—you are not required to award them.  Punitive damages are appropriate only for especially shocking and offensive misconduct. If you decide to award punitive damages, you must use sound reason in setting the amount—it must not reflect bias, prejudice, or sympathy toward any party.  The amount of punitive damages should have some reasonable relationship to the actual damages suffered by Plaintiff CAIR-F. But, the amount may be as large as you believe necessary to fulfill the purpose of punitive damages.  In that regard, you may consider the financial resources of the defendant in fixing the amount of punitive damages (and you may impose punitive damages against one or more of the defendants, and not others, or against more than one defendant in different amounts).

Sources: Instruction 92-10 Modern Federal Civil Jury Instruction (published by Matthew Bender), as modified to fit the facts of this case.

### C.    D.C. Wiretap Act

### 1.    Compensatory Damages

If you find that Plaintiff CAIR-F has proved that a specific defendant is liable for violating the D.C. Wiretap Act, you may award damages against that specific defendant in an amount equal to the profits made by that specific defendant as a result of the Wiretap Act violation, or $100 per each day the D.C. Wiretap Act was violated, or $1,000, whichever is greater.

The burden is on the plaintiff to prove the amount of profits made by each defendant as a result of the violation by a preponderance of the evidence.

Sources: D.C. Code § 23-554(a)(2)(A), modified to fit the facts of this case.

### 2.    Punitive Damages for D.C. Wiretap Act

In addition to compensatory damages, the plaintiff also seeks an award of punitive damages against the defendant.  Punitive damages are damages above and beyond the amount of

compensatory damages you may award. Punitive damages are awarded to punish the defendant for his or her conduct and to serve as an example to prevent others from acting in a similar way.

You may award punitive damages only if the plaintiff has proved with clear and convincing evidence:

(1) that the defendant acted with evil motive, actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard for the rights of the plaintiff;

AND

(2) that the defendant's conduct itself was outrageous, grossly fraudulent, or reckless toward the safety of the plaintiff.

You may conclude that the defendant acted with a state of mind justifying punitive damages based on direct evidence or based on circumstantial evidence from the facts of the case.

The amount of punitive damages should have some reasonable relationship to the actual damages suffered by Plaintiff CAIR-F.

Sources: 1-16 Civil Jury Instructions for DC § 16.01 (2016), modified to fit the facts of this case.

### D.    Stored Communications Act

#### 1.    Compensatory Damages

If you find that Plaintiff CAIR-F has proved that Chris Gaubatz is liable for violating the Stored Communications Act, you may award damages against him in an amount equal to the profits he made as a result of the Stored Communications Act violation. The burden is on CAIR-F to prove the amount of profits made by Chris Gaubatz as a result of the violation by a preponderance of the evidence. If you find Chris Gaubatz has earned profits as a result of the Stored Communications Act violation, you may, instead of awarding Plaintiff CAIR-F an amount equal to those profits, award CAIR-F $1,000, whichever is greater, imposed against Chris Gaubatz.

Sources: *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 967-75 (11th Cir. 2016).

#### 2.    Punitive Damages

If you should find that one or more of the defendants is liable for a violation of the Stored Communications Act, then you have discretion to award punitive damages against those defendants you determine are liable in addition to compensatory damages.

You may award punitive damages only if Plaintiff CAIR-F proves by a preponderance of the evidence that the specific defendant's conduct was wanton, reckless, or malicious. An act is wanton or reckless if it is done in such a manner and under such circumstances as to reflect utter disregard for the potential consequences of the act on the safety or rights of others. An act is

malicious if it is wrongful and done intentionally without just cause or excuse and as a result of ill will or evil motive.

The awarding of punitive damages is within your discretion—you are not required to award them. Punitive damages are appropriate only for especially shocking and offensive misconduct. If you decide to award punitive damages, you must use sound reason in setting the amount—it must not reflect bias, prejudice, or sympathy toward any party. The amount of punitive damages should have some reasonable relationship to the actual damages suffered by Plaintiff CAIR-F. But, the amount may be as large as you believe necessary to fulfill the purpose of punitive damages. In that regard, you may consider the financial resources of the defendant in fixing the amount of punitive damages (and you may impose punitive damages against one or more of the defendants, and not others, or against more than one defendant in different amounts).

Sources: Instruction 92-10 Modern Federal Civil Jury Instruction (published by Matthew Bender), as modified to fit the facts of this case.

### E.    Trespass: Nominal Damages

If you find that Plaintiffs have proven that Chris Gaubatz is liable for trespass, you may, but you are not required to, award nominal damages against Chris Gaubatz of $1.

Sources: The Court previously held:

> Plaintiffs argue that each defendant is liable for trespass—as a result of Chris's entry onto Plaintiffs' property and his actions there—and seek nominal and punitive damages. *See* Pls.' Notice at 15. "The tort of trespass is defined as 'an unauthorized entry onto property that results in interference with the property owner's possessory interest therein.'" *Greenpeace, Inc.*, 97 A.3d at 1060 (citing Sarete, Inc. v. 1344 U St. Ltd. *P'ship*, 871 A.2d 480, 490 (D.C. 2005) (emphasis removed)). The Court notes that the damages problem that surfaces for Plaintiffs with respect to several of the other claims discussed in this Memorandum Opinion is not fatal to Plaintiffs' claim for trespass due to the nature of this tort. Under D.C. law, plaintiffs can recover nominal damages for a claim of trespass. *See Decker v. Dreisen—Freedman, Inc.*, 144 A.2d 108, 110 (D.C. 1958). Indeed, although the D.C. Court of Appeals has not yet decided whether punitive damages are available on a trespass claim without a showing of actual damages, the Court notes that another district judge in this district was persuaded by authority from other jurisdictions and from the Restatement (Second) of Torts that an award of nominal damages on a trespass claim could support an award of punitive damages. *See Feld*, 783 F. Supp. 2d at 78. The Court need not decide, now, whether punitive damages are applicable in these circumstances because the availability of nominal damages is enough to allow the trespass claim to survive summary judgment.

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 82 F. Supp. 3d 344, 354-55 (D.D.C. 2015)

**Gaubatz Defendants' Jury Instructions**

[CSP Defendants only adopt the Gaubatz Defendants' jury instructions on trespass liability, but otherwise rely on the CSP Defendants' proposed jury instructions and the proposed jury instructions agreed to by all parties. CSP Defendants, however, have no specific objections to the Gaubatz Defendants proposed jury instructions.]

[Plaintiffs object to all of the Gaubatz Defendants proposed jury instructions as contrary to law.]

## TRESPASS

Trespass is the intentional intrusion of a person upon premise of another if that intrusion invades and disrupts the other person or corporation's right to exclusive possession of that premise! If CAIR gave consent to Chris Gaubatz to enter, there can be no trespass unless certain exceptions apply. I will define consent and those exceptions in another instruction.

Plaintiffs have two theories for their trespass claim. These theories are as follows:

1. Chris Gaubatz trespassed because he entered Plaintiffs' property with consent but due to misrepresentations and the consent is not a defense.

2. Chris Gaubatz trespassed because even though he had consent to enter, he exceeded the scope of that consent to enter. To the extent Chris Gaubatz intentionally exceeded the scope of the consent to enter, consent is not a defense. As to this second theory, it is not trespass if Chris Gaubatz accidentally exceeded the scope of consent.

## Consent

There is no trespass when plaintiff consents to the entry. Consent is not only expressed through the use of words, consent can be either expressed or implied. Consent can be shown by actions or by inaction. Consent if implied, does not need to be communicated to Chris Gaubatz.

In determining whether consent was given, you should evaluate the words, actions or inactions of plaintiffs to see if these words, actions or inaction would reasonably be understood as consent. This apparent or implied consent is as effective as express consent in fact."

## Consent Obtained By Misrepresentation

The defense of consent to entry, mayor may not apply when the consent is obtained by misrepresentation. Defense obtained by misrepresentation is valid unless the entry obtained by the subterfuge violates the rights and privileges that the trespass law is intended to protect.

In other words, plaintiff must prove that the consent obtained by misrepresentation caused a violation of the specific and lawful interests that the prohibitions against trespass seek to protect.

For example, consent would not be a defense when a person gains entry into a home under the pretense of being a meter reader but is in fact only a person curious to see what is

117

inside a private residence. Consent would be a valid defense in a situation where a reporter investigating fraud at a medical clinic gained entry into the waiting and examining rooms of a medical clinic while pretending to be a patient. This is true even though the reporter was not a real patient and the reporter intended to expose wrongdoing at the clinic.

In determining whether the conduct was an interference with the ownership or possession of land you may consider any of the following factors.

1. Were the activities of the offices disrupted.

2. Was there an invasion of a person's private space.

3. Were embarrassingly intimate details of anybody's life publicized.

You may also consider whether you found in favor or against plaintiffs on the other counts in this case. If you have found in favor of plaintiffs on any of the other counts, you may consider the degree to which, the entry was related to a finding in favor of plaintiffs on other counts. If you find against plaintiffs on the other counts, you may consider the failure of proof on those counts.

You may also consider any other fact in evidence that reasonably assists you in making your decision.

[Plaintiffs object to the Gaubatz Defendants' trespass instruction as not supported by law. Further, the example used and the "factors" to be considered are inapplicable to the present case. Plaintiffs further object to Defendants' assertion that if the jury finds against Plaintiffs on the other counts, they "may consider the failure of proof on those counts."].

### Proximate Cause

The law does not create legal liability for every possible result of an act. If you find that a trespass took place, you may award damages only for harms that were reasonably foreseeable and which flow in a natural and continued sequence, unbroken by any meaningful intervening cause. If you find that conduct of a plaintiff was a substantial or contributing cause to the damages suffered, you may reduce your award to reflect the contribution of plaintiff's conduct to the damages, or based upon the severity of plaintiff's conduct, or you may award nothing at all.

### Damages

Damages for trespass are the harms caused by the interference with the right of exclusive possession that belongs to the person or entity having lawful control of the property.

Damages for trespass do not include any damages associated with the other counts alleged against the defendants. These are separate allegations and must be determined based upon their own, unique elements. Before you can find any damages for trespass, you must find that the trespass was the proximate cause of the harm to plaintiff.

## GAUBATZ DEFENDANT'S SPECIAL DEFENSES

[Plaintiffs object to the inclusion of any of the following "special defenses" as improper and not applicable to this case. To the extent that any of the following defenses are "legitimate" and applicable, Plaintiff further object on the grounds that the Gaubatz Defendants waived these "affirmative defenses" by failing to plead them.]

### Misprision Of A Crime

There is no breach of fiduciary duty if a person knows of or reasonably suspects that unlawful activity is or has taken place and the person discloses those facts to an appropriate person or entity. It is unlawful to withhold evidence or conceal evidence of criminal conduct by others, even if the person had no actual role in the criminal conduct.

If Chris Gaubatz's actions in a specific instance or instances were motivated by the reasonable belief or motivated by a reasonable suspicion that CAIR-F, CAIR-AN or any person in their employ was acting unlawfully, those actions by Chris Gaubatz which might otherwise be tortious, are lawful.

In determining whether Chris Gaubatz had a genuine belief or genuine suspicion of criminal wrongdoing, you can consider whether he gathered information which was then presented information to legal authorities or persons in civil or military authority.

In matters where plaintiffs have the burden of proving a wrongful subjective intent of Chris Gaubatz, you may consider Chris Gaubatz' knowledge of, or reasonable suspicions of unlawful activity in determining whether or not his state of mind supports an element of the charged count.

### Obstruction Of Justice 18 USC §§ 1519

It is a crime to obstruct justice by knowingly altering, destroying, mutilating, concealing, covering up, or otherwise impeding, obstructing, or influencing the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States.

Chris Gaubatz is contending that he reasonably suspected that documents he was being asked to shred contained evidence of criminal conduct, tax evasion and other violations of state and federal law. He contends that having that state of mind, he preserved the documents. If you find that Chris Gaubatz owed a fiduciary duty to plaintiffs but that he collected and/or did not shred documents because he had a genuine belief that doing so might obstruct justice, you should find that there was no breach of any duty, fiduciary or otherwise.

### Accessory / Accessory After The Fact (18 U.S.C. § 3)

It is a crime to knowingly destroy evidence, hide evidence or otherwise knowingly aid a perpetrator of criminal conduct to escape detection. To knowingly do so is to commit the crime of being an accessory after the fact. It is a crime to knowingly aid and assist a person or entity in

violating the law.  To do so, makes a person an accessory to the crime which means that such person has violated the law.

Plaintiffs' assert that Chris Gaubatz was placed in an internship with Plaintiffs under an assumed identity, enabling him to remove internal documents and to record private conversations of Plaintiffs' employees without consent or authorization.  Even if this is found by you to be true, it is a defense to the allegations if you find that Chris Gaubatz suspected that documents he was being asked to remove and shred contained evidence of criminal conduct and with that state of mind, preserved the documents.

Further, if you find that the work of Chris Gaubatz as an intern was part of a plan or scheme by plaintiff to provide a façade of legitimacy to hide criminal activity, Chris Gaubatz could not knowingly assist in that conduct without incurring criminal liability as an accessory or accessory after the fact.

No one has a fiduciary duty to aid in criminal conduct or to cover up criminal conduct.  If you find that Chris Gaubatz owed a fiduciary duty to plaintiffs but that he did not shred the documents because he had a genuine belief that they might contain evidence of a crime, you should find that there was no breach of any duty, fiduciary or otherwise.

In order to make this finding in favor of Chris Gaubatz, you must find that Chris Gaubatz knew or reasonably believed that the documents contained evidence that plaintiffs or persons associated with plaintiffs had committed crimes.

Chris Gaubatz need not have actual knowledge of a specific crime, it is sufficient that his elief was based upon a reasonable inference arising from the surrounding circumstances.

## Providing Material Support Or Resources To Designated Foreign Terrorist Organizations

### 18 USC 2339(B)

It is a crime to assist designated terrorist organizations in their unlawful conduct.  Hamas is a designated terrorist organization. If plaintiffs or any person associated with plaintiffs provided material support or resources or conceals or disguises the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out Hamas and/or the Muslim Brotherhood's  unlawful purposes, this assistance would be criminal.

### Foreign Agent Registration Act

No person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement and supplements as required by statute.  Such a filing must include:

1. The nature and amount of contributions, income, money, or thing of value, if any, that the registrant has received within the preceding sixty days from each such foreign

principal, either as compensation or for disbursement or otherwise, and the form and time of each such payment and from whom received;

2. A detailed statement of every activity which the registrant is performing or is assuming or purporting or has agreed to perform for himself or any other person other than a foreign principal and which requires his registration hereunder, including a detailed statement of any such activity which is a political activity.

Every person within the United States who is an agent of a foreign principal who transmits or causes to be transmitted in the United States mails or by any means or instrumentality of interstate or foreign commerce any informational materials for or in the interests of such foreign principle must disclose to the Attorney General the places, times and extent of such transmission.

In case of failure of any such agent of a foreign principal to comply with any of the requirements of this subchapter, each of its officers, or persons performing the functions of officers, and each of its directors, or persons performing the functions of directors, shall be subject to prosecution.

If you find that any plaintiff or their agents, violated the Foreign Agents Registration Act during the time of the events in this lawsuit, you may consider this fact in determining any of the factual issues in this case including but not limited to:

A. Objective expectations of privacy.

B. Any of the affirmative defenses including but not limited to misprision.

C. Damages

121