# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS ACTION NETWORK, INC., *et al.*,

        Plaintiffs,

    v.

PAUL DAVID GAUBATZ, *et al.*,

        Defendants.

Civil Action No. 09-02030 (CKK)

## MEMORANDUM OPINION AND ORDER
(March 29, 2018)

      Pending before this Court are CSP Defendants' [248] Motion-*In-Limine* ("CSP Mot."), which is broken down into four subparts addressing witnesses, exhibits, deposition transcripts and damages; Plaintiffs' [251] Responses to CSP Defendants' Motion *In Limine* ("Pls' Responses"); and CSP Defendants' [254] Reply in support of Motion-*In-Limine* ("CSP Reply"). Also pending before this Court are Plaintiffs' [249] Motions *in Limine* ("Pls.' Mot."), consisting of seven motions *in limine*; CSP Defendants' [250] Opposition to Plaintiffs' Motions *in Limine* ("CSP Opp'n"); and Gaubatz Defendants' [253] Response to Plaintiff's MILs ("Gaubatz Resp."). Plaintiffs did not file a Reply in support of their Motions *in Limine*. The Court will consider the CSP Defendants' Motion *in Limine* together with the Plaintiffs' Motions *in Limine* for the sake of judicial efficiency and because of the overlap of issues therein.[1] The Court will address the Plaintiffs' Motions first, discussing each of the seven motions contained therein, in the order

---

[1] In connection with this Memorandum Opinion and Order, the Court also relied upon the Joint Pretrial Statement, ECF No. 239.

presented to the Court, before addressing the four subparts of the CSP Defendants' Motion in the same manner.

As a preliminary matter, this Court notes that the two motions addressed in the opinion and the oppositions thereto are presented in a summary manner, often without sufficient detail or responsive argument to enable this Court to make a determination regarding the requested exclusion (or admission) of evidence. Furthermore, in many instances the parties fail to specify how their requests asking for the exclusion (or admission) of certain evidence relate to the elements of the claims and defenses in this case, instead focusing on extraneous facts or engaging in convoluted argument. Accordingly, under these circumstances, the Court has summarized the arguments presented by each side and then indicated that such request or objection is denied without prejudice pending supplemental briefing by the parties. The scope of this additional briefing will be set forth in more detail in this opinion.

Plaintiffs' Motion *in Limine* No. 1

Plaintiffs request that the Court preclude Defendants from referring to CAIR, CAIR-F and/or CAIR-AN as a criminal organization and/or a Muslim Brotherhood front group, which includes precluding: (1) evidence of CAIR as an unindicted co-conspirator in the HLF [Holy Land Foundation] trial; (2) evidence of the "Morris Days fraud;" (3) evidence of financial contributions and/or donations CAIR has made to any person or organization; and (4) solicitation of testimony from CAIR employees, former or present about its status as a civil rights organization for the purpose of impeaching that testimony with evidence of terrorism. Plaintiffs contend that the issue of whether any of the CAIR organizations were engaged in "criminal conduct" at the time of the alleged violations does not relieve Defendants of liability for their own misconduct for violations of the D.C. Wiretap Act, the Federal Wiretap Act, the Stored Communications Act and trespass.

2

Plaintiffs assert that any "[a]llegations of criminal conduct and/or ties to terrorism, therefore, are wholly and entirely irrelevant to this case and should be excluded at trial." Pls.' Mot. at 2.[2] Plaintiff argue further that any alleged probative value of such evidence is far outweighed by the danger of unfair prejudice pursuant to Fed. R. Evid. 403.

The CSP Defendants submit that the CAIR Muslim Brotherhood connection evidence is relevant and directly probative of the Defendants' defense to the Federal Wiretap Act because the Act requires the CSP Defendants to know or have reason to know that Chris Gaubatz's actions violated the Act. *See* CSP's Opp'n at 5. The CSP Defendants allege that Defendant Brim, who received recordings from Chris Gaubatz, never even viewed or listened to the recordings, and thus she had "no knowledge or reason to believe that Chris Gaubatz was not following the legal advice provided by [David Yerushalmi] and obtaining the recordings legally." *See id.* Defendants explain that, in light of the fact that Plaintiffs questioned Defendant Brim's knowledge, this Court determined previously that the issue of knowledge (or imputed knowledge) is a factual dispute. Defendants assert that in order to resolve such factual dispute, the jury needs to understand the purpose of the Muslim Brotherhood/CAIR documentary to bolster its argument that the audio-video clips were only intended as background and were not that important. *See* CSP Opp'n at 6. Accordingly, the CSP Defendants argue that the jury has to be made aware of the Muslim Brotherhood/CAIR connection through testimony and exhibits in this case.[3] The Court notes that this multi-faceted argument by the CSP Defendants fails to cogently explain how the allegations

[2] The page numbers referenced by this Court are the numbers assigned by the Electronic Case Filing system.

[3] The CSP Defendants reassure the Court that the exhibits showing CAIR's connection to the Muslim Brotherhood "are not meant to prove the truth of the matters asserted therein" but rather to explain the substance of the documentary, which relied on such exhibits. *See* CSP Opp'n at 7.

that CAIR is somehow linked to the Muslim Brotherhood are relevant to any of claims and defenses in this case, or the relevance of knowing the background of the documentary, and/or how the probative value of such allegations outweighs any obvious prejudice.

The Gaubatz Defendants premise their argument in support of referring to CAIR as a terrorist group upon the Court's statement that, because CAIR-F has argued that Chris Gaubatz had the intent of committing a breach of fiduciary duty, there are two unanswered questions: (1) whether Chris Gaubatz had a fiduciary duty to CAIR-F, and (2) whether the breach of this fiduciary duty was either a primary motivation or a determinative motivating factor for the interception. *See CAIR Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 259 (D.D.C. 2014). The Gaubatz Defendants allege generally that "the relationship between a genuine civil rights organization and a person purporting to share its ideals is more likely to establish a fiduciary relationship than if CAIR is a criminal organization which used its intern program as part of its fake civil rights persona." *See* Gaubatz Resp. at 4-5. The Defendants' "argument" in support of this general statement consists of several disjointed propositions, first about general contract law, followed by statements about Hamas and cites from an opinion relating to the HLF criminal trial in Texas. The Gaubatz Defendants fail to coherently link their argument that the Defendants should be able to refer to CAIR as a terrorist organization to any of the claims or defenses in this case.

The Gaubatz Defendants allege further that "those engaged in criminal conduct in a quasi-public location have less of an expectation of privacy than they would have if their conduct were lawful" and they note, without further explanation, that Chris Gaubatz's assessment of CAIR was colored by CAIR's status as an unindicted co-conspirator in the HLF trial. *See* Gaubatz Resp. at 9. The Gaubatz Defendants then proceed to cite extensively from the HLF Texas criminal case, and they launch into a historical review of the formation of CAIR, none of which has any bearing

on the claims and defenses at issue in this case. Nor do the Gaubatz Defendants proffer any relevant argument linked to the claims and defenses in this case to rebut Plaintiffs' request to preclude evidence of financial contributions made by CAIR.

With regard to CAIR's request that evidence of the "Morris Days fraud" be barred, this Court notes that the "Morris Days fraud" is the subject of one or more civil actions filed in this court, in which Defendant David Yerushalmi is listed as counsel for Plaintiffs therein, namely: *Lopez v. CAIR Action Network, Inc.*, 657 F. Supp. 2d 104 (D.D.C. 2009), *aff'd*, 389 Fed. Appx. 1 (D.C. Cir. 2010) (where CAIR's motion to dismiss RICO violations was granted by the District Court and affirmed on appeal); *Saiyed v. CAIR Action Network Inc.*, Civil Action No. 10-22 (PLF) and *Lopez v. CAIR Action Network, Inc.*, Civil Action No. 10-23 (PLF) (both set for trial in November 2018).

The Gaubatz Defendants' proffer no argument in support of allowing the "Morris Days fraud" evidence, noting only that "[a]mong the documents that Chris Gaubatz stumbled upon and among the documents he was asked to shred, were documents relating to this fraud." *See* Gaubatz Resp. at 14.

The CSP Defendants argue that evidence of the "Morris Days fraud" is relevant and probative of a key element of the CSP defense to the Stored Communications Act charges, to wit, that David Yerushalmi advised David Gaubatz that Chris Gaubatz could legally remove documents as he had expressed, implied or constructive authority to do so. *See* CSP Opp'n. at 8; Defs' Answer to Third Am. Compl., ECF No. 130, at 16 ¶ 3. The CSP Defendants assert, without further explanation, that the "Morris Days fraud evidence was the impetus for this legal instruction and the basis in part for Chris Gaubatz's decision to preserve certain of these documents." *See* CSP Opp'n at 9.

Because the Defendants have failed to adequately link their arguments to the claims and defenses in this case, Plaintiffs' Motion *in Limine* No. 1 shall be DENIED WITHOUT PREJUDICE pending supplemental briefing by the parties. More specifically, the Defendants shall respond to Plaintiffs' request to preclude Defendants from referring to CAIR as a terrorist organization, and to preclude the introduction of evidence specified in four subparts of Plaintiffs' Motion No. 1, which is based on Plaintiffs' assertions that such evidence is not relevant and is prejudicial. In their responses, Defendants shall: (1) indicate the relevance of such evidence, (2) specify how the disputed evidence is related to and supports the elements of the claims and/or affirmative defenses in this case, and (3) explain why the probative value of such evidence would outweigh any prejudice. Defendants should abstain from making any unnecessary commentary that does not directly respond to these three inquiries, and should cite to relevant case law, where appropriate. In the event that Defendants agree that certain evidence may be precluded, they shall so indicate. Defendants' failure to respond to any aspect of Plaintiffs' Motion may be deemed a concession with regard to that part of the Motion. Plaintiffs will then have an opportunity to reply to the Defendants' responses.

Plaintiffs' Motion *in Limine* No. 2

Plaintiffs seek to preclude Defendants from presenting evidence that the United States Government "proved" or had knowledge that CAIR is founded by the Muslim Brotherhood, Hamas, or any other terrorist organization. The CSP Defendants do not <u>specifically</u> address Plaintiffs Motion *in Limine* No. 2 in their Opposition.[4] It is unclear whether the Gaubatz

---

[4] The CSP Defendants indicate that they contest all of Plaintiffs' motions *in limine* although they present only one consolidated argument with regard to all motions they deem related to CAIR's alleged ties or relationship to terrorism, Hamas, or the Muslim Brotherhood. *See* CSP Opp'n at 4, 11.

Defendants' one paragraph "response" to Motion *in Limine* No. 2 is a concession or is simply non-responsive. Accordingly, Plaintiffs' Motion *in Limine* No. 2 shall be DENIED WITHOUT PREJUDICE pending supplemental briefing by the parties, as explained in this Court's ruling on Motion *in Limine* No. 1.

Plaintiffs' Motion *in Limine* No. 3

Plaintiffs request that the Court bar any evidence that the Defendants were acting on behalf of law enforcement, the United States, or any other government agencies. The CSP Defendants do not specifically address Plaintiffs' Motion *in Limine* No. 3 in their Opposition. The Gaubatz Defendants "agree with CAIR that defendants were not 'authorized law enforcement personnel,'" which might be a concession, but they also note that "this does not mean that defendants did not obtain documents with the intention of preserving evidence or turning evidence over to the FBI, Congress or other governmental entity." *See* Gaubatz Resp. at 15. Accordingly, Plaintiffs' Motion *in Limine* No. 3 shall be DENIED WITHOUT PREJUDICE pending supplemental briefing by the parties, as explained in this Court's ruling on Motion *in Limine* No. 1.

Plaintiffs' Motion *in Limine* No. 4

Plaintiffs seek to bar evidence of Defendant David Gaubatz's training as an Arab linguist and prior employment with the United States Air Force as a Special Investigations Special Agent, on grounds that such evidence is not relevant to this case, and it "will solely be used to legitimize the Defendants'' violations of the law" even if David Gaubatz's experience and credentials are not a defense. *See* Pls.' Mot. at 6. Plaintiffs assert further that even if such evidence is relevant, it is misleading regarding Defendant Gaubatz's authority to investigate.

The Gaubatz Defendants argue that a defendant's background helps contextualize his testimony as it can explain motive, knowledge and intent, and in this case, it also explains "the

relationship between P. David Gaubatz and the other defendants." *See* Gaubatz Resp. at 16. The Gaubatz Defendants contend that this evidence counters contentions that David Gaubatz is anti-Arab and is integral to David Gaubatz's desire to accurately portray CAIR.

The CSP Defendants assert that David Gaubatz's background is relevant to the issue of respondeat superior liability and the question of whether David Gaubatz was an agent of any of the CSP Defendants or an independent contractor. More specifically, the CSP Defendants argue that because of David Gaubatz's "experience, awards, and citations operating as a military law enforcement officer and intelligence officer, in addition to his civilian duties for the military during the Iraq war and, of course, his successful supervision of SANE's "Mapping Sharia" project," the CSP Defendants treated David Gaubatz as an independent contractor. CSP Opp'n at 11. Furthermore, the CSP Defendants contend that evidence regarding David Gaubatz's training and employment "provides an important element in the CSP Defendants' 'lack-of-knowledge" defense under the Federal Wiretap Act" because the CSP Defendants relied on David Gaubatz's "assurances that all matters in the filed were being conducted legally," and they were confident to let David Gaubatz "conduct the logistics of the Muslim Brotherhood/CAIR documentary." *Id.*

Because the Defendants have failed to adequately link their argument to the claims and defenses in this case, Plaintiffs' Motion *in Limine* No. 4 shall be DENIED WITHOUT PREJUDICE pending supplemental briefing by the parties, as explained in this Court's ruling on Motion *in Limine* No. 1.

Plaintiffs' Motion *in Limine* No. 5

Plaintiffs seek to preclude Ms. Haddadi or any other former or current CAIR employee from testifying about alleged discrimination and/or mistreatment within CAIR. The CSP Defendants do not specifically address Plaintiffs' Motion *in Limine* No. 5 in their Opposition. The

Gaubatz Defendants assert, without further explanation, that this type of evidence is "relevant to the degree of trust, if any, placed by CAIR in Chris Gaubatz." *See* Gaubatz Resp. at 16. Accordingly, Plaintiffs' Motion *in Limine* No. 5 shall be DENIED WITHOUT PREJUDICE pending supplemental briefing by the parties, as explained in this Court's ruling on Motion *in Limine* No. 1.

Plaintiffs' Motion *in Limine* No. 6

 Plaintiffs seek to bar any evidence that attempts to exploit and attack Islam.   The CSP Defendants do not specifically address Plaintiffs' Motion *in Limine* No. 6 in their Opposition.   The Gaubatz Defendants state that this issue has been "addressed in full in to the introductory paragraphs."  *See* Gaubatz Resp. at 17.  Defendant then launch into a discussion about women's rights in the Islamic community and the film the *Honor Diaries* without indicating the relevance of this discussion to the issues in this case, instead castigating CAIR for alleged internal problems with discrimination against women.   Accordingly, Plaintiffs' Motion *in Limine* No. 6 shall be DENIED WITHOUT PREJUDICE pending supplemental briefing by the parties, as explained in this Court's ruling on Motion *in Limine* No. 1.

Plaintiffs' Motion *in Limine* No. 7

Plaintiffs move to preclude any affirmative defense that was not pled in Defendants' Answer or a dispositive motion.  "[I]t is well-settled that [a] party's failure to plead an affirmative defense . . . generally results in the waiver of that defense and its exclusion from the case." *Kapche v.* Holder, 677 F.3d 454, 465 (2012) (citing *Harris v Sec'y , U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 343 (D.C. Cir. 1997) (internal quotation marks and emphasis removed)).  Therefore, in the event that Defendants are now attempting to introduce affirmative defenses that were not raised earlier, they will not be permitted to do so.

Plaintiffs' argument is as follows:

The Gaubatz Defendants, for the first time in the Joint Pretrial Statement, have asserted the following defenses to each of the allegations against them: (a) "There is no expectation of privacy in criminal conduct or for a criminal organization and its agents," (b) "The reporting and preserving of evidence of criminal conduct is required by 18 U.S. Code § 4," and (c) as to Plaintiffs' trespass claim, "The entry was permitted under the common law doctrine of public and private necessity (Rest of Torts secs 196 & 197)." [5]

Pls.' Mot. at 7. Plaintiffs indicate that the defense that Defendants had a legal obligation to preserve paper and electronic documents is not a proper defense to violations of the Federal and D.C. Wiretap Acts, the Stored Communications Act, or trespass. Plaintiffs further object to the introduction of evidence of any criminal conduct by CAIR insofar this issue will create a trial within a trial.

The CSP Defendants do not specifically address Plaintiffs' Motion *in Limine* No. 7 in their Opposition, except in the context of their discussion of the "Morris Days fraud" evidence. The Gaubatz Defendants incorporate into their Response the CSP discussion regarding the affirmative defense of implied, constructive or legal authority to preserve evidence, noting that this is an important defense relating to the Stored Communication Act allegations, but the Gaubatz Defendants do not add anything to that discussion. Accordingly, because Defendants have not provided an adequate response to Plaintiffs' Motion *in Limine* No. 7, this Court has no way of determining if Defendants construe these defenses as new affirmative defenses, and if not, the source of any such defenses, and whether or not such defenses relate to the claims at issue in this case. Accordingly, Plaintiffs' Motion *in Limine* No. 7 shall be DENIED WITHOUT PREJUDICE

---

[5] The Gaubatz Defendants note that they "withdraw any request to argue that the initial entry was prompted by necessity." *See* Gaubatz Resp. at 21.

pending supplemental briefing by the parties, as explained in this Court's ruling on Motion *in Limine* No. 1.

CSP Motion Subpart I: Objections to Witnesses

Availability of Witnesses

The CSP Defendants indicate that the parties agreed to provide the other parties with a list of witnesses who will be available for trial without a subpoena. The CSP Defendants have stated that all of the witnesses identified by them as "Intend to Call" witnesses will be available for trial except those witnesses associated with Plaintiffs, but they are uncertain if witnesses listed as "If the Need Arises" will be available. *See* CSP Objections to Joint Pretrial Statement, ECF No. 240, at 6.

Plaintiffs respond that it is premature to address the availability of witnesses when the trial date has not yet been set, and further, that they have no control over the availability or non-availability of witnesses who are not under the direct control of CAIR.

All parties are instructed to provide this information to the other parties in a timely manner **once a trial date has been set**. If the Plaintiffs are unable to ascertain whether witnesses that are not under their direct control will be available without subpoena, they should so indicate. Accordingly, Defendants' request for identification of witnesses who will be available without subpoena shall be GRANTED.

References to Conspiracy

The CSP Defendants request that this Court preclude any evidence relating to or referencing a "conspiracy" or using similar terms such as "aiding and abetting," "scheme," or "plot," on grounds that there are no allegations or record facts supporting a conspiracy, and such evidence or inquiry relating to a conspiracy or related terms would be irrelevant and inadmissible.

11

*See* CSP Mot. at 2-3 (referencing Fed. R. Evid. 401, 402). Plaintiffs argue that the CSP Defendants' request is overly broad because while there is no civil cause of action for conspiracy, "[t]his does not mean, however, that there are no facts to support those allegations." *See* Pls.' Responses at 2. Plaintiff rely further on the dictionary definition of conspiracy.

The Court shall prohibit the use of the following words: "conspiracy," "scheme," "plot," and "aid and abet," because this type of terminology implies a legal conclusion and its use is prejudicial to the Defendants. Accordingly, Defendants' request to preclude the use of the term "conspiracy" and related terms shall be GRANTED.

Muslim Mafia

Defendants seek to preclude the introduction of any or all of the book Muslim Mafia on grounds that it was written by Paul Sperry, and it is hearsay unless the author might provide testimony that would allow some portions of the book to be introduced. *See generally* Fed. R. Evid. 401-02, 602, 802, 901. Plaintiffs argue that there are exceptions to the hearsay rules insofar as Dave Graubatz has already testified that he provided documents for the book to Mr. Sperry, and Mr. Sperry may testify as to the contents of the book. Plaintiffs assert however that they do not intend to introduce the book for the truth of the matters asserted but merely to rebut any "misprision-type defenses raised by Chris Gaubatz and/or to prove Defendants' state of mind should the need arise." *See* Pls.' Responses at 4. The Court finds that Defendants' request to preclude introduction of the book Muslim Mafia shall be DENIED WITHOUT PREJUDICE pending supplemental briefing by the parties.[6]

---

[6] The supplemental briefing ordered in connection with the issues presented in the **CSP Motion** will be detailed by the Court <u>after</u> the issues presented in the Plaintiffs' motions *in limine* are resolved because resolution of the Plaintiff's motions *in liimine* may affect and/or moot issues in the CSP Motion.

<u>Sarah Pavlis and Adam Savit</u>

Defendants request that Sarah Pavlis and Adam Savit should be precluded from being witnesses on grounds that they were dismissed as defendants after the Court found no evidence of their involvement in matters related to this lawsuit. *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 82 F. Supp. 3d 344, 362 (D.D.C. 2015). Plaintiffs contend generally that even if these witnesses were dismissed as defendants, they could have knowledge relevant to the case.

The Court notes that Plaintiffs' description of the proffered testimony of both witnesses is basically the same – both are to testify about information relating to a conspiracy between Defendants to steal documents and information from Plaintiffs, and such description is insufficient for this Court to make a ruling. The Court finds that Defendants' request to preclude Sarah Pavlis and Adam Savit from testifying shall be DENIED WITHOUT PREJUDICE pending supplemental briefing by the parties.

<u>Corey Saylor</u>

The CSP Defendants raise two issues regarding Corey Saylor's proposed testimony. First, they assert that Mr. Saylor should not be permitted to testify as to any documents that were removed from Plaintiffs' offices by Chris Gaubatz "other than the specific documents at issues in the allegations relating to the Stored Communication Act" because there is no extant conversion claim relating to other documents that were removed and thus, any testimony about other documents would be irrelevant. *See* CSP Mot. at 4 (relying on Fed. R. Evid. 401-02). Second, the CSP Defendants argue Mr. Saylor should not be permitted to opine as to what documents were stored on the network server and from where Chris Gaubatz obtained any digital documents unless

Mr. Saylor has personal knowledge of these facts, or his testimony will "amount[ ] to unqualified and improper expert testimony." *See* CSP Mot. at 4 (relying on Fed. R. Evid. 602, 701-02).

Plaintiffs argue that, if Defendants are permitted to rely on their "legal obligation to preserve those documents as evidence of criminal conduct" as justification for Chris Gaubatz's actions with regard to the taking of documents, then "Plaintiffs must be permitted to introduce evidence that the documents stolen were not criminal in nature in order to rebut that alleged intent." *See* Pls.' Responses at 5. Addressing the CSP Defendants' contention that Mr. Saylor needs personal knowledge or his testimony will be impermissible expert testimony, the Plaintiffs explain that "[Corey] Saylor's knowledge regarding the documents taken from the server arises from his knowledge of the system and server[,]" and he need not have physically seen Chris Gaubatz take the documents. *See* Pls.' Responses at 6.

The Court finds that Defendants' request to limit or preclude Corey Saylor's testimony shall be DENIED WITHOUT PREJUDICE pending supplemental briefing by the parties.

<u>Paul Don Vito and Paul Sperry and Joseph Farah</u>

The CSP Defendants request preclusion of these three witnesses on grounds that they lack personal knowledge and therefore, testimony proffered by them will likely be objectionable based on allegations of hearsay and lack of foundation. In their Reply, the CSP Defendants withdraw their "lack of personal knowledge" objection to the testimony of Paul Don Vito and Paul Sperry, but they reserve the right to make specific objections at such time when CAIR makes clear what testimony it intends to elicit, such as during trial. The CSP Defendants do not reply to Plaintiffs' Response regarding Joseph Farah, either because of oversight or concession. The Court finds that because the CSP Defendants' objections to these three witnesses were <u>all</u> based on lack of personal knowledge, those objections shall be DENIED AS MOOT with regard to <u>all</u> <u>three</u> witnesses, with

14

the CSP Defendants reserving their right to make specific objections before trial, if appropriate, or during trial.

### David Zimmerman and Harold C. Weatherman III

The CSP Defendants maintain that these two witnesses are being proffered to show that Dave Gaubatz used and disclosed information obtained from CAIR and intentionally ignored the court's preliminary injunction in this case. The CSP Defendants request that the testimony of these two witnesses be limited in scope to testimony that relates to the use and disclosure of audio clips relevant to the Federal and D.C. Wiretap Acts allegations, if any.

Plaintiffs contend that if Defendants claim that Chris Gaubatz's actions were justified because of a legal obligation to preserve documents, all documents and information received by these individuals is relevant as it goes to the Defendants' state of mind. Plaintiffs allege that these two witnesses should be able to corroborate any claim that Chris Gaubatz intended to give documents to law enforcement despite the Court's order to the contrary.

The Court finds that Defendants' request to limit the testimony of David Zimmerman and Harold C. Weatherman III shall be DENIED WITHOUT PREJUDICE pending supplemental briefing by the parties.


### CSP Motion Subpart II: Objections to Exhibits

### Plaintiffs' List of Exhibits- Evidentiary Proffer

The CSP defendants submit that the parties agreed to submit evidentiary proffers with their list of exhibits so as to facilitate the narrowing of objections to the exhibits, but Plaintiffs did not follow through on this. The Court notes that such evidentiary proffer is neither required nor have any of the parties provided such a proffer in the context of their Joint Pretrial Statement, and

accordingly, the CSP Defendants' request for an evidentiary proffer shall be DENIED WITHOUT PREJUDICE.[7]


Exhibit 2

Plaintiffs' Exhibit 2 consists of a series of contractual agreements and e-mailed amendments to these agreements. In their Reply, the CSP Defendants withdraw their prior objections, based on repetitiveness and vague identification, to Plaintiffs' Exhibit 2, items c, f, g and j, but they preserve their right to specifically object on grounds of foundation, relevance and hearsay, if CAIR does not provide the requisite foundation and testimony. Accordingly, Defendants' objections to Exhibit 2, based on repetitiveness and vague identification, shall be DENIED AS MOOT, but the objections relating to foundation, relevance and hearsay will need to be resolved prior to trial is this exhibit is to be used.

Exhibit 3

The CSP Defendants object to Plaintiffs' Exhibit 3 which is described as follows: "**Stolen documents re Plaintiff's Properties (i.e., the documents subject to the court's injunction)** (possible summary of documents not yet created)." *See* Joint Pretrial Statement, ECF No. 239, at 50. Plaintiff contends that these documents (as yet to be compiled) are necessary evidence in this case to "demonstrate the scope of Chris Gaubatz's trespass" and speak to his "state of mind, knowledge, and/or culpable intent."

---

[7] The CSP Defendants indicate that they provided an evidentiary proffer of 100 plus pages in connection with a draft of the Pretrial Statement, but the Plaintiffs refused to provide any similar proffer and so they withdrew their proffer. *See* CSP Mot. at 1-2, n.1; Joint Pretrial Statement, ECF No. 239, at 52.

Defendants' objections to Plaintiffs' Exhibit 3 shall be DENIED WITHOUT PREJUDICE pending supplemental briefing by the parties.

Exhibit 5

Plaintiffs' Exhibit 5 consists of excerpts from the Muslim Mafia book that was previously addressed in this Memorandum Opinion. Accordingly, for the same reasons, Defendants' objections to Plaintiffs' Exhibit 5 shall be DENIED WITHOUT PREJUDICE pending supplemental briefing by the parties.

Exhibit 6

Plaintiffs' Exhibit 6 consists of two subparts: (1) a transcript of Chris Gaubatz's telephone call, identified as Ex. 37 to Pls.' Mot. for Summ. J, and (2) a transcript of Chris Gaubatz's video, identified as Ex. 38 to Pls.' Mot. for Summ. J. In their Reply, the CSP Defendants withdraw their objections to the first subpart of Plaintiffs' Exhibit 6, and accordingly Defendants' objections to Plaintiffs' Exhibit 6 (Ex. 37 to Pls' Mot. for Summ. J.) may be DENIED AS MOOT. With regard to the transcript identified as Ex. 38 to Pls.' Mot. for Summ. J., the CSP Defendants request that the Court preclude it on grounds that it is "not authenticated, lacks foundation, is not the best evidence, includes inaccurate transcriptions and editorial notes regarding audibility, and is inadmissible hearsay." *See* CSP Mot. at 8 (relying on Fed. R. Evid. 602, 901, 802, 1002).

Defendants' objections to Plaintiffs' Exhibit 6 (Ex. 38 to Pls.' Mot. for Summ. J.) are DENIED WITHOUT PREJUDICE pending supplemental briefing by the parties.

Exhibit 8

The CSP Defendants request that the Court preclude admission of items c through e of Plaintiffs' Exhibit 8 — namely, a screenshot of SANE's War Manifesto, an ADL Report regarding David Yerushalmi, and a screenshot of the SPLC's Anti-Muslim Inner Circle— on grounds of

authentication, foundation, materiality and relevancy, pursuant to Fed. R. Evid. 401-02, 602 and 901. Defendants question Plaintiffs' ability to cure defects in these exhibits because "they have not listed any witnesses who could even conceivably be the creators of these documents." *See* CSP Motion at 9.

Plaintiffs respond that with regard to the screenshot of SANE's War Manifesto, David Yerushalmi would of course be the witness to discuss this exhibit. Plaintiffs indicate additionally that such exhibits are listed as "if the need arises" and will only be used if the Defendants are permitted to introduce evidence of Plaintiffs' alleged ties to terrorism and/or other alleged criminal conduct.

Defendants' objections to Plaintiffs' Exhibit 8 shall be DENIED WITHOUT PREJUDICE pending supplemental briefing by the parties.

### CSP Motion Subpart III: Plaintiffs' Failure to Designate Deposition Transcripts

The CSP Defendants contend that because Plaintiffs' designation of deposition transcripts fail to set out the page and line numbers, they should thus be precluded for use at trial. Plaintiffs indicate that deposition testimony will "only be used to refresh a witnesses' recollection or as impeachment, but not in lieu of live testimony (except that deposition might be used *de bene esse* for an unavailable witness with court approval . . . .") *See* Joint Pretrial Statement, ECF No. 230, at 62. Plaintiffs designate entire deposition transcripts for these purposes, stating that they are "unable to identify specific portions of the deposition transcripts without advance knowledge of the testimony of each of these witnesses." *Id.*

Defendants' objections to the manner in which Plaintiffs have designated depositions transcripts shall be DENIED WITHOUT PREJUDICE pending supplemental briefing by the parties.

### CSP Motion Subpart IV: Itemization of Damages

The CSP Defendants object to the Plaintiffs' itemization of damages, which is to be updated "at some undisclosed time" and "does not set out the specific amounts of the damages' components." [8] *See* CSP Mot. at 9. The CSP Defendant suggest that any evidence of damages should be precluded because of these deficiencies.

This Court's Pretrial Scheduling and Procedures Order indicates that the Pretrial Statement shall include "[a]n itemization of damages by the party seeking to recover, setting forth separately each element of damages, and the monetary amount thereof, including prejudgment interest, punitive damages, and attorneys' fees." *See* Pretrial Scheduling and Procedures Order, ECF No. 231, at 3. Plaintiffs assert that they have set forth the categories of damages they seek to recover — wages earned by Chris Gaubatz via his father for recording at CAIR, wages earned by Chris Gaubatz vis CSP for 2 months after leaving CAIR, $103,865 paid to SANE by CSP in 2008, profits from the sale of the book Muslim Mafia, statutory damages, nominal damages for trespass, attorney's fees and costs, and punitive damages — but "the exact amounts of many of these items of damages will depend entirely on certain Defendants' testimony at trial and will be up to the jury to determine." *See* Pls.' Responses at 14. Plaintiffs offer to amend their itemization of damages, if so required by the Court, once a trial date has been set. Defendants' objections to Plaintiffs'

---

[8] The itemization of damages includes only one monetary calculation – the $103,865 paid to SANE by CSP in 2008. *See* Joint Pretrial Statement, ECF No. 239, at 70.

itemization of damages shall be DENIED WITHOUT PREJUDICE pending supplemental briefing by the parties.

Accordingly, it is this 29th day of March, 2018, hereby

ORDERED that Plaintiffs' [249] Motions *in Limine* are DENIED WITHOUT PREJUDICE pending supplemental briefing by the parties, as detailed herein, and it is further

ORDERED that the CSP Defendants' [248] Motion-*In-Limine* is GRANTED IN PART and DENIED IN PART. More specifically, the Motion is GRANTED with regard to the indication of availability of witnesses by Plaintiffs, once a trial date has been set, and the exclusion of references to "conspiracy" and related terms; the Motion is DENIED WITHOUT PREJUDICE with regard to introduction of the Muslim Mafia, witnesses Sarah Pavlis, Adam Savit, Corey Saylor, David Zimmerman and Harold C. Weatherman III, the request for an evidentiary proffer, Defendants' objections to Plaintiffs' Exhibits 3, 5, 6 (subpart identified as Ex. 38 to Pls.' Mot. for Summ. J.) and 8, and the requests for Plaintiffs' designation of deposition transcripts and itemization of damages; and it is DENIED AS MOOT with regard to the CSP Defendants' "lack of personal knowledge" objections to witnesses Paul Don Vito, Paul Sperry and Joseph Farah (with the CSP Defendants reserving their right to make specific objections before trial, if appropriate, or at trial), Plaintiffs' Exhibit 2 (preserving the CSP Defendants' objections relating to foundation, relevance and hearsay), and Plaintiffs' Exhibit 6 (subpart identified as Ex. 37 to Pls.' Mot. for Summ. J), and it is further

ORDERED that the Defendants' supplemental briefing responsive to Plaintiffs' [249] Motions *in Limine* shall with specificity set out a factual proffer, and shall precisely address the manner in which the evidence sought to be precluded by Plaintiffs is relevant to the particular elements of the specific claims and/or any recognized affirmative defenses in this case, citing

cases, statutes and/or other authority in support of their arguments, and including references, among other evidence, to describe the actual knowledge, intent and consent of Chris Gaubatz; as well as the relevance of knowing the background of the Muslim Brotherhood/CAIR documentary; and any alleged specific instance of criminal conduct by CAIR. While the Court has set out Plaintiffs' objections to the evidence that Plaintiffs seek to preclude, the Court anticipates that the Defendants' response will be more comprehensive in scope than Plaintiffs' objections. Defendants' Supplemental Briefing is due by **April 30, 2018**. Plaintiffs' Response to the Supplemental Briefing is due by **May 22, 2018**.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge