**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS ACTION NETWORK, INC., *et al.*,<br><br>          Plaintiffs<br><br>     v.<br><br>PAUL DAVID GAUBATZ, *et al.*,<br><br>          Defendants. | Civil Action No. 09-2030 (CKK) |

**MEMORANDUM OPINION & ORDER**
(December 2, 2022)

This tort case is before the Court on the parties' cross-motions in limine.[1]  The case centers on an alleged scheme between Defendants Paul Gaubatz, David Gaubatz, and affiliated organizations to gather damaging information on Plaintiffs Council on American-Islamic Relations Action Network, Inc. ("CAIR-AN") and CAIR-Foundation, Inc. ("CAIR-F" and, collectively, "CAIR") under false pretenses.  Plaintiffs' remaining claims to relief arise under the Federal Wiretap Act, the District of Columbia Wiretap Act, the Stored Communications Act, and the common law of trespass.  Defendants seek to present particularly inflammatory evidence of Plaintiffs' purported links to the Muslim Brotherhood and other Islamist organizations in an effort to portray Plaintiffs as criminal organizations and material supporters of Islamic terrorism.  Because these specious allegations have nothing to do with the claims at issue and would overly prejudice the jury, the Court shall exclude all such evidence and testimony.  Accordingly, and

---

[1]  Plaintiffs filed one document, ECF No. 249, entitled "Plaintiffs' Motions in Limine," containing seven separate "motions."  For ease of reference, the Court refers to each motion seriatim (e.g., "Plaintiffs' First Motion"), each of which is contained within ECF No. 249.

upon consideration of the pleadings, the relevant legal authority, and the record as a whole[2], the

Court shall **GRANT IN PART AND DENY IN PART** Plaintiffs' [249] Motions in Limine.

## I.   BACKGROUND

Given how long this case has been pending, the Court shall restate the factual background

of this matter in more detail.  Plaintiffs' remaining claims to relief arise under the common law

of trespass, the Federal Wiretap Act, the District of Columbia Wiretap Act, and the Stored

Communications Act.  *CAIR v. Gaubatz*, 82 F. Supp. 3d 344, 349 (D.D.C. 2015); Third Am.

Compl.  Plaintiffs allege that, beginning in 2007, Defendants crafted and executed a plan by

which Defendant Chris Gaubatz secured and completed work as a CAIR intern under false

pretenses in order to access and distribute confidential information belonging to CAIR.  Third

Am. Compl. at ¶ 21.  This scheme was purportedly motivated by Defendants' belief that CAIR, a

civil rights organization, was a "front group" for nefarious Islamist organizations.

---

[2] The Court's consideration has focused on the following briefing and materials submitted by the parties:
- Plaintiffs' Third Amended Complaint, ECF No. 126 ("Third Am. Compl.");
- Plaintiffs' Motion in Limine, ECF No. 249 ("Pls.' Mot.");
- Gaubatz Defendants' Response to Plaintiffs' Motion in Limine, ECF No. 253 ("Gaubatz Defs.' Resp.");
- CSP Defendants' Opposition to Plaintiffs' Motion in Limine, ECF No. 250 ("CSP Defs.' Opp'n");
- CSP Defendants' Motion in Limine, ECF No. 248 ("CSP Defs.' Mot.");
- Plaintiffs' Response to CSP Defendants' Motion in Limine, ECF No. 251 ("Pls.' Resp. to CSP Defs.' Mot.");
- CSP Defendants' Reply in Support of Motion in Limine, ECF. No. 254 ("CSP Defs.' Reply");
- Gaubatz Defendants' Supplemental Brief and Exhibits, ECF No. 262 and 263 ("Gaubatz Defs.' Suppl. Br.");
- CSP Defendants' Supplemental Brief and Exhibits, ECF No. 261 ("CSP Defs.' Suppl. Br.");
- Plaintiffs' Reply Brief, ECF No. 266 ("Pls.' Reply Br.").

In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. *See* LCvR 7(f).

Plaintiffs contend that Defendants SANE and Yerushalmi entered into a 2007 agreement with Defendant David Gaubatz whereby David Gaubatz would serve as the Director of SANE's unrelated "Mapping Shari'a in America: Knowing the Enemy Project." *Id.* at ¶ 22; Pls.' Ex. A ("SANE-Gaubatz Agreement"); *CAIR v. Gaubatz*, 31 F. Supp. 3d 237, 244-45 (D.D.C. 2014). Under the agreement, Gaubatz worked as SANE's and Yerushalmi's agent, reported directly to Yerushalmi, and held the authority and obligation to manage the "field work" of SANE, including data collection, hiring and training of "field agents," and supervising analysis of collected data. Third Am. Compl. ¶ 22; Pls.' Ex. A. The agreement dictated that all "written, electronic, and digital material" collected by David Gaubatz through his work for SANE would be "the exclusive property" of SANE. Third Am. Compl. ¶ 25; Pls.' Ex. A.

When Defendant CSP needed someone to manage field research for its "CAIR Documentary Project," Defendant CSP contacted Defendants SANE and Yerushalmi, who recommended Defendant David Gaubatz for the role. *CAIR*, 31 F. Supp. 3d at 244-45. Plaintiffs allege that the Gaubatz Defendants "entered into at least two agreements" with Defendants CSP and Brim according to which the Gaubatz Defendants provided Defendants CSP and Brim with Plaintiffs' confidential information obtained by Chris Gaubatz. Third Am. Compl. ¶ 42; Pls.' Ex. B ("CSP-Gaubatz Agreement").

Plaintiffs assert that in 2008 Defendant Chris Gaubatz, in furtherance of Defendants' agreements, served as Defendant David Gaubatz's "chief field investigator" and worked as an intern first at the affiliate CAIR MD/VA Office in Virginia and then at the national CAIR office in Washington, D.C. by deceptively stating that his name was David Marshall and he was an adherent to the Muslim faith, among other false representations. *Id.* ¶¶ 26-28, 41. These CAIR offices, including the areas where computers are stored, were not open to the public and could

only be accessed with authorization from CAIR. *Id.* ¶¶ 34-35.  Plaintiffs have stipulated that Defendant Chris Gaubatz's conduct at the CAIR MD/VA Office does not form the basis for any of their claims.  *CAIR*, 31 F. Supp. 3d at 247.

During his work as a CAIR intern, Plaintiffs contend that, without Plaintiffs' authorization, Defendant Chris Gaubatz accessed and removed confidential CAIR documents, recorded private conversations involving CAIR employees and concerning CAIR activities, and distributed this confidential information to Defendants David Gaubatz, CSP, Brim, SANE, and Yerushalmi.  Third Am. Compl. ¶¶ 21, 48-54.  Plaintiffs claim Defendant Chris Gaubatz accessed CAIR computers and networks with login credentials he was not authorized to use and distributed electronics documents, including emails and spreadsheets, to Defendant David Gaubatz without Plaintiffs' consent.  *Id.* at ¶ 49-50, 71. Plaintiffs allege the Gaubatz Defendants then distributed the documents and recordings to Defendants CSP and Brim without Plaintiffs' authorization.  *Id.* ¶¶ 53, 71; *see* Pls.' Ex. C ("SANE-Gaubatz Settlement Agreement"). Plaintiffs assert that Defendants CSP and Brim knew how the Gaubatz Defendants obtained the recordings and that Defendants CSP and Brim subsequently distributed them to additional parties.  *Id.* ¶¶ 56-57.

Over successive rounds of dispositive briefing, three sets of claims remain: those arising under the Federal and D.C. Wiretap Acts, the Stored Communications Act, and the common law of trespass.

*First*, Plaintiff CAIR-F claims Defendant Chris Gaubatz intercepted CAIF-F's communications in violation of the Federal Wiretap Act and the D.C. Wiretap Acts.  Third Am. Compl. ¶ 80.  The Federal Wiretap Act prohibits the intentional interception of "any wire, oral, or electronic communication," including attempted interception.  18 U.S.C. § 2511(1)(a); 18

U.S.C. § 2520(a) (authorizing civil action for recovery based on interception).  "Interception"
means "the aural or other acquisition of contents of any wire, electronic, or oral communication
through the use of any electronic, mechanical, or other device."  18 U.S.C. § 2510(4).

Plaintiffs also claims that Defendants Chris Gaubatz, David Gaubatz, CSP, and Brim
used and disclosed the contents of the intercepted communications in violation of the Federal
Wiretap Act and the D.C. Wiretap Act.  Third Am. Compl ¶ 87.  Like the Federal Wiretap Act,
the D.C. Wiretap Act prohibits willful disclosure and willful use of "the contents of any wire or
oral communication, or evidence derived therefrom" when an individual knows or has reason to
know "that the communication was obtained through the interception of an oral or wire
communication."  D.C. Code § 23-542(a)(2)-(3); D.C. Code § 23-554(a)(1) (authorizing civil
action for recovery based on disclosure and use).  The D.C. Wiretap Act, however, does not
require knowledge that the communication at issue was illegally intercepted.  *CAIR*, 31 F. Supp.
3d at 264 & n.10.

Plaintiff CAIR-F further claims Defendants David Gaubatz, Yerushalmi, CSP, and Brim
are liable for Defendant Chris Gaubatz's violations of the Federal Wiretap Act and D.C. Wiretap
Act by *respondeat superior*. *CAIR v. Gaubatz*, 31 F. Supp. 3d at 253, 268-70.  Specifically,
Plaintiff CAIR-F asserts (1) that Defendant Chris Gaubatz was Defendant David Gaubatz's agent
and (2) that Defendant Chris Gaubatz was therefore Defendants Yerushalmi's, CSP's, and
Brim's sub-agent because Defendant David Gaubatz was their agent.  *Id.* at 268-69.

*Second*, CAIR-F argues that Defendants violated the Stored Communications Act.  Third
Am. Compl. ¶¶ 89-93.  Specifically, Plaintiff CAIR-F claims that (1) Defendant Chris Gaubatz
accessed electronic communications stored in CAIR-F's computers and servers without
authorization in violation of the Stored Communications Act and (2) Defendants David Gaubatz,

Yerushalmi, CSP, and Brim are liable for Defendant Chris Gaubatz's conduct by *respondeat superior*. *Id.* at ¶ 90; *CAIR*, 31 F. Supp. 3d at 273. The theory through which Plaintiff CAIR-F claims Defendants David Gaubatz, Yerushalmi, CSP, and Brim are liable for Defendant Chris Gaubatz's conduct under the Stored Communications Act is identical to that raised under the Federal and D.C. Wiretap Acts.

*Third* and finally, Plaintiffs claim Chris Gaubatz is liable for trespass by gaining consent to enter the national CAIR office under false pretenses and by exceeding the scope of the consent he gained. Third Am. Compl. at ¶ 127-134. Trespass is defined as "an unauthorized entry onto property that results in interference with the property owner's possessory interest therein." *Sarete, Inc. v. 1344 U. Street Ltd. P'ship*, 871 A.2d 480, 490 (D.C. 2005).

CAIR also seeks punitive damages. To recover on their first and third sets of claims, Plaintiffs must show (1) that the defendant "acted with evil motive, actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard for the rights of the plaintiff," and (2) that his conduct "was outrageous, grossly fraudulent, or reckless toward the safety of the plaintiff."[3] CAIR need only show willfulness to recover punitive damages on its SCA claim. 18 U.S.C. § 2707(c).

Procedurally, the Court denied without prejudice Plaintiffs' motions in limine pending supplemental briefing on Plaintiffs' motions in limine, but did not order supplemental briefing on CSP Defendants' motion. *CAIR*, 306 F. Supp. 3d 165 (D.D.C. 2018). The CSP Defendants

---

[3] *See, e.g.*, *Destefano v. Children's Nat. Med. Ctr.*, 121 A.3d 59, 66 (D.C. 2015) (D.C. common law on punitive damages generally); *Wood v. Neuman*, 979 A.2d 64, 73 (D.C. 2009) (trespass specifically); *Smoot v. United Transp. Union*, 246 F.3d 633, 647-48 (6th Cir. 2001) (on Federal Wiretap Act claim, punitive damages available when "aggrieved party demonstrates that a wanton, reckless[,] or malicious' violation of the Act has occurred" (internal quotation marks omitted)).

correctly note that the Court actually ordered supplemental briefing as to Plaintiffs' motions in limine.   As such, this Memorandum Opinion and Order resolves Plaintiffs' motions in limine, resolves in part the CSP Defendants' [258] Motion in Limine, and holds in abeyance the remainder of CSP Defendants' [258] Motion in Limine pending supplemental briefing ordered at the end of this Memorandum Opinion and Order.

## II.    DISCUSSION

Plaintiffs' motions in limine generally seek to exclude Defendants' efforts to paint CAIR as a criminal organization, a material supporter of terrorism, partial to Islamism, and a discriminatory employer.  Broadly, such proffered testimony and exhibits are irrelevant or, even where relevant, far more prejudicial than probative.  The Court turns to each pending motion in turn.

### A.  Plaintiffs' First Motion

Plaintiffs first move to preclude Defendants from introducing evidence referring to CAIR-F and CAIR-N as criminal organizations and/or "Muslim Brotherhood front group[s]." Pls.' Mot. at 1.  Plaintiffs argue that this evidence is irrelevant under Rule 401 to all remaining claims and defenses in the case and that, even if it were relevant, Rule 403 requires its exclusion because the risk of unfair prejudice substantially outweighs its probative value.  Fed. R. Evid. 401, 403; Pls.' Mot. 1-2.  Defendants represent that they intend to put on evidence to establish that CAIR, a notable civil rights organization, secretly supports terrorism in order to: (1) show no fiduciary relationship existed between Defendant Chris Gaubatz and Plaintiffs; (2) impeach Plaintiffs were they to represent at trial that they are, in fact, civil rights organizations; (4) Plaintiffs had no reasonable expectation of privacy; (4) Defendants did not act maliciously or with evil motive; and (6) the "substantive soundness" of the documentary and the insignificance

of the recordings' content to Defendants CSP and Brim.  Gaubatz Defs.' Suppl. Br., ECF No. 262 at 1-8; CSP Defs.' Suppl. Br., ECF No. 261 at 4, 8-12.  Most of these showings are irrelevant to the remaining claims, and even where such evidence might be relevant, the risk of prejudice outweighs whatever slight probative value it might carry.

As an initial matter, Plaintiffs' evidence that a respected civil rights organization is secretly a front for radical Islamic terrorism is, to be put it mildly, scant.  Much of the proffered evidence is nearly three decades old.  *E.g.*, Proposed Trial Exhibit 5 (1993); Proposed Trial Exhibit 32 (1994).  Other proposed exhibits are tenuous at best.  They include, for example, the federal government's initial inclusion of CAIR as an unindicted coconspirator with a group known as the "Holy Land Foundation." The Holy Land Foundation, convicted of funneling its own funds to terror groups, evidently wrote a check to CAIR in 1994.  Proposed Trial Exhibits 3, 31.  For the purposes of Federal Rule of Evidence 103(b), the Court is skeptical that Defendants could carry such an evidentiary burden in the first place.

Whether they could make that showing is largely beside the point, because evidence of prior unlawful acts is entirely collateral to the remaining claims.  Whether CAIR had previously engaged in criminal activity is irrelevant, for instance, to whether Gaubatz had a fiduciary duty to CAIR of which Gaubatz was aware.  *See Bolton v. Crowley*, *Hoge & Fein, P.C.*, 110 A.3d 575, 584 (D.C. 2015) (quoting *Gov't of Rwanda v. Rwanda Working Group*, 227 F.Supp.2d 45, 64 (D.D.C. 2002)) ("[a] fiduciary relationship is founded upon trust or confidence reposed by one person in the integrity and fidelity of another.").  *Cf. also In re Enron Corp. Securities, Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 581 (S.D. Tex. 2003) (corporate officers of Enron nevertheless owed fiduciary duty to Enron notwithstanding level of criminality at leadership level of organization).  Similarly, whether Defendant Chris Gaubatz's relationship

with Plaintiff CAIR-F vested a fiduciary duty of non-disclosure depends not on his internal understanding of his relationship with Plaintiff CAIR-F, but the objective circumstances of the relationship, including the extent to which he had access to confidential information and private facilities and operated as Plaintiff CAIR-F's agent.  *CAIR*, 31 F. Supp. 3d 237. 256-261 (D.D.C. 2014).

The question of whether Plaintiffs are "genuine civil rights organization[s]" for which Defendants offer this evidence is also not relevant to any of the claims or defenses.  Even were CAIR itself a terrorist group—it obviously is not—there is no "vigilantism" exception to the D.C. and Federal Wiretap Acts, the Stored Communications Act, or the common law of trespass. *See* 18 U.S. Code § 2511(c) (exceptions for interception by person acting under color of law under the Federal Wiretap Act); D.C. Code § 23–542(b)(2) (exceptions for interception by person acting under color of law under D.C. Wiretap Act); 18 U.S. Code § 2703 (exception for disclosure to government entities pursuant to a warrant under the Stored Communications Act).[4] To the extent Plaintiffs seek compensatory damages, this evidence is also not relevant to the question of whether Plaintiffs suffered any actual harm.

Similarly, Defendants offer no explanation as to how this evidence is relevant to unspecified "equitable remedies" nor how the issue of the documentary's "substantive

---

[4]  *See also Bartnicki v. Vopper*, 532 U.S. 514, 524-25 (2001) (First Amendment does not bar federal criminal sanction for unlawfully intercepting a private entity's communications, even where those communications involved criminal conspiracy).  As for trespass, the D.C. Court of Appeals has not explicitly held that there is no safe harbor for vigilantes or newsgathering, but most other jurisdictions hold as much.  *E.g.*, *People v. Johnson*, 859 N.E.2d 290, 300-02 (Ill. Ct. App. 2006) (criminal trespass and vigilantism); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 951 F. Supp. 1211, 1214 (M.D.N.C. 1996) (civil trespass and newsgathering).  The Court expects that the D.C. Court of Appeals would join this approach.  *Cf. Danai v. Canal Square Assocs.*, 862 A.2d 395, 401 n.5 (D.C. 2004) (in tort of intrusion upon seclusion, noting close link between constitutional privacy and common-law privacy).

soundness" is relevant to any of Plaintiffs' claims.  This evidence's purported tendency to support the thesis of Defendant CSP's CAIR documentary is in no way material to any element of Plaintiffs' claims, which concern interception, use, and disclosure of and access to electronic communications as well as physical trespass on property.

As for impeachment, as an initial matter, extrinsic evidence of misconduct to attack a witness's credibility generally is not admissible.  *See United States v. Robinson*, 530 F.2d 1076, 1079 (D.C. Cir. 1976); *United States v. Tarantino*, 846 F.2d 1384, 1409 (D.C. Cir. 1988).  Moreover, because the purported instances of connections to radical Islamism are irrelevant to the claims at issue, extrinsic evidence of such is inadmissible as collateral evidence.  *See Tarantino*, 846 F.2d at 1410.  Additionally, it appears that few, if any, of the proposed exhibits Defendants seek to use for impeachment purposes will likely be Plaintiffs' witnesses' prior statements, and witnesses may be impeached only "by their *own* prior inconsistent statements." *Id.* at 1416 (emphasis original).  See also *United States v. Mahdi*, 498 F.3d 883, 894 (D.C. Cir. 2010) (affirming trial court's exclusion, on Rule 403 grounds, of impeachment with extrinsic evidence that prosecution witness had previously killed another man with a gun after prosecution witness denied having ever handled a gun).

At the merits stage, the Court shall not just bar such extrinsic evidence, but also the questions in the first place.  The mere mention of "terrorism" is far too likely to inflame the jury's passions and prejudice Plaintiffs.  *Cf. United States v. O'Neal*, 844 F.3d 271, 276 (D.C. Cir. 2016) (finding no abuse of discretion in excluding question regarding and evidence of witness's prior "shady business" where line of questioning more prejudicial than probative).[5]

---

[5] *Cf. also Diaz v. City of Anaheim*, 840 F.3d 592, 602-03 (9th Cir. 2016) (holding trial court abused discretion in refusing to bifurcate trial where gang affiliation was relevant only to damages and not to liability); *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776 (9th Cir. 2018) (in

When weighed against the minimal probative value and the inadmissibility of any such extrinsic evidence, Rule 403 bars any questions or statements about any purported links to Islamism, criminal activity, or radical Islamic terrorism.

The relevance of Defendants' proposed line of questioning poses a closer question for the purposes of punitive damages.  Although both D.C. and federal law discuss punitive damages using terms like "malice" and "evil motive," the locus of analysis for both is willfulness.  *E.g.*, *Destafano*, 121 A.3d at 66-67; *Smith v. Wade*, 461 U.S. 30, 34-35 (1983).  In other words, the key question is often not what motivated a particular tortious action, but rather whether the action was taken in known violation of the victim's lawful rights.  *See Elkins v. District of Columbia*, 610 F. Supp. 2d 52, 63-65 (D.D.C. 2009).  This is particularly so under D.C. law, in which the main purpose of punitive damages is to "punish [intentional] and unlawful conduct and deter its repetition."  *See Destefano*, 121 A.3d at 66-67.  As such, and to avoid the admission of particularly inflammatory testimony and exhibits, the Court will preclude Plaintiffs from arguing that Defendants tortious conduct came by "evil motive," and instead require Plaintiffs to show willfulness to recover punitive damages on each claim.  At the same time, the Court will preclude evidence that CAIR is a criminal organization or a "front group" for foreign Islamist organizations.  With these instructions, the Court **GRANTS** Plaintiffs' First Motion.

### B.  Plaintiffs' Second Motion

Second, Plaintiffs move to preclude Defendants from offering evidence that U.S. government has proven or has knowledge that CAIR is founded by the Muslim Brotherhood, Hamas, or any other terrorist organization.  Pls.' Mot. at 5.  Plaintiffs argue this evidence is

---

prison civil rights action, affirming exclusion of prior felony criminal convictions and gang affiliations of inmate plaintiffs as unduly prejudicial).

irrelevant and highly prejudicial.  *Id.*  Because Defendants are not authorized law enforcement personnel, Plaintiffs argue the evidence is irrelevant to any of the claims and available defenses. *Id.*  The Gaubatz Defendants expressly state that they do not intend to offer evidence that the U.S. government has proven or has knowledge that CAIR is founded by the Muslim Brotherhood, Hamas, or any other terrorist organization.  Without such a showing, and for the same reasons the Court excluded evidence of CAIR engaging in criminal activity above, the Court excludes evidence suggesting any link between CAIR, Hamas, or any other terrorist group. As such, the Court **GRANTS** Plaintiffs' Second Motion.

### C. Plaintiffs' Third Motion

Third, Plaintiffs move to preclude evidence that Defendants were acting on behalf of law enforcement, the United States, or any other governmental entity or that they obtained documents for the purpose of distributing them to U.S. government officials.  Pls.' Mot. at 5. The Gaubatz Defendants and CSP Defendants fail to address Plaintiffs' third motion to preclude evidence that Defendants were acting on behalf of law enforcement, the United States, or any other governmental entity or that they obtained documents for the purpose of distributing them to U.S. government officials.  As such, that portion of the Third Motion is conceded.  *See Kone v. District of Columbia*, 808 F. Supp. 2d 80, 83 (D.D.C. 2011).  To the extent Defendants argue that they somehow had legal authority to access CAIR's records on some belief of criminality, it is beyond peradventure that Defendants, who have no link to any government agency, were not acting under color of law at the time of the allegedly tortious actions.  *See Democracy Partners v. Project Veritas Action Fund*, 453 F. Supp. 3d 261, 285-87 (D.D.C. 2020).

As a result, the Court **GRANTS** Plaintiffs' Third Motion and excludes evidence that Defendants were acting on behalf of law enforcement, the United States, or any other

governmental entity and obtained documents for the purpose of distributing them to U.S. government officials.

### D. Plaintiffs' Fourth Motion

Fourth, Plaintiffs move to exclude evidence or testimony that Defendant David Gaubatz was an Arab linguist for the U.S. State Department and U.S. Air Force Office of Special Investigations Special Agent. Pls.' Mot. at 6. Plaintiffs argue Defendant David Gaubatz's training and prior employment are irrelevant and risk misleading the jury with respect to his authority to investigate Plaintiffs. *Id.* CSP Defendants contend that evidence of Defendant David Gaubatz's training and experience in the Air Force is relevant to Plaintiffs' *respondeat superior* theory because it speaks to the scope of his duties and especially whether he acted independently from Defendants CSP and Brim or under their control. CSP Defs.' Suppl. Br., ECF No. 261 at 8-9, 17-18. CSP Defendants also argue that evidence of Defendant David Gaubatz's training and experience in the Air Force is relevant to their claim that they lacked the knowledge required under the Federal Wiretap Act because it supports their claim that they trusted the materials Defendant David Gaubatz delivered to them was obtained lawfully. *Id.* at 18.

Although not particularly probative, Defendant David Gaubatz's prior training makes it slightly more likely that Defendants CSP and Brim might have permitted Defendant David Gaubatz to work independently. For the same reasons as stated above, however, his background may not be used to suggest to the jury that he was authorized under color of law to surveil CAIR. The Court further concludes that testimony as to David Gaubatz's prior employment is not itself unduly prejudicial. Therefore, Defendants may only use evidence of Defendant David Gaubatz's

prior training to show he acted independently, and for no other purpose.  As such, the Court

**GRANTS IN PART AND DENIES IN PART** Plaintiffs' Fourth Motion.

### E.  Plaintiffs' Fifth and Sixth Motions

Fifth, Plaintiffs move to preclude any former or current CAIR employees from testifying

about alleged discrimination or mistreatment within CAIR or presenting evidence that Plaintiffs

discriminate between Sunni and Shi'ite Muslims.  Pls.' Mot. at 6.  Sixth, Plaintiffs move to

exclude evidence and arguments that attempt to exploit and attack Islam, including any evidence

from a 2014 documentary film called "Honor Diaries" that discusses the rights of women in

Muslim-majority societies.  Pl.'s Mot. at 6-7.  Plaintiffs argue alleged discrimination is not

relevant to any of the claims or defenses at issue and that its high risk of prejudice outweighs its

low probative value is. *Id.*  The CSP Defendants explicitly decline to contest these motions.  CSP

Defs.' Suppl. Br., ECF No. 261 at 2.  The Gaubatz Defendants also decline to contest Plaintiffs'

Sixth Motion.  Gaubatz Defs.' Suppl. Br., ECF No. 262 at 21.  As such, the Court **GRANTS**

Plaintiffs' Sixth Motion as conceded and excludes evidence and arguments that attempt to

exploit and attack Islam, including any evidence from a 2014 documentary film called "Honor

Diaries."

With respect to Plaintiffs' Fifth Motion, Gaubatz Defendants argue only that evidence of

discrimination has impeachment value because it is relevant to CAIR's status as a civil rights

organization.  Gaubatz Defs.' Suppl. Br., ECF No. 262 at 20-21.  For the same reasons discussed

above, any extrinsic evidence of purported discrimination is collateral and inadmissible. *Supra*

at 10-11.  Furthermore, a generalized history of discrimination has the potential to mislead the

jury in their consideration of the party's conduct and invoke emotionally-charged judgment of

Plaintiffs.  As such, given the limited probative value of such a line of questioning, the Court

concludes any such probative value its substantially outweighed by the risk of unfair prejudice. The Court therefore **GRANTS** Plaintiffs' Fifth Motion and excludes Ms. Haddadi and any other former or current CAIR employees from testifying about alleged discrimination or mistreatment within CAIR or presenting evidence that Plaintiffs discrimination between Sunni and Shi'ite Muslims.

### F.  Plaintiffs' Seventh Motion

Seventh, Plaintiffs move to preclude any alleged affirmative defenses not pled in Defendants' answer or dispositive motions. Pls.' Mot. at 7.  Specifically, Plaintiffs move to preclude defenses based on claims that (1) no expectation of privacy exists for criminal conduct or for a criminal organization and its agents, (2) the reporting and preserving of evidence of criminal conduct is required by 18 U.S.C. § 4, and (3) Defendant Chris Gaubatz's entry was permitted under the common law doctrines of public and private necessity.  Pls.' Mot. at 7-8. CSP Defendants' responses, which Gaubatz Defendants join, argue that these defenses of "authority" were pled in Defendants' Answer to the Third Amended Complaint and in Defendants' answers to Plaintiffs' interrogatories.  CSP Defs.' Suppl. Br., ECF No. 261 at 19-20; Gaubatz Defs.' Suppl. Br., ECF No. 262 at 21.  They were not advanced in the operative answer, ECF No. 130 at 16-17, and interrogatories cannot amend pleadings, *see* Fed. R. Civ. P. 15(a). The Court therefore excludes these defenses as waived.  *See Kapche v. Holder*, 677 F.3d 454, 465 (D.C. Cir. 2012).

Accordingly, the Court **GRANTS** Defendants' Seventh Motion and precludes any alleged affirmative defenses not pled in Defendants' answer or dispositive motions, including any defenses based on Plaintiffs' lack of reasonable expectation of privacy, legal authorization under the misprision of felony provision, or private and public necessity.

### G. CSP Defendants' Motion in Limine

Finally, the Court turns to the CSP Defendants' Motion in Limine.  The remaining issues include:  (1) an objection to the admission of a book entitled "Muslim Mafia" on hearsay and relevance grounds; (2) the extent of testimony by Sarah Pavlis, Adam Savit, Corey Saylor, David Zimmerman, and Harold C. Weatherman II; (3) objections to Exhibits 3, 5, and 6; (4) objections to deposition transcripts on the grounds that they violate the Court's Pretrial Scheduling Order; and (5) an objection to any evidence of damages because Plaintiffs have failed to itemize them in violation of the Pretrial Scheduling Order.  *CAIR v. Gaubatz*, 306 F. Supp. 3d 165, 181 (D.D.C. 2018); CSP Defs.' Mot., ECF No. 248. The Court defers ruling on the "Muslim Mafia" issue, issues with witnesses, and evidentiary objections to exhibits and **HOLDS IN ABEYANCE** the CSP Defendants' [248] Motion in Limine as to these issues.  The Court **DENIES WITHOUT PREJUDICE** the CSP Defendants' [248] Motion in Limine as to deposition transcripts and itemization of damages.  Plaintiffs shall properly designate their depositions and itemize damages in the next joint pretrial statement.  Failure to do so may result in the exclusion of any such evidence.

### III.   CONCLUSION AND ORDER

Accordingly, it is hereby

**ORDERED**, that Plaintiffs' [249] Motions in Limine is **GRANTED IN PART AND DENIED IN PART**.  Specifically, Plaintiffs' First, Second, Third, Fifth, Sixth, and Seventh Motions are **GRANTED**.  Plaintiffs' Fourth Motion is **GRANTED IN PART AND DENIED IN PART**.  It is further

**ORDERED**, that CSP Defendants' [248] Motion in Limine is **HELD IN ABEYANCE** as to the "Muslim Mafia" book issue, issues with witnesses, and evidentiary objections to exhibits.  It is further

**ORDERED**, that CSP Defendants' [248] Motion in Limine is **DENIED WITHOUT PREJUDICE** as to deposition transcripts and itemization of damages.  It is further

**ORDERED**, that the CSP Defendants shall file supplemental briefing in support of the remaining issues in their [248] Motion in Limine on or before **December 19, 2022**.  Plaintiffs may file a response on or before **January 6, 2023**.  The Court will not permit any further briefing.  It is further

**ORDERED**, that the parties shall file a revised Joint Pretrial Statement on or before **March 31, 2023**.  It is further

**ORDERED**, that a pretrial conference is set for **October 19, 2023 at 10:00 AM ET** in Courtroom 28-A.  It is further

**ORDERED**, that trial is tentatively set for **October 23, 2023** in Courtroom 28-A.

**SO ORDERED.**

Dated: December 2, 2022

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge